1  James C. Pistorino (SBN 226496)
      james@dparrishlaw.com
2  Parrish Law Offices
   224 Lexington Dr.
3  Menlo Park, CA  94025
   Telephone: (650) 400-0043
4
   Attorneys for Plaintiff
5
   Ann McFarland Draper (SBN 065669)
6      courts@draperlaw.net
   Draper Law Offices
7  75 Broadway, Suite 202
   San Francisco, CA  94111
8  Telephone:  (415) 989-5620

9  Attorneys for Defendants

10                      UNITED STATES DISTRICT COURT

11                      NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TECHSHOP, INC., | Case Number: **4:18-cv-01044-HSG** |
| Plaintiff, | **JOINT CASE MANAGEMENT STATEMENT** |
| vs. | |
| DAN RASURE, et al. | |
| Defendants. | |

Plaintiff TechShop, Inc. (Plaintiff"), and Defendant Dan Rasure ("Rasure"), the Defendant sued herein as "TechShop 2.0 LLC" (which is now known as "TheShop dot Build LLC1") and the Defendant sued herein as "TechShop 2.0 San Francisco LLC" (which is now known as "TheShop dot Build San Fran LLC") (collectively "Defendants"), having met and conferred, hereby submit this JOINT CASE MANAGEMENT STATEMENT ("Joint CMC Statement") pursuant to Civil Local Rule 16-9 and *the* Standing Order for All Judges of the Northern District of California *re Contents of Joint Case Management Statement,* dated January 17, 2017 ("Standing Order CAND"), and the *Standing Order for Civil Cases Before District Judge Haywood S. Gilliam, Jr.* dated April 23, 2018.Counsel for the parties held a telephone

Page **1** of **18**

*Form updated May 2018*

conference on May 16, 2017, pursuant to FRCP 26(f) and Local Rule 16. This Joint CMC Statement will track those twenty-one points set forth in the *Standing Order for All Judges re Contents of Joint Case Management Statement*.

1. **Jurisdiction & Service**

   A.   Subject Matter Jurisdiction.

   This action arises under the federal trademark statute (the "Lanham Act"), 15 U.S.C. § 1051 et seq.  This court has subject matter jurisdiction over the trademark claims pursuant to 15 U.S.C. §§ 1114, 1121, 1125(a), and § 1125(c) and 28 U.S.C. §§ 1331 (federal question), 1332 (diversity), and 1338 (trademark cases).  Defendant disagrees that §§ 1114 and 1125 accord jurisdiction.

   With respect to diversity jurisdiction, Plaintiff alleges that Plaintiff is a citizen of the State of California, that all Defendants are citizens of the State of Kansas, and that the amount in controversy between the parties exceeds $75,000.  Defendants dispute that the amount in controversy exceeds $75,000 but state that the amount in controversy is immaterial as there are multiple other grounds for subject matter jurisdiction.

   Defendants state that this court also has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334, because Plaintiff is a Chapter 7 bankruptcy debtor.  On February 26, 2018 (ten days after commencing this action), Plaintiff filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the Northern District of California, *In Re TechShop, Inc., Debtor*, designated Case No. 18-50398 MEH ("TechShop Bankruptcy Case").  Doris A. Kaelin is the Chapter 7 Trustee in the TechShop Bankruptcy Case.

   Defendants anticipate filing counterclaims and third party claims.  Defendants state that this court will have subject matter jurisdiction over Defendants' anticipated counterclaims for cancellation of the federal registrations pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 (federal question), 1338 (trademark cases) and 1367 (supplemental jurisdiction).  This court will have subject matter jurisdiction over Defendants' anticipated counterclaims and third party

*Form updated May 2018*

claims for wire fraud and common law fraud pursuant to 11 U.S.C. §§ 1334 (bankruptcy) and 1367 (supplemental jurisdiction).

Notwithstanding the foregoing, Defendant has challenged subject matter jurisdiction in this case because Plaintiff (TechShop, Inc.) lacks standing and is not the real party in interest in that the marks, registrations and claims sued upon belong to the Bankruptcy estate, as to which the Chapter 7 Trustee is the owner and sold real party in interest by virtue of 11 U.S.C. § 323(a) and (b) and FRCP Rule 17(a). Defendant contends that the lack of standing means this court cannot exercise jurisdiction over this case until and unless the Chapter 7 Trustee substitutes in as plaintiff or is joined as a party plaintiff.

