James C. Pistorino (SBN 226496)
    james@dparrishlaw.com
Parrish Law Offices
224 Lexington Dr.
Menlo Park, CA  94025
Telephone: (650) 400-0043

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TECHSHOP, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>DAN RASURE, et al.<br><br>    Defendants. | Case Number: **4:18-cv-01044-HSG**<br><br>**TECHSHOP'S BRIEF RE: DAMAGES THEORIES** |

Pursuant to the Court's Order of June 20, 2018, Plaintiff TechShop, Inc. files this brief addressing the legal question of available damages theories. Defendants contend that Plaintiff is barred, as a matter of law, from presenting various damages theories and Plaintiff disputes that assertion. As directed by the Court, the parties met and conferred on the exact legal question, the answer to which may facilitate settlement discussions. The agreed legal question is:

> Whether Plaintiff can recover, as a component of damages for infringement of the two federally-registered marks for TECHSHOP, a license fee that Plaintiff would have obtained from Defendants if Defendants had obtained a license from Plaintiff, even though there was no prior license agreement between the parties.[1]

---

[1] While Plaintiff does not know on what basis Defendants contend that lost licensing revenue is unavailable as a measure of damages, Defendant has stated that it is not based on: 1) any alleged damages distinction between trademarks and "service marks"; or 2) Defendants ability to pay damages. Moreover, for the purposes of answering the legal question, Plaintiff understands that there is no relevant fact dictating Defendants' position, i.e., it is solely a question of law.

Page 1 of 5

Defendants contend that, as a matter of law, Plaintiff is barred from recovering damages using this theory for some unknown reason while Plaintiff contends that it is not. In any event, Plaintiff contends that the answer to the exact legal question is "Yes."

## TRADEMARK / SERVICE MARK INFRINGEMENT DAMAGES

In relevant part, 15 U.S.C. § 1117(a) provides:

> When a violation of any right of the registrant of a mark registered in the Patent & Trademark Office ... shall have been established ..., the plaintiff *shall be entitled* ..., subject to the principles of equity, *to recover* (1) defendant's profits, (2) *any damages sustained by the plaintiff*, and (3) the costs of the action. ... In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. ... The court in exceptional cases may award reasonable attorney fee to the prevailing party.

(emphasis added). In the trademark context infringement context, it is important to distinguish between the *fact* of damages and the *amount* of damages. Because of the nature of the rights at stake, trademark holders are held to a lower standard in proving the exact amount of damages. *See, e.g., Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1112-3 (9th Cir. 2012). Indeed, even "crude" measures of damages may be applied and neither empirical quantification nor expert testimony are required. *Id.* at 1113. All that is required is evidence to permit the jury to make reasonable inferences and make a fair and reasonable assessment.

"Any damages sustained by the plaintiff" may come in many forms. One form of damage is the loss of reputation / goodwill and corrective advertising. *Skydive*, 673 F.3d at 1112-3 (affirming $2.5 million in actual damages for loss of reputation / goodwill and possible corrective advertising). Other forms of damages may include increased expenses as a result of the infringement.

Yet another form of damages are lost licensing revenues. Numerous cases apply lost licensing revenues as a measure of damages, even where there was no prior agreement between the mark holder and the alleged infringer. Cases of this type include: *QS Wholesale, Inc. v. World Marketing, Inc.*, 2013 WL 1953719 (C.D. Cal., May 9, 2013); *Shakey's USA, Inc. v.*

*Tutto's Pizza Corp.*, 2009 WL 3211027 (E.D. Cal., Sept. 30, 2009) (5% licensing rate); *addidas America, Inc. v. Payless Shoesource, Inc.*, 2008 WL 4279812 (D. Or., Sept. 12, 2008) ($30 million reasonable royalty); *ADT & ADT US Holdings, Inc. v. Alarm Protection LLC*, 2017 WL 2212541 (S.D. Fla. May 17, 2017); *Sands, Taylor, & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1344-45 (7th Cir. 1994) (affirming $10 million royalty rate based on hypothetical royalty); *Sands, Taylor, & Wood v. Quaker Oats Co.*, 1995 WL 221871 (N.D. Ill., April 12, 1995) (doubling royalty to $20 million to make "infringement sufficiently unprofitable.").[2]

In *QS Wholesale*, the parties engaged in negotiations to *sell* the mark but those discussions did not result in an agreement. Thereafter, the infringer used a version of the mark likely to cause confusion anyway ("VISITOR" vs "VSTR"). The infringer's business was not successful and the infringer lost money. Thereafter, the mark holder sought lost licensing revenues as damages. The infringer argued that; "as a matter of law, [the mark holder] cannot be awarded 'reasonable royalties' in the absence of a prior licensing contract or licensing negotiations between the parties" (because the parties only discussed a sale *not* a license). *QS Wholesale*, at *3. The court rejected that claim. *Id.* at *5.

Nevertheless, damages based on a "compulsory license" are inappropriate.[3] *See* THOMAS J. MCCARTHY, *McCarthy on Trademarks* § 30:85 (Supp. 2013). In addition, "it is essential that trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement." *See Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1275 (9th Cir. 1982). Thus, it is important that damages awarded by the court render infringement uneconomic.

---

[2] Damages based on expected licensing fees were also applied in *Kirby Morgan Drive Systems, Inc. v. Submarine Systems, Ltd.*, 2009 WL 10671411 (C.D. Cal., Dec. 9, 2009). However, it is difficult to tell if there was a pre-existing licensing arrangement between the parties in that case.

[3] A "compulsory license" would be a court ordered license by the plaintiff to the defendant, including for future infringement, at a court determined rate.

While not necessary to decide the exact legal question presented, it appears to be undisputed that there is evidence of past licensing activities by TechShop related to the marks at issue, including activities proximate in time to the infringement, and that there were negotiations between the parties prior to the alleged infringement. Further, Plaintiff believes that there will be evidence in support of both actual confusion and intentional / willful infringement. All of these are factors that would tend to support both actual damages and increased damages against Defendants.

## CONCLUSION

As noted above, there is no legal bar to Plaintiff seeking lost licensing revenue as a component of damages.

Dated: July 3, 2018  Respectfully submitted,

James C. Pistorino (SBN 226496)
james@dparrishlaw.com
Parrish Law Offices
224 Lexington Dr.
Menlo Park, CA 94025
Telephone: (650) 400-0043

Attorneys for Plaintiff