Ann McFarland Draper (SBN 065669)
   courts@draperlaw.net
**Draper Law Offices**
75 Broadway, Suite 202
San Francisco, California 94111
Tel: (415) 989-5620

**Attorneys for Cross-Complainants**
**Dan Rasure, TheShop dot Build LLC,**
**and TheShop dot Build San Fran LLC**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TECHSHOP, INC., a California corporation, | Case No. **4:18-cv-01044-HSG** |
| Plaintiff, | |
| vs. | **CROSS-COMPLAINT OF DAN RASURE, THESHOP DOT BUILD LLC AND THESHOP DOT BUILD SAN FRAN LLC; AND DEMAND FOR JURY TRIAL** |
| DAN RASURE, et al, | |
| Defendants. | |
| DAN RASURE, THESHOP DOT BUILD, LLC, a Kansas limited liability company, and THESHOP DOT BUILD SAN FRAN, LLC, a Kansas limited liability company, | |
| Cross-Complainants, | |
| vs. | |
| TECHSHOP, INC., a California corporation and Chapter 7 Debtor, DORIS A. KAELIN, in her capacity as Chapter 7 Trustee for TECHSHOP, INC., JAMES NEWTON, an individual, and DANIEL WOODS, an individual, | |
| Cross-defendants. | Judge:        Hon. Howard S. Gwilliam<br>Trial Date:   June 3, 2019<br>Action Filed: February 16, 2018 |

Comes now Defendant and Cross-Complaint DAN RASURE, a resident of the State of Kansas ("Rasure"), and Defendant and Cross-Complaint THESHOP DOT BUILD, LLC, a Kansas limited liability company ("Build LLC"), and Defendant and Cross-Complainant THESHOP DOT BUILD SAN FRAN, LLC, a Kansas limited liability company ("Build SF"), and hereby assert the following counterclaims, claims for relief, and cross-claims against Cross-Defendants

*Techshop, Inc., v Dan Rasure, et al* (4:18-cv-01044-HSG)                                         - 1
CROSS-COMPLAINT OF DAN RASURE, THESHOP DOT BUILD LLC AND
THESHOP DOT BUILD SAN FRAN LLC; AND DEMAND FOR JURY TRIAL

TECHSHOP, INC., a California corporation and Chapter 7 Debtor ("TSINC"), DORIS A. KAELIN, in her capacity as Chapter 7 Trustee, JAMES NEWTON, an individual ("Newton"), and DANIEL WOODS ("Woods"), (collectively "Cross-defendants"), as set forth below.

## PARTIES

1.     Cross-complainant Rasure is an individual and resident of the State of Kansas.

2.     Cross-complainant Build LLC is a limited liability company duly organized and existing under the laws of the State of Kansas.  Build LLC has its registered office and principal place of business in the State of Kansas.

3.     Cross-complainant Build SF is a limited liability company duly organized and existing under the laws of the State of Kansas.  Build SF has its registered office and principal place of business in the State of Kansas.

4.     On information and belief, Cross-defendant TechShop, Inc. ("TSINC") is a California corporation, having its last known principal place of business in Menlo Park, California.  TSINC is a Chapter 7 Debtor in Case No. 18-50398 now pending in the United States Bankruptcy Court for the Northern District of California.

5.     Doris A. Kaelin ("Trustee") is the appointed and acting Chapter 7 Trustee for the Chapter 7 bankruptcy case of TSINC.  As such, Trustee is the  and is named herein in her capacity as Chapter 7 Trustee.  Trustee is the sole representative of the bankruptcy estate that was created when TSINC filed its Petition under Chapter 7.

6.     At all times material hereto, Cross-defendant James Newton ("Newton") was a director and the Chairman of the Board of Directors of Cross-defendant TSINC.  On information and belief, Newton resides in this District.

7.     At all times material hereto, Cross-defendant Daniel Woods ("Woods") was the Chief Executive Officer of Cross-defendant TSINC.  On information and belief, Woods resides in this District.

**COMMON ALLEGATIONS**

8.     On information and belief, in 2006, Newton and one Ridge McGhee began operating a makerspace in Menlo Park through a predecessor entity that they had formed, namely TechShop LLC, a California limited liability company ("TSLLC").

9.     In April 2007, the predecessor entity (TSLLC) applied for federal registration on the principal register of the term TECHSHOP as a service mark in Class 41 (educational services), for "Education services, namely, providing classes and workshops in the field of fabrication." That application was for a word mark, without claim to any particular font, style, size or color as a feature of the mark.  The application was assigned Serial No. 77164217.

