James C. Pistorino (SBN 226496)
    james@dparrishlaw.com
Parrish Law Offices
224 Lexington Dr.
Menlo Park, CA  94025
Telephone: (650) 400-0043

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORIS A. KAELIN, in her capacity as the Chapter 7 trustee of the estate of TECHSHOP, INC., <br><br> Plaintiff, <br><br> vs. <br><br> DAN RASURE, et al. <br><br> Defendants. | Case Number: **4:18-cv-01044-HSG** <br><br><br> **TECHSHOP'S MOTION TO DISMISS** |

Plaintiff, Doris A. Kaelin, in her capacity as the Chapter 7 trustee of the estate of TechShop, Inc. (hereinafter "TechShop") moves to dismiss the "cross-complaint" filed by Defendants. The "cross-complaint" should be dismissed because it alleges fraud and fails to comply with FED.R.CIV.P. 9(b)'s requirement of particularity and/or *Iqbal/Twombly*.[1]

**BACKGROUND**

**Procedural Posture**

This suit was filed on February 16, 2018 by TechShop, Inc. alleging trademark infringement by Defendants Dan Rasure, TechShop 2.0 LLC, and TechShop 2.0 San Francisco LLC.  After an extension of time to respond has passed and on the eve of Plaintiff filing a motion

---

[1] For the purposes of this motion, the factual allegations of the "cross-complaint" are taken as true, regardless of whether Plaintiff disputes them.

for default, on May 15, 2018, Defendants responded with a motion to dismiss contending that the intervening filing of a Chapter 7 bankruptcy petition deprived the Court of jurisdiction.

On July 26, 2018, Defendants filed a "cross-complaint" naming TechShop, Inc., the trustee, Daniel Woods, and James Newton as "cross-defendants." Particularly relevant to this motion are the Third and Fourth Claims alleging fraud and wire fraud. *See* Paras. 42-83.

On August 13, 2018, Plaintiff filed a First Amended Complaint naming the trustee as the plaintiff. Defendants have never filed an Answer.

**Legal Standards**

Pursuant to FED.R.CIV.P. 9(b):

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

"[The Ninth Circuit] has interpreted Rule 9(b) to require that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (internal quotation marks and citation omitted). In short, a fraud claim must state "the who, what, when, where, and how" of the alleged conduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false or misleading", *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir, 1994) (*en banc*), *superseded by statute on other grounds as stated in Ronconi v. Larkin*, 252 F.3d 423, 429 & n. 6 (9th Cir. 2001). Where multiple defendants are accused of fraudulent conduct, the plaintiff must identify the role of each defendant in the fraud. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISCUSSION**

Frankly, it is very difficult to follow Defendants' allegations and they are defective in multiple ways.

Undifferentiated Allegations

As noted above, fraud plaintiffs are required "to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007). Lumping fraud defendants together is not permitted.

All of the allegations of the "cross-complaint" lump the fraud defendants together both as to the factual allegations and as to the alleged claims/relief. As a general matter, the "cross-complaint" uses the canned phrase "TSINC, Woods, and Newton" for the allegations. See Paras. 44, 49-51, 53, 55, 56, 59, 61-63, 65, 68-72, 74-76, 79-83. In a few instances, the "cross-complaint" uses the phrases "Woods *and* TSINC" or "TSINC *and* Woods."[2] See Paras. 47 and 52 (emphasis added). In yet other instances, the fraud defendants are explicitly lumped together as "cross-defendants." See Paras. 66, 74, 77. See also Prayer for Relief. That is not allowed and does not put the fraud defendants on notice of what is alleged with the "particularity" required by the Rule.

Lack of Who, What, When, Where, and How

As noted above, a complaint alleging fraud must state "the who, what, when, where, and how" of the alleged conduct. *Cooper*, 137 F.3d at 627 (9th Cir. 1997). The allegations of the "cross-complaint" simply never provide the basic who, what, when, where, and how of the alleged fraud.

---

[2] The "cross-complaint" makes a distinction between, e.g., "Woods and TSINC." Thus, the "cross-complaint" does not make clear whether, in each instance involving TSINC, the allegation is that someone other than Woods or Newton were acting for TSINC or not.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Just picking one allegation and analyzing it illustrates the defects.  Paragraph 50 of the "cross-complaint" states, in part:

> Between November 17 and the termination on December 12, TSINC, Woods, and Newton, and each of them: A) repeatedly led Rasure to believe that TSINC was negotiating in good faith and intended to move forward to complete the contemplated transaction with Rasure; and B) repeatedly promised to provide Rasure and his team with information and documents Rasure needed for his due diligence, including but not limited to accounting materials, UCC filings and lender investor documents.

First, who is the "who" in the allegation?  Was it Mr. Woods, Mr. Newton, TSINC, a sub-combination, or all of them?  If TSINC is somehow included, that is a legal entity that can only act through a natural person.  Which person or persons?  Moreover, because it is alleged that whatever occurred occurred "repeatedly", was there one person/entity on one occasion and different/fewer/more persons/entities on other occasions?  The "cross-complaint" does not allege.

