James C. Pistorino (SBN 226496)
   james@dparrishlaw.com
Parrish Law Offices
224 Lexington Dr.
Menlo Park, CA  94025
Telephone: (650) 400-0043

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORIS A. KAELIN, in her capacity as the Chapter 7 trustee of the estate of TECHSHOP, INC., | Case Number: **4:18-cv-01044-HSG** |
| Plaintiff, | **TECHSHOP'S MOTION TO COMPEL, TO DEEM FACTS ADMITTED, PRECLUDE, AND FOR ATTORNEY'S FEES AND BRIEF IN SUPPORT** |
| vs. | |
| DAN RASURE, et al. | **NOVEMBER 29, 2018 AT 2:00PM** |
| Defendants. | **OAKLAND, COURTROOM 2, 4TH FLOOR** |

# Table of Contents

I.    FACTS ................................................................................................................. 1

II.   LEGAL BACKGROUND ................................................................................. 4

III.  DISCUSSION .................................................................................................... 5

   A.   GENERAL ISSUES: ........................................................................................ 5

      i.    Boilerplate Objections ........................................................................... 5

      ii.   Protective Order Objections .................................................................. 6

   B.   WAIVER OF OBJECTIONS ............................................................................ 6

      i.    The August 21, 2018 Responses ............................................................. 6

      ii.   The August 25, 2018 Responses ............................................................. 7

   C.   REQUESTS INDIVIDUALLY .......................................................................... 7

      i.    RFP 1: ...................................................................................................... 8

      iii.  RFP 3: .................................................................................................... 12

      iv.   RFP 4: .................................................................................................... 12

      v.    RFP 5: .................................................................................................... 12

      vi.   RFP 6: .................................................................................................... 13

      vii.  RFP 7: .................................................................................................... 13

      viii. RFP 8: .................................................................................................... 14

      ix.   RFP 9: .................................................................................................... 15

      xi.   RFP 11: .................................................................................................. 16

      xii.  RFP 12: .................................................................................................. 16

      xiii. RFP 13: .................................................................................................. 17

IV.   APPROPRIATE REMEDY ........................................................................... 17

V.    CONCLUSION ............................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Burlington Northern & Santa Fe Railway Co. v. U.S. District Court for the District of Montana,*
  408 F.3d 1142, 1149 (9th Cir. 2005) .......................................................................... 6

*Fidelity National Title Insurance Co. v. Castle,*
  2014 WL 3945590, N.D.C.A August 11, 2014 (Gonzalez Rogers, J.)....................................... 5

*Walker v. Lakewood Condominium Assoc.,*
  186 F.R.D. 584, 587 (C.D. Cal. 1999)........................................................................... 5

*Wolk v. Green,*
  2007 WL 3203050 (N.D. Cal. October 29, 2007) (Zimmerman, J.) ........................................ 5

Pursuant to FED.R.CIV.P. 37(a) and (d), Plaintiff, Doris A. Kaelin, in her capacity as the Chapter 7 trustee of the estate of TechShop, Inc. (hereinafter "TechShop") moves to compel production of documents, to deem facts admitted, and for attorney's fees.  Plaintiff served its First Set of Requests for Production of Documents on June 26, 2018.  Since that time:

1) Defendants failed to respond to the requests within the time provided (even including a two week extension);

2) Defendants then untimely served responses lacking in a good faith basis that appear to have been served solely for the purpose of delay and harassment;

3) more than 3 and half hours of meet and confers later, Defendants then promised to serve amended responses that would "withdraw most of their objections and limitations" by Friday, August 24 and produce documents no later than Monday, August 27; and

4) No amended responses were received on August 24, but early on August 25, unsigned amended responses also lacking in a good faith basis and re-iterating virtually all of the prior objections were served.

5) as this motion was being finalized, Defendants produced 947 pictures beginning at 12:50pm on September 4, 2018.  No financial documents appear to be included, there is no identification of which, if any, request the documents correspond to was provided, no financial documents appear to be included and no privilege log was supplied;

In light of the complete failure of Defendants to comply with their discovery obligations (and the short discovery period provided by the Schedule), Plaintiff requests relief appropriate to both ensure compliance and to ensure the consequences of Defendants' mis-conduct are not borne by Plaintiff.

