# PARRISH LAW OFFICES

788 WASHINGTON ROAD
PITTSBURGH, PENNSYLVANIA 15228-2021
www.dparrishlaw.com

412.561.6250
FAX 412.561.6253
E-mail: info@dparrishlaw.com

October 5, 2018

Magistrate Judge Joseph C. Spero
United States District Court for the
Northern District of California
450 Golden Gate Ave.
San Francisco, CA  94102

      Re:    *TechShop, Inc. v. Rasure, et al.,*
              *Case No. 18-cv-01044-HSG-JCS*
              *Joint Letter Brief*

Dear Judge Spero,

## PLAINTIFF'S STATEMENT

In accordance with your Standing Order regarding discovery disputes, Plaintiff Doris Kaelin, as trustee for the estate of TechShop, Inc. (hereinafter "TechShop"), and Defendants Dan Rasure, TechShop 2.0 LLC, and TechShop 2.0 San Francisco LLC (hereinafter "Rasure") file this Joint Letter Brief regarding a discovery dispute. In addition to other occasions, counsel for the parties met and conferred on September 27 and 28, in person, for a total of more than 3 hours regarding the matters that are the subject of this letter. Discovery in this case is set to close on November 2, 2018.

There is one issue in dispute: what consequences to/response should there be for Defendants' failure to produce materials responsive to Plaintiff's Requests for Production served on June 26 and the Court's Orders of September 13 and 24?

**Plaintiff's Statement:**

As detailed in prior filings by Plaintiff, Defendants have committed discovery misconduct. Further, the Defendants are in contempt of this Court's Orders of September 13 and 24. Plaintiff has been severely prejudiced by Defendants' misconduct.

**Factual Background**

Plaintiff served basic Requests for Production on June 26, including a request for Defendants' Initial Disclosures which had not been produced. For a recounting of event prior to September 10, Plaintiff refers the Court to Plaintiff's prior briefing in this regard. See Dkt. # 53, 62. On September 10, this Court ordered an in-person meet and confer on September 13, in the jury room. On September 13, a four hour meet and confer was held (to which Defendants' counsel was ~15 minutes late). At the meet and confer, the Court stated that responsive documents were to be "produced immediately." Further, Defendants' counsel provided signed responses certifying that "amended" responses were mailed August 24. At the end, disputes remained and the Court largely ordered production as sought by Plaintiff (though the Court did not order

production of membership lists in the form sought by Plaintiff). The Court then issued an Order requiring production, including a privilege log, by September 21.

No documents were produced on September 21 or before. On September 21, a 45 minute, in-person, meet and confer directed to a Protective Order was held (to which Defendants' counsel was 20 minutes late and unable to meet and confer for another 25 minutes). There was no discussion of an extension to comply with the Court's Order requiring production. Instead, without conducting a meet and confer on the topic, at approximately midnight on September 21, Defendants filed an "administrative motion" for an extension until Tuesday, September 25. Plaintiff opposed and this Court granted the extension. No documents were produced on September 21, 22, or 23. On September 24, some documents largely consisting of undated Facebook posts were produced but they were, again, woefully inadequate. For example, no financial forecasts, email traffic, or privilege logs were included. Some revenue spreadsheets printed on September 22, and formatted as a PDF were produced. No documents were produced on September 25.

After the date for compliance ordered by the Court, Defendants produced additional materials on September 26 and 27. Again, e.g., no financial forecasts or privilege logs were included. An in-person meet and confer of approximately 15 minutes was held on September 27 (to which Defendants' counsel was ~45 minutes late). At the meet and confer, Defendants' counsel stated that she was unprepared to discuss the status of the production except for her request for an extension.

On September 28, a 3 hour, in-person, meet and confer was held (to which Defendants' counsel was prompt). While Plaintiff's counsel was driving to the meet and confer, Defendants produced some email traffic and financial forecasts. At the meet and confer, it was determined that the production through that time largely consisted of Mr. Rasure's emails accounts, text messages from his phone, and some Facebook posts. As recounted by Defendants' counsel, production from at least six other individuals (including Mrs. Rasure, Paul Chambers, Joe Murphy, Jeremiah Johnson, Jerry Gable, and John Hunt) had not begun, no computer hard drives had been searched, and more than 750 threads from a private Facebook group had not been produced. After Plaintiff served a draft of this letter, on Monday October 1, Defendants served the "privilege log" attached hereto and contend that complies with their obligations. Additional Rasure emails were produced on October 1. None of the production to date identifies which Request, if any, the production is responsive to. At this point, Plaintiff is uncertain whether Defendants have produced the materials identified in their Initial Disclosures.

