```
                                        PAGES 1 - 19

               UNITED STATES DISTRICT COURT

              NORTHERN DISTRICT OF CALIFORNIA

           BEFORE THE HONORABLE JOSEPH C. SPERO

TECHSHOP, INC., A CALIFORNIA      )
CORPORATION, DORIS A. KAELIN,     )
IN HER CAPACITY AS CHAPTER 7      )
TRUSTEE FOR TECHSHOP, INC., A     )
CALIFORNIA CORPORATION,           )
                                  )
            PLAINTIFF,            )
VS.                               )  NO. 18-CV-01044 HSG
                                  )
DAN RASURE, ET AL.                )
                                  )  SAN FRANCISCO, CALIFORNIA
            DEFENDANTS.           )  THURSDAY
                                  )  SEPTEMBER 13, 2018
_____)
                                  )
AND RELATED CROSS ACTION.         )
_____)
```

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  1:32 P.M. - 1:52 P.M.**

**APPEARANCES:**

**FOR PLAINTIFF**           PARRISH LAW OFFICE
                            24 LEXINGTON DRIVE
                            MENLO PARK, CALIFORNIA 94205
                       **BY: JAMES CHARLES PISTORINO, ESQUIRE**


**FOR DEFENDANTS**          DRAPER LAW OFFICES
                            75 BROADWAY, SUITE 202
                            SAN FRANCISCO, CALIFORNIA 94111
                       **BY: ANN MCFARLAND DRAPER, ESQUIRE**


*TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
*                 RETIRED OFFICIAL COURT REPORTER, USDC*

```
 1         PROCEEDINGS; TUESDAY, SEPTEMBER 13, 2018; 1:32 P.M.
 2
 3            THE CLERK:  OKAY.  WE ARE CALLING CASE NO.
 4    C-18-01044, TECHSHOP VERSUS RASURE.
 5            APPEARANCES, PLEASE.
 6            MR. PISTORINO:  GOOD AFTERNOON, YOUR HONOR.  JAMES
 7    PISTORINO ON BEHALF OF TECHSHOP.
 8            THE COURT:  WELCOME.
 9            MS. DRAPER:  ANN MCFARLAND DRAPER REPRESENTING
10    DEFENDANTS.
11            THE COURT:  ALL RIGHT.  YOU'VE MET AND CONFERRED OVER
12    ISSUES RAISED BY THE MOTION TO COMPEL, WHICH WAS DOCKET NUMBER
13    53.  I UNDERSTAND YOU RESOLVED MANY ISSUES AND NOT RESOLVED
14    SOME.  SO WHAT'S THE STATUS?
15            MR. PISTORINO:  I THINK IT WOULD BE -- IN MY VIEW,
16    THERE ARE ABOUT, MAYBE, I'LL SAY TWO GLOBAL ISSUES AND THEN
17    SOME MINOR ISSUES.
18            I THINK ONE ISSUE, JUST SORT OF GOING DOWN THE LIST
19    AS I HAD IT, IS, OF COURSE, WE'VE HAD NO PRIVILEGE LOG YET.
20    AND WHAT I'VE ASKED FOR IS A PRIVILEGE LOG -- I UNDERSTAND
21    THERE MAY BE ISSUES WITH --
22            THE COURT:  WELL, JUST LIST THE THINGS.  WHAT ARE THE
23    ISSUES?
24            MR. PISTORINO:  SO, I'VE GOT A PRIVILEGE LOG.  I'VE
25    GOT CLAIMS OF CONFIDENTIAL BUSINESS INFORMATION.  I'VE GOT
```

1  CLAIMS OF NOT PRODUCING MEMBERSHIP LISTS, INFORMATION RELATED
2  TO MEMBERSHIP LISTS.
3       **THE COURT:**  MEMBERSHIP LISTS OF WHAT?
4       **MR. PISTORINO:**  OF MEMBERS.  THESE BUSINESSES OPERATE
5  ALMOST LIKE A GYM, SO WHO ARE THE MEMBERS?  MEMBERSHIP LISTS.
6       **MS. DRAPER:**  CUSTOMERS.
7       **THE COURT:**  YEAH, CUSTOMERS.
8       **MR. PISTORINO:**  USUALLY, THEY PAY ON A MONTHLY BASIS.
9  I JUST CALL THEM MEMBERS.
10      **THE COURT:**  RIGHT.  CUSTOMER MEMBERS.
11      **MR. PISTORINO:**  RIGHT.
12      I THINK THE OTHER ISSUES I HAD WERE MOVING THE
13 DISCOVERY CUTOFF DATE FOR THE PLAINTIFFS, AND, LIKEWISE, MOVING
14 THE DEADLINE TO AMEND THE PLEADINGS FOR THE PLAINTIFFS.  AND
15 THEN WE ALSO HAD A DISAGREEMENT ABOUT THE PRODUCTION OF
16 MATERIALS BEYOND NEXT WEEK.
17      THOSE ARE THE ITEMS I HAVE ON MY LIST.
18      **THE COURT:**  WHAT'S THAT LAST ISSUE?
19      **MR. PISTORINO:**  WHETHER OR NOT -- WHETHER OR NOT
20 MATERIALS THAT ARE PRODUCED AFTER NEXT WEEK MAY STILL BE RELIED
21 ON BY THE DEFENSE.
22      **THE COURT:**  OKAY.
23      **MR. PISTORINO:**  I BELIEVE THAT'S -- WELL, ALL I HAVE.
24      WE DO HAVE ONE SUBISSUE.  I'M NOT SURE IF WE HAVE
25 AGREEMENT -- I THINK WE MAY -- ABOUT MATERIALS FROM PEOPLE THAT

