# EXHIBIT 1

James C. Pistorino (SBN 226496)
    james@dparrishlaw.com
Parrish Law Offices
224 Lexington Dr.
Menlo Park, CA 94025
Telephone: (650) 400-0043

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORIS A. KAELIN, as trustee for the estate of TECHSHOP, INC., <br><br> Plaintiff, <br><br> vs. <br><br> DAN RASURE, et al. <br><br> Defendants. | Case Number: **4:18-cv-01044-HSG-JCS** <br><br> **TECHSHOP'S MOTION TO EXCLUDE** |

Plaintiff Doris Kaelin, as trustee for the estate of TechShop, Inc. (hereinafter "TechShop"), respectfully files this motion to exclude opinion testimony from Messrs. Mark Bunger and Jeremiah Johnson.

## BACKGROUND

On November 19, 2018, Defendants served an "expert witness" disclosure, allegedly complying with FED.R.CIV.P. 26(a)(2), identifying two individuals proposed to offer "expert opinion testimony." *See* Exhibit A.

**Jeremiah Johnson**

Apparently, Mr. Johnson is an accountant who does part-time contract work for Defendants.[1] In the period before the litigation began, Mr. Johnson prepared financial

---

[1] Defendants' Initial Disclosures indicated that Mr. Johnson was "employed" by Defendants. However, during the meet and confer held on March 15, 2019, Defendants clarified that Mr. Johnson was simply contracted for accounting work rather than being an actual employee.

Page **1** of **8**

projections of revenues, profits, etc. for TechShop 2.0. Plaintiff does not object to Mr. Johnson appearing as a fact witness to testify regarding the steps he took in preparing the projections.

However, with regard to the "expert disclosure" of November 19, 2018, no report, CV, etc. for Mr. Johnson was provided. Instead, Defendants contended that Mr. Johnson did not have to provide a report. Defendants disclosed that:

> The subject matter of Mr. Johnson's testimony is expected to be the manner in which the books and records are maintain [sic], including the reporting of prepaid revenues and the expenses to be incurred to earn such revenues over time, as well as the lack of profits from the alleged infringement.

No other disclosure of a "summary of the facts and opinions to which the witness is expected to testify" was provided.

**Mark Bunger**

On November 19, 2018, Defendants provided an expert report of Mr. Bunger. Exhibit B. The report is described as a "brand value analysis." Mr. Bunger's experience and training appear to be in the marketing arena and he does not indicate that he has any training or expertise in licensing, damages analysis, trademark validity/invalidity, etc. During the meet and confer held on March 15, 2019, Defendants contended that the Bunger report related to both validity and damages.

Mr. Bunger's opening report includes his opinions that:

1) "The value of the TechShop brand began to decline as early as 2013"

2) "The messy bankruptcy of TechShop in November 2017 damaged customers and employees to an extent that the brand held negative value"

3) "There was no possibility of confusion as to the separate origin of TechShop and 'TechShop 2.0' based on statements by all parties and independent observers."

*Id.* at 1. Attached to the report is a 101 page appendix that is self-described as: "This appendix documents and summarizes the most prominent traditional and social media articles and posts driving TechShop brand sentiment in the period Nov 2017-Nov 2018."

On December 3, 2018, Defendants provided a "rebuttal" report from Mr. Bunger. Exhibit C. The Bunger rebuttal report does not directly address Plaintiff's expert report on damages or offer its own damages model or opinion. Indeed, the neither the word "damage" nor "damages" appear in the report addressing the issue of harm to TechShop from Defendants' unauthorized use of the TechShop marks. Instead, the report is simply replete with unsupported/unsubstantiated statements that are not the product of expertise but of mere speculation/conjecture. The report is bare opinion and is not science. The "rebuttal report" includes so many objectionable statements that simply listing them is burdensome. Among those statements are Mr. Bunger's views, *inter alia*:

1) on the "history" of "hackerspaces and makerspaces" (*Id.* at 1-2) (sourced from Wikipedia);

2) "The view that TechShop is freeriding on the ideas they gifted, has been a source of tension in the community to this day." (*Id.* at 2);

3) that TechShop and other terms were "confusing[ly] used to refer to the same thing" (*Id.* at 2);

4) that the "vast majority (99%+) of makerspaces in the world did not see any advantage to using the TechShop name" (*Id.* at 2);

5) "The global maker community had thus long been skeptical of TechShop, if envious of its notoriety …" (*Id.* at 4);

