1  [COUNSEL LISTED ON FOLLOWING PAGE]

2

3

4

5

6

7

8

9                    **UNITED STATES DISTRICT COURT**

10          **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

11

12  TECHSHOP, INC., a California corporation;         CASE NO. 4:18-CV-01044-HSG (JCS)
    DORIS A. KAELIN, in her capacity as
13  Chapter 7 bankruptcy trustee for TECHSHOP,       **JOINT PROPOSED JURY**
    INC.,                                            **INSTRUCTIONS**
14
                    Plaintiff,                       Jury Trial: June 3, 2019, 8:00 a.m.
15                                                   Pretrial Conf.: April 30, 2019, 3:00 pm
            vs.                                      Judge: Hon. Haywood S. Gilliam Jr.
16
    DAN RASURE, et al.,
17
                    Defendants.
18  ────────────────────────────────

19  AND RELATED COUNTERCLAIMS

20

21

22

23

24

25

26

27

28

James C. Pistorino (SBN 226496)
    james@dparrishlaw.com
Parrish Law Offices
224 Lexington Dr.
Menlo Park, CA  94025
Telephone: (650) 400-0043

Attorneys for Plaintiff and Counterdefendant

Ann McFarland Draper (Bar No. 065669)
courts@draperlaw.net
Draper Law Offices
75 Broadway, Suite 202
San Francisco, California 94111
Telephone:    (415) 989-5620

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Andrea Pallios Roberts (Bar No. 228128)
andreaproberts@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

Ed DeFranco (Bar No. 165596)
eddefranco@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:    (212) 849-7000
Facsimile:    (212) 849-7100

John E. Nathan (*Pro Hac Vice*)
jnathan155@yahoo.com
John E. Nathan LLC
1175 Park Avenue
New York, NY 10128
Telephone:    (917) 960-1667

Attorneys for Defendants and Counterclaimants

-1-

# I. PRELIMINARY INSTRUCTIONS[1]

A.   STIPULATED PRELIMINARY INSTRUCTION NO. 1 RE DUTY OF THE JURY

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

---

[1]   Unless stated otherwise, the Proposed Jury Instructions are based on the *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, prepared by the Ninth Circuit Jury Instructions Committee, 2017 Edition (last updated Jan. 2019) ("Model Instructions"), available at http://www3.ce9.uscourts.gov/jury-instructions/model-civil. Any deviations from the Model Instructions are noted as required by ¶ 8 by the Civil Pretrial and Trial Standing Order for Cases Before District Judge Haywood S. Gilliam, Jr.

**B.**     DISPUTED PRELIMINARY INSTRUCTION NO. 2, Offered by Plaintiff.

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

Plaintiff TechShop asserts that Defendants Rasure, TechShop 2.0, and TechShop 2.0 San Francisco willfully infringed and infringe TechShop's United States Trademark Registration Nos. 4,247,529 and 4,294,110 for the mark "TECHSHOP" by using the names TECHSHOP 2.0 and THESHOP, without permission in a manner likely to cause confusion among members of the interested public.  TechShop seeks damages in the forms of lost licensing revenue and Defendants' profits.  TechShop has the burden of proof on these claims.

Defendants deny Plaintiff's claims.  Defendants also assert that the TechShop trademarks are invalid and abandoned.  In addition, the Defendants assert that TechShop committed fraud entering into an agreement with Defendants which TechShop had no intention to perform.  TechShop denies Defendants' allegations.  Defendants bear the burden of proof on these claims.

08876-00001/10810647.1

DISPUTED PRELIMINARY INSTRUCTION NO. 2 RE CLAIMS AND DEFENSES,
Offered by Defendants.

The plaintiff and counterdefendant, TechShop, Inc. ("Plaintiff" or "Techshop"), asserts that defendants and counterclaimants Dan Rasure, The Shop.Build LLC and TheShop.Build San Fran, LLC (together "Defendants") have willfully infringed TechShop's service marks for the word TECHSHOP by using the names TechShop 2.0 and TheShop.Build.[2] Plaintiff TechShop is currently in Chapter 7 bankruptcy liquidation proceedings. The party asserting TechShop's claims in this case is Doris A. Kaelin, the Trustee appointed in the TechShop bankruptcy case. The Plaintiff has the burden of proving these claims.

Defendants deny that they infringed and also claim that the Plaintiff expressly or impliedly consented to Defendants' use of the name TechShop 2.0, and that when Plaintiff objected to that name, Defendants changed their name to TheShop.Build.

In addition to denying Plaintiff's claim of infringement, Defendants also contend: that TechShop discontinued and abandoned the use of the TECHSHOP service marks in the United States; that the TECHSHOP service marks are not valid or protectable; and that TechShop fraudulently induced Defendant Dan Rasure to pay certain of TechShop's expenses and taxes. The Defendants have the burden of proof on these claims.

Defendants claim they are entitled to an award of punitive damages because of Plaintiff's fraud and for filing this infringement case against them. Defendants have the burden of proving their entitlement to punitive damages by clear and convincing evidence.

The Plaintiff denies Defendants' claims.

---

[2] As set forth in Defendants' Motion in Limine No. 1 (Dkt. 128), Defendants object to Plaintiff's contention that "TheShop.Build," or any variations thereof (such as "TheShop dot Build" and "TheShop.build)" infringe the TECHSHOP service marks because that theory of liability was not disclosed during fact discovery. Accordingly, to the extent the Court grants Defendants' Motion in Limine No. 1, the Proposed Jury Instructions should be revised to remove references to "TheShop.Build" as allegedly infringing.

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

TechShop's proposed instruction should be given. Defendants proposed instruction would mislead the jury as to who the parties are. The Defendants in this case are Dan Rasure, TechShop 2.0, and TechShop 2.0 San Francisco. Confusion would also be promoted as the mass of relevant exhibits refer to Defendants using the "TechShop 2.0" name. Further, Plaintiff's proposal is less argumentative while still setting forth the basic facts to assist the jurors.

DEFENDANTS' REASONS FOR ITS INSTRUCTION/OBJECTION:

Defendants' proposed instruction should be given. First, Defendants' proposed instruction accurately identifies the parties. Although Plaintiff sued "TechShop 2.0" and "TechShop 2.0 San Francisco," the entities no longer exist under those names. Defendants changed the entity names after Plaintiff objected to Defendants' use of the term "TechShop 2.0." Plaintiff's desire to continue referring to the Defendant entities by their former names is an obvious attempt to mislead the jury into believing that Defendants continue to use those names, even in the face of this lawsuit. Second, Defendants disagree that their proposal is argumentative. Finally, Plaintiff's proposal does not let the jury know that Defendants are seeking punitive damages.

1  C.    STIPULATED PRELIMINARY INSTRUCTION NO. 3 RE BURDEN OF PROOF –
2        PREPONDERANCE OF THE EVIDENCE
3            When a party has the burden of proving any claim or affirmative defense by a
4  preponderance of the evidence, it means you must be persuaded by the evidence that the claim or
5  affirmative defense is more probably true than not true. You should base your decision on all of
6  the evidence, regardless of which party presented it.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  D.    STIPULATED PRELIMINARY INSTRUCTION NO. 4 RE  BURDEN OF PROOF –

2         CLEAR AND CONVINCING EVIDENCE

3         When a party has the burden of proving any claim or defense by clear and convincing

4  evidence, it means that the party must present evidence that leaves you with a firm belief or

5  conviction that it is highly probable that the factual contentions of the claim or defense are true.

6  This is a higher standard of proof than proof by a preponderance of the evidence, but it does not

7  require proof beyond a reasonable doubt.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

E.   <u>STIPULATED PRELIMINARY INSTRUCTION NO. 5 RE WHAT IS EVIDENCE</u>

The evidence you are to consider in deciding what the facts are consists of:

1.   the sworn testimony of any witness;

2.   the exhibits that are admitted into evidence;

3.   any facts to which the lawyers have agreed; and

4.   any facts that I have instructed you to accept as proved.

08876-00001/10810647.1

F.      STIPULATED PRELIMINARY INSTRUCTION NO. 6 RE WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

1  G.      STIPULATED PRELIMINARY INSTRUCTION NO. 7 RE EVIDENCE FOR LIMITED

2          PURPOSE

3          Some evidence may be admitted only for a limited purpose.

4          When I instruct you that an item of evidence will be admitted only for a limited purpose,

5  you must consider it only for that limited purpose and not for any other purpose.

08876-00001/10810647.1

I.   STIPULATED PRELIMINARY INSTRUCTION NO. 8 RE DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

Case No. 4:18-CV-01044-HSG (JCS)
JOINT PROPOSED JURY INSTRUCTIONS

**J.   <u>STIPULATED PRELIMINARY INSTRUCTION NO. 9 RE RULING ON OBJECTIONS</u>**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

Case No. 4:18-CV-01044-HSG (JCS)
JOINT PROPOSED JURY INSTRUCTIONS

K.      STIPULATED PRELIMINARY INSTRUCTION NO. 10 RE CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

08876-00001/10810647.1

L.    STIPULATED PRELIMINARY INSTRUCTION NO. 11 RE CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices

-14-

1    to search for or view any place discussed during the trial. Also, do not do any research

2    about this case, the law, or the people involved—including the parties, the witnesses or the

3    lawyers—until you have been excused as jurors. If you happen to read or hear anything

4    touching on this case in the media, turn away and report it to me as soon as possible.

5    These rules protect each party's right to have this case decided only on evidence that has

6    been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy

7    of their testimony is tested through the trial process. If you do any research or investigation

8    outside the courtroom, or gain any information through improper communications, then your

9    verdict may be influenced by inaccurate, incomplete or misleading information that has not been

10   tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if

11   you decide the case based on information not presented in court, you will have denied the parties a

12   fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you

13   follow these rules.

14   A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a

15   mistrial could result that would require the entire trial process to start over. If any juror is exposed

16   to any outside information, please notify the court immediately.

17

18

19

20

21

22

23

24

25

26

27

28

1    M.     <u>STIPULATED PRELIMINARY INSTRUCTION NO. 12 RE PUBLICITY DURING</u>

2            <u>TRIAL</u>

3        If there is any news media account or commentary about the case or anything to do with it,

4 you must ignore it. You must not read, watch or listen to any news media account or commentary

5 about the case or anything to do with it. The case must be decided by you solely and exclusively

6 on the evidence that will be received in the case and on my instructions as to the law that applies.

7 If any juror is exposed to any outside information, please notify me immediately.

Case No. 4:18-CV-01044-HSG (JCS)
JOINT PROPOSED JURY INSTRUCTIONS

N.    <u>STIPULATED PRELIMINARY INSTRUCTION NO. 13 RE:  NO TRANSCRIPT</u>
      <u>AVAILABLE TO JURY</u>

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

08876-00001/10810647.1

O.     <u>STIPULATED PRELIMINARY INSTRUCTION NO. 14 RE TAKING NOTES</u>

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the jury room. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

1  P.     STIPULATED PRELIMINARY INSTRUCTION NO. 15 RE BENCH CONFERENCES

2         AND RECESSES

3         From time to time during the trial, it may become necessary for me to talk with the

4  attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is

5  present in the courtroom, or by calling a recess. Please understand that while you are waiting, we

6  are working. The purpose of these conferences is not to keep relevant information from you, but to

7  decide how certain evidence is to be treated under the rules of evidence and to avoid confusion

8  and error.

9         Of course, we will do what we can to keep the number and length of these conferences to a

10  minimum. I may not always grant an attorney's request for a conference. Do not consider my

11  granting or denying a request for a conference as any indication of my opinion of the case or of

12  what your verdict should be.

08876-00001/10810647.1

Q.    <u>STIPULATED PRELIMINARY INSTRUCTION NO. 16 RE OUTLINE OF TRIAL</u>

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

## STIPULATED PRELIMINARY INSTRUCTION NO. 17 RE CORPORATIONS AND PARTNERSHIPS—FAIR TREATMENT

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

1  DISPUTED PRELIMINARY INSTRUCTION NO. 18 RE LIABILITY OF CORPORATIONS—

2  SCOPE OF AUTHORITY NOT IN ISSUE, Offered by Plaintiff

3       Under the law, a corporation is considered to be a person. It can only act through its

4  employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its

5  employees, agents, directors, and officers performed within the scope of authority.

08876-00001/10810647.1

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

TechShop believes that this instruction is proper.  At issue in this case may be whether each of the Defendants is responsible for certain acts of others.  The Model Jury Instructions do not distinguish between preliminary or final instructions.  Instructing the jury on this issue at this time will help them to understand the evidence.

DEFENDANTS' REASONS FOR ITS INSTRUCTION/OBJECTION:

Defendants disagree that this instruction is needed as a preliminary instruction.  The Ninth Circuit Model Jury Instructions do not include a preliminary instruction on this issue, and this instruction is not needed in order for the jury to understand the evidence during trial.

08876-00001/10810647.1

<u>DISPUTED PRELIMINARY INSTRUCTION NO. 19 RE</u>

<u>AGENT AND PRINCIPAL—DEFINITION, Offered by Plaintiff</u>

An agent is a person who performs services for another person under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services. The other person is called a principal. One may be an agent without receiving compensation for services. The agency agreement may be oral or written.

08876-00001/10810647.1

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

TechShop believes that this instruction is proper.  At issue in this case may be whether each of the Defendants is responsible for certain acts of others, especially as it regards "volunteers" acting for Defendants.  The Model Jury Instructions do not distinguish between preliminary or final instructions.  Instructing the jury on this issue at this time will help them to understand the evidence.


DEFENDANTS' REASONS FOR ITS INSTRUCTION/OBJECTION

Defendants disagree that this instruction is needed as a preliminary instruction.  The Ninth Circuit Model Jury Instructions do not include a preliminary instruction on this issue, and this instruction is not needed in order for the jury to understand the evidence during trial.

08876-00001/10810647.1

1      <u>DISPUTED PRELIMINARY INSTRUCTION NO. 20 RE</u>

2      <u>AGENT—SCOPE OF AUTHORITY DEFINED, Offered by Plaintiff</u>

3      An agent is acting within the scope of authority if the agent is engaged in the performance

4   of duties which were expressly or impliedly assigned to the agent by the principal.

08876-00001/10810647.

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

TechShop believes that this instruction is proper.  At issue in this case may be whether each of the Defendants is responsible for certain acts of others, especially as it regards "volunteers" acting for Defendants.  The Model Jury Instructions do not distinguish between preliminary or final instructions.  Instructing the jury on this issue at this time will help them to understand the evidence.

DEFENDANTS' REASONS FOR ITS INSTRUCTION/OBJECTION

Defendants disagree that this instruction is needed as a preliminary instruction.  The Ninth Circuit Model Jury Instructions do not include a preliminary instruction on this issue, and this instruction is not needed in order for the jury to understand the evidence during trial.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DISPUTED PRELIMINARY INSTRUCTION NO. 21 RE

### RATIFICATION, Offered by Plaintiff

A purported principal who ratifies the acts of someone who was purporting to act as the principal's agent will be liable for the acts of that purported agent, provided that the principal made a conscious and affirmative decision to approve the relevant acts of the purported agent while in possession of full and complete knowledge of all relevant events.

08876-00001/10810647.1

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

TechShop believes that this instruction is proper.  At issue in this case may be whether each of the Defendants is responsible for certain acts of others, especially as it regards "volunteers" acting for Defendants.  The Model Jury Instructions do not distinguish between preliminary or final instructions.  Instructing the jury on this issue at this time will help them to understand the evidence.


DEFENDANTS' REASONS FOR ITS INSTRUCTION/OBJECTION

Defendants disagree that this instruction is needed as a preliminary instruction.  The Ninth Circuit Model Jury Instructions do not include a preliminary instruction on this issue, and this instruction is not needed in order for the jury to understand the evidence during trial.

08876-00001/10810647.1

R.      DISPUTED PRELIMINARY INSTRUCTION NO. 22, Offered by Plaintiff.

**DEFINITION AND FUNCTION OF A SERVICE MARK**

A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods or services. A service mark is one form of trademark and is any word, name, symbol, or device used by a person to identify and distinguish such person's services from those of others and to indicate the source of the services. The owner of a service mark has the right to exclude others from using that service mark or a similar mark that is likely to cause confusion in the marketplace. The main function of a service mark is to identify and distinguish services as the service of a particular manufacturer or merchant and to protect its goodwill.

