1  [COUNSEL LISTED ON FOLLOWING PAGE]

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9      NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

10  TECHSHOP, INC.,                      CASE NO. 4:18-CV-01044-HSG (JCS)

11          Plaintiff,                   **JOINT PRETRIAL STATEMENT AND PROPOSED ORDER**

12      vs.
                                         Jury Trial: June 3, 2019, 8:00 a.m.
13  DAN RASURE, et al.,                  Pretrial Conf.: April 30, 2019, 3:00   pm
                                         Judge: Hon. Haywood S. Gilliam Jr.
14          Defendants.

15
    AND RELATED COUNTERCLAIMS
16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 4:18-CV-01044-HSG
JOINT PRETRIAL STATEMENT AND PROPOSED ORDER

James C. Pistorino (SBN 226496)
  james@dparrishlaw.com
Parrish Law Offices
224 Lexington Dr.
Menlo Park, CA  94025
Telephone: (650) 400-0043

Attorneys for Plaintiff

Ann McFarland Draper (Bar No. 065669)
courts@draperlaw.net
Draper Law Offices
75 Broadway, Suite 202
San Francisco, California 94111
Telephone      : (415) 989-5620

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Andrea Pallios Roberts (Bar No. 228128)
andreaproberts@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:      (650) 801-5000
Facsimile:      (650) 801-5100

Ed DeFranco (Bar No. 165596)
eddefranco@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:      (212) 849-7000
Facsimile:      (212) 849-7100

John E. Nathan (*Pro Hac Vice*)
jnathan155@yahoo.com
John E. Nathan LLC
1175 Park Avenue
New York, NY 10128
Telephone:      (917) 960-1667

Attorneys for Defendants and Counterclaimants

Pursuant to Paragraph 7 of the Civil Pretrial and Trial Standing Order for Cases Before District Judge Haywood S. Gilliam, Jr., Plaintiff and Counterdefendant TechShop, Inc. and its Chapter 7 Trustee, Doris A. Kaelin (collectively "Plaintiff" or "TechShop"), and Defendants and Counterclaimants Dan Rasure, TheShop dot Build LLC (fka and sued herein as "TechShop 2.0 LLC") and TheShop dot Build San Fran LLC (fka and sued herein as "TechShop 2.0 San Francisco LLC") (collectively "Defendants") hereby submit this Joint Pretrial Statement and Proposed Order.

## 1. Substance of the Action.

### A. Description of the Parties

PLAINTIFF'S STATEMENT:

The Plaintiff is Doris A. Kalein in her capacity as trustee for the estate of TechShop, Inc., a California Corporation (hereinafter, "TechShop"). The Defendants are Dan Rasure, TechShop 2.0 LLC, and TechShop 2.0 San Francisco LLC.

DEFENDANTS' STATEMENT:

The Plaintiff and Counterdefendant ("Plaintiff") is TechShop, Inc., a California corporation. Plaintiff formerly operated makerspace facilities, but closed its business in the United States on November 15, 2017, and is currently in Chapter 7 liquidation bankruptcy proceedings. Doris A. Kaelin is the bankruptcy Trustee.

The Defendants and Counterclaimants are Dan Rasure, a Kansas resident, and two Kansas limited liability corporations. The originally named corporate entities are TechShop 2.0 LLC and TechShop 2.0 San Francisco LLC. These companies, however, no longer exist under these names. After the filing of the present suit, the name of TechShop 2.0 LLC was changed to The Shop Dot Build LLC ("TheShop.Build"), and the name of TechShop 2.0 San Francisco LLC was changed to The Shop Dot Build San Fran, LLC ("TheShop.Build SF"). TheShop.Build and TheShop.Build SF are Kansas limited liability corporations. Unless otherwise noted, Mr. Rasure, TheShop.Build, and TheShop.Build SF, are referenced herein as Defendants.

### B. Substance of Claims and Defenses that Remain to be Decided and Pleadings that Raise the Issues

08876-00001/10810459.1

1    TechShop's claim is for federal infringement of two registered service marks, under 15
2    U.S.C. section 1114 and 1125.  (Dkt. 45.)  TechShop seeks damages in the form of lost licensing
3    revenues and Defendants' profits and also asserts that Defendants' infringement was willful.
4    Defendants deny the allegations and assert affirmative defenses.  (Dkt. 50.)

5        Defendants' counterclaims are: (1) cancellation of federal registration No. 4247529 (First
6    Counterclaim); (2) cancellation of federal registration No. 4294110 (Second Counterclaim); and
7    (3) fraud (Third Counterclaim).  (Dkt. 42.)[1]  Plaintiff denies the allegations but did not raise any
8    affirmative defenses.  (Dkt. 120.)

9            i.        **Plaintiff's Submission**

10       **Plaintiff's Claim:**

11       Plaintiff TechShop operated several makerspaces in the United States and licensee outside
12    the United States operated makerspaces under the TechShop name.  TechShop was the subject of
13    numerous articles in national publications and was so well known that President Obama spoke at
14    TechShop's Pittsburgh location in 2014.  By 2017, TechShop had 10 U.S. locations with more
15    than 9,000 members.  TechShop has two federally registered trademarks in the term TECHSHOP
16    for services in connection with makerspaces.  By late November 2017, TechShop was
17    experiencing financial difficulties, closed the doors of its locations, and announced its intention to
18    seeks bankruptcy protection.  Before TechShop could file its bankruptcy papers, TechShop was
19    approached by Mr. Rasure offering to purchase TechShop's assets and re-open the locations.  A
20    MOU was signed on December 1, 2017, and announcement was made that Mr. Rasure would be
21    purchasing TechShop's assets (including the trademarks) and re-opening the locations using the
22    name TechShop 2.0.  Because TechShop had no funds, the MOU required Mr. Rasure to pay
23    expenses (e.g., insurance, IT charges, legal fees) necessary for TechShop to even negotiate with
24    Mr. Rasure.

25       Almost immediately, Mr. Rasure failed to perform under the terms of the MOU.  When
26    TechShop sought to determine whether Mr. Rasure had the funds he claimed, no proof was

27

28
---
[1] Defendants Fourth Counterclaim (wire fraud) was dismissed on March 20, 2019 (Dkt. 110).

1 | forthcoming despite repeated requests.  When TechShop sought to determine who the alleged
2 | board members of the new entity were and whether they were actually involved, no response was
3 | ever received.  Instead, Mr. Rasure simply continued to request additional information from
4 | TechShop.  When no progress was made on Mr. Rasure's performance, TechShop terminated the
5 | MOU on December 12, 2017, so that TechShop could speak with other potential purchasers and in
6 | accordance with TechShop's duty to assure proper winding down.  Mr. Rasure never demanded
7 | the return of any funds paid while the MOU was in effect.

