# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Doris A. Kaelin, in her capacity as Chapter 7 trustee for TechShop, Inc. a California corporation<br><br>      Plaintiff,<br><br>              v.<br><br>Dan Rasure, an individual residing in Kansas, Techshop 2.0 LLC, a Kansas limited liability corporation, TechShop 2.0 San Francisco LLC, a Kansas limited liability corporation,<br><br>      Defendants. | Case No. 4:18-cv-01044 |

## **EXPERT REPORT OF ERIC MATOLO, PH.D.**

CONFIDENTIAL – ATTORNEYS' EYES ONLY

Doris A. Kaelin, in her capacity as Ch. 7 trustee for TechShop, Inc. v. Dan Rasure, et al.

## Assignment:

I have been retained by counsel for the Plaintiff, Doris A. Kaelin in her capacity as the Chapter 7 trustee for TechShop, Inc. (hereinafter, "TechShop"/Plaintiff), to provide expert analysis and, if necessary, expert testimony in the above listed matter pending in the United States District Court for the Northern District of California, under Case No. 4:18-cv-01044.  I understand that the Defendants are Mr. Dan Rasure, TechShop 2.0 LLC, and TechShop 2.0 San Francisco LLC (hereinafter, "Rasure"/Defendants).  Plaintiff has accused Defendants of unauthorized use of Plaintiff's intellectual property (i.e., the TECHSHOP trademark) as part of Defendants' promotion, sales, and offering for sale of certain maker space membership and class offerings.  I have been asked to provide my own opinions regarding the proper amount of damages sustained by the Plaintiff in this matter.  My analysis was conducted through an evaluation of evidence relevant to the facts of the case available at the time of submitting this report.[1]

For the purpose of the analysis in this case, it is my understanding and assumption that the intellectual property at issue is valid, enforceable, and misappropriated by Defendants.  More broadly, the analysis set forth in this report is performed under the assumption of established liability based on the allegations in the case.  I have not been asked for an opinion on validity, enforceability, or infringement.

## Qualifications:

I am a Vice President at Nathan Associates Inc., an economics consulting firm that provides economic, financial, and statistical research and analysis to private and public sector clients in the United States and abroad.  I hold a Ph.D. and an M.A. in economics from the University of California at Santa Barbara, and a B.A. in economics/mathematics from the University of California at Santa Barbara.  I have been actively employed in the area of economic analysis and/or economic instruction for over 10 years.  I am a member of multiple professional associations, including the American Bar Association, American Economic Association, Licensing Executives Society, Los Angeles Intellectual Property Law Association, and the Orange County Intellectual Property Law Association.  I have taught economics at the University of Southern California and have served as a referee for the *International Journal of the Economics of Business*.

I have conducted economic analyses for a variety of situations, including anticompetitive conspiracy, contracts disputes, economic and fiscal impacts, intellectual property (e.g., patents, trademarks, trade dress, trade secrets, false advertising, and/or copyrights), and labor disputes.  This experience includes analyses of lost profits, reasonable royalties, and unjust enrichment.  I have provided expert analysis for projects in the context of litigation as well as projects involving business matters outside of litigation.  For litigation matters, I have provided expert analysis for both plaintiffs and defendants.  My *curriculum vitae* is attached to this report as

---

[1] I understand discovery is ongoing in this case.  If additional relevant information becomes available, I may update my analysis and opinions appropriately.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

Doris A. Kaelin, in her capacity as Ch. 7 trustee for TechShop, Inc. v. Dan Rasure, et al.

Exhibit A and includes a list of matters in which I have testified at deposition and/or trial in the last 4 years and all publications that I have authored within the preceding 10 years.

For time spent in connection with this litigation, Nathan Associates is compensated at my usual and customary rate of $415 per hour.  The amount of Nathan Associate's professional fees in this matter is not contingent on the results in this case or any other issue.

**Background Regarding Available Damages:**

For the purposes of this opinion, I have been instructed to assume that the defendants are liable for infringement of the marks at issue.  Further, I have been instructed to apply the following legal principles in forming my opinions.

In a trademark case, damages are provided by 15 U.S.C. § 1117.  Paragraph (a) of that statute provides, *inter alia*:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.

Thus, *inter alia*, the statute provides for damages in the form of: 1) defendant's profits; and 2) any damages sustained by the plaintiff.

With respect to damages in the form of defendant's profits, the plaintiff need only prove defendant's sales and defendants must prove any offsets.  With respect to "any damages sustained by the plaintiff", one form of such damages is lost licensing revenue.[2]  As discussed below, plaintiff has an established licensing history, thus supporting modeling damages in the form of lost licensing revenue.

---

[2] *See, e.g., QS Wholesale, Inc. v. World Marketing, Inc.*, 2013 WL 1953719 (C.D. Cal., May 9, 2013); *Shakey's USA, Inc. v. Tutto's Pizza Corp.*, 2009 WL 3211027 (E.D. Cal., Sept. 30, 2009) (5% licensing rate); *addidas America, Inc. v. Payless Shoesource, Inc.*, 2008 WL 4279812 (D. Or., Sept. 12, 2008) ($30 million reasonable royalty); *ADT & ADT US Holdings, Inc. v. Alarm Protection LLC*, 2017 WL 2212541 (S.D. Fla. May 17, 2017); *Sands, Taylor, & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1344-45 (7th Cir. 1994) (affirming $10 million royalty rate based on hypothetical royalty); *Sands, Taylor, & Wood v. Quaker Oats Co.*, 1995 WL 221871 (N.D. Ill., April 12, 1995) (doubling royalty to $20 million to make "infringement sufficiently unprofitable.").

CONFIDENTIAL – ATTORNEYS' EYES ONLY

Doris A. Kaelin, in her capacity as Ch. 7 trustee for TechShop, Inc. v. Dan Rasure, et al.

The next section is a discussion of the facts and data considered, followed by an analysis of such information and determination of damages.

**Facts/Data Considered:**

Attached, as Exhibit B, is a listing of the written materials I considered in forming my opinions (in addition to the materials directly cited herein).  To the extent I considered materials not already produced in this case, those materials are available on request.  In addition to written materials, I also interviewed former TechShop directors Mssrs. Doug Busch, James Newton, and Daniel Woods.

