Pages 1 - 50

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Haywood S. Gilliam, Jr., Judge

TECHSHOP, INC.,                    )
                                   )
            Plaintiff,             )
                                   )
   VS.                             )      **NO. CV 18-01044-HSG**
                                   )
DAN RASURE, ET AL.,                )
                                   )
            Defendants.            )
_____)

                          Oakland, California
                          Tuesday, April 30, 2019

                 **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
                        PARRISH LAW OFFICE
                        24 Lexington Drive
                        Menlo Park, CA  94205
                 **BY:  JAMES C. PISTORINO, ESQUIRE**

For Defendants:
                        QUINN EMANUEL URQUHART OLIVER &
                        SULLIVAN LLP
                        555 Twin Dolphin Drive - 5th Floor
                        Redwood Shores, CA  94065
                 **BY:  ANDREA P. ROBERTS, ESQUIRE**
                 **     OLGA SLOBODYANYUK, ESQUIRE**

Reported By:     Pamela Batalo-Hebel, CSR No. 3593, RMR, FCRR
                 Official Reporter

<u>**Tuesday - April 30, 2019**</u>                                    **3:00 p.m.**

P R O C E E D I N G S

---oOo---

    **THE CLERK:**  We're calling CV 18-1044, TechShop, Inc. vs. Rasure, et al.

    Please step forward and state your appearances for the record, please.

    **MR. PISTORINO:**  Good afternoon, Your Honor.  James Pistorino on behalf of TechShop.

    **THE COURT:**  Good afternoon.

    **MS. ROBERTS:**  Good afternoon, Andrea Roberts of Quinn Emanual on behalf of defendants.  And with me is Olga Slobodyanyuk.

    **THE COURT:**  Good afternoon.

    So is Ms. Draper out of the case?

    **MS. ROBERTS:**  She is still part of the case, but she's not here today, sir.

    **THE COURT:**  Will she be playing a role at trial?

    **MS. ROBERTS:**  I'm not certain of that.  I will be lead counsel at trial.

    **THE COURT:**  All right.  Okay.

    We're here for the pretrial conference in the matter. I've reviewed the motions in limine, as well as the pretrial filings that the parties submitted.

    What I would like to do today is resolve the motions in

1    limine and talk about logistics.

2         So let's deal with the motions in limine first.  Okay.

3         So the first motion is the defendants Motion in Limine

4    No. 1 regarding infringement theory as to the TheShop.Build.

5    I'm strongly inclined to deny the motion.  It appears that it's

6    undisputed that the plaintiff timely responded to the discovery

7    that the defendant actually sought and obtained an order from

8    Judge Spero directing a supplemental interrogatory response,

9    which was provided.

10        It seems to me it was the defendants' hazard waiting until

11   the end of the discovery period to seek the clarification.  I'm

12   not sure what Rule 26 violation is even claimed under these

13   circumstances.

14        **MS. ROBERTS:**  Well, Your Honor, the interrogatories

15   were served towards the end of discovery.  They are contention

16   interrogatories, and many courts -- serving them early, many

17   motions to compel will be denied, and so they were served at

18   the end of discovery.

19        Plaintiff had the opportunity to respond to its

20   Interrogatory No. 2 which asked for all confusingly similar

21   variations on which plaintiff is basing its infringement claim.

22   Plaintiff only identified variations including or related to

23   TechShop 2.0, which was consistent with the position plaintiff

24   had taken since day one.

25        In the Complaint, the First Amended Complaint, all filings

1    in discovery, plaintiff had never mentioned any theory that the

2    TheShop.Build was infringing, even though our clients were

3    running a business under that name which was well-known to

4    plaintiff.  In fact, plaintiff mentioned it in the parties'

5    joint case management statement in June of last year.

6         When we moved to compel a further response because the

7    response to Interrogatory No. 2 was deficient, that was not an

8    invitation to present a new theory of infringement.  That was

9    an invitation to ensure that every iteration of TechShop 2.0

10   that was at issue in the case was articulated in response to

11   the interrogatory.

12        Identifying an entirely different term, "TheShop.Build,"

13   is a new theory of infringement that would have introduced --

14   would have required additional discovery which we were not able

15   to take because it was not mentioned until after the close of

16   fact discovery.

17        And I'll mention that it was the week before last when the

18   parties filed our joint pretrial statement on, I believe,

19   April 16th, plaintiff started mentioning for the first time

20   that the words "the shop" are infringing.  Well, that wasn't

21   mentioned in the interrogatory response at all.  That, too,

22   would present entirely different discovery that we might have

23   pursued had that been disclosed earlier.

24        For example, if the words "the shop" were infringing, then

25   it would seem that plaintiff is claiming that it owns the word

1     "shop," and that might present entirely different invalidity

2     theories that we would have pursued to show that they do not

3     own the word "shop."

4          So even though the interrogatories were served at the end

5     of discovery and defendants moved to compel, that was not an

6     invitation to introduce an entirely new theory of infringement,

7     which is what happened here.

8          **THE COURT:**  What discovery did anyone take?  No one

9     took any depositions in this case; right?

10         **MS. ROBERTS:**  Your Honor, we -- defendants deposed

11    plaintiff's damages expert.  And there was a lot of documents

12    produced in the case, at least by defendants.

13         **THE COURT:**  Let me rephrase.  No percipient witness

14    depositions were taken by anyone in this case?

15         **MS. ROBERTS:**  That's correct.

16         **THE COURT:**  That's a first.

17         Anything from your perspective on this motion?

18         **MR. PISTORINO:**  With regard to the interrogatory

19    response, no.  I think, as we said to Judge Spero and I think

20    as Judge Spero ultimately ordered consistent with that, an

21    entire case interrogatory, I think there are many, many cases

22    saying that interrogatories like that are improper.

23         One line of cases says that when faced with that,

24    sometimes courts reform them and order essentially partial

25    responses, which is exactly what I did.

1     Ultimately Judge Spero ordered us to provide a

2  supplemental response detailing each and every variation, which

3  order I complied with.  So I think from a diligence

4  perspective, they served it time so the -- the response was due

5  on the very last day of discovery.  So, respectfully, I don't

6  see how they could have taken additional discovery unless they

7  sought to modify the case schedule in some way.  So I don't

8  think they were diligent.  They served it when they served it.

9  I timely answered it.

10          **THE COURT:**  All right.  What about this new "the shop"

11  theory?

12          **MR. PISTORINO:**  We -- respectfully, we have no new

13  theory.  They -- as I understand it, they use -- and I think we

14  produced a copy of it in one of the papers we filed with

15  Your Honor.  They use a phrase "The Shop," upper case with a

16  logo in it, dot "Build."  We have no new theory.  Exactly as

17  identified in the rogs, that's the exact same theory I've got.

18  I'm not attempting to assert anything new.

19          **THE COURT:**  Let me put it this way.  If it wasn't in

20  your supplemental interrogatory response, I don't want to see

21  it.

22          **MR. PISTORINO:**  That's fine.

23          **THE COURT:**  Because you'll get hammered.  All right

24  the motion in limine is denied.

25     The second motion in limine says that it is to exclude

1    plaintiff from seeking double recovery, and, again, I'm not

2    quite sure what the point is.  Everyone agrees that they can't

3    recover both.  I think it's just a question of when they have

4    to make the election.

5        I think that we could figure out how the verdict form or

6    the jury instructions would be framed, but if, in fact, it

7    ended up being a duplicative or overlapping recovery, then why

8    isn't the remedy just an offset?  I'm not sure what the

9    requested relief is.

10        **MS. ROBERTS:**  Your Honor, my colleague is going to

11   handle this one.

12        **THE COURT:**  All right.

13        **MS. SLOBODYANYUK:**  Good afternoon, Your Honor.

