Ann McFarland Draper (Bar No. 065669)
courts@draperlaw.net
Draper Law Offices
75 Broadway, Suite 202
San Francisco, California 94111
Telephone: (415) 989-5620

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Andrea Pallios Roberts (Bar No. 228128)
andreaproberts@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Ed DeFranco (Bar No. 165596)
eddefranco@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

John E. Nathan (P*ro Hac Vice*)
jnathan155@yahoo.com
John E. Nathan LLC
1175 Park Avenue
New York, NY 10128
Telephone: (917) 960-1667

Attorneys for Defendants and Cross-Complainants

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| TECHSHOP, INC., a California corporation, DORIS A. KLEIN, in her capacity as Chapter 7 trustee for TECHSHOP, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>DAN RASURE, et al.,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | CASE NO. 4:18-CV-01044-HSG (JCS)<br><br>**DEFENDANTS AND COUNTERCLAIMANTS' BRIEF RE EVIDENTIARY DISPUTES FOR JUNE 10, 2019**<br><br>Hearing Date: April 30, 2019<br>Pre-Trial Conference: April 30, 2019 3:00 p.m.<br>Trial: June 3, 2019, 8:30 a.m.<br>Judge: Hon. Haywood S. Gilliam, Jr. |

Defendants and Counterclaimants ("Defendants") submit below their positions regarding exhibit, testimony, and witness disputes for June 10 that the parties could not resolve.

## I. PLAINTIFF'S OBJECTIONS TO MR. BUNGER AND BUNGER DEMONSTRATIVES

### A. Mr. Bunger's Qualifications

Plaintiff's objections to Mr. Bunger's qualifications will be resolved by the voir dire on June 10, 2019.[1]

### B. The Substance of Mr. Bunger's Testimony and Demonstratives

#### 1. Objections to Demonstratives on the Basis of the Opinions Therein

Plaintiff objects to <u>all</u> of Mr. Bunger's direct examination demonstratives.[2]  Other than the issue regarding Fed. R. Evid. 703 discussed separately below, the crux of Plaintiff's objections are that the subject matter on which Mr. Bunger opines is not relevant, and Mr. Bunger lacks the proper expertise.  Plaintiff filed a Daubert motion on these issues (Dkt. 126) and the Court denied the motion.  (Dkt. 158.)  Plaintiff is seeking a re-do, making the same arguments that were previously unsuccessful.

Mr. Bunger's opinions fall into four categories:  (1) the messy bankruptcy of TechShop in November 2017 damaged customers and employees such that the brand in the U.S. held negative value (Slides 5-27); (2) "2.0" is important in the branding context (Slides 28-32); (3) "Tech" and "Shop" are common terms in makerspace names (Slides 33-35); and (4) a lost licensing revenue model for the TechShop mark based on foreign licensing history when there has been no history of licensing in the U.S, is not an appropriate valuation method for this case (Slides 36-41).

**Negative Brand Equity.**  Plaintiff argues that whether or not TechShop had negative brand value is irrelevant.  It is not.  Plaintiff put the value of the TechShop brand at issue in its

---

[1] On June 7, Defendants provided the Court with a hard copy binder containing Mr. Bunger's reports.  Defendants inadvertently provided a binder that did not include all of the appendices to the reports, including Mr. Bunger's bio and list of publications.  Defendants file herewith the full opening and rebuttal reports of Mr. Bunger, including all appendices.  (Ex. A.)

[2] Defendants timely served an updated set of demonstratives on June 9.  The new set is attached as Exhibit B.

case in its attempt to show that TechShop was damaged by Defendants' alleged infringement and the amount of damages.  Plaintiff examined Mr. Newton and Mr. Woods regarding how successful TechShop was prior to its November 15, 2017 closure, taking time to go through magazine article after article discussing TechShop prior to its financial difficulties.  Plaintiff asked both witnesses to testify about what it was like to have President Obama visit TechShop—again, an event that pre-dates the closure.  Then, Plaintiff's damages expert Dr. Matolo put brand value into issue.  He testified as to how much the TechShop brand was worth in the United States before and after the bankruptcy, incredibly saying that the brand was worth *more* after the bankruptcy.  Mr. Bunger's opinion rebuts Dr. Matolo's opinions.  Mr. Bunger relies on the type of data that experts in his field rely upon:  various sentiment analysis tools and traditional and social media sources.  Dr. Matolo relied on publicly available materials as well.  Mr. Bunger concludes that TechShop had negative brand value after the bankruptcy.  This is appropriate expert testimony.  *Invisible Fence, Inc. v. Fido's Fence, Inc.*, 2014 WL 201457, at *2-3 (E.D. Tenn. Jan. 17, 2014) (finding that branding expert's "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue" in a trademark case); *Active Sports Lifestyle USA LLC v. Old Navy, LLC,* 2013 WL 11239385, at *13 (C.D. Cal. Nov. 21, 2013) (holding that branding expert "offers opinions on topics that are appropriate to his expertise and the facts and legal theories in this [trademark infringement] case"); *Allstate Ins. Co. v. Kia Motors Am., Inc.*, 2017 WL 10311211, at *6 (C.D. Cal. Sept. 20, 2017) (declining to exclude expert testimony on brand value in a trademark case).

