These instructions are subject to revision based on the Court's ruling on the Rule 50 motions, for which briefing is not yet complete.

\* \* \*

## **Final Instruction No. 1 - Duty Of Jury**

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

## **Final Instruction No. 2 – Burden of Proof—Preponderance of the Evidence**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true. You should base your decision on all of the evidence, regardless of which party presented it.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

## **Final Instruction No. 3 – Burden of Proof—Clear and Convincing Evidence**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

## <u>Final Instruction No. 4 – What is Evidence</u>

The evidence you are to consider in deciding what the facts are consists of:

1.  The sworn testimony of any witness;

2.  The exhibits that are admitted into evidence;

3.  Any facts to which the lawyers have agreed; and

4.  Any facts that I may instruct you to accept as proved.

## <u>Final Instruction No. 5 – What Is Not Evidence</u>

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, and will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

1

## <u>Final Instruction No. 6 – Evidence for Limited Purpose</u>

2

Some evidence was admitted only for a limited purpose. When I instructed

3

you that an item of evidence was admitted only for a limited purpose, you must

4

consider it only for that limited purpose and not for any other purpose.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## **Final Instruction No. 7 – Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## <u>Final Instruction No. 8 – Ruling on Objections</u>

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the stricken evidence for any purpose.

## **<u>Final Instruction No. 9 – Bench Conferences and Recesses</u>**

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury was present in the courtroom, or by calling a recess.

Please understand that while you were waiting, we were working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error. Of course, we have done what we could to keep the number and length of these conferences to a minimum. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

## __Final Instruction No. 10 – Credibility of Witnesses__

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see or hear or know the things testified to;

2. the witness's memory;

3. the witness's manner while testifying;

4. the witness's interest in the outcome of the case, if any;

5. the witness's bias or prejudice, if any;

6. whether other evidence contradicted the witness's testimony;

7. the reasonableness of the witness's testimony in light of all the evidence; and

8. any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

United States District Court
Northern District of California

## <u>Final Instruction No. 11 – Opinion Testimony</u>

You have heard testimony from Dr. Eric Matolo and Marc Bünger who testified to opinions and the reasons for their opinions. This opinion testimony is allowed, because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## **Final Instruction No. 12 – Charts and Summaries Received in Evidence**

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

1
2

## **Final Instruction No. 13 – Charts and Summaries Not Received in Evidence**

3
4
5
6
7

      Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

1

## **<u>Final Instruction No. 14 – Trademarks and Service Marks</u>**

A trademark is a word, name, symbol, device, or any combination of these items that indicates the source of goods or services.  A service mark is one form of trademark and is any word, name, symbol, or device used by a person to identify and distinguish such person's services from those of others and to indicate the source of the services.  The owner of a service mark has the right to exclude others from using that service mark or a similar mark that is likely to cause confusion in the marketplace.  The main function of a service mark is to identify and distinguish services as the service of a particular manufacturer or merchant and to protect its goodwill.

United States District Court
Northern District of California

**<u>Final Instruction No. 15 – Trademark Liability—Theories and Policies</u>**

The trademark laws balance three often-conflicting goals: (1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; (2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and (3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In these instructions, I will identify types of facts you are to consider in deciding if the defendant is liable to the plaintiff for violating the trademark law. These facts are relevant to whether the defendant is liable for infringing plaintiff's registered trademark rights, by using a trademark in a manner likely to cause confusion among consumers.

## **Final Instruction No. 16 – Infringement—Elements and Burden of Proof—Service Mark**

In this case, Plaintiff claims that Defendants have infringed its federal service mark registrations for the word TECHSHOP.  On the Plaintiff's claim for infringement, the Plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1. TECHSHOP is a valid, protectable service mark;

2. the Plaintiff owns TECHSHOP as a service mark; and

3. the Defendants used TechShop 2.0 and/or TheShop.Build without the consent of the Plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the services.

