1   Ann McFarland Draper (Bar No. 065669)
    courts@draperlaw.net
2   Draper Law Offices
    75 Broadway, Suite 202
3   San Francisco, California 94111
    Telephone:     (415) 989-5620
4
    QUINN EMANUEL URQUHART & SULLIVAN, LLP
5   Kevin P.B. Johnson (Bar No. 177129)
    kevinjohnson@quinnemanuel.com
6   Andrea Pallios Roberts (Bar No. 228128)
    andreaproberts@quinnemanuel.com
7   555 Twin Dolphin Drive, 5th Floor
    Redwood Shores, California 94065-2139
8   Telephone:     (650) 801-5000
    Facsimile:     (650) 801-5100
9
    Ed DeFranco (Bar No. 165596)
10  eddefranco@quinnemanuel.com
    51 Madison Avenue, 22nd Floor
11  New York, NY 10010
    Telephone:     (212) 849-7000
12  Facsimile:     (212) 849-7100
13  John E. Nathan (Pro Hac Vice)
    jnathan155@yahoo.com
14  John E. Nathan LLC
    1175 Park Avenue
15  New York, NY 10128
    Telephone:     (917) 960-1667
16
    Attorneys for Defendants and Counterclaimants
17

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| TECHSHOP, INC., a California corporation, DORIS A. KLEIN, in her capacity as Chapter 7 trustee for TECHSHOP, INC., <br><br> Plaintiff, <br><br> vs. <br><br> DAN RASURE, et al., <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS | CASE NO. 4:18-CV-01044-HSG (JCS) <br><br> **DEFENDANTS AND COUNTERCLAIMANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW** <br><br> Trial: June 3, 2019, 8:30 a.m <br> Judge: Haywood S. Gilliam, Jr. |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   STATEMENT OF FACTS................................................................................................1

II.  ARGUMENT ...........................................................................................................................2

    A.   Governing Law.........................................................................................................2

    B.   Defendants Proved Their Affirmative Defense of Abandonment.............................3

    C.   Defendants Proved Their Affirmative Defense of Invalidity....................................5

    D.   Defendants Proved Their Fraud Cause of Action ....................................................7

III. CONCLUSION ........................................................................................................10

1

## <u>TABLE OF AUTHORITIES</u>

2

**<u>Page</u>**

3

### <u>Cases</u>

4

5

*Aero Turbine, Inc. v. Aeroturbine, Inc.,*
    76 Fed. App'x 768 (9th Cir. 2009) ........................................................................... 6

6

*Am. Photographic Pub. Co. v. Ziff–Davis Pub. Co.,*
    135 F.2d 569 (7th Cir. 1943) ................................................................................... 5

7

8

*Cargill Inc. v. Progressive Dairy Sols., Inc.,*
    No. CVF070349LJOSMS, 2008 WL 4532436 (E.D. Cal. Oct. 8, 2008) ............................ 1

9

*Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.,*
    892 F.2d 1021 (Fed. Cir. 1989) ............................................................................... 5

10

11

*City Solutions, Inc. v. Clear Channel Commc'ns, Inc.,*
    365 F.3d 835 (9th Cir. 2004) ................................................................................... 7

12

*Computerland Corp. v. Microland Computer Corp.,*
    586 F. Supp. 22 (N.D. Cal. 1984) .......................................................................... 6, 7

13

14

*Dep't of Parks & Recreation v. Harper,*
    No. CV 05–2008 DSF (JWJx), 2006 WL 8434731 (C.D. Cal. Apr. 25, 2006) ............... 5

15

*Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.,*
    458 F.3d 931 (9th Cir. 2006) ................................................................................... 4

16

17

*Engineered Tax Servs., Inc. v. Scarpello Consulting, Inc.,*
    No. 16-81795-CIV, 2018 WL 3899223 (S.D. Fla. July 31, 2018) ............................... 6

18

*Lakeside-Scott v. Multnomah County,*
    556 F.3d 797 (9th Cir. 2009) ................................................................................... 3