B.      Personal Jurisdiction.

Plaintiff alleges, on information and belief, that this Court has personal jurisdiction over the Defendants because Defendants have extensive contacts with, and conduct business within, the State of California and this judicial district, because Defendants have caused the TechShop 2.0 entities' products and services to be advertised, promoted, and sold in this judicial district, because the causes of action asserted in this Complaint arise out of Defendants' contacts with this judicial district and because Defendants have caused injury to Plaintiff in this judicial district.

Defendants dispute these allegations and particularly dispute that "TechShop 2.0 LLC" (which is now known as "TheShop dot Build LLC") is subject to personal jurisdiction in this district. However, Defendants will not object to the exercise of personal jurisdiction in this case.

C.      Venue

Defendants will not challenge the laying of venue in the Northern District of California. The parties agree that intra-district assignment to the Oakland Division is proper under the local rules.

D.      Service of Process

Defendants state that Rasure is an officer of "TechShop 2.0 LLC" (which is now known as "TheShop dot Build LLC") and "TechShop 2.0 San Francisco LLC" (which is now known as

*Form updated May 2018*

"TheShop dot Build San Fran LLC"). Rasure was personally served in this district on behalf of all three Defendants on February 22, 2018.

2. **Facts**

    A.    Plaintiff's Overview of the Facts

Starting in 2006 from a facility in Menlo Park, TechShop, Inc. opened a series of maker spaces offering classes on using woodworking, metal working, and other machines for making prototypes and hobby crafts. In addition to classes, TechShop offered membership where members could use the tools and machines to work on professional or personal projects using the TechShop facilities. By 2017, there were 10 facilities in the United States and several foreign locations. In 2017, in the Bay Area, TechShop operated facilities in San Francisco, Redwood City, and San Jose using the TechShop marks. In November 2017, TechShop, Inc. was experiencing financial difficulties and closed the doors of the TechShop locations nationwide and announced its intention to begin Chapter 7 bankruptcy proceedings.

Thereafter, TechShop was contacted by Mr. Rasure who proposed to enter into an agreement to purchase some or all of the TechShop assets. Between November 2017 and February 2018, TechShop attempted to work with Mr. Rasure on a proposed transaction. As part of this process, a memorandum of understanding was executed. Ultimately, however, Mr. Rasure did not perform and no transaction was completed. During this time, Mr. Rasure formed the TechShop 2.0 entities and operated a website and Facebook groups using that name. Using the TechShop 2.0 name, Mr. Rasure indicated to the public that he intended to re-open the TechShop facilities, would be offering various discounts, etc. to TechShop members, and was working to pay TechShop employees and contractors. As a result of using the TechShop marks, there were many instances of actual confusion between TechShop and Mr. Rasure/the TechShop 2.0 entities.

In February 2018, without TechShop's permission or license, Mr. Rasure announced his intention open the former TechShop facility at 926 Howard St in San Francisco using the name TechShop 2.0. TechShop wrote Mr. Rasure demanding that both he and the TechShop 2.0

entities cease using the TechShop marks but received no response.  Thereafter, TechShop filed suit alleging trademark infringement.  After the suit was filed, Mr. Rasure and the TechShop 2.0 entities continued to use the TechShop 2.0 name before switching to other names.  Currently, Mr. Rasure and the TechShop entities are operating the former TechShop facility at 926 Howard St using the name "theShop.build."

B. Defendants Overview of the Facts

Defendants dispute some of the facts and characterizations in Plaintiff's statement, but will focus here on additional facts material to the Court's general understanding of the factual background of this action.

Plaintiff TechShop, Inc. filed this trademark infringement action on January 16, 2018 and served Defendants on February 22, 2018.  Four days later, on February 26, 2018, Plaintiff filed the TechShop Bankruptcy Case, in which Doris A. Kaelin is appointed the Chapter 7 Trustee. (See section 1.A.)