10.    The United States Patent and Trademark Office ("PTO") responded to the application by issuing an Office Action refusing registration on the ground that the proposed mark was merely descriptive and also because of a prior pending application.  TSLLC responded to the first Office Action, but the examiner was not persuaded by the arguments or evidence and issued a second Office Action maintaining the refusal.  TSLLC did not respond to the second Office Action.  On September 9, 2008, the PTO notified TSLLC that its application was abandoned in full because of the failure to respond.  TSLLC did not seek to revive or reinstate the application, and allowed the abandonment to stand.

11.    TSINC was incorporated on or about January 23, 2009, through the conversion TSLLC.  On information and belief, Ridge McGhee exited the business and was not involved in the new entity and TSINC continued operating the makerspace.

12.    In 2010, TSINC filed a new application for federal registration of the same term – TECHSHOP – in both Class 35 (business services) and Class 41 (educational services).  On November 20, 2012, the PTO issued Certification of Registration No. 4247529 for the service mark TECHSHOP on the principal register in Class 35 (business services) and Class 41 (educational services) (hereinafter the " '529 Mark").  The registration of the '529 Mark is for a word mark, without claim to any particular font, style, size or color as a feature of the mark.

13.     Thereafter, TSINC also filed an application for federal registration of the term TECHSHOP in Class 40 (treatment of materials).   On February 26, 2013, the PTO issued Certification of Registration No. 4294110 for the service mark TECHSHOP on the principal register in Class 40 (treatment of materials) (hereinafter the " '110 Mark").  The registration of the '110 Mark is for a word mark, without claim to any particular font, style, size or color as a feature of the mark.

14.     On information and belief, TSINC also adopted and used a gear symbol in its signage and sometimes as a "logo."  On information and belief, TSINC never applied to register the gear symbol as a mark.

15.     On information and belief, at some point TSINC also adopted and used a colorized stylized design containing elements that included the word "tech" (usually in blue), the word "sh*p" (usually in red), and the gear symbol in place of the letter "o" in "shop" (hereinafter referred to as the "Logo").  On information and belief, TSINC never applied to register the Logo as a mark.

16.     Over the years, TSINC established makerspaces in additional locations.   On information and belief, most of these were operated through LLC entities formed for individual entities.  The makerspace locations furnished equipment for the use of members (customers) and offered classes, including safety classes and classes in skills and techniques for novices and hobbyists.  On information and belief, some of the locations were funded in part by substantial payments for services.

17.     On information and belief, the reputation and goodwill associated with the name "TechShop" suffered greatly in negative in 2015 when TSINC and its local LLC entities delayed and/or stopped paying its many of its instructors and contractors.

18.     On information and belief, by the end of 2016 Cross-defendants Newton and Woods were aware that TSINC had serious financial difficulties and was facing insolvency. During the first 10½ months of 2017, TSINC, Newton and Woods actively sought solutions to TSINC's financial distress but were unsuccessful.

19.     On November 15, 2017, TSINC publicly announced that it was closing all ten of its U.S. locations and its small corporate group effective as of 8AM on November 15, and that it would be filing for bankruptcy under Chapter 7.  Within a few hours thereafter, TSINC had in fact shut down all ten of its U.S. locations and corporate offices and had ceased all operations.

20.     On February 26, 2018, TSINC filed its petition for relief under Chapter 7 in the United States Bankruptcy Court for the Northern District of California, in Case No. 18-50398.

21.     On May 17, 2018, an *Order* was entered in TSINC's bankruptcy case (as Doc. No. 94) approving the *Stipulation For Entry Of Order Modifying Automatic Stay With Respect to Pre-Petition Litigation* (filed as Doc. No. 85), and modifying the automatic stay to allow Cross-Complainants to pursue their claims herein.

### FIRST CLAIM FOR RELIEF
### Cancellation of Federal Trademark Registration No. 4247529
### (By all Cross-Complainants against Cross-Defendants TSINC and Trustee)

22.     Cross-complainants repeat and re-allege the allegations contained in paragraphs 1 through 21 above, as if fully set forth herein.

23.     One of the assets of TSINC's bankruptcy estate is the federal service mark registration on the principal register for the '529 Mark, as set forth in Paragraph 12 above.   The mark is registered and held in the name of TSINC, but is subject to the sole management and control of Trustee.

24.     The federal registration for the '529 Mark is not incontestable and is therefore susceptible to cancellation in a Federal Court on any grounds available to a party being damaged by that registration.  Cross-complainants are being damaged by the registration of the '529 Mark.