Second, for any particular person and instance, "what" did they say or communicate?  Was it: "I promise to get you the documents no later than Thursday"?  Was it: "I promise to do my best to get you the documents by Thursday?"  Was it: "Let's shoot for Thursday for documents"?  Was it: "I will work on documents"?  Again, no specific statement or promise is ever alleged.

Third, "when"?  The allegation is "repeatedly" between November 17 and December 12.  With "particularity", on which specific date(s) were promises or representations made by whom?  Again, the "cross-complaint" does not allege.

Fourth, "where" and "how"?  The "cross-complaint" never provides the "how" of any alleged promise or misrepresentation.  Was it oral and in-person, in writing and hand delivered, sent through the mails, by phone, or over the Internet?  If it was oral, "where" was the speaker and/or the listener?  Again, the "cross-complaint" does not allege.

The allegations never provide any of the "particularity" information required and, without that, the "cross-defendants" cannot even investigate the claims and can "just deny that they have

done anything wrong." *Neubronner v. Milken*, 6 F.3d at 671. Precluding that is the very purpose of FED.R.CIV.P. 9(b). Every single allegation of the "cross-complaint" suffers from one or more of these defects.

In sum the "cross-complaint" merely alleges that somebody or someone said or did something at some time in some way and that Mr. Rasure alleges is fraudulent. That is not what FED.R.CIV.P. 9(b) requires.

<u>Lack of Explanation of Why Statement/Omission Was False or Misleading</u>

As indicated above, in addition, to the who, what, when, where, and how of the alleged fraud, a complaint alleging fraud must "set forth an explanation as to why [a] statement or omission complained of was false or misleading." *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d at 1548. "The rule therefore precludes plaintiff from simply pointing to a statement by a defendant, noting that the content of the statement 'conflicts with the current state of facts,' and concluding that 'the charged statement must have been false' at the time it was made." *Id.* (citing *GlenFed*, 42 F.3d at 1548). Instead, a plaintiff must set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading when made. This can be done most directly by pointing to inconsistent contemporaneous statements or information (such as internal reports) which were made by or available to the defendants. *GlenFed*, 42 F.3d at 1549. Moreover, "a plaintiff must point to *facts* which show that defendant harbored an intention not to be bound by terms of the contract at formation." *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002) (emphasis in original).

Mere subsequent failure to perform a contract/promise is not evidence of fraud. Instead, the complaint must allege *facts* from which a Court can infer that the allegedly fraudulent statements were false *when made*. Thus, a mere allegation that the fraud defendant did not intend to honor its contract/promise does not suffice. Likewise, an allegation that the fraud defendant did not perform a contract/keep a promise is not sufficient to allege that a fraud defendant did not intend to perform a contract/keep a promise at the time the contract was

formed/promise made. *See also Muse Brands, LLC v. Gentil*, 2015 WL 4572975 (July 28, 2015 N.D. Cal.) (Corely, J) (colleting cases).

In the present case, there is simply nothing other than allegations that the fraud defendants did not intend to perform or perform. Thus, the "cross-complaint" fails to allege *facts* from which the Court could infer that the unspecified promises/statements were false when made.

Google GSuite Allegations

TechShop separately addresses the allegations with respect to Google GSuite charges and Mr. Rasure's credit card to highlight the defects of the "cross-complaint." Paragraphs 51(A), 53, 57, 58, 62, 63, and 74 include Defendants' allegations with respect to Google GSuite charges. In sum, it appears that those paragraphs allege that *Mr. Rasure* supplied credit card information to Google for charges. See, e.g., Para. 57 ("Rasure supplied credit card information … to Google."). Further, the "cross-complaint" alleges that Mr. Rasure intended for this to be a one-time charge. *Id.* Thereafter, the "cross-complaint" alleges that *Google* charged Mr. Rasure amounts that were "never authorized by Rasure." See Para. 58.

Assuming that all of the factual allegations of the "cross-complaint" are true, as we must, what does that have to do with TechShop, Woods, or Newton? There are simply no facts alleged that TechShop, Woods, or Newton had anything to do with charges that were "never authorized by Rasure." How *Google's* alleged unauthorized charges are the result of some alleged fraud by TechShop, Woods or Newton is unexplained or at least not plausibly alleged.[3]

If Mr. Rasure intends to accuse TechShop of perpetrating a fraud, he needs to do so with facts (and a good faith basis for those alleged facts) and the particularity required by the Rules.

---

[3] This may have to do with the fact that TechShop's counsel has indicated that who/which computer provided the credit card information and recurring charge authorization information to Google is something likely to be able to be discovered and established technically. TechShop's counsel has also indicated TechShop's intention to challenge any claim that TechShop or Messrs. Woods or Newton either supplied the credit card or authorized recurring charges as baseless allegations made without evidentiary support.

**CONCLUSION**

For all the reasons set forth above, the "cross-complaint" should be dismissed for failing to comply with Fed.R.Civ.P. 9(b) and/or *Iqbal/Twombly*.

Dated: August 16, 2018                    Respectfully submitted,


James C. Pistorino (SBN 226496)
  james@dparrishlaw.com
Parrish Law Offices
224 Lexington Dr.
Menlo Park, CA  94025
Telephone: (650) 400-0043

Attorneys for Plaintiff