## I.    FACTS

This action stems from a failed purchase of TechShop assets (including trademarks) that began on November 15, 2017.  This principal activity between the parties occurred between that date and February 16, 2018, when this suit was filed.  Activity and information after that date is relevant to the issues of infringement, damages, admissions, etc.

1

On June 15, 2018, Defendants served their Initial Disclosures. With regard to the disclosure required by FED.R.CIV.P. 26(a)(1)(A)(ii) Defendants did not provide copies of documents. Instead, the Defendants merely listed categories of documents but did not comply with the requirement to provide the "location" of the documents. Exhibit A.

On June 26, 2018, Plaintiff served its First Set of Requests for Production. Exhibit B. On July 25, 2018, Defendants' counsel, Ms. Draper, sought a two-week extension to respond and that request was granted. Thus, the Responses were due on August 13, 2018. No Reponses were received.[1] On August 15, 2018, in response to an inquiry from Plaintiff's counsel, Ms. Draper contended that the responses had been mailed on August 13, 2018. Exhibit C.

When no responses or documents were received by August 20, 2018, Plaintiff's counsel again inquired where the responses were. On August 21, 2018, Ms. Draper sent a PDF scan of a document containing a certification that it was sent by mail on August 13. Exhibit D. Based on the file data, the PDF was created on August 21, 2018, itself. Once received, it was clear that the Responses were lacking in good faith basis with, in many instances, Defendants simply recast the requests in whatever way they found convenient. Further, the Responses were filled with unilateral efforts to limit discovery to particular time frames thought advantageous to Defendants and otherwise evade the requests.

On August 21 and 22, 2018, more than 3 and a half hours of meets and confers were conducted. During the meet and confers, Defendants' counsel provided her view that the trademarks at issue were "shit" and that opposing counsel was a "bad boy" who would be disbarred. In response to Plaintiff's efforts to determine whether there were good faith objections, *inter alia*, Defendants' counsel sought explanation of the legal terms "successors",

---

[1] This is the second time something similar has happened in this case. After being served with the Complaint, Defendants' counsel sought an extension on the response date and that request was granted. After the extension expired, Defendants did not Answer or otherwise respond to the Complaint. It was only the indication by Plaintiff's counsel of their intention to move for default that caused Defendants to untimely respond.

"assigns", "principals", "partners" individually.  In addition, *inter alia*, Defendants' counsel indicated that for several requests no search of any kind had been conducted (e.g., Requests 4 and 7) and that Defendants' counsel did not believe that requests - such as Request No. 1 called for the actual communications between Mr. Rasure and Plaintiff.  This was so, Defendants' counsel contended because the Requests used the phrase "refer or relate to" when requesting such communications and Defendants' counsel preferred the terms "comprising" or "constituting"[2]

Later, on August 22, Defendants wrote Plaintiff's counsel stating that "amended" responses would be served on Friday, August 24, 2018 and that documents would be produced on or before Monday, August 27, 2018.  Exhibit E.  No responses were received on August 24.

Early in the morning of August 25, Defendants served by email "amended" responses and also contended that a copy had been sent by regular mail.  Exhibit F.  Again, these responses lacked in good faith basis and simply repeated many of the prior objections.  Further, these responses were unsigned and also included an unsigned certification that the responses had been mailed.  No mailed copy of the responses has ever been received.

No documents were received on or before Monday, August 27.  As this motion was being finalized, beginning at 12:50pm on September 4, 2018, Defendants produced 947 images. Attached as Exhibit I are some exemplars of this production, which include pictures out of plane windows and large numbers of pictures of apparently random pieces of equipment.

Discovery in this case is scheduled to close on November 2, 2018.  See Dkt. # 37.

Since the beginning of this case, Defendants have asserted the need for a protective order and Plaintiff has indicated that it does not oppose entry of either the standard or patent/trade secret Model Protective Order and is also open to any reasonable proposal from Defendants.

---

[2] The Requests themselves define the terms "refer to" and "relate to" to mean, *inter alia*, "comprising" or "constituting".  See Exhibit B at 2.

3

Defendants have never agreed to any of the standard model protective orders or proposed any other specific protective order.