Despite the certifications, no mailed copy of the responses due August 13 or promised August 24 has ever been received. From June 26 (when the Requests were served) to October 5 is 101 days. From October 5 to November 2 is 28 days. From the date Plaintiff filed its motion to compel through October 5 is 31 days (i.e., >20% of the entire discovery period). The deadline for amending the pleadings passed on August 20. In addition to Plaintiff's First Set of Requests for Production served on June 26, Defendants served Requests for Production at the meet and confer held on September 13 and served Interrogatories on October 3. No other discovery has taken place (though Plaintiff did produce Initial Disclosures on June 26).

**Plaintiff's Final Substantive Position/Proposed Compromise**

Plaintiff's final position is that discovery misconduct has occurred, that the Defendants are in contempt of this Court's Orders of September 13 and 21, and that Plaintiff has been severely prejudiced as a result.

At this point, more than 11 hours of meet and confers regarding the Requests has been conducted and still the Requests have not been complied with. As detailed above, Defendants are only beginning their discovery response. Plaintiff believes that the certifications of "mailing" were false and offered for the purpose of "excusing" a failure to respond on August 13. To date, Defendants' misconduct has prevented Plaintiff from: 1) discovering information that might have resulted in amendment of the pleadings; 2) serving additional written discovery; 3) conducting meaningful depositions; 4) filing a motion for summary judgment; and 5) knowing the evidence in support of Defendants' claims and defenses. Throughout this case, Plaintiff has been forced to make a series of decisions, not on the merits of the case, but on Defendants' discovery misconduct. Thus, Defendants' misconduct has prevented Plaintiff from litigating the merits of the case.

Putting all of the other misconduct aside, the Defendants were/are in contempt of the Court Orders of September 13 and 21. Simply as one concrete example, in violation of the Court's Order, no "privilege log" was produced until October 1 and that document is woefully inadequate and Plaintiff does not know what additional materials are being actively withheld or on what basis.

Plaintiff believes that the only realistic response is to issue the evidentiary sanctions previously sought, thereby limiting the case going forward to whether there was a likelihood of confusion and the amount of damages. Now that there has been production of some financial forecasts and revenues, Plaintiff is prepared to proceed without additional discovery as long as Defendants are precluded from supporting their claims/defenses/offsets. As a result, the case will still be tried on the merits and Plaintiff would need to sustain its burden of showing infringement and damages. No response/sanction less than that can cure/address the violations here. Even if every document requested was produced now, that would simply amount to a document dump at the end of discovery with Plaintiff precluded from digesting it, following up, etc. in any meaningful way. The relief previously requested should be granted.

## DEFENDANTS' STATEMENT

Counsel were unable to agree on the Introductory paragraphs or the "Factual Background" above, both of which reflect Plaintiff's view only; Defendants state that the recitation is argumentative and in some places is inaccurate. (For example, three separate motions, as well as the progress of discovery were discussed on September 27 and September 28, and counsel for Defendants also discussed her list of what witnesses would likely need to be deposed in this case). However, Defendants lack page space here to provide a contrary recitation, but note that the factual background is set forth both in Defendants' (Second) *Administrative Motion To Modify Discovery Ruling To Further Enlarge Time For Production Of Documents* (Doc. No. 66), as well as in Defendants' *Administrative Motion To Adjust Case Scheduling Order To Enlarge The Time For Fact Discovery And Adjust Other Dates Accordingly* (Doc. No. 67).

PARRISH LAW OFFICES

Page 4

Fact Discovery in this case is currently set to close on November 2, 2018. Defendants have filed an administrative motion to modify the case schedule to enlarge the period for Fact Discovery and add 14 weeks to all remaining dates (Doc. No. 67). Shortly after that motion was filed, Judge Gilliam scheduled a Case Management Conference for October 23, 2018 (Doc. No. 68). Defendants have agreed that Plaintiff may have an additional 2 weeks (to November 16) to complete her Fact Discovery, regardless of whether the Case Schedule is otherwise modified.