1  WERE FORMERLY EMPLOYEES OF THE DEFENDANTS, INCLUDING, I THINK,
2  THE NUMBER TWO PERSON AND THE PRODUCTION OF MATERIALS FROM THAT
3  INDIVIDUAL.
4          **THE COURT:**  WHAT DO YOU THINK THE AGREEMENT IS ON
5  THAT?
6          **MR. PISTORINO:**  WELL, I THINK THE AGREEMENT IS
7  THAT -- I UNDERSTAND FROM MS. DRAPER THAT THE NUMBER TWO PERSON
8  HERE IS NO LONGER EMPLOYED BY THEM, AND THAT SHE DOESN'T KNOW
9  WHETHER OR NOT HE COMMUNICATED, USING HIS PERSONAL ACCOUNT,
10 INFORMATION RELATED TO THIS.  I THINK IT'S HIGHLY LIKELY THAT
11 HE DID.
12         SHE IS GOING TO INQUIRE OF HIM WHETHER OR NOT HE HAS
13 RESPONSIVE MATERIALS OR NOT AND WHETHER OR NOT HE WILL PRODUCE
14 THEM OR NOT.  LIKEWISE, THE SAME WITH ANY OTHER FORMER
15 MANAGEMENT GROUP PERSONNEL.  AND THEN REPORT THAT BACK TO ME
16 BY --
17         **THE COURT:**  RIGHT.
18         **MR. PISTORINO:**  -- TUESDAY OF THIS COMING WEEK SO
19 THAT I CAN KNOW IT'S REALLY A PROBLEM OR NOT.
20         AND THEN IN THE EVENT THAT THE MATERIALS ARE NOT
21 PRODUCED -- THERE ARE RESPONSIVE MATERIALS THAT ARE NOT
22 PRODUCED, THEN WE'LL JUST --
23         **THE COURT:**  SERVE A SUBPOENA.
24         **MR. PISTORINO:**  WELL, PROBABLY.  BUT, IN ANY EVENT,
25 PROCEED WITH THE NORMAL REQUEST FOR RELIEF AND STUFF LIKE THAT.

1   I WOULD SERVE SUBPOENA AS WELL, BUT I DON'T KNOW IF MATERIALS
2   HAVE BEEN --
3           **THE COURT:**  IF IT'S MATERIALS JUST IN THE HANDS OF
4   PEOPLE THAT DON'T WORK FOR THEM, WHAT WOULD BE YOUR INTENTION
5   WITH RESPECT TO THOSE MATERIALS?
6           **MR. PISTORINO:**  I WOULD SERVE A SUBPOENA.  I WOULD
7   SERVE A SUBPOENA.
8           **THE COURT:**  FINE.
9           **MR. PISTORINO:**  WHETHER OR NOT THE MATERIALS CONTINUE
10  TO EXIST AND I GET THEM WITH A SUBPOENA, GREAT.  IF THEY DON'T
11  EXIST, IN MY VIEW, SINCE THEY WEREN'T EMPLOYED IN THE
12  MANAGEMENT GROUP --
13          **THE COURT:**  YOU'LL TAKE THAT UP WITH SOMEONE --
14          **MR. PISTORINO:**  EXACTLY.
15          **THE COURT:**  -- OTHER THAN ME.
16          ALL RIGHT.  DO YOU AGREE WITH HIS DESCRIPTION OF THE
17  AGREEMENT AS TO FORMER MANAGEMENT EMPLOYEES?
18          **MS. DRAPER:**  I THINK SO.  BUT I THINK -- I HAVE NO
19  PROBLEM ASKING THIS PERSON IF HE WAS DOING BUSINESS EMAILS OUT
20  OF HIS PERSONAL ACCOUNT.  I HAVE NO PROBLEM, IF THE ANSWER IS
21  YES, ASKING HIM WOULD HE PLEASE PROVIDE RESPONSIVE MATERIALS.
22          I DO HAVE A CONCERN ABOUT EXPLAINING TO A LAY PERSON
23  THE CONTORTED IMPACT, POTENTIALLY, OF THE DEFINITIONS; THAT
24  "REFER AND RELATE" DOESN'T MEAN JUST REFER AND RELATE; IT MEANS
25  CONNECTED AND THAT NAMES MEAN, YOU KNOW, FORMER PARTNERS.  THIS