6) "TechShop's management was universally blamed for the failure, and was excoriated for not only the poor decisions that led to the failure, but also for the abrupt and damaging way the closure was carried out." (*Id.* at 5);

7) "As we noted earlier, in France, Leroy Martin clearly sees the investment as part of community support, even though it does not intend to do so at a loss." (*Id.* at 7);

8) "Licensing fees paid in foreign countries are not an appropriate measure for licensing or sale value in the U.S. (needs explanation, market works differently, subsidies, different operations cost factors, etc.)." (*Id.* at 6);

9) "Market value approach (price paid by foreign licensee) is not an appropriate measure in the U.S. where there is a long history of operating loss and need for subsidy." (*Id.* at 6);

10) "In none of these cases is the smaller brand of value to the larger company, except in so far as it is a gesture of charitable community support for education and entrepreneurship." (*Id.* at 7); and

11) "A lost licensing revenue model for the TechShop mark based on foreign licensing history when there has been no history of licensing in the U.S., is not an appropriate valuation method for this case." (*Id.* at 7)

**Legal Standards**

Expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *See* FED.R.EVID. 702. Of course, the proponent of expert testimony bears the burden of proving its admissibility. *See, e.g., Lust By & Through Lust v. Merrill Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). Proposed expert testimony must be both relevant to the issues in the case and reliable. *See Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 589 (1993). A district court is to act as a "gatekeeper" to ensure through a rigorous analysis that the proponent of the expert opinions has satisfied its burdens. *See Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 141 and 150 (1999).

DISCUSSION

**I. Expert Testimony from Mr. Johnson Should Be Excluded**

    **a. Failure to Comply With FED.R.CIV.P. 26(a)(2)(C)(ii)**

In their disclosures, Defendants contend that no report from Mr. Johnson was required. Although Plaintiff disputes that assertion, assuming *arguendo* that it was true, Defendants still failed to comply with the Rules.

Pursuant to FED.R.CIV.P. 26(a)(2)(C), if an expert report is not required from a witness offering expert opinion testimony, then two disclosures must be made: 1) a disclosure of "the subject matter on which the witness is expected to present evidence"; and 2) a disclosure of a "summary of the facts and opinions to which the witness is expected to testify."

Defendants' disclosure offers only the subject matter on which Mr. Johnson is expected to testify. See FED.R.CIV.P. 26(a)(2)(C)(i). See Exhibit A at 2 ("The *subject matter* of Mr. Johnson's testimony is expected to be …") (emphasis added). There is no disclosure of a

summary of the facts and opinions to which Mr. Johnson is expected to testify. See FED.R.CIV.P. 26(a)(2)(C)(ii). Putting aside wither Mr. Johnson is even qualified or capable of assigning profits (or lack thereof) to infringement, there is no disclosure of a summary of the facts considered or the opinions formed therefrom.

### b. No Showing that Mr. Johnson Has Any Expertise In "Lack of Profits From The Alleged Infringement"

As a consequence of/in addition to the failure to comply with the disclosure requirements, there is no showing that Mr. Johnson has any expertise in determining alleged "lack of profits" from infringement. There is no showing that Mr. Johnson has any specialized training or expertise in that area or any reliable science/practice/facts that would allow him to make such a determination. For example, there is no showing that Mr. Johnson surveyed TechShop 2.0 customers or the public more generally to determine whether they were confused as to the association between TechShop and TechShop 2.0. Simply put, there is nothing to support the claim that expert testimony from Mr. Johnson on any subject is admissible.

### c. Failure to Comply With FED.R.CIV.P. 26(a)(2)(B)

As disclosed by Defendants, Mr. Johnson is engaged on a part time, contract basis. Thus, as opposed to an employee, Mr. Johnson is being retained or specially employed to provide his "expert" testimony in this case. Accordingly, pursuant to FED.R.CIV.P. 26(a)(2)(B), Mr. Johnson was required to provide an expert report – which he did not.

For each and all of the reasons above, the proposed testimony should be excluded for failure to comply with the disclosure requirements and because Defendants cannot meet their burden to show that the proposed Johnson' testimony is relevant and reliable.

## II. Expert Testimony from Mr. Bunger Should Be Excluded

As detailed above, Mr. Bunger provided two reports - both are objectionable and should be excluded and Defendants cannot meet their burden to show that the testimony is relevant and reliable.