**HOW A SERVICE MARK IS OBTAINED**

A person acquires the right to exclude others from using the same mark or a similar mark that is likely to cause confusion in the marketplace by being the first to use it in the marketplace, or by using it before the alleged infringer. Rights in a service mark are obtained only through commercial use of the mark.

**SERVICE MARK INTERESTS**

The owner of a service mark may enter into an agreement that permits another person to use the service mark. This type of agreement is called a license, and the person permitted to use the service mark is called a licensee.

**SERVICE MARK REGISTRATION**

After the owner of a service mark has obtained the right to exclude others from using the service mark, the owner may obtain a certificate of registration issued by the United States Patent and Trademark Office. Thereafter, when the owner brings an action for infringement, the owner may rely solely on the registration certificate to prove that the owner has the right to exclude others from using the service mark or a similar mark that is likely to cause confusion in the marketplace in connection with the type of services specified in the certificate. These

1 presumptions in favor of the owner created by the certificate of registration can be overcome or

2 rebutted only by certain types of evidence that I will describe to you later as appropriate.

3

4 **LIKELIHOOD OF CONFUSION**

5 To prove infringement, the Plaintiff must prove, by a preponderance of the evidence, that

6 the Defendants, without the Plaintiff's consent, used in commerce a reproduction, copy,

7 counterfeit or colorable imitation of Plaintiff's mark in connection with the distribution or

8 advertisement of services, such that the defendant's use of the mark is likely to cause confusion as

9 to the source of the services. It is not necessary that the mark used by the Defendants be an exact

10 copy of the Plaintiff's mark. Rather, the Plaintiff must demonstrate that, viewed in its entirety, the

11 mark used by the Defendants is likely to cause confusion in the minds of reasonably prudent

12 purchasers or users as to the source of the services in question.

13

14 **THE PLAINTIFF'S BURDEN OF PROOF**

15 In this case, the Plaintiff, TechShop, contends that the Defendants have infringed the

16 Plaintiff's service marks.  The Plaintiff has the burden of proving by a preponderance of the

17 evidence that the Plaintiff is the owner of a valid service mark and that the Defendants infringed

18 that service mark. Preponderance of the evidence means that you must be persuaded by the

19 evidence that it is more probably true than not true that the Defendants infringed the Plaintiff's

20 service marks.

21

22 **THE DEFENDANT'S BURDEN OF PROOF**

23 The Defendants contend that the registered service marks are invalid because TechShop

24 discontinued and abandoned the use of the TECHSHOP service marks in the United States; and

25 that the TECHSHOP service marks are not protectable.  The Defendants have the burden of

26 proving by clear and convincing evidence that the registered service marks are invalid because the

27 service marks have been abandoned or that the trademarks are not protectable.

28

08876-00001/10810647.1

1      Preponderance of the evidence means that you must be persuaded by the evidence that it is

2 more probably true than not true that the registered service marks are invalid because they have

3 been abandoned, or that they are not protectable.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

08876-00001/10810647.1

1    DISPUTED PRELIMINARY INSTRUCTION NO. 22 RE SERVICE MARK, Offered by

2    Defendants

3        The Plaintiff, TechShop, seeks damages against the Defendants for infringement of its

4    federal service mark registrations for the word TECHSHOP. The Defendants deny infringing the

5    service marks and contend the service marks are invalid. Defendants also claim that the Plaintiff

6    expressly or impliedly consented to Defendants' use of the name TechShop 2.0, that Plaintiff did

7    not object to Defendants' use of TechShop 2.0 until it filed this lawsuit, and that when Plaintiff

8    later objected (by filing this lawsuit), Defendants promptly changed their name to TheShop.Build.

9    The Defendants also claim that the Plaintiff did not notify Defendants that the new name

10   TheShop.Build allegedly infringed until nine months after the lawsuit was filed. To help you

11   understand the evidence that will be presented in this case, I will explain some of the legal terms

12   you will hear during this trial.

13

14       **DEFINITION AND FUNCTION OF A SERVICE MARK**

15       You've probably heard of a trademark.  A trademark is a word, name, symbol, or device,

16   or any combination of these items that indicates the source of goods.  This case is about service

17   marks.  A service mark is any word, name, symbol, or device used by a person to identify and

18   distinguish such person's services from those of others and to indicate the source of the services.

19   In other words, whereas a trademark indicates the source of goods, a service mark indicates the

20   source of services.  The owner of a service mark has the right to exclude others from using that

21   service mark or a similar mark that is likely to cause confusion in the marketplace among potential

22   customers. The main function of a service mark is to identify and distinguish services as the

23   service of a particular manufacturer or merchant and to protect its goodwill.

24

25       **HOW A SERVICE MARK IS OBTAINED**

26       A person acquires the right to exclude others from using the same mark or a similar mark

27   that is likely to cause confusion in the marketplace by being the first to use it in the marketplace,

28

1  or by using it before the alleged infringer.  Rights in a service mark are obtained only through
2  commercial use of the mark <u>in the United States</u>.

3

4  **SERVICE MARK INTERESTS**

5  The owner of a service mark may enter into an agreement that permits another person to
6  use the service mark.  This type of agreement is called a license, and the person permitted to use
7  the service mark is called a licensee.  <u>The owner can also agree that another person can use its</u>
8  <u>mark by expressly or impliedly consenting to that person's use of the mark.</u>

9

10  **SERVICE MARK REGISTRATION**

11  After the owner of a service mark has obtained the right to exclude others from using the
12  service mark, the owner may obtain a certificate of registration issued by the United States Patent
13  and Trademark Office. Thereafter, when the owner brings an action for infringement, the owner
14  may rely solely on the registration certificate to prove that the owner has the right to exclude
15  others from using the service mark or a similar mark that is likely to cause confusion in the
16  marketplace in connection with the type of services specified in the certificate.  These
17  presumptions in favor of the owner created by the certificate of registration can be overcome or
18  rebutted only by certain types of evidence that I will describe to you later as appropriate.

19

20  **LIKELIHOOD OF CONFUSION**

21  To prove infringement, the Plaintiff must prove, by a preponderance of the evidence, that
22  the Defendants, without the Plaintiff's <u>express or implied</u> consent, used in commerce a
23  reproduction, copy, counterfeit or colorable imitation of Plaintiff's <u>registered</u> mark in connection
24  with the distribution or advertisement of services, such that the defendant's use of the mark is
25  likely to cause confusion as to the source of the services. It is not necessary that the mark used by
26  the Defendants be an exact copy of the Plaintiff's mark. Rather, the Plaintiff must demonstrate
27  that, viewed in its entirety, the mark used by the Defendants is likely to cause confusion in the
28  minds of reasonably prudent purchasers or users as to the source of the services in question.

1
2        **THE PLAINTIFF'S BURDEN OF PROOF**

3        In this case, the Plaintiff, TechShop, contends that the Defendants have infringed the

4   Plaintiff's service marks.  The Plaintiff has the burden of proving by a preponderance of the

5   evidence that the Plaintiff is the owner of a valid service mark, <u>that Defendants' used the mark</u>

6   <u>without Plaintiff's consent,</u> and that the Defendants infringed that service mark. Preponderance of

7   the evidence means that you must be persuaded by the evidence that it is more probably true than

8   not true that the Defendants infringed the Plaintiff's service marks.

9
10       **THE DEFENDANTS' BURDEN OF PROOF**

11       The Defendants contend that the registered service marks are invalid because TechShop

12  discontinued and abandoned the use of the TECHSHOP service marks in the United States; and

13  that the TECHSHOP service marks are not protectable.  The Defendants have the burden of

14  proving by a preponderance of the evidence that the registered service marks are invalid because

15  the service marks have been abandoned or that the trademarks are not protectable.

16       Preponderance of the evidence means that you must be persuaded by the evidence that it is

17  more probably true than not true that the registered service marks are invalid because they have

18  been abandoned, or that they are not protectable.

19
20
21
22
23
24
25
26
27
28

08876-00001/10810647.1

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

TechShop objects to Defendants introductory paragraph. Again, it is argumentative and is repetitive of Preliminary Instruction 2 above. Further, with regard to alleged abandonment, Defendants actually misstate the law. Abandonment must be shown by clear and convincing evidence. As noted in the comments to the Model Jury Instructions, while no Ninth Circuit case has explicitly addressed the issue yet, "except for the Federal Circuit, 'all' courts follow a clear and convincing standard of proof of abandonment. *See* 3 J. THOMAS MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 17:12 (4th ed. 2015); *see also* Anthony L. Fletcher and David J. Kera, *Annual Review*, 85 TRADEMARK REP. 607, 724-25 (1995)." Further, Defendants' actually misstate the law with respect to "consent" and license. Consent is not a license. A license is a legal right. By contrast, consent is merely a bar against enforcement.

DEFENDANTS' REASONS FOR ITS INSTRUCTION/ OBJECTION

Defendants disagree that their proposed instruction is argumentative. Rather, it provides additional information to help the jurors to understand the instruction in the context of the case. Plaintiff is incorrect that Defendants misstate the law with respect to abandonment. Ninth Circuit Model Jury Instruction No. 15.22 gives the option for the Court to instruct the jury on the burden of proof, between clear and convincing and a preponderance of the evidence. The Comments in the Ninth Circuit Model Jury Instructions also make clear that "[n]o Ninth Circuit case establishes the standard of proof required to prove abandonment as between 'clear and convincing' and 'preponderance.'" (Ninth Circuit Model Jury Instructions, p. 351.) Plaintiff does not cite any law indicating that the Court should apply a "clear and convincing" standard here. Additionally, Defendants' proposed instruction does not suggest that "consent" is the same as a "license." Defendants added to the section regarding Service Mark Interests—which could include assignments as well—an instruction on consent.

1   S.      DISPUTED PRELIMINARY INSTRUCTION NO. 23 RE FALSE PROMISE[3] Offered

2   By Defendants

3        Counterclaimant Dan Rasure claims that he was harmed because TechShop made a false

4   promise. To establish this claim, Mr. Rasure must prove all of the following:

5          1.   That TechShop made a promise to Mr. Rasure;

6          2.   That TechShop did not intend to perform this promise when it made it;

7          3.   That TechShop intended that Mr. Rasure rely on this promise;

8          4.   That Mr. Rasure reasonably relied on TechShop's promise;

9          5.   That TechShop did not perform the promised act;

10          6.   That Mr. Rasure and his businesses were harmed; and

11          7.   That Mr. Rasure's reliance on TechShop's promise was a substantial factor in

12              causing his harm.

13        Mr. Rasure has the burden of proving these elements by a preponderance of the evidence.

14   Preponderance of the evidence means that you must be persuaded by the evidence that it is more

15   probably true than not true that Mr. Rasure and his businesses were harmed because TechShop

16   made a false promise.

---

[3] This instruction is based on Instruction 1902 in the *Judicial Council of California Civil Jury Instructions*, by the Judicial Council of California Advisory Committee on Civil Jury Instructions, Series 100-250, available at https://www.courts.ca.gov/partners/317.htm (hereafter referred to as "Judicial Council of California Civil Jury Instructions (CACI);" *Liodas v. Sahadi*, 19 Cal. 3d 278, 287-90 (1977).

1    PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

2         For the reasons set forth in numerous papers, TechShop objects to any instructions related

3    to fraud.

4

5    DEFENDANTS' REASONS FOR ITS INSTRUCTION/OBJECTION:

6         For the reasons set forth in numerous papers, including the Court's Order Denying

7    Plaintiff's Motion to Dismiss (Dkt. 110) and Defendants' Opposition to Plaintiff's Motion in

8    Limine No. 2 (Dkt. 145), this instruction should be included because the fraud counterclaim

9    remains a part of the case.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II. INSTRUCTIONS TO BE READ DURING TRIAL

A.     STIPULATED INSTRUCTION DURING TRIAL NO. 1 RE STIPULATIONS OF FACT

The parties have agreed to certain facts that will be read to you.  You must therefore treat these facts as having been proved.

08876-00001/10810647.1

1   B.      STIPULATED INSTRUCTION DURING TRIAL NO. 2 RE JUDICIAL NOTICE

2          The court has decided to accept as proved the fact that [*state fact*]. You must accept this

3   fact as true.

08876-00001/10810647.1

1  C.    STIPULATED INSTRUCTION DURING TRIAL NO. 3 RE IMPEACHMENT

2        EVIDENCE – WITNESS

3        The evidence that a witness has lied under oath on a prior occasion, or made inconsistent

4  statements, may be considered, along with all other evidence, in deciding whether or not to believe

5  the witness and how much weight to give to the testimony of the witness and for no other purpose.

08876-00001/10810647.1

D.      STIPULATED INSTRUCTION DURING TRIAL NO. 4 RE EXPERT OPINION

You are about to hear testimony from [Dr. Eric Matolo/Mark Bünger] who will testify to opinions and the reasons for his opinions.  This opinion testimony is allowed, because of the education or experience of this witness.  Such opinion testimony should be judged like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

E. <u>STIPULATED INSTRUCTION DURING TRIAL NO: 5 RE CHARTS AND</u>
<u>SUMMARIES NOT RECEIVED IN EVIDENCE</u>

  Certain charts and summaries not admitted into evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  Charts and summaries are only as good as the underlying evidence that supports them.

  You should, therefore, give them only such weight as you think the underlying evidence deserves.

08876-00001/10810647.1

1  F.      STIPULATED INSTRUCTION DURING TRIAL NO. 6 RE CHARTS AND

2          SUMMARIES RECEIVED IN EVIDENCE

3          Certain charts and summaries may be admitted into evidence to illustrate information

4  brought out in the trial.  Charts and summaries are only as good as the testimony or other admitted

5  evidence that supports them. You should, therefore, give them only such weight as you think the

6  underlying evidence deserves.

G.   STIPULATED INSTRUCTION DURING TRIAL NO. 7 RE EVIDENCE IN ELECTRONIC FORMAT

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the [clerk] [bailiff]. If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the [clerk] [bailiff], signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with [the clerk] [the bailiff] present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data from the jury room, and do not copy any such data.

# III. **FINAL INSTRUCTIONS**

A.    STIPULATED FINAL INSTRUCTION NO. 1 RE DUTY OF THE JURY

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**B.**     <u>STIPULATED FINAL INSTRUCTION NO. 2 RE BURDEN OF PROOF—</u>

<u>PREPONDERANCE OF THE EVIDENCE</u>

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true. You should base your decision on all of the evidence, regardless of which party presented it.

08876-00001/10810647.1

C.   STIPULATED FINAL INSTRUCTION NO. 3 RE BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

D.    <u>STIPULATED FINAL INSTRUCTION NO. 4 RE WHAT IS EVIDENCE</u>

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits that are admitted into evidence;

3.    any facts to which the lawyers have agreed; and

4.    any facts that I have instructed you to accept as proved.

E.     <u>STIPULATED FINAL INSTRUCTION NO. 5 RE WHAT IS NOT EVIDENCE</u>

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.  Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.  Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3.  Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4.  Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

F.      <u>STIPULATED FINAL INSTRUCTION NO. 6 RE EVIDENCE FOR LIMITED</u>

<u>PURPOSE</u>

Some evidence was admitted only for a limited purpose.

When I instructed you that an item of evidence was admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

08876-00001/10810647.1

1  H.    <u>STIPULATED FINAL INSTRUCTION NO. 7 RE DIRECT AND CIRCUMSTANTIAL</u>
2        <u>EVIDENCE</u>

3        Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as
4  testimony by a witness about what that witness personally saw or heard or did. Circumstantial
5  evidence is proof of one or more facts from which you could find another fact. You should
6  consider both kinds of evidence. The law makes no distinction between the weight to be given to
7  either direct or circumstantial evidence. It is for you to decide how much weight to give to any
8  evidence.

I.      STIPULATED FINAL INSTRUCTION NO. 8 RE RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overruled the objection, the question was be answered or the exhibit received. If I sustained the objection, the question was not be answered, and the exhibit was not be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I ordered that evidence be stricken from the record and that you disregard or ignore that evidence. That means you must not consider the stricken evidence for any purpose.

1 J.     STIPULATED FINAL INSTRUCTION NO. 9 RE BENCH CONFERENCE AND

2         RECESSES

3         From time to time during the trial, it became necessary for me to talk with the attorneys out

4 of the hearing of the jury, either by having a conference at the bench when the jury was present in

5 the courtroom, or by calling a recess.