8 |      Though the MOU was terminated, Mr. Rasure continued to discuss potential transactions
9 | with TechShop through February 2018.  Unbeknownst to TechShop, Mr. Rasure was working to
10 | open TechShop's former San Francisco location using the name "TechShop 2.0" despite the fact
11 | that there was no agreement allowing him to do so.  Around February 9, 2018, Mr. Rasure
12 | publicly announced that that he was opening TechShop's former San Francisco location using the
13 | name "TechShop 2.0". When TechShop explicitly notified Defendants that they had no right to do
14 | so on February 14, 2018, Defendants' persisted in using the name "TECHSHOP 2.0".  Thereafter,
15 | TechShop sent Defendants another cease and desist letter on February 16, 2018 along with a copy
16 | of the Original Complaint.  Nevertheless, Defendants persisted and continued to hold themselves
17 | out and operate as TechShop 2.0 for months afterward.  Using this name, Defendants' solicited
18 | members and took in revenues.

19 |      Late in the evening of February 16, 2018, Defendants slightly modified the name they
20 | were using on their website to "THESHOP."  In doing so, Defendants sought to mimic
21 | TechShop's logo and look in a manner designed to promote confusion and trade off TechShop's
22 | goodwill and reputation.  The combination of using the TECHSHOP 2.0, the still infringing
23 | THESHOP name, and the mimicking of TechShop's logo/look resulted in numerous instances of
24 | actual confusion over months.  Indeed, for months Defendants responded to inquiries asserting
25 | that they were not TechShop when it was beneficial to do so.  After the Complaint was filed and
26 | Defendants served, TechShop sought bankruptcy protection and Doris A. Kaelin was assigned as
27 | the trustee.

28 |

1    The First Amended Complaint alleges that, without authorization, Defendants used
2  confusingly similar variations of TechShop's two federally registered trademarks in the term
3  TECHSHOP.  Such variations include TECHSHOP 2.0 and THESHOP.

4    Defendants' infringement was willful.  Knowing of TechShop's trademark rights,
5  Defendants selected TECHSHOP 2.0 and THESHOP in order to trade on TechShop's goodwill
6  and reputation.  Further, numerous parties informed Defendants that their names were confusingly
7  similar to TechShop's marks and that Defendants had no right to use the marks.  Still Defendants
8  persisted.  TechShop seeks damages in the form of lost licensing revenue that TechShop would
9  have charged for use of its marks and Defendants' profits.  In addition, TechShop seeks an
10  injunction.

11    **Defendants' Counterclaim:**

12    Defendants assert that the TECHSHOP trademarks are invalid and that TechShop
13  consented to Defendants' use of the names "TECHSHOP 2.0" and "THESHOP" to open a
14  makerspaces.  In addition, Defendants assert that TechShop entered into the MOU with no
15  intention to perform.  There is simply no evidence for that claim.  Indeed, it was Rasure's failure
16  to perform that led to the termination of the MOU.  No witnesses were ever identified in
17  Defendants' Initial Disclosures having any knowledge of fraud related claims and no damages
18  calculations provided.  Likewise, no expert report related to damages from alleged fraud was ever
19  provided by Defendants.  Moreover, Rasure's fraud allegation are belied by his own course of
20  conduct.  Rasure never sought return of funds paid while the MOU was in effect or thereafter.
21  Indeed, Rasure continued to negotiate with TechShop for months afterward.

22    In preparing the pretrial papers, TechShop understands that Defendants also intend to point
23  to transactions after cancellation of the MOU.  In particular, in January 2018, TechShop allowed
24  Mr. Rasure to purchase a tax lien related to TechShop equipment in Texas.  Having done so, Mr.
25  Rasure is now the owner of the lien.  How that could form the basis for a claim of fraud is
26  unknown.

27    ii.      **Defendants' Submission**

28

**Plaintiff's Infringement Claim.** Plaintiff's First Amended Complaint alleges that Defendants' use of the name TechShop 2.0 (including the TechShop2.com domain name and the Facebook group TechShop 2.0) infringes Plaintiff's registered TECHSHOP service marks.[2] The service marks at issue are word marks, and the registrant does not claim any particular font, style, size, or color. Defendants deny that that they used the claimed service marks without Plaintiff's consent or that any such use was willful. Plaintiff consented to Defendants' use of the term TechShop 2.0 and never told Defendants to stop using the name TechShop 2.0 until the filing of the Complaint. Defendants ceased using the name TechShop 2.0 as quickly as reasonably possible after Plaintiff filed suit. Due to Plaintiff's consent, Plaintiff cannot prove infringement. Plaintiff cannot prove any infringement is willful either because of Plaintiff's consent to Defendants' use of the name TechShop 2.0.

Almost immediately after TechShop abruptly closed its corporate offices and all 10 locations in the United States and announced plans to file for bankruptcy on November 15, 2017, Plaintiff and Defendant Dan Rasure entered into negotiations of a deal in which Mr. Rasure would acquire Plaintiff's assets. The parties signed a Memorandum of Understanding ("MOU") on December 1, 2017. The parties to the MOU were identified as TechShop (the Plaintiff) and TechShop 2.0, LLC (Mr. Rasure's newly formed company). After execution of the MOU, both parties publicly and repeatedly referred to Mr. Rasure's new business as TechShop 2.0. For example, on December 1, 2017, Plaintiff's CEO, Dan Woods, publicly announced that TechShop had entered into an MOU with "a group called TechShop 2.0 LLC." Although TechShop terminated the original MOU on December 12, 2017, it never told Mr. Rasure to stop using the name TechShop 2.0. The parties continued negotiations right up through the filing of the Complaint on February 16, 2018, and both parties continued to refer to Mr. Rasure's business as TechShop 2.0. At no time prior to the filing of the Complaint did Plaintiff object to Defendants'

---

[2] Plaintiff has since claimed that Defendants' new business name, TheShop.Build, is infringing. As set forth in Defendants' Motion in Limine No. 1, this theory of liability was not disclosed until after the close of fact discovery. Defendants moved for this theory to be precluded. (Dkt. 128.) Plaintiff did not articulate that it contended that "THESHOP" is infringing until providing Defendants with its portions of this Joint Pretrial Statement on April 16, 2019 (the day it was due).

08876-00001/10810459.1

1  use of the name TechShop 2.0.  Indeed, on January 31, 2018, just two weeks before the Complaint

2  was filed, Mr. Woods introduced Mr. Rasure's company to a third party as TechShop 2.0 when

3  Mr. Woods indicated that Mr. Rasure would pay Plaintiff's Texas back taxes.

4  　　　　Defendants also deny that Defendants used Plaintiff's TECHSHOP service marks in

5  commerce.  Mr. Rasure planned to open his first TechShop 2.0 location on February 19, 2018.  He

6  received a cease and desist letter from Plaintiff on February 16, 2018, the same day Plaintiff filed

7  the Complaint.  After the filing of the Complaint, Defendants took immediate steps to change the

8  name, including changing the sign on the building, the website, and the business' Facebook group.