Based on the foregoing, it is my understanding that TechShop was founded in 2006 by James Newton and exclusively used the name through the present time.  By late 2017, TechShop had 10 locations in the United States with more than 9,000 members,[3] as well as several locations operated by licensees outside the United States.  See Exhibit C (Wayback Machine capture of TechShop webpage from November 1, 2017).

During this period, TechShop heavily promoted its name and brand both inside and outside the United States.  TechShop did this by speaking at well-attended tradeshows and events (e.g., MakerFaire) inside the United States and abroad (e.g., South Korea, United Kingdom, France, etc.).  In addition, TechShop was the subject of numerous articles in newspapers and magazines. I have reviewed exemplars of these publications in the form of articles/mentions appearing in magazines such as Make, Forbes, Inc., Wired, and Popular Mechanics, The Atlantic,[4] newspapers such as the Wall Street Journal and San Jose Mercury News, and online publications such as Business Insider.[5]  In addition, in November 2014, then President Obama conducted a "townhall" at TechShop's Pittsburgh location.[6]

Through 2017, TechShop maintained exclusivity with regard to its marks in the United States. Nevertheless, outside the United States, TechShop had an established licensing program, executing licenses with entities in France, Japan, and Abu Dhabi, where the entities opened shops under the TechShop name.  The France entity is Group ADEO ("ADEO") with its affiliate Leroy Merlin France ("ALM") operating the shops; the Japan entity is Fujitsu Limited ("Fujitsu"); and the Abu Dhabi entity is Abu Dhabi Technology Development Committee ("Abu Dhabi").  TechShop's standard terms for a license outside the United States were as follows: (i) one fee in exchange for rights to use licensed materials including trademarks and other materials such as customer management software; and (ii) a separate fee for support services where

---

[3] See DR3050.

[4] See, e.g., https://www.theatlantic.com/technology/archive/2011/07/7-successful-products-to-emerge-from-san-franciscos-techshop/241291/.

[5] See, e.g., https://www.businessinsider.com/inside-techshop-where-entrepreneurs-get-their-hands-dirty-and-build-million-dollar-companies-2012-2.

[6] See, e.g., https://obamawhitehouse.archives.gov/the-press-office/2014/06/17/remarks-president-qa-techshop-workers.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

Doris A. Kaelin, in her capacity as Ch. 7 trustee for TechShop, Inc. v. Dan Rasure, et al.

TechShop's personnel provide support for opening and running a TechShop maker space.[7]  In December 2016, TechShop executed a perpetual, unlimited, license for use of its name in France to a company called ADEO for $1M.[8]  Techshop's international licensing is facilitated through its international entity TechShop Global Ltd.

In May 2017, TechShop announced its intention to "license" its trademarks in the United States.[9]  However, the proposed licensing arrangements were more properly characterized as "operating" agreements and none were ever consummated.

On November 15, 2017, TechShop closed its doors and announced that it would be filing for Chapter 7 bankruptcy protection.[10]  Shortly thereafter, TechShop was approached by Mr. Rasure with an offer to aquire TechShop's assets.[11]

In November 2017, Mr. Rasure entered into a Memorandum of Understanding (MOU) with TechShop for the purchase of TechShop's assets, including the marks.  In consideration for the assets, Mr. Rasure agreed to, *inter alia*, take on ~$21M in debt and pay TechShop $200,000.[12]  However, TechShop subsequently cancelled the MOU on the grounds that Mr. Rasure did not perform.[13]

In late January 2018, Mr. Rasure offered to license ADEO exclusive rights to the TechShop name in various territories outside the U.S. for ~$2.5M in various countries outside the United States.[14]

Throughout the period December 2017-February 2018, Mr. Rasure operated a website using the name TechShop 2.0.  On February 9, 2018, Mr. Rasure announced that he was re-opening TechShop's former location in San Francisco as a maker space offering the same services and goods as TechShop, using the name TechShop 2.0.[15]  Mr. Rasure clarified the 2.0 was not an attempt to rebrand.[16]  On February 13, 2018, TechShop sent Mr. Rasure a cease and desist letter.[17]  But, Mr. Rasure continued to use the marks.  Thereafter, on February 16, 2018, TechShop sent Mr. Rasure another cease and desist letter and sued for alleged infringement that

---

[7] *See* Exhibit B to Master License Agreement – Statement of Fees – Adeo; Exhibit B to Master License Agreement – Statement of Fees – Fujitsu;. Exhibit B to Master License Agreement – Statement of Fees – Abu Dhabi.
[8] *See, e.g.,* December 20, 2016 Minutes of TechShop Board Meeting.
[9] *See, e.g.,* https://makezine.com/2017/05/31/techshop-announces-new-partner-licensing-model-closes-pittsburgh-location/.
[10] *See, e.g.,* https://makezine.com/2017/11/15/techshop-closes-doors-files-bankruptcy/.
[11] *See, e.g.,* DR003543.
[12] *See* TechShop/Rasure Summary of Principal Transaction Terms.
[13] DR9060.
[14] DR012843.
[15] DR54840.
[16] DR051343.
[17] DR3069-3070.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

Doris A. Kaelin, in her capacity as Ch. 7 trustee for TechShop, Inc. v. Dan Rasure, et al.

same day.[18]  During this period, Defendant also forecasted sales for TechShop 2.0.[19]  The forecast included projections for collections of up to 5 stores, with total 2018 forecasted sales per store around $1-2.8 million, and aggregate forecasts up to approximately $10 million.  In particular, for the SOMA location, the forecast ranged from $1.5-$2.8 million; and for the San Jose location, the forecast ranged from $1-1.8 million (see Exhibit D).

On or about February 16 or 17th, Mr. Rasure changed the TechShop 2.0 website banner to begin using the name "TheShop.build."  However, in doing so, Mr. Rasure adopted a name/look that mimicked the TechShop mark and logo.[20]  In addition, the website address continued to read TechShop2.com.[21]  At some point thereafter, Mr. Rasure changed the look again.