14        Plaintiff should not be able to confuse and mislead the

15   jury by presenting two different damages theories which will

16   lead to double recovery, which they are not allowed to obtain.

17        **THE COURT:**  But again -- I always say this at pretrial

18   conferences.  Let's get pragmatic.  We are at the point where

19   we're ready to try a case -- right? -- so the time for envelope

20   pushing is over.

21        There's no prospect of duplicative recovery because

22   everyone agrees that if that were to occur, they would either

23   have to elect or I would do an offset or something.  So what is

24   your authority for the idea that at the motion in limine stage,

25   I have to force them to elect?  That's what I really want from

1    you, a case that says that.

2          **MS. SLOBODYANYUK:**  So if you take a look at the *Jimmy*

3    *Hendrix* case, 762 F.3d 829, in that case, the Ninth Circuit

4    actually had to order a new trial on damages partially

5    motivated by the duplicative award where the jury awarded both

6    plaintiff's losses and defendant's profits.  So what we are

7    trying to do with this motion in limine is to avoid this waste

8    of judicial resources, confusion to the jury by presenting both

9    theories.

10          If you take a look at both the proposed verdict forms,

11   both the plaintiffs and the defendants, they're not clear.

12   They're confusing.

13          If you take a look at Mr.-- Dr. Matolo's expert report,

14   which presents both theories, it really leads one to think that

15   both theories are operative and that the jury should award both

16   large numbers.

17          **THE COURT:**  Why wouldn't -- and I confess, I haven't

18   scoured your verdict forms yet, but why wouldn't it simply say

19   *if you find that there is liability, what do you think is the*

20   *amount of infringer's profits?  What do you think is the*

21   *amount* -- so what's the disgorgement amount, what's the lost

22   profits amount, just have them factually identify that, and

23   either then require election at that point or offset or

24   something.

25          They're admitting they have to elect.  It's just a

1    question of when.  And I don't read the *Jimmy Hendrix* case to

2    speak to that directly.

3        Do you have a case that does speak to that directly?  The

4    timing of the election is really the only disputed issue here.

5        **MS. SLOBODYANYUK:**  We don't have a case that speaks to

6    that directly but neither does the plaintiff.  If you look at

7    the cases that the plaintiff is citing, none of them are on

8    point.  None of them are trademark cases and none of them are

9    citing double recovery for trademark infringement.  Two of

10   those cases are breach of contract and fraud cases.  One of

11   them is a trade secret case and the other one is a securities

12   case.

13       So we think our approach will just optimize the trial

14   process, avoid confusion, and avoid the risk of double

15   recovery.

16       **THE COURT:**  All right.  It sounds to me you're

17   acknowledging that there's got to be an election.  You can't

18   recover both.  When do you propose that that would be done?

19       **MR. PISTORINO:**  I think as the cases we cite -- and I

20   think I cited the C.J.S. --  and I know our proposed verdict

21   form says the jurors should decide both issues.  Maybe they

22   will elect to decide damages on one, find that we met our

23   burden of proof, but maybe not on the other.  They should

24   decide both.

25       In the case they award damages under both, after the

1    verdict but before entry of judgment, we would be put to the

2    election of choosing one or the other.  Maybe one we think

3    we -- you know, if there should be an appeal, we would feel

4    stronger defensively for appeal, we'd have to pick one.  That's

5    also after the verdict but before the Court enters judgment.

6         **THE COURT:**  That seems right to me, so I'll deny that

7    motion in limine as well.  I might do a short written order as

8    to that one just so the record is clear.

9         Defendants' Motion in Limine No. 3, directing me to tell

10   the witnesses how they can refer to the defendants.  That just

11   seems almost frivolous to me.  This is the name of the

12   defendants that are sued.

13        To the extent you have a factual beef with the

14   characterization, that's what comes out of the trial in terms

15   of the evidence, but I don't see the authority for an order

16   policing the words that counsel and I'm assuming even the

17   witnesses use in the course of presenting the evidence.

18        **MS. ROBERTS:**  Well, Your Honor, there is authority for

19   that, which we included in our briefs, and I'll get to that.

20        But I want to be clear, so, first of all, we're not asking

21   plaintiff to not refer to the defendants by their name.  The

22   defendants names are the TheShop.Build and the TheShop.Build

23   SF.  There are no companies operating today under the names

24   TechShop 2.0 or TechShop 2.0 San Fran.  I understand that is

25   who plaintiff initially sued because those were the names of

1     the companies that existed at the time, but those companies do

2     not exist.

3         Now, there's a dispute in this case as to when my client

4     stopped using the name TechShop 2.0.  It's our position that

5     they stopped using it much earlier than plaintiff's position.

6     But when that use stopped is an issue in the case.  And to keep

7     pointing to us over here at counsel table or referring to

8     Mr. Rasure as TechShop 2.0 when there is no dispute that he

9     does not operate and the defendants don't operate under those

10    names today is misleading.

11        Now --

12        **THE COURT:**  The Complaint is against those entities;

13    correct?  Those are the named defendants.  Setting aside all

14    the factual developments, you agree that those are the named

15    defendants in the Complaint?

16        **MS. ROBERTS:**  Those are the named defendants in the

17    Complaint, and in every -- since the name change and every

18    pleading we have filed, we have indicated that their names are

19    the TheShop.Build and TheShop.Build SF.  And so -- sorry.

20        To be clear, plaintiff's counsel and plaintiff's witnesses

21    can refer to the fact that our clients used the name TechShop

22    2.0.  We are just -- this motion in limine is limited to just

23    calling us today, the current business today, TechShop 2.0

24    because that's not what it is.

25        **THE COURT:**  That's what your witnesses would say;

1  right?  I just don't understand -- why am I micromanaging the

2  presentation of the evidence?  Your point, your entire point,

3  is *no, we don't do that* and that's what your witnesses will

4  say.

5      I looked at the cases you cited, but, A, a bunch of them

6  are criminal cases and obviously there are due process

7  ramifications that are way different than in a civil case.

8  And, B, what they're really about is -- I get it if the court

9  is entering an order that says *don't call the non-practicing*

10 *entity a patent troll because that is a pejorative*

11 *characterization*.  Here it seems to me what you're saying is *we*

12 *disagree with their view of the facts* and of course you do and

13 of course you're going to present your evidence that shows your

14 view, whatever it shows.

15     But I just don't, again, see any basis for entering an

16 order that tells their witnesses or their counsel how to refer

17 to the evidence.  And you, of course, will be presenting your

18 evidence and commenting on it and characterizing it as you do,

19 and the jury will decide.

20     **MS. ROBERTS:**  Well, Your Honor, I think *Allstate*

21 *Insurance vs. Vizcay* is an important case to look at.  That

22 wasn't a patent case and I don't believe it was a criminal case

23 either.

24     There the court found that referring to the defendants as

25 "*de facto* clinics" invaded the province of the jury because the

1    crux of the issue in that case was whether the clinics were

2    healthcare clinics under a statute, and so by defendant's -- by

3    referring to defendants always as *"de facto* clinics," that was

4    taking the decision away from the jury as to whether or not

5    they were healthcare clinics under the terms of the statutes.

6         And I think that is the same as what's happening here.  By

7    repeatedly referring to us as a name that we no longer use and

8    have not used for some time, that is taking away the decision

9    from the jury as to -- as to when the use stopped.

10             **THE COURT:**  Do you have anything to add?

11             **MR. PISTORINO:**  No.  No.

12             **THE COURT:**  The motion is granted. -- I'm sorry.  The

13   motion is denied.

14        Last motion in limine, defendant's Motion in Limine No. 4

15   regarding discovery conduct.  This is an obvious grant.  It's

16   sort of silly that, again, this is even a dispute.