      Plaintiff claims that Mr. Bunger cannot offer testimony regarding consumer perception of the brand without a consumer survey.  Plaintiff is incorrect.  *Lifescan, Inc. v. Shasta Techs., LLC,* 2013 WL 12201564, at *8-9 (N.D. Cal. May 21, 2013) (denying a motion to exclude a brand value expert's testimony on relevance grounds and noting that the fact that the expert "did not conduct a survey pertaining to consumer confusion in this case is not dispositive as to the admissibility of his testimony").  Moreover, Plaintiff itself did not offer any consumer surveys to support its claims as to the value of the TechShop brand.

**Use of 2.0 in a Branding Context.** Mr. Bunger's second opinion relates to the use of 2.0 in a branding context and whether consumers in the makerspace community would be aware that TechShop and TechShop 2.0 were different entities. Mr. Bunger has expertise to offer opinions on these issues because he is both an expert in brand value and makerspaces. (Ex. A.) This Court has established that "[u]nder the reliability requirement, the expert testimony must have a reliable basis in the knowledge and experience of the relevant discipline," and "[w]hen evaluating specialized or technical expert opinion testimony, the relevant reliability concerns may focus upon personal knowledge or experience." *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 542 (N.D. Cal. 2018) (citations and quotations omitted). Mr. Bunger has the requisite personal knowledge and experience in both branding and the maker movement to opine on this issue. *See USA v. Lucero*, 2018 WL 466503, at *3 (N.D. Cal. Jan. 18, 2018) (denying *Daubert* motion where expert's "historical perspective" could aid the jury).

Mr. Bunger's opinion is relevant, at least, to whether there is actual confusion and intent to confuse. Mr. Bunger's opinion is thus relevant to the jury's assessment of at least those two *Sleekcraft* factors. This is proper. Relevance in relation to expert witness testimony "simply requires that the [testimony] logically advance a material aspect of the party's case." *Racies v. Quincy Bioscience, LLC*, Case No. 15-cv-00292-HSG, 2016 WL 5725079, at *3 (N.D. Cal. Sept. 30, 2016) (citations omitted). Further, "courts distinguish between permissible expert opinions on the individual *Sleekcraft* factors from impermissible testimony amounting to legal conclusions on whether there is or is not a likelihood of confusion." *Marketquest Group, Inc. v. BIC Corp.*, 2018 WL 1756116, at *3 (S.D. Cal. April 12, 2018) (citations omitted). "[E]xpert testimony on the factors that go into the ultimate finding on the confusion issue is generally quite proper and helpful to both judge and jury." *Id.* Here, whether the use of 2.0 conveys something different in a branding context, and whether information was provided to members of the makerspace community to allow them to distinguish TechShop and TechShop 2.0 are relevant to whether consumers were actually confused and whether there was intent to confuse on the part of Defendants. The jury will reach those ultimate conclusions, but the foundational facts based upon Mr. Bunger's expert opinions are permissible.

**Common Terms in TechShop Name.** Mr. Bunger's third opinion is that the words "tech" and "shop" are common in makerspace names. Mr. Bunger has expertise to offer an opinion on this issue because he is an expert in the maker movement. As laid out in his report, he analyzed 1431 makerspaces opened in the ten years between December 15, 2008 and December 2, 2018 and identified the frequency with which these terms are used in names. This information is relevant to the strength of the mark *Sleekcraft* factor. As above, Mr. Bunger is not offering an opinion as to the ultimate conclusion as to whether the marks are strong. Rather, he is providing the foundational facts on which the jury may base its conclusion. Plaintiff contends that it is improper to look at the two words separately, but "courts may analyze all components of the mark in determining whether those parts, taken together, merely describe the goods or services offered." *Lahoti v. Vericheck, Inc.*, 586 F.3d 1190, 1201 (9th Cir. 2009) (finding that the district court should have broken down the VERICHECK mark into "veri-" and "check" to "separately view the component parts as a preliminary step on the way to an ultimate determination of probable customer reaction to the composite as a whole") (citation omitted).