If you find that each of the elements on which the Plaintiff has the burden of proof has been proved as to TechShop 2.0 or TheShop.Build, your verdict should be for the Plaintiff as to that allegedly infringing mark. If, on the other hand, the Plaintiff has failed to prove any one of these elements as to TechShop 2.0 or TheShop.Build, your verdict should be for the Defendants as to that allegedly infringing mark.

## **Final Instruction No. 17 – Infringement—Elements—Presumed Validity and Ownership—Registered Service Mark**

I gave you instruction Number 16 that requires the Plaintiff to prove by a preponderance of the evidence that the service mark is valid and protectable and that the Plaintiff owns the service mark. A valid service mark is a word, name, symbol, device, or any combination of these, that indicates the source of services and distinguishes those services from the services of others. A service mark becomes protectable after it is used in commerce.

One way for the Plaintiff to prove service mark validity is to show that the service mark is registered. An owner of a service mark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the service mark and of the certificate holder's ownership of the service mark covered by that certificate.

Exhibits TX351 and TX352 are certificates of registration from the United States Patent and Trademark Office. They were submitted by the Plaintiff as proof of the validity of the service marks and that the Plaintiff owns the service marks.

The certificate ending in the numbers '529 states that TechShop, Inc. is the owner of the trademark "TECHSHOP" in the fields of: "providing professional networking opportunities and hosting professional networking events for individuals with shared interest in manufacturing and fabrication" and other fields.  A complete listing of the fields covered by the '529 certificate is shown in Exhibit TX351.

The certificate ending in the numbers '110 states that TechShop, Inc. is the owner of the trademark "TECHSHOP" in the fields of: "providing workshop facilities allowing members to undertake do-it-yourself projects; providing workshop facilities for fabrication of products a, devices, and product parts from a wide variety of materials; consultation in the field of custom fabrication of goods from wood, metal, plastic, cardboard, textiles, fabric, leather, and other materials."

1    This certificate is Exhibit TX352.

2        Both certificates state that the service marks consist of "standard characters

3    without claim to any particular font, style, size, or color."

4        The law presumes that the facts noted in the certificates are true. But this

5    presumption can be overcome by sufficient evidence to the contrary. Here, the

6    defendant contends that the service marks were abandoned. If the Defendants are

7    able to show by clear and convincing evidence that the service marks were

8    abandoned, then you cannot rely on the registrations as stating the truth of the

9    matters contained therein.

**<u>Final Instruction No. 18 – Validity—Burden of Proof on Defendants</u>**

Defendants contend that the TECHSHOP service marks are not valid and thus not protectable.

A valid service mark is a word, name, symbol, device, or any combination of these items that is either:

    1. inherently distinctive; or

    2. descriptive, but has acquired a secondary meaning.

Only a valid service mark can be infringed. If you determine that Defendants proved by a preponderance of the evidence that Plaintiff's TECHSHOP service marks are not valid, then there cannot be infringement.

Only if you determine that TECHSHOP is not inherently distinctive should you consider whether it is descriptive but became distinctive through the development of secondary meaning, as I will direct in Instruction 20.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

## Final Instruction No. 19 – Validity—Distinctiveness

**Strength as a Factor For Determining Validity**

How strongly a service mark indicates that a service comes from a specific source is an important factor to consider in assessing its validity.

The Plaintiff asserts that the word TECHSHOP is a valid and protectable service mark for its services providing professional networking and consultation in the fields of manufacturing and fabrication, providing services for education and training in fabrication of products, and providing workshop facilities for members to undertake do-it-yourself projects. The Plaintiff contends that the Defendants' use of similar words in connection with the Defendants' TechShop 2.0 and TheShop.Build businesses infringes Plaintiff's service marks and is likely to cause confusion about the business associated with that mark.