19

20

*Lazar v. Superior Court,*
    12 Cal. 4th 631 (1996) ............................................................................................ 7

21

*Pierce Cty. Hotel Employees & Rest. Emps. Health Trust v. Elks Lodge, B.P.O.E. No.*
    *1450,*
    827 F.2d 1324 (9th Cir. 1987) ................................................................................. 1

22

23

*Quiksilver, Inc. v. Kymsta Corp.,*
    466 F.3d 749 (9th Cir. 2006) ................................................................................... 6

24

*Sheila's Shine Prods., Inc. v. Sheila Shine,*
    486 F.2d 114 (5th Cir. 1973) ................................................................................... 5

25

26

*Siegel v. Chicken Delight, Inc.,*
    448 F.2d 43 n.2 (9th Cir. 1971) ............................................................................... 4

27

*Surgicenters of Am., Inc. v. Medical Dental Surgeries, Co.,*
    601 F.2d 1011 (9th Cir. 1979) .............................................................................. 6, 7

28

*Tenzer v. Superscope, Inc.*,
    39 Cal. 3d 18 (1985)................................................................................................................ 9

*Tie Tech, Inc. v. Kinedyne Corp.*,
    296 F.3d 778 (9th Cir. 2002)................................................................................................... 6

*United Drug Co. v. Theodore Rectanus Co.*,
    248 U.S. 90 (1918)................................................................................................................... 4

*Unuson Corp. v. Built Entm't Grp., Inc.*,
    No. C 05–03705 MHP, 2006 WL 194052 (N.D. Cal. Jan. 23, 2006) .................................... 4

## Statutes

15 U.S. C. § 1127 .......................................................................................................................... 3

## Other Authorities

6 McCarthy on Trademarks and Unfair Competition
    § 32:138 (5th ed.) .................................................................................................................... 6

Instruction 1902
    in the *Judicial Council of California Civil Jury Instructions*................................................ 7

## Rules

Fed. R. Civ. P. 50(a)...................................................................................................................... 3

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to leave granted by the Court at the close of Defendants and Counterclaimants' ("Defendants") case on June 10, 2019, Defendants hereby submit this opposition to Plaintiff's motion for judgment as a matter of law ("JMOL"). In its oral JMOL motion and in the accompanying written brief on the motion (*see* Dkt. 208), Plaintiff presents three grounds: (1) abandonment; (2) ownership/validity; and (3) fraud. Plaintiff's JMOL should be denied as to all of its grounds, for the reasons detailed below.

At the present time, there is no transcript of the proceedings, since Defendants were unable to bear the cost of a daily transcript. However, the events at issue were proven by numerous contemporaneous documents, emails, and text messages. Defendants base this opposition on the documentary record. Defendants' proof of its case is apparent on the face of that record, and Plaintiff's JMOL should be denied.

## I.   STATEMENT OF FACTS

This is a trademark infringement action.[1] Plaintiff alleges federal trademark infringement.[2] Plaintiff's claim is based on Defendants' alleged unauthorized use of Plaintiff's service marks for TECHSHOP, which were registered with the U.S. Patent and Trademark Office. (TX0351 [11/20/2012 registration for the TECHSHOP service mark], TX0352 [02/26/2013 registration for the TECHSHOP service mark]).

---

[1] While the marks at issue in this case are technically service marks, the parties have repeatedly referred to them as "trademarks."