At the time of filing its Bankruptcy Case, Plaintiff owned two federally registered service marks for the term TECHSHOP as a word mark without any claim to any particular font, style size or color as a feature of the mark.  One of the registrations was in Class 35 (business services) and Class 41 (educational services); the other was in Class 40 (treatment of materials). Plaintiff discontinued using the marks in the United States when it shut down all its locations and corporate offices on November 15, 2017.  Plaintiff also failed to maintain the registrations and failed to file its Section 8 and Section 15 affidavits of use.

Plaintiff's bankruptcy filings show that it had obtained over $18 Million (characterized as secured loans) from Autodesk, Inc. ("Autodesk") and over $2.5 Million in financing from Lowe's Companies, Inc., and it listed more than $16 Million in general unsecured claims.

Defendants contend that Plaintiff was not paying its instruction staff as early as 2015 and was insolvent before 2017, although it continued to borrow from individual investors and members (without disclosing its insolvency).

On November 15, 2017, Plaintiff publicly announced that it was closing all ten of its U.S. locations and its small corporate group effective 8AM on November 15, and that it would be

*Form updated May 2018*

filing for bankruptcy under Chapter 7.  Within a few hours thereafter, Plaintiff had in fact shut down all ten of its U.S. locations and corporate offices and had ceased all operations.  However, Plaintiff waited over three months before actually filing its bankruptcy case.

After Plaintiff had shut down, Rasure approached Plaintiff and separately approached its principal creditor (Autodesk), indicating his interest in a possible deal that would enable him to reopen some of the former U.S. locations under new ownership and management.  Between November 17 and November 30, 2017, Rasure engaged in intensive negotiations with Plaintiff's CEO (Dan Woods) and Chairman (Jim Newton), which resulted in a Memorandum of Understanding ("MOU") on November 30, 2017, setting forth a summary of principal deal terms.  The negotiations leading up to the MOU were very complex and were conducted in a very short time frame, and Rasure had not yet formed the new entity for the acquisition.  While the MOU was being negotiated, the acquiring entity was initially referred to as "New Co" but Rasure, Woods, Newton and Plaintiff's corporate counsel in Oregon began using the moniker "TechShop 2.0" to refer to the to-be-formed entity.

When the MOU document was ready for execution, Plaintiff's outside director (Doug Busch) demanded that the acquiring entity in the contract be officially formed before the MOU was signed.  In the early hours of December 1, 2017, Rasure caused the formation of a Kansas limited liability company under the name "TechShop 2.0 LLC".

The MOU was signed on the morning of December 1, 2017.  Plaintiff (through Dan Woods) immediately issued public announcements (via Facebook, Twitter and an online magazine that served the "maker" community) regarding the Rasure transaction, in a manner that made it clear that the "group called TechShop 2.0" was different from TechShop.   The transaction was contemplated to close on or shortly after December 21, 2017.

At no time between November 17, 2017 and service of the TM Action on February 22, 2018, did Plaintiff, Newton or Woods object to Rasure's use of the moniker "TechShop 2.0" or formation of entities under the "TechShop 2.0" name.  To the contrary, Plaintiff, Newton and

Woods consented to, acquiesced in, and ratified Rasure's use of the moniker and business name "TechShop 2.0."

Between November 17 and December 12, Plaintiff and two of its officers (Newton and Woods) fraudulently deceived Rasure into advancing over $34,000 of the purchase funds to pay urgently overdue bills for Plaintiff's employee health insurance, cloud services, attorneys, and social media person. Rasure's credit card information given for one-time charges to Google was used for ongoing automatic charges for Plaintiff's cloud services and email accounts, although Rasure had not authorized use of the card for ongoing charges of any type. The wires were used in the transfer of funds as well as to make misrepresentations.

Unexpectedly Plaintiff unilaterally terminated Rasure's transaction on December 12, 2017, only hours after Rasure had advanced $1,100 for Plaintiff's social media person. Plaintiff did not refund any of the monies that it had tricked Rasure into advancing, nor did it offer to do so. At this point the negotiations ceased.

Rasure, however, continued to explore ways in which to operate maker spaces in some of Plaintiff's former shop locations, negotiating with creditors and landlords of abandoned locations. Plaintiff briefly returned to the negotiating table in late December 2017 and January, but the discussions were not fruitful.