25.     Cross-complainants have standing to seek cancellation of the federal registration of the '529 Mark because they are damaged by the registration and also because the registrant has placed the validity of the registration in issue in this action.

26.     Upon closing down its locations and ceasing its operations, TSINC discontinued use of the '529 Mark in the United States.   The decision to close its locations and cease using the '529 Mark was a business decision and was under the control of the registrant.

27.     PTO records show that the registrant has not filed a *Declaration of Use of Mark in Commerce Under Section 8* for the '529 Mark as to either of the Classes for which the mark is registered.  On information and belief, the registrant did not continuously use the '529 Mark in commerce on or in connection with ALL services listed in the existing registration for a period of five (5) years after registration. On information and belief, the '529 Mark is not currently used in commerce on or in connection with ALL services listed in the existing registration, or any of said services.

28.     PTO records show that the registrant has not filed a *Declaration of Incontestability of a Mark Under Section 15* for the '529 Mark as to any of the services in either of the Classes for which the mark is registered.  On information and belief, the registrant did not continuously use the '529 Mark in commerce on ALL services listed in the existing registration for a period of five (5) years after registration.  On information and belief, the '529 Mark is not currently used in commerce in connection with ALL services listed in the existing registration, or any of said services.

29.     The federal registration of the '529 Mark should be cancelled, for the following reasons, among others:

A.  Neither TSINC nor Trustee has a valid service mark in TECHSHOP for Class 35.

B.  Neither TSINC nor Trustee has a valid service mark in TECHSHOP for Class 41.

C.  On information and belief, the registrant has not used the '529 Mark on each and every product enumerated for Class 35 in its Registration No. 4247529 prior to the time it filed its original application and therefore made knowingly false representations under oath at the time of filing its application.

D.  On information and belief, the registrant has not used the '529 Mark on each and every product enumerated for Class 41 in its Registration No. 4247529 prior to the time it filed its original application and therefore made knowingly false representations under oath at the time of filing its application.

E.  The registrant has abandoned the '529 Mark in the United States.

*Techshop, Inc., v Dan Rasure, et al* (4:18-cv-01044-HSG)                                          - 6
CROSS-COMPLAINT OF DAN RASURE, THESHOP DOT BUILD LLC AND
THESHOP DOT BUILD SAN FRAN LLC; AND DEMAND FOR JURY TRIAL

F.  The registrant has permanently discontinued use of the '529 Mark in the United States.

G.  The registrant has not maintained the registration of the '529 Mark and cannot do so now.

H.  The '529 Mark is not, or cannot be, controlled by the registrant or the Trustee.

I.  The '529 Mark is "functional".

J.  The '529 Mark has become generic.

K.  The '529 Mark merely describes the features, intended users, and/or purpose of registrant's services.  In the '529 Mark, both of the individual elements (the word TECH and the word SHOP) retain their descriptive meaning in relation to the services listed.  The combination of descriptive words results in a composite mark that is itself merely descriptive.

L.  The registrant has misused the '529 Mark by using the term TECHSHOP in a nominative, descriptive or generic manner, inconsistent with its claim that TECHSHOP is a service mark, and by suffering its subsidiaries and foreign operators to do so.

M.  The registrant has misused the '529 Mark by using the term TECHSHOP in a functional manner identifying the makerspace facility rather than as a service mark, and by suffering its subsidiaries and foreign operators to do so.

N.  The registrant has also misused the '529 Mark by failing to consistently use TECHSHOP only as a service mark on location signage, advertisements, letterhead, and company documents, and by failing to consistently identify it as such.  On information and belief, registrant has never used the SM service mark symbol with its purported word mark TECHSHOP.  On information and belief, registrant has never using the ® registered trademark symbol with its purported word mark TECHSHOP.  On information and belief, registrant has permitted and suffered foreign operators to make widespread use of the term TECHSHOP (including on websites) without any SM or ® symbol to designate the claim that the term TECHSHOP is a service mark or registered service mark.  On information

and belief, registrant has permitted and suffered foreign operators to make widespread use of the term TECHSHOP (including on websites) without any notice that TECHSHOP is a service mark owned by TSINC or that it is used under a license agreement.

O.  The registrant has also misused the '529 Mark by intermittently using and suffering its subsidiaries and foreign operations to use the ® registered mark symbol with the Logo when in fact TSINC has never even applied for federal registration of the Logo, let alone obtained a trademark registration for the Logo.   On information and belief, the use of and the suffering of others to use the ® symbol with the unregistered Logo was done knowingly and willfully in an attempt to deceive or mislead consumers or others in the trade into believing that the Logo was a registered mark owned by TSINC when in fact it had never even sought registration.