## II.   LEGAL BACKGROUND

Pursuant to FED.R.CIV.P. 26(g)(1) a signature on a discovery response is a certification that, after a reasonable inquiry, the responses, *inter alia*, are: 1) consistent the Rules and existing law (or a non-frivolous argument for the extension, modification, or reversal of existing law; and 2) not interposed for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the costs of the litigation.  Pursuant to FED.R.CIV.P. 26(g)(2) there is no duty to act on responses that are unsigned and the Court must strike them if a signature is not promptly supplied after the omission if brought to the attention of counsel.  Pursuant to FED.R.CIV.P. 26(g)(3) if the court finds that the certification violated the rules without substantial justification, the court *must* impose an appropriate sanction that may include the reasonable expenses and fees incurred by the other side.

Pursuant to FED.R.CIV.P. 34(b)(2)(E)(i), documents must be produced as they are kept in the usual course of business or organized and labeled to correspond to the requests.

Pursuant to FED.R.CIV.P. 37(a)(3), an evasive or incomplete disclosure or response must be treated as a failure to disclose or respond.  Pursuant to FED.R.CIV.P. 37(a)(5)(A), if the motion is granted or the discovery is provided after the motion was filed, the Court *must* require to the opposing party to pay the expenses and attorneys fees incurred in filing the motion unless: 1) the movant filed before attempting in good faith to resolve the dispute without court action; 2) the opposing party was substantially justified; or 3) other circumstances make an award unjust. Pursuant to FED.R.CIV.P. 37(d)(3), if the Court considers the responses either not actually served or evasive and therefore considered not served, then the Court may impose sanctions, including: fees, deeming fact established, prohibiting the opposing party from supporting claims or opposing defenses, from introducing evidence, striking pleadings in whole or in part, and/or staying the proceedings.

4

### III.   DISCUSSION

This is a classic case of discovery abuse.  From the insufficient Initial Disclosures, the missed response deadlines, the repeated "check is in the mail" claims when no responses or documents arrive, the boilerplate, evasive objections that appear imposed solely for the purpose of delay and harassment, .

Regrettably, it appears that this is not the first time that Defendants' counsel has engaged in such conduct.  In *Fidelity National Title Insurance Co. v. Castle*, 2014 WL 3945590, N.D.C.A August 11, 2014 (Gonzalez Rogers, J.), the court found that Defendants' counsel had engaged in persistent delay and obstruction and hampered discovery.  Exhibit G.  Accordingly, in addition to various other relief, the Court awarded the Plaintiff's attorneys fees payable by Defendants' counsel and her client.  *Id.* at *1, 4.

### a.   General Issues:

To the extent that Court even considers the Responses belatedly served by Defendants, a few general issues merit comment.

### i.   Boilerplate Objections

It is well settled that boiler-plate objections are tantamount to not making any objection at all and that service of such objections is not sufficient to preserve even privilege objections.  *See, e.g., Wolk v. Green*, 2007 WL 3203050 (N.D. Cal. October 29, 2007) (Zimmerman, J.); *Walker v. Lakewood Condominium Assoc.*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all."); *Burlington Northern & Santa Fe Railway Co. v. U.S. District Court for the District of Montana*, 408 F.3d 1142, 1149 (9th Cir. 2005) ("We hold that boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege.").  Even if the Court chooses to consider the untimely responses, the boilerplate nature of them means that they are treated as not objecting at all and claims of privilege based on them are waived.

## ii.        Protective Order Objections

Defendants objections based on their desire for a protective order are baseless. First, of course, Plaintiff's counsel has repeatedly informed Defendants' counsel that Plaintiff does not oppose entry of either of the model protective orders and is also willing to consider any proposal from Defendants. At any time, the parties could have stipulated to one of the model protective orders and that matter resolved either immediately or within a very short period of time. Second, of course, as the party believing that a protective order is necessary, the burden was/is on Defendants to move for one. Defendants have never sought a protective order from the Court. See FED.R.CIV.P. 26(c)(2).

Thus, objections founded on the lack of a protective order appear to be imposed solely for the purpose of harassment and delay.

### b.        Waiver of Objections

The first question for the Court to consider is whether to credit any of the Defendants' objections. Responses were due on August 13, 2018 and no responses were received. As noted, though Defendants included a signed certification alleging that the responses were mailed and also later served an unsigned certification alleging that responses were also sent on August 24, no mailed copy of either has ever been received. In light of all the circumstances and Defendants' discovery misconduct, it is up to the Court to decide whether the credit Defendants' - "the check is in the mail" - claim. In the event that the Court does not credit that claim, then all the objections to the Requests are waived and the Court should order all the responsive documents produced without delay in addition to the other relief requested.