At the conclusion of the attorneys' "meet and confer" on August 13, the Court ruled on some of the disputed issues remaining. Defendants have complied with that ruling in producing documents to the extent feasible (given the volume of documents involved) but have sought twice relief from the production deadlines set on August 13; the first request was granted (Doc. No. 65) and the second request is pending (Doc. No. 66).

Through this letter brief (or a motion to compel contemplated thereby), Plaintiff is essentially seeking an issue sanction, although it is described as an evidence sanction. Either is an extreme sanction under the circumstances of this case.

While Fed.R.Civ.Proc. Rule 37(b)(2)(A)(ii) empowers the Court to order a disobedient party "precluded" from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence, that is an extreme sanction not warranted by the facts here. There has been no willful obstruction and obfuscation. In considering whether to preclude evidence, courts consider the party's explanation for failure to comply with the discovery order, the importance of the precluded evidence, any prejudice suffered by the opposing party, and the possibility of a continuance.

In this case, those factors do not support the issue and evidence sanctions sought here. Plaintiff's discovery requests were very broad and encompassed a large volume of material which simply took much longer than anticipated to collect and to review for privilege and sensitivity, and which also necessitated extensive redaction. Defendants have acted in good faith and with reasonable diligence in producing materials as quickly as reasonably feasible under the circumstances Defendants have:

- produced a Privilege Log
- negotiated and stipulated to a Stipulated Protective Order (Doc. No. 64)
- produced the random sample of 10% of Defendants' customers (members)
- produced all business projections / forecasts prepared from January – September 2018
- documentation of revenues (by individual transaction) and most expenses

Defendants have also produced unprivileged responsive documents from Mr. Rasure's cell phone, including images, screenshots, documents, and SMS messages. In addition, Mr. Rasure's unprivileged responses emails have been produced, except for those still undergoing redaction (for customer identifying information or privacy/security information).

Defendants have also produced the responsive FaceBook Messenger message threads with management and other individuals who, by name, presumptively contain responsive information. The remaining individual FaceBook Messenger message threads were received by counsel from the vendor after 2am this morning. The remaining items are the emails from the former employee (which are finally in the hands of the vendor and will be produced in the next few

days), and the emails from other employees (which are also now in the hands of the vendor and will be produced in the next few days).

Should the Court be interested, counsel for Defendants will provide a history report from the Citrix Sharefile system showing when each batch of documents was produced and when counsel for Plaintiff accessed the zip file.

Defendants have also taken steps to mitigate the effect of the delay in providing the documents to Plaintiff, specifically: (1) filing an administrative motion to enlarge the period for Fact Discovery and adjust the Case Schedule accordingly (Doc. No. 67); and (2) in offering that Plaintiff may have an additional two weeks for her Fact Discovery.

On the other hand, Plaintiff has not actually shown prejudice from the delay in completing production of documents. The court already noted on August 13 that Plaintiff is not entitled to conduct discovery regarding unpleaded claims. Plaintiff has not identified the follow-up discovery she was not able to serve. The main deponents are already known to both parties and Plaintiff has not identified which depositions she was unable to conduct on the current state of production. Moreover, to the extent Plaintiff needs more time: Defendants have already agreed that Plaintiff can have an additional two weeks of Fact Discovery; and Defendants have already filed an administrative motion to modify the Case Schedule. Defendants note that Plaintiff asked for these remedies on August 13 but never filed a motion for that relief.

Under the circumstances, it would be manifestly unfair to prevent Defendants from putting on any evidence in support of their denials and affirmative defenses. Defendants respectfully request that the Court deny Plaintiff's motion or, should the Court deem it appropriate, set a discovery status conference at which the matters can be reviewed. Should the Court be inclined to grant the relief requested by Plaintiff, given the severity of the relief requested Defendants request the opportunity to fully brief the issues.