1  IS HARD FOR LAY PEOPLE TO DEAL WITH.
2          **THE COURT:** THIS IS EXTREMELY EASY. THAT'S
3  ABSOLUTELY WRONG. YOU SAY TO THEM: DID YOU DO ANY EMAILS
4  ABOUT THIS BUSINESS?
5          **MS. DRAPER:** THAT I CAN DO.
6          **THE COURT:** GOOD. HE SAYS YES (INDISCERNIBLE).
7          **MS. DRAPER:** THE ISSUE IS THAT THESE PEOPLE WERE ALL
8  MAKERS AND PEOPLE THAT LIKED MAKING THINGS. SO A LOT OF THEM
9  DID THIS 18 HOURS A DAY EVEN IF THEY WEREN'T WORKING 18 HOURS A
10 DAY.
11         **THE COURT:** YEAH.
12         **MS. DRAPER:** AND THE SCOPE OF -- HE SHOULDN'T HAVE
13 BEEN DOING ANY BUSINESS OUT OF HIS PERSONAL ACCOUNT. WHAT
14 MIGHT BE IN THERE ARE REFERENCES TO THE FORMER TECHSHOP COMPANY
15 AND THOSE THINGS. I'M HAPPY TO ASK HIM FOR THE DOCUMENTS.
16         **THE COURT:** YEAH.
17         **MS. DRAPER:** I'M HAPPY TO PRODUCE THEM PROMPTLY IF HE
18 PRODUCES THEM. I CAN'T COMPEL HIM BECAUSE I DON'T THINK WE
19 HAVE LEGAL CONTROL.
20         **THE COURT:** I UNDERSTAND THAT.
21         **MS. DRAPER:** AND I'M CONCERNED THAT HE WON'T
22 UNDERSTAND THE SCOPE.
23         **THE COURT:** WELL, HE MAY OR MAY NOT.
24         **MS. DRAPER:** THAT'S NOT MY PROBLEM. I DON'T WANT IT
25 TO BE MY PROBLEM.

```
1            THE COURT:  THE AGREEMENT IS, AS I UNDERSTAND IT, IS
2    THAT, WITH RESPECT TO FORMER MANAGEMENT EMPLOYEES, THE DEFENSE
3    COUNSEL IS GOING TO INQUIRE DIRECTLY OF THEM WHETHER THEY HAVE
4    ANY RESPONSIVE DOCUMENTS, AND IF THEY DO, GOING TO GET THEM --
5    ASK THEM TO PRODUCE THEM TO YOU SO YOU CAN PRODUCE THEM IN THIS
6    LITIGATION.
7            MS. DRAPER:  THAT'S CORRECT.  THAT I CAN DO.
8            THE COURT:  THAT'S YOUR OBLIGATION.
9            MR. PISTORINO:  CORRECT.
10           THE COURT:  THEN ON TUESDAY YOU'LL TELL PLAINTIFF
11   WHAT'S GOING ON -- PLAINTIFF'S COUNSEL WHAT'S GOING ON AND
12   WHETHER YOU'RE GOING TO BE ABLE TO PRODUCE THEM OR NOT.
13           AND, REGARDLESS, YOU ALWAYS HAVE THE RIGHT TO SERVE A
14   SUBPOENA.  THE PLAINTIFFS CAN ALWAYS JUST SERVE A SUBPOENA.
15   GOOD.  THAT CLOSES THAT ISSUE.
16           PRIVILEGE LOG ISSUE, I DON'T UNDERSTAND.  WHAT'S THE
17   ISSUE ON PRIVILEGE LOG?
18           MS. DRAPER:  WELL, THE ISSUE IS PRIMARILY TEXT
19   MESSAGES.  THE PROBLEM HERE HAS BEEN THE VOLUME OF DISCOVERY.
20   IN MR. RASURE ALONE WE'VE GOT 8500 EMAILS OVER A SEVEN-MONTH
21   PERIOD.  WE'VE GOT 50,111 TEXT MESSAGES.
22           THE COURT:  YEAH.  YOU'VE GOT A LOT OF
23   ATTORNEY-CLIENT PRIVILEGE TEXT MESSAGES?
24           MS. DRAPER:  THERE ARE A LOT OF TEXT -- I THINK WE
25   CAN SEGREGATE OUT THE PRIVILEGED MATTERS.
```