### a. The Bunger Opening Report

As an initial matter, Bunger's opinions regarding the "brand value/sentiment" of the TechShop' marks are utterly irrelevant to the issues of validity and infringement. Being irrelevant, the proposed testimony is not helpful and will not assist the jury.

To the extent that the Bunger' opinions are alleged to relate to damages, again, the opinions are irrelevant. Pursuant to 15 U.S.C. § 1117(a), damages for trademark infringement may consist of: 1) defendant's profits; 2) any damages sustained by the plaintiff; and 3) costs of the action. Bunger does not opine as to any of these. For example, Mr. Bunger does not opine that TechShop was, or was not, damaged when Mr. Rasure used the TechShop marks without permission. Instead, he simply offers his views on whether the "brand equity" went up or down. So what? The issue for the jury will be: was TechShop damaged by the unauthorized use and, if so, how much? Bunger does not offer an opinion on this subject. Accordingly, the Bunger' opinions will not be helpful because they are irrelevant.

Mr. Bunger's views on likelihood of confusion (*e.g.*, pages 8-11) are simply not "expert" testimony. Instead, Mr. Bunger simply relates that he viewed some public statements and concluded that there was "no possibility of confusion." The jury is in just as good a position as Mr. Bunger to make that assessment. Mr. Bunger has not shown if, or how, his alleged specialized training or experience put him in any better position than the public to make that assessment. Mr. Bunger does not offer that he has any specialized training or experience in determining likelihood of confusion. Further, no methodology or objective measure/test is applied to support Bunger's opinion and it is not reliable. No survey, etc. was conducted. Thus, Mr. Bunger is both incompetent to make these claims and his testimony would not be helpful to the jury.

### b. The Bunger "Rebuttal" Report

The Bunger "rebuttal report" is objectionable on numerous grounds and appears to have been written without making any effort to comply with the Rules or with the requirement that an "expert" report actually reflect specialized training or expertise and be reliable.

Of course, a registered trademark (like the TechShop' marks) is presumed valid and a party challenging the validity of a registered mark bears the burden of proving invalidity. *See* 15 U.S.C. §1057(a). Thus, to the extent that the report is alleged to relate to validity, that is a subject on which Defendants bore the burden of proof. Accordingly, pursuant to this Court's Orders, such a report would have been due on November 19, 2018 - not December 3, 2018 when the report was served. Thus, to the extent that the report is alleged to relate to validity, it should be excluded for failure to comply with the Court's Orders.

Because the report is labeled a "rebuttal" report and the only report Plaintiff served related to damages, as far as Plaintiff can tell, the Bunger' report is alleged to relate to damages. In that regard, the report fails to comply with the Rules, is not grounded in "expertise", is not relevant/reliable, and will not assist the trier of fact.

For example, statements 2-7 above are mere speculation. How does Mr. Bunger know what the "vast majority" of makerspaces think? How does he know what Leroy Martin thinks/thought? No methodology or data from which these conclusions could be reached is provided or any connection to allege expertise. At best, these statements are mere hearsay masquerading as "expert" opinion and are inadmissible.

With regard to opinions 8-11, Mr. Bunger has not established that he has any expertise in this area. Indeed, he does not offer if these are his legal conclusions. In either case, he has not established that he is competent to make these claims. Beyond that, Statement 8 appears to be a note to himself to fill in the missing information. *Id.* at 6 ("needs explanation, market works differently, subsidies, different operations cost factors, etc.").

Further, of course, FED.R.CIV.P. 26(a)(2)(B)(i) requires ***both*** a complete statement of the opinions as well as the basis and reasons for them. Obviously, bare statements that lost licensing revenue is not an "appropriate measure" do not comply with that Rule. Indeed, because Mr. Bunger is focused on "brand equity", the "measure" referred to appears to be a "measure" of brand equity. Obviously, that is not relevant to the issue of damages suffered by TechShop from Defendants' unauthorized use of the TechShop marks.

Accordingly, again, Defendants cannot sustain their burden of showing that the proposed testimony is both relevant and reliable.

## CONCLUSION

For the reasons set forth above, the proposed testimony of Messrs. Johnson and Bunger should be excluded.

*/s/*

James C. Pistorino (SBN 226496)
james@dparrishlaw.com
Parrish Law Offices
224 Lexington Dr.
Menlo Park, CA  94025
Telephone: (650) 400-0043

Attorneys for Plaintiff