6         Please understand that while you were waiting, we were working. The purpose of these

7 conferences is not to keep relevant information from you, but to decide how certain evidence is to

8 be treated under the rules of evidence and to avoid confusion and error. Of course, we have done

9 what we could to keep the number and length of these conferences to a minimum. I did] not

10 always grant an attorney's request for a conference. Do not consider my granting or denying a

11 request for a conference as any indication of my opinion of the case or of what your verdict should

12 be.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

K.   <u>STIPULATED INSTRUCTION DURING TRIAL NO. 10 RE STIPULATIONS OF</u>
<u>FACT</u>

The parties have agreed to certain facts that will be read to you.  You must therefore treat these facts as having been proved.

1  L.      STIPULATED INSTRUCTION DURING TRIAL NO. 11 RE JUDICIAL NOTICE

2          The court has decided to accept as proved the fact that [*state fact*]. You must accept this

3  fact as true.

08876-00001/10810647.1

1  M.  STIPULATED INSTRUCTION DURING TRIAL NO. 12 RE IMPEACHMENT

2  EVIDENCE – WITNESS

3  The evidence that a witness has lied under oath on a prior occasion, or made an

4  inconsistent statement, may be considered, along with all other evidence, in deciding whether or

5  not to believe the witness and how much weight to give to the testimony of the witness and for no

6  other purpose.

**N.**     STIPULATED FINAL INSTRUCTION NO. 13 RE EXPERT OPINION

You have heard testimony from Dr. Eric Matolo and Marc Bünger who testified to opinions and the reasons for their opinions. This opinion testimony is allowed, because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

08876-00001/10810647.1

O.    DISPUTED FINAL INSTRUCTION NO. 14 RE NON-EXPERT OPINION, Offered by Defendants

You saw and heard references to documents or other out-of-court statements by third parties regarding whether Defendants infringed the TECHSHOP service marks.  Those out-of-court statements are considered to be hearsay.  You should not consider them for the truth of the matter asserted.  Additionally, those third parties are not under oath, not qualified to testify regarding the law or legal effect; the opinions of third parties as to whether there is infringement are not relevant and you should ignore them.  It is for you, the jury, to decide whether there has been infringement, based on the instructions that I provide and the evidence before you.

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

Defendants proposed instruction is manifestly improper and seeks to, *inter alia*, pre-judge the evidence that may be received and the Court's rulings on admissibility.  Evidence that third parties considered Defendants' uses confusing/infringing are directly relevant to the issue of likelihood of confusion and also whether Defendants' knowingly infringed and/or acted with, *e.g.*, reckless disregard for the rights of others (i.e., willfulness).  If evidence shows that multiple people told Defendants that their uses were confusing/infringing (as it does), clearly, that is probative of actual confusion, likelihood of confusion, and willfulness.

DEFENDANTS' REASONS FOR ITS INSTRUCTION/OBJECTION:

Defendants propose this instruction is specifically directed to non-expert opinion regarding whether Defendants are infringing Plaintiff's service marks.  It is not directed at out-of-court statements that a consumer is confused (there are none).  This instruction is important to include so that the jurors understand that they do not need to take the word of others as to whether or not there is infringement.  That is a question exclusively for the jury.

P.     STIPULATED FINAL INSTRUCTION NO. 15 RE CHARTS AND SUMMARIES
       RECEIVED IN EVIDENCE

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

08876-00001/10810647.1

Q.    STIPULATED FINAL INSTRUCTION NO. 16 RE CHARTS AND SUMMARIES NOT
RECEIVED IN EVIDENCE

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

R.      DISPUTED FINAL INSTRUCTION NO. 17, Offered by Plaintiff

A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods <u>or services</u>. A service mark <u>is one form of trademark and</u> is any word, name, symbol, or device used by a person to identify and distinguish such person's services from those of others and to indicate the source of the services. The owner of a service mark has the right to exclude others from using that service mark or a similar mark that is likely to cause confusion in the marketplace. The main function of a service mark is to identify and distinguish services as the service of a particular manufacturer or merchant and to protect its goodwill.

1    <u>DISPUTED FINAL INSTRUCTION NO. 17  RE SERVICE MARKS, Offered by</u>

2    <u>Defendants</u>

3         <u>As I stated at the outset of the trial, you've probably heard of a trademark.</u>  A trademark is

4    a word, name, symbol, or device, or any combination of these items that indicates the source of

5    goods.  <u>This case is about service marks.</u>  A service mark is any word, name, symbol, or device

6    used by a person to identify and distinguish such person's services from those of others and to

7    indicate the source of the services.[4]  <u>In other words, whereas a trademark indicates the source of</u>

8    <u>goods, a service mark indicates the source of services.</u>  The owner of a service mark has the right

9    to exclude others from using that service mark or a similar mark that is likely to cause confusion

10   in the marketplace. The main function of a service mark is to identify and distinguish services as

11   the service of a particular manufacturer or merchant and to protect its goodwill.

---

28   [4]  Ninth Circuit Model Jury Instructions, No. 15.2 (definition for use in service mark cases)

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

TechShop's proposed instruction more closely tracks the language of the Model Instruction. "Service marks" are trademarks and it is erroneous to suggest that they are not.

DEFENDANTS' REASONS FOR ITS INSTRUCTION/OBJECTION

Defendants' proposed instruction closely tracks the Model Instruction, but also clarifies for the jury what a service mark is, given that it is likely that they are more familiar with the term "trademark." Defendants' proposed instruction does not in any way minimize service marks. It merely makes clear that service marks relate to services, whereas trademarks relate to goods. Plaintiff does not and cannot argue that this distinction is incorrect. *See* Ninth Circuit Model Jury Instructions, Comment No. 15.2 ("a service mark is a distinctive mark used in connection with the sale or advertising of services") (quoting *American Int'l Group v. American Int'l Bank*, 926 F.2d 829, 830 n.1 (9th Cir. 1991)).

S.      DISPUTED FINAL INSTRUCTION NO. 18, Offered by Plaintiff

The trademark laws balance three often-conflicting goals: (1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; (2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and (3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In these instructions, I will identify types of facts you are to consider in deciding if the defendant is liable to the plaintiff for violating the trademark law. These facts are relevant to whether the defendant is liable for infringing plaintiff's registered trademark rights, by using a trademark in a manner likely to cause confusion among consumers.

<u>DISPUTED FINAL INSTRUCTION NO. 18 RE SERVICE MARK LIABILITY –</u>
<u>THEORIES AND POLICIES, Offered by Defendants</u>

    The service mark laws balance three often-conflicting goals: (1) protecting the public from being misled about the nature and source of services, so that the consumer is not confused or misled in the market; (2) protecting the rights of a business to identify itself to the public and its reputation in offering services to the public; and (3) protecting the public interest in fair competition in the market.

    The balance of these policy objectives varies from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

    In these instructions, I will identify types of facts you are to consider in deciding if the Defendants are liable to the Plaintiff for violating the service mark law. These facts are relevant to whether the Defendants are liable for infringing Plaintiff's registered service mark rights, by using a mark <u>without consent</u> in a manner likely to cause confusion among consumers.

08876-00001/10810647.1

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

TechShop's proposed instruction more closely tracks the language of the Model Instruction. As with many other places, Defendants seek to repeatedly insert concepts of "consent" into instructions in a manner designed to improperly elevate that element above others. Moreover, Defendants' proposed construction is non-sensical. The Model Instruction speaks of liability for "infringing" conduct. If conduct is consented to, then it is not "infringing." Accordingly, it is non-sensical to refer to "consent" for "infringing" conduct.

DEFENDANTS' REASONS FOR THEIR INSTRUCTION/OBJECTION:

Defendants' proposed instruction closely tracks the language from the Model Instruction, only adding the words "without consent." That addition is consistent with the elements for establishing service mark infringement. The plaintiff must prove, among other things, that the defendant used the mark in question without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary consumers.

T.     DISPUTED FINAL INSTRUCTION NO. 19, Offered by Plaintiff

On the plaintiff's claim for trademark infringement, the plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1.     TECHSHOP is a valid, protectable trademark;

2.     the plaintiff owns TECHSHOP as a trademark; and

3.     the defendants used TECHSHOP 2.0 and/or THESHOP without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

If you find that each of the elements on which the plaintiff has the burden of proof has been proved, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendants.

1  DISPUTED FINAL INSTRUCTION NO. 19 RE INFRINGEMENT – ELEMENTS AND

2  BURDEN OF PROOF – SERVICE MARK, Offered by Defendants

3  In this case, Plaintiff claims that Defendants have infringed its federal service mark

4  registrations for the word TECHSHOP.  On the Plaintiff's claim for service mark infringement,

5  the Plaintiff has the burden of proving each of the following elements by a preponderance of the

6  evidence:

7  1. TECHSHOP is a valid, protectable service mark;

8  2. the Plaintiff owns TECHSHOP as a service mark; and

9  3. the Defendants used TechShop 2.0 and/or TheShop.Build without the express or implied

10  consent of the Plaintiff in a manner that is likely to cause confusion among ordinary consumers as

11  to the source, sponsorship, affiliation, or approval of the services.

12  If you find that each of the elements on which the Plaintiff has the burden of proof has

13  been proved as to TechShop 2.0 or TheShop.Build, your verdict should be for the Plaintiff as to

14  that allegedly infringing mark. If, on the other hand, the Plaintiff has failed to prove any one of

15  these elements as to TechShop 2.0 or TheShop.Build, your verdict should be for the Defendants as

16  to that allegedly infringing mark.

08876-00001/10810647.

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

TechShop's proposed instruction more closely tracks the Model Instruction.  Defendants' proposed instruction repeatedly attempts to bolster the consent showing required, is repetitive, and is therefore confusing.

DEFENDANTS' REASONS FOR THEIR INSTRUCTION/OBJECTION:

Defendants' proposed instruction closely tracks the Model Instruction.  The modifications that Defendants made are primarily due to the fact that Plaintiff now asserts that two different names infringe its service marks: TechShop 2.0 and TheShop.Build.  Defendants' modifications make clear that the jury should consider those names separately in determining whether there is infringement.

08876-00001/10810647.1

1   U.      DISPUTED FINAL INSTRUCTION NO. 20, Offered by Plaintiff

2         I gave you instruction number 19 that requires the plaintiff to prove by a preponderance

3   of the evidence that the trademark is valid and protectable and that the plaintiff owns the

4   trademark.

5         One way for the plaintiff to prove trademark validity is to show that the trademark is

6   registered. An owner of a trademark may obtain a certificate of registration issued by the United

7   States Patent and Trademark Office and may submit that certificate as evidence of the validity and

8   protectability of the trademark and of the certificate holder's ownership of the trademark covered

9   by that certificate.

10         Exhibits TX352 and TX351 are certificates of registration from the United States Patent

11   and Trademark Office. They were submitted by the plaintiff as proof of the validity of the

12   trademarks and that the plaintiff owns the trademarks.

13         The facts recited in ~~this~~ the '110 certificate (Exhibit TX352) are: that TechShop, Inc. is the

14   owner of the trademark "TECHSHOP" in the fields of: "providing workshop facilities allowing

15   members to undertake do-it-yourself projects; providing workshop facilities for fabrication of

16   products a, devices, and product parts from a wide variety of materials; consultation in the field of

17   custom fabrication of goods from wood, metal, plastic, cardboard, textiles, fabric, leather, and

18   other materials."

19         The facts recited in the ''529 certificate (Exhibit TX351) are that TechShop, Inc. is the

20   owner of the trademark "TECHSHOP" in the fields of: "providing professional networking

21   opportunities and hosting professional networking events for individuals with shared interest in

22   manufacturing and fabrication" and other fields.  A complete listing of the fields covered by the

23   '529 certificate is shown in Exhibit 351.

24         Unless the defendant proves by a clear and convincing evidence that the trademark was

25   abandoned, you must consider the trademark to be conclusively proved as valid and owned by the

26   plaintiff. However, if the defendant shows that the trademark was abandoned by clear and

27   convincing evidence, then the facts stated in the certificate are no longer conclusively presumed to

28   be correct.  You should then consider whether all of the evidence admitted in this case, in addition

1 | to this certificate of registration, shows by a preponderance of the evidence that the trademark is
2 | valid and owned by the plaintiff, as I explain in Instruction 19.

08876-00001/10810647.1

1    DISPUTED FINAL INSTRUCTION NO. 20 RE INFRINGEMENT—ELEMENTS—

2    PRESUMED VALIDITY AND OWNERSHIP—REGISTERED SERVICE MARK, Offered by

3    Defendants

4         I gave you Instruction No. 19 that requires the Plaintiff to prove by a preponderance of the

5    evidence that TECHSHOP is valid and protectable service mark. A valid service mark is any

6    word, name, symbol, or device used by a person to identify and distinguish such person's services

7    from those of others and to indicate the source of the services.  A service mark becomes

8    protectable after it is used in U.S. commerce.

9         One way for the Plaintiff to prove service mark validity is to show that the service mark is

10   registered. An owner of a service mark may obtain a certificate of registration issued by the United

11   States Patent and Trademark Office and may submit that certificate as evidence of the validity and

12   protectability of the service mark covered by that certificate.

13        Exhibits TX352 and TX351 are certificates of registration from the United States Patent

14   and Trademark Office. They were submitted by the Plaintiff as proof of the validity of the

15   TECHSHOP service marks.

16        The facts recited in this the '110 certificate (Exhibit TX352) are: that TechShop, Inc. is the

17   owner of the trademark "TECHSHOP" in the fields of: "providing workshop facilities allowing

18   members to undertake do-it-yourself projects; providing workshop facilities for fabrication of

19   products a, devices, and product parts from a wide variety of materials; consultation in the field of

20   custom fabrication of goods from wood, metal, plastic, cardboard, textiles, fabric, leather, and

21   other materials."

22        The facts recited in the ''529 certificate (Exhibit TX351) are that TechShop, Inc. is the

23   owner of the trademark "TECHSHOP" in the fields of: "providing professional networking

24   opportunities and hosting professional networking events for individuals with shared interest in

25   manufacturing and fabrication" and other fields.  A complete listing of the fields covered by the

26   '529 certificate is shown in Exhibit 351.

27        Both certificates further state that the TECHSHOP service marks do not claim any

28   particular font, style size or color.

-74-

1    The law presumes that the facts noted in the certificates are true.  But this presumption can

2  be overcome by sufficient evidence to the contrary.  Here, Defendants have presented evidence

3  that the service marks have been abandoned in the United States, that they have not been

4  maintained, and that they are not protectable.  If the Defendants are able to show abandonment or

5  that the service marks are not protectable by a preponderance of the evidence, then you cannot rely

6  on the registrations as stating the truth of the matters contained therein, and you should return a

7  verdict for Defendants on the question of infringement.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

08876-00001/10810647.1

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

Defendants proposed instruction fails to instruct the jury on the true effect of a registration and with regard to validity/ownership and the burden the jury should consider Defendants' face. Further, there are two registrations at issue and TechShop's more accurately describes them.

DEFENDANTS' REASONS FOR THEIR INSTRUCTION/OBJECTION:

Defendants' proposal accurately informs the jury that the registrations at issue do not claim any particular font, style size or color.  It is unclear why Plaintiff believes Defendants' instruction does not instruct the jury on the true effect of a registration.  Defendants' instruction tracks the Ninth Circuit Model Jury Instruction No. 15.8, and tailors it for disputed contestable registrations, as provided for in the Comments. (Ninth Circuit Model Jury Instructions No. 15.8, Comments, p. 320.)  Plaintiff's instruction does not make those modifications, even though the parties stipulated that the service marks at issue are not incontestable marks.  (Dkt. 136.)

08876-00001/10810647.1

1   V.      DISPUTED FINAL INSTRUCTION NO. 21, Offered by Plaintiff

2          The law entitles the trademark owner to exclude others from using that trademark. A

3   person acquires the right to exclude others from using a trademark by being the first to use it in

4   the marketplace or by using it before the alleged infringer.

5          If you find the plaintiff's TECHSHOP mark to be valid you must consider whether the

6   plaintiff used the TECHSHOP mark as a trademark for plaintiff's services before the defendant

7   began to use the TECHSHOP to market its services in the area where the plaintiff sells its

8   services.