9  Defendants never opened a business with the name TechShop 2.0, or any variation thereof.

10  Rather, the business opened under the name TheShop.Build on February 19, 2018.  Plaintiff did

11  not assert that TheShop.Build infringed the TECHSHOP service marks until November 23, 2018.

12  　　　　Defendants further deny that there is a likelihood of confusion between the word

13  TECHSHOP, on the one hand, and either of Defendants' names TechShop 2.0 or TheShop.Build,

14  on the other hand.  It was made clear to the makerspace community at all times by public releases

15  from Plaintiff and Mr. Rasure on and after December 1, 2017 that TheShop.Build and

16  TheShop.Build SF (and their predecessors) were owned and operated by Dan Rasure, a separate

17  entity from Plaintiff.  There was extensive media coverage and social media chatter over the

18  abrupt shut-down of all of TechShop's U.S. locations and no possibility that anyone was or would

19  be confused.  Moreover, because the TechShop locations in the U.S. and its corporate offices

20  closed on November 15, 2017, and Mr. Rasure did not open a location until February 19, 2018

21  (under the name TheShop.Build), neither party was providing a service using the service marks

22  during their negotiations.  Therefore, there was no opportunity for consumer confusion.  There

23  was no actual or likelihood of confusion with possible customers or as to the origin of service

24  because no service was provided by either party.  And, after Defendants opened their business as

25  TheShop.Build, there was no actual confusion.  Any purported claim of actual confusion is merely

26  former customers of Plaintiff asking Defendants if they will provide any deals to Plaintiff's former

27  customers.  Defendants did not intend to confuse consumers; they promptly changed the name of

28  the business as soon as Plaintiff objected.  Further, the degree of customer care and awareness in

1  this industry is very high; the potential customers were well aware of Plaintiff's abrupt closing,

2  and negotiations with Mr. Rasure.

3       Defendants also deny that the TECHSHOP service marks suffered diminution or loss of

4  value or goodwill due to any actions by Defendants.  TechShop itself severely devalued its mark

5  through mismanagement, closing its doors in the U.S. on November 15, 2017, without sufficient

6  notice to the public, preventing its customers from retrieving their belongings before shuttering its

7  locations, and failing to refund prepaid membership fees and loans received from its members and

8  shareholders to whom it had been marketing and selling one-year memberships and stock shortly

9  before closing its doors.  TechShop's actions created chaos and bitterness in the makerspace

10  community, as well as a feeling of distrust for anything related to the TECHSHOP brand.

11       The Defendants deny that the TECHSHOP marks are valid, and assert an affirmative

12  defense that TechShop does not have valid service marks for the word TECHSHOP.  The alleged

13  marks are invalid as being generic and, at best merely descriptive without any secondary meaning

14  for any of the classes for which they are claimed.  The word TECHSHOP is merely a compound

15  of the generic terms "tech" and "shop" used by Plaintiff such that the separate words retain their

16  generic significance when joined to form the compound that has a meaning identical to the

17  common usage one would ascribe to those words as a compound.  That is, the generic term

18  TECHSHOP is a shop with technical equipment.  At best, TECHSHOP is merely descriptive of

19  Plaintiff's business, but lacks secondary meaning.

20       The Defendants assert an affirmative defense that the service marks are not valid because

21  they were abandoned and permanently discontinued in the United States by Plaintiff.  The alleged

22  marks were abandoned when Plaintiff announced the closure of all of its U.S. locations and

23  corporate offices on November 15, 2017 and intention to file for bankruptcy, with no intention of

24  reopening under the TECHSHOP name.  TechShop representatives had indicated that the

25  company and the service marks were permanently discontinued in the United States.  In addition,

26  after the November 15, 2017 closing, Plaintiff failed to renew its U.S. service mark registrations

27  for TECHSHOP with the U.S. Patent and Trademark Office.

28

1   Defendants assert affirmative defenses of acquiescence, laches, and estoppel.  Plaintiff

2   consented to Defendants' use of the name TechShop 2.0, as set forth in detail above.  Defendants

3   reasonably relied to their detriment on Plaintiff's consent and incurred expenses preparing to open

4   a business under that name.  Fully aware of Defendants' reliance, Plaintiff unreasonably and

5   inexcusably delayed filing suit.  Similarly, Plaintiff consented to Defendants' use of the name

6   TheShop.Build by failing to object to it until November 23, 2018.  Defendants reasonably relied

7   on Plaintiff's failure to object and incurred expenses running a business under that name.

8   Defendants will present proof that Plaintiff's actions damaged Defendants' businesses, cost Mr.

9   Rasure his job, and threatened the health of his wife and newborn child.

10   Defendants assert an affirmative defense that the alleged service marks are invalid and

11   unenforceable because of Plaintiff's misuse of the ® symbol; it not only failed to properly mark

12   the service marks as registered, but instead Plaintiff improperly marked an unregistered logo —

13   which is not at issue in this case — as being registered rather than using the $^{SM}$ to indicate that the

14   logo was unregistered.[3]  Through this improper use of the ®, Plaintiff represented to the world that

15   it had federal registration rights that it did not have. Plaintiff misused the service marks by not

16   consistently or properly marking its use with the service mark or registration symbols and has

17   allowed its foreign operators to also do the same.  Plaintiff's misuse of the alleged TECHSHOP

18   mark also bars its recovery under the doctrine of unclean hands.

19   Defendants also deny that the Plaintiff is due all or any of the compensation it demands

20   because any damages must be offset by the monies that Mr. Rasure spent to support Plaintiff,

21   because granting damages to Plaintiff when it failed to mitigate any damages by objecting earlier

22   would unjustly enrich it, and because any damages would be speculative.  First, any damages

23   claimed by Plaintiff must be offset by the expenses paid by Mr. Rasure during negotiations as part

24   of Plaintiff's wind-down, and to keep it afloat for when Mr. Rasure acquired it.  Plaintiff

25   represented to Mr. Rasure that it was so financially unsound that it could not pay for its publicist,

26   its attorneys, its Google email and document services, its back taxes, or its employee's health

27

28   [3] Plaintiff's pleadings do not state that either the TechShop 2.0 logo or TheShop.Build logo  is
    infringing.  Further, Plaintiff does not have a registered trademark for its TechSh*p logo.

insurance.  Therefore, Mr. Rasure agreed to cover these expenses with the understanding that the deal would go forward and his payments would be deducted from the final price of the asset purchase.  But Plaintiff unilaterally ended the parties' MOU and then unilaterally ended negotiations, leaving Mr. Rasure personally holding the bill for over $45,000.  Such unreimbursed expenses that occurred during negotiations should be subtracted from any damages for alleged service mark use that also occurred during such negotiations.