It is my understanding that the TechShop marks continue to be used in commerce.  In particular, I understand that at least the TechShop Abu Dhabi location continues to operate using the TechShop name.  Similarly, the Japan and France locations continue to operate using the TechShop name.[22]

**Opinion/Analyses:**

**<u>Damages Based on Lost Licensing Revenue</u>**

For the purposes of determining damages based on lost licensing revenue, I have assumed that, prior to the infringement occurring, TechShop and the defendants would have entered into a licensing arrangement.  This hypothetical license would have been entered into between November 15, 2017 (when TechShop closed the doors of its U.S. locations and was approached by Mr. Rasure) and no later than February 16, 2018 (when TechShop filed suit for infringement).  In any event, the license would have been entered into prior to Defendants' infringement of the marks.

The hypothetical license would be for the perpetual, exclusive license for use of the marks in the United States.  In this regard, it is my opinion that the license would be akin to the sale of the marks to Mr. Rasure.

In determining the economic value of intangible assets, one, or a combination of three forms of economic measures are generally considered: income measures; cost measures; and market measures.[23]  Income measures relate to an evaluation of revenue and/or profits tied to the sales of products and services covered by the assets.[24]  Cost measures relate to the amount of resources

---

[18] DR15262-15274.

[19] DR19469-34815.

[20] *See, e.g.*, DR56091.

[21] *See, e.g.*, Wayback Machine February 21, 2018 image of techshop2.com (https://web.archive.org/web/20180221035010/https://techshop2.com/).

[22] *See, e.g.*, https://www.techshop.jp/en/; https://www.techshoplm.fr/.

[23] Glick, Mark A., Lara A. Reymann, and Richard Hoffman, *Intellectual Property Damages: Guidelines and Analysis*, (2003), p. 104.

[24] Glick, Mark A., Lara A. Reymann, and Richard Hoffman, *Intellectual Property Damages: Guidelines and Analysis*, (2003), pp. 104-105.

6

CONFIDENTIAL – ATTORNEYS' EYES ONLY

Doris A. Kaelin, in her capacity as Ch. 7 trustee for TechShop, Inc. v. Dan Rasure, et al.

spent to develop and commercialize the assets, or the amount of resources that would be required to pursue and adopt an alternative set of intangible assets rather than the set of assets-in-suit.[25] Market measures include established transactional market outcomes related to the assets, or similar assets, which have occurred in the marketplace.[26]  Market measures, when available, are often valuable sources of information for intangible asset valuation exercises because the measures account for market realities that cannot always be easily quantified by a third-party examiner based on other available information.  An important requirement of a true market measure or the fair market value of a property, business, security, or intangible asset is that the value for the asset being valued was derived though a potential buyer and seller operating through an arm's length transaction.  Appropriate use of market measures involves accounting for any differences between the facts surrounding the market measure and those relating to the asset valuation task at hand.

While all of the information reviewed provide a basis for my opinion, five data points (i.e., potential market measures) warrant specific discussion:

1)  Prior Standard Licenses to Use the Marks

The license agreements with ADEO, Fujitsu, and Abu Dhabi reflect a willingness to license outside the United States using standard terms. As noted above, the licenses included fees for rights to the licenses materials, as well as fee for the services provided by TechShop.  The licensed materials include the following: trademarks; training/course/instructional manuals and materials; store designs and layouts and business processes; and CRM and TSAP software and technologies.

Given the trademarks are included in the licensed materials, the focus here is on the licensed materials fees.
- For ADEO, the TechShop receives a $700,000 fee for the term of 2015 through 2025 (or five years after the opening date of the fifth workshop).
- The license fee received from the Fujitsu agreement is $237,500 per year for five years after the opening of a workshop.
- For Abu Dhabi, the license fee is an annual figure per workshop.  For the first workshop, the annual fee is $250,000, and be adjusted for future workshops.

The ADEO and Fujitsu fees represent what TechShop received, which is likely less than what ADEO and Fujitsu paid, given that the terms of the arrangement allow for TechShop Global to maintain a portion of the license fee, with the remainder going to TechShop.  The Abu Dhabi agreement explicitly identifies the magnitude of this fee spread by listing the payment owed to TechShop as $200,000, which represents 80

[25] Glick, Mark A., Lara A. Reymann, and Richard Hoffman, *Intellectual Property Damages: Guidelines and Analysis*, (2003), pp. 118-119.
[26] Glick, Mark A., Lara A. Reymann, and Richard Hoffman, *Intellectual Property Damages: Guidelines and Analysis*, (2003), pp. 113-118.

7

CONFIDENTIAL – ATTORNEYS' EYES ONLY

Doris A. Kaelin, in her capacity as Ch. 7 trustee for TechShop, Inc. v. Dan Rasure, et al.

percent of what Abu Dhabi paid to TechShop Global, hence the resulting $250,000 payment.

Those agreements included more items than the marks but, it is my opinion, that the marks themselves represented the primary value in these transactions and the other items were more marginal.

The other items included in the transactions are addressed in detail:

CRM

I understand from Mssrs. Busch, Newton, and Woods that it was their perception that the licensees did not place significant value on the CRM component.  For example, ADEO was licensed to use the CRM software as part of the pre-December 2016 transaction. However, ADEO experienced difficulty in using it and elected to use its own CRM software.  ADEO did not request a reduction in the fees paid to TechShop for non-use of the CRM software.  Further, thereafter, ADEO executed the December 2016 license to use the marks, thus indicating that it was the marks themselves that were the primary value.

In addition, I note that there are several CRM alternatives available.  For example, standard CRM software such as Wild Apricot, etc. offer licenses costing as little as $350/month.[27]  Other available CRM examples include Wild Apricot competitors MemberClicks with a monthly fee ranging from $320 to $780,[28] and Member365 with a monthly fee ranging from $99 to $399.[29]  Thus, even if a reduction in the licensing fee were appropriate to account for the value of the CRM component, that reduction would be immaterial to the overall transaction value associated with the marks.