17        The course of the parties' discovery dealings has nothing

18   to do with the merits of the case, shouldn't be brought up in

19   front of the jury.  If anyone brings it up in front of the

20   jury, you will be in serious trouble.  Obvious grant.

21        Then there is a stipulated motion in limine, which is

22   fine.  I assume that the parties will conform their trial

23   presentation to make sure everyone is in conformance with that

24   one.

25        All right.  Plaintiff's Motion in Limine No. 1 regarding

1    disclosures.  And really there are two pieces, and let me just

2    see if I understand what's still at issue.

3        So initially the plaintiff moved to exclude something on

4    the order of 3700 pages of discovery, as well as to preclude

5    Mr. Hilberman as a witness.  The defendant's responded with

6    regard to the documents that there -- it strikes me that there

7    are just two that remain at issue, which is the video of this

8    Maker Nexus conference and then documents relating to the

9    Odyssey Expo, although I need to be sure I understand what that

10   is.

11       So why don't you, before we get into the merits, just tell

12   me what documents you are trying to introduce at this point

13   that are subject to this motion.

14            MS. ROBERTS:  I think, Your Honor, that you got it

15   right.  There's the two Maker Nexus videos.  One exhibit is the

16   full video and the second is an excerpt to just the relevant

17   portion.  And then there is a handful of exhibits relating to

18   this event called Odyssey Expo that was announced on March 19,

19   2019, and it reflects third-party uses of the term "TechShop."

20            THE COURT:  All right.  And so let's take those two

21   documents first.

22       So one -- so it's a video, and then how many Odyssey Expo

23   documents are we talking about?

24            MR. PISTORINO:  I think it's eight, Your Honor.

25            MS. ROBERTS:  Yes.  That's correct.

1        And I'll -- just to explain what the Odyssey Expo

2    documents are, there is a press release announcing this event

3    and then there are various other web pages relating to that

4    event.  For example, one of them is a floor plan that shows

5    where the TechShop is, so they're all -- all different web

6    pages printed out about this same event.

7            **THE COURT:**  So the argument from a Rule 26 perspective

8    as to the Odyssey Expo documents is that the event was after

9    the discovery cutoff?

10           **MS. ROBERTS:**  Correct.

11           **THE COURT:**  So they didn't exist.

12           **MS. ROBERTS:**  Right.

13           **THE COURT:**  And as soon as you got them, you produced

14   them, I assume?

15           **MS. ROBERTS:**  That's right.

16           **THE COURT:**  All right.  So given that, what would be

17   the basis for claiming either a Rule 26 violation or

18   excludability under Rule 37 with regard to documents that just

19   didn't exist before the cutoff and that they got to you as soon

20   as they became aware of them?

21           **MR. PISTORINO:**  Yeah.  I don't think I'm contending

22   it's a Rule 26 violation.  I think I'm just contending that of

23   course the Court set a date for fact discovery cutoff in

24   November, right, November 2 last year, and the documents

25   apparently they intend to rely on for their defenses in the

1    case, you know -- and I understand they've got a view that

2    additional facts came about, whatever.  These guys did this

3    thing in late March, but our -- our -- in this regard, it's

4    just that there was a discovery cutoff date.  If you didn't

5    enforce it in every single case, of course especially a

6    trademark case, right, the parties would come up and somebody

7    somewhere would have done something after the fact discovery,

8    and it would just be a rolling -- rolling discovery.

9          THE COURT:  Well, they obviously can't produce

10   something in November if it doesn't exist until March.  Rule 37

11   says I look at the reason that it's late, and the reason is it

12   didn't exist.  Then I look at whether there is prejudice.

13   You're not really articulating any.  You've had enough time to

14   assess them at this point.

15        With regard to those, I'm inclined to deny the motion.

16        MR. PISTORINO:  Again, I -- candidly, I haven't really

17   assessed them.  I know that there are these Odyssey documents.

18   We wouldn't have obviously been able to take any discovery on

19   them.  These are combined.  These are 10 documents that were

20   included in the 3700 pages produced with -- well, the day of

21   and the day before the exchange of the trial exhibits.  So --

22        THE COURT:  I guess what I'm saying is you don't

23   appear to be articulating any particularized prejudice with

24   regard to these documents.  Is that fair?

25        MR. PISTORINO:  That's fair.

1        **THE COURT:**  All right.  So with regard to the Odyssey

2   Expo documents, the motion is denied, obviously subject to

3   establishing the admissibility at trial.

4        It does seem to me, for example, that as to the video, I'm

5   wondering why it's not hearsay just flat out.

6        **MS. ROBERTS:**  Well, so the video -- and this sort of

7   overlaps a bit with one of plaintiff's motions in limine, and

8   that relates to what Maker Nexus is.

9        Maker Nexus is a competitor of or potential competitor of

10  defendants, and as Maker Nexus describes on its website, it was

11  basically created the day that TechShop abruptly closed its

12  doors.  Some mid-peninsula makers formed a Facebook group

13  called Maker Orphans to, I guess, try to figure out their next

14  steps and stay connected since they lost their maker space when

15  TechShop closed on them, and then evolved from that into Maker

16  Nexus, a, I believe, non-profit that is intending to open up

17  maker spaces.

18       Maker Nexus has wikis, public -- you know, their own

19  websites that provide updates to what's going on in the maker

20  community.  It maintains this Facebook group.

21       And then with respect to the video, it holds -- holds or

22  at least held for a period of time town-hall meetings in which

23  it invited consumers, which would be consumers of -- you know,

24  former TechShop members and potential customers of my clients

25  to these town-hall meetings to sort of learn what was going on

1    in the post-TechShop era.

2        And in this one particular one, it was in January of 2018,

3    there is a question asked and in the excerpt that -- that we've

4    included as a separate exhibit, somebody in the audience asks a

5    member of the board of Maker Nexus *are your plans going to be*

6    *impacted by the negotiations between TechShop and Mr. Rasure,*

7    which were ongoing at the time in January of 2018.  And the

8    speaker on the video responds and says basically no, they're

9    going to go forward.  But it's clear from the colloquy that the

10   people in attendance, these members of the maker community that

11   are potential consumers, understand that TechShop and my

12   clients' business are two separate entities.

13       And so --

14           **THE COURT:**  Same question:  Why is that not hearsay?

15           **MS. ROBERTS:**  Well, we wouldn't be offering it for the

16   truth of the matter asserted, that the negotiations -- so the

17   statements in the video are that the -- the negotiations won't

18   impact Maker Nexus' plans to open their own maker spaces.

19       What we would like to offer it for is to show that this is

20   a well-informed, well-connected community so there is no

21   likelihood of confusion because they know what's going on and

22   who the players are and they have a high degree of customer

23   care, which are both relevant to the *Sleekcraft* factors.

24       So the video is really about the community and to show the

25   jury that these are people who know what's been going on and

1    who the players are, and that defendants are separate and

2    distinct from TechShop.

3           **THE COURT:**  Okay.

4        Now, circling back to the Rule 26 dimension of this, which

5    is the basis for the motion in limine, when did you produce the

6    video?

7           **MS. ROBERTS:**  So we produced that shortly before the

8    trial exhibit list was exchanged.  The reason why is there

9    actually is a document request that defendants served on

10   plaintiff during discovery and plaintiff refused to produce the

11   video.  There was a period of time in which we could not find

12   the video publicly, and we looked again before trial exhibit

13   lists were due, and it was available on YouTube.  This appears

14   to be an amateur video that somebody took on their phone and

15   put on YouTube, but we did ask for it during discovery, and

16   plaintiff refused to provide it.

17       And so the reason why it was not produced earlier is

18   because we asked for it and didn't get it, and we weren't able

19   to find it ourselves at the time.