**Reliance on Foreign License Agreements.** Mr. Bunger's fourth opinion also rebuts Dr. Matolo's testimony. Dr. Matolo had no special expertise in makerspaces or in TechShop's business. He simply interviewed Messrs. Newton, Woods and Busch (for 30 minutes to one hour each) and researched publicly available information online. Dr. Matolo placed in issue foreign licenses executed years before the U.S. bankruptcy. Dr. Matolo placed in issue that the foreign TECHSHOP marks were "the value" in the 2014 and 2015 foreign licenses. Dr. Matolo placed in issue that the TECHSHOP marks in the U.S. after closing and bankruptcy were worth *more* than the corresponding foreign trademarks from 2014 and 2015. Plaintiff now wants to preclude Mr. Bunger from offering his opinion as to why looking to these old foreign licenses is not appropriate in quantifying the amount of damages Plaintiff allegedly suffered in the U.S., and the bases for that opinion.

Plaintiff contends that testimony rebutting Dr. Matolo needs to come from a licensing or "damages" expert, and that Mr. Bunger is not qualified to do so. Mr. Bunger, however, has the appropriate expertise to opine on this issue. He has nearly 30 years of experience working in

market research and corporate technology.  He has at least 20 years of experience in international business.  He has the underlying experience to understand why brand value may differ at different periods of time and in different geographical areas, and will provide opinions on this issue.

### 2. Objections to Demonstratives Based on Rule 703

Plaintiff objects to all of Mr. Bunger's demonstratives on the basis of Rule 703 because they contain hearsay.  "Expert witnesses may rely on inadmissible hearsay in forming their opinions, so long as it is of a type reasonably relied upon by experts in their field."  *United States v. Zarate-Morales*, 377 F. App'x 696, 698 (9th Cir. 2010); Fed. R. Evid. 703.  "[A]n expert may disclose facts or data he relied upon in forming his opinion if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."  Fed. R. Evid. 703.  Rule 703 allows an expert to disclose hearsay for the limited purpose of explaining the basis of his opinion and not for the truth of the underlying matter.  *See Romero by & through Ramos v. S. Schwab Co., Inc.*, 2017 WL 5885543, at *6 (S.D. Cal. Nov. 29, 2017) (citing *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254. 1262 (9th Cir. 1984)).  Under Rule 703, "basis evidence" that is not admissible for its truth may be disclosed even in a jury trial under appropriate circumstances for the purposes of allowing the jury to evaluate the expert's opinion."  *Williams v. Illinois*, 567 U.S. 50, 78 (2012); *Allison v. Ayers*, 2008 WL 5274580, at *2 (C.D. Cal. Dec. 17, 2008) (denying motion to exclude hearsay declaration relied upon by the expert).  Here, the slides at issue serve to show the jury the basis for Mr. Bunger's conclusions that TechShop had negative brand value.  The Court can limit the possibility of prejudice by providing an instruction to the jury that the evidence is admitted to explain the expert's opinion and that the hearsay evidence is to be considered solely as a basis for the expert opinion and not as substantive evidence.  *See Garcia v. Los Banos Unified Sch. Dist.*, 2007 WL 715526, at *3 (E.D. Cal. Mar. 8, 2007) (*citing United States v. 0.56 Acres of Land,* 109 F.3d 1493, 1496 (9th Cir.1997)).

## II. PLAINTIFF'S OBJECTIONS TO DEFENDANTS' CLOSING SLIDES

Plaintiff objects to Defendants closing slides as not timely disclosed.  This is a non-issue since Defendants made plain that they were prepared to disclose their slides by noon on June 9 as required by the Court's rules.

DATED: June 9, 2019

By     */s/ Andrea Pallios Roberts*

Ann McFarland Draper (Bar No. 065669)
courts@draperlaw.net
Draper Law Offices
75 Broadway, Suite 202
San Francisco, California 94111
Telephone: (415) 989-5620

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Andrea Pallios Roberts (Bar No. 228128)
andreaproberts@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:   (650) 801-5000
Facsimile:   (650) 801-5100

Ed DeFranco (Bar No. 165596)
eddefranco@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:   (212) 849-7000
Facsimile:   (212) 849-7100

John E. Nathan (P*ro Hac Vice*)
jnathan155@yahoo.com
John E. Nathan LLC
1175 Park Avenue
New York, NY 10128
Telephone:   (917) 960-1667

Attorneys for Defendants and Counterclaimants