A registered service mark is presumed to be distinctive. Therefore, the burden is on the Defendants to show that the service marks are not distinctive. In order to determine whether Defendants have met their burden of showing that the word TECHSHOP is not a valid service mark, you should classify it on the spectrum of service mark distinctiveness that I will explain in this instruction.

An inherently distinctive service mark is a word, symbol or device, or combination of them, which intrinsically identifies a particular source of a service in the market. The law assumes that an inherently distinctive service mark is one that almost automatically tells a consumer that it refers to a brand or a source for a service, and that consumers will be predisposed to equate the service mark with the source of a service.

**Spectrum of Marks**

Service mark law provides protection to distinctive or strong service marks. Conversely, service marks that are not as distinctive or strong are called "weak" service marks and receive less protection from infringing uses. Service marks that are not distinctive are not entitled to any protection. For deciding service mark

1    protectability you must consider whether a service mark is inherently distinctive.

2    Service marks are grouped into four categories according to their relative strength.

3    These four categories are, in order of strength or distinctiveness: arbitrary (which is

4    inherently distinctive), suggestive (which also is inherently distinctive), descriptive

5    (which is protected only if it acquires in consumers' minds a "secondary meaning"),

6    which I explain in Instruction No. 20, and generic names (which are entitled to no

7    protection).

8         **Arbitrary Service Marks**. The first category of "inherently distinctive"

9    service marks is arbitrary service marks.  They are considered strong marks and are

10   clearly protectable. They involve the arbitrary, fanciful or fictitious use of a word to

11   designate the source of a service.  Such a service mark is a word that in no way

12   describes or has any relevance to the particular service it is meant to identify.  It

13   may be a common word used in an unfamiliar way.  It may be a newly created

14   (coined) word or parts of common words which are applied in a fanciful, fictitious

15   or unfamiliar way, solely as a service mark.

16        For instance, the common word "apple" became a strong and inherently

17   distinctive trademark when used by a company to identify the personal computers

18   that company sold.  The company's use of the word "apple" was arbitrary or

19   fanciful because "apple" did not describe and was not related to what the computer

20   was, its components, ingredients, quality, or characteristics.  "Apple" was being

21   used in an arbitrary way to designate for consumers that the computer comes from a

22   particular manufacturer or source.

23        **Suggestive Service Marks**. The next category is suggestive service marks.

24   These service marks are also inherently distinctive but are considered weaker than

25   arbitrary service marks. Unlike arbitrary service marks, which are in no way related

26   to what the service is or its components, quality, or characteristics, suggestive

27   service marks imply some characteristic or quality of the service to which they are

28   attached. If the consumer must use imagination or any type of multi-stage reasoning

1   to understand the service mark's significance, then the service mark does not

2   describe the service's features, but merely suggests them.

3           A suggestive use of a word involves consumers associating the qualities the

4   word suggests to the service to which the word is attached. For example, when

5   "apple" is used not to indicate a certain company's computers, but rather "Apple–

6   A–Day" Vitamins, it is being used as a suggestive trademark.  "Apple" does not

7   describe what the vitamins are.  However, consumers may come to associate the

8   healthfulness of "an apple a day keeping the doctor away" with the supposed

9   benefits of taking "Apple–A–Day" Vitamins.

10          **Descriptive Service Marks**. The third category is descriptive service marks.

11   These service marks directly identify or describe some aspect, characteristic, or

12   quality of the service to which they are affixed in a straightforward way that requires

13   no exercise of imagination to be understood.

14          For instance, the word "apple" is descriptive when used in the trademark

15   "CranApple" to designate a cranberry-apple juice.  It directly describes ingredients

16   of the juice.  Other common types of descriptive service marks identify where a

17   service comes from, or the name of the person who provides the service.  Thus, the

18   words "Apple Valley Juice" affixed to cider from the California town of Apple

19   Valley is a descriptive trademark because it geographically describes where the

20   cider comes from. Similarly, a descriptive trademark can be the personal name of

21   the person who makes or sells the product. So, if a farmer in Apple Valley, Judy

22   Brown, sold her cider under the label "Judy's Juice" (rather than CranApple) she is

23   making a descriptive use of her personal name to indicate and describe who

24   produced the apple cider.