[2] Although Plaintiff's First Amended Complaint alleged three causes of action—(1) federal trademark infringement, (2) contributory trademark infringement, and (3) vicarious trademark infringement (Dkt. 45)—the last two causes of action have been waived and should be dismissed. Plaintiff did not include allegations related to contributory trademark infringement or vicarious trademark infringement in either the Joint Pretrial Statement (Dkt. 155), the Proposed Jury Instructions (Dkt. 152), or its Proposed Verdict Form (Dkt. 154). Consequently, these two causes of action are waived under Ninth Circuit black letter law. *See Pierce Cty. Hotel Employees & Rest. Emps. Health Trust v. Elks Lodge, B.P.O.E. No. 1450,* 827 F.2d 1324, 1329 (9th Cir. 1987) ("Issues not preserved in the pretrial order are eliminated from the action."); *Cargill Inc. v. Progressive Dairy Sols., Inc.,* No. CVF070349LJOSMS, 2008 WL 4532436, at *4 (E.D. Cal. Oct. 8, 2008), *aff'd,* 362 F. App'x 731 (9th Cir. 2010) (finding that plaintiff waived its right to an issue where plaintiff "failed to raise th[e] issue in the Pretrial Statement, in motions in limine, at any time during the trial, or at any time during the process of preparing jury instructions and the verdict form").

1    Defendants answered and denied infringement.  (Dkt. 50).  Defendants sought dismissal of

2    the action, cancellation of Plaintiff's trademark registrations, and an award of attorneys' fees and

3    costs.  (*Id.*).  Defendants presented affirmative defenses that the marks are not valid because:  (1)

4    they were abandoned and permanently discontinued in the United States by Plaintiff,  and (2) they

5    are generic or at best merely descriptive without any secondary meaning for any of the classes for

6    which they are claimed.  (*See* Dkt. 50 at ¶¶ 49-55, 59-60 [Answer and Affirmative Defenses];

7    Dkt. 155 at 9 [Joint Pretrial Statement]).

8    Defendant Dan Rasure counterclaimed for cancellation of Plaintiff's registrations and for

9    fraud.  Only the fraud counterclaim was placed in issue in Plaintiff's JMOL.  Mr. Rasure alleges

10   that TechShop committed fraud by entering into an agreement with Defendants that TechShop had

11   no intention of performing.  (Dkt. 42 at ¶¶ 42-72 [Counterclaim]).  Specifically, Defendant alleged

12   that TechShop represented that it was "willing to sell all assets to a third party buyer, TechShop

13   2.0."  (TX0610 [MOU]).  Additionally, Plaintiff "'repeatedly promised to provide' necessary due

14   diligence documents, but never did" and "pressed Rasure to pay certain vendors because the

15   payments were 'urgently overdue' or part of the 'wind-down.'"  (Dkt. 110 at 2 [Court Order

16   Denying Motion to Dismiss]).  As a result, Mr. Rasure made payments to various vendors,

17   including Google, TechShop's insurers, TechShop's law firm, a public relations consultant, and

18   tax authorities, in order to finalize the deal, with the expectation of being reimbursed when the

19   deal closed.  (*Id.* at 2-3, 6).  Instead, Plaintiff unilaterally and without notice terminated the

20   Memorandum of Understanding.  (*Id.* at 6; TX0062 [12/12/2017 email from Plaintiff's counsel to

21   Rasure terminating the MOU]).  Morevoer, Plaintiff misled Mr. Rasure by continuing to negotiate

22   with him for the next two months.  Rather than close the deal, on February 16, 2018, Plaintiff filed

23   this action alleging service mark infringement.  (Dkt. 1.)

24   **II.    ARGUMENT**

25   **A.    <u>Governing Law</u>**

26   Rule 50(a) provides:

27

28

1     (1) *In General.* If a party has been fully heard on an issue during a jury trial and the

2     court finds that a reasonable jury would not have a legally sufficient evidentiary basis to

3     find for the party on that issue, the court may:

4          (A) resolve the issue against the party; and

5          (B) grant a motion for judgment as a matter of law against the party on a claim or

6     defense that, under the controlling law, can be maintained or defeated only with a

7     favorable finding on that issue.

8          (2) *Motion.* A motion for judgment as a matter of law may be made at any time

9     before the case is submitted to the jury. The motion must specify the judgment sought and

10    the law and facts that entitle the movant to the judgment.