Rasure decided to move forward with opening a makerspace in San Francisco and negotiated with The Hearst Corporation for lease of the premises at 926 Howard Street from the building's landlord 5M Project LLC (owned by The Hearst Corporation), a location previously occupied by Plaintiffs subsidiary TechShop SOMA LLC. Before signing this lease, Rasure caused the formation of a second Kansas limited liability company under the name "TechShop 2.0 San Francisco LLC," which leased 926 Howard Street premises and the equipment abandoned there by Plaintiff's subsidiary. This entity later changed its name to TheShop dot Build San Fran LLC.

Rasure and "TechShop 2.0 San Francisco LLC" (which is now known as "TheShop dot Build San Fran LLC") commenced cleaning up the premises, repaired and refurbished (and in some cases replaced) the tools and equipment, and announced their intention to open a workspace facility in San Francisco at 926 Howard. A news article published in the San Francisco Chronicle on February 14, 2018, announcing the opening and stated "TechShop 2.0 is entirely separate from TechShop."

Within two days after the news article, Rasure and "TechShop 2.0 San Francisco LLC" (which is now known as "TheShop dot Build San Fran LLC") stopped using "TechShop 2.0" as a business name and started the process of changing the name to "The Shop dot Build." There was and is considerable ill will associated with the "TechShop" name, as well as negative publicity and social media activity in the maker community, including complaints about TechShop's failure to pay instructors, about TechShop's signing up members and obtaining loans and investments from the maker community without disclosing that it was insolvent, and about TechShop's shutting down without warning. For example, TechShop's location at the Brooklyn Army Terminal had just opened on October 19, 2017 – less than a month before TechShop shut down on November 15, 2017. Press surrounding the Brooklyn opening states that New York City invested $5.3 Million in TechShop's Brooklyn space.

Defendants were careful to avoid confusion between their original name and moniker – TechShop 2.0 – and Plaintiff's name, and submit that there was no confusion as to the source of the services offered by Defendant entities during the short time they used "TechShop 2.0" in their name.

There were no profits during the very short period in which the "TechShop 2.0" name was used.

**3.      Legal Issues**

        A.      Plaintiff's Statement

*Form updated May 2018*

The legal and factual issues to be decided are: alleged infringement of the TechShop trademarks. any defenses offered by the defendants, injunctive relief, and damages.  An action for trademark infringement is provided in 15 U.S.C. § 1114.  Injunctive relief for trademark infringement is provided in 15 U.S.C. § 1116.  Damages for trademark infringement are provided in 15 U.S.C. § 1117.

B.     Defendants' Statement

Defendants expect the issue of infringement to require resolution of the following key issues, *inter alia*:

- whether Plaintiff has valid federal registrations for the marks sued upon (including Plaintiff's use of the term as a nominative and a generic)
- whether either of the registrations is incontestable
- the effect of Plaintiff's failure to maintain the registrations and its discontinuance of use within the United States
- whether, in the circumstances, Defendants' brief use of "TechShop 2.0" is likely to lead to confusion as to the source of the services
- whether Plaintiff consented to, acquiesced in, and/or ratified Defendants' brief use of "TechShop 2.0"
- laches, unclean hands, and misuse of the ® registration symbol
- the appropriate theory for measure of damages, should liability be found

Defendants believe that injunctive relief is moot as Defendants are not using the term "TechShop 2.0"

**4.     Motions**

A.     In this Action

On May 3, 2018, Defendants filed a *Notice That Plaintiff Has Filed A Chapter 7 Bankruptcy Case* (Doc. No. 17), which provided notice herein of the automatic stay.

On May 8, 2018, Defendants filed an administrative motion to enlarge the time to respond and for relief from the ADR and case management deadlines.  The motion was denied.

*Form updated May 2018*

On May 15, 2018, in lieu of filing an answer, Defendants filed their motion under Rules 12(b)(1), (6) and (7), Rule 17 and Rule 19 to dismiss and to require Plaintiff to substitute in the Chapter 7 Trustee as the Plaintiff so that the real party in interest is joined as a party plaintiff. Plaintiff filed its response on May 30, 2018.  The motion is set for hearing August 16, 2018, which was the first available date.