30.    Cross-complainants, and each of them, are entitled to have U.S. Registration No. 4247529 cancelled and stricken from the Principal Register.

31.    Based upon the circumstances of the case, Cross-complainants are entitled to recover their costs of suit, legal fees and expenses incurred in the prosecution of this claim for relief.

### SECOND CLAIM FOR RELIEF
### Cancellation of Federal Trademark Registration No. 4294110
### (By all Cross-Complainants against Cross-Defendants TSINC and Trustee)

32.    Cross-complainants repeat and re-allege the allegations contained in paragraphs 1 through 21 above, as if fully set forth herein.

33.    One of the assets of TSINC's bankruptcy estate is the federal service mark registration on the principal register for the '110 Mark, as set forth in Paragraph 13 above.   The mark is registered and held in the name of TSINC, but is subject to the sole management and control of Trustee.

34.    The federal registration for the '110 Mark is not incontestable and is therefore susceptible to cancellation in a Federal Court on any grounds available to a party being damaged by that registration.  Cross-complainants are being damaged by the registration of the '110 Mark.

35.     Cross-complainants have standing to seek cancellation of the registration of the '110 Mark because they are damaged by the registration and also because the registrant has placed the validity of the registration in issue in this action.

36.     Upon closing down its locations and ceasing its operations, TSINC discontinued use of the '110 Mark in the United States.   The decision to close its locations and cease using the '110 Mark was a business decision and was under the control of the registrant.

37.     USPTO records show that the registrant has not filed a *Declaration of Use of Mark in Commerce Under Section 8* for the '110 Mark as to the Class for which the mark is registered. On information and belief, the registrant did not continuously use the '110 Mark in commerce on or in connection with ALL services listed in the existing registration for a period of five (5) years after registration, or any of said services. On information and belief, the '110 Mark is not currently used in commerce on or in connection with ALL services listed in the existing registration, or any of said services.

38.     PTO records show that the registrant has not filed a *Declaration of Incontestability of a Mark Under Section 15* for the '110 Mark as to any of the services in the Class for which the mark is registered.   On information and belief, the registrant did not continuously use the '110 Mark in commerce on ALL services listed in the existing registration for a period of five (5) years after registration.   On information and belief, the '110 Mark is not currently used in commerce in connection with ALL services listed in the existing registration, or any of said services.

39.     The federal registration of the '110 Mark should be cancelled, for the following reasons, among others:

A.   Neither TSINC nor Trustee has a valid service mark in TECHSHOP for Class 40.

B.   On information and belief, the registrant has not used the '110 Mark on each and every product enumerated for Class 40 in its Registration No. 4294110 prior to the time it filed its original application and therefore made knowingly false representations under oath at the time of filing its application.

C.   The registrant has abandoned the '110 Mark in the United States.

D.  The registrant has permanently discontinued use of the '110 Mark in the United States.

E.  The registrant has not maintained the registration of the '110 Mark and cannot do so now.

F.  The '110 Mark is not, or cannot be, controlled by the registrant or the Trustee.

G.  The '110 Mark is "functional".

H.  The '110 Mark has become generic.

I.  The '110 Mark merely describes the features, intended users, and/or purpose of registrant's services.  In the '110 Mark, both of the individual elements (the word TECH and the word SHOP) retain their descriptive meaning in relation to the services listed.  The combination of descriptive words results in a composite mark that is itself merely descriptive.

J.  The registrant has misused the '110 Mark by using the term TECHSHOP in a nominative, descriptive or generic manner, inconsistent with its claim that TECHSHOP is a service mark, and by suffering its subsidiaries and foreign operators to do so.

K.  The registrant has misused the '110 Mark by using the term TECHSHOP in a functional manner identifying the makerspace facility rather than as a service mark, and by suffering its subsidiaries and foreign operators to do so.

L.  The registrant has also misused the '110 Mark by failing to consistently use TECHSHOP only as a service mark on location signage, advertisements, letterhead, and company documents, and by failing to consistently identify it as such.  On information and belief, registrant has never used the ᔆᴹ service mark symbol with its purported word mark TECHSHOP.  On information and belief, registrant has permitted and suffered foreign operators to make widespread use of the term TECHSHOP (including on websites) without any ᔆᴹ or ® symbol to designate the claim that the term TECHSHOP is a service mark or registered service mark.  On information and belief, registrant has permitted and suffered foreign operators to make widespread use of the term TECHSHOP (including on websites)

without any notice that TECHSHOP is a service mark owned by TSINC or that it is used under a license agreement.