Likewise, if the Court finds that the responses were simply boilerplate and evasive, pursuant to FED.R.CIV.P. 37(a)(3), the Court could simply treat it as a failure to respond with the same result.

#### i.        The August 21, 2018 Responses

6

Attached, as Exhibit D are the Responses served on August 21, 2018.  In Response to Plaintiff's 13 requests, Defendants belatedly served 29 pages of objections.  While a detailed analysis of these will not be conducted, as a general matter, Defendants:

    1)  simply recast the requests to something the Defendants preferred;

    2)  interposed boilerplate objections; and

    3)  otherwise feigned confusion and sought to obstruct the discovery.

Amazingly, Defendants even objected to production of the documents Defendants identified in their Initial Disclosures.  Exhibit D at 29.  The gist of those responses was that Defendants did not intend to produce documents responsive to the requests.  Instead, Defendants might produce some documents Defendants thought helpful to themselves at some point in the future.

<b>ii.          The August 25, 2018 Responses</b>

Attached, as Exhibit F are the responses served by email on August 25, 2018.  As an initial matter, the Court needs to decide whether to even consider these responses.  As noted above, the responses are unsigned.  Pursuant to FED.R.CIV.P. 26(g)(2), there is no duty to act on responses that are unsigned.  In the event that the Court elects to treat these responses as signed, Plaintiff notes that the certification (as well as the accompanying email) allege that the responses were mailed on August 24, 2018 but that, again, no mailed responses have been received.  Again, this calls into question whether the certification is false.

To the extent that the Court finds that the certification was false, then, for the same reasons indicated above, all the objections to the Requests are waived and the Court should order all the responsive documents produced without delay in addition to the other relief requested.  Likewise, if the Court finds that the responses were simply boilerplate and evasive, pursuant to FED.R.CIV.P. 37(a)(3), the Court could simply treat it as a failure to respond with the same result.

<b>c.          Requests Individually</b>

Pursuant to L.R. 37-2, the Requests for Production, Plaintiff's showing of entitlement and proportionality are provided are addressed individually.  Because of their voluminous nature,

7

only Defendants' responses to the first Request are included verbatim herein, as an exemplar (using single line spacing in order to comply with the volume limitations of L.R. 7-4(b)). Defendants' full responses are included as Exhibits D and F.

### i.    RFP 1:

**Request for Production No. 1:**  All documents and things referring or relating to communications between YOU and TECHSHOP, including direct communications to or from YOU and/or TECHSHOP, communications by YOU with third parties about communications with TECHSHOP, and YOUR internal communications referring or relating to TECHSHOP.

**Defendants' August 20 Responses:**

This request is actually three distinct categories of documents, lumped together in a single request. Responding Parties interpret TECHSHOP as TechShop, Inc. Although the syntax of the request calls for documents "referring or relating" to the specified communications, Responding Parties interpret the request as seeking the primary communications themselves. Following a reasonable search, Responding Parties have identified the following documents responsive to Request No. 1, all of which are ESI:

(A) emails, text messages and FB Messenger chats which are direct communications between Responding Parties and TECHSHOP, which are being identified by searching the Data Sources for the following search terms and criteria:

(1) contain at least one of the following in an address field: "@techshop.com" or "@techshop.ws" or "@techshop.global" or "@tonkon.com" or "@earlygrowthfinancial.com" or "danielbwoods@gmail.com" or "doug@dfbca.com" or "sean@seand.info" or "bill@bhlservices.com" and

(2) sent or received during the period November 15, 2017 through February 28, 2018; and

(3) concerning the registered marks sued upon in this action and/or the selection, adoption and/or use of the name and moniker "Techshop 2.0"

(B) emails, text messages and FB Messenger chats which are unprivileged communications by Responding Parties about communications with TECHSHOP, which are being identified by searching the Data Sources for the following search terms and criteria:

(1) containing at least one of the following in an address field: dbyers@hearst.com or josh.ewing@autodesk.com or bill@bhlservices.com; and

(2) sent or received during the period November 15, 2017 through February 28, 2018; and

(3) concerning the registered marks sued upon in this action and/or the selection, adoption and/or use of the name and moniker "Techshop 2.0"

(C) emails, text messages and FB Messenger chats which are unprivileged internal communications of Responding Parties referring or relating to TECHSHOP, which are being identified by searching the Data Sources for the following search terms and criteria:

(1) containing at least one of the following names in an address field: Jerry Gable; Paul Chambers; Joe Murphy; Jeremiah Johnson; or Jeff Porter; and

8

(2) sent or received during the period November 15, 2017 through February 28, 2018; and

(3) concerning the TECHSHOP name and/or the registered marks sued upon in this action and/or the selection, adoption and/or use of the name and moniker "TechShop 2.0"

Responding Parties object to this request insofar as it seeks privileged or confidential information and assert the following privileges and protections: attorney-client; attorney work product; marital privileges; trade secrets; and privacy rights. Responding Parties will not produce any confidential or privileged communications with any of their attorneys, including but not limited to Wesley Smith, John Patrick Deveny, David Icaacson, Steven_, or Ann Draper. Responding Parties will not produce any attorney work product. Rasure asserts all marital privileges; no confidential communications between Rasure and his wife (Megan Drew Weislander) will be produced. Responding Parties will not produce any trade secrets, business dealings, or communications that identify its members or customers. Responding Party will not produce tax returns or other documents revealing any information regarding historical, current, future or projected income, expenses, assets, liabilities, net worth, or finances of any Responding Party, other than documents sufficient to show gross revenues and net loss from operating TheShop dot Build's maker space in San Francisco.

Responding Parties will produce only information relevant to the trademark infringement sued upon, and will withhold or redact information which reveals negotiations (including negotiations with TECHSHOP, its former employees and members, its creditors, its landlords, vendors, investors, corporate customers or prospects), diligence information not related to the marks in issue, financial infonnation (including Responding Parties' plans and projections), Responding Parties' customer lists, Responding Parties' business methods (including analyses and strategies), and Responding Parties' trade secrets.

To the extent Plaintiffs request seeks additional materials, Responding Parties further respond as follows:

(i)   This request is overbroad in that it places no limitation on relevant time frame despite the subject matter of this litigation occurring only during the period November 15, 2017 through February 28, 2018. Responding Parties have therefore limited their search to materials from during the period November 15, 2017 through February 28, 2018.

(ii)   This request is overbroad and unduly burdensome in that a request for "all communications" in the context of this case does not describe the documents to be produced with reasonable particularity.   Responding Parties have therefore limited their search to materials concerning the adoption and use of the registered marks and the name and moniker "TechShop 2.0".

(iii)   Lack of relevance and outside the scope of discovery, in that many of the communications requested have nothing to do with adoption or use of the marks in question and are not relevant to the claims for trademark infringement, cancellation of the marks, or any defenses to the infringement claims that have been alleged. Responding Parties have therefore limited their search based upon the search terms and data locations described above.

(iv)   Lack of proportionality of Request No. 1 to the needs of the case considering (1) the marginal importance of the many of the materials to the infringement and cancellation claims and defenses in this litigation and (2) the substantial cost to identify and review additional responsive materials balanced against the amount in controversy. Responding Parties have therefore limited their search based upon the search terms and data locations described above.

(v)   Some documents may be withheld until entry of a mutually agreeable protective order preventing disclosure of documents to persons who are, or are aligned with, competitors, regardless of whether they are parties or acting as consultants or experts for any party.

9

Upon request by Plaintiff, Responding Parties are willing to meet and confer regarding their response to this document demand and/or any portion thereof.

**Defendants' August 25 Responses:**

This request is comprised of three distinct categories of documents, lumped together in a single request. Insofar as this Request seeks documents and things that are ESI, and to the extent that Responding Parties understand this Request, Responding Parties have made a reasonable search for documents and things responsive to this Request. To the extent that Responding Parties understand this Request, Responding Parties will produce the unprivileged documents and things in their possession, custody or control, except as follows:

Responding Parties object to this request insofar as it seeks documents and things protected by the attorney-client privilege and/or the attorney work-product protection. Responding Parties will not produce any confidential or privileged communications with any of their attorneys, including but not limited to the following attorneys (and their firms): Wesley Smith; John Patrick Deveny; David Icaacson; Steven Allison; or Ann Draper. Responding Parties will not produce any attorney work product.

Responding Parties object to this request insofar as it seeks documents and things protected by the marital privileges. Responding Party Rasure asserts all marital privileges; no confidential communications between Rasure and his wife (Megan Drew Weislander) will be produced.