Respectfully submitted:

_____
James Pistorino
Counsel for Plaintiff

_____
Ann Draper
Counsel for Defendants

# Defendants' Privilege Log
*TechShop, Inc. v Rasure, et al* (CAND 4:18-01044-HSG-JCS)

### Documents Described By Category Rather Than Individually

| Category# | Date Range | DocType | Sender/Recipient/Copyee | Category Description | Privilege Justification | #Docs W/Held |
|---|---|---|---|---|---|---|
| 1 | 11/14/2017 – 9/6/2018 | SMS PDF | **Spouses:** Dan Rasure; Megan Drew Weislander Rasure | Confidential private SMS text messages sent back and forth solely between husband and wife during the time when they were validly married, which the spouses intended to be private and which were in fact kept private. The subject matters and purposes of these SMS text messages are also private. Each of the spouses is a holder of the privilege and neither of them has waived the privilege for marital communications. | Marital communication | Message count not available (2251 pages if printed) |
| 2 | 12/6/2017 – 8/27/2018 | Email PDF | **Spouses:** Dan Rasure; Megan Drew Weislander Rasure | Confidential private emails sent back and forth solely between husband and wife during the time when they were validly married, which the spouses intended to be private and which were in fact kept private. The subject matters and purposes of these emails are also private. Each of the spouses is a holder of the privilege and neither of them has waived the privilege for marital communications. | Marital communication | 104 emails |
| 3 | 11/14/2017 – 9/27/2018 | FaceBook messenger PDF | **Spouses:** Dan Rasure; Megan Drew Weislander Rasure | Confidential private messages on the FaceBook Messenger platform, sent back and forth solely between husband and wife during the time when they were validly married, which the spouses intended to be private and which were in fact kept private. The subject matters and purposes of these messages are also private. Each of the spouses is a holder of the privilege and neither of them has waived the privilege for marital communications. | Marital communication | Message count not available |

## Defendants' Privilege Log
*TechShop, Inc. v Rasure, et al* (CAND 4:18-01044-HSG-JCS)

| Category# | Date Range | DocType | Sender/Recipient/Copyee | Category Description | Privilege Justification | #Docs W/Held |
|---|---|---|---|---|---|---|
| 4 | 11/19/2017 – 2/16/2018 | Email PDF | **Attorneys:** J.P. Deveny; S.Isaacson; S.Allison; **Client:** Dan Rasure; Megan Drew Weislander Rasure | Confidential communications with outside counsel providing, requesting or reflecting legal advice regarding acquisition of assets of TechShop, Inc. and/or its subsidiary LLCs, due diligence, agreement negotiations and documentation, financing negotiations, and negotiations with TechShop stakeholders (including Autodesk) | Attorney client communication; attorney work product | 70 emails (including next category) |
| 5 | 1/4/2018 – 2/27/2018 | Email PDF | **Attorneys:** J.P. Deveny; **Client:** Dan Rasure; Megan Drew Weislander Rasure | Confidential communications with outside counsel providing, requesting or reflecting legal advice regarding leasing and operation of makerspace facility in San Francisco, including due diligence, lease negotiation and documentation, and financing negotiation and documentation | Attorney client communication; attorney work product | 70 emails (including above category) |
| 6 | 2/24/2018 – 9/27/2018 | Email PDF | **Attorneys:** J.P. Deveny; **Client:** Dan Rasure; Megan Drew Weislander Rasure | Confidential communications with outside counsel providing, requesting or reflecting legal advice regarding pending litigation | Attorney client communication; attorney work product | 8 emails |
| 7 | 8/14/2018 – 9/27/2018 | Email PDF | **Attorneys:** Ann Draper; **Client:** Dan Rasure; **Qualified Third Parties:** Joshua Carpoff (Vendor); Dustin Blake (Third Party IT Manager) | Communications between counsel and consultants providing, requesting or reflecting electronically stored information pertinent to this litigation and the gathering and analysis thereof. | Attorney client communication; attorney work product | 97 emails |

## Defendants' Privilege Log
*TechShop, Inc. v Rasure, et al* (CAND 4:18-01044-HSG-JCS)

### Documents Described Individually

| Bates # Range | Date | DocType | Sender/Recipient/Copyee | Category Description | Privilege Justification | #Docs W/Held |
|---|---|---|---|---|---|---|
| DR009770 – DR009956 | 12/15/2017 | Email PDF | **Sender:** Josh Ewing (Autodesk); **Recipient:** Dan Rasure | 15 documents provided by AutoDesk pursuant to an NDA signed by Recipient. Plaintiff is a party to these agreements and already has the documents protected by the NDA | Privacy; NDA agreement | 1 email with 15 attachments (total of 187 pages) |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

**This Privilege Log relates to documents that have been produced, and will be updated at the time of each supplemental productions.**