1    **THE COURT:** THAT'S WHAT WE'RE TALKING ABOUT. WE'RE
2    TALKING ABOUT A PRIVILEGE LOG.
3    **MS. DRAPER:** SO THE ISSUE IS THAT THERE -- THERE IS A
4    MARITAL PRIVILEGE INVOLVED HERE, AND THE ISSUE IS THAT
5    MR. PISTORINO THOUGHT I SHOULD FOLLOW LITERALLY THE PRIVILEGE
6    LOG GUIDELINES, DATE, TIME, SUBJECT.
7    **THE COURT:** YES.
8    **MS. DRAPER:** AND TO DO THAT IN A TEXT MESSAGE --
9    **THE COURT:** YEAH.
10   **MS. DRAPER:** -- IS OPPRESSIVE, WOULD BE --
11   **THE COURT:** NO, IT'S NOT OPPRESSIVE. OF COURSE,
12   PEOPLE PUT TEXT MESSAGES ON PRIVILEGE LOG. OF COURSE THEY TELL
13   THEM THE DATES.
14   YOU KNOW, IT MAY BE A SERIES OF TEXT MESSAGES FROM
15   "X" DATE TO "Y" DATE, AND THAT'S HOW YOU DESCRIBE IT.
16   **MS. DRAPER:** THAT'S WHAT I WANT TO DO, AND
17   MR. PISTORINO WANTED ME TO ITEMIZE EACH -- I THINK IT'S
18   SUFFICIENT IF I SAY, "A SERIES OF TEXT MESSAGES WITH -- BETWEEN
19   RASURE AND HIS WIFE WHEN NO ONE ELSE WAS IN THE CONVERSATION."
20   **THE COURT:** AND -- AND YOU'RE GOING TO HAVE TO
21   DESCRIBE IN SUFFICIENT DETAIL WHAT THOSE SUBJECT MATTERS ARE
22   ABOUT SO THAT THEY ARE ACTUALLY WITHIN THE SCOPE OF THE MARITAL
23   PRIVILEGE, BECAUSE IT MAY OR MAY NOT BE. NOT EVERY
24   COMMUNICATION BETWEEN HUSBAND AND WIFE IS SUBJECT TO THE
25   MARITAL PRIVILEGE. IT'S WITHIN THE SCOPE OF THE MARITAL

```
 1   PRIVILEGE.
 2             SO THAT WILL BE THE RULING OF THE COURT.  YOU HAVE TO
 3   DO A PRIVILEGE LOG AS TO ANYTHING THAT'S HELD ON THE BASIS OF
 4   ANY PRIVILEGE.
 5             OKAY.  THAT'S NUMBER ONE.  FIRST RULING.  GREAT.
 6             CLAIMS OF CONFIDENTIAL BUSINESS RECORDS, I DON'T
 7   UNDERSTAND THAT.  YOU'VE GOT A PROTECTIVE ORDER, RIGHT, OR
 8   YOU'RE GOING TO HAVE A PROTECTIVE ORDER?  HAVE YOU AGREED ON A
 9   PROTECTIVE ORDER?
10        **MR. PISTORINO:**  I'VE OFFERED TO --
11        **MS. DRAPER:**  WE WILL.
12        **MR. PISTORINO:**  -- STIPULATE TO THE STANDARD
13   PROTECTIVE ORDER MULTIPLE TIMES.
14        **THE COURT:**  STANDARD PROTECTIVE ORDER FOR LITIGATION
15   OKAY WITH YOU?
16        **MS. DRAPER:**  WELL, HERE'S THE COMPLICATION WITH THAT.
17   MR. PISTORINO WAS FORMERLY INVOLVED WITH A COMPANY CALLED MAKER
18   NEXUS, WHO IS A COMPETITOR.  HE ASSERTS THAT HE'S NOT INVOLVED
19   WITH THEM ANYMORE, ALTHOUGH MAKER NEXUS IS SAYING THAT HE'S
20   HELPING THEM GET THEIR PLACE STARTED, AND THEY'RE -- FROM THE
21   INFORMATION THAT HAS COME THROUGH, I KNOW THAT SOME OF THE
22   PEOPLE THAT MR. PISTORINO IS USING FOR INFORMATION SOURCES, WHO
23   ALSO ARE COMPETITORS OF MY CLIENT, AND I JUST NEED TO ENSURE
24   THAT INFORMATION DOESN'T -- DOESN'T DIRECTLY OR INDIRECTLY GET
25   INTO THE HANDS OF COMPETITORS.  SO THEY WOULD BE INAPPROPRIATE
```

1  AS EXPERTS.

2  AND THE OTHER PROBLEM IS --

3  **THE COURT:** THAT'S GOT NOTHING TO DO WITH WHETHER WE
4  ENTER INTO A PROTECTIVE ORDER. WHAT DO YOU OBJECT TO IN THE
5  PROTECTIVE ORDER?