1    DISPUTED FINAL INSTRUCTION NO. 21 RE INFRINGEMENT—ELEMENTS—

2    OWNERSHIP GENERALLY, Offered by Defendants

3         The law entitles the service mark owner to exclude others from using that service mark. A

4    person acquires the right to exclude others from using a service mark by being the first to use it in

5    the marketplace or by using it before the alleged infringer.

6         In this case, the Plaintiff used TECHSHOP for its services before Defendants used

7    TechShop 2.0 or TheShop.Build.  But in this case, Defendants claim that the Plaintiff abandoned

8    its rights in TECHSHOP when Plaintiff closed all its locations and its corporate offices in the

9    United States, discontinued using the TECHSHOP service mark in the United States, and filed for

10   bankruptcy.

11        A service mark is "used" for purposes of this instruction when it is used ~~transported~~ or sold

12   in commerce in the United States and the service mark is attached to the service, ~~or placed on its~~

13   ~~label or container or if that is not practical,~~ or placed on documents associated with the services,

14   their use ~~goods,~~ or their sale.

15        ~~If the Plaintiff has not shown by a preponderance of the evidence that the Plaintiff used~~

16   ~~TECHSHOP before the Defendants' use of TechShop 2.0 or TheShop.Build, then you cannot~~

17   ~~conclude that the Plaintiff is the owner of the service mark for purposes of Instruction No. ___~~

18   ~~[insert number of instruction regarding Infringement—Elements—Presumed Validity and~~

19   ~~Ownership—Registered Marks, e.g., 15.8].~~

20

21

22

23

24

25

26

27

28

1   PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

2       TechShop's proposed instruction more closely tracks the language of the Model

3   Instruction.  By contrast, Defendants' proposed instruction introduces issues unrelated to

4   "ownership" such as abandonment, consent, etc.

5

6   DEFENDANTS' REASONS FOR THEIR INSTRUCTION/OBJECTION:

7       Defendants' proposed instruction closely tracks the language of the Model Instructions, but

8   adds information regarding abandonment.  Contrary to Plaintiff's argument, abandonment does

9   relate to "ownership," because if a service mark owner abandoned a mark, it is not necessarily the

10  priority user of the mark after such abandonment.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

08876-00001/10810647.1

W.    DISPUTED FINAL INSTRUCTION NO. 22 RE USE OF A SERVICE MARK IN

COMMERCE, Offered by Defendants

You must consider whether Defendants used Plaintiff's service marks in commerce. For a mark to be used in commerce means that it is used in connection with the sale of services. The law prevents only uses of a mark in connection with a commercial transaction in which the owner has not consented to the use and the mark is being used to confuse potential customers.[5]

---

[5] *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 676-77 (9th Cir. 2005); *Prestonettes, Inc. v. Coty*, 264 U.S. 359 (1924).

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

Defendants' proposed instruction actually misstates the law.  As set forth in the statute, infringement is defined as: "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion."  *See* 15 U.S.C. § 1114(a).  Thus, there is no requirement of a "commercial transaction."  Mere advertising, even if no "commercial transaction" occurs is infringing if it is likely to cause confusion and is unauthorized.

Defendants' cases say nothing different.  *While Bosely Medical Institute, Inc. v. Kramer*, 403 F.3d 672 (9th Cir. 2005) actually concerns trademark dilution related to famous marks, the case concludes that the "use in commerce" requirement for famous marks is "virtually synonymous" with § 1114(a).  *Id.* at 676-77.

DEFENDANTS' REASONS FOR THEIR INSTRUCTION/OBJECTION:

Defendants' proposed instruction is consistent with the elements of a service mark infringement claim and the requirements in the Lanham Act.  Section 1114(1)(a) provides that "[a]ny person who shall, without the consent of the registrant—(a) ***use in commerce*** any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive," shall be liable for infringement.  15 U.S.C. § 1114(1)(a) (emphasis added).  The jury should be instructed as to what it means for a mark to be used "in commerce."  *Bosely Medical Institute, Inc. v. Kramer*, 403 F.3d 672 (9th Cir. 2005) provides: "The Supreme Court has made it clear that trademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers."  *Id.* At 676-77 (citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359 (1924)).  It is important to include this instruction for the jury because they are likely to see exhibits in which the term TechShop 2.0 is

1   used, but it is not used in commerce.  For example, the term TechShop 2.0 was used frequently

2   when Mr. Rasure was negotiating with Plaintiff to acquire Plaintiff's assets.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

08876-00001/10810647.1

X.   DISPUTED FINAL INSTRUCTION NO. 23 RE INFRINGEMENT—USE OF A MARK WITHOUT CONSENT, Offered by Defendants

You must consider whether Defendants used Plaintiff's service mark with Plaintiff's express or implied consent.  If Plaintiff expressly or impliedly consented to Defendants' use of the mark, then Defendants' use of the mark does not constitute service mark infringement, and you should return a verdict for Defendants.[6]

---

[6] 15 U.S.C. § 1114.

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

First, of course, the statute says nothing about express or implied consent. The statute simply refers to "consent"/"authorization." The jurors will be properly instructed on the burden TechShop faces. Accordingly, offering an unnecessary instruction which repeats information already provided to the jurors is simply an effort to improperly highlight Defendants' preferred issues.

DEFENDANTS' REASONS FOR THEIR INSTRUCTION/OBJECTION:

Lack of consent is a requirement for Plaintiff to prove service mark infringement. It is a critical part of this case because, for example, Plaintiff consented to Defendants' use of the name TechShop 2.0 for several months, using the name to refer to Defendants' themselves, without objection. Plaintiff also consented to Defendants' use of the name TheShop.Build for nine months, having not objected to Defendants' use of that name. It is important that the jury be instructed that Plaintiff's consent need not be conveyed in a formal document stating that it consents to Defendants' use. Rather, it may be conveyed impliedly, such as through Plaintiff's conduct and silence. Defendants' proposed instruction insures that the jurors understand this.

Y.     DISPUTED FINAL INSTRUCTION NO. 24, Offered by Plaintiff

You must consider whether the defendant's use of the trademark is likely to cause confusion about the source of the plaintiff's or the defendant's goods.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

(1)     Strength or Weakness of the Plaintiff's Mark. The more the consuming public recognizes the plaintiff's trademark as an indication of origin of the plaintiff's goods, the more likely it is that consumers would be confused about the source of the defendant's goods if the defendant uses a similar mark.

(2)     Defendant's Use of the Mark. If the defendant and plaintiff use their trademarks on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

(3)     Similarity of Plaintiff's and Defendant's Marks. If the overall impression created by the plaintiff's trademark in the marketplace is similar to that created by the defendant's trademark in appearance, sound, or meaning, there is a greater chance of likelihood of confusion. Similarities in appearance, sound or meaning weigh more heavily than differences in finding the marks are similar.

(4)     Actual Confusion. If use by the defendant of the plaintiff's trademark has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, the defendant's use of the trademark may still be likely to cause confusion. As you consider whether the trademark used by the defendant creates for

consumers a likelihood of confusion with the plaintiff's trademark, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

(5)   Defendant's Intent. Knowing use by defendant of the plaintiff's trademark to identify similar goods may strongly show an intent to derive benefit from the reputation of the plaintiff's mark, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that the defendant acted knowingly, the use of plaintiff's trademark to identify similar goods may indicate a likelihood of confusion.

(6)   Marketing/Advertising Channels. If the plaintiff's and defendant's services are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

(7)   Consumer's Degree of Care. The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in the plaintiff's and defendant's trademarks.

(8)   ~~Product Line Expansion. When the parties' products differ, you may consider how likely the plaintiff is to begin selling the products for which the defendant is using the plaintiff's trademark. If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.~~

1    <u>DISPUTED FINAL INSTRUCTION NO. 24 RE INFRINGEMENT—LIKELIHOOD OF</u>

2    <u>CONFUSION—FACTORS—SLEEKCRAFT TEST, Offered by Defendants</u>

3    <u>If you decide that Plaintiff did not expressly or impliedly consent to Defendants' use of the</u>

4    <u>service mark</u>, you must consider whether the Defendants' use of the service marks is likely to

5    cause confusion about the source of the Plaintiff's or the Defendants' services.

6    I will suggest some factors you should consider in deciding this. The presence or absence

7    of any particular factor that I suggest should not necessarily resolve whether there was a likelihood

8    of confusion, because you must consider all relevant evidence in determining this. As you

9    consider the likelihood of confusion you should examine the following:

10    (1) Strength or Weakness of the Plaintiff's Mark. The more the consuming public

11    recognizes the plaintiff's service mark as an indication of origin of the plaintiff's services, the

12    more likely it is that consumers would be confused about the source of the defendant's services if

13    the defendant uses a similar mark.

14    (2) Defendant's Use of the Mark. If the defendant and plaintiff use their service marks on

15    the same, related, or complementary kinds of services there may be a greater likelihood of

16    confusion about the source of the services than otherwise.

17    (3) Similarity of Plaintiff's and Defendant's Marks. If the overall impression created by the

18    plaintiff's service mark in the marketplace is similar to that created by the defendant's mark in

19    appearance, sound, or meaning, there is a greater chance that consumers are likely to be confused

20    by defendant's use of a mark.

21    (4) Actual Confusion. If use by the defendant of the plaintiff's service mark has led to

22    instances of actual confusion, this strongly suggests a likelihood of confusion. However actual

23    confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not

24    occur, the defendant's use of the service mark may still be likely to cause confusion. As you

25    consider whether the mark used by the defendant creates for consumers a likelihood of confusion

26    with the plaintiff's service mark, you should weigh any instances of actual confusion against the

27    opportunities for such confusion. If the instances of actual confusion have been relatively frequent,

28    you may find that there has been substantial actual confusion. If, by contrast, there is a very large

-87-                    Case No. 4:18-CV-01044-HSG (JCS)

1  volume of sales, but only a few isolated instances of actual confusion you may find that there has

2  not been substantial actual confusion.

3       (5) Defendant's Intent. Knowing use by defendant of the plaintiff's service mark to

4  identify similar services may strongly show an intent to derive benefit from the reputation of the

5  plaintiff's mark, suggesting an intent to cause a likelihood of confusion. On the other hand, even

6  in the absence of proof that the defendant acted knowingly, the use of plaintiff's service mark to

7  identify similar goods may indicate a likelihood of confusion.  <u>In assessing Defendants' intent,</u>

8  <u>you should consider whether Defendants understood that Plaintiff expressly or impliedly</u>

9  <u>consented to Defendants' use of the name TechShop 2.0, as well as Plaintiff's failure to notify</u>

10  <u>Defendants until nine months after the lawsuit was filed that Defendants' new name</u>

11  <u>TheShop.Build allegedly infringed.</u>

12       (6) Marketing/Advertising Channels. If the plaintiff's and defendant's services are likely to

13  be sold in the same or similar stores or outlets, or advertised in similar media, this may increase

14  the likelihood of confusion.

15       (7) Consumer's Degree of Care. The more sophisticated the potential buyers of the goods

16  or the <u>costlier</u> ~~more costly~~ the goods, the more careful and discriminating the reasonably prudent

17  purchaser exercising ordinary caution may be. They may be less likely to be confused by

18  similarities in the plaintiff's and defendant's marks.

19       ~~(8) Product Line Expansion. When the parties' products differ, you may consider how~~

20  ~~likely the plaintiff is to begin selling the products for which the defendant is using the plaintiff's~~

21  ~~service mark. If there is a strong possibility of expanding into the other party's market, there is a~~

22  ~~greater likelihood of confusion.~~

23

24

25

26

27

28

    

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

TechShop's proposed instruction more closely tracks the language of the Model Instructions. Defendants seek to pinpoint/highlight particular evidence to the jury. Obviously, TechShop could engage in that same practice by pointing to its cease and desist notices, etc. That would only lead to confusion and waste the juror's time by loading the Instructions with each parties' favored evidence.

DEFENDANTS' REASONS FOR THEIR INSTRUCTION/OBJECTION

Defendants' instruction closely tracks the Model Instruction. It adds clarification that consent may be express or implied. As noted above, this is important because, for example, Plaintiff consented to Defendants' use of the name TechShop 2.0 for several months, using the name to refer to Defendants' themselves, without objection. Plaintiff also consented to Defendants' use of the name TheShop.Build for nine months, having not objected to Defendants' use of that name. It is important that the jury be instructed that Plaintiff's consent need not be conveyed in a formal document stating that it consents to Defendants' use. Rather, it may be conveyed impliedly, such as through Plaintiff's conduct and silence. Defendants' proposed instruction insures that the jurors understand this.

Additionally, Defendants add to the instruction regarding intent clarification to the jury that it may consider Plaintiff's conduct in connection with determining whether Defendants knowingly used Plaintiff's marks with the intent to confuse consumers.

08876-00001/10810647.1

1 STIPULATED FINAL INSTRUCTION NO. 25: —CORPORATIONS AND PARTNERSHIPS—

2 FAIR TREATMENT

3     All parties are equal before the law and a corporation is entitled to the same fair and

4 conscientious consideration by you as any party.

08876-00001/10810647.

1   <u>DISPUTED FINAL INSTRUCTION NO. 26 RE  LIABILITY OF CORPORATIONS—SCOPE</u>

2   <u>OF AUTHORITY NOT IN ISSUE, Offered by Plaintiff</u>

3   Under the law, a corporation is considered to be a person. It can only act through its

4   employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its

5   employees, agents, directors, and officers performed within the scope of authority.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

2        TechShop believes that this instruction is proper.  At issue in this case may be whether

3    each of the Defendants is responsible for certain acts of others, especially as it regards

4    "volunteers" acting for Defendants.  The Model Jury Instructions do not distinguish between

5    preliminary or final instructions.  Instructing the jury on this issue at this time will help them to

6    understand the evidence.

7

8    DEFENDANTS REASONS FOR THEIR INSTRUCTION/OBJECTION:

9    Defendants object to this instruction because there are a series of Stipulated Instructions relating to

10   authority, and so this instruction is redundant.  Plaintiff's proposed instruction is also out of place

11   because it breaks up the instructions relating to service mark infringement.  This may confuse the

12   jurors.  Accordingly, the instructions relating to authority should follow the instructions relating to

13   service mark infringement and precede the instructions regarding Defendants' fraud counterclaim.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    DISPUTED FINAL INSTRUCTION NO. 27 RE  AGENT AND PRINCIPAL—DEFINITION,

2                                    Offered by Plaintiff

3              An agent is a person who performs services for another person under an express or implied

4    agreement and who is subject to the other's control or right to control the manner and means of

5    performing the services. The other person is called a principal. One may be an agent without

6    receiving compensation for services. The agency agreement may be oral or written.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

2          TechShop believes that this instruction is proper.  At issue in this case may be

3   whether each of the Defendants is responsible for certain acts of others, especially as it regards

4   "volunteers" acting for Defendants.  The Model Jury Instructions do not distinguish between

5   preliminary or final instructions.  Instructing the jury on this issue at this time will help them to

6   understand the evidence.

7

8   DEFENDANTS' REASONS FOR THEIR INSTRUCTION/OBJECTION:

9   Defendants object to this instruction because there are a series of Stipulated Instructions relating to

10  authority, and so this instruction is redundant.  Plaintiff's proposed instruction is also out of place

11  because it breaks up the instructions relating to service mark infringement.  This may confuse the

12  jurors.  Accordingly, the instructions relating to authority should follow the instructions relating to

13  service mark infringement and precede the instructions regarding Defendants' fraud counterclaim.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DISPUTED FINAL INSTRUCTION NO. 28 RE

## AGENT—SCOPE OF AUTHORITY DEFINED, Offered by Plaintiff

An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal.

08876-00001/10810647.1

1    PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

2        TechShop believes that this instruction is proper.  At issue in this case may be whether

3   each of the Defendants is responsible for certain acts of others, especially as it regards

4   "volunteers" acting for Defendants.  The Model Jury Instructions do not distinguish between

5   preliminary or final instructions.  Instructing the jury on this issue at this time will help them to

6   understand the evidence.

7

8    DEFENDANTS' REASONS FOR THEIR INSTRUCTION/OBJECTION:

9   Defendants object to this instruction because there are a series of Stipulated Instructions relating to

10  authority, and so this instruction is redundant.  Plaintiff's proposed instruction is also out of place

11  because it breaks up the instructions relating to service mark infringement.  This may confuse the

12  jurors.  Accordingly, the instructions relating to authority should follow the instructions relating to

13  service mark infringement and precede the instructions regarding Defendants' fraud counterclaim.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>DISPUTED FINAL INSTRUCTION NO. 29 RE</u>

<u>RATIFICATION, Offered by Plaintiff</u>

A purported principal who ratifies the acts of someone who was purporting to act as the principal's agent will be liable for the acts of that purported agent, provided that the principal made a conscious and affirmative decision to approve the relevant acts of the purported agent while in possession of full and complete knowledge of all relevant events.