Second, allowing damages compensation for a use that Plaintiff consented to and even promoted (in order to encourage the purchase of its assets) would unjustly enrich Plaintiff.  Mr. Rasure proceeded with the negotiation for TechShop assets in good faith and used the term TechShop 2.0 without complaint or objection from Plaintiff until he received a copy of the Complaint in this action.  Plaintiff repeatedly encouraged Mr. Rasure's use of the name TechShop 2.0 right up until the sudden filing of this lawsuit, when it ceased negotiations and decided that Defendants' use was infringement.  Plaintiff did nothing during that period to mitigate any claimed harm by simply objecting to Mr. Rasure's use of the name TechShop 2.0.  Instead, Plaintiff consented to use of the name TechShop 2.0 and then demanded damages.  Such a sudden change and demand for damages for previously permitted use shows a lack of good faith in the negotiations on behalf of Plaintiff and a failure by Plaintiff to protect its service marks.  Awarding any damages to Plaintiff for its about-face after allowing Mr. Rasure to rely on Plaintiff's consent would unjustly enrich Plaintiff at Defendants' expense.  The same is true with respect to Plaintiff's conduct as to Defendants' use of the name TheShop.Build.  Plaintiff did nothing to mitigate any claimed harm by simply objecting to Defendants' use of the name TheShop.Build.  Rather, Plaintiff failed to object and allowed Defendants to build a business under that name, including opening a second location (which has never been sued), and earn revenues under that name, and then suddenly claim that the name is infringing.  Awarding Plaintiff damages as to TheShop.Build would accordingly also unjustly enrich Plaintiff at Defendants' expense.

Finally, any claim of damages would be speculative, at best, because Plaintiff significantly devalued its brand through its poor management and outright fraud on its members, creditors and stockholders, both while it was open and in the process of closing, and damaged the brand so

-11-

1  badly that it could not sell or license the brand in the United States.  There is no evidence that the

2  federal registrations currently have any value.

3  **Defendants' Counterclaims.**  Defendants also filed counterclaims against Plaintiff.[4]

4  Defendants first request that Federal Trademark Registration No. 4,247,529 ("the '529

5  Mark") be cancelled as invalid for use with Classes 35 (business services) and 41 (educational

6  services) and, second, request that Federal Trademark Registration No. 4,294,110 ("the '110

7  Mark") be cancelled as invalid for use with Classes 40 (treatment of materials).  The '529 Mark

8  and '110 Mark are invalid as generic, and, at best, merely descriptive marks without any

9  secondary meaning for any of the classes for which they are claimed, and abandoned.  The service

10 marks are also invalid for misuse, and for Plaintiff's failure to maintain their registrations in the

11 U.S. Patent and Trademark Office.  The facts supporting this counterclaim are set forth in detail

12 above and not repeated here.

13 Mr. Rasure also asserts a counterclaim that Plaintiff defrauded him for more than $45,000

14 under California's Civ. Code §§1709, 1710, 1572 and/or 1573, 3294.  Beginning on November 17,

15 2017, Dan Rasure began negotiating with Plaintiff and its representatives, CEO Dan Woods and

16 founder and Chairman of the Board of Directors James Newton, to acquire Plaintiff's assets and

17 reopen shops in as many locations as feasible.  Plaintiff's outside Director Doug Busch was also

18 involved in the negotiations on behalf of Plaintiff.  Plaintiff, through its CEO and Board members,

19 convinced Mr. Rasure to provide urgently needed funds for Plaintiff's attorney fees, employee

20 medical insurance, public relations, taxes, and access to Plaintiff's email system and cloud storage.

21 These payments were initially provided in accordance with the December 1, 2017 MOU between

22 Mr. Rasure and Plaintiff to smooth the transition of ownership and based on the promise that these

23 payments would be credited to the final purchase payments.  This promise was a material and

24 substantial factor in Mr. Rasure's agreeing to pay Plaintiff's expenses.  At that time, because Mr.

25 Rasure had no reason to doubt such assurances, it was reasonable for him to believe and rely on

26 the truth of such agreements.  During negotiations, Dan Rasure paid, at least:

27 _____

28 [4] To avoid confusion, Counterclaimants are referred to herein as Defendants.

-12-                          CASE NO. 4:18-CV-01044-HSG

- $2,737.24, plus another and $5,949 to Google for Plaintiff's G-Suite account.

- $3,250.74 to Plaintiff's health insurers (Anthem Blue Cross) to cover Plaintiff's employee health insurance.

- $15,000 to Plaintiff's law firm, Tonkon Torp LLP.

- $1,100 on December 11, 2017, to Plaintiff's publicist although only previously agreeing to $250.

Plaintiff, however, had no intention of closing the deal and directly benefited from the payments made by Mr. Rasure under these false pretenses. Despite these payments made in good faith, Plaintiff unilaterally terminated the MOU. Plaintiff and its representatives pressured Mr. Rasure to pay Plaintiff's expenses and concealed the fact that the MOU would be terminated immediately thereafter.

Even after the MOU termination, Mr. Rasure continued to negotiate in good faith to close the deal while Plaintiff continued to pressure him to make additional payments to maintain Plaintiff with the understanding that a deal was still possible. On January 31, 2018, Dan Rasure paid $11,423.19 to the Williamson, Texas County Clerk for past due taxes on Plaintiff's Round Rock, Texas location. In addition, an unauthorized charge of $5,919.99 was made on Mr. Rasure's credit card for Plaintiff's G-Suite Account. Two weeks after these additional payments, Plaintiff abruptly ended negotiations by filing the present lawsuit.

Plaintiff's repeated failure to provide the necessary diligence documents during the parties' negotiations demonstrates that Plaintiff and its agents had no intention of following through on their promises or closing the deal. Unknown to Mr. Rasure, Plaintiff and its agents had set forth false representations and were not negotiating in good faith. Plaintiff and its agents each knew their and the other's representations to be false and misleading when made and did not intend to complete the deal or provide the necessary documents. The actions performed by Plaintiff and its agents were performed to induce Mr. Rasure to sign the MOU and to pay the monies as described above to cover Plaintiff's debts and keep it afloat. Furthermore, the actions of Plaintiff and its agents prompted Mr. Rasure to give Plaintiff and its agents access to Mr. Rasure's credit card

1  information, allowing Plaintiff to continue to pay its Google account on his credit card without
2  authorization.

3       The representations, concealment, and promises made by Plaintiff and its agents were
4  material and Mr. Rasure reasonably relied upon them to his detriment.  But for the representations,
5  concealment and promises by Plaintiff and its agents, Mr. Rasure would not have made the
6  monetary payments to cover Plaintiff's urgent debts or provided his credit card information to
7  Google.  The representations, concealments, and promises by Plaintiff and its agents were
8  performed with willful and intentional malice, oppression and/or fraud, resulted in and are a direct
9  and proximate cause injury to Dan Rasure of at least $45,000.  At the time of the representations,
10 concealment, and promises Newton, Busch, and Woods were each acting as an officer, director, or
11 managing agent of Plaintiff.