TSAP

The TSAP software was software that allowed for keycard access to buildings, rooms, areas as well as allowing machine access.  I understand that even within the United States, the TSAP software was not used at numerous TechShop locations and that, again, little value was placed on it as part of the licensing transactions.  Outside the United States, it is my understanding that the licensees did not use it.  Again, I note that commercial alternatives to the TSAP are available at prices that would not be material to the licensing transaction.  For example, access control readers can range from $75 to $144, with access cards as low as a few dollars.[30]

---

[27] https://www.wildapricot.com/pricing.
[28] https://www.memberclicks.com/membership-software-pricing; https://www.wildapricot.com/wild-apricot-vs-competitors#pricing-functionality.
[29] https://www.member365.com/pricing/; https://www.wildapricot.com/wild-apricot-vs-competitors#pricing-functionality.
[30] https://www.barcodesinc.com/hid/.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

Doris A. Kaelin, in her capacity as Ch. 7 trustee for TechShop, Inc. v. Dan Rasure, et al.

Instructional Materials, Store Design & Business Methods ("Business Methods")

The Business Methods licensed materials items largely tie to the services portion of the license agreement.  For example, the services fee (separate from the license fee) accounts for the personnel assistance TechShop provides the licensees for setting up and operating a location.  These services include, among others, assisting in defining the layout and design of a store *for the particular location at issue*, staff training, drafting equipment conditions of use, and other on-sight assistance.  The business methods materials covered by the license fee are related to these services, but in and of themselves are much more limited and not necessarily specific to the licensed locations.  The limited contribution of the Business Methods items to the license fee is further supported by the 2016 ADEO license discussed below that focuses on the use of the marks.

2)  December 2016 ADEO Bare License

As noted above, in December 2016, TechShop executed a bare, perpetual, exclusive license to use the marks in France with ADEO for $1M.  That transaction reflected the strength of the marks because: 1) as a bare license of the marks (i.e., no services or software/technologies, the value is tied directly to the marks; 2) while TechShop's primary market was in the United States, the fact that such a significant value was placed by third parties outside the United States on the brand reflects the strength in the United States; 3) given the value outside the United States, it is to be expected that the value in the United States would be greater.

Further, it is noted that this transaction was for a region where TechShop did not directly compete by operating its own shops.  Thus, a comparable license in the United States where TechShop did operate stores would be expected to command a higher value.

3)  Continued Discussions With ADEO During late 2016 and 2017

As indicated by presentations and emails, TechShop continued to have discussions with ADEO throughout 2017 about further licensing opportunities outside the United States.[31] The discussions covered various options of additional licensed territories beyond France. For example, the proposal to license rights similar to those in France but for Spain, Italy, Russia, Poland and Brazil included a $5 million license fee.[32]   This license fee would be on top of payment to TechShop for providing services.  The discussions also included a $2.4 million license option for licensing rights in Russia, Ivory Coast, and Senegal. Those discussions indicate that licensing rates in the range of $2.4 to $5 million were potentially acceptable to both parties.

4)  The November 2017 MOU

As noted above, in November 2017, TechShop and the defendants entered into an MOU. At a high level, that agreement described a transaction in which Mr. Rasure would

---

[31] *See, e.g.*, TS000770-798.
[32] The proposals also include non-exclusive rights to "Tier 2" locations.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

Doris A. Kaelin, in her capacity as Ch. 7 trustee for TechShop, Inc. v. Dan Rasure, et al.

acquire the assets of TechShop (including the marks) in exchange for taking on ~$21M in debt to Autodesk and other compensation to TechShop. Of course, an assumption of debt is merely a form of compensation. The inclusion of the marks in the proposed transaction is indicative of the value of the brand, especially given the total value of the transaction. In addition, Mr. Rasure himself has clarified the value in, and his interest in, the TechShop name. For example, on December 4, 2017 during discussions regarding acquiring the assets, Mr. Rasure expressed that he valued what TechShop had become (and admired it for the past ten years) and thus would not want to change the name in short run, nor in the long run.[33] Even over a month later in mid-January, Mr. Rasure expressed that after "wracking our brains for a week" that he could not think of a name to use for his stores other than TechShop.[34]

5) Rasure's January 30, 2018 Offer to ADEO

As noted above, in January 2017, Mr. Rasure offered to license the marks to ADEO for $2.5M and additional compensation in the form of a $50,000 payment for each new store and ongoing 3 percent royalty. In exchange for the licensing fees, ADEO would receive exclusive rights to the marks in additional territories outside the U.S., as well as CRM software. While this proposed transaction had other elements, as discussed above, those other elements (i.e., CRM software) were of only marginal value and the real value was in licensing use of the marks. This offer is particularly relevant in that it: 1) post-dates the closure of the TechShop United States locations and announcement of potential bankruptcy filing; and 2) is contemporaneous with the allegations of infringement. Furthermore, the offer provides an indication of Mr. Rasure's view of the value of the marks.[35]

The above market measure information provide useful data points for both (i) confirming the appropriateness of lost license revenue as a form of damages; and (ii) valuing the TechShop marks and quantifying the lost license revenue damages. Given the extent of the global reach of the TechShop brand, it is my opinion that the value assigned to the marks outside the United States may act as a kind of floor on the licensing revenue. The ADEO, Fujitsu, and Abu Dhabi license fees provide useful fully executed market measure agreements. The Fujitsu and Abu Dhabi license fees include per year and per location fee structure, thus making the ADEO fee the most conservative market measure. The ADEO licensing arrangement is also closest to that considered for Defendants in this case given the supplemental fee arrangement. This is true for two reasons, first, the agreement with Defendants would be exclusive, and second the agreement with Defendants would be limited to the marks. Therefore, the $1 million market measure is an appropriate lost licensing revenue figure for damages in this case. Taking, for example, the Fujistu market measure, the $237,500 annual license fee would be owed for at least five years

---

[33] DR007095.

[34] DR051364.

[35] Mr. Rasure's view of the value of the mark is also supported by the 2018 TechShop 2.0 forecasts discussed above which include up to $10 million in revenue for 2018.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

Doris A. Kaelin, in her capacity as Ch. 7 trustee for TechShop, Inc. v. Dan Rasure, et al.

given the terms of the arrangement. As noted above, the fee that the licensee would pay is actually higher than this figure. To model the licensee payment, the spread between what is owed by the licensee versus is what is received by TechShop is modeled using the 80 percent TechShop fee capture rate from the Abu Dhabi market measure. Based on this fraction, the market measure indicates the licensee would pay $296,875 per year (equal to $237,500 / 0.80). Applying the minimum five year term of the agreement yields $1,484,375. Based on the foregoing, conservatively speaking, the lost licensing revenue to TechShop was in the range of $1 - $1.48 million. This lost licensing revenue damages range, and its conservative nature, is supported by Mr. Rasure's view of the value of the mark as evidenced by his contemporaneous offer to license the marks.