20          **THE COURT:**  Why -- I don't -- that seems a little

21   sharp.  When you say they refused to produce it, what reason do

22   you have to believe that they had it either?

23          **MS. ROBERTS:**  Well, Mr. Pistorino is actually in the

24   video as a member of the board of directors.

25          **THE COURT:**  Different question, though.  What is your

1  basis for saying that they had it but refused to produce it?

2      **MS. ROBERTS:**  I don't believe they refused on the

3  basis of not having it.  I believe they refused on the basis of

4  it not being relevant, but I can verify that.

5      **THE COURT:**  Did you have it?

6      **MR. PISTORINO:**  No.  No.  I don't believe we refused

7  to produce it on any grounds other than the fact that I never

8  had it.

9      **THE COURT:**  And so if you're saying you asked for it,

10  the representation was what:  *We don't have it in discovery?*

11      **MR. PISTORINO:**  I think -- respectfully, it may help,

12  it's response to Request for Production No. 8.  I objected on a

13  couple grounds, but I said, "Nevertheless" -- they asked for

14  any video recordings, yada yada yada -- I said, "Nevertheless,

15  none are known to exist in our possession, custody, or

16  control," and I didn't have it.

17      **THE COURT:**  All right.  So why at that point, if you

18  thought this was something you might want to use, was it not

19  incumbent on you to run it down before the discovery cutoff?

20      **MS. ROBERTS:**  Well, Your Honor, we did try to run it

21  down and couldn't get it, and I don't know -- I don't know why

22  it ended up on YouTube again, but we had not been able to find

23  it during fact discovery.

24      As I understand it, you know, my client tried to get it

25  from different sources who might have been at that town-hall

1    meeting, but the fact of the matter is we just weren't able to

2    find it online before -- before we did.

3         **THE COURT:**  All right.  Here's what I'll do.  I will

4    give you the opportunity to submit a declaration explaining

5    exactly what you did because that's relevant to figuring out

6    whether there was diligence under Rules 26 and 37, and it

7    should be very detailed in terms of what you did to try to

8    track this down before the discovery cutoff and subsequently.

9    Then I'll decide if there's a basis under a Rule 37 analysis to

10   allow you to use it, notwithstanding the belated production.

11   But the step and the burden is on you to explain what you did,

12   why you couldn't produce before the deadline, and then I'll

13   decide.

14        **MR. PISTORINO:**  If I just may help -- I don't know --

15   to my knowledge, all the people that are shown in the video,

16   they're known to defendants.  I know one of them was identified

17   in our initial disclosures as a potential witness.

18       To my knowledge, no discovery was ever served on that

19   entity.  So it could have been obtained, assuming that they had

20   a copy.

21        **THE COURT:**  All right.  Well, different issue.

22       Okay.  So that one will be tabled.

23       How long do you need to submit the declaration?

24        **MS. ROBERTS:**  Could we have until next Monday?

25        **THE COURT:**  Yes.

1      Okay.  And then with regard to Mr. Hilberman, two strands

2   that cut in different directions.  On the one hand, he was a

3   former employee and officer of the plaintiff; correct?

4           **MR. PISTORINO:**  Correct.

5           **THE COURT:**  So it's obvious that his existence is not

6   a surprise to the plaintiff.  On the other hand, again, from a

7   Rule 26 perspective, as I understand it, the defendants'

8   argument is that no supplementation was required under

9   26(e)(1)(A) because, quote, "the additional or corrective

10  information has ... otherwise been made known to the other

11  parties during the discovery process or in writing."  And the

12  argument is *well, we made it known because he was in documents*

13  *that were produced by both sides,* but that's different, isn't

14  it, than what Rule 26 requires, which is an identification of

15  people who have information that you intend to use in your case

16  in chief.

17      Obviously, thousands and thousands of pages of documents

18  get produced, and there are people's names all over the

19  documents, and I don't generally hear that Rule 26 was

20  satisfied because a person's name appeared somewhere in the

21  discovery.

22      So the question for you is what is your authority for that

23  premise?

24          **MS. ROBERTS:**  I don't have authority handy, but I

25  certainly have been involved in cases where the reliance on a

1   name being identified in many documents, as it is here, being

2   sufficient, but I unfortunately don't have authority with me

3   today on that point.

4        But I think you have to combine the fact that

5   Mr. Hilberman was an employee or worked for plaintiff, he

6   served as plaintiff's CFO, and then plaintiff receiving the

7   documents that we produced and that plaintiff produced in the

8   case, and his name is on the documents, the documents relating

9   to the negotiations between plaintiff and my client,

10  Mr. Rasure.

11       In fact, Mr. Hilberman -- our fraud claim is based on

12  plaintiff and plaintiff's agents inducing my client to pay

13  several expenses on their behalf.  One of those expenses was

14  the medical insurance for the TechShop employees that was

15  overdue.  And Mr. Hilberman is the one who sent the email to

16  Mr. Rasure saying, *Here's all the account information to make*

17  *this payment for TechShop* since, you know -- which my client

18  made because he believed that they were going to enter a deal.

19  But I think --

20            **THE COURT:**  And so given that fact, why wouldn't you

21  have seen that email and said *Oops, we better do a supplemental*

22  *disclosure because now this is someone who has information that*

23  *we plan to use in our case in chie*f and just give the plaintiff

24  direct notice of that in the way that the rule contemplates?

25            **MS. ROBERTS:**  I mean, certainly we could have done

1    that.  That would be the belt-and-suspenders thing to do.  But

2    I do believe Rule 26(e) allows for no supplementation when the

3    information is already known to plaintiff, and I think in our

4    view, because he was the CFO and his name is on these

5    negotiation emails, that Mr. Hilberman fell into the category

6    of a person whose relevance was well-known to plaintiff.

7          **THE COURT:**  I'm not sure I agree with you, but I'll

8    issue an order on that one.

9       Do you have anything further?

10         **MR. PISTORINO:**  If I may, Your Honor.

11      At least as I understand the rule, Rule 26(a)(1)(A)(i)

12   requires an identification not only of the witness, right, but

13   in addition, along with the subjects of the information that

14   the witness has, that the party may use.

15      So with regard to Mr. Hilberman, obviously, again, he's

16   not -- was never listed on any initial disclosures in this

17   case, though the trial witness list provided identifies the

18   subjects he's going to comment on to include, for example, "the

19   closure of TechShop Brooklyn after obtaining $5.3 million

20   investment from New York City."

21      So I don't know where in the world that would come from,

22   what document -- they're not pointing me to any great document

23   that would let me know that Mr. Hilberman had something about

24   that or any way that is remotely relevant to this case.

25      Likewise, they indicate that he's going -- they want him

1   to come and testify about the bankruptcy trustee's lawsuit

2   against Mr. Hilberman.  Again, where in the documents would I

3   then have ever had any idea that Mr. Hilberman was supposed to

4   say something about that or that is remotely relevant?

5       So I think from a supplementation perspective -- let me

6   try it that way -- Your Honor is exactly right in that you

7   would need to have disclosed him and the subjects on it since

8   the documents wouldn't do that in any event, and had you done

9   that, I might have taken different steps, but the first I heard

10  of Mr. Hilberman's alleged centrality to the defendants' case

11  here was with the -- the serving of the trial witness list,

12  which I think, as far as I can tell, plainly violates the rule.

13          THE COURT:  Okay.  Submitted.  I'll likely grant that

14  motion.  I'll issue a written ruling.

15      Plaintiff's Motion in Limine No. 2 regarding fraud

16  allegations.  I agree with the defendant that this appears to

17  just be a re-litigation of the motion to dismiss.  I've ruled

18  on this, and there's no basis for granting that motion.