25          **Generic Names**. The fourth category is entitled to no protection at all. They

26   are called generic names and they refer to a general name of the service, as opposed

27   to the plaintiff's brand for that service.  Generic names are part of our common

28   language that we need to identify all such similar services. A generic name is a

United States District Court
Northern District of California

22

United States District Court
Northern District of California

1  name for the service on which it appears.

2      If the primary significance of the alleged mark is to name the type of service

3  rather than the manufacturer or provider, the term is a generic name and cannot be a

4  valid service mark.  If the majority of relevant consumers would understand the term

5  to name the type of service rather than the manufacturer or provider, the primary

6  significance of the term is generic and not entitled to protection as a service mark.

7      The word ""apple" can be used as a generic name and not be entitled to any

8  service mark protection. This occurs when the word is used to identify the fruit from

9  an apple tree.

10     The computer maker who uses the word "apple" as a trademark to identify its

11  personal computer, or the vitamin maker who uses that word as a trademark on

12  vitamins, has no claim for trademark or service mark infringement against the

13  grocer who used that same word to indicate the fruit sold in a store. As used by the

14  grocer, the word is generic and does not indicate any particular source of the

15  product. As applied to the fruit, "apple" is simply a commonly used name for what

16  is being sold.

17  **Mark Distinctiveness and Validity**

18     If you decide that TECHSHOP is arbitrary or suggestive, it is considered to

19  be inherently distinctive. An inherently distinctive trademark is valid and

20  protectable.

21     On the other hand, if you determine that TECHSHOP is generic, it cannot be

22  distinctive and therefore is not valid nor protectable. You must render a verdict for

23  the Defendants on the charge of infringement in Instruction No. 16.

24     If you decide that TECHSHOP is descriptive, you will not know if the service

25  mark is valid or invalid until you consider whether it has gained distinctiveness by

26  the acquisition of secondary meaning, which I explain in Instruction No. 20.

27

28

## Final Instruction No. 20 – Validity—Distinctiveness—Secondary Meaning

If you determined in Instruction No. 19 that TECHSHOP is descriptive, you must consider the recognition that the mark has among prospective consumers in order to determine whether it is valid and protectable even though it is descriptive. This market recognition is called the service mark's "secondary meaning."

A word acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the service itself, but the identification of the service with a single source, regardless of whether consumers know who or what that source is. You must find that the preponderance of the evidence shows that a significant number of the consuming public associates TECHSHOP with a single source, in order to find that it has acquired secondary meaning.

When you are determining whether TECHSHOP has acquired a secondary meaning, consider the following factors:

(1) Consumer Perception. Whether the people who purchase the service that bears the claimed service mark associate the mark with the owner;

(2) Advertisement. To what degree and in what manner the owner may have advertised under the claimed service mark;

(3) Demonstrated Utility. Whether the owner successfully used this service mark to increase the sales of its service;

(4) Extent of Use. The length of time and manner in which the owner used the claimed service mark;

(5) Exclusivity. Whether the owner's use of the claimed service mark was exclusive;

(6) Copying. Whether the defendant intentionally copied the owner's service mark; and

(7) Actual Confusion. Whether the defendant's use of the plaintiff's service mark has led to actual confusion among a significant number of consumers.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

The presence or absence of any particular factor should not necessarily resolve whether TECHSHOP has acquired secondary meaning.

Descriptive marks are protectable only to the extent you find they acquired distinctiveness through secondary meaning. Descriptive marks are entitled to protection only as broad as the secondary meaning they have acquired, if any. If they have acquired no secondary meaning, they are entitled to no protection and cannot be considered a valid mark.