11    Under Fed. R. Civ. P. 50(a), JMOL is required where a plaintiff fails to present a legally

12    sufficient basis for a reasonable jury to rule in its favor.  *Lakeside-Scott v. Multnomah County*, 556

13    F.3d 797, 802 (9th Cir. 2009).

14    As set forth below, a reasonable jury has a legally sufficient evidentiary basis to find that

15    Defendants proved affirmative defenses of abandonment and validity, as well as their claim of

16    fraud.  Under Rule 50(a), the Court should deny Plaintiff's JMOL.

17         **B.      Defendants Proved Their Affirmative Defense of Abandonment**

18    Plaintiff argues that a JMOL should be granted on this affirmative defense because

19    "Defendants' [sic] have offered *no* evidence of intent not to resume use of the marks."  (Dkt. 208

20    at 2 [Plaintiff's JMOL]).  The Lanham Act states the following regarding abandonment:

21    A mark shall be deemed to be "abandoned" if either of the following occurs:

22         (1) When its use has been discontinued with intent not to resume such use. **Intent**

23    **not to resume may be inferred from circumstances**. Nonuse for 3 consecutive years

24    shall be prima facie evidence of abandonment. **"Use" of a mark means the bona fide use**

25    **of such mark made in the ordinary course of trade**, and not made merely to reserve a

26    right in a mark.

27    15 U.S. C. § 1127 (emphasis added).

28

1    Plaintiff, however, ignores the fact that **all five** of its witnesses testified as to the closure of

2    the business and its subsequent Chapter 7 bankruptcy.  TechShop's closure of all of its U.S.

3    locations is undisputed, and the Chapter 7 filing is even referenced in Plaintiff's First Amended

4    Complaint.  (Dkt. 45, ¶ 9).  Plaintiff was not operating a business or providing a service during the

5    period of the alleged infringement.  Courts have held that the lack of an existing business or the

6    lack of a course of trade supports a finding of abandonment.  *See Electro Source, LLC v.*

7    *Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 939 (9th Cir. 2006) ("Trademark use does indeed

8    require an existing business . . . .") (citing *Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 48 n.2 (9th

9    Cir. 1971) (abrogated on other grounds)); *see also United Drug Co. v. Theodore Rectanus Co.*,

10   248 U.S. 90, 97 (1918) ("There is no such thing as property in a trade-mark except as a right

11   appurtenant to an established business or trade in connection with which the mark is employed.");

12   *Unuson Corp. v. Built Entm't Grp., Inc.*, No. C 05–03705 MHP, 2006 WL 194052, at *5-6 (N.D.

13   Cal. Jan. 23, 2006) (holding that plaintiff's nonuse of a trademark "in the ordinary course of trade"

14   supported a finding of abandonment (internal quotation marks omitted)).  Furthermore, Plaintiff's

15   filing of a Chapter 7 bankruptcy petition, which entails liquidation of TechShop, rather than a

16   Chapter 11 petition, which would have resulted in restructuring of TechShop's debts and potential

17   continuation of the business as a going concern, indicates intent not to resume use of the

18   TechShop trademark.

19   　　The fact that Plaintiff's witnesses gave self-serving testimony that they did not intend to

20   abandon the marks is not dispositive.  First, all three witness who gave such testimony (Messrs.

21   Woods, Newton, Busch) were no longer officers or directors of TechShop, since they were

22   relieved of their duties and responsibilities when the bankruptcy was filed on February 26, 2018,

23   as they testified.  Thus, their testimony on this issue bears no weight.  Second, the relevant statute,

24   on its face, states that, "Intent not to resume may be inferred from circumstances."  15 U.S.C.

25   § 1127.  Courts examining the issue have reached the same conclusion.  "The 'purely subjective

26   intention in the abandone[r]'s mind to re-engage in a former enterprise at some indefinite future

27   time is not sufficient to avoid abandonment where an objective analysis of the situation furnishes

28   ample evidence to warrant the inference of abandonment.' *Am. Photographic Pub. Co. v. Ziff–*

*Davis Pub. Co.*, 135 F.2d 569, 573 (7th Cir. 1943); see also *Sheila's Shine Prods., Inc. v. Sheila Shine*, 486 F.2d 114, 124 (5th Cir. 1973) ('Intention to abandon a trademark may be inferred from the facts surrounding physical abandonment'). The abandoner must show that, during a period of non-use, there was an intent to resume use in the reasonably foreseeable future. See *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1027 (Fed. Cir. 1989) (steps to resume use in 1982 did not rebut presumption of abandonment between 1977 and 1984)." *Dep't of Parks & Recreation v. Harper*, No. CV 05–2008 DSF (JWJx), 2006 WL 8434731, at *9 (C.D. Cal. Apr. 25, 2006) (emphasis added).