No other motions are pending in this case.

B.       In the Related Bankruptcy Case

On May 17, 2018, the Bankruptcy Court issued an order in Plaintiff's Bankruptcy Case modifying the automatic stay with respect to this action, so that Defendants are able to freely assert their defenses and file their counterclaims and third-party claims in this action.  Also on May 17, 2018, Defendants filed herein a *Notice* of the Bankruptcy Court Order.

C.       Anticipated Future Motions

At this time, neither party anticipates bringing any particular motions.  However, that may change as the case develops.  In addition, once the pending motion to dismiss has been resolved, Defendants expect to file their counterclaims and third party claims; and motions maybe filed in response to Defendants' filings.

**5.      <u>Amendment of Pleadings</u>**

Defendants contend that Plaintiff must amend its complaint to substitute in the Chapter 7 Trustee as the real party in interest.  Defendants further content that the amendment is more than changing the caption, and requires allegations of the Trustee's ownership of the marks, registrations and claims, as well as the manner in which the Trustee became the successor in interest.

At this point, defendants have not yet answered, but expect to do so promptly after Plaintiff amends its complaint, without waiting for the Court to rule on the motion to dismiss.

At the time of answering, Defendants expect to file counterclaims for cancellation of the federal registrations as well as counterclaims/third-party claims for wire fraud and fraud.  The

*Form updated May 2018*

parties do not know whether it will be necessary to amend their counterclaims/third party-claims in response to any pre-answer motions on their counterclaims and third-party claims.

Plaintiff proposes that amendment be allowed up to 30 days before the close of discovery. Defendants oppose such a late deadline, and states that the pleadings must be settled well before the final round of discovery. Defendants suggest that once a complaint, counterclaim or third-party claim has been answered, no further amendments be allowed except by court order on a showing of good cause. Defendants estimate it likely that the pleadings will be settled within 120 days after Plaintiff amends its complaint to address the issues raised in Defendants' pending motion to dismiss.

### 6. <u>Evidence Preservation</u>

Counsel for Plaintiffs and Defendants has instructed her respective clients to not destroy any evidence relevant to this litigation and to not erase any electronically recorded material or communications (such as voicemails, emails and text messages) related to the subject of this lawsuit.

The parties have both reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and met and conferred about this matter during the Rule 26(f) conference. Areas of general agreement include initially utilizing 20 search terms, in addition to a list of names, and that documents be produced in native format (including metadata) where practicable. Both Plaintiff and Defendants need more information about the underlying electronic systems, and have agreed to further meet and confer when that information has been obtained.

Plaintiff proposes that no special steps be made to preserve or collect voicemails or meta-data absent specific notice and demonstration of need/relevance/proportionality. Defendants believe immediate protective steps must be taken. Defendants are informed that the Plaintiff maintained virtually all of its records in electronic form, and that those records, as well as emails, are primarily in the custody of third parties, such as Google/ GSuite, who may destroy the records if steps are not taken to secure an electronic copy. Once it is known what records exist,

*Form updated May 2018*

and how they are maintained, the parties will be able to work out a more structured plan for cost-effective, proportionate discovery into ESI.

**7.     Disclosures**

The parties have agreed that initial disclosures will be made 10 days after the Case Management Conference.

**8.     Discovery**

No discovery has been taken to date.  It is expected that written discovery will include requests for production, requests for admission and interrogatories; and that depositions of several key witnesses, including Mr. Rasure, Mr. Newton, Mr. Woods and Mr. Busch.

Plaintiff proposes that discovery should generally be limited to the period January 2017 to present. Defendants believe there should be no such restriction, particularly as concerns facts bearing on the use, misuse and validity of the marks and facts bearing on damages.

The parties agreed to the following:  number of interrogatories is 25 per party; unlimited requests for production, and Defendants request that the court require that such requests be narrowly drawn; unlimited requests for admission; number of depositions not limited. Defendants believe that 7 hours will not be sufficient and that two days should be allowed for the depositions of Rasure, Woods and Newton.