M. The registrant TSIN) has also misused the '110 Mark by intermittently using and suffering its subsidiaries and foreign operations to use the ® registered mark symbol with the Logo when in fact TSINC has never even applied for federal registration of the Logo, let alone obtained a trademark registration for the Logo.   On information and belief, the use of and the suffering of others to use the ® symbol with the unregistered Logo was done knowingly and willfully in an attempt to deceive or mislead consumers or others in the trade into believing that the Logo was a registered mark owned by TSINC when in fact it had never even sought registration.

40.     Cross-complainants are entitled to have U.S. Registration No. 4294110 cancelled and stricken from the Principal Register.

41.     Based upon the circumstances of the case, Cross-complainants are entitled to recover their costs of suit, legal fees, expenses incurred in the prosecution of this claim for relief.

### THIRD CLAIM FOR RELIEF
#### Fraud
#### (By Rasure against Cross-Defendants TSINC, Newton and Woods)

42.     Cross-complainant Rasure repeats and re-alleges the allegations contained in paragraphs 1 through 21 above, as if fully set forth herein.

43.     Late in the day on November 16, 2017, Rasure saw an article on Yahoo News that TSINC had shut down all U.S. locations and would be filing Chapter 7 bankruptcy.   Rasure initiated some late night communications with potential intermediaries indicating his interest in a possible deal that would enable him to reopen some of the former U.S. locations under new ownership and management. The following day, Rasure heard from TSINC's largest creditor (Autodesk) and from its then CEO (Woods).

44.     Over the ensuing two weeks, Rasure had extensive discussions and negotiations with Woods and Newton, as well as various other stakeholders (including some of TSINC's creditors and landlords), regarding potential deal terms.   Rasure also reviewed documents and

CROSS-COMPLAINT OF DAN RASURE, THESHOP DOT BUILD LLC AND
THESHOP DOT BUILD SAN FRAN LLC; AND DEMAND FOR JURY TRIAL

conducted sufficient diligence to negotiate principal deal terms for reopening some or all of the former locations under new ownership and management.  During this time, TSINC, Woods and Newton, and each of them, repeatedly promised to provide Rasure and his team with key diligence documents, including accounting records, UCC filings, and the loan agreements and subscription materials for the large number of small lenders and investors who had funded individual locations.

45.     By November 30, a Memorandum of Understanding setting forth a summary of principal deal terms ("MOU") had been prepared by TSINC's Oregon law firm (Tonkon Torp LLP).  Following demands by an outside director of TSINC that Rasure's entity be formed before the MOU was signed by TSINC, Rasure caused the formation of the entity now known as Build LLC to be one of the parties to the MOU that had been prepared by TSINC's attorneys.  These were all done on very short time frames.  The MOU was signed on December 1, 2017, after some corrections were made to allow sufficient time for TSINC to give required notices to shareholders and creditors.

46.     On December 1, 2017, TSINC issued a press release about the Rasure deal, and Woods posted public announcements on TSINC's FaceBook page and Twitter feed that an agreement in principal had been reached, and that the new ownership sought to re-open and continue running the former TSINC shop locations.  Other public announcements characterized the Rasure deal as an asset acquisition.

47.     After the MOU was signed, Rasure and his team continued their intensive work gathering and analyzing documents and information and negotiating with various creditors and landlords of TSINC.  The MOU contemplated that a 20-day notice would be given to shareholders and vendors on December 1 and the transaction would close on December 21, 2017.  However, TSINC continued to delay providing the promised diligence information (including accounting, UCC filings and lender/investor documents).  In addition, Woods and TSINC were pressing Rasure to immediately engage (and pay for) TSINC's former CFO and certain other personnel to help with the "transition" to new ownership, even before the transaction closed.

48.     On the morning of December 12, 2017, TSINC unilaterally terminated the Rasure transaction and MOU.

49.     Between November 17 and the termination on December 12, TSINC, Woods and Newton, and each of them, repeatedly represented to Rasure that TSINC owed approximately $21 Million in secured debt, of which $18+ Million was secured debt owed to AutoDesk.   Rasure repeatedly requested evidence of perfection and copies of the security agreements and UCC filings, all of which were necessary for his diligence.   Between November 17 and the termination on December 12, TSINC, Woods and Newton, and each of them, repeatedly promised to provide these documents (and sometimes said had been sent) but in fact they never provided these documents.