Responding Parties object to this request insofar as it seeks documents and things protected as trade secrets, confidential commercial information and/or privacy rights. Responding Parties will not produce any trade secrets or confidential commercial information, including but not limited to: business methods, analyses, strategies, plans and projections; member lists, customer lists, marketing lists and other documents and communications that identify its members or customers; and business dealings with its landlords, vendors, investors, corporate customers and/or prospects.

Responding Parties objects to this Request on the grounds of privacy, tax privilege and relevance insofar as it seeks documents or things revealing Responding Parties' tax returns, tax workpapers, or communications with tax preparers. Responding Parties will not produce documents or things revealing information regarding the assets, liabilities, net worth, or finances of any Responding Party.

Responding Parties object to this request on the ground that it is overbroad, unduly burdensome and beyond the scope of discovery in that it places no limitation on the time frame relevant to this action.

Responding Parties object to this request on the ground that it is overbroad, unduly burdensome and beyond the scope of discovery in that a request for "all communications" in the context of this case does not describe the documents to be produced with reasonable particularity, effectively seeking what appears to be every scrap of paper, including documents and things that have nothing to do with the marks in question and those that are not relevant to the claims and defenses asserted in this action. As a result, Responding Parties also object to this request as lacking proportionality to the needs of the case considering (1) the marginal importance of the many of the materials to the infringement and cancellation claims and defenses in this litigation and (2) the substantial cost to identify and review the numerous documents requested balanced against the amount in controversy.

Upon request by Plaintiff, Responding Parties will further meet and confer regarding their response to this Request and/or any portion thereof.

**Plaintiff's Entitlement/Proportionality:**

Clearly, this request seeks the most basic information of the communications between the parties, and what has been communicated about TechShop by Defendants either externally or internally.  This is basic information likely to be relevant to all the issues including infringement and damages.  Defendant Rasure led a small group (on information and belief < 5) of people involved in communications with TechShop.  Accordingly, by its nature and the relatively short time periods involved, the volume of materials should be limited.  Nevertheless, whatever its volume, it is proportional to the issues in this case.

        ii.        **RFP 2:**

**Request for Production No. 2:**  All documents and things referring or relating to the MARKS or use of the MARKS, including documents related to the formation or TechShop 2.0 LLC and/or TechShop 2.0 San Francisco LLC, when YOU began using the MARKS and any date when you contend YOU stopped using the MARKS.

**Plaintiff's Entitlement/Proportionality:**

Again, given the fact that this is a trademark suit, these documents go directly to the core issues of infringement, invalidity, etc.  Whatever the volume of these materials, they are proportional to the issues in this case.

### iii.    RFP 3:

**Request for Production No. 3:**  All documents and things referring or relating to any alleged permission or acquiescence of YOUR use of the MARKS.

**Plaintiff's Entitlement/Proportionality:**

Clearly, these documents are relevant and go directly to alleged defenses.  Whatever the volume of these materials, they are proportional to the allege defenses.

### iv.    RFP 4:

**Request for Production No. 4:**  All documents and things referring or relating to this litigation, including communications with third parties.

**Plaintiff's Entitlement/Proportionality:**

Clearly, statements by a party-opponent about the litigation itself are admissible and relevant to the issues.  On information and belief, Defendants have made a number of statements to third parties about the litigation and those statements may be relevant to the issues of infringement and willfulness, e.g.  At a minimum, this request is reasonably calculated to discover, this relevant, admissible information.  While Plaintiff is unsure what volume these statements are - whatever that volume is it is proportional to the relevance.

### v.    RFP 5:

**Request for Production No. 5:**  All documents and things referring or relating to YOUR revenues, profits, losses, and/or expenses for the period January 1, 2018 to the present, including revenues from memberships and membership lists, and forecasts and projections of the same.

**Plaintiff's Entitlement/Proportionality:**

As a trademark matter, one measure of damages is defendant's profits. See 15 U.S.C. § 1117(a). Pursuant to the statute, plaintiff need only prove sales and defendant bears the burden of proving all costs and deductions from the sales claimed. Here, at the first part, Plaintiff seeks those documents from which sales and offsets may be proven. Yet another measure of damages is plaintiff's damages. Here, one way that Plaintiff alleges it was damaged is based on lost licensing revenues. Thus, information about forecasts and projections is relevant to potential licensing rates/fees. For both measures, membership lists will identify people likely to have relevant information, including as it relates to the issues of infringement.