6  **MS. DRAPER:** OH, JUST THAT -- THE TYPICAL PROTECTIVE
7  ORDER ALLOWS DISCLOSURE TO ATTORNEYS AND EXPERTS.

8  **THE COURT:** WELL, UNDER SOME CIRCUMSTANCES. THERE
9  ARE VARIOUS -- THERE ARE VARIOUS LEVELS OF PROTECTIVE ORDER ON
10 THE COURT'S WEBSITE THAT YOU CAN LOOK AT. SOME FOR BUSINESS
11 LITIGATION HAS SENSITIVE INFORMATION, WHICH INCLUDES THE
12 POSSIBILITY OF OBJECTING TO EXPERTS ON THE BASIS OF THEY HAVE
13 SOME CONFLICT, ET CETERA, ET CETERA. SO I DON'T UNDERSTAND
14 WHAT YOUR ISSUE IS.

15 SO TODAY IS THURSDAY. YOU'VE GOT ONE WEEK. THE
16 PARTIES ARE ORDERED TO STIPULATE TO A PROTECTIVE ORDER WITHIN A
17 WEEK.

18 MEMBERSHIP LISTS -- CUSTOMER LISTS, CUSTOMER LISTS.

19 **MS. DRAPER:** CUSTOMER LISTS.

20 **THE COURT:** WHAT'S WITH THAT?

21 **MR. PISTORINO:** PART OF THE FAILED TRANSACTION HERE
22 WAS AN EFFORT BY THE DEFENDANTS TO ACQUIRE THE ASSETS OF
23 TECHSHOP --

24 **THE COURT:** RIGHT.

25 **MR. PISTORINO:** -- THEIR MEMBERSHIP LIST TO HELP

1 DRIVE A BUSINESS.

2      **THE COURT:** YES.

3      **MR. PISTORINO:** AND THAT PART DIDN'T COME OUT.

4      SUBSEQUENTLY, I HAVE REASON TO BELIEVE THAT THE

5 MEMBERSHIP LISTS --

6      **THE COURT:** YEAH.

7      **MR. PISTORINO:** -- OF TECHSHOP WERE ACQUIRED, I

8 THINK, THROUGH -- MAYBE THROUGH PASSWORDS, GETTING THE

9 PASSWORDS TO THE SYSTEMS.

10      **THE COURT:** WHY IS THAT RELEVANT TO THIS CASE?

11      **MR. PISTORINO:** IT GOES -- I GUESS MAYBE IT GOES TO

12 TWO ISSUES. FIRST, THE DEADLINE -- I WAS INTENDING TO AMEND

13 THE PLEADINGS SO TO CONDUCT DISCOVERY ABOUT HOW THE DEFENDANTS

14 ACQUIRED THE MEMBERSHIP LISTS.

15      **THE COURT:** I DON'T ALLOW DISCOVERY IN ORDER TO FIND

16 CLAIMS YOU DON'T HAVE YET.

17      **MR. PISTORINO:** OKAY.

18      **THE COURT:** NEXT.

19      **MR. PISTORINO:** OKAY. AND THEN THE NEXT ISSUE, I

20 THINK, WOULD COME TO THE DAMAGES CONTEXT HERE. SO YOU NEED TO

21 KNOW -- MAYBE TWO INSTANCES.

22      FIRST, YOU HAVE THE ISSUE OF INFRINGEMENT, RIGHT? SO

23 WHO ARE THE PEOPLE MOST LIKELY TO HAVE BEEN MISLED BY WHAT WE

24 CONTEND IS THE CONFUSION BETWEEN THE TWO ENTITIES. SO IT WOULD

25 BE THE CUSTOMERS.

1         **THE COURT:** SO THEY'RE WITNESSES TO CONFUSION?

2         **MR. PISTORINO:** RIGHT, RIGHT. I'D HAVE TO -- RIGHT.

3 I NEED KNOW WHO TO CONTACT POTENTIALLY TO DO IT, ON THE ONE

4 HAND.

5         ON THE OTHER HAND, YOU HAVE A DAMAGES CONTEXT HERE

6 OF, AS WE CONTEND, THEY OPENED A BUSINESS USING MY CLIENT'S

7 NAME.

8         **THE COURT:** HOW MANY CUSTOMERS ARE WE TALKING ABOUT?

9         **MR. PISTORINO:** I DON'T KNOW THE ANSWER.

10         **THE COURT:** HOW MANY CUSTOMERS ARE WE TALKING ABOUT?

11         **MS. DRAPER:** THOUSANDS.

12         **THE COURT:** OKAY. SO YOU'RE NOT GETTING THOUSANDS.