Case No. 4:18-CV-01044-HSG (JCS)

JOINT PROPOSED JURY INSTRUCTIONS

08876-00001/10810647.1

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION

TechShop believes that this instruction is proper.  At issue in this case may be whether each of the Defendants is responsible for certain acts of others, especially as it regards "volunteers" acting for Defendants.  The Model Jury Instructions do not distinguish between preliminary or final instructions.  Instructing the jury on this issue at this time will help them to understand the evidence.

DEFENDANTS' REASONS FOR THEIR INSTRUCTION/OBJECTION

Defendants object to this instruction because it is out of place because it breaks up the instructions relating to service mark infringement.  This may confuse the jurors.  Accordingly, the instructions relating to authority should follow the instructions relating to service mark infringement and precede the instructions regarding Defendants' fraud counterclaim.

08876-00001/10810647.1

Z.     DISPUTED FINAL INSTRUCTION NO. 30, Offered by Plaintiff

### Strength as a Factor for Evaluating Likelihood of Confusion

How strongly the plaintiff's trademark indicates that the goods or services come from a particular source is an important factor to consider in determining whether the trademark used by the defendant is likely to create confusion with the plaintiff's mark.

The plaintiff asserts that TECHSHOP is a trademark for its services. The plaintiff contends that the defendant's use of TECHSHOP 2.0 and THESHOP in connection with the defendant's services infringes plaintiff's trademark because it is likely to cause confusion.

### The Strength of Marks

The more distinctive and strong a trademark is, the greater the scope of protection the law provides. The law measures trademark strength by considering two prongs:

1.     Commercial Strength: This is the amount of marketplace recognition of the mark; and

2.     Conceptual Strength: This is the placement of the mark on the spectrum of marks.

**Commercial Strength**: What is "commercial strength?" Not all marks are equally well known. Trademark strength is somewhat like the renown of people. Only a few very famous people are widely known and recognized around the world. Most people are known and recognized only by a small circle of family and friends.

Some trademarks are relatively "strong," in the sense they are widely known and recognized. A few trademarks are in the clearly "famous" category. These "famous" marks are those like "Apple" for computers and mobile phones, "Google" for a search engine, "Coca-Cola" for beverages and "Toyota" for vehicles. Some trademarks may be strong and well known only in a certain market niche such as mountain climbing gear, plumbing supplies, or commercial airplane electronics equipment, but relatively weak outside that field.

**Conceptual Strength**: What is "conceptual strength?" All trademarks are grouped into two categories: either inherently distinctive or not inherently distinctive. If a mark is inherently distinctive it is immediately protected when first used. If it is not inherently distinctive, to become

08876-00001/10810647.1

1  a legally protected mark, a designation must acquire distinctiveness in people's minds by

2  becoming known as an indication of source of goods or services. The law calls this "secondary

3  meaning." ~~[See Instruction 15.11 (Infringement— Elements— Validity— Distinctiveness—~~

4  ~~Secondary Meaning).~~ If the plaintiff's mark is determined to be inherently distinctive, there will

5  be no need to instruct the jury on acquiring a secondary meaning for the mark.]

6        For determining the conceptual strength of a mark, trademarks are grouped on a spectrum

7  according to the nature of the mark. In the spectrum, there are three categories of word marks that

8  the law regards as being inherently distinctive: coined, arbitrary and suggestive. Descriptive word

9  marks are regarded as not being inherently distinctive and require a secondary meaning to become

10  a valid trademark.

11        **Coined** and arbitrary words are regarded as being relatively strong marks. A coined word

12  mark is a word created solely to serve as a trademark. For example, "Clorox" for cleaning

13  products and "Exxon" for gasoline are coined marks.

14        **Arbitrary** marks are words that in no way describe or suggest the nature of the goods or

15  services it is used with. For example, "apple" is a common word, but it does not describe or

16  suggest anything about the nature of "Apple" brand computers or smart phones. It is an arbitrary

17  word when used as a mark on those products and is said to be conceptually strong as a mark.

18        **Suggestive** word marks are regarded as not being as conceptually strong as coined or

19  arbitrary marks. Suggestive trademarks suggest some characteristic or quality of the goods or

20  services with which they are used. If the consumer must use her imagination or think through a

21  series of steps to understand what the trademark is telling about the product, then the trademark

22  does not directly describe the product's features, but merely suggests them. For example, the

23  trademark "Tail Wagger" for dog food merely suggests that your dog will like the food. As

24  another example, when "apple" is used in the mark "Apple-A-Day" for vitamins, it is being used

25  as a suggestive trademark. "Apple" does not describe what the vitamins are. However, it suggests

26  the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of

27  taking "Apple-A-Day" vitamins.

28

1    **Descriptive** word marks are not inherently distinctive. These marks directly describe some
2    characteristic, or quality of the goods or services with which they are used in a straightforward
3    way that requires no exercise of imagination. For instance, the word "apple" is descriptive when
4    used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes one
5    of ingredients of the juice.

1   <u>DISPUTED FINAL INSTRUCTION NO. 30 RE INFRINGEMENT—LIKELIHOOD OF</u>

2   <u>CONFUSION—FACTOR—STRENGTH OF SERVICE MARK, Offered by Defendants</u>

3   **Strength as a Factor for Evaluating Likelihood of Confusion**

4   How strongly the plaintiff's service mark indicates that the goods or services come from a

5   particular source is an important factor to consider in determining whether the service mark used

6   by the defendant is likely to create confusion with the plaintiff's mark.

7   The Plaintiff asserts that TECHSHOP is a service mark for services providing professional

8   networking and consultation in the fields of manufacturing and fabrication, providing services for

9   education and training in fabrication of products, and providing workshop facilities for members

10  to undertake do-it-yourself projects.  The Plaintiff contends that the Defendants' use of

11  TECHSHOP 2.0 from December 1, 2017 until the filing of the lawsuit on February 16, 2018 and

12  TheShop.Build thereafter in connection with the Defendants' maker space business infringes

13  Plaintiff's service marks because it is likely to cause confusion.

14

15  **The Strength of Marks**

16  The more distinctive and strong<u>er</u> a service mark is, the greater the scope of protection the

17  law provides. The law measures service mark strength by considering two prongs:

18  1. Commercial Strength: This is the amount of marketplace recognition of the mark; and

19  2. Conceptual Strength: This is the placement of the mark on the spectrum of marks.

20

21  **Commercial Strength**: What is "commercial strength?" Not all marks are equally well

22  known. Service mark strength is somewhat like the renown of people. Only a few very famous

23  people are widely known and recognized around the world. Most people are known and

24  recognized only by a small circle of family and friends.

25  Some service marks are relatively "strong," in the sense they are widely known and

26  recognized. A few service marks are in the clearly "famous" category. These "famous" marks are

27  those like ~~"Apple" for computers and mobile phones~~ "Google" for a search engine <u>and Starbucks</u>

28  <u>for a coffee shop,</u> ~~"Coca-Cola" for beverages and "Toyota" for vehicles~~. Some service marks may

1  be strong and well known only in a certain market niche, such as <u>office supply services,</u> ~~mountain~~

2  ~~climbing gear, plumbing supplies, or commercial airplane electronics equipment,~~ but relatively

3  weak outside that field.

4

5  **Conceptual Strength**: What is "conceptual strength?" All service marks are grouped into

6  two categories: either inherently distinctive or not inherently distinctive. If a mark is inherently

7  distinctive it is immediately protected when first used. If it is not inherently distinctive, to become

8  a legally protected mark, a designation must acquire distinctiveness in people's minds by

9  becoming known as an indication of source of services. The law calls this "secondary meaning."

10  For determining the conceptual strength of a mark, service marks are grouped on a

11  spectrum according to the nature of the mark. In the spectrum, there are three categories of word

12  marks that the law regards as being inherently distinctive: coined, arbitrary and suggestive.

13  Descriptive word marks are regarded as not being inherently distinctive and require a secondary

14  meaning to become a valid service mark.

15  Coined and arbitrary words are regarded as being relatively strong marks. A coined word

16  mark is a word created solely to serve as a service mark. For example, <u>"Verizon" for wireless</u>

17  <u>services.</u> ~~"Clorox" for cleaning products and "Exxon" for gasoline are coined marks.~~

18  Arbitrary marks are words that in no way describe or suggest the nature of the goods or

19  services it is used with. For example, <u>"amazon" is a common word, but it does not describe or</u>

20  <u>suggest anything about the nature of the "Amazon" online marketplace.</u> ~~"apple" is a common~~

21  ~~word, but it does not describe or suggest or anything about the nature of "Apple" brand computers~~

22  ~~or smart phones.~~ It is an arbitrary word when used as a mark for that service and is said to be

23  conceptually strong as a mark.

24  Suggestive word marks are regarded as not being as conceptually strong as coined or

25  arbitrary marks. Suggestive marks suggest some characteristic or quality of the ~~goods or~~ services

26  with which they are used. If the consumer must use her imagination or think through a series of

27  steps to understand what the <u>service</u> ~~trademark~~ is telling about the <u>service</u> ~~product~~, then the <u>service</u>

28  <u>mark</u> ~~trademark~~ does not directly describe the service's ~~product's~~ features, but merely suggests

08876-00001/10810647.

1   them. For example, the trademark "Tail Wagger" for <u>a dog walking service</u> ~~dog food merely~~

2   suggests that your dog will like the <u>walks</u> ~~food~~. <u>As another example, "Geek Squad" for a</u>

3   <u>computer support service suggests that the persons who will fix your computer are knowledgeable</u>

4   <u>about computers.</u>  ~~As another example, when "apple" is used in the mark "Apple-A-Day" for~~

5   ~~vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins~~

6   ~~are. However, it suggests the healthfulness of "an apple a day keeping the doctor away" with the~~

7   ~~supposed benefits of taking "Apple-A-Day" vitamins.~~

8       Descriptive word marks are not inherently distinctive. These marks directly describe some

9   characteristic, or quality of the goods or services with which they are used in a straightforward

10  way that requires no exercise of imagination. ~~For instance, the word "apple" is descriptive when~~

11  ~~used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes one~~

12  ~~of ingredients of the juice.~~  For instance, <u>the words "quick" and "print" are descriptive when used</u>

13  <u>in the service mark "Quik-Print" to designate a printing and duplication service.</u>   ~~the word~~

14  ~~"apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple~~

15  ~~juice. It directly describes ingredients of the juice. Other common types of descriptive trademarks~~

16  ~~identify where a product or service comes from, or the name of the person who makes or sells the~~

17  ~~product or service. Thus, the words "Apple Valley Juice" affixed to cider from the California town~~

18  ~~of Apple Valley is a descriptive trademark because it geographically describes where the cider~~

19  ~~comes from. Similarly, A descriptive service can be the personal name of the person who makes or~~

20  ~~sells the product. So, if a farmer in Apple Valley, Judy Brown, sold her cider under the label~~

21  ~~"Judy's~~ <u>Diner</u>~~Juice" (rather than CranApple) she is making a descriptive use of her personal name~~

22  ~~to indicate and describe who produced the apple cider.~~

23

24

25

26

27

28

08876-00001/10810647.1

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

TechShop's proposed instruction more closely tracks the Model Instructions.  Defendants seek to add different/additional examples that are more likely to result in confusion by the jury.

DEFENDANTS' REASONS FOR THEIR INSTRUCTION/OBJECTION:

Defendants' proposed instruction tracks the Model Instructions.  Defendants, however, changed the examples used so that they are examples of service marks, rather than trademarks. Defendants' proposed instruction is thus less likely to confuse the jury than Plaintiff's since this case is about service marks.  Notably, Plaintiff does not contend that any of the examples Defendants propose are inaccurate examples of the different types of marks.

08876-00001/10810647.1

AA.     <u>DISPUTED FINAL INSTRUCTION NO. 31, Offered by Plaintiff</u>

The owner of a trademark cannot exclude others from using the trademark if it has been abandoned.

The defendant contends that the trademark has become unenforceable because the owner abandoned it.  The defendant has the burden of proving abandonment by clear and convincing evidence.

The owner of a trademark abandons the right to exclusive use of the trademark when the owner:

1.      <u>completely</u> discontinues its use in the ordinary course of trade, intending not to resume using it;

2.      acts or fails to act so that the trademark's primary significance to prospective consumers has become the service itself and not the provider of the service.~~; or~~

~~3.      fails to exercise adequate quality control over the [goods] [services] sold under the trademark by a licensee.~~

08876-00001/10810647.1

DISPUTED FINAL INSTRUCTION NO. 31 RE DEFENSES—ABANDONMENT—

AFFIRMATIVE DEFENSE—DEFENDANT'S BURDEN OF PROOF, Offered by Defendants

The owner of a service mark cannot exclude others from using the service mark if it has been abandoned.

The Defendants contend that the TECHSHOP service mark has become unenforceable because the Plaintiff ~~owner~~ abandoned it in the United States. The Defendants have the burden of proving abandonment by a preponderance of the evidence.

The owner of a service mark abandons the right to exclusive use of the service mark when the owner:

1. discontinues its good faith use in the ordinary course of trade, intending not to resume using it; or

2. acts so that the service mark's primary meaning to prospective consumers has become the service itself and not the provider of the service; ~~or~~

~~3. fails to exercise adequate quality control over the services sold under the service mark by a licensee.~~

In considering whether Plaintiff abandoned the service marks in the United States, you may consider Plaintiff's shut down and announced intention to file for bankruptcy on November 15, 2017, its Chapter 7 bankruptcy liquidation, its discontinuance of use of the marks in the United States and/or its failure to maintain and renew the U.S. registrations of the TECHSHOP marks.  In assessing Plaintiff's abandonment, you may also consider whether or not Plaintiff acted to prevent others from using the word TECHSHOP.

08876-00001/10810647.

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

Defendants proposed instruction actually misstates the law. As noted even in the comments to the Model Instructions, abandonment must be proved by clear and convincing evidence. While no Ninth Circuit case has explicitly address it, as noted in the comments to the Model Jury Instructions, "Scholars note that except for the Federal Circuit, 'all' courts follow a clear and convincing standard of proof of abandonment." *See* 3 J. THOMAS MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 17:12 (4th ed. 2015); *see also* Anthony L. Fletcher and David J. Kera, *Annual Review*, 85 TRADEMARK REP. 607, 724-25 (1995). Defendants also seek to instruct the jury specifically to consider TechShop's bankruptcy filing. That is an improper attempt to instruct the jury to weigh or consider particular evidence. What evidence to consider when determining particular issues and whether/how to weigh it is the function of the jury, not the Court.

As noted in the Model Instructions, in order to apply, the trademark owner must have *completely* abandoned the mark.

DEFENDANTS' REASONS FOR THEIR INSTRUCTION/OBJECTION

Defendants disagree that their proposed instruction misstates the law. Ninth Circuit Model Jury Instruction No. 15.22 gives the option for the Court to instruct the jury on the burden of proof, between clear and convincing and a preponderance of the evidence. The Comments in the Ninth Circuit Model Jury Instructions also make clear that "[n]o Ninth Circuit case establishes the standard of proof required to prove abandonment as between 'clear and convincing' and 'preponderance.'" (Ninth Circuit Model Jury Instructions, p. 351.) Plaintiff does not cite any law indicating that the Court should apply a "clear and convincing" standard here.

Further, Defendants' proposed instruction provides guidance to the jury as to what facts may relate to abandonment.

08876-00001/10810647.1

1 BB.   DISPUTED FINAL INSTRUCTION NO. 32 RE DEFENSES—AFFIRMATIVE

2      DEFENSE—INVALIDITY, Offered by Defendants

3      ~~Plaintiff's TECHSHOP service marks are not registered.  Unregistered trademarks can be~~

4 ~~valid and provide the trademark owner with the exclusive right to use that mark. Instruction __~~

5 ~~requires the plaintiff to prove by a preponderance of the evidence that each of the TECHSHOP~~

6 ~~service marks is valid.~~ The Defendants contend that the word TECHSHOP is not protectable as a

7 service mark.  In other words, the TECHSHOP service marks are not valid.