12      **C.      Relief Requested.**

13      **Relief Sought by Plaintiff:**

14      TechShop seeks a judgment in its favor and against Defendants.  TechShop seeks an award
15 of damages in the form of lost licensing revenue and Defendants' profits.  In addition, TechShop
16 seeks a finding that Defendants' infringement was willful.  TechShop further seeks a finding that
17 this case is exceptional and trebling of the damages award and TechShop's attorney's fees.
18 TechShop further seeks an injunction against Defendants barring further infringement and any
19 other relief as the Court deems just and proper.

20      With respect to Defendants' counterclaims, TechShop seeks a judgment that Defendants
21 take nothing.

22      **Relief Sought by Defendants:**
23
    Defendants and Counterclaimants seek a judgment in their favor and against Plaintiff
24
   TechShop Inc. and the Trustee.
25
    On Plaintiff's claims, Defendants seek (1) a judgment that the Plaintiff take nothing by its
26
   complaint; (2) a judgment declaring that Plaintiff's federal service mark registrations for the word
27
   TECHSHOP are invalid and should be cancelled; and (3) an order directing the United States
28

Patent and Trademark Office to cancel Service Mark Registration Nos. 4,247,529 and 4,294,110. Defendants seek an award of their costs and reasonable attorneys' fees incurred in this case in connection with defending this action, which was instigated for anti-competitive reasons, rather than based on any valid service mark infringement, and in prosecution of its counterclaims. Defendants will prove that this is an "exceptional" case under 15 U.S.C. § 1117(a) and hence is entitled to its attorneys' fees. Defendants also seek such other and further relief as the Court deems just and proper.

On Defendants' counterclaims, Defendants request that the Court (1) issue an order directing the United States Patent & Trademark Office to cancel Service Mark Registration Nos. 4,247,529 and 4,294,110; (2) that Mr. Rasure be awarded general, special, and punitive damages in the amounts of the expenses Mr. Rasure paid on Plaintiff's behalf, plus interest at the legal rate from the date of payment of each amount, and that non-punitive damages be trebled; (3) that Defendants be awarded their costs and reasonable attorneys' fees and punitive damages; and (4) any such other relief the Court deems just and proper.

**D.      Undisputed Facts.**

Below are relevant facts to which the parties are willing to stipulate for incorporation into the trial record without supporting testimony or exhibits.

1) On February 26, 2018, TechShop Inc. filed a petition for bankruptcy under Chapter 7 in the United States Bankruptcy Court for the Northern District of California, in Case No. 18-50398.

2) This litigation is being pursued by Doris A. Kaelin, in her capacity as the bankruptcy Trustee appointed for the TechShop bankruptcy case.

3) Defendant and Counterclaimant Dan Rasure is an individual and resident of the State of Kansas.

4) On November 20, 2012, the USPTO issued Certification of Registration No. 4,247,529 for the service mark "TECHSHOP" on the principal register in Class 35 (business services) and Class 41 (educational services) ("'529 Mark").

5) The '529 Mark is a contestable mark.

6) The '529 Mark is a word mark without claim to any particular font, style, size, or color.

7) On February 26, 2013, the United States Patent and Trademark Office issued Certification of Registration No. 4,294,110 for the service mark "TECHSHOP" on the principal register in Class 40 (treatment of materials) (hereinafter the " '110 Mark").

8) The '110 Mark is a contestable mark.

9) The '110 Mark is a word mark without claim to any particular font, style, size, or color.

10) TechShop Inc. filed the present litigation on February 16, 2018.

**E.      Disputed Factual Issues.**

The parties continue to dispute the following issues:

Plaintiff's Statement:

In view of the fact that new counsel appears to dispute nearly *every* fact in the case, TechShop does not know which facts will actually be subject to dispute at this point and instead recites only such facts as may be reasonably disputed."

1.   Whether TechShop is the owner of the trademarks.

2.   Whether Defendants had actual or statutory notice of TechShop's marks.

3.   Whether there is a likelihood of confusion between TechShop's trademarks and the terms used by Defendants.

4.   Whether Defendants' uses were authorized.

5.   Whether the trademarks are invalid.

6.   How much TechShop was damaged by Defendants' use.

7.   Whether Defendants' infringement was willful.

8.   Whether TechShop abandoned the trademarks.

JOINT PRETRIAL STATEMENT AND PROPOSED ORDER

With regard to Defendants' fraud claims, TechShop does not believe that they should be presented.  In the event that they are, facts that are disputed include:

1.  Whether TechShop made a promise it did not intend to perform at the time it made the promise.

2.  Whether TechShop performed its promise.

3.  How much, if at all, Rasure was damaged.

Defendants' Statement:

Defendants note that many of the Disputed Facts listed below should be undisputed, but Plaintiff has not agreed.  For example, Plaintiff would not agree that it is undisputed that Mr. Woods was Plaintiff's CEO.  Nor would Plaintiff agree to details regarding the parties' execution of a Memorandum of Understanding.  And Plaintiff did not make counter-proposals on the wording of facts that Defendants proposed were Undisputed.  Defendants are willing to continue to confer with Plaintiff to see if the parties can agree to stipulate to additional facts.

1.  Whether named Defendant and Counterclaimant TechShop 2.0, LLC was a limited liability company duly organized and existing under the laws of the State of Kansas.

2.  Whether named Defendant and Counterclaimant TechShop 2.0 LLC's name was changed to TheShop Dot Build LLC, which is a limited liability company duly organized and existing under the laws of the State of Kansas.

3.  Whether named Defendant and Counterclaimant TechShop 2.0 San Francisco, LLC was a limited liability company duly organized and existing under the laws of the State of Kansas.

4.  Whether Named Defendant and Counterclaimant TechShop 2.0 San Francisco, LLC's name was changed to TheShop Dot Build San Fran LLC, which is a limited liability company duly organized and existing under the laws of the State of Kansas.

JOINT PRETRIAL STATEMENT AND PROPOSED ORDER

5.  Whether Plaintiff and Counterdefendant TechShop, Inc. is a California corporation with its principal place of business formerly at 300 2nd Street, San Jose, CA 95113 and now at 274 Redwood Shores Parkway, Box 275, Redwood City, CA 94065.

6.  Whether Plaintiff and Counterdefendant TechShop Inc. was incorporated in California on or about January 23, 2009, through the conversion of TechShop LLC.

7.  Whether Plaintiff consented to Defendants' use of the name TechShop 2.0, and variations thereof, until February 16, 2018, when this case was filed.

8.  Whether Defendants used the name TechShop 2.0 in commerce prior to February 16, 2018.

9.  Whether Defendants took all reasonable steps not to use the name TechShop 2.0 after this lawsuit was filed on February 16, 2018.

10. Whether there is a likelihood of confusion between TechShop 2.0 and the "TECHSHOP" marks.

11. Whether there is a likelihood of confusion between TheShop.Build and the "TECHSHOP" marks.

12. Whether Defendants ever opened a makerspace facility called "TechShop 2.0" or "TechShop 2.0 San Francisco" at TechShop Inc.'s previously abandoned location.