The closure of the TechShop stores in the United States and announcement of impending bankruptcy may have likely resulted in a significant diminution of the value of the brand. Nevertheless, as reflected in the January 2018 offer from the Defendants, the marks retained substantial value.

## Damages Based on Defendants' Profits

With respect to damages measured by Defendants' profits, as detailed above, I understand that a trademark plaintiff is only required to prove Defendants' sales. In this regard, the only information I have been provided is that information contained in a spreadsheet produced at Bates #s DR001714-801. That document appears to reflect revenues from Defendants' membership application and dues, class and event registrations, and online store purchases. The revenues cover the period February 6, 2018 to September 22, 2018 and amount to $1,127,686 (see Exhibit E).

## Conclusion

Given the claims of the case Plaintiff's damages in the form of lost licensing revenue amount to $1 - $1.48 million, and damages in the form of Defendants' profits amount to $1.1 million. I reserve the right to supplement or modify this report if additional or different materials or facts come to my attention.

November 19, 2018

Eric Matolo

# NATHAN
**Trusted for Excellence**

3 Park Plaza, Suite 1980
Irvine, California 92614
T +1 949-474-4942
ematolo@nathaninc.com
N A T H A N I N C . C O M

# Eric Matolo, Ph.D.
## VICE PRESIDENT

**OVERVIEW**

Dr. Matolo is a Vice President and economist in Nathan Associates' litigation and expert services practice.  He specializes in the economic analysis of complex business issues, including economic damages, valuation, and economic impacts.  Dr. Matolo has experience evaluating economic damages related to intellectual property, commercial disputes, antitrust, and labor disputes.  He has conducted expert analyses in projects involving breach of contract, patent infringement, trademark infringement, copyright infringement, unfair competition, false advertisement, misappropriation of trade secrets, anticompetitive conspiracy, unlawful monopolization, wrongful termination, malpractice, pyramid scheme, economic and fiscal impacts of business operations, and business operations forecasts.  Dr. Matolo has served as a consulting expert and as a testifying expert.

In addition to consulting work, Dr. Matolo has taught economics at the University of Southern California and served as a referee for the *International Journal of the Economics of Business*.  Dr. Matolo also serves on the Leadership Council of the Los Angeles Center for Law and Justice.

**EXPERIENCE**

## ANTITRUST AND CONSUMER HARM

- Evaluated antitrust harm involving alleged anticompetitive exclusive agreements relating to non-lethal weapons projectiles.

- Analyzed lost profits damages related to alleged unlawful monopolization involving foot care devices.

- Evaluated common impact and damages, and unjust enrichment, related to an alleged undisclosed automotive defect.

- Evaluated relevant markets, market power, common impact, and direct purchaser damages involving a horizontal exclusive agreement among manufacturers of neuromodulator products for cosmetic use.

- Evaluated business practices in the context of allegations regarding a supplier of nutritional and personal care products operating a pyramid scheme.

- Evaluated damages related to allegations of interference and anticompetitive conspiracy regarding technology used in DRAM memory.

- Evaluated relevant markets and market power, and evaluated licensing structure as part of affirmative defenses for patent misuse for tying and double royalties, all related to the manufacture of flash memory devices.

Doris A. Kaelin, in her capacity as Ch. 7 trustee for TechShop, Inc. v. Dan Rasure, et al
Case 4:18-cv-01044-HSG   Document 168-1   Filed 05/02/19   Page 14 of 26
EXHIBIT A

# Eric Matolo, Ph.D.
## VICE PRESIDENT

## COMMERCIAL DISPUTES / GENERAL LITIGATION

- Evaluated lost profits and impact to company value damages related to alleged breach of contract, intentional interference, and unfair competition involving conference calling solutions.

- Evaluated damages related to alleged breach of contract and unfair competition involving liquid repair and protection products for engine, cooling system, transmission, power steering system, body, and/or tire leaks or corrosion.

- Statistical sampling and damages evaluations regarding malpractice claims relating to class certification.

- Evaluated lost profits and disgorgement of profits damages related to alleged breach of contract, theft of trade secrets, and unfair competition associated with unlawful and unfair solicitation and raiding of employees in the virtualization and cloud computing infrastructure solutions industry.

- Evaluated replacement cost and lost profits damages related to alleged intentional interference involving femtocell wireless communications product suppliers.

- Evaluated damages related to alleged breach of contract involving retail automotive tires and wheels.

- Evaluated damages related to allegations of breach of written contract and negligence regarding technology used in aerospace equipment.

- Evaluated lost profits from counterclaims of fraud, breach of contract, and interference related to disaster recovery and construction services.

- Evaluated sampling and statistical analysis of lost revenue resulting from an alleged breach of contract related to medical billing practices.

- Evaluated lost profits damages related to an alleged breach of contract for concession services at amusement parks.

## EMPLOYMENT AND LABOR

- Evaluated common impact and damages related to alleged unpaid wages owed to cellular phone retail store employees due to a flawed commission system.

- Evaluated lost profits and disgorgement of profits damages related to alleged unlawful and unfair solicitation and raiding of employees and theft of trade secrets the virtualization and cloud computing infrastructure solutions industry.

Doris A. Kaelin, in her capacity as Ch. 7 trustee for TechShop, Inc. v. Dan Rasure, et al
Case 4:18-cv-01044-HSG   Document 168-1   Filed 05/02/19   Page 15 of 26
EXHIBIT A

# Eric Matolo, Ph.D.

#### VICE PRESIDENT

- Evaluated economic impact of alleged wrongful termination from public transportation operating agency.

- Evaluated economic impact of alleged wrongful termination from school district.

- Evaluated cost savings and defendant's profits related to allegations of theft of trade secrets by departing employees in the naval engineering and design industry.

### IMPACT ANALYSIS

- Analyzed the impact of changes in the oil and gas industry on the current and future state of Oklahoma and Texas economies, and the impact of the changes in the state economies on Class II gaming in Oklahoma.

- Analyzed the financial, economic and fiscal impacts of a proposed multipurpose resort facility in the State of California.