19          MR. PISTORINO:  May I address it briefly, Your Honor?

20          THE COURT:  You may make your record.

21          MR. PISTORINO:  Thank you.

22      And at the base, I want to say it's in addition to this.

23  It's kind of an across-the-board thing.

24      None of the initial disclosures in this case say anything

25  about fraud.  They don't identify any witnesses that have any

1   knowledge of fraud.  And one thing that strikes me as

2   particularly relevant, there is no computation of damages as

3   required by Rule 26, I think ultimately subsection 3.

4           **THE COURT:**  Okay.  But that, again -- now is not the

5   time for that.  That's not a motion in limine.  That's a motion

6   for summary judgment maybe.  I'm not sure exactly what that is.

7       But really this is an attempt to take another run.  You've

8   got your record made, and if I'm wrong letting it come in, that

9   will be part of your appellate record.  But they've brought the

10  counterclaim for fraud all along; right?

11          **MR. PISTORINO:**  If I may, there's a difference, at

12  least respectfully -- I'm arguing for a difference between the

13  pleading, which I understand -- you know, we respectfully

14  disagree; I understand Your Honor has ruled on that -- and the

15  discovery -- the discovery stuff.  So I think it is properly a

16  motion in limine.

17      What I'm saying is they violated Rule 26.  Rule 26 says

18  you have to have this thing.  The initial disclosures say

19  nothing about fraud and they don't have a computation of

20  damages.

21      When they made the counterclaims, if they wanted to --

22  apparently they've got witnesses, whatever, about fraud.  In

23  addition, they want to claim damages.  And I'm -- what I'm

24  saying -- keep on saying -- is that needed to be initial

25  disclosures and it was not, and it was never supplemented to

include it.

          **THE COURT:**  Well, wait a second.  They gave you a

report that says what their damages calculation is; right?

          **MR. PISTORINO:**  No.  There is no -- no -- exactly no.

There is no expert report on damages.  There is no -- no lay

report on damages.  The first time I had notice of what the

alleged damage claim was, again, was with the pretrial

materials.

     So had they provided me a computation of damages alleged

with respect to fraud in accordance with Rule 26, I wouldn't be

standing here arguing about it.  But what I'm saying is, again,

given all the efforts here to try to obtain the initial

disclosures from the defendants here, allowing -- again, I

think exactly -- putting aside the pleading issue, just

straight evidence, *did you disclose the witnesses you say had*

*the information and the subject matter of the witnesses in your*

*initial disclosure,* they did not.  They never mentioned fraud.

*Did you provide a computation of damages* -- and with respect --

because I know it comes up again.  It's going to be relevant to

one of our motions in limine.

     With respect to damages, Rule 26 --

          **THE COURT:**  Look, Counsel, you're shapeshifting.  I'm

looking at your motion.  There is nothing about Rule 26 in it.

It's about Rule 9 and the allegations of fraud need to be pled

with particularity.

1        Show me in your motion where there is any Rule 26

2   argument.

3        **MR. PISTORINO:**  I think what I said in the motion was

4   to the extent it was not disclosed in the -- in the pleadings,

5   that I didn't want to hear about it because there was no other

6   discovery related to it, is what I said, I believe.

7        **THE COURT:**  That's not the argument you're making

8   right now.  It's not remotely the same.

9        **MR. PISTORINO:**  So, again, I think I'm trying to

10  make -- maybe I'm not.  Maybe I'm not, but I'm trying to

11  communicate it.

12       What I said, I think, in the motion was if it was in the

13  pleadings, fine.  If it was in your counterclaims, fine.  But

14  if it's not in your counterclaims because there is no discovery

15  about it, I don't want to hear about it.

16       **THE COURT:**  Right.  So show me where you said it.  Why

17  don't you pull it up.  It's Document 137.  Why don't you point

18  me right to the place that I can see your argument in writing

19  that you just made.

20       **MR. PISTORINO:**  I -- maybe I'm missing -- I think I'm

21  looking on page 3 of the motion.  "Allegations not pled in the

22  counterclaims should be excluded."

23       **THE COURT:**  Rule 26 doesn't have anything to do with

24  allegations.  It has to do with production of evidence.

25       **MR. PISTORINO:**  Right.  And so -- again, maybe I'm

1    missing --

2          **THE COURT:**  Counsel, see, this is the part where my

3    steam will start to rise.  It's on you to front the argument

4    you were making clearly.  Stop shapeshifting.  You're just

5    making an argument that has never been presented until the

6    second it just came out of your mouth.

7          Now, in a normal case, you all would have done some

8    depositions and this would have gotten teed up, so I'm not

9    quite clear what strategic decisions everybody made to end up

10   in this oddball circumstances where we're going to trial and

11   you won't have any idea what the witnesses are going to say,

12   but that said, where did you disclose the damages?

13         **MS. SLOBODYANYUK:**  Our damages are in our discovery.

14   We have produced a number of documents showing our damages.  If

15   plaintiff wanted -- we agree with Your Honor -- they could have

16   taken the deposition of our witnesses regarding our fraud claim

17   which was in our pleadings.

18         **THE COURT:**  Well, where did -- what, in your view, is

19   your responsibility under Rule 26 with regard to your fraud

20   claim?

21         **MS. SLOBODYANYUK:**  We have the evidence that supports

22   our fraud claim through our documents discovery.

23         **THE COURT:**  Let me put it this way --

24         **MS. ROBERTS:**  Your Honor, if I may, I think what

25   happened with the fraud claim is the motion to dismiss was

1   pending.  Plaintiff did not serve any discovery asking for

2   anything about our fraud claim.  We didn't serve any discovery,

3   but we didn't feel that we needed it.  We had everything we

4   needed, and we affirmatively produced documents that support

5   the claim, even though requests were not served on us.  But

6   neither party, you know, supplemented their initial disclosures

7   related to the fraud claim.  Probably we should have, but I

8   think everyone was probably sort of waiting to see what was

9   going to happen on the motion to dismiss.

10          **MR. PISTORINO:**  Which -- may I briefly respond to

11  that, Your Honor?

12          With regard to the damages, the rule requires a

13  computation of damages, not that you've got some document

14  someplace somewhere that may support any number you cook up.

15  But I think importantly, because it does relate to another

16  motion in limine that I have here, what the rule requires, in

17  addition to a computation of damages, it says, "Including

18  materials bearing on the nature and extent of injury suffered."

19          So, again, I don't think they're contending that they ever

20  complied with that, and I know one of my other motions in

21  limine, which they have resisted, goes to the allegation that

22  somehow the breakdown in the negotiations caused a health issue

23  with Mrs. Rasure.

24          **THE COURT:**  We'll get to that one later.

25          Defense counsel, did you comply with Rule 26(a)(1)(A)(iii)

1    by providing a computation of each category of damages claimed

2    by the disclosing party?

3           **MS. SLOBODYANYUK:**  We certainly stated that we were

4    going to be seeking attorneys' fees in response to Rule 26.

5           **MS. ROBERTS:**  I think the specific amounts are laid

6    out in the pleading and then supported by the documents we

7    produced.  There was not a separate paper that was defendants'

8    supplemental initial disclosures.

9           **THE COURT:**  So you're saying that the counterclaim

10   itself contains a computation of each category of damages

11   claimed?

12          **MS. ROBERTS:**  It lists the payments that -- to the

13   extent he was asking about specific amounts, he lists the

14   payments.  The pleading lists the payments that Mr. Rasure

15   paid.

16          **MS. SLOBODYANYUK:**  And then we -- yeah.  It lists the

17   payments to the penny.

18       And just to go back to the point Your Honor was making

19   earlier, the motion in limine which plaintiff brought, it

20   wasn't a Rule 26 motion.  It was entirely focused on Rule 9.

21          **THE COURT:**  Here's what I'll do.