The Defendants have the burden of proving that the word mark TECHSHOP lacks a secondary meaning.

The mere fact that the Plaintiff is using the word mark TECHSHOP, or that the Plaintiff began using it before the Defendants, does not mean that the service marks have acquired secondary meaning. There is no particular length of time that a service mark must be used before it acquires a secondary meaning.

United States District Court
Northern District of California

## Final Instruction No. 21 – Defenses—Abandonment—Affirmative Defense—Defendant's Burden of Proof

The owner of a trademark cannot exclude others from using the trademark if it has been abandoned.

The Defendants contend that the service mark has become unenforceable because Plaintiff abandoned it. The Defendants have the burden of proving abandonment by clear and convincing evidence.

The owner of a trademark abandons the right to exclusive use of the trademark when the owner:

1. discontinues its good faith use in the ordinary course of trade, intending not to resume using it; or

2. acts or fails to act so that the trademark's primary significance to prospective consumers has become the service itself and not the provider of the service.

## **<u>Final Instruction No. 22 – Infringement—Elements—Use Defined</u>**

A service mark is "used" when it is used or sold in commerce and the service mark is attached to the service, or placed on documents associated with the service, their use, or their sale.

United States District Court
Northern District of California

## Final Instruction No. 23 – Infringement—Likelihood of Confusion—Factors—*Sleekcraft* Test

You must consider whether the Defendants' use of the service marks is likely to cause confusion about the source of the Plaintiff's or the Defendants' services.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

(1) Strength or Weakness of the Plaintiff's Marks. The more the consuming public recognizes the plaintiff's service marks as an indication of origin of the plaintiff's services, the more likely it is that consumers would be confused about the source of the defendants' services if the defendants use similar marks.

(2) Defendant's Use of the Marks. If the defendants and plaintiff use their service marks on the same, related, or complementary kinds of services there may be a greater likelihood of confusion about the source of the services than otherwise.

(3) Similarity of Plaintiff's and Defendants' Marks. If the overall impression created by the plaintiff's service marks in the marketplace is similar to that created by the defendants' service marks in appearance, sound, or meaning, there is a greater chance of likelihood of confusion. Similarities in appearance, sound, or meaning weigh more heavily than differences in finding the marks are similar.

(4) Actual Confusion. If use by the defendants of the plaintiff's service marks has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, the defendants' use of the service marks may still be likely to cause confusion. As you consider whether the trademark used by the defendant creates for consumers a likelihood of confusion with the plaintiff's trademark, you should weigh any instances of actual confusion against the

opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

(5) Defendants' Intent. Knowing use by defendants of the plaintiff's service marks to identify similar goods may strongly show an intent to derive benefit from the reputation of the plaintiff's marks, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that the defendants acted knowingly, the use of plaintiff's trademark to identify similar goods may indicate a likelihood of confusion.

(6) Marketing/Advertising Channels. If the plaintiff's and defendants' services are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

(7) Consumer's Degree of Care. The more sophisticated the potential buyers of the services or the more costly the services, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in the plaintiff's and defendants' service marks.

# Final Instruction No. 24 – Likelihood of Confusion—Factor—Strength of Trademark

## Strength as a Factor for Evaluating Likelihood of Confusion

How strongly the plaintiff's trademark indicates that the goods or services come from a particular source is an important factor to consider in determining whether the trademark used by the defendant is likely to create confusion with the plaintiff's mark.

The Plaintiff asserts that TECHSHOP is a trademark for its services. The Plaintiff contends that the Defendants' use of TechShop 2.0 and TheShop.Build in connection with the Defendants' services infringes Plaintiff's trademark because it is likely to cause confusion.