Here, Defendants presented evidence that after Plaintiff went out of business, third parties were using the TECHSHOP marks, without any enforcement actions taken by Plaintiff.  (TX1075 [Odyssey Expo documents]).[3]  Dr. Matolo also testified that TechShop did not execute any licenses after November 15, 2017.  Finally, Mr. Bunger testified that restoring TechShop's negative brand equity would have required a lot of time and resources, which Plaintiff did not undertake.  Taken together, this evidence supports a finding of abandonment.

Therefore, Defendants have met their burden on providing the jury a legally sufficient evidentiary basis to find that the TECHSHOP marks have been abandoned.  Plaintiff's JMOL should be denied, and the issue should go in front of the jury.

**C.      Defendants Proved Their Affirmative Defense of Invalidity**

Plaintiff argues that a JMOL should be granted because Defendants bore the burden of rebutting the presumption of ownership and validity of a registered mark and Defendants did not offer evidence of lack of ownership or invalidity.  (Dkt. 208 at 2 [Plaintiff's JMOL]).

When a trademark has been registered, the defendant has the burden of proving that its registration is defective or subject to a defense.  (Ninth Circuit Model Jury Instructions No. 15.8, Comment, p. 320).  However, "[t]he presumption of validity may be rebutted by showing that the

---

[3]   It is also a matter of public record that the USPTO, on 06/01/2019, did not accept Plaintiff's Section 8 Affidavit, filed on May 16, 2019 stating that more information is needed regarding the allegation of nonuse for the TECHSHOP mark, Registration Number 4247529.  The USPTO requested that Plaintiff "submit additional information explaining the nonuse of the mark: Specifically, the owner must explain the details of nonuse."

1  registrant had not established valid ownership rights in the mark at the time of registration."

2  *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 756 (9th Cir. 2006) (citations omitted).  "[T]he

3  registration is not absolute but is subject to rebuttal."  *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d

4  778, 783 (9th Cir. 2002) (finding a mark invalid based on functionality); *see also* 6 McCarthy on

5  Trademarks and Unfair Competition § 32:138 (5th ed.) ("There is no doubt that notwithstanding

6  the registration, the challenger with persuasive evidence can sustain the burden of proving

7  invalidity.").

8       Generic marks are invalid.  Similarly, descriptive term can be protected, but only where it

9  has acquired "secondary meaning" in the minds of consumers.  *See Surgicenters of Am., Inc. v.*

10  *Medical Dental Surgeries, Co.,* 601 F.2d 1011, 1017-18 (9th Cir. 1979) (affirming the district

11  court's finding that the plaintiff's registered trademark "Surgicenter" was generic and thus

12  invalid); *Aero Turbine, Inc. v. Aeroturbine, Inc.,* 76 Fed. App'x 768, 769 (9th Cir. 2009) (holding

13  that plaintiff's registered trademark "AeroTurbine" was merely descriptive and not entitled to

14  protection); *Computerland Corp. v. Microland Computer Corp.*, 586 F. Supp. 22, 26 (N.D. Cal.

15  1984) (ruling that defendant was entitled to summary judgment on invalidity grounds because

16  plaintiff's registered trademark "Computerland" was "either generic or descriptive, at most");

17  *Engineered Tax Servs., Inc. v. Scarpello Consulting, Inc*., No. 16-81795-CIV, 2018 WL 3899223,

18  at *4 (S.D. Fla. July 31, 2018) (granting summary judgment to defendant upon finding the mark

19  "descriptive rather than suggestive, thereby rebutting the presumption of inherent distinctiveness"

20  that accompanies the mark's registration).