To date, the only identified discovery disputes are:  the scope of the relevant time period (Plaintiff proposes January 2017; Defendant proposes January 2005); and the need for immediate steps to secure Plaintiff's emails and other ESI.  Defendants also anticipate that issues may arise concerning protection of their trade secrets and protection of any financial data obtained during discovery.  The parties are considering entering into a protective order following the court's model.

Defendants propose that there be a first round of discovery in anticipation of participating in an ADR procedure, and a second round later (if the case does not resolve).  Plaintiff objects to that process.

*Form updated May 2018*

The parties have considered entering into a stipulated e-discovery order.

Based on statements by Defendant's counsel, Plaintiff also anticipates discovery disputes related communications between Mr. Rasure and his wife (Megan Drew Wieslander), as to which Defendants may assert privilege.  Plaintiff believes that Ms. Wieslander was the agent incorporating the TechShop 2.0 entities and has/had a significant role in the business and therefore is likely to have relevant information.  Defendants anticipate there may be disputes regarding limitations on disclosure of financial information or trade secrets to Mr. Pistorino, who was a founder, director and CFO of Maker Nexus, a competitor of Defendants.

Defendants note that some witnesses may be located outside this district, which could lengthen the period needed for discovery.

Plaintiff proposes March 5, 2019as the cut-off of fact discovery; Defendants propose a cut-off of fact discovery of April 11, 2019.

**9.**      **Class Actions**

Not applicable; this is not a class action.

**10.**      **Related Cases**

As noted above, on February 26, 2018, a voluntary petition under Chapter 7 of the Bankruptcy Code was filed by Plaintiff TechShop, Inc. in the United States Bankruptcy Court for the Northern District of California.  *See In re: TechShop, Inc., Debtor,*  Case No. 18-50398. There are no other related cases known to the parties.

**11.**      **Relief**

The Complaint seeks relief in the form of injunctive relief, damages (including a potential accounting of profits), trebling of the damages for willful infringement and attorney's fees.

What the damages are will be determined after discovery and based on expert opinion. Plaintiff notes that within approximately one year of the filing of the Complaint, the trademarks at issue were licensed for use outside the United States for approximately $1,000,000.

*Form updated May 2018*

Accordingly, Plaintiff anticipates that, at a minimum, damages would be the amount that Plaintiff would have licensed Defendants to use the marks prior to the alleged infringement.

Defendants dispute the alleged valuation and suitability of licensing as a measure of damages in this case.  Defendants contend that even if there was infringement (which they state there was not), damages were at best nominal as Defendants made no profits and Plaintiff had no prospects for a license.

**12.**     **Settlement and ADR**

Both parties have filed their *ADR Certifications* (Docs. 28 and 30) and a *Notice of Need for ADR Phone Conference* (Doc. 29).  To date, there have been no ADR efforts other than discussion as part of the Rule 26(f) conference.  Both parties agree that a settlement conference conducted by a Magistrate Judge would be appropriate, but they disagree on the issue of timing.

Plaintiff believes that settlement discussions should occur after discovery closes, and that discovery of the relevant documents related to infringement and financial information as well as the deposition of at least Mr. Rasure is necessary to position the parties to negotiate resolution. Defendants seek an early settlement conference, before both sides have run up enormous fees and expenses and become polarized.  Defendants believe that there is no liability, but the driving factor is that the range of potential damages is so miniscule that the case should be resolved early before the cost of litigation gets in the way of settlement.

**13.**     **Consent to Magistrate Judge For All Purposes**

All the parties have not consented to a Magistrate Judge for all purposes.

**14.**     **Other References**

The parties do not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

*Form updated May 2018*

**15.   Narrowing of Issues**

At this point, there is no request to bifurcate issues, claims, or defenses.  Whether issues can be narrowed by agreement or motion remains to be determined, but both parties are open to considering methods for expediting presentation of evidence, such as through summaries or stipulated facts or other procedures that the parties may be able to work out.

**16.   Expedited Trial Procedure**

The parties do not believe that Expedited Trial Procedure is appropriate at this time.