50.     Between November 17 and the termination on December 12, TSINC, Woods and Newton, and each of them:

   A. repeatedly led Rasure to believe that TSINC was negotiating in good faith and intended to move forward to complete the contemplated transaction with Rasure; and

   B. repeatedly promised to provide Rasure and his team with information and documents Rasure needed for his due diligence, including but not limited to accounting materials, UCC filings and lender/investor documents.

51.     The MOU contemplated Rasure making certain payments to complete the deal. Several of the payments were said to be urgently overdue, and others were a part of the wind-down that TSINC would be going through.   TSINC, Woods and Newton, and each of them, represented that immediate payment of certain urgent-payment items described below was necessary for Rasure to be able to complete the deal contemplated by the MOU.   Rasure was pressed to make some of these payments immediately, without waiting for the notices to be given (to shareholders and vendors) or the deal to close, on the understanding that he would be credited for these payments in the deal.   Rasure complied, and made the following urgent payments as, and shortly after, the MOU was being circulated.

A.  A payment of $2,737.24 to Google for past due fees for October 2017 for TSINC's G-Suite account, so that TSINC's documents and records would be available and accessible to facilitate the transaction.  Rasure paid this on November 29, 2017, before the MOU was signed, by credit card, which Rasure authorized as a one-time charge.

B.  A payment of $11,546.58 to TSINC's health insurers for November employee health insurance, which had to be paid before close of business on November 30 to avoid retroactive cancellation.  Rasure arranged for $3,250.74 to be wired to Anthem Blue Cross on November 30, 2017 and for Bill Lloyd (who was then Rasure's prospective co-venturer) to pay $8,295.84 to Kaiser via Kaiser's check-by-phone system, also on November 30, 2017.

C.  A payment of $15,000 to TSINC's Oregon law firm, Tonkon Torp LLP.  Rasure paid this via credit card right after December 1, 2017.

52.   On December 1, 2017, TSINC and Woods insisted that TSINC needed to engage Louise Larsen, a former TSINC employee, to help with TSINC's notifications, social media and PR communications working under Woods' supervision.  TSINC demanded that Rasure fund Ms. Larsen's services from the payment he would be making to complete the transaction described in the MOU.  Rasure acceded to the demands of TSINC and WOODS and, on December 2, 2017, Rasure agreed to $250.00 from the deal funds for Louise Larsen to deliver five  hours of work at $50 per hour.

53.   A few days later, TSINC, Woods and Newton, and each of them, pressed Rasure to immediately make an additional urgent payment of $5,949 to Google for its November fees for TSINC's G-Suite account, which they stated was necessary so that TSINC's documents and email accounts would continue to be available.   Rasure paid this via credit card, which Rasure authorized only as a one-time charge on December 6, 2017.

54.   On December 6, 2017, Louise Larsen billed $1,100 for her services for the period November 30 through December 5.  TSINC pressed Rasure to pay the entire amount billed, even though the amount grossly exceeded the $250 amount Rasure had authorized, and TSINC claimed

it was urgently necessary to be paid immediately.  TSINC continued to press Rasure to pay the $1,100, until he finally made the payment on the evening of December 11, 2017.

55.     Between December 6, 2017 and the moment of the payment to Louise Larsen, TSINC, Woods and Newton, and each of them concealed the fact that the MOU and Rasure's transaction were going to be terminated.  On the evening of December 11, 2017, Rasure paid the entire $1,100 demanded for Larsen's services, via credit card.

56.     On the morning of December 12, 2017, TSINC unilaterally terminated the Rasure transaction and MOU.  Neither TSINC nor Woods nor Newton made any offer to return the monies Rasure had advanced between November 17 and the MOU termination.

57.     Rasure supplied credit card information for the sole purpose of making the above-described payments of $2,737.24 and $5,949 to Google.  Each of these two Google payments was authorized by Rasure to be made as a one-time charge.  Newton created a G-Suite login for Rasure so that he could type in his credit card number, but the login could not be used to obtain access to emails or information stored in the cloud account.  Each time Rasure supplied his credit card information, he specifically made sure he did not authorize the card to be used for any ongoing payments or automatic charges, but only for the two specific amounts that he authorized as one-time charges.   Two days after Rasure authorized the second payment, his login no longer worked; four days later, the MOU was cancelled by TSINC.

58.     On January 31, 2018, Google charged $5,919.99 against Rasure's credit card for TSINC's S-Suite Account.  The January 31, 2018 charge was never authorized by Rasure. Although Rasure has disputed this charge with Google, Google claims that the charge was authorized.