Again, the limited nature of the Request combined with short time frames involved means that whatever the volume, it is proportional to the issues.

<strong>vi.      RFP 6:</strong>

**Request for Production No. 6:** All documents and things referring or relating to promotions or communications with TECHSHOP members or former members.

**Plaintiff's Entitlement/Proportionality:**

Given that this is a trademark action and actual confusion/likelihood of confusion and infringement is necessarily at issue, this request is reasonably calculated to discover evidence of that confusion/likelihood of confusion and infringement. Clearly, if Rasure, et. al promoted themselves as TechShop, that would be relevant to the issues. Moreover, the persons most likely to be confused are the members/former members. Thus, by also uncovering the communications with members/former members, Plaintiff can identify/investigate the issues. Again, while the volume is unknown, whatever it is, it is proportional to the issues in the case.

<strong>vii.      RFP 7:</strong>

**Request for Production No. 7:** All documents and things referring or relating to TECHSHOP membership or former membership lists or information (including email addresses), including documents referring or relating to accessing databases with such lists or

13

information (including email addresses) and/or accessing TECHSHOP computers with such lists or information (including email addresses), including documents sufficient to show which person or persons provided passwords or other access information to retrieve information from password protected websites, computers, or files.

**Plaintiff's Entitlement/Proportionality:**

One of the items that was the subject of the failed negotiations was access to TechShop's membership lists.  On information and belief, Defendants made efforts to obtain those lists by improperly accessing TechShop computers.  After Defendants gained access to the former TechShop' facility in San Francisco, on information and belief, former TechShop members began receiving unsolicited email communications from Defendants.  This Request seeks to discover information relevant to that issue in order to possibly amend the Complaint to include additional causes of action.  Again, given the focused nature of the request, it is proportional to whatever volume might exist.

<strong>viii.      RFP 8:</strong>

**Request for Production No. 8:**  All documents and things referring or relating to communications between YOU and Fujitsu and/or the San Francisco Unified School District (SFUSD).

**Plaintiff's Entitlement/Proportionality:**

TechShop was party to arrangements with Fujitsu and a potential arrangement with SFUSD.  On information and belief, Plaintiff understands that Defendants have had contact with both and that confusion at to who Defendants were and whether they were TechShop may have occurred.  Again, this is obviously relevant to the trademark infringement issues.  While Plaintiff is unsure what volume these statements are (expected to be minimal) - whatever that volume is it is proportional to the relevance.

14

ix.      **RFP 9:**

**Request for Production No. 9:**  All documents and things referring or relating to communications between YOU and:

(a) Michael Erickson

(b) Tiffani Mascarella

(c) Will Brick

(d) Eric Hess

(e) Louise Larsen

(f) Jon Barbara

(g) Ryan Spurlock

(h) Justin Leathers

**Plaintiff's Entitlement/Proportionality:**

This is a list of eight former TechShop employees/managers and others with whom, on information and belief, Defendants had contact about trying to take over the TechShop business, marks, and/or this litigation.  Thus, the information is relevant to the issues of trademark infringement, damages, and efforts to access TechShop trade secret materials.  While Plaintiff is unsure what volume these materials are (expected to be minimal) – whatever that volume is it is proportional to the relevance.

x.      **RFP 10:**

**Request for Production No. 10:**  All documents and things referring or relating to communications received by YOU intended for TECHSHOP, inquiries as to whether you are TECHSHOP, and/or confusion between YOU and TECHSHOP.

**Plaintiff's Entitlement/Proportionality:**

These documents go directly to the material issues of actual confusion and likelihood of confusion.  Whatever their volume, these documents are critical evidence in this case.

### xi.      RFP 11:

**Request for Production No. 11:** All documents and things referring or relating to Dan Woods, Jim Newton, and/or Doug Busch.

**Plaintiff's Entitlement/Proportionality:**

On information and belief, Defendants only/primary interaction with TechShop was through Messrs. Woods, Newton and/or Busch. While communications with Messrs. Woods, Newton and/or Busch would/would likely fall within other Requests, this Request makes explicit that communications with or about these gentlemen is sought. Such communications are relevant to the issues of infringement, acquiescence, and potentially damages.

Likewise, recently, Defendants have sought to allege fraud, apparently, on the basis of statements, etc. by Messrs Newton and Woods. Thus, these communications would be relevant to those issues as well. Again, whatever the volume, it is proportionate to the relevance and the issues in this case.