13         **MR. PISTORINO:** RESPECTFULLY, I DON'T THINK THEY HAVE

14 THOUSANDS OF CUSTOMERS. MY CLIENT -- MY CLIENT IN THE BAY AREA

15 HAD 1200 CUSTOMERS OUT OF THE SAN FRANCISCO LOCATION.

16         **THE COURT:** PRESUMABLY, THEY'RE THE SAME CUSTOMERS

17 OUT OF THE SAN FRANCISCO LOCATION.

18         **MR. PISTORINO:** AND THAT SHOULD BE A SUBSET.

19         **THE COURT:** OKAY.

20         **MR. PISTORINO:** ESPECIALLY SINCE IT'S --

21         **THE COURT:** YOU'VE GOT THE LIST OF THOSE CUSTOMERS.

22 CONTACT THEM.

23         **MR. PISTORINO:** I'VE GOT MY FORMER CLIENTS.

24         **THE COURT:** IT'S 1,200, RIGHT?

25         **MR. PISTORINO:** I'VE GOT MY FORMER CUSTOMERS, BUT THE

```
1   ISSUE, AGAIN, WE NEED TO KNOW FROM AN INFRINGEMENT PERSPECTIVE
2   IS -- I NEED TO KNOW WHO WAS CONFUSED BY THEIR USE OF THE NAME.
3             THE COURT:  I UNDERSTAND.  BUT YOUR FORMER CUSTOMERS
4   MAY HAVE -- ARE LIKELY SUBJECTS FOR THAT, RIGHT?
5             MR. PISTORINO:  TRUE, TRUE.  AND THE MOST LIKELY --
6             THE COURT:  SAME LOCATION -- YOU KNOW, SAME CITY,
7   SAME BUSINESS MODEL, SAME -- SIMILAR NAME.
8             MR. PISTORINO:  CORRECT.
9             THE COURT:  OKAY.
10            MR. PISTORINO:  AND THE MOST LIKELY PEOPLE TO HAVE
11  BEEN MISLED ARE, IN FACT, THE CUSTOMERS FROM THE OTHER SIDE.
12  I'M JUST THINKING HOW DO I FIND IT OUT.  SO I'VE ASKED FOR
13  IT --
14            THE COURT:  THAT'S DENIED.  YOU'RE NOT GOING TO GET
15  LISTS OF ALL OF THEIR CUSTOMERS --
16            MR. PISTORINO:  OKAY.
17            THE COURT:  -- ON THE THIN NOTION THAT SOMEHOW ONE OF
18  THE THOUSANDS OF CUSTOMERS IS GOING TO BE -- YOU CAN SEEK
19  EVIDENCE OF CONFUSION, AND YOU HAVE IN OTHER WAYS, BUT I'M NOT
20  GOING TO GIVE YOU JUST CARTE BLANCHE.  IT'S COMPLETELY
21  DISPROPORTIONATE TO HAVE YOU INTRUDE INTO THEIR BUSINESS LIFE
22  BY BEING ABLE TO CONTACT EVERY SINGLE CUSTOMER THAT YOU WANT.
23            NOW, IF THE YOU WANTED SOMETHING LESS THAN THAT, THAT
24  WOULD BE REASONABLE.  THAT'S WHY THIS IS THE KIND OF THING
25  WHERE I JUST SEE YOU PEOPLE DISAGREEING ON PRIVILEGE LOG,
```

1  DISAGREEING ON A PROTECTIVE ORDER, DISAGREEING ON THIS, IT'S
2  RIDICULOUS, BECAUSE THE ANSWER TO THIS IS: GIVE ME A SAMPLING
3  OF YOUR CUSTOMERS, YOU KNOW, GIVE ME TEN PERCENT. THAT'S A
4  RATIONAL APPROACH TO THIS. SO THAT'S WHAT I'M GOING TO ORDER.
5      I WANT YOU TO HAVE A RANDOM SAMPLING OF THE CUSTOMERS
6  THAT YOU HAVE, TEN PERCENT OF THE CUSTOMERS, AND IT HAS TO BE A
7  RANDOM SAMPLE. YOU CAN'T CHERRYPICK.
8      OKAY, NEXT. SO THAT'S THE THIRD RULING, TEN PERCENT
9  OF THE CUSTOMERS.
10     NEXT ISSUE. WHAT'S THE NEXT ISSUE?
11     **MR. PISTORINO:** I THINK YOU, I THINK, DID MAILING --
12     **THE COURT:** I ALREADY DID --
13     **MR. PISTORINO:** MAILING LISTS.
14     **THE COURT:** DISCOVERY CUTOFF AND PLEADINGS?
15     **MR. PISTORINO:** I'M SORRY, YOUR HONOR. IF I MAY, WE
16 HAVE A FURTHER AREA OF DISAGREEMENT.
17     **THE COURT:** SURE.
18     **MR. PISTORINO:** WHICH RELATES TO FORECASTS,
19 FORECASTS, BUSINESS PROJECTIONS.
20     **THE COURT:** OKAY.
21     **MR. PISTORINO:** I THINK THE AREA OF DISAGREEMENT IS
22 REALLY ABOUT THE TIMING. AGAIN --
23     **THE COURT:** TIMING OF THE --
24     **MR. PISTORINO:** TIMING OF WHAT THE PRODUCTION
25 SHOULD -- WHAT PERIOD SHOULD BE COVERED FOR FORECASTS AND