8      A valid service mark is a word, name, symbol, device, or any combination of these items

9 that is either:

10      1. inherently distinctive; or

11      2. descriptive, but has acquired a secondary meaning.

12      Only a valid service mark ~~trademark~~ can be infringed.  If you determine that Defendants

13 ~~Only if you determine plaintiff~~ proved by a preponderance of the evidence that TECHSHOP is not

14 a valid service mark, it cannot be infringed.  ~~should you consider whether Plaintiff owns the~~

15 ~~service marks at issue or whether Defendants' actions infringed it.~~

16      Only if you determine that TECHSHOP is not inherently distinctive should you consider

17 whether it is descriptive but became distinctive through the development of secondary meaning, as

18 I will direct in Instruction 34.

19

20

21

22

23

24

25

26

27

28

Case No. 4:18-CV-01044-HSG (JCS)

JOINT PROPOSED JURY INSTRUCTIONS

08876-00001/10810647.

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

TechShop objects to Defendants' proposed instruction. Invalidity is not an "affirmative deense."

DEFENDANTS' REASONS FOR THEIR INSTRUCTION/OBJECTION:

Defendants asserted an affirmative defense of invalidity, and are permitted to contest the validity of the service mark registrations. (Dkt. 50) (Defendants' Answer and Affirmative Defenses); (Dkt. 136) (stipulating to no testimony, evidence, or argument that any of the "TECHSHOP" marks are incontestable). As the Comments to the Ninth Circuit Model Jury Instructions provide, "[t]he effect of a contestable registration is to shift the burden of proof of ownership and validity from the plaintiff to the defendant. The defendant must rebut the presumption of plaintiff's exclusive right to use the trademark by a preponderance of the evidence." (Ninth Circuit Model Jury Instructions No. 15.8, Comment, p. 320) (citing cases). Defendants' proposed instruction provides the jury with guidance on how they are to determine whether Defendants have rebutted the presumption of validity.

Plaintiff does not include any proposed instructions as to validity of the mark based on descriptiveness.

1    CC.    <u>DISPUTED FINAL INSTRUCTION NO. 33 RE DEFENSES-AFFIRMATIVE</u>

2         <u>DEFENSE—INVALIDITY—STRENGTH OF MARK, Offered by Defendants</u>

3         **Strength as a Factor For <u>Determining Validity</u> ~~Evaluating Likelihood of Confusion~~**

4         How strongly a service mark indicates that a service comes from a specific source is an

5 important factor to consider in assessing its validity and Instruction No. 24 for determining

6 whether the mark used by the Defendants creates for consumers a likelihood of confusion with the

7 Plaintiff's service mark.

8         The Plaintiff asserts that the word TECHSHOP is a valid and protectable service mark for

9 its services providing professional networking and consultation in the fields of manufacturing and

10 fabrication, providing services for education and training in fabrication of products, and providing

11 workshop facilities for members to undertake do-it-yourself projects. The Plaintiff contends that

12 the Defendants' use of similar words in connection with the Defendants' former TechShop 2.0

13 business name and current TheShop.Build business name infringes Plaintiff's service marks and is

14 likely to cause confusion about the business associated with that mark. <u>Defendants contend that</u>

15 <u>the service marks are invalid.</u>

16         In order to determine <u>whether Defendants have met their</u> ~~if the plaintiff has met its~~ burden

17 of showing that the word TECHSHOP is <u>not</u> a valid service mark, you should classify it on the

18 spectrum of service mark distinctiveness that I will explain in this instruction.

19         **Spectrum of Marks**

20         Service mark law provides protection to distinctive or strong service marks. Conversely,

21 service marks that are not as distinctive or strong are called "weak" service marks and receive less

22 protection from infringing uses. Service marks that are not distinctive are not entitled to any

23 protection. For deciding service mark protectability you must consider whether a service mark is

24 inherently distinctive. Service marks are grouped into four categories according to their relative

25 strength. These four categories are, in order of strength or distinctiveness: arbitrary (which is

26 inherently distinctive), suggestive (which also is inherently distinctive), descriptive (which is

27 protected only if it acquires in consumers' minds a "secondary meaning" which I explain in

28 Instruction No. 34 and generic names (which are entitled to no protection).

**Arbitrary Service Marks.** The first category of "inherently distinctive" service marks is arbitrary service marks. They are considered strong marks and are clearly protectable. They involve the arbitrary, fanciful or fictitious use of a word to designate the source of a service. Such a service mark is a word that in no way describes or has any relevance to the particular service it is meant to identify. It may be a common word used in an unfamiliar way. It may be a newly created (coined) word or parts of common words which are applied in a fanciful, fictitious or unfamiliar way, solely as a service mark.

For instance, the common word "amazon" became a strong and inherently distinctive service mark when used by a company to identify an online marketplace. The company's use of the word "amazon" was arbitrary or fanciful because "amazon" did not describe and was not related to what the online marketplace was, its components, ingredients, quality, or characteristics. "Amazon" was being used in an arbitrary way to designate for consumers that the online marketplace comes from a particular source.

~~For instance, the common word "apple" became a strong and inherently distinctive trademark when used by a company to identify the personal computers that company sold. The company's use of the word "apple" was arbitrary or fanciful because "apple" did not describe and was not related to what the computer was, its components, ingredients, quality, or characteristics. "Apple" was being used in an arbitrary way to designate for consumers that the computer comes from a particular manufacturer or source.~~

**Suggestive Service Marks.** The next category is suggestive service marks. These service marks are also inherently distinctive but are considered weaker than arbitrary service marks. Unlike arbitrary service marks, which are in no way related to what the service is or its components, quality, or characteristics, suggestive service marks imply some characteristic or quality of the service to which they are attached. If the consumer must use imagination or any type of multi-stage reasoning to understand the service mark's significance, then the service mark does not describe the service's features, but merely suggests them.

A suggestive use of a word involves consumers associating the qualities the word suggests to the service to which the word is attached. For example, when "Greyhound" is used to describe a

1   bus service, ~~when "apple" is used not to indicate a certain company's computers, but rather~~
2   ~~"Apple-A-Day" Vitamins,~~ it is being used as a suggestive trademark.  "Greyhound" does not
3   describe what the bus is.  However, consumers may come to associate the speed of the
4   "Greyhound" bus service with the speed of a greyhound dog.  As another example, "Geek Squad"
5   for a computer support service suggests that the persons who will fix your computer are
6   knowledgeable about computers. ~~"Apple" does not describe what the vitamins are.  However,~~
7   ~~consumers may come to associate the healthfulness of "an apple a day keeping the doctor away"~~
8   ~~with the supposed benefits of taking "Apple-A-Day" Vitamins.~~

9       **Descriptive Service Marks.** The third category is descriptive service marks. These service
10  marks directly identify or describe some aspect, characteristic, or quality of the service to which
11  they are affixed in a straightforward way that requires no exercise of imagination to be understood.

12      For instance, the words quick and print are descriptive when used in the service mark
13  "Quik-Print" to designate a printing and duplication service.  ~~Other common types of descriptive~~
14  ~~service marks identify where a service comes from, or the name of the person who provides the~~
15  ~~service.  the word "apple" is descriptive when used in the trademark "CranApple" to designate a~~
16  ~~cranberry-apple juice. It directly describes ingredients of the juice. Other common types of~~
17  ~~descriptive trademarks identify where a product or service comes from, or the name of the person~~
18  ~~who makes or sells the product or service. Thus, the words "Apple Valley Juice" affixed to cider~~
19  ~~from the California town of Apple Valley is a descriptive trademark because it geographically~~
20  ~~describes where the cider comes from. Similarly, A descriptive service can be the personal name~~
21  ~~of the person who makes or sells the product. So, if a farmer in Apple Valley, Judy Brown, sold~~
22  ~~her cider under the label "Judy's DinerJuice" (rather than CranApple) she is making a descriptive~~
23  ~~use of her personal name to indicate and describe who produced the apple cider.~~

24      **Generic Names**. The fourth category is entitled to no protection at all. They are called
25  generic names and they refer to a general name of the service, as opposed to the plaintiff's brand
26  for that service.  Generic names are part of our common language that we need to identify all such
27  similar services. A generic name is a name for the service on which it appears.

28

If the primary significance of the alleged mark is to name the type of service rather than the manufacturer or provider, the term is a generic name and cannot be a valid service mark. If the majority of relevant consumers would understand the term to name the type of service rather than the manufacturer or provider, the primary significance of the term is generic and not entitled to protection as a service mark.

For example, the words "call" and "forwarding" can be used as a generic name and not be entitled to any service mark protection when the words are used to identify a telephone call forwarding service. Similarly, the words "computer" and "store" can be used as a generic name and not entitled to any service mark protection when the words are used to identify a computer sales service. And, the word "hotel" can be used as a generic name and not be entitled to any service mark protection when used in the phrase "hotels.com" to identify a website for reserving hotel rooms.

~~The word ""apple" can be used as a generic name and not be entitled to any service mark protection. This occurs when the word is used to identify the fruit from an apple tree.~~

~~The computer maker who uses the word "apple" as a trademark to identify its personal computer, or the vitamin maker who uses that word as a trademark on vitamins, has no claim for trademark or service mark infringement against the grocer who used that same word to indicate the fruit sold in a store. As used by the grocer, the word is generic and does not indicate any particular source of the product. As applied to the fruit, "apple" is simply a commonly used name for what is being sold.~~

**Mark Distinctiveness and Validity**

If you decide that TECHSHOP is arbitrary or suggestive, it is considered to be inherently distinctive. An inherently distinctive trademark is valid and protectable.

On the other hand, if you determine that TECHSHOP is generic, it cannot be distinctive and therefore is not valid nor protectable. You must render a verdict for the Defendants on their defense of invalidity ~~on the charge of infringement in Instruction No. ____ [insert number of instruction regarding Trademark Elements and Burden of Proof, e.g., 15.6]~~.

1    If you decide that TECHSHOP is descriptive, you will not know if the service mark is

2  valid or invalid until you consider whether it has gained distinctiveness by the acquisition of

3  secondary meaning, which I explain in Instruction No. 34.

08876-00001/10810647.1

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

TechShop objects to Defendants' proposed instruction. First, strength of a mark is not a factor in determining validity. It is a factor in determining likelihood of confusion. Second, even with respect to strength as a factor in likelihood of confusion, Defendants did not track the Model Instructions and changes to the Model Instructions have been made without following this Court's guidelines for doing so. For example, entire paragraphs have been added without an indication that they are not from the Model Instructions.

DEFENDANTS' REASONS FOR ITS INSTRUCTION/OBJECTION:

Defendants asserted an affirmative defense of invalidity, and are permitted to contest the validity of the service mark registrations. (Dkt. 50) (Defendants' Answer and Affirmative Defenses); (Dkt. 136) (stipulating to no testimony, evidence, or argument that any of the "TECHSHOP" marks are incontestable). As the Comments to the Ninth Circuit Model Jury Instructions provide, "[t]he effect of a contestable registration is to shift the burden of proof of ownership and validity from the plaintiff to the defendant. The defendant must rebut the presumption of plaintiff's exclusive right to use the trademark by a preponderance of the evidence." (Ninth Circuit Model Jury Instructions No. 15.8, Comment, p. 320) (citing cases). Defendants' proposed instruction provides the jury with guidance on how they are to determine whether Defendants have rebutted the presumption of validity. It tracks closely Model Instruction No. 15.10. Contrary to Plaintiff's argument, Defendants did indicate changes to the Model Instruction in accordance with the Court's guidelines for doing so. The modifications that Defendants made were to change examples from trademarks to service marks since this case relates to service marks.

Plaintiff is incorrect that strength of mark is not a factor in determining validity. Generic marks, for example, are not protectable. *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999). A descriptive term can be protected, but only where it has acquired "secondary meaning" in the minds of consumers. *Id.* Defendants'

1  proposed instruction defines the spectrum of marks for the jury so that they can determine whether

2  the TECHSHOP service marks are valid.

3         Plaintiff does not include any proposed instructions as to validity of the mark based on

4  descriptiveness.

08876-00001/10810647.1

DD.   DISPUTED FINAL INSTRUCTION NO. 34 RE DEFENSES—AFFIRMATIVE
      DEFENSES--INVALIDITY—SECONDARY MEANING, Offered by Defendants

If you determined in Instruction No. 33  that TECHSHOP is descriptive, you must consider the recognition that the mark has among prospective consumers in order to determine whether it is valid and protectable even though it is descriptive. This market recognition is called the service mark's "secondary meaning."

A word acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the service itself, but the identification of the service with a single source, regardless of whether consumers know who or what that source is. You must find that the preponderance of the evidence shows that a significant number of the consuming public associates TECHSHOP with a single source, in order to find that it has acquired secondary meaning.

When you are determining whether TECHSHOP has acquired a secondary meaning, consider the following factors:

(1) Consumer Perception. Whether the people who purchase the service that bears the claimed service mark associate the mark with the owner;

(2) Advertisement. To what degree and in what manner the owner may have advertised under the claimed service mark;

(3) Demonstrated Utility. Whether the owner successfully used this service mark to increase the sales of its service;

(4) Extent of Use. The length of time and manner in which the owner used the claimed service mark;

(5) Exclusivity. Whether the owner's use of the claimed service mark was exclusive;

(6) Copying. Whether the defendant intentionally copied the owner's service mark; and

(7) Actual Confusion. Whether the defendant's use of the plaintiff's service mark has led to actual confusion among a significant number of consumers.

The presence or absence of any particular factor should not necessarily resolve whether TECHSHOP has acquired secondary meaning.

1    Descriptive marks are protectable only to the extent you find they acquired distinctiveness

2  through secondary meaning. Descriptive marks are entitled to protection only as broad as the

3  secondary meaning they have acquired, if any. If they have acquired no secondary meaning, they

4  are entitled to no protection and cannot be considered a valid mark.

5    The Defendants have the burden of proving that the word mark TECHSHOP lacks a

6  secondary meaning.  If you find that Defendants met their burden of proving that TECHSHOP

7  lacks a secondary meaning, then you should render a verdict for Defendants on their defense of

8  invalidity.

9    The mere fact that the Plaintiff is using the word mark TECHSHOP, or that the Plaintiff

10  began using it before the Defendants, does not mean that the service marks have acquired

11  secondary meaning. There is no particular length of time that a service mark must be used before it

12  acquires a secondary meaning.

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

TechShop objects to Defendants proposed instruction.  Secondary meaning is not an affirmative defense to trademark infringement.

DEFENDANTS' REASONS FOR THEIR INSTRUCTION/OBJECTION:

Defendants asserted an affirmative defense of invalidity, and are permitted to contest the validity of the service mark registrations.  (Dkt. 50) (Defendants' Answer and Affirmative Defenses); (Dkt. 136) (stipulating to no testimony, evidence, or argument that any of the "TECHSHOP" marks are incontestable).  As the Comments to the Ninth Circuit Model Jury Instructions provide, "[t]he effect of a contestable registration is to shift the burden of proof of ownership and validity from the plaintiff to the defendant.  The defendant must rebut the presumption of plaintiff's exclusive right to use the trademark by a preponderance of the evidence."  (Ninth Circuit Model Jury Instructions No. 15.8, Comment, p. 320) (citing cases).  Defendants' proposed instruction provides the jury with guidance on how they are to determine whether Defendants have rebutted the presumption of validity.  It tracks closely Model Instruction No. 15.10.

Secondary meaning is relevant to whether the TECHSHOP service marks are valid marks because a descriptive term can be protected, but only where it has acquired "secondary meaning" in the minds of consumers. *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999).  Defendants' proposed instruction defines that term for the jury.

Plaintiff does not include any proposed instructions as to validity of the mark based on descriptiveness.

EE.  **STIPULATED FINAL INSTRUCTION NO. 35:  SERVICE MARK DAMAGES –
ACTUAL OR STATUTORY NOTICE**

In order for Plaintiff to recover damages, the Plaintiff has the burden of proving by a preponderance of the evidence that Defendants had either statutory or actual notice that the Plaintiff's service mark was registered.