13. Whether Defendants intentionally infringed the "TECHSHOP" marks by using the name TechShop 2.0.

14. Whether Defendants intentionally infringed the "TECHSHOP" marks by using the name TheShop.Build.

15. Whether Defendants knew their use of the name TechShop 2.0 was an infringement of the "TECHSHOP" marks.

16. Whether Defendants knew their use of the name TheShop.Build was an infringement of the "TECHSHOP" marks.

17. Whether Plaintiff's original application for the use of the "TECHSHOP" mark (Application 77,164,217) was rejected by the United States Patent and Trademark Office as merely descriptive and abandoned by Plaintiff.

08876-00001/10810459.1

18. Whether TechShop Inc. again filed for a "Service Mark" application for federal registration of the word "TECHSHOP" in Classes 35 (business services) and 41 (educational services)"TECHSHOP" service mark in 2010.

19. Whether the word "TECHSHOP" is generic.

20. Whether the word "TECHSHOP" is merely descriptive.

21. Whether the word "TECHSHOP" has secondary meaning.

22. Whether Plaintiff properly maintained the "TECHSHOP" service marks.

23. Whether Plaintiff properly marked "TECHSHOP" as a service mark.

24. Whether Plaintiff improperly marked unregistered marks as registered.

25. Whether Plaintiff improperly marked unregistered logos as registered.

26. Whether Plaintiff maintained its mark by filing a Declaration of Use of Mark in Commerce Under Section 8 for the '529 Mark.

27. Whether Plaintiff maintained its mark by filing a Declaration of Use of Mark in Commerce Under Section 8 for the '110 Mark.

28. Whether TechShop Inc. publicly announced that it was closing all ten of its U.S. locations and its corporate offices and stopped providing services at all of those locations on November 15, 2017.

29. Whether TechShop Inc. stopped using the "TECHSHOP" mark as a service mark in the United States on November 15, 2017.

30. Whether TechShop Inc. intended to use the "TECHSHOP" mark as a service mark in the United States after November 15, 2017.

31. Whether TechShop Inc. has used the "TECHSHOP" mark in commerce as a service mark in the United States since November 15, 2017.

32. Whether Plaintiff abandoned the "TECHSHOP" service marks.

33. Whether Plaintiff and/or its representatives were aware of Defendant's use of the name "TechShop 2.0" on or around the time that its CEO, Dan Woods, signed the Memorandum of Understanding on December 1, 2017, as reflected in its December 1, 2017, announcements of the Memorandum of Understanding.

34. Whether Plaintiff and/or its representatives were aware of Defendant's use of the name "TechShop 2.0" after December 1, 2017, during negotiations for Dan Rasure to acquire Plaintiff's assets.

35. Whether  TechShop Inc.'s CEO provided approval to the Williamson, Texas County Clerk for Mr. Rasure, whom he identified as owner of TechShop 2.0, to pay TechShop Inc.'s past due taxes.

36. Whether Plaintiff failed to object to Defendants' use of the name TechShop 2.0, and variations thereof, prior to February 16, 2018.

37. Whether, prior to February 16, 2018, it was reasonable for Defendants to conclude from the actions of Plaintiff's representatives that they could use the name TechShop 2.0.

38. Whether Defendants relied upon Plaintiff's consent and failure to object to the use of the name TechShop 2.0, and variations thereof.

39. Whether Defendants have been prejudiced by Plaintiff's consent to use the name TechShop 2.0.

40. Whether Plaintiff failed to object to the name TheShop.Build, or variations thereof, prior to November 23, 2018.

41. Whether it was reasonable for Defendants to conclude from the actions of Plaintiff that they could use the name TheShop.Build, or variations thereof.

42. Whether Defendants relied upon Plaintiff's failure to object to the use of the name TheShop.Build, or variations thereof.

43. Whether Defendants have been prejudiced by Plaintiff's failure to object to the use of the name TheShop.Build, or variations thereof.

44. Whether Defendants relied upon any delay by Plaintiff to assert its alleged rights in the "TECHSHOP" marks.

45. Whether TheShop.Build was prejudiced by any delay by Plaintiff to assert its alleged rights in the "TECHSHOP" marks.

46. Whether Plaintiff failed to pay employees and instructors on time in 2015 and undermined the value of the "TECHSHOP" marks.

47. Whether Plaintiff failed to pay employees and instructors on time in 2016 and undermined the value of the "TECHSHOP" marks.

48. Whether Plaintiff failed to pay employees and instructors on time in 2017 and undermined the value of the "TECHSHOP" marks.

49. Whether Plaintiff's sudden closure on November 15, 2017 undermined the value of the "TECHSHOP" marks.

50. Whether Plaintiff's inability to honor monthly, yearly, and lifetime memberships purchased by its customers undermined the value of the "TECHSHOP" marks.

51. Whether Plaintiff's continued possession of customer property after closing its doors in the U.S. on November 15, 2017, undermined the value of the "TECHSHOP" marks.

52. Whether the "TECHSHOP" marks had any value after TechShop closed its locations in the U.S. on November 15, 2017.

53. Whether any alleged use of the "TECHSHOP" marks by Defendants resulted in any diminution of the mark.

54. Whether Plaintiff actually lost any licensing revenue as a result of Defendants' alleged infringement of the "TECHSHOP" marks.

55. Whether Plaintiff failed to mitigate any alleged damages suffered as a result of Defendants' alleged infringement of the "TECHSHOP" marks.

56. Whether Plaintiff is entitled to Defendants' profits, if any, from the alleged infringement of the "TECHSHOP" marks.

57. Whether Plaintiff's actions entitle Mr. Rasure to recovery of his out-of-pocket costs expended during negotiations with Plaintiff.

58. Whether Dan Rasure negotiated with TechShop Inc. in good faith to acquire certain assets of the company after TechShop Inc. announced closure of TechShop's U.S. locations and corporate offices.

08876-00001/10810459.1

59. Whether the expenses Mr. Rasure paid during the negotiations with Plaintiff offset the damages claimed by Plaintiff.

60. Whether the registration for the '529 Mark should be cancelled.

61. Whether the registration for the '110 Mark should be cancelled.

62. Whether James Newton was a founder, officer, and director of TechShop Inc. and was Chairman of its Board of Directors of TechShop Inc. during the period from November 15, 2017 through February 26, 2018.

63. Whether Daniel Woods was a director and the Chief Executive Officer of TechShop Inc. during the period from November 15, 2017 through February 26, 2018.

64. Whether Doug Busch was a member of the Board of Directors of TechShop Inc. during the period from November 15, 2017 through February 26, 2018.

65. Whether Plaintiff or its agents, James Woods, Daniel Woods, and/or Doug Busch made false and/or misleading representations to Mr. Rasure while negotiating his acquisition of Plaintiff's assets.

66. Whether Plaintiff or its agents requested that Mr. Rasure pay Plaintiff's expenses with the promise that the expenditures would be credited at the closing of the deal, while knowing that the Memorandum of Understanding between the parties would be terminated.