- Performed economic impact study to evaluate and quantify the regional and state economic and fiscal impacts of a proposed multipurpose resort facillity in the State of Arizona.

- Analyzed the regional economic and fiscal impacts of a proposed multipurpose resort facility in the State of Washington.

- Performed economic impact study to evaluate and quantify the regional and state economic and fiscal impacts of gaming and business operations located in the State of Oklahoma.

### PATENTS

- Evaluated lost profits, price erosion, and reasonable royalty damages related to alleged patent infringement involving online account security/user authentication technology.

- Evaluated reasonable royalty damages related to alleged patent infringement involving video game character animation technology.

- Evaluated reasonable royalty damages related to alleged patent infringement involving wireless telecommunication technology in the context of industry standards and FRAND licensing commitments.

- Evaluated reasonable royalty damages related to alleged patent infringement involving consumer wellness products.

Doris A. Kaelin, in her capacity as Ch. 7 trustee for TechShop, Inc. v. Dan Rasure, et al
Case 4:18-cv-01044-HSG   Document 168-1   Filed 05/02/19   Page 16 of 26
EXHIBIT A

# Eric Matolo, Ph.D.
## VICE PRESIDENT

- Evaluated reasonable royalty damages related to alleged patent infringement involving video compression technology in the context of industry standards and FRAND licensing commitments.

- Analyzed lost profits and reasonable royalty damages related to alleged patent infringement involving mobile phone accessories.

- Evaluated lost profits and reasonable royalty damages related to alleged patent infringement involving real-time monitoring and visualization systems used with electric power grids.

- Evaluated lost profits and reasonable royalty damages related to alleged patent infringement involving child car seats, strollers, and travel systems.

- Evaluated reasonable royalty damages related to alleged patent infringement involving balloon catheters.

- Analyzed reasonable royalty damages related to alleged patent infringement involving navigation applications used in mobile devices.

- Evaluated lost profits and reasonable royalty damages related to alleged patent infringement and unfair competition involving padded protective athletic apparel.

- Evaluated reasonable royalty damages related to alleged patent infringement involving accused module location technology in Microsoft's .NET Framework.

- Researched and analyzed reasonable royalty rates for patent license agreements covering 802.11 technologies.

- Evaluated lost profits and reasonable royalty damages related to alleged patent infringement involving artificial disc implants.

- Evaluated reasonable royalty damages related to alleged patent infringement involving elevator technology.

- Evaluated damages related to allegations of patent infringement, unfair competition, and Lanham Act violations involving bone plate implants, screws and instruments.

- Evaluated reasonable royalty damages related to alleged patent infringement involving light emitting diode semiconductor technology.

- Evaluated reasonable royalty damages related to alleged patent infringement involving electronic sourcing and procurement business software.

- Evaluated reasonable royalty damages related to alleged patent infringement involving wireless technology.

Doris A. Kaelin, in her capacity as Ch. 7 trustee for TechShop, Inc. v. Dan Rasure, et al
Case 4:18-cv-01044-HSG   Document 168-1   Filed 05/02/19   Page 17 of 26
EXHIBIT A

# Eric Matolo, Ph.D.
## VICE PRESIDENT

- Evaluated a reasonable royalty related to alleged patent infringement involving wireless technology in the context of industry standards and FRAND licensing commitments.

- Evaluated damages associated with claims of patent infringement regarding modem technologies.

- Evaluated lost profits and reasonable royalty damages related to alleged patent infringement involving artificial vertebral disc implants.

- Evaluated reasonable royalty damages in connection with allegations of patent infringement related to a component of a tortilla production line.

- Evaluated relevant markets and market power, and evaluated licensing structure as part of affirmative defenses for patent misuse for tying and double royalties, all related to the manufacture of flash memory devices.

- Evaluated reasonable royalty and unjust enrichment damages in connection with allegations of design patent infringement related to branded athletic hats.

- Evaluated lost profits, reasonable royalty, unjust enrichment, and corrective advertising damages related to allegations of patent infringement, trademark infringement, trade dress infringement, false advertising, and unfair competition related to massage furniture and products.

- Evaluated market value of technology and unjust enrichment damages related to an inventorship dispute regarding spinal implant systems.

### TRADEMARKS, TRADE DRESS, TRADE SECRETS, COPYRIGHTS

- Analyzed defendants' profits damages related to alleged trade dress infringement and unfair competition involving aftermarket automotive products.

- Evaluated defendants' profits damages related to alleged trademark infringement, unfair competition, false advertising, trade dress infringement, and trade secrets misappropriation involving non-lethal weapons projectiles.

- Analyzed damages related to alleged Lanham Act violations and unfair competition involving home security, monitoring, and automation systems and services.

- Analyzed defendant's profits and lost profits damages related to alleged trademark infringement, false designation of origin, unfair competition, and cybersquatting involving edible fruit arrangements and gifts.

Doris A. Kaelin, in her capacity as Ch. 7 trustee for TechShop, Inc. v. Dan Rasure, et al
Case 4:18-cv-01044-HSG   Document 168-1   Filed 05/02/19   Page 18 of 26
EXHIBIT A

# Eric Matolo, Ph.D.

VICE PRESIDENT

- Analyzed defendants' profits and lost profits damages related to alleged trademark infringement, trademark counterfeiting, false designation of origin, trade dress infringement, unfair competition, and copyright infringement involving mobile phone accessories.

- Analyzed defendants' profits and lost profits damages related to alleged trademark infringement, trademark counterfeiting, false designation of origin, unfair competition, and copyright infringement involving fashion jewelry.

- Analyzed defendants' profits damages related to alleged trademark infringement, false designation of origin, and unfair competition involving marketing and business development publishing and training services.

- Evaluated lost profits and disgorgement of profits damages related to alleged theft of trade secrets associated with unlawful and unfair solicitation and raiding of employees in the virtualization and cloud computing infrastructure solutions industry.

- Evaluated damages related to alleged trademark infringement and unfair competition involving retail automotive tires and wheels.

- Evaluated damages related to allegations of patent infringement, unfair competition, and Lanham Act violations involving bone plate implants, screws and instruments.

- Evaluated damages related to alleged copyright infringement involving music composition.