22       Because the motion presented is not the motion that's now

23   being argued, I will give you the opportunity to respond, so

24   you will have five pages to respond by Monday.  And what you

25   ought to do is explain why you complied with the requirements

1   of Rule 26 with regard to the fraud counterclaim evidence,

2   including the computation of damages.

3          **MS. SLOBODYANYUK:**  Understood.

4          **THE COURT:**  And it will stand submitted.  All right.

5      Next, plaintiff's motion in limine regarding Maker Nexus

6   that we've already started to discuss.

7      In essence, it seems to me that there are two purposes

8   that the defendants are advancing for the evidence.  One is

9   this idea of, quote/unquote, "showing that the case was brought

10  for anti-competitive purposes," which strikes me as irrelevant.

11  I don't know what element that goes to.  And plaintiff's

12  counsel's involvement just seems plainly irrelevant to any of

13  the actual issues.  The jury will have to decide.

14         **MS. ROBERTS:**  Your Honor, we have no intention of

15  presenting the motive to the jury, but we reserve the right to

16  the extent that comes up in any post-trial briefing before

17  Your Honor.

18         **THE COURT:**  I see.  So it's a circumstantial --

19         **MS. ROBERTS:**  But we do not intend --

20         **THE COURT:**  -- case argument basically --

21         **MS. ROBERTS:**  Exactly.  We do not intend to present

22  any motive stories to the jury.

23         **THE COURT:**  Okay.  That is helpful.

24     So what is -- it seems to me that the advanced purpose is

25  that it goes to likelihood of confusion or actual confusion in

1    the way that you articulated before.  That does seem to be a

2    relevant purpose.  Always there will be a 403 question, there

3    will be a cumulative question, and potentially you have to see

4    how it actually gets introduced, but at least it seems, on its

5    face, to be relevant under the rules.

6         Now, showing plaintiff's counsel on the video I think

7    really could be a problem and I'm not inclined to permit that,

8    in any event, but if we set that aside, what is the basis for

9    concluding that this evidence ought to be excluded under either

10   Rule 401 for relevance or Rule 403?

11        **MR. PISTORINO:**  So if I may, I think, as I understand

12   it, there are two bases for which this has been now articulated

13   to be relevant.  One goes to degree of care under *Sleekcraft*,

14   but I think the proper standard under degree of care -- again,

15   it's not what some -- an isolated group's degree of care might

16   be; right?  It's the degree of care of a typical buyer

17   exercising ordinary caution, and I think the cases do say flat

18   out that the standard includes both the ignorant and the

19   credulous.  So I know I put the case *Fortune Dynamic*, 618 F.3d

20   1025, Ninth Circuit 2010.

21        **THE COURT:**  But that goes to weight not admissibility.

22   And then that -- that's the point, that the idea would be well,

23   this isn't as strong because this is a highly-informed group,

24   and your argument would be what it is, but why is that a basis

25   for excluding the evidence?  We don't exclude evidence because

1   you don't think it's weighty and --

2           **MR. PISTORINO:**  My argument -- sorry.  My argument is

3   only that it's not relevant to the issue of degree of care of

4   the typical buyer.  The degree of care of the typical buyer,

5   you could get evidence of that, for example, from survey

6   evidence.  You could have conducted a survey, whatever.

7           But trying to find two, three guys, however many people

8   you contend are going to put up something, that would not be

9   evidence of the degree of care of the typical buyer

10  expressing -- exercising ordinary caution.  So from a relevance

11  perspective, that's why I'm objecting to it on that grounds.

12          The other thing I think that they informed me that they

13  offered it for was regarding to actual confusion, and, again, I

14  think -- once again, I think they're not rebutting that

15  people -- those people were confused.  So offering evidence

16  that 15 people, for example, weren't confused I don't think is

17  actually evidence related to the issue of actual confusion, if

18  I'm being clear here.

19          At the end of the day, evidence -- affirmative evidence of

20  actual confusion is evidence that is relevant to *Sleekcraft*

21  factors, but evidence that individual people weren't confused

22  is not relevant evidence to those factors.

23          **THE COURT:**  All right.  Again, none of what you just

24  said was in your motion.  This trial won't go well if you keep

25  pulling this.  If you have an argument, write it down, support

1     it.  I'll consider it.

2          The motion is denied.

3          **MR. PISTORINO:**  Thank you.

4          **THE COURT:**  Finally, Motion in Limine No. 4 regarding

5     defendant's health and family condition, that motion will be

6     granted.  It's hard for me to see how it's relevant at all.  If

7     it is relevant, it's barely relevant, and even if it is, under

8     Rule 403, it plainly creates the prospect of a mini trial as to

9     what exactly caused these medical impacts, and that creates a

10    substantial prospect of likelihood of confusing the issues for

11    the jury, wasting time, and imposing unfair prejudice.  We're

12    not going to have that mini trial.

13         All right.  That's the motions in limine.  I've ruled on

14    most of them.  There are a couple that rulings will be

15    forthcoming.

16         All right.  With regard to logistics, I got the parties'

17    trial time estimates that I ordered, and I'm just -- I'm not

18    going to give the amount of time that you've estimated.  For

19    comparison, I've had a really complicated copyright case that

20    was tried in 12 hours per side, significantly more complicated

21    trademark case than this that was 12 hours per side.

22         My inclination is 12 hours per side, and that's for all

23    direct and cross, with a running chess clock.  And even that

24    strikes me as potentially a little padded.  That will include

25    closing and openings.

1          **MS. ROBERTS:**  The 12 hours includes closing and

2     openings?

3          **THE COURT:**  It does.

4          **MS. ROBERTS:**  Are there limits for closings and

5     openings or do we -- is it up to us?

6          **THE COURT:**  It's up to you.  You can allocate your 12

7     hours how you see fit.

8          Trial lawyers know that you have to keep in mind how much

9     the jury can absorb at any given phase of the trial and proceed

10    accordingly, but I will just set the overall limit and you can

11    allocate it.

12         All right.  So with that, we'll be going my standard trial

13    day, which is 8:30 to 1:30.  We take two 15-minute breaks

14    within that but no lunch, so we usually get in about four and a

15    half hours of testimony each day.

16         So we're starting on June 3rd.  Based on the estimate that

17    I just -- the limit that I just gave you, it sounds like we'll

18    be able to be done sometime -- and get the case to the jury in

19    the early to mid part of the following week.

20         All right.  And then just the usual -- you probably read

21    my standing order.  I am very focused on being efficient with

22    the jurors' time so I discourage sidebars, and the way that I

23    try to avoid sidebars is every day at 8:00, if there are issues

24    that need to be taken up, we take them up before the jury gets

25    here.

1    And I'm trying to remember if this is still in my standing

2    order, but basically what I ask you to do is the day before, so

3    when we get out of court, exchange the next few witnesses that

4    will be up the next day.

5             **THE CLERK:**  It's still there.

6             **THE COURT:**  It's still in the order?

7             **THE CLERK:**  Yes.

8             **THE COURT:**  All right.  So just follow the order.

9        The one change that I've made that I've found has worked

10   well is essentially I have you meet and confer about

11   evidentiary issues, and you can do short filings, teeing those

12   up.  I think the order may say by midnight, but it should be by

13   10:00 so that we have some time to know what came in and can be

14   prepared to discuss it with you at 8:00, if needed.

15       So you should plan to be here at 8:00 every day.  Even if

16   there is not anything that is on your agenda, there might be

17   something that is on mine.

18       For a trial of this length, I will seat eight jurors.

19   That way if we lose a couple, we'll be covered.  We've

20   obviously got to have six to get the verdict.