## The Strength of Marks

The more distinctive and strong a trademark is, the greater the scope of protection the law provides. The law measures trademark strength by considering two prongs:

1. Commercial Strength: This is the amount of marketplace recognition of the mark; and

2. Conceptual Strength: This is the placement of the mark on the spectrum of marks.

**Commercial Strength**: What is "commercial strength?" Not all marks are equally well known. Trademark strength is somewhat like the renown of people. Only a few very famous people are widely known and recognized around the world. Most people are known and recognized only by a small circle of family and friends.

Some trademarks are relatively "strong," in the sense they are widely known and recognized. A few trademarks are in the clearly "famous" category. These "famous" marks are those like "Apple" for computers and mobile phones, "Google" for a search engine, "Coca-Cola" for beverages and "Toyota" for vehicles. Some

trademarks may be strong and well known only in a certain market niche such as mountain climbing gear, plumbing supplies, or commercial airplane electronics equipment, but relatively weak outside that field.

**Conceptual Strength**: What is "conceptual strength?" All trademarks are grouped into two categories: either inherently distinctive or not inherently distinctive. If a mark is inherently distinctive it is immediately protected when first used. If it is not inherently distinctive, to become a legally protected mark, a designation must acquire distinctiveness in people's minds by becoming known as an indication of source of goods or services. The law calls this "secondary meaning."

For determining the conceptual strength of a mark, trademarks are grouped on a spectrum according to the nature of the mark. In the spectrum, there are three categories of word marks that the law regards as being inherently distinctive: coined, arbitrary and suggestive. Descriptive word marks are regarded as not being inherently distinctive and require a secondary meaning to become a valid trademark.

**Coined** and arbitrary words are regarded as being relatively strong marks. A coined word mark is a word created solely to serve as a trademark. For example, "Clorox" for cleaning products and "Exxon" for gasoline are coined marks.

**Arbitrary** marks are words that in no way describe or suggest the nature of the goods or services it is used with. For example, "apple" is a common word, but it does not describe or suggest anything about the nature of "Apple" brand computers or smart phones. It is an arbitrary word when used as a mark on those products and is said to be conceptually strong as a mark.

**Suggestive** word marks are regarded as not being as conceptually strong as coined or arbitrary marks. Suggestive trademarks suggest some characteristic or

quality of the goods or services with which they are used. If the consumer must use her imagination or think through a series of steps to understand what the trademark is telling about the product, then the trademark does not directly describe the product's features, but merely suggests them. For example, the trademark "Tail Wagger" for dog food merely suggests that your dog will like the food. As another example, when "apple" is used in the mark "Apple-A-Day" for vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, it suggests the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple-A-Day" vitamins.

**Descriptive** word marks are not inherently distinctive. These marks directly describe some characteristic, or quality of the goods or services with which they are used in a straightforward way that requires no exercise of imagination. For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes one of ingredients of the juice.

## **Final Instruction No. 25 – Service Mark Damages—Actual or Statutory Notice**

In order for Plaintiff to recover damages, the Plaintiff has the burden of proving by a preponderance of the evidence that Defendants had either statutory or actual notice that the Plaintiff's service mark was registered.

Defendant had statutory notice if:

1. Plaintiff displayed the trademark with the words "Registered in U.S. Patent and Trademark Office", or

2. Plaintiff displayed the trademark with the words "Reg. U.S. Pat. & Tm. Off." or

3. Plaintiff displayed the trademark with the letter R enclosed within a circle, thus ®.

## Final Instruction No. 26 – Plaintiff's Actual Damages

If you find for the Plaintiff on the Plaintiff's infringement claim and find that the Defendants had statutory notice or actual notice of the plaintiff's registered trademark, you must determine the plaintiff's actual damages.

The Plaintiff has the burden of proving actual damages by a preponderance of the evidence.  The Plaintiff must prove both the fact and the amount of damages. Damages means the amount of money which will reasonably and fairly compensate the Plaintiff for any injury you find was caused by the Defendants' infringement of the Plaintiff's registered service marks.