21       Here, Defendants presented ample evidence to overcome Plaintiff's JMOL and preserve

22  this issue for jury resolution.  Mr. Bunger testified on June 10, 2019 that "TechShop" is a common

23  name, based on his analysis of the frequency of use of the components of the name.  Defendants

24  also have offered into evidence documents, such as the Odyssey Expo materials (TX1075), that

25  show the mark being used generically.

26       Moreover, James Newton—Plaintiff's own witness and the founder of TechShop—

27  testified that the TechShop name was chosen due to its combination of the words "technology"

28  and "shop" because makerspaces are workshops in which persons utilize technologies to build

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW

1    objects.  This is directly analogous to the use of "Surgicenter" to refer to a center for surgery, for

2    example, or "Computerland" to refer to a place that sells computers; both of these registered

3    trademarks were invalidated for being generic or merely descriptive.  *See Surgicenters of America*,

4    601 F.2d at 1017; *Computerland*, 586 F. Supp. at 25.  Accordingly, there is sufficient evidence on

5    the record to support a finding that the TechShop trademark is similarly generic or descriptive and

6    thus invalid.

7         **D.**    **Defendants Proved Their Fraud Cause of Action**

8         To establish his fraud claim, Mr. Rasure needs to show the following elements:

9              1.   That TechShop made a promise to Mr. Rasure;

10             2.   That TechShop did not intend to perform this promise when it made it;

11             3.   That TechShop intended that Mr. Rasure rely on this promise;

12             4.   That Mr. Rasure reasonably relied on TechShop's promise;

13             5.   That TechShop did not perform the promised act;

14             6.   That Mr. Rasure and his businesses were harmed; and

15             7.   That Mr. Rasure's reliance on TechShop's promise was a substantial factor in

16                  causing his harm.

17        *See* Instruction 1902 in the *Judicial Council of California Civil Jury Instructions*, by the

18   Judicial Council of California Advisory Committee on Civil Jury Instructions.  *See also Lazar v.*

19   *Superior Court*, 12 Cal. 4th 631, 637 (1996).

20        Plaintiff's JMOL appears to attack only the first two elements.  In its motion, Plaintiff

21   claims that Defendants did not present evidence "1) that there was a promise; and 2) assuming

22   *arguendo* that there was a promise, that TechShop did not intend to perform that promise."  (Dkt.

23   208 at 2 [Plaintiff's JMOL]).  Plaintiff's JMOL on the fraud is clearly deficient under the legal

24   standard.  *City Solutions, Inc. v. Clear Channel Commc'ns, Inc.*, 365 F.3d 835 (9th Cir. 2004),

25   offers an instructive analogue to the instant case.  As in the instant case, the *City Solutions* plaintiff

26   and defendant entered into contract negotiations concerning a bid over a period of multiple

27   months.  *Id.* at 837.  Prior to the end of the negotiation period, defendant learned of information

28   that would prevent it from consummating a deal with plaintiff.  *Id.*  Nevertheless, and without

1   informing plaintiff of that information, defendant continued negotiating with plaintiff for another

2   two weeks, only terminating discussions when the bid deadline was two weeks away, just as

3   TechShop continued negotiating with Mr. Rasure for an even longer period when it had no

4   intention of finalizing an agreement.  *Id.* at 837-38.  Plaintiff brought a claim for fraud, on which

5   the district court granted judgment as a matter of law for defendant.  *Id.* at 838.  The Ninth Circuit

6   reversed, finding the fraud issue should have gone to the jury.  *Id.* at 841.  The Court should make

7   the same finding here.

8        Plaintiff appears to argue that the parties' MOU "is merely evidence that the parties agreed

9   on the proposed principal terms of a potential transaction to be negotiated."  (Dkt. 208 at 2

10  [Plaintiff's JMOL]).  Plaintiff then appears to argue that the MOU can only be construed either "as

11  a promise to agree in the future," which Plaintiff then claims, without authority, "such contracts

12  are not enforceable," or "as a promise to negotiate in the future," which Plaintiff argues TechShop

13  performed.  (Dkt. 208 at 3 [Plaintiff's JMOL]).