*Form updated May 2018*

**17.     Scheduling**

| Deadline | Plaintiff's Proposal | Defendants' Proposal* |
|---|---|---|
| Initial Disclosures | 10 days after the CMC | 10 days after the CMC |
| Initial Written Discovery |  | 10 days after the CMC |
| Last Day to Join Parties or Amend Pleadngs | 30 days before the close of discovery | 120 days after Plaintiff amends to substitute / join the Trustee as a party plaintiff |
| Initial ADR Session: | January 7, 2019 | After initial round of discovery |
| Non-Expert Discovery Cut-off: | March 5, 2019 | April 11, 2019 |
| Designation of Experts: | Opening: February 5, 2019<br>Rebuttal: | Opening: February 5, 2019<br>Rebuttal:  February 19, 2019 |
| Expert Discovery Cut-off | March 5, 2019 | April 11, 2019 |
| Dispositive Motion Hearing Deadline: | June 6, 2019 | June 20, 2019 |
| Final Pretrial Conference | August 5, 2019 | September 17, 2019 |
| Trial Date: | September 5, 2019 | October 21 2019 |
| Trial Length: | 4 to 5 days trial time | 8 to 12 days trial time |

*Defendants believe it is premature to select discovery cut-off or trial dates before the pleadings are settled, since the scope and timing of discovery will be substantially impacted by the timing of when the case is fully at issue.  Thus, Defendants respectfully request that the Court set a further scheduling conference approximately thirty (30) days after Defendants' to-be-filed counterclaims and third party claims have been answered.

**18.     Trial**

Plaintiff has demanded a jury trial.  Defendants do not waive their right to trial by jury and also demand a jury.  Plaintiff estimates that trial will require 4 to 5 days of trial time.

*Form updated May 2018*

Defendants estimate the trial will require 8 to 12 days of trial time, but that estimate may change after the pleadings are settled and also as discovery progresses.

**19.  Disclosure of Non-party Interested Entities or Persons**

    A.  Plaintiff's Disclosure

Plaintiff TechShop, Inc. filed a disclosure statement on February 16, 2018 (Doc. No. 5) and again on February 20, 2018 (Doc. No. 8). At this time, Plaintiff TechShop, Inc. is not aware of any party other than the named parties and the trustee of the estate (Ms. Doris Kaelin) that has a financial interest in the subject matter in controversy or in a party to the proceeding or any other kind of interest that could be substantially affected by the outcome of the proceeding. The named parties are:

        TechShop, Inc. (plaintiff)

        Dan Rasure (defendant)

        TechShop 2.0 LLC (defendant)

        TechShop 2.0 LLC San Francisco (defendant)

In addition, Ms. Doris Kaelin has been named trustee of the bankruptcy estate of TechShop, Inc.

    B.  Defendants' Disclosure

Defendants filed their *Certification of Interested Persons or Entities* on May 3, 2018. (Doc. No. 16.)

At this time, Defendants are not aware of any persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities that (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding, except the following:

    Parties and trustee listed in sub-section A above;

    James Newton (anticipated third-party-defendant);

*Form updated May 2018*

Daniel Woods (anticipated third-party-defendant); and

the following persons and entities listed in the schedules filed in the Bankruptcy Case:

Autodesk, Inc. (the largest creditor of Plaintiff TechShop, Inc.)

Lowe's Companies, Inc. (2nd largest creditor of Plaintiff TechShop, Inc.

**20.     Professional Conduct**

Both counsel have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.     Other**

The Trustee has filed a motion in the Bankruptcy Case for authority to employ Parrish Law Offices and James Pistorino to represent the Trustee in this case.  Objections have been filed and the next step is for the Trustee's bankruptcy counsel to set a hearing date and send out notice of the hearing.

Pending that decision, Mr. Pistorino is appearing with the consent of the Trustee and at her direction.

Defendants are concerned as to what authority Mr. Pistorino has to act for plaintiff in this case until the Trustee is joined as a party plaintiff in this case and is authorized to employ special counsel to represent her in this case.

The parties are not aware of other relevant issues at this time.

Dated:  June 1, 2018         /s/ James Pistorino
                             Counsel for plaintiff

Dated:  June 1, 2018         /s/ Ann McFarland Draper
                             Counsel for defendant

*Form updated May 2018*