59.     The aforesaid representations made by TSINC, Woods and Newton as set forth above were false.  TSINC, Woods and Newton, and each of them, knew the said representations, and each of them, to be false and misleading when made.

60.     At the time TSINC, Woods and Newton made the promises set forth above, TSINC, Woods and Newton, and each of them, did not intend to perform the said promises.

61.     The aforesaid representations, concealment and promises were made by TSINC, Woods and Newton, and each of them, for the purpose of inducing Rasure to sign the MOU and to pay the monies as described hereinabove.

62.     At all times material hereto, Rasure was ignorant:

A.  of the falsity of the aforesaid representations;

B.  of TSINC's intention not to perform its promises;

C.  that TSINC, Woods and Newton were not negotiating in good faith;

D.  that TSINC, Woods and Newton intended to use Rasure's credit card information to pay TSINC charges not authorized by Rasure;

E.  that TSINC did not intend to complete the contemplated transaction with Rasure; and

F.  that TSINC did not intend to supply Rasure with the promised diligence materials.

63.     The aforesaid representations, concealment and promises made by TSINC, Woods and Newton, and each of them, were material, and Rasure relied to his detriment on the facts and promises as represented and stated.  But for the representations, concealment and promises, Rasure would not have made the monetary payments described above and would not have supplied his credit card information for the one-time payments to Google.   In addition, but for the representations and promises, Rasure would not have expended his time in the intense negotiations, would not have incurred the out-of-pocket expense for travel from Kansas to California, Arizona and other sites, and would not have incurred the expense for legal, professional and business assistance with the diligence review and deal negotiations.

64.     Rasure's reliance was reasonable under the circumstances.

65.     Rasure was injured as a legal result of the misrepresentations, concealments, and promises of TSINC, Woods and Newton made without intent to perform.

66.     On information and belief, Cross-defendants and each of them engaged in the foregoing conduct with malice, oppression or fraud.   In engaging in the foregoing conduct, Newton and Woods were each acting as an officer, director, or managing agent of TSINC.

67.     Rasure is entitled to pre-judgment interest at the legal rate on all out-of-pocket payments described above.

68.     As a direct legal and proximate result of the actions of TSINC, Woods and Newton and each of them, Rasure has been damaged in an amount in excess of $34,000 for out-of-pocket payments described above, plus additional amounts according to proof at the time of trial.

69.     As a further direct legal and proximate result of the actions of TSINC, Woods and Newton and each of them, Rasure has been damaged in general damages according to proof at the time of trial.

70.     Cross-complainant Rasure is entitled to recover all damages sustained from the wrongful acts of TSINC, Woods and Newton and each of them, in an amount to be determined at trial; and to recover its costs of suit, legal fees, expenses incurred in the prosecution of this claim for relief.

71.     Based upon the circumstances of the case, including the willful, deliberate and intentional nature of the wrongful acts of TSINC, Woods and Newton and each of them, Rasure is further entitled to recover treble the amount found as actual damages for all harm caused to him.

72.     Based upon the circumstances of the case, including the malicious, oppressive and fraudulent nature of the wrongful acts of TSINC, Woods and Newton and each of them, Rasure is further entitled to recover punitive damages in addition to his actual damages for the harm caused to him.

**FOURTH CLAIM FOR RELIEF**
**Wire Fraud (18 U.S.C 1343)**
**(By Rasure against Cross-Defendants TSINC, Woods and Newton)**

73.     Cross-complainant Rasure repeats and re-alleges the allegations contained in paragraphs 1 through 21 and 43 through 72 above, as if fully set forth herein.

74.     On information and belief, Cross-defendants  TSINC, Woods and Newton, and each of them, intended obtain Rasure's monies to pay expenses of TSINC, including bills for health insurance, G-Suite cloud services, and its Oregon attorneys.  On information and belief, TSINC, Woods and Newton, and each of them, also intended obtain Rasure's monies to cover

expenses of its winding up and shut down as well as to provide income for its former CFO and certain other employees who had not yet found new employment.

75.     On information and belief, TSINC, Woods and Newton, and each of them, devised a scheme and artifice to swindle and defraud Rasure of his money and property by means of false or fraudulent pretenses, representations, and promises made without intent to perform, as described hereinabove.

76.     TSINC, Woods and Newton, and each of them, in their roles and involvement as alleged hereinabove periodically used the wires (including both email and telephone) for the purpose of executing such scheme or artifice, including: to transfer information that is fraudulent (including the above-described misrepresentations and promises), and to transfer funds electronically through the telephone, through the FedWire system (formerly known as the "Federal Reserve Wire Network"), and through the Automated Clearing House ("ACH") system.