### xii.      RFP 12:

**Request for Production No. 12:** All documents and things referring or relating to the modification of images using the TECHSHOP name/MARKS to put "2.0" on the images, including documents sufficient to show who performed the modification and who ordered or authorized it.

**Plaintiff's Entitlement/Proportionality:**

It appears to be undisputed that Defendants took an image bearing the TechShop name/mark from the TechShop website and altered that image to say "2.0" when advertising their own business. Thus, information related to that and how it happened is relevant to infringement. It is difficult to imagine that the documents related to this are voluminous and no specific claim that there are voluminous documents has been made.

xiii.       **RFP 13:**

**Request for Production No. 13:** All documents and things referred to in YOUR Initial Disclosures.

**Plaintiff's Entitlement/Proportionality:**

Of course, this request only seeks those things Defendants themselves identified as documents they may use to support their claims or defenses. Plaintiffs are obviously entitled to see the evidence that might be used against them prior to trial. Clearly, that is proportional to whatever burden is alleged.

## IV.       APPROPRIATE REMEDY

As a result of Defendants' discovery misconduct, practically, two options are available. 1) striking Defendants' pleadings, deeming liability established, ordering the production of financial information and proceeding to trial on damages; or 2) something near that but that eviscerates the Schedule in this case.

**Option #1:**

As noted above, since the beginning of this case, Plaintiff has sought the most basic documents related to the issues, including Defendants' defenses. Defendants have engaged in the discovery misconduct described above and the deadline for amending the pleadings has passed. Thus, if any information was discovered that might form the basis for additional claims, Plaintiff would have to seek leave of Court to do so.

Further, discovery in this case is set to close on November 2, 2018, while the first available date for hearing is November 29, 2018. See Dkt. # 37. Thus, if discovery in this case were to begin something after November 29, 2018, the Schedule would be eviscerated and the case forced to restart.

Accordingly, the option that most closely preserves the Schedule would be to strike the Defendants' pleadings and defenses, deem liability established, order production of financial

17

information, and proceed to trial on damages.  Plaintiff should not have to drag Defendants kicking and screaming to get Defendants to tell Plaintiff what their claims/defenses are.

**Option #2:**

In the alternative, the Court could Order the following relief:

1)      order Defendants to produce all the documents sought by Requests 1-12;
2)      deem it established that there were multiple instances of actual confusion after December 2017;
3)      deem it established that all of Defendants' revenues through trial were the result of use of the marks;
4)      preclude Defendants from offering evidence of alleged invalidity or non-infringement of the marks;
5)      preclude Defendants from offering evidence of offset or deductions from its gross revenues or otherwise offering evidence related to damages; and
6)      preclude Defendants from offering evidence in support of their own claims.

The result of the above would be that TechShop would still bear the burden of proving infringement/likelihood of confusion as well as alleged damages.  Further, TechShop would still have the ability to investigate its claims.  Conversely, Defendants would be precluded from offering the evidence they have withheld or evidence that might be contradicted by the evidence withheld.

In addition to the above, because Plaintiff has been frustrated in its efforts to try and discover the basic facts of this case, the Court should move the deadline for Plaintiff to amend the pleadings and to complete fact discovery until at least two months after Defendants complete whatever production is ordered by the Court.

All of the relief requested is appropriate in light of the misconduct and the fact that Defendants' counsel has repeatedly engaged in such tactics.  In addition, anything short of the above would reward Defendants for the misconduct by frustrating Plaintiff's efforts without serious consequence.

18

**Expenses/Fees:**

Pursuant to L.R. 37-4(b), the Declaration of James Pistorino is attached itemizing the fees incurred and a justification for the hourly rate charged.  At this point, through the end of August, 2018, the requested fees total $5,200 for time spent in meet and confers and drafting the present motion.  Plaintiff will update this figure to reflect time spent during the month of September and in the event a reply or hearing is necessary.

## V.   CONCLUSION

For all the reasons set forth above, the Court should order the relief requested.


Dated: September 4, 2018                              Respectfully submitted,


                                        _____
                                        James C. Pistorino (SBN 226496)
                                          james@dparrishlaw.com
                                        Parrish Law Offices
                                        224 Lexington Dr.
                                        Menlo Park, CA  94025
                                        Telephone: (650) 400-0043

                                        Attorneys for Plaintiff

19