1  PROJECTIONS. I'VE REQUESTED SINCE JANUARY UP UNTIL NOW. THE
2  DEFENDANT HAS SAID THAT THEY WANT TO STOP THEM AT THE END OF
3  MARCH. IN MY VIEW, THAT WOULD MEAN ONE MONTH, ESSENTIALLY,
4  AFTER THE BUSINESS STARTED. SO I'M LOOKING FOR --
5        **THE COURT:** SO JANUARY 2018 --
6        **MR. PISTORINO:** CORRECT.
7        **THE COURT:** -- TO SEPTEMBER 2018?
8        **MR. PISTORINO:** NOW, RIGHT.
9        **THE COURT:** AND WHY SHOULDN'T YOU DO THAT?
10       **MS. DRAPER:** YOUR HONOR, WHAT HAPPENED IN THIS CASE
11 IS THAT MR. RASURE WAS NEGOTIATING TO BUY SOME ASSETS SO THAT
12 HE COULD REOPEN OR OPEN SIMILAR SPACES. THEY HAD A DEAL AT THE
13 END OF NOVEMBER. IT WAS CANCELED BY MID DECEMBER. THEY
14 CONTINUED TO NEGOTIATE.
15       DURING THAT TIME, TECHSHOP INVITED, BASICALLY,
16 MR. RASURE TO USE THE NAME TECHSHOP 2.0, AND TECHSHOP ITSELF
17 WIDELY PUBLICIZED THAT A NEW GROUP CALLED TECHSHOP 2.0 WAS
18 GOING TO REOPEN SOME OF THE LOCATIONS.
19       WHEN THE DEAL FELL APART, MR. RASURE LEASED ONE OF
20 THE LOCATIONS DIRECTLY FROM THE LANDLORD, HEARST, AND OPENED
21 HIS SPACE AND CHANGED THE NAME TO THE SHOP.BUILD.
22       **THE COURT:** SO DO YOU HAVE AN ARGUMENT FOR WHY
23 PRODUCTIONS FOR THIS PERIOD -- PROJECTIONS MADE BY THE
24 BUSINESS, YOUR CLIENT'S BUSINESS, FOR THIS PERIOD OF TIME ARE
25 NOT RELEVANT?