Defendants had statutory notice if:

1. Plaintiff displayed the service mark with the words "Registered in U.S. Patent and Trademark Office" or

2. Plaintiff displayed the service mark with the words "Reg. U.S. Pat. & Tm. Off." or

3. Plaintiff displayed the service mark with the letter R enclosed within a circle, thus ®.

08876-00001/10810647.1

FF.    PLAINTIFF'S ACTUAL DAMAGES

        DISPUTED FINAL INSTRUCTION NO. 36, Offered by Plaintiff

        If you find for the Plaintiff on the Plaintiff's infringement claim and find that the Defendants had statutory notice or actual notice of the Plaintiff's registered service marks, you must determine the Plaintiff's actual damages.

        The Plaintiff has the burden of proving actual damages by a preponderance of the evidence. The Plaintiff must prove both the fact and the amount of damages.  Damages means the amount of money which will reasonably and fairly compensate the Plaintiff for any injury you find was caused by the Defendants' infringement of the Plaintiff's registered service mark.

        In this case, the Plaintiff claims damages in the form of lost licensing revenue.  You should consider ~~the following~~:

        ~~(1) The injury to the plaintiff's reputation;~~

        ~~(2) The injury to plaintiff's goodwill, including injury to the plaintiff's general business reputation;~~

        ~~(3)~~ the lost licensing revenue ~~profits~~ that the Plaintiff would have earned from licensing the service marks but for the Defendants' infringement. ~~Profit is determined by deducting all expenses from gross revenue;~~

        ~~(4) The expense of preventing customers from being deceived;~~

        ~~(5) The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement;~~

        ~~When considering prospective costs (e.g., cost of future advertising, expense of preventing customers from being deceived), you must not overcompensate. Accordingly, your award of such future costs should not exceed the actual damage to the value of the plaintiff's mark at the time of the infringement by the defendant.~~

1    <u>DISPUTED FINAL INSTRUCTION NO. 36 RE PLAINTIFF'S ACTUAL DAMAGES,</u>

2    <u>Offered by Defendants</u>

3    If you find for the Plaintiff on the Plaintiff's infringement claim and find that the

4    Defendants had statutory notice or actual notice of the Plaintiff's registered service marks, you

5    must determine the Plaintiff's actual damages.

6    The Plaintiff has the burden of proving actual damages by a preponderance of the

7    evidence. <u>The Plaintiff must prove both the fact and the amount of damages.</u>  Damages means the

8    amount of money which will reasonably and fairly compensate the Plaintiff for any injury you find

9    was caused by the Defendants' infringement of the Plaintiff's-registered service mark.

10    <u>In this case, the Plaintiff claims damages in the form of lost licensing revenue.</u>  You should

11    consider ~~the following:~~

12    ~~(1) The injury to the plaintiff's reputation;~~

13    ~~(2) The injury to plaintiff's goodwill, including injury to the plaintiff's general business~~

14    ~~reputation;~~

15    ~~(3)~~ the lost <u>licensing revenue, if any,</u> ~~profits~~ that the Plaintiff would have <u>actually</u> earned

16    <u>from licensing the service marks</u> but for the Defendants' infringement. ~~Profit is determined by~~

17    ~~deducting all expenses from gross revenue;~~

18    ~~(4) The expense of preventing customers from being deceived;~~

19    ~~(5) The cost of future corrective advertising reasonably required to correct any public~~

20    ~~confusion caused by the infringement;~~

21    ~~When considering prospective costs (e.g., cost of future advertising, expense of preventing~~

22    ~~customers from being deceived), you must not overcompensate. Accordingly, your award of such~~

23    ~~future costs should not exceed the actual damage to the value of the plaintiff's mark at the time of~~

24    ~~the infringement by the defendant.~~

25

26

27

28

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

TechShop's proposed instruction more closely tracks the language of the Model Instructions. Defendants' proposed instruction deleted the concept of statutory notice from the Instruction. Notice may be actual or statutory. Defendants further seek to delete the word "registered" from the instruction. While the Model Instruction presumes damages and lists factors to consider in awarding them, Defendants' proposed instruction confuses the instruction by adding "if any" to the factors to be considered. Further, including the term "actual" in the factor, is repetitive from earlier in the instruction and appears to be an effort to raise the burden of proof.

DEFENDANTS' REASONS FOR THEIR INSTRUCTION OBJECTION:

Defendants' proposed instruction repeats the word "actually" in the discussion of lost licensing revenue. This instruction is for "actual" damages and, thus, there is no prejudice or confusion in repeating the word "actual," since this instruction is about "actual" damages. Defendants' proposed instruction also includes the words "if any" because Plaintiff must prove that it lost licensing revenue. Since Plaintiff's proposed instruction (and Defendants') specifies the type of damages allegedly suffered (lost licensing revenue), it is appropriate to include the "if any" modifier.

GG.     DISPUTED FINAL INSTRUCTION NO. 37, Offered by Plaintiff

In the event that you find that defendants infringed plaintiff's trademarks, you will also be asked to determine whether the infringement was willful.  The plaintiff bears the burden of proving by a preponderance of the evidence that the infringement was willfull.

To prove willfulness, the plaintiff must show:

1.  That the defendants were actually aware of the infringing activity; or

2.  That the defendants' actions were the result of reckless disregard of the plaintiff's trademark rights or willful blindness of the same.

1  DISPUTED FINAL INSTRUCTION NO. 37 RE SERVICE MARK DAMAGES—

2  WILLFULNESS, Offered by Defendants

3  If you find that the Defendants infringed the Plaintiff's service mark(s), you must also

4  determine whether the Defendants used the service marks intentionally(willfully), knowing it was

5  an infringement.  In assessing Defendants' intent, you should take into account whether the

6  Defendants understood that their use of TechShop 2.0 was with Plaintiff's express or implied

7  consent, and Plaintiff's nine-month delay in objecting to Defendants' new name TheShop.Build.

08876-00001/10810647.1

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

There is no Model Jury Instruction for willfulness in a trademark action. Plaintiff's proposed instruction tracks the definition of willfulness applied in other cases. *See Fendi Adele, S.R.I. v. Ashley Reed Trading, Inc.*, 507 Fed.Appx. 26 (2nd Cir. 2013) at *3; *Microsoft Corp. v. E & M Internet Bookstore, Inc.*, 2008 WL 191346 (Jan. 22, 2008 N.D.C.A.) (Alsup, J.) at *3. By contrast, Defendants' proposed instruction is actually erroneous as a matter of law. There is no "intent" *requirement* for willfulness. Intent is merely one possible factor. Instead, willfulness may also be found from "willful blindness" and/or "reckless disregard." "Willfulness" is a concept common to copyright, patent, and trademark law and TechShop proposes an instruction consistent with that common meaning. By contrast, Defendants offer that, unique to trademark law, willfulness requires a higher showing. There is no support for that claim. Indeed, at least one case cited by Defendants actually supports TechShop's position. Defendants quote *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426 (9th Cir. 2017) as requiring a showing of "intentional or willful infringement before disgorgement of profits could be awarded."). Thus, as quoted, the case draws a distinction between "intentional infringement" and "willful infringement" (which contemplates a lower showing).


DEFENDANTS' REASONS FOR THEIR INSTRUCTION/OBJECTION:

Defendants' proposed instruction is not erroneous as a matter of law. Contrary to Plaintiff's argument, there is an "intent" requirement for willfulness. *San Miguel Pure Foods Co., Inc. v. Ramar Intern. Corp.*, 625 Fed. Appx. 322, 325 (9th Cir. 2015) ("We have held that 'willful infringement carries a connotation of deliberate intent to deceive"); *id.* (upholding a jury instruction on willfulness "which required the jury to consider if San Miguel had a 'reasonable and good faith belief' that its actions were not infringing"); *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 442 (9th Cir. 2017) (requiring a showing of "intentional or willful infringement before disgorgement of [ ] profits could be awarded"). It is Plaintiff's proposed instruction that is inconsistent with Ninth Circuit law.

HH.    <u>DISPUTED FINAL INSTRUCTION NO. 38, Offered by Plaintiff</u>

In addition to actual damages, the plaintiff is entitled to any profits earned by the defendant that are attributable to the infringement, which the plaintiff proves by a preponderance of the evidence. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of defendant's receipts from using the trademark in the sale of <u>its services</u>. The plaintiff has the burden of proving a defendant's gross revenue by a preponderance of the evidence.

Expenses are all operating and production costs incurred in producing the gross revenue. The defendant has the burden of proving the expenses and the portion of the profit attributable to factors other than use of the infringed trademark by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of the services using the trademark is attributable to factors other than use of the trademark, you should find that the total profit is attributable to the infringement.

08876-00001/10810647.1

DISPUTED FINAL INSTRUCTION NO. 38 RE SERVICE MARK DAMAGES—

DEFENDANT'S PROFITS, Offered by Defendants

If you determine that the Defendants infringed on Plaintiff's service mark(s) and that the infringement was intentional (willful), then in addition to actual damages, the Plaintiff may be ~~is~~ entitled to the ~~any~~ profits earned by the Defendants, if any, that are attributable to the infringement, which the Plaintiff proves by a preponderance of the evidence. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of Defendants' receipts from using the service mark in the sale of a service. The Plaintiff has the burden of proving a Defendants' gross revenue from using an infringing variation of the TECHSHOP service mark by a preponderance of the evidence.

Expenses are all operating and production costs incurred in producing the gross revenue. The Defendants have the burden of proving the expenses, and  the portion of the profit attributable to factors other than use of an infringing variation of the TECHSHOP service mark by a preponderance of the evidence.

Unless you find that a portion of the profit from the Defendants' makers space using an infringing variation of the TECHSHOP service mark is attributable to factors other than use of an infringing variation of the service mark, you should find that the total profit is attributable to the infringement.

1    PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

2    TechShop's proposed Instruction more closely tracks the language of the Model
3    Instruction.  Defendants attempt to introduce the concept of willfulness here when that is covered
4    by other instructions and adds to potential confusion by the jurors.  How the jurors deal with
5    willfulness is something that is dealt with in the proposed verdict form where the jurors must first
6    find willfulness before address profits damages.  Further, Defendants' proposed changes also
7    appear to confuse the burdens of proof and misstate the law.  Once plaintiff proves infringement
8    and gross revenues, Defendants have the burden of proving that revenues were not the result of the
9    infringement.

10

11    DEFENDANTS' REASONS FOR THEIR INSTRUCTION/OBJECTION:

12    Defendants' proposed instruction makes clear that a finding of willfulness is a prerequisite
13    to disgorgement of Defendants' profits.  This is the law in the Ninth Circuit.  *Stone Creek, Inc. v.*
14    *Omnia Italian Design, Inc.*, 875 F.3d 426, 442 (9th Cir. 2017) (requiring a showing of "intentional
15    or willful infringement before disgorgement of [ ] profits could be awarded").  This will not
16    confuse the jurors because it is an accurate reflection of the law.

17    Defendants' instruction also does not confuse the burden of proof, as it clearly states that
18    Plaintiff has the burden of proving revenues, and then Defendants have the burden of proving
19    expenses or that a portion of the revenues are attributable to factors other than infringing use of the
20    mark.

21

22

23

24

25

26

27

28

II. DISPUTED FINAL INSTRUCTION NO. 39 RE DAMAGES--MITIGATION, Offered by Defendants

The Plaintiff has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.

The Defendants have the burden of proving by a preponderance of the evidence:

1. that the Plaintiff failed to use reasonable efforts to mitigate damages; and

2. the amount by which damages would have been mitigated.

In considering whether Plaintiff failed to use reasonable efforts to mitigate damages, you may consider whether Plaintiff expressly or impliedly consented to Defendants' use of the name TechShop 2.0 and when, if ever, Plaintiff notified Defendants that Plaintiff considered the name TechShop 2.0 and/or TheShop.Build to infringe the TECHSHOP mark.

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

There is no duty to mitigate trademark damages. *See, e.g., Natreon, Inc. v. Ixoreal Biomed, Inc.*, 2017 WL 3131975 (D. N.J. July 21, 2017) at *7. Thus, the instruction is a misstatement of law. Defendants cases say nothing different. *California Brewing Co. v. 3 Daughters Brewing LLC*, 2016 WL 4001133, *4 (E.D. Cal. July 26, 2016) merely holds that "mitigation" met the pleading standard of fair notice and did not address whether "mitigation" is an actual duty. *TJ Creative, Inc. v. The Stockroom, Inc.*, 2016 WL 11002583, *2 (C.D. Cal. Dec. 13, 2016) states: "Defendant asserts that the parties entered into an oral agreement[.]" Thus, on a breach of contract defense/claim, the court allowed mitigation to stand. By contrast, here, Defendants do not assert a breach of contract defense/claim.

DEFENDANTS' REASONS FOR THEIR INSTRUCTION/OBJECTION:

Contrary to Plaintiff's position, there is a duty to mitigate damages in trademark law. *See e.g. California Brewing Co. v. 3 Daughters Brewing LLC*, 2016 WL 4001133, *4 (E.D. Cal. July 26, 2016) (permitting the plaintiff in a trademark action to add a defense that the plaintiff failed to mitigate damages); *TJ Creative, Inc. v. The Stockroom, Inc.*, 2016 WL 11002583, *2 (C.D. Cal. Dec. 13, 2016) (denying motion to strike a failure to mitigate defense in a trademark case). The Court should include Defendants' proposed instruction because the jury may find that Plaintiff's conduct reflects a failure to mitigate damages.

08876-00001/10810647.1

JJ.     <u>DISPUTED FINAL INSTRUCTION NO. 40:  FALSE PROMISE[7] Offered by Defendants</u>

<u>Defendant Dan Rasure claims that he and his businesses were harmed because TechShop</u>

<u>made a false promise.  To establish this claim, Mr. Rasure must prove all of the following:</u>

1.     <u>That TechShop made a promise to Mr. Rasure;</u>

2.     <u>That TechShop did not intend to perform this promise when it made it;</u>

3.     <u>That TechShop intended that Mr. Rasure rely on this promise;</u>

4.     <u>That Mr. Rasure reasonably relied on TechShop's promise;</u>

5.     <u>That TechShop did not perform the promised act;</u>

6.     <u>That Mr. Rasure and his businesses were harmed; and</u>

7.     <u>That Mr. Rasure's reliance on TechShop's promise was a substantial factor in</u>

<u>causing that harm.</u>

<u>Mr. Rasure has the burden of proving these elements by a preponderance of the evidence.</u>

<u>Preponderance of the evidence means that you must be persuaded by the evidence that it is more</u>

<u>probably true than not true that Mr. Rasure and his businesses were harmed because TechShop</u>

<u>made a false promise.</u>

---

[7]   This instruction is based on Judicial Council of California Civil Jury Instructions (CACI), Instruction No. 1902; *Liodas v. Sahadi*, 19 Cal. 3d 278, 287-90 (1977).

1    PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

2    For the reasons set forth in numerous papers, TechShop objects to any instructions related

3    to fraud.

4

5    DEFENDANTS' REASONS FOR ITS INSTRUCTION/OBJECTION:

6    For the reasons set forth in numerous papers, including the Court's Order Denying

7    Plaintiff's Motion to Dismiss (Dkt. 110) and Defendants' Opposition to Plaintiff's Motion in

8    Limine No. 2 (Dkt. 145), this instruction should be included because the fraud counterclaim

9    remains a part of the case.

08876-00001/10810647.1

1   KK.   DISPUTED FINAL INSTRUCTION NO. 41:  RELIANCE[8] Offered By Defendants

2         Mr. Rasure relied on TechShop's false promise if:

3         1.   The false promise substantially influenced him to pay certain of TechShop's

4              expenses; and

5         2.   He would probably not have paid certain of TechShop's expenses without the false

6              promise.

7         It is not necessary for a false promise to be the only reason for Mr. Rasure's conduct.

---

28   [8]  This instruction is based on Judicial Council of California Civil Jury Instructions (CACI), Instruction No. 1907.

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

For the reasons set forth in numerous papers, TechShop objects to any instructions related to fraud.


DEFENDANTS' REASONS FOR ITS INSTRUCTION/OBJECTION:

For the reasons set forth in numerous papers, including the Court's Order Denying Plaintiff's Motion to Dismiss (Dkt. 110) and Defendants' Opposition to Plaintiff's Motion in Limine No. 2 (Dkt. 145), this instruction should be included because the fraud counterclaim remains a part of the case.