67. Whether Plaintiff requested that Mr. Rasure pay Plaintiff's expenses while knowing that the deal with Mr. Rasure to purchase Plaintiff's assets would not be finalized.

68. Whether any false and/or misleading representations made by Plaintiff or its agents to Mr. Rasure were made to induce him to pay Plaintiff's expenses.

69. Whether any false and/or misleading representations, concealments, and promises by Plaintiff or its agents were performed with willful and intentional malice, oppression and/or fraud.

70. Whether Mr. Rasure paid monies at the request of Plaintiff and/or its agents that were never reimbursed to cover Plaintiff's obligations including:

- Payments of $2,737.24, $5,949, and $5,919.99 charged to Mr. Rasure's credit card to Google for TechShop Inc.'s G-Suite account.

- $3,250.74 to TechShop Inc.'s health insurers (Anthem Blue Cross) to cover TechShop's employee health insurance (which would have included Plaintiff's officers and directors Newton and Woods).

- $15,000 to TechShop Inc.'s law firm, Tonkon Torp LLP.

- $1,100 on December 11, 2017, to TechShop Inc.'s publicist although only previously agreeing to $250.

- $11,423.19 on January 31, 2018, to the Williamson, Texas County Clerk for past due taxes on TechShop Inc.'s Round Rock, Texas location

71. Whether the representations, concealments, and promises made by Plaintiff or its agents were a substantive and material factor in Mr. Rasure's decision to pay the monies to cover Plaintiff's expenses and the harm suffered by Mr. Rasure.

72. Whether Mr. Rasure paid Plaintiff's obligations in reasonable reliance on the promises made by Plaintiff or its agents and would not have paid Plaintiff's expenses if not for the promises.

73. Whether Plaintiff or its agents knew that the Mr. Rasure would be charged for Plaintiff's G-Suite Account in January of 2018 although he had not authorized the payment.

74. Whether Plaintiff negotiated with Mr. Rasure in good faith for the purchase of Plaintiff's assets.

75. Whether any false and/or misleading representations, concealments, and promises by Plaintiff were a direct and proximate cause injury to Mr. Rasure.

76. Whether Mr. Rasure opened a TheShop.Build location in San Jose in August 2018.

77. Whether the name TechShop 2.0 was ever used in connection with the San Jose location of Mr. Rasure's business.

78. Whither Plaintiff ever sued the business entity that operates TheShop.Build in San Jose.

08876-00001/10810459.                                    JOINT PRETRIAL STATEMENT AND PROPOSED ORDER

**F.     Agreed Statement.**

The parties do not believe that all or part of the action may be presented upon an agreed statement of facts.

**G.     Stipulations.**

The parties stipulated that neither of the TECHSHOP service marks at issue are incontestable.

**H.     Witnesses to be Called.**

Plaintiff's Trial Witness List is attached as Exhibit A.

Defendants' Trial Witness List is attached as Exhibit B.

**I.     Exhibits, Schedules, and Summaries.**

Plaintiff's Trial Exhibit List, which includes Defendants' objections to Plaintiff's trial exhibits, is attached as Exhibit C.

Defendants' Trial Exhibit List, which includes Plaintiff's objections to Defendants' trial exhibits, is attached as Exhibit C.

The parties will continue to meet and confer to resolve disputes regarding objections to exhibits.

**J.     Disputed Legal Issues.**

    1.   Whether Defendants' are required to prove abandonment by clear and convincing evidence.

Plaintiff's Statement:  While no Ninth Circuit case has addressed it, as set forth in the comments to the Model Jury Instructions, "Scholars note that except for the Federal Circuit, 'all' courts follow a clear and convincing standard of proof of abandonment. See 3 J. THOMAS MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 17:12 (4th ed. 2015); see also Anthony L. Fletcher and David J. Kera, Annual Review, 85 TRADEMARK REP. 607, 724-25 (1995)."

Defendants' Statement: While the Ninth Circuit remains split, some justices have concluded that the determination of abandonment only requires a preponderance of the

evidence. *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 953–54 (9th Cir. 2007). The Federal Circuit agrees, as does the United States Patent and Trademark Office, which bears the responsibility for reviewing and granting trademark registrations. *See On-Line Careline Inc. v. America Online Inc.*, 229 F.3d 1080, 56 USPQ2d 1471, 1476 (Fed. Cir. 2000)("Since service mark registrations are presumed valid, the party seeking cancellation of such registration must rebut this presumption by a preponderance of the evidence."); *Yazhong Investing Ltd. v Multi-Media Tech. Ventures, Ltd*, 126 U.S.P.Q.2D 1526, 2018 WL 2113778 AT *6 (TTAB 2018). When in doubt, this Court should follow the lead of the agency charged with managing trademarks like that in question here.

2. Defendants' defense of acquiescence. If required following the jury's verdict, Defendants submit this as an equitable defense to be decided by the Court.

3. Defendants' defense of unclean hands. If required following the jury's verdict, Defendants submit this as an equitable defense to be decided by the Court.

4. Defendants' defense of estoppel. If required following the jury's verdict, Defendants submit this as an equitable defense to be decided by the Court.

5. Defendants' defense of laches. If required following the jury's verdict, Defendants submit this as an equitable defense to be decided by the Court

6. Whether awarding Plaintiff damages would amount to unjust enrichment. If required following the jury's verdict, Defendants submit this as an equitable defense to be decided by the Court.

7. Defendants' counterclaim for cancellation of the '529 Mark. Defendants submit this as a legal claim to be decided by the Court.

8. Defendants' counterclaim for cancellation of the '110 Mark. Defendants submit this as a legal claim to be decided by the Court.

9. Whether Plaintiff is entitled to injunctive relief.

**K.      Pending Motions or Matters.**

1. Plaintiff's *Daubert* Motion to Exclude Testimony from Jeremiah Johnson and Mark Bunger

2. Plaintiff's Motion in Limine #1, Re: Documents Not Produced/Witnesses Disclosed During Discovery

3. Plaintiff's Motion in Limine #2, Re: Defendants' Fraud Allegations

4. Plaintiff's Motion in Limine #3, Re: Maker Nexus

5. Plaintiff's Motion in Limine #4, Re: Defendants' Health/Family Condition

6. Defendants' *Daubert* Motion to Exclude the Testimony of Plaintiff's Economic Expert Eric Matolo

7. Motion in Limine #1: Plaintiff's New Claim That "TheShop.Build" Infringes Plaintiff's "Techshop" Service Marks, First Disclosed After Fact Discovery Closed to exclude Plaintiff's new theory of trademark infringement provided after the close of fact discovery.

8. Motion in Limine #2: Re: Excluding Plaintiff from Seeking Double Recovery by seeking damages of lost licensing revenue <u>and</u> Defendants' profits.