- Evaluated damages associated with claims of trademark and trade dress infringement related to advertising and marketing services through mobile wireless communications.

- Evaluated lost profits, reasonable royalty, unjust enrichment, and corrective advertising damages related to allegations of patent infringement, trademark infringement, trade dress infringement, false advertising, and unfair competition related to massage furniture and products.

- Evaluated lost royalty revenue and unjust enrichment related to allegations of trademark infringement involving children's clothing.

- Evaluated cost savings and unjust enrichment damages in connection with allegations of misappropriation of trade secrets related to electronic engineering and design packages used in US naval craft architecture.

Doris A. Kaelin, in her capacity as Ch. 7 trustee for TechShop, Inc. v. Dan Rasure, et al
Case 4:18-cv-01044-HSG   Document 168-1   Filed 05/02/19   Page 19 of 26
EXHIBIT A

# Eric Matolo, Ph.D.
### VICE PRESIDENT

**EDUCATION**
University of California, Santa Barbara
Ph.D., Economics
M.A., Economics
B.A., Economics/Mathematics

**PREVIOUS EMPLOYMENT**
University of Southern California
Economics Lecturer
University of California, Santa Barbara
Graduate Teaching Assistant

**PUBLICATIONS & PRESENTATIONS**
"Economic Considerations for Automotive Product Liability Matters," Bowman and Brooke LLP CLE Series, October 2018.

"FRAND Commitments and Royalties for Standard Essential Patents," with S. Bosworth and R. Mangum. In A. Bharadwaj, et al. (Eds.), *Complications and Quandaries in the ICT Sector: Standard Essential Patents and Competition Issues*, 2017.

"Corrective Advertising in Lanham Act Damages: The Use and Misuse of Past Advertising Expenditures," with S. Bosworth and R. Mangum. *The Trademark Reporter*, May-June 2017.

"Patent Uncertainty and Firm Behavior," 2008, manuscript.

"Patents as Real Options: An Empirical Analysis," 2008, manuscript.

**PROFESSIONAL MEMBERSHIPS**
American Bar Association
American Economic Association
Licensing Executive Society
Los Angeles Intellectual Property Law Association
Orange County Intellectual Property Law Association

**HONORS & AWARDS**
Distinguished Research Fellowship, Department of Economics, UCSB, 2007
Research Grant, Department of Economics, UCSB, 2007
Graduate Fee Fellowship, Department of Economics, UCSB, 2005
Outstanding Teaching Assistant Award, Department of Economics, UCSB, 2004
National Scholars Honor Society Award of Achievement, 2004-2007

# Eric Matolo, Ph.D.

VICE PRESIDENT

**TESTIMONY & REPORTS**

*Advanced Flow Engineering, Inc. v. Injen Technology Company, Ltd., et al.,* United States District Court, Central District of California (2017). Submitted expert report on damages on behalf of Plaintiff.

*United Tactical Systems, LLC v. Real Action Paintball, Inc., et al.,* United States District Court, Northern District of California (2017). Submitted expert reports on behalf of Plaintiff and Counter-Defendant.

*Edward L. Blendermann v. LifeWave, Inc.,* United States District Court, Southern District of Florida (2017). Submitted expert report on damages on behalf of Defendant.

*Paul B. Butler v. Porsche Cars North America, Inc.,* United States District Court, Northern District of California, San Jose Division (2017). Submitted expert report in support of motion for class certification.

*Mitsubishi Electronic Corp., et al. v. Sceptre, Inc.,* United States District Court, Central District of California (2015). Provided deposition testimony and submitted expert report on damages and FRAND royalties on behalf of Defendant.

*Yunxia Wang, Fengqin Xu, and Qun Xu, et al. v. EFT Holdings, Inc., and Jack J. Qin, et al.,* United States District Court, Central District of California (2015). Provided deposition testimony and submitted a declaration in support of motion for class certification.

*Bar's Products, Inc. v. Bar's Products International, LTD., et al.,* United States District Court, Eastern District of Michigan (2012-2014). Provided trial testimony, deposition testimony, and submitted expert report on damages on behalf of Counterclaimant.

*Synthes USA, LLC et al v. Diverse Surgical Supplies, Inc., et al,* United States District Court, District of Arizona (2010 - 2012). Provided deposition testimony and submitted expert reports on damages on behalf of Plaintiff.

*Synthes USA, LLC et al v. Syntec Scientific (USA) Corporation, Whittemore Enterprises, Inc., et al,* United States District Court, Central District of California, Western Division (2011). Submitted expert report on damages on behalf of Plaintiff.

*Casa Herrera, Inc., v. J.C. Ford Company,* United States District Court, Central District of California (2008). Submitted an expert report on damages for mediation on behalf of Plaintiff.

Doris A. Kaelin, in her capacity as Ch. 7 trustee for TechShop, Inc. v. Dan Rasure, et al

## EXHIBIT B
## Materials Considered

Forbes Magazine (September 2008)

Inc. Magazine (July 2007)

Inc. Magazine (July 2010)

Make Magazine (August/September 2014)

Popular Mechanics Magazine (June 2013)

Popular Mechanics Magazine (April 2014)

San Jose Mercury News (April 24. 2010)

Wall Street Journal (November 12, 2009)

Wired Magazine (February 2010)

DR1714-1801

DR2693-2739

DR3047-3068

DR3069-3070

DR3543

DR7095

DR9060

DR12843

DR15262-15274

DR19469-34815

DR56049-56094

DR51343

DR51364

TS701

TS714

TS716-736

TS748-

TS750-752

Doris A. Kaelin, in her capacity as Ch. 7 trustee for TechShop, Inc. v. Dan Rasure, et al

TS754

TS757-758

TS760

TS770

TS777

TS790

TS794

TS798

TS804-806

TS813

TS820-844


**Materials from TechShop's Initial Disclosures**

Various emails from November 2017-December 12, 2017

December 20, 2016 Minutes of TechShop Board Meeting

December 15, 2014 TechShop/ADEO/AutoDesk Non-Disturbance Agreement

December 15, 2014 TechShop/TechShop Global Agreement

TechShop May 2, 2018 Statement of Financial Affairs

December 10, 2014 TechShop/Abu Dhabi Agreement

TechShop/Rasure Summary of Principal Terms

September 7, 2015 TechShop/Fujitsu Partnership Agreement

TechShop, Inc. v. Rasure, et al, Case No. 18-cv-1044 (N.D. Cal.) (Complaint)

Brief Re: Damages Theories (submitted by TechShop)

Letter Brief Re: Damages Theories (submitted by defendants)

EXHIBIT C

11/19/2018                    TechShop | the World's First, Open-Access Workshop | Where Do You Want To Make 23?