21       With regard to *voir dire*, I got your proposed questions.

22   I'll take a look at them, and I don't generally read all of

23   them, but it looked like the concepts that you were proposing

24   were appropriate ones.  I will give each side 10 minutes of

25   follow up.  So I'll do the *voir dire* and then you'll get 10

1    minutes to do follow-up questions.

2         And the usual things that you would expect a federal judge

3    to say apply:  No argument, no argumentativeness, no trying to

4    preview the evidence, just straight ahead, trying to find out

5    something about them as people.  But I definitely do not want

6    any arguing, characterizing of the law.  That tends to be

7    confusing for them.  So use your best judgment there.

8         Given that the case is relatively short and I don't think

9    the subject matter is all that controversial, I'm not inclined

10   to do a written questionnaire in advance.  Just so you know, my

11   practice is I have a very short questionnaire that will be on

12   each of their seats that just asks them to give us the basic

13   biographical information:  Their name, what they do, what their

14   spouse does, whether they've served on a jury before, those

15   kinds of questions.  And I actually ask them to just stand and

16   answer those so we get some sense of who they are.  We get to

17   hear them say something.

18        To get eight here, I will have to figure out how many I

19   *voir dire*.  We'll probably call in the usual -- what, Madame

20   Clerk, 30 -- 30 something?

21            **THE CLERK:**  I can't remember, but --

22            **THE COURT:**  No?

23            **THE CLERK:**  I'm sorry.

24            **THE COURT:**  And then generally what I'll do is,

25   especially if we're trying to get eight, I probably would not

1    *voir dire* all 35 or 38 people but some subset, so 20, 25,

2    something like that.  I'll figure out how many I think I need

3    to get us our eight.

4         And I saw that the parties have an undisputed statement of

5    the case, which I appreciate.  The only question is whether

6    it's a service mark or a trademark.  Can we resolve that

7    dispute?  I'll have to pick one way -- one or the other to give

8    them the theory, but is that going to be contested at trial?

9         **MS. ROBERTS:**  Well, they're service marks so, in our

10   view, we should call them what they are.

11        **THE COURT:**  Do you disagree with that?

12        **MR. PISTORINO:**  I disagree with it and to this extent,

13   Your Honor.

14        A service mark is a type of trademark, and so the point

15   I've just been making is from the lay public's general

16   perspective, I think it's probably fair to say that the lay

17   public is not familiar with -- as familiar with the term

18   "service mark" as they are with the term "trademark."  And so

19   since there is no need to further confuse the issues by

20   introducing something that's not disputed -- not disputed that

21   a service mark is a trademark or that it could just be called a

22   trademark -- that's the reason I prefer to just refer to them

23   as trademarks.

24        **THE COURT:**  Why don't you meet and confer.  It seems

25   like we could say something like "a service mark (which is a

1    trademark that is used by a provider of a service)."  I don't
2    know.  I do take the point that people will be marginally more
3    familiar with the idea of what a trademark is than what a
4    service mark is, and so if you can come up with some
5    agreed-upon language that just finesses that, I think that
6    would be helpful.
7            **MR. PISTORINO:**  Okay.
8            **THE COURT:**  And then the preliminary instructions I'll
9    look at.  My inclination obviously is most of the preliminary
10   ones are Ninth Circuit Models.  There were some that I'll have
11   to take a look at that seemed to me probably don't need to be
12   given as preliminaries and rather would be final instructions,
13   so I'll -- before the trial, at least a few days before, I'll
14   give you a proposed set of the preliminary instructions that
15   you can comment on and raise any issues that you have with
16   them.
17       All right.  I think those were the only issues that I had.
18   Do you have questions?
19           **MS. ROBERTS:**  I do, Your Honor.
20           **THE COURT:**  All right.
21           **MS. ROBERTS:**  On jury selection, how do you handle
22   peremptories and how many are there?
23           **THE COURT:**  Each side gets three under the Rules of
24   Civil Procedure.  And in terms of the challenges, I don't do
25   any intermediate excuses.  So we *voir dire* everybody.  I gave

them a break.  I talk with counsel.  I tell you who I think

should be excused for hardship or cause.  You can tell me if

you agree.

    Once we handle those, then you get to exercise your

peremptories, just going back and forth, so they're not here

while you are doing the peremptories.  I don't do the "We thank

and excuse Mr. Jones."  They're outside.

    Once that's complete, I call them back in.  We swear the

jurors who are selected and I let everyone else go.

    And then on that first day, we would plan to do certainly

the preliminary instructions for them.  You should be prepared

to do your openings that day, if it goes relatively quickly.

Sometimes it does, sometimes it doesn't, but we certainly, at a

minimum, should be prepared to do that, and even if the

plaintiff can have its first witness available in case it goes

really fast.

            **MR. PISTORINO:**  I will have him available.

            **THE COURT:**  All right.

            **MS. ROBERTS:**  And you mentioned for the few days

before trial, we'll get the proposed preliminary instructions.

What is the procedure for final instructions?

            **THE COURT:**  We'll do it during the trial.  I'll have a

charging conference.  Obviously at some level, we need to know

how things come in.  Some of them fall out, some of them

change, but the plan would be probably somewhere if it --

1    either toward the end of that first week or right at the

2    beginning of the second week, when it looks like we're close to

3    having the case ready to submit.

4              MS. ROBERTS:  And when do you hear or how do you

5    handle Rule 50 motions?

6              THE COURT:  The JMOL motion?

7              MS. ROBERTS:  Right.

8              THE COURT:  Just that you would make it at the end of

9    the plaintiff's case.  You just preserve it.

10             MS. ROBERTS:  Is orally sufficient?

11             THE COURT:  Yes.  Exactly.  And just you -- what I

12   probably would do is let you just state the grounds.  I don't

13   then have a full -- you know, there is not much point to having

14   an extended argument, but as long as you state the grounds with

15   enough specificity that your argument is preserved, that's the

16   point.

17      I very rarely would decide a motion for judgment before

18   the verdict comes back.  I generally will take it under

19   submission subject to the verdict.  But you just need to make

20   sure that you make the motion in enough detail that you

21   preserve your record.

22             MS. ROBERTS:  Then there are a number of issues that

23   we laid out in the joint pretrial statement that are equitable

24   issues.  How will you handle those or when will you handle

25   those?

1      THE COURT:  It seems to me that if we get to the point

2  that I need to deal with those, we would just set post verdict

3  some schedule for dealing with that.

4      Would you be envisioning an evidentiary hearing or just

5  additional argument?

6      MS. ROBERTS:  I tend to think additional argument.

7      THE COURT:  All right.  So that's what we would -- to

8  the extent that there are issues that are equitable issues for

9  me, we would just set a schedule for dealing with those,

10  probably relatively soon after the trial, but not the day the

11  verdict comes back.

12      MS. ROBERTS:  In terms of your schedule for when we

13  disclose exhibits to each other, if we can agree, is it okay

14  with you if we exchange them -- disclose them to each other a

15  little later in the day?  I think your standing order says

16  noon.  Since we will all be in the courtroom at noon, if we

17  could agree to 2:00 or 2:30, is that okay with you?

18      THE COURT:  It is.  Just as long as you give yourself

19  enough time to work through any disputes and tee it up on the

20  schedule that I mentioned, that will be fine.

21      MS. ROBERTS:  And then the last thing I had on my list

22  is we previewed this in our submission this morning on the

23  estimated time for each witness.  Several of our witnesses are

24  on plaintiff's trial witness list and so our preference would

25  be, to the extent that we're able to get everything out when

1   the plaintiff -- when the witness is on the stand or during

2   plaintiff's case in chief, we would prefer not to have to call

3   witnesses twice, but I wanted to see it that was okay with

4   Your Honor, if we'll be able to go beyond the scope of direct.

5        THE COURT:  This always ends up being tricky.

6        What is your take?

7        MR. PISTORINO:  My take is it's probably better to

8   limit it to the initial scope of direct and then just -- that

9   way the case can be presented more cleanly, I'll say, from --

10  each side's case could be presented more cleanly, would be my

11  initial reaction to hearing that.