In this case, the Plaintiff claims damages in the form of lost licensing revenue. You should consider the lost licensing revenue that the Plaintiff would have earned from licensing the service marks but for the Defendants' infringement.

1

## **Final Instruction No. 27 – Damages—Willfulness**

2

3

If you find that the Defendants infringed Plaintiff's trademarks, you must also determine whether the infringement was intentional or willful.

4

5

In determining whether Defendants acted willfully, you should consider if Defendants engaged in deliberate, false, misleading, or fraudulent conduct.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

35

United States District Court
Northern District of California

### Final Instruction No. 28 – Damages—Defendant's Profits

If you find that Defendants intentionally or willfully infringed Plaintiff's service marks, then in addition to actual damages, the Plaintiff is entitled to any profits earned by the Defendants that are attributable to the infringement, which the Plaintiff proves by a preponderance of the evidence. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of defendant's receipts from using the trademark in the sale of its services. The plaintiff has the burden of proving a defendant's gross revenue by a preponderance of the evidence.

Expenses are all operating and production costs incurred in producing the gross revenue. The defendant has the burden of proving the expenses and the portion of the profit attributable to factors other than use of the infringed trademark by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of the services using the trademark is attributable to factors other than use of the trademark, you should find that the total profit is attributable to the infringement.

## **Final Instruction No. 29 – False Promise**

Defendant Dan Rasure claims he was harmed because TechShop made a false promise. To establish this claim, Mr. Rasure must prove all of the following:

1. That TechShop made a promise to Mr. Rasure;

2. That TechShop did not intend to perform this promise when it made it;

3. That TechShop intended that Mr. Rasure rely on this promise;

4. That Mr. Rasure reasonably relied on TechShop's promise;

5. That TechShop did not perform the promised act;

6. That Mr. Rasure was harmed; and

7. That Mr. Rasure's reliance on TechShop's promise was a substantial factor in causing his harm.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

### **Final Instruction No. 30 – Reliance**

Mr. Rasure relied on a false promise if:

1. The false promise substantially influenced him pay certain of TechShop's expenses; and

2. He would probably not have paid certain of TechShop's expenses without the false promise.

It is not necessary for a false promise to be the only reason for TechShop's conduct.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### **Final Instruction No. 31 – Reasonable Reliance**

In determining whether Mr. Rasure's reliance on the false promise was reasonable, he must first prove that the matter was material. A matter is material if a reasonable person would find it important in determining his or her choice of action.

If you decide that the matter is material, you must then decide whether it was reasonable for Mr. Rasure to rely on the false promise. In making this decision, take into consideration Mr. Rasure's intelligence, knowledge, education, and experience.

However, it is not reasonable for anyone to rely on a false promise that is preposterous. It also is not reasonable for anyone to rely on a false promise if facts that are within his observation show that it is obviously false.

## **Final Instruction No. 32 – Corporations and Partnerships—Fair Treatment**

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

## Final Instruction No. 33– Liability of Corporations—Scope of Authority Not in Issue

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

1

## **Final Instruction No. 44 – Introduction to Vicarious Responsibility**

2

3   One may authorize another to act on his or her behalf in transactions with

4   third persons. This relationship is called "agency." The person giving the authority

5   is called the "principal"; the person to whom authority is given is called the "agent."

6   A principal is responsible for harm caused by the wrongful conduct of its

agents while acting within the scope of their authority.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## **Final Instruction No. 44 – Tort Liability Asserted Against Principal—Essential Factual Elements**

Mr. Rasure claims that he was harmed by false promises made by TechShop's agents, including Mr. Woods and Mr. Newton.

Mr. Rasure also claims that TechShop is responsible for the harm because Mr. Woods, Mr. Newton, or others were acting as its agent when the incident occurred.