14       Plaintiff's JMOL flies in the face of the established trial testimony and evidence.  Plaintiff

15  conveniently ignores its own **entire course of conduct over two months** following the MOU,

16  when Plaintiff misled Mr. Rasure into continuing to negotiate and incur expenses.  During and

17  after the MOU period, Mr. Rasure was negotiating with Plaintiff under the promise that an asset

18  purchase agreement between the two companies would be finalized:  first, under the terms of the

19  MOU, and later, based on Plaintiff's responses to the parties' continued negotiations.  Meanwhile,

20  Plaintiff even tried to hide its plan to file bankruptcy from Mr. Rasure (TX0896 [Woods

21  02/13/2018 email to third parties, informing them of the forthcoming bankruptcy and stating

22  "removing Dan Rasure from distribution"]) at the **very same time when** Mr. Rasure was trying to

23  close the deal (TX0652 [Rasure 02/15/2018 email to TechShop]; TX0653 [Rasure 02/16/2018

24  email to Autodesk]).  Just a week prior, as of February 7, 2018, Plaintiff was telling Defendants

25  that they still support a deal.  (*Cf.* TX0078 [02/07/2018 Woods email to Rasure, stating "[t]hat is

26  not to say that we would not be supportive of a deal"]).

27       During its oral JMOL motion, Plaintiff insinuated that there was no promise because

28  Defendants did not show a document in which Mr. Rasure asked to be compensated for the

1   payments he made.  However, Defendants never even pled that such document existed.  Instead,

2   Defendants pled that Mr. Rasure's reliance that he would be "credited for these payments in the

3   deal" was based on the terms of the MOU and the conduct of the parties' negotiations, spanning

4   over two months.  (*See* Dkt. 42 ¶ 51 [Counterclaim]).  The MOU clearly states that the immediate

5   payments are part of the acquisition in which "TechShop 2.0 acquires all assets of TechShop, Inc."

6   (TX0610 [MOU]).  By its terms, the MOU's term extended until December 21, 2107.  (*Id*)

7   Defendants have presented evidence that **after Mr. Rasure made the payments** outlined in the

8   MOU, the agreement was unilaterally, prematurely, and without notice terminated by TechShop

9   on December 12, 2017.  (TX0062 [12/12/2017 email from Plaintiff's counsel to Rasure

10  terminating the MOU]).  Nonetheless, Plaintiff continued to negotiate with Mr. Rasure towards a

11  deal even after the premature MOU termination.  (*See, e.g.* TX0639 [01/31/2018 Rasure email to

12  TechShop with negotiation proposal], TX0644 [02/01/2018 Rasure email to TechShop with

13  negotiation proposal], TX645 [02/01/2018 Woods email to Rasure with response to negotiation

14  proposal]).  Over 30 exhibits have been introduced into evidence that document the course of these

15  negotiations.  (Dkt. 207 at 8-9).

16       Plaintiff also argues that there is no evidence that TechShop did not intend to perform the

17  promise at the time TechShop made it.  (Dkt. 208 at 2 [Plaintiff's JMOL]).  "**[F]raudulent intent**

18  **must often be established by circumstantial evidence**. … [F]raudulent intent has been inferred

19  from such circumstances as defendant's insolvency, his hasty repudiation of the promise, his

20  failure even to attempt performance, or his continued assurances after it was clear he would not

21  perform." *Tenzer v. Superscope*, *Inc.*, 39 Cal. 3d 18, 30 (1985) (emphasis added).  Here, ample

22  evidence has been presented that for over two months, Plaintiff was stringing Mr. Rasure along,

23  promising him a deal, and incessantly asking him for money.  For instance, on November 24,

24  2014, Plaintiff informed Mr. Rasure that "[w]e're getting quite close" and asked him for $50K "to

25  cover immediate and pressing obligations."  (TX0584 [11/24/207 Woods email to Rasure]; *see*

26  *also* TX0586 [11/24/2017 Woods email to Rasure requesting Rasure to pay wind-down expenses

27  of $58,500]; TX0581 [11/20/2017 Woods email to Rasure, stating that "we are trying to reach

28  'Yes' tonight … any chance you would consider wiring the $5K"]).  The MOU itself requires Mr.