77.     On information and belief, Cross-defendants and each of them engaged in the foregoing conduct with malice, oppression or fraud.   In engaging in the foregoing conduct, Newton and Woods were each acting as an officer, director, or managing agent of TSINC.

78.     Rasure is entitled to pre-judgment interest at the legal rate on all out-of-pocket payments described above.

79.     As a direct legal and proximate result of the actions of TSINC, Woods and Newton and each of them, Rasure has been damaged in an amount in excess of $34,000 for out-of-pocket payments described above, plus additional amounts according to proof at the time of trial.

80.     As a further direct legal and proximate result of the actions of TSINC, Woods and Newton and each of them, Rasure has been damaged in general damages according to proof at the time of trial.

81.     Cross-complainant Rasure is entitled to recover all damages sustained from the wrongful acts of TSINC, Woods and Newton, and each of them, in an amount to be determined at trial; and to recover his costs of suit, legal fees, expenses incurred in the prosecution of this claim for relief.

82.     Based upon the circumstances of the case, including the willful, deliberate and intentional nature of the wrongful acts of TSINC, Woods and Newton, and each of them, Cross-complainant Rasure is further entitled to recover treble the amount found as actual damages for all harm caused to him.

83.     Based upon the circumstances of the case, including the malicious, oppressive and fraudulent nature of the wrongful acts of TSINC, Woods and Newton, and each of them, Cross-complainant Rasure is further entitled to recover punitive damages in addition to his actual damages for the harm caused to him.

## **PRAYER FOR RELIEF**

WHEREFORE, Cross-Complainants request judgment against Cross-Defendants as follows:

1.     That the Court enter judgment in favor of Cross-Complainants and against Cross-Defendants on each claim for relief in this Cross-Complaint;

2.     That the Court issue an order directing the U.S. Trademark Office to cancel forthwith Registration No. 4247529 for the mark TECHSHOP and strike the registration from the Principal Register;

3.     That the Court issue an order directing the U.S. Trademark Office to cancel forthwith Registration No. 4294110 for the mark TECHSHOP and strike the registration from the Principal Register;

4.     That Cross-Complainants be awarded general, special and punitive damages against Cross-Defendants and each of them, in an amount according to proof but no less than the amounts listed in the above claims for relief, together with prejudgment interest thereon, and that the award be trebled as to the claims for which punitive damages are not awarded;

5.     That Cross-complainants be awarded their costs of suit in this action together with the reasonable attorneys' fees incurred in the prosecution of their claims for relief, subject to such apportionment, if any, as the Court deems appropriate;

13

1    6.    That Cross-Complainants be awarded such other and further relief as this Court

2  deems just and proper.

3  DATED: July 26, 2018

4                                    Respectfully Submitted,

5                                    DRAPER LAW OFFICES

6

7                                    By_____/s/ Ann McFarland Draper_____

8                                          Ann McFarland Draper

9                                    Attorneys for Cross-Complainants Dan Rasure,
                                     TheShop dot Build LLC, and TheShop dot Build San
                                     Fran LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## JURY DEMAND

2    Cross-complainants, and each of them, hereby demand a trial by jury on all issues triable

3 by right to a jury that are raised for determination by this Cross-Complaint and/or by Plaintiff's

4 Complaint herein.

5

6 DATED:  July 26, 2018

7              Respectfully Submitted,

8              DRAPER LAW OFFICES

9

10             By_____*/s/ Ann McFarland Draper*_____

11              Ann McFarland Draper

12             Attorneys for Cross-Complainants Dan Rasure,
              TheShop dot Build LLC, and TheShop dot Build San

13             Fran LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, Ann McFarland Draper, hereby declare and certify as follows:

1.    I am an attorney at law over the age of eighteen (18) years and not a party to this action.  My business address is 75 Broadway, Suite 202, San Francisco, CA  94111.

2.    On July 26, 2018, I electronically served true and correct copies of the foregoing document *CROSS-COMPLAINT OF DAN RASURE, THESHOP DOT BUILD LLC AND THESHOP DOT BUILD SAN FRAN LLC; AND DEMAND FOR JURY TRIAL* by electronically filing said document with the Clerk of the Court using the CM/ECF system and transmission of the Notice of Electronic Filing for such document via the Court's NEF system to the following persons, each of whom is deemed to have consented by electronic service by NEF:

James C. Pistorino          james@dparrishlaw.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed this 26th day of July, 2018, at San Rafael, State of California.

_____
*/s/ Ann McFarland Draper*

Ann McFarland Draper