1     **MS. DRAPER:**  NO, BECAUSE HE STOPPED USING THE NAME.
2  SO ONLY -- THEY STOPPED USING THE NAME.
3     **THE COURT:**  AND CHANGED IT TO WHAT?
4     **MS. DRAPER:**  THE SHOP.BUILD.
5     **THE COURT:**  OKAY.  FORMERLY KNOWN AS TECHSHOP?
6     **MS. DRAPER:**  TECHSHOP 2.0.
7     **THE COURT:**  I SEE.  OKAY.
8     **MS. DRAPER:**  THE 2.0 INDICATING, YOU KNOW, SOMETHING
9  NEW AND DIFFERENT.
10     SO WE'RE SUGGESTING MARCH 31ST IS THE --
11     **THE COURT:**  OKAY.  SO THIS MOTION IS GRANTED.  I HAVE
12  NO IDEA HOW MUCH OF THE GOODWILL ASSOCIATED WITH THE ORIGINAL
13  NAME ACTUALLY, IN FACT, IS PROJECTIONS FROM THE NEWLY NAMED
14  BUSINESS THREE MONTHS LATER, FOUR MONTHS LATER.  THIS IS
15  COMPLETELY REASONABLE.
16     PRODUCE ALL BUSINESS PROJECTIONS -- PRODUCE THE
17  BUSINESS PROJECTIONS THAT ARE REQUESTED THAT WERE CREATED
18  DURING THE PERIOD JANUARY 18TH, 2018, TO SEPTEMBER 2018.
19     SO THIS IS ANOTHER ONE WHERE YOU PEOPLE ARE JUST
20  STANDING ON THESE KNIFE EDGES ABOUT DISCOVERY WHEN THAT'S NOT
21  HOW WE DO DISCOVERY IN FEDERAL COURT.  IT'S AN OPEN BOOK
22  DISCOVERY.  WE DON'T ASK FOR MORE THAN WE NEED, BUT WHATEVER WE
23  NEED (INDISCERNIBLE) PRODUCE IT.  YOU DON'T GET TO SAY, WELL,
24  YOU KNOW, WHEN YOU GET TO THE NEXT MONTH, IT WON'T BE
25  ADMISSIBLE.  FORGET IT.

```
 1              I DON'T DECIDE TIMES FOR WHEN YOU GET TO AMEND
 2    PLEADINGS, AND I DON'T DECIDE TIMES FOR WHEN THE DISCOVERY
 3    CUTOFF IS.  THAT'S TOTALLY UP TO THE DISTRICT JUDGE.
 4              AND ALL THESE MATERIALS, I'VE ALREADY SAID, HAVE TO
 5    BE PRODUCED WITHIN A WEEK, INCLUDING THE PRIVILEGE LOG.
 6              AS FAR AS THE CONSEQUENCES FOR VIOLATING THAT ORDER,
 7    I'M NOT GOING TO SPEAK TO THAT.  THAT PROBABLY WILL BE UP TO
 8    THE DISTRICT JUDGE.
 9              SO ANY OTHER ISSUES?
10              **MR. PISTORINO:**  IF I MAY JUST SEEK SOME GUIDANCE,
11    YOUR HONOR?
12              **THE COURT:**  YEAH.
13              **MR. PISTORINO:**  THE CONCERN I HAVE IS JUDGE GILLIAM
14    GAVE US A RELATIVELY SHORT DISCOVERY PERIOD OF 135 DAYS, AND I
15    UNDERSTAND I DON'T THINK YOU -- I'M NOT SURE, BUT I DOUBT YOU
16    CAN AMEND THESE TIMES, BUT WHAT I'M SEEKING IS JUST GUIDANCE.
17    WE'RE NOW ABOUT -- BY NEXT WEEK WE WILL BE MORE THAN 60 PERCENT
18    THROUGH DISCOVERY, AND I DON'T HAVE ANY DOCUMENTS.
19              **THE COURT:**  YEAH.
20              **MR. PISTORINO:**  SO MY CONCERN IS, EVEN IF I START
21    NOW, YOU KNOW, FROM NEXT WEEK, I WILL AT MOST BE ABLE TO GET
22    ONE ADDITIONAL ROUND OF DOCUMENT REQUESTS OUT.  SO MY REQUEST
23    IS JUST A GUIDANCE.  IF I DO NEED MORE TIME, I GUESS I JUST
24    MOVE JUDGE GILLIAM.
25              **THE COURT:**  YES.
```

1            **MR. PISTORINO:** OKAY.
2            **THE COURT:** OKAY. ANYTHING ELSE?
3            ALL RIGHT. TO GO BACK THROUGH, NUMBER ONE -- ALL
4    THESE THINGS YOU ARE GOING TO PRODUCE WITHIN A WEEK.
5            NUMBER ONE, DEFENDANT'S GOING TO PRODUCE A PRIVILEGE
6    LOG, ALL MATERIALS WITHHELD ON THE BASIS OF ANY PRIVILEGE.
7            NUMBER TWO, THE PARTIES ARE ORDERED TO STIPULATE TO A
8    PROTECTIVE ORDER WITHIN ONE WEEK OF TODAY.
9            NUMBER THREE, THE DEFENDANTS ARE GOING TO PRODUCE A
10   RANDOM SAMPLE WITH THE IDENTIFICATION INFORMATION OF TEN
11   PERCENT OF THE DEFENDANT'S CUSTOMERS.
12           NUMBER FOUR: FOR THE PERIOD JANUARY 2018 TO
13   SEPTEMBER 2018, DEFENDANT WILL PRODUCE ANY BUSINESS PROJECTIONS
14   CREATED DURING THAT PERIOD.
15           I THINK THOSE ARE THE -- AND I DECLINED A RULING ON
16   THE DEADLINES YOU WANTED EXTENDED OR ON THE CONSEQUENCES FOR
17   VIOLATING THIS COURT ORDER, WHICH WON'T BE VIOLATED.
18           OKAY? AND THEN, PRESUMABLY, YOU'VE AGREED ON OTHER
19   THINGS THAT WE HAVEN'T DISCUSSED?
20           **MR. PISTORINO:** CORRECT.
21           **THE COURT:** RIGHT?
22           **MS. DRAPER:** CORRECT.
23           **THE COURT:** OKAY. SO ALL THOSE -- ALL THE THINGS
24   THAT THE PARTIES AGREED UPON WILL BE PRODUCED WITHIN ONE WEEK.
25   OKAY? BY THE DEFENDANT.

1       OKAY.  THANK YOU, ALL.
2       **MR. PISTORINO:**  THANK YOU, YOUR HONOR.
3       **MS. DRAPER:**  THANK YOU, YOUR HONOR.
4       (PROCEEDINGS ADJOURNED AT 1:52 P.M.)

**CERTIFICATE OF TRANSCRIBER**

I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE ABOVE MATTER.

I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

*/s/ jmcolumbini*

JOAN MARIE COLUMBINI

OCTOBER 20, 2018