08876-00001/10810647.1

1   LL.    <u>DISPUTED FINAL INSTRUCTION NO 42: REASONABLE RELIANCE</u>[9] <u>Offered By</u>

2       <u>Defendants</u>

3         <u>In determining whether Mr. Rasure's reliance on the false promise was reasonable, he must</u>

4   <u>first prove that the matter was material. A matter is material if a reasonable person would find it</u>

5   <u>important in determining his or her choice of action.</u>

6         <u>If you decide that the matter is material, you must then decide whether it was reasonable</u>

7   <u>for Mr. Rasure to rely on the false promise. In making this decision, take into consideration Mr.</u>

8   <u>Rasure's intelligence, knowledge, education, and experience as well as the circumstances in which</u>

9   <u>the reliance occurred.</u>

10         <u>However, it is not reasonable for anyone to rely on a false promise that is preposterous. It</u>

11   <u>also is not reasonable for anyone to rely on a false promise if facts that are within his observation</u>

12   <u>show that it is obviously false.</u>

---

[9]   This instruction is based on Judicial Council of California Civil Jury Instructions (CACI), Instruction No. 1908.

-137-       Case No. 4:18-CV-01044-HSG (JCS)

1   PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

2   For the reasons set forth in numerous papers, TechShop objects to any instructions related

3   to fraud.

4

5   DEFENDANTS' REASONS FOR ITS INSTRUCTION/OBJECTION:

6   For the reasons set forth in numerous papers, including the Court's Order Denying

7   Plaintiff's Motion to Dismiss (Dkt. 110) and Defendants' Opposition to Plaintiff's Motion in

8   Limine No. 2 (Dkt. 145), this instruction should be included because the fraud counterclaim

9   remains a part of the case.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

08876-00001/10810647.1

MM.   <u>STIPULATED FINAL INSTRUCTION NO. 43: LIABILITY OF CORPORATIONS—</u>
<u>SCOPE OF AUTHORITY NOT IN ISSUE</u>

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

08876-00001/10810647.1

NN.   STIPULATED FINAL INSTRUCTION NO. 44: INTRODUCTION TO VICARIOUS RESPONSIBILITY[10]

One may authorize another to act on his or her behalf in transactions with third person. This relationship is called "agency." The person giving the authority is called the "principal"; the person to who authority is given is called the "agent."

A principal is responsible for harm caused by the wrongful conduct of its agents while acting within the scope of their authority.

---

[10]  This instruction is based on Judicial Council of California Civil Jury Instructions (CACI), Instruction No. 3700.

08876-00001/10810647.1

OO.   DISPUTED FINAL INSTRUCTION NO. 45 RE TORT LIABILITY ASSERTED
      AGAINST PRINCIPAL—ESSENTIAL FACTUAL ELEMENTS, Offered by
      Defendants[11]

      Mr. Rasure claims that he and his businesses were harmed by false promises made by
TechShop's agents, including its CEO Dan Woods and its founder and Chairman of the Board
James Newton.

      Mr. Rasure also claims that TechShop is responsible for the harm because Mr. Woods, Mr.
Newton, and others, were acting as its agent when the incidents occurred.

      If you find that Mr. Woods, Mr. Newton's, or others' false promises to Mr. Rasure harmed
Mr. Rasure and his businesses, then you must decide whether TechShop is responsible for the
harm. TechShop is responsible for the harm if Mr. Rasure proves both of the following:

      1.    That Mr. Woods, Mr. Newton, or another individual was TechShop's agent and;

      2.    That individual was acting within the scope of his agency when he harmed Mr.
            Rasure and his businesses.

---

[11]  This instruction is based on Judicial Council of California Civil Jury Instructions (CACI),
Instruction No. 3701.

1      PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

2      This Court's decision regarding dismissal of Defendants' fraud counterclaims determined

3 that, as a result of Defendants' dismissal of Newton and Woods, there were no allegations with

4 respect to activity by Newton and Woods. *See* Dkt. #110. Having failed to plead with

5 particularity facts of alleged conduct by Newton or Woods, Defendants should not be allowed to

6 present those same issues to the jury. Because it points to liability based on alleged activity by

7 others than TechShop itself, and those others/facts were not identified with particularity in the

8 counterclaims, this Instruction should not be given. Likewise, Defendants never identified any of

9 these witnesses as having information concerning alleged fraud in their Initial Disclosures.

10 Accordingly, such allegations are barred by FED.R.CIV.P. 37(c).

11

12     DEFENDANTS' REASONS FOR THEIR INSTRUCTION/OBJECTION:

13     Defendants' proposed instruction should be included because Defendants pled with

14 particularity false promises by Newton and Woods, made as agents of TechShop. Thus, it is

15 important for the jury to be instructed on how Plaintiff may be found to be liable for the conduct

16 of its agents.

17     Plaintiff is incorrect that all allegations about Newton and Woods are out of the case. The

18 Court denied Plaintiff's Motion to Dismiss Mr. Rasure's fraud counterclaim. (Dkt. 110.) The

19 Court did not strike all allegations regarding Newton and Woods' conduct. Nor did Plaintiff ask

20 the Court to do so. Accordingly, their alleged conduct is part of the case and it is appropriate to

21 instruct the jury as to how to address that conduct in the case against Plaintiff.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PP.   **DISPUTED FINAL INSTRUCTION NO. 46 RE EXISTENCE OF "AGENCY"**

**RELATIONSHIP DISPUTED, Offered by Defendants**[12]

Mr. Rasure claims that Mr. Woods and Mr. Newton, and others, were TechShop's agent and that TechShop is therefore responsible for each of their conduct.

If Mr. Rasure proves that TechShop gave Mr. Woods, Mr. Newton, or someone else, authority to act on its behalf, then that person or persons was TechShop's agent. This authority may be shown by words or may be implied by the parties' conduct. This authority cannot be shown by the words of agent alone.

---

[12]   This instruction is based on Judicial Council of California Civil Jury Instructions (CACI), Instruction No. 3705.

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

This Court's decision regarding dismissal of Defendants' fraud counterclaims determined that, as a result of Defendants' dismissal of Newton and Woods, there were no allegations with respect to activity by Newton and Woods. *See* Dkt. #110. Having failed to plead with particularity facts of alleged conduct by Newton or Woods, Defendants should not be allowed to present those same issues to the jury. Because it points to liability based on alleged activity by others than TechShop itself, and those others/facts were not identified with particularity in the counterclaims, this Instruction should not be given. Likewise, Defendants never identified any of these witnesses as having information concerning alleged fraud in their Initial Disclosures. Accordingly, such allegations are barred by FED.R.CIV.P. 37(c).

DEFENDANTS' REASONS FOR THEIR INSTRUCTION/OBJECTION:

Defendants' proposed instruction should be included because Defendants pled with particularity false promises by Newton and Woods, made as agents of TechShop. Thus, it is important for the jury to be instructed on how Plaintiff may be found to be liable for the conduct of its agents.

Plaintiff is incorrect that all allegations about Newton and Woods are out of the case. The Court denied Plaintiff's Motion to Dismiss Mr. Rasure's fraud counterclaim. (Dkt. 110.) The Court did not strike all allegations regarding Newton and Woods' conduct. Nor did Plaintiff ask the Court to do so. Accordingly, their alleged conduct is part of the case and it is appropriate to instruct the jury as to how to address that conduct in the case against Plaintiff.

08876-00001/10810647.1

QQ.   DISPUTED FINAL INSTRUCTION NO. 47, Offered by Plaintiff

If you decide that Mr. Rasure has proved his claim against TechShop, you also must decide how much money will reasonably compensate Mr. Rasure for the harm. This compensation is called "damages."

The amount of damages must include an award for all harm that TechShop was a substantial factor in causing, even if the particular harm could not have been anticipated.

Mr. Rasure must prove the amount of his damages by a preponderance of the evidence.

However, Mr. Rasure does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

To decide the amount of damages you must determine the value of what Mr. Rasure gave and subtract from that amount the value of what he received.

Mr. Rasure may also recover amounts that he reasonably spent in reliance on TechShop's false promise if those amounts would not otherwise have been spent.

08876-00001/10810647.1

1    DISPUTED FINAL INSTRUCTION NO. 48 RE DAMAGES – "OUT OF POCKET"

2    RULE, Offered by Defendants[13]

3        If you decide that Mr. Rasure has proved his claim against TechShop, you also must decide

4    how much money will reasonably compensate Mr. Rasure for the harm. This compensation is

5    called "damages."

6        The amount of damages must include an award for all harm that TechShop was a

7    substantial factor in causing, even if the particular harm could not have been anticipated.

8        Mr. Rasure must prove the amount of his damages.

9        However, Mr. Rasure does not have to prove the exact amount of damages that will

10   provide reasonable compensation for the harm. You must not speculate or guess in awarding

11   damages.

12       To decide the amount of damages you must determine the value of what Mr. Rasure gave

13   and subtract from that amount the value of what he received.Mr. Rasure may also recover amounts

14   that he reasonably spent in reliance on TechShop's false promise if those amounts would not

15   otherwise have been spent.

16

17

18

19

20

21

22

23

24

25

26

27

28   [13]  This instruction is based on Judicial Council of California Civil Jury Instructions (CACI), Instruction No. 1923.

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

This Court's decision regarding dismissal of Defendants' fraud counterclaims determined that, as a result of Defendants' dismissal of Newton and Woods, there were no allegations with respect to activity by Newton and Woods. *See* Dkt. #110.  Having failed to plead with particularity facts of alleged conduct by Newton or Woods, Defendants should not be allowed to present those same issues to the jury.  Because it points to liability based on alleged activity by others than TechShop itself, and those others/facts were not identified with particularity in the counterclaims, this Instruction should not be given.  Likewise, Defendants never identified any of these witnesses as having information concerning alleged fraud/damages in their Initial Disclosures.  Accordingly, such allegations are barred by FED.R.CIV.P. 37(c).

Subject to that objection, Defendants' proposed Instruction also fails to properly inform the jury of the burden of proof.

DEFENDANTS' REASONS FOR THEIR INSTRUCTION/OBJECTION:

Defendants' proposed instruction tracks Judicial Council of California Civil Jury Instructions (CACI), Instruction No. 1923.

For the reasons set forth in numerous papers, including the Court's Order Denying Plaintiff's Motion to Dismiss (Dkt. 110) and Defendants' Opposition to Plaintiff's Motion in Limine No. 2 (Dkt. 145), this instruction should be included because the fraud counterclaim remains a part of the case.

08876-00001/10810647.1

**RR.   DISPUTED FINAL INSTRUCTION NO. 49 RE PUNITIVE DAMAGES AGAINST EMPLOYER OR PRINCIPAL FOR CONDUCT OF A SPECIFIC AGENT OR EMPLOYEE—TRIAL NOT BIFURCATED, Offered by Defendants[14]**

If you decide that TechShop's employees, officers, or Board members' conduct caused Mr. Rasure and his businesses harm, you must decide whether that conduct justifies an award of punitive damages against TechShop for their conduct. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against TechShop for its employees, officers, and Board members' conduct only if Mr. Rasure proves by clear and convincing evidence that those employees, officers, and Board members engaged in that conduct with malice, oppression, or fraud.

"Malice" means that TechShop's employees, officers, or Board members acted with intent to cause injury or that their conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when he or she is aware of the probable dangerous consequences of his or her conduct and deliberately fails to avoid those consequences.

"Oppression" means that TechShop's employees, officers, or Board members' conduct was despicable and subjected Mr. Rasure to cruel and unjust hardship in knowing disregard of his rights.

"Despicable" conduct is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that TechShop's employees, officers, or Board members intentionally misrepresented or concealed a material fact and did so intending to harm Mr. Rasure and his businesses.

Mr. Rasure must also prove one of the following by clear and convincing evidence:

---

[14]   This instruction is based on Judicial Council of California Civil Jury Instructions (CACI), Instruction No. 3943.

1.   That the individual or individuals in question were an officer, a director, or a managing agent of TechShop, who was acting on behalf of TechShop; or

2.   That an officer, a director, or a managing agent of TechShop authorized the conduct of the individuals in question; or

3.   That an officer, a director, or a managing agent of TechShop knew of the individuals in question's wrongful conduct and adopted or approved the conduct after it occurred.

An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decision-making such that his or her decisions ultimately determine corporate policy.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a) How reprehensible was TechShop's conduct? In deciding how reprehensible TechShop's conduct was, you may consider, among other factors:

1. Whether the conduct caused physical harm;

2. Whether TechShop disregarded the health or safety of others;

3. Whether Mr. Rasure was financially weak or vulnerable and TechShop knew Mr. Rasure was financially weak or vulnerable and took advantage of him;

4. Whether TechShop's conduct involved a pattern or practice; and

5. Whether TechShop acted with trickery or deceit.

(b) Is there a reasonable relationship between the amount of punitive damages and Mr. Rasure's harm?

PLAINTIFF'S REASONS FOR ITS INSTRUCTION/OBJECTION:

This Court's decision regarding dismissal of Defendants' fraud counterclaims determined that, as a result of Defendants' dismissal of Newton and Woods, there were no allegations with respect to activity by Newton and Woods. *See* Dkt. #110.  Having failed to plead with particularity facts of alleged conduct by Newton or Woods, Defendants should not be allowed to present those same issues to the jury.  Because it points to liability based on alleged activity by others than TechShop itself, and those others/facts were not identified with particularity in the counterclaims, this Instruction should not be given.  Likewise, Defendants never identified any of these witnesses as having information concerning alleged fraud/damages in their Initial Disclosures.  Accordingly, such allegations are barred by FED.R.CIV.P. 37(c).

DEFENDANTS' REASONS FOR THEIR INSTRUCTION/OBJECTION:

Defendants' proposed instruction should be included because Defendants pled with particularity false promises by Newton and Woods, made as agents of TechShop.  Thus, it is important for the jury to be instructed on how Plaintiff may be found to be liable for the conduct of its agents.

Plaintiff is incorrect that all allegations about Newton and Woods are out of the case.  The Court denied Plaintiff's Motion to Dismiss Mr. Rasure's fraud counterclaim.  (Dkt. 110.)  The Court did not strike all allegations regarding Newton and Woods' conduct.  Nor did Plaintiff ask the Court to do so.  Accordingly, their alleged conduct is part of the case and it is appropriate to instruct the jury as to how to address that conduct in the case against Plaintiff.

08876-00001/10810647.1

1   SS.     <u>STIPULATED FINAL INSTRUCTION NO. 50:  DUTY TO DELIBERATE</u>

2         Before you begin your deliberations, elect one member of the jury as your presiding juror.

3 The presiding juror will preside over the deliberations and serve as the spokesperson for the jury

4 in court.

5         You shall diligently strive to reach agreement with all of the other jurors if you can do so.

6 Your verdict must be unanimous.

7         Each of you must decide the case for yourself, but you should do so only after you have

8 considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

9         It is important that you attempt to reach a unanimous verdict but, of course, only if each of

10 you can do so after having made your own conscientious decision. Do not be unwilling to change

11 your opinion if the discussion persuades you that you should. But do not come to a decision

12 simply because other jurors think it is right, or change an honest belief about the weight and effect

13 of the evidence simply to reach a verdict.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TT.   <u>STIPULATED FINAL INSTRUCTION NO. 51:  CONSIDERATION OF EVIDENCE—</u>
<u>CONDUCT OF THE JURY</u>

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy

-152-

1   of their testimony is tested through the trial process. If you do any research or investigation

2   outside the courtroom, or gain any information through improper communications, then your

3   verdict may be influenced by inaccurate, incomplete or misleading information that has not been

4   tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if

5   you decide the case based on information not presented in court, you will have denied the parties a

6   fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you

7   follow these rules.

8       A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a

9   mistrial could result that would require the entire trial process to start over]. If any juror is exposed

10  to any outside information, please notify the court immediately.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

08876-00001/10810647.

UU.    <u>STIPULATED FINAL INSTRUCTION NO. 52:  COMMUNICATIONS WITH COURT</u>

    If it becomes necessary during your deliberations to communicate with me, you may send a note through the [marshal] [bailiff], signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

Case No. 4:18-CV-01044-HSG (JCS)
JOINT PROPOSED JURY INSTRUCTIONS

VV.    STIPULATED FINAL INSTRUCTION NO. 53:  RETURN OF VERDICT

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your [presiding juror] [foreperson] should complete the verdict form according to your deliberations, sign and date it, and advise the [clerk] [bailiff] that you are ready to return to the courtroom.

08876-00001/10810647.