9. Motion in Limine #3: Re: Precluding Plaintiff and Witnesses from Referring to TheShop.Build as Techshop 2.0 to prevent Plaintiff from referring to the Defendants as "TechShop 2.0," "TechShop 2.0 San Francisco" or variations thereof.

10. Motion in Limine #4: Re: Excluding Evidence and Argument Regarding Discovery Conduct to exclude any references to discovery sanctions against Defendants.

**L.      Bifurcation or Separate Trial of Issues.**

The parties do not believe that bifurcation is necessary.  However, as reflected above, if required following a jury verdict, there are certain equitable defenses to be decided by the Court.

**M.      Use of Discovery Responses.**

The parties do not designate any discovery responses to use at trial, other than for impeachment.

**N.      Estimate of Trial Time.**

08876-00001/10810459.1

Based on the number of expected witnesses, the scope of their testimony, and the number of expected exhibits, the parties estimate that the trial will require 8 days.

## O.    Settlement Discussion.

The parties have explored settlement in the following manner:  (1) early in the case, on July 3, 2018, the parties submitted joint letter briefs regarding the availability of certain types of damages, but the process did not lead to settlement discussions; (2) the parties exchanged settlement offers and responses between October 25, 2018 and November 21, 2018, but were very far apart; and (3) the parties participated in a Settlement Conference before the Honorable Joseph C. Spero on November 28, 2018, but the case did not settle.  The parties do not currently believe that further negotiations are likely to be productive.

## P.    Miscellaneous.

Plaintiffs' Statement:

Supplementation of Defendants' Discovery:  Since April 2, 2018, Defendants have refused to supplement their production of financial records reflecting revenues since September 2018. Pursuant to FED.R.CIV.P. 26(e), Defendants are required to do this but have refused to in a form of self-help.  Apparently, Defendants believe that they can control the evidence presented to the jury by simple violation of their discovery obligations.  Defendants should be required to supplement financial records reflecting revenues since September 2018.  On the evening of April 16, 2018, Defendants offered to supplement their production and TechShop will continue to meet and confer on this matter.

Defendants New Fraud Related Witnesses and Damages:  Defendants' fraud related claims are the source of numerous discovery and pleading issues.  Particularly relevant at this time are Defendants' new witnesses and alleged damages related to fraud.  Pursuant to FED.R.CIV.P. 26(a)(1)(A)(i), Defendants were required to provide Initial Disclosures identifying witnesses and the subjects they are likely to have information on that they may use to support their claims or defenses.  Defendants never provided a disclosure of any witness having any information related to alleged fraud in their Initial Disclosures.  Likewise, FED.R.CIV.P. 26(a)(1)(A)(iii), Defendants were required to provide Initial Disclosures of a computation of damages.  Again, Defendants did

1   not do that.  Further, no expert report or disclosure of any kind related to fraud damages has ever

2   been provided.  Indeed, the service of a draft of this Pretrial Statement on Monday, April 15, 2019

3   was the first Plaintiff knew of Defendants' fraud related damages claims.  Pursuant to

4   FED.R.CIV.P. 37(c), because Defendants' failure to comply with their discovery obligations was

5   not substantially justified or harmless, all fraud related evidence not disclosed in Defendants'

6   Initial Disclosures should be excluded.

7           Defendants' Statement:

8           Defendants have informed Plaintiff that they intend to supplement their financial

9   production.  On April 16, Plaintiff asked that Defendants produce financial information up to two-

10  weeks prior to trial.  Defendants are willing to meet and confer with Plaintiff on the timing that the

11  supplementation will cover.

12          <u>Plaintiff's Changing Infringement Theory</u>: As set forth in Defendants' Motion in Limine

13  No. 1, Plaintiff did not disclose that it contends that "TheShop.Build" is infringing until after the

14  close of fact discovery.  (Dkt. 128.)  In its portions of this Joint Pretrial Statement, Plaintiff now

15  claims that it contends "THESHOP" is infringing.  This was not disclosed by Plaintiff during

16  discovery, or in the interrogatory response at issue in Defendants' Motion in Limine No. 1.  (*Id.*)

17  As Plaintiff did not disclose this latest theory before the deadline to file motions in limine,

18  Defendants' Motion in Limine No. 1 does not address "THESHOP."  But, Defendants object to

19  Plaintiff pursuing an infringement theory based on that name as well for the reasons set forth in

20  Defendants' Motion in Limine No. 1.

21          <u>Supplementation of Financial Documentation:</u>  Defendants intend to supplement their

22  financial documentation as requested by Plaintiff.

23

24          *The foregoing admissions having been made by the parties, and the parties having*
        *specified the foregoing issues of fact and law remaining to be litigated, this order shall*

25      *supplement the pleadings and govern the course of trial of this case, unless modified by the*
        *Court to prevent manifest injustice.*

26

27

28

1  DATED:  April 16, 2019

2

3
   By /s/ James C. Pistorino                    By _____ /s/ Andrea Pallios Roberts _____
4  James C. Pistorino (Bar No. 226496)          Ann McFarland Draper (Bar No. 065669)
   james@dparrishlaw.com                        courts@draperlaw.net
5  Parrish Law Offices                          Draper Law Offices
   224 Lexington Dr.                            75 Broadway, Suite 202
6  Menlo Park, CA  94025                        San Francisco, California 94111
   Telephone: (650) 400-0043                    Telephone: (415) 989-5620
7
   Attorneys for Plaintiff and Counterdefendants   QUINN EMANUEL URQUHART &
8                                                SULLIVAN, LLP
                                                Kevin P.B. Johnson (Bar No. 177129)
9                                               kevinjohnson@quinnemanuel.com
                                                Andrea Pallios Roberts (Bar No. 228128)
10                                              andreaproberts@quinnemanuel.com
                                                555 Twin Dolphin Drive, 5th Floor
11                                              Redwood Shores, California 94065-2139
                                                Telephone:    (650) 801-5000
12                                              Facsimile:    (650) 801-5100

13                                              Ed DeFranco (Bar No. 165596)
                                                eddefranco@quinnemanuel.com
14                                              51 Madison Avenue, 22nd Floor
                                                New York, NY 10010
15                                              Telephone:    (212) 849-7000
                                                Facsimile:    (212) 849-7100
16
                                                John E. Nathan (Pro Hac Vice)
17                                              jnathan155@yahoo.com
                                                John E. Nathan LLC
18                                              1175 Park Avenue
                                                New York, NY 10128
19                                              Telephone:    (917) 960-1667

20                                              Attorneys for Defendants and Counterclaimants

21

22

23

24                         **SIGNATURE ATTESTATION**

25        Pursuant to Civil Local Rule 5-1(i)(3), I attest under penalty of perjury that concurrence in

26  the filing of this document has been obtained from Andrea Pallios Roberts.

27
                                          /s/ James C. Pistorino
28                                        James C. Pistorino

                                                -29-                CASE NO. 4:18-CV-01044-HSG

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

08876-00001/10810459.1