Case 4:18-cv-01044-HSG Document 168-1 Filed 05/02/19 Page 23 of 26




INVEST IN TECHSHOP
GET A FREE FAMILY VIP LIFETIME MEMBERSHIP!
LEARN MORE...

- Welcome
- Memberships
- Classes
- Youth Programs
- Events
- Facilities & Amenities
- TechShop Locations
- Equipment Reservation Calendars
- Services & Programs
- FAQs & Policies
- TechShop News
- Invest in TechShop
- Contact Us
- Job Openings







Maker Season 2017

**TechShop**®is a vibrant, creative community that provides access to instruction, tools, software, and space. You can make virtually anything at TechShop. Come and build your dreams!

A playground for creativity, TechShop is an open-access, DIY workshop and fabrication studio. We are a community-based space where entrepreneurs, artists, makers, teachers, and students come together to learn and work together.

## What We Offer

TechShop provides access to instructional classes, events, and over $1 million worth of professional equipment and software at each location. Each of our facilities includes laser cutters, plastics and electronics labs, a machine shop, a woodshop, a metalworking shop, a textiles department, welding stations, and class and conference rooms. Free coffee and fresh popcorn are always available for your enjoyment. Members have open access to design software, featuring the Autodesk Design Suite, and huge project areas with large work tables are available for completing projects and working with others.

Most importantly, you can explore the world of making in a collaborative and creative environment. Our incredible community of members provides inspiration and support for creating projects, and comprehensive instruction and coaching from our engaging staff ensure you have a safe, meaningful, and rewarding experience.

We also offer a number of additional services to help engage people in the act of making. TechShop has developed experience-driven corporate events to bring teams together, youth programming to encourage young makers, prototyping services, and so much more.

## How It Works

It's simple. Anyone may attend classes and most meet-up events. For a monthly or annual fee, members can reserve and use TechShop's tools upon successful completion of equipment-specific Safety and Basic Use (SBU) classes. Talented staff members are available full time to help develop ideas and improve technical skills.

You really have to see it to believe it. Stop by for a tour with one of our Dream Consultants and have all your questions answered. Whatever your background or skill set, come in and prepare to be inspired!!!

Choose your store...

### UPCOMING EVENTS

**St. Louis, MO**

Lecture: Shipping Your Product
Wed Nov 01, 6PM

**Brooklyn, NY**

Tour of TS BK & the BAT!
Thu Nov 02, 7PM

**Chandler, AZ**

4-Year Anniversary
Sat Nov 18, 11AM

**Mid Peninsula, CA**

Make a Pet Hoodie
Fri Nov 03, 5PM

**San Francisco, CA**

Make a Pet Hoodie
Sun Nov 05, 2PM

**San Jose, CA**

Blade Sharpening Workshop: Flat Blades and Chisels
Thu Nov 02, 11AM

**Detroit, MI**

Bat House
Fri Nov 03, 6PM

**Austin, TX**

Leatherworking - Tooling Basics
Thu Nov 02, 3PM

**Arlington, VA**

Busty Casting - Lost PLA Investment Casting
Thu Nov 02, 4PM

**Pittsburgh, PA**

Tesla Coil Design and Operation
Wed Nov 15, 7:30PM

Click here for all upcoming events

Learn how to use
**Autodesk Inventor**

TechShop Proudly Features

EXHIBIT C

11/19/2018 TechShop is the World's First Open-Access Workshop | Where Will You Want To Make a TechShop?

Case 4:18-cv-01044-HSG Document 168-1 Filed 05/02/19 Page 24 of 26

Desktop 3D Printers
at Most US TechShop Locations

---

TechShop®, Inc.
TOLL-FREE 1(800) 640-1975
LOCAL PHONE 1(650) 521-9027
Copyright 2006-2017 by TechShop®, Inc. All rights reserved.
TechShop is a registered trademark of TechShop®, Inc.
Refund and Cancellation Policy
Privacy Policy

Doris A. Kaelin, in her capacity as Ch. 7 trustee for TechShop, Inc. v. Dan Rasure, et al.

## Exhibit D
### TechShop 2.0's 2018 Forecasted Total Income

| Location | Average | Minimum | Maximum |
|---|---|---|---|
| SOMA (San Francisco, CA) [1] | $2,142,234 | $1,508,783 | $2,815,957 |
| San Jose, CA [2] | $1,468,143 | $1,035,815 | $1,796,537 |
| All Locations (Up to 5) [3] | $7,409,492 | $3,727,963 | $10,675,624 |

Notes:

[1] There are 28 total forecasts for the SOMA TechShop location.

[2] There are 8 total forecasts for the San Jose TechShop Location.

[3] There are 30 total forecasts for TechShop 2.0 as a whole, each including between 2 to 5 TechShop locations.  The forecasts contain various combinations of the following 6 TechShop locations: SOMA, San Jose, Detroit, Austin-Round Rock, Chandler, and DC-Arlington.

Source: DR19469-34815.pdf

Confidential - Attorneys' Eyes Only

Doris A. Kaelin, in her capacity as Ch. 7 trustee for TechShop, Inc. v. Dan Rasure, et al.

## Exhibit E
### Invoice Total [1]

| Date | Amount |
|---|---|
| Feb-18 | $69,547 |
| Mar-18 | $294,825 |
| Apr-18 | $122,965 |
| May-18 | $115,549 |
| Jun-18 | $158,204 |
| Jul-18 | $82,867 |
| Aug-18 | $105,296 |
| Sep-18 | $178,432 |
| Total | $1,127,686 |

Note:

[1] Invoice Data includes all data from February 6, 2018 to September 22, 2018.  Invoice categories include event registrations, member applications, member renewals, member level changes, online store orders, and manual invoices.

Source: DR001714-DR001801.pdf

Confidential - Attorneys' Eyes Only