12       THE COURT:  Yeah.  It always involves countervailing

13  and weighty purposes.  One is being respectful of the

14  convenience of the witnesses and not having people have to come

15  back.  The flip side is that the plaintiff does have some right

16  to control the presentation of its case.  Certainly for JMOL

17  purposes, it gets complicated if there is material that is

18  being introduced that wouldn't be but for doing that.

19       What I would suggest you all do is discuss it and see.

20  Everybody is better served if we can accommodate the

21  convenience of the witnesses.  The jurors always are confused

22  when Mr. Smith comes back later.  And what I found is a real

23  hazard is repetitiveness, which is the number one killer of

24  juror interest, and the tell-it-again model is not something I

25  would recommend.

1       But my impression, having dealt with this issue in just

2   about every civil trial I've had, is that there is not any

3   authority that would establish a strong basis for me imposing

4   this over the plaintiff's objection.  I've had plenty of cases

5   where everyone has agreed that it made more sense to do it, and

6   I would hope that you can have that discussion, and if it does

7   make sense, I would appreciate it and I'm sure the witnesses

8   will appreciate it.  But why don't you start there.

9       **MR. PISTORINO:**  If I may, even though that's my gut

10  reaction to hearing it, I was going to say I fully commit to

11  working with Ms. Roberts to accommodate the witnesses, and so

12  if I think it makes sense to knock a guy out so he doesn't have

13  to come back, I agree, that's a better idea usually.

14      **THE COURT:**  Okay.

15      **MR. PISTORINO:**  I just want to think about it more.

16      **THE COURT:**  Fair.

17      **MR. PISTORINO:**  If Ms. Roberts doesn't have any other

18  questions --

19      **MS. ROBERTS:**  I think that's all for me.

20      **MR. PISTORINO:**  -- I wanted to follow up on two

21  issues.

22      Actually, one goes back to the convenience of the

23  witnesses.  I think because it's relatively dynamic, what I'm

24  really thinking about is -- and I don't know whether or not the

25  rule will be invoked, but where would the witnesses be in

1    the -- in the courthouse or nearby to be ready?  I know I

2    actually checked with the person in the jury room, and of

3    course they don't want them in the jury waiting room.  They

4    don't want them there.

5         **THE COURT:**  Usually, I think, people stay in the

6    attorney lounge.

7         Everyone should agree there will be an exclusion of

8    witnesses until they've testified.  If they testify and then

9    they want to hang around and won't be recalled, that's fine,

10   but generally I think that's where they stage it.

11        **THE CLERK:**  We have a witness room as long as we don't

12   have a competing trial on this floor.  I just open up the

13   witness room, and it's unlocked during trial time.

14        **THE COURT:**  Even better.

15        **MR. PISTORINO:**  Great.  I just wanted to make it

16   convenient for everybody involved and speedy.

17        And just the one actual practical issue that I was

18   thinking about, just to make sure that I'm clear, so with

19   regard to JMOL motions, I want to make sure I'm clear.

20        At least as I understand the rule, although it typically

21   doesn't happen, of course, but if there is a JMOL motion, I

22   believe we would have the opportunity to cure whatever alleged

23   defect there might happen to be, so, again, I'm thinking of the

24   witnesses and that kind of thing.

25        **THE COURT:**  I actually don't know that that's the

case.  If you've got authority for that, you can present it,
but, I mean, that's the whole point, is that you say *we rest*
and they say *well, you rested and you missed something.*  If
there is a right to cure, it's news to me, but --

          **MR. PISTORINO:**  If you --  I'm fairly certain -- at
least I understand the rule that way.  If you like, I can
certainly prepare something for the Court.  Maybe we'll all get
an education.

          **THE COURT:**  I think that would make sense.  It's
obviously not the most immediate priority --

          **MR. PISTORINO:**  Correct.

          **THE COURT:**  -- but that's fine, if you want to submit
that.

          **MR. PISTORINO:**  I will.  Thank you.

          **MS. ROBERTS:**  I do have one more question that's very
logistical.  Sorry.  Go -- you can finish.

          **MR. PISTORINO:**  I -- what I was going to come back to
again -- Ms. Roberts may disagree with me, but I think it's
fair to say that, in my view, Ms. Roberts and I have been
working together relatively cooperatively on some of these
issues, so I do anticipate -- what this is really going to is
the exhibit lists.  I know both sides have objections to
significant numbers of each side's exhibits, so I sincerely
anticipate, certainly from my side, that many of those would be
resolved well before we get to trial and to minimize the burden

1  on the Court and the disputes about them.

2       So I'm anticipating that -- I know we almost met and

3  conferred again this past -- yesterday, and I know we agreed --

4  I agreed to some substitutions that they wanted today and that

5  they submitted.  So I anticipate that.  I just want to let you

6  know that I anticipate that happening.

7       **THE COURT:**  That makes very good sense.

8       **MS. ROBERTS:**  So you're standing order says that you

9  want a flash drive of exhibits?

10      **THE COURT:**  Yes.

11      **MS. ROBERTS:**  Does that mean you don't want any paper

12  exhibits?

13      **THE COURT:**  I don't.

14      **MS. ROBERTS:**  So we're not lugging in boxes?

15      **THE COURT:**  Exactly.  That's exactly where that came

16  from.  And then I just have it here, and I can look at the

17  exhibits.

18      **MR. PISTORINO:**  Sounds good.

19      **MS. ROBERTS:**  Good.

20      **THE COURT:**  Okay.  And I take it the parties don't

21  have any further plans to discuss negotiated resolution, or do

22  you?  I guess I shouldn't assume anything.

23      What is your plan in that regard?

24      **MR. PISTORINO:**  I think I can speak for plaintiff in

25  saying that we do not have any plans for further settlement

1   efforts at this time.

2           **MS. ROBERTS:**  And our view, we had a settlement

3   conference in the fall and were not able to resolve things.  We

4   would be happy to continue discussing.  I'm not sure if it

5   would be fruitful, but we would not foreclose discussions.

6           **THE COURT:**  All right.  Have you kept in touch with

7   Judge Spero since your conference?

8           **MS. ROBERTS:**  I have not, Your Honor.  I don't believe

9   our side has.

10          **MR. PISTORINO:**  No.  I certainly know the plaintiff's

11  side has not, and, again, I should say if I did believe that

12  there was even a remote possibility of settlement discussions

13  being fruitful, I would certainly tell you that right now.  But

14  since I don't believe that, that's why I'm saying that we don't

15  have plans.

16          **THE COURT:**  All right.  Well, I will take you at your

17  word on that.

18      All right.  Anything further?

19          **MR. PISTORINO:**  Nothing for plaintiff, Your Honor.

20          **MS. ROBERTS:**  No, sir.

21          **THE COURT:**  All right.  I will look for the filings

22  that you owe me.  I'll issue a short order on the outstanding

23  motions in limine, although I'm waiting for a couple of things,

24  I think, before I can do that.  And then we'll see you here

25  on -- what is it?  June 3rd?

1              **MR. PISTORINO:**  Correct.

2              **MS. ROBERTS:**  Yes.

3              **THE COURT:**  See you then.

4                    (Proceedings adjourned at 4:08 p.m.)

1

2

3                        <u>CERTIFICATE OF REPORTER</u>

4          I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:    Thursday, May 9, 2019

8

9    *Pamela Batalo Hebel*

10   _____
     Pamela Batalo Hebel, CSR No. 3593, RMR, FCRR
11   U.S. Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25