If you find that the false promises of TechShop's agents harmed Mr. Rasure, then you must decide whether TechShop is responsible for the harm. TechShop is responsible if Mr. Rasure proves both of the following:

1. That Mr. Woods, Mr. Newton, or another individual was TechShop's agent; and

2. That individual was acting within the scope of his agency when he harmed Mr. Rasure.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

### **Final Instruction No. 44 – Existence of Agency Relationship Disputed**

Mr. Rasure claims that Mr. Woods, Mr. Newton, and other individuals were TechShop's agents and that TechShop is therefore responsible for their conduct.

If Mr. Rasure proves that TechShop gave Mr. Woods, Mr. Newton, or other individuals authority to act its behalf, then they were TechShop's agent. This authority may be shown by words or may be implied by the parties' conduct. This authority cannot be shown by the words of the agent alone.

## Final Instruction No. 44 – Damages—"Out of Pocket" Rule

If you decide that Mr. Rasure has proved his claim against TechShop, you also must decide how much money will reasonably compensate Mr. Rasure for the harm. This compensation is called "damages."

The amount of damages must include an award for all harm that TechShop was a substantial factor in causing, even if the particular harm could not have been anticipated.

Mr. Rasure must prove the amount of his damages.

However, Mr. Rasure does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

To decide the amount of damages you must determine the value of what Mr. Rasure gave and subtract from that amount the value of what he received.

Mr. Rasure may also recover amounts that he reasonably spent in reliance on TechShop's false promise if those amounts would not otherwise have been spent.

## **Final Instruction No. 44 – Punitive Damages Against Employer or Principal for Conduct of a Specific Agent or Employee**

If you decide that the conduct of TechShop's agents caused Mr. Rasure harm, you must decide whether that conduct justifies an award of punitive damages against TechShop for their conduct. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against TechShop for its agents' conduct only if Mr. Rasure proves by clear and convincing evidence that TechShop's agents engaged in that conduct with malice, oppression, or fraud.

"Malice" means that TechShop's agents acted with intent to cause injury or that their conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when he or she is aware of the probable dangerous consequences of his or her conduct and deliberately fails to avoid those consequences.

"Oppression" means that the conduct of TechShop's agents was despicable and subjected Mr. Rasure to cruel and unjust hardship in knowing disregard of his rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that TechShop's agents intentionally misrepresented or concealed a material fact and did so intending to harm Mr. Rasure.

Mr. Rasure must also prove one of the following by clear and convincing evidence:

1. That the TechShop agent was an officer, a director, or a managing agent of TechShop, who was acting on behalf of TechShop; or

2. That an officer, a director, or a managing agent of TechShop authorized its agent's conduct; or

46

3. That an officer, a director, or a managing agent of TechShop knew of its agent's wrongful conduct and adopted or approved the conduct after it occurred.

An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decisionmaking such that his or her decisions ultimately determine corporate policy.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a) How reprehensible was TechShop's conduct? In deciding how reprehensible TechShop's conduct was, you may consider, among other factors:

1. Whether the conduct caused physical harm;

2. Whether TechShop disregarded the health or safety of others;

3. Whether Mr. Rasure was financially weak or vulnerable TechShop knew Mr. Rasure was financially weak or vulnerable and took advantage of him;

4. Whether TechShop's conduct involved a pattern or practice; and

5. Whether TechShop acted with trickery or deceit.

(b) Is there a reasonable relationship between the amount of punitive damages and Mr. Rasure's harm?

(c) In view of TechShop's financial condition, what amount is necessary to punish it and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because TechShop has substantial financial resources.

Punitive damages may not be used to punish TechShop for the impact of its alleged misconduct on persons other than Mr. Rasure.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

## Final Instruction No. 44 – Duty to Deliberate

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## **Final Instruction No. 44 – Consideration of Evidence—Conduct of the Jury**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read

or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

## **<u>Final Instruction No. 44 – Communications with Court</u>**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the court security officer, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

## **Final Instruction No. 44 – Return of Verdict**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the court security officer that you are ready to return to the courtroom.

United States District Court
Northern District of California