1   Rasure to "[i]mmediately provide funds." (TX0610 [MOU]). Even after the MOU was

2   terminated, Plaintiff still kept dangling the carrot of a deal in front of Mr. Rasure while asking for

3   more and more funds. For instance, on January 8, 2018, Plaintiff told Mr. Rasure that Plaintiff

4   needs a retainer for its legal counsel so that it may evaluate Mr. Rasure's proposal. (TX0635

5   [01/08/2018 Woods email to Rasure regarding the parties' negotiations]). Similarly, on January

6   31, 2018, Plaintiff authorized Mr. Rasure to make tax payments on its behalf. (TX0642

7   [01/31/2108 Woods email to third party authorizing Rasure to make payments on TechShop's

8   behalf]). Mr. Rasure's trial testimony was clear that he was shocked by the lawsuit because he

9   believed that the parties were still in the process of negotiation; and that as of February 16, 2018,

10  he still thought that a deal was on the table. (TX0652 [Rasure 02/15/2018 email to TechShop

11  regarding the parties' negotiations]). Indeed, Mr. Rasure was still negotiating on the day he was

12  sued. (TX0653 [Rasure 02/16/2018 email to Autodesk]).

13         Furthermore, it's clear from the evidence presented at trial that the fraud counterclaim is

14  not limited to just $34,000. (Dkt. 42, ¶ 68). The counterclaim sought "additional amounts

15  according to proof  at the time of trial." (*Id.; see also id.* Prayer for Relief (seeking "amount

16  according to proof") ). Mr. Rasure also testified as to the Texas tax payments he made (TX0642

17  [01/31/2108 Woods email to third party authorizing Rasure to make payments on TechShop's

18  behalf]), in addition to other types of damages, such as his lost job at Piranha Megafab, his limited

19  financing opportunities, the time he spent away from his family, and the harm to his personal and

20  business reputation as a result of this litigation.

21         Defendants have presented sufficient evidence on the record to support a finding of

22  promissory fraud. This issue should go to the jury.

23  **III.    CONCLUSION**

24         The Court should deny the Plaintiff's JMOL.

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW

1   DATED:  June 10, 2019                    By       _/s/ Andrea Pallios Roberts_

2                                              Ann McFarland Draper (Bar No. 065669)
                                               courts@draperlaw.net
3                                              Draper Law Offices
                                               75 Broadway, Suite 202
4                                              San Francisco, California 94111
                                               Telephone:     (415) 989-5620

5
                                               QUINN EMANUEL URQUHART &
6                                              SULLIVAN, LLP
                                               Kevin P.B. Johnson (Bar No. 177129)
7                                              kevinjohnson@quinnemanuel.com
                                               Andrea Pallios Roberts (Bar No. 228128)
8                                              andrearoberts@quinnemanuel.com
                                               555 Twin Dolphin Drive, 5th Floor
9                                              Redwood Shores, California 94065-2139
                                               Telephone:     (650) 801-5000
10                                             Facsimile:     (650) 801-5100

11                                             Ed DeFranco (Bar No. 165596)
                                               eddefranco@quinnemanuel.com
12                                             51 Madison Avenue, 22nd Floor
                                               New York, NY 10010
13                                             Telephone:     (212) 849-7000
                                               Facsimile:     (212) 849-7100
14
                                               John E. Nathan (P*ro Hac Vice*)
15                                             jnathan155@yahoo.com
                                               John E. Nathan LLC
16                                             1175 Park Avenue
                                               New York, NY 10128
17                                             Telephone:     (917) 960-1667

18                                             Attorneys for Defendants and Counterclaimants

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW