James C. Pistorino (SBN 226496)
    james@dparrishlaw.com
Parrish Law Offices
224 Lexington Dr.
Menlo Park, CA  94025
Telephone: (650) 400-0043

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORIS A. KAELIN, as trustee for the estate of TECHSHOP, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>DAN RASURE, et al.<br><br>    Defendants. | Case Number: **4:18-cv-01044-HSG-JCS**<br><br>**TECHSHOP'S MOTION FOR ATTORNEY'S FEES AND COSTS**<br><br>Hearing Date:  November 7, 2019, 2:00pm<br>Judge:  Hon. Haywood S. Gilliam, Jr. |

## TABLE OF CONTENTS

I.   LEGAL BACKGROUND ................................................................................. 1

II.  DISCUSSION ............................................................................................ 2

   A.   TECHSHOP WAS THE "PREVAILING PARTY" ...................................... 2

   B.   THIS CASE WAS "EXCEPTIONAL" ..................................................... 3

      i.   *Strength/Weakness of Litigating Position*.................................... 3

      ii.  *Defendants' Litigated This Case Unreasonably* ........................... 4

         1.   False Certificate of Service ................................................ 5

         2.   Improper Threat to the Trustee.......................................... 5

         3.   James Newton –
             Failure to Meet and Confer Resulting in Recall of Witness............... 7

   C.   TECHSHOP'S ATTORNEYS FEES AND COSTS/EXPENSES ........................ 9

      i.   *Attorneys Fees - $316,757* ............................................... 9

      ii.  *Costs/Expenses* .............................................................. 9

         1.   Expert Witness Fees – Dr. Eric Matolo/Nathan & Assoc. - $47,884........... 10

         2.   Trial Tech/Paralegal –
             Raul Estravit Encore Litigation & Trial Tech - $16,578 ............... 10

         3.   Other Costs/Expenses........................................................ 11

III. CONCLUSION .......................................................................................... 12

# TABLE OF AUTHORITIES

## Cases

*Buckhannon Board and Care Home, Inc. v.*
   *West Virginia Dept. of Health and Human Resources,*
   532 U.S. 598, 604 (2001) ............................................................................................. 2

*Fogerty v. Fantasy, Inc.,*
   510 U.S. 517 (1994) ...................................................................................................... 1

*Grove v. Wells Fargo Financial California, Inc.,*
   606 F.3d 577 (9th Cir. 2010) ....................................................................................... 3

*K-2 Ski Co. v. Head Ski Co., Inc.,*
   506 F.2d 471, 477 (9th Cir. 1974) ............................................................................... 2

*Kaas Law v. Wells Fargo Bank, N.A.,*
   799 F.3d 1290, 1293 (9th Cir. 2015) ........................................................................... 7

*Klamath Siskiyou Wildlands Ctr. v. U.S Bureau of Land Mgmt.,*
   589 F.3d 1027, 1030 (9th Cir. 2009) ........................................................................... 2

*Miles v. State of California,*
   320 F.3d 986, 989 (9th Cir. 2003) ............................................................................... 2

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
   572 U.S. 545 (2014) ...................................................................................................... 1

*SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd,*
   839 F.3d 1179 (9th Cir. 2016) ...................................................................................... 1

## Statutes

17 U.S.C. § 1117(a) ............................................................................................................ 4, 5

28 U.S.C. § 1920 .................................................................................................................... 5

28 U.S.C. § 1927 .................................................................................................................... 9

## Rules

Civil Local Rule 54-5 ......................................................................................................... 4, 12

FED.R.BANK.PROC. 9011 ....................................................................................................... 9

FED.R.CIV.P. 11 ...................................................................................................................... 9

FED.R.CIV.P. 54 ...................................................................................................... 4

FED.R.CIV.P. 54(d)(1) ............................................................................................ 4

FED.R.CIV.P. 54(d)(2) ............................................................................................ 5

Plaintiff Doris A. Kalein, as trustee for the estate of TechShop, Inc. (hereinafter, "TechShop"), after a jury trial with a verdict in its favor, files this motion for attorney's fees and costs in accordance with FED.R.CIV.P. 54, Civil Local Rule 54-5, 17 U.S.C. § 1117(a), and the Court's Order of June 26, 2019 (*See* Dkt. #224).

## I.    LEGAL BACKGROUND

Pursuant to 17 U.S.C. § 1117(a), "[w]hen a violation of any right of the registrant of a mark registered … shall have been established in any civil action …, the plaintiff shall be entitled to … recover the costs of the action."  Further, "[t]he Court in exceptional cases may award reasonable attorneys fee to the prevailing party."

As set forth in *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd*, 839 F.3d 1179 (9th Cir. 2016), the determination of whether a case is "exceptional" for trademark purposes is guided by the Supreme Court's decisions in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014) and *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).  *SunEarth*, 839 F.3d at 1181.  In *Octane*, the Supreme Court stated:

> We hold that an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.  District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Id*. at 554 (*citing Fogerty*, 510 U.S. at 534 n. 19).  In *Fogerty*, the Supreme Court identified a non-exclusive list of factors a court should consider in making an exceptional case determination including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id*.

Pursuant to FED.R.CIV.P. 54(d)(1), "costs" should be allowed to the "prevailing party." A party is the "prevailing party" if it "achieved a material alteration in the legal relationship of the parties that is judicially sanctioned."  *See, e.g., Klamath Siskiyou Wildlands Ctr. v. U.S*

*Bureau of Land Mgmt.*, 589 F.3d 1027, 1030 (9th Cir. 2009); *Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 604 (2001). A party may be the "prevailing party" by prevailing on its own claims or by defeating claims brought against it. *See, e.g., Miles v. State of California*, 320 F.3d 986, 989 (9th Cir. 2003). Further, a party need not prevail on every claim it brought/issue to be the "prevailing party." *See, e.g., K-2 Ski Co. v. Head Ski Co., Inc.*, 506 F.2d 471, 477 (9th Cir. 1974). All that is needed is a material change. "Costs" under Rule 54(d)(1) are limited to those set forth in 28 U.S.C. § 1920.[1]

However, where a statute allows for recovery of attorney's fees and costs, such as 17 U.S.C. § 1117(a), "costs" under the statute are *broader* than those defined in 28 U.S.C. § 1920. *See, e.g., Grove v. Wells Fargo Financial California, Inc.*, 606 F.3d 577 (9th Cir. 2010). Such "costs" may include "reasonable out of pocket litigation expenses that would normally be charged to a fee paying client, even if the court cannot tax those expenses as 'costs' under 28 U.S.C. § 1920." *Id.* at 581 (internal citations and quotations omitted). *See* Fed.R.Civ.P. 54(d)(2) ("non-taxable expenses"). Examples of such allowed costs include: computerized research; expert witness fees; travel expenses; paralegal expenses; and courier fees.

## II.    DISCUSSION

### A.  TechShop Was the "Prevailing Party"

Clearly, TechShop was the "prevailing party" in this case.

During the meet and confer, Defendants' counsel conceded that TechShop was the prevailing party with respect to Defendants' claims. In this case, Defendants brought affirmative claims that the TechShop' marks were invalid and should be cancelled for a smorgasbord of reasons. *See* Dkt. #42 at 5, and 8. TechShop defeated each and every one of those. Likewise, TechShop defeated Defendants' "fraud" and "wire fraud" claims. *Id.* at 11 and 17.

---

[1] Concurrent with the filing of this brief, Plaintiff is also submitting a Bill of Costs in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules.

Further, TechShop was victorious on its own claims. The jury found ownership, infringement, and willful infringement by both of Defendants uses. Admittedly, no damages were awarded – so far. That is of no effect. The legal relationship between the parties has been materially altered. As a result of the jury's verdict, at least, Defendants will be barred from challenging the validity of TechShop's marks or that Defendants' uses infringe. Further, concurrent with this motion, TechShop's motion for entry of a permanent injunction will be pending. Thus, the legal relationship between the parties has been materially altered as a result of the verdict and TechShop is the "prevailing party."

Finally, of course, on June 26, 2019, judgment was entered in TechShop's favor and against Defendants. *See* Dkt. # 223.

TechShop was the "prevailing party."

## B. This Case Was "Exceptional"

As set forth above, a case may be "exceptional" based on either the strength or weakness of the substantive litigating positions and/or based on litigation conduct. This case was exceptional by any measure.

### i. Strength/Weakness of Litigating Position

Defendants' substantive litigation positions were exceptionally weak while Plaintiff's were exceptionally strong. With regard to Defendants' use of the name "TechShop 2.0", putting aside everything else, at base Defendants offered that they did not understand Plaintiff's letter of February 14, 2018 notifying them that they had no right to use the "TechShop" name to open a makerspace as an indication to stop using that name. Therefore, Defendants offered that they continued to infringe. In terms of infringement itself, of course, Defendants' use was not of something like the TechShop' marks, it actually was the TechShop marks, including copying of the TechShop logo. With respect "TheShop.build", no reasonable person could have concluded anything other than infringement, when Defendants again sought to mimic TechShop's logo. Mr. Rasure's testimony that mimicking the TechShop color scheme and gear was his effort to make "TheShop.build" as different from "TechShop" as possible was literally incredible. One

indicator of the strength/weakness of the infringement case/defense was the jury's finding of willful infringement as to both uses.

Defendants claim of "fraud" was also exceptionally weak. As Plaintiff pointed out repeatedly, Defendants never actually identified any promise actually not performed by TechShop. Moreover, of course, to support a claim for fraud, Defendants would have had to offer evidence that TechShop made a promise not intending to honor that promise at the time it was made. There was never any evidence of any of that. Not that there was little evidence – there was NO EVIDENCE.

Thus, Defendants' substantive litigation positions were exceptionally weak while Plaintiff's were exceptionally strong.

### ii. Defendants' Litigated This Case Unreasonably

Beyond the factual/legal issues concerning infringement and Defendants' fraud claim, the litigation conduct in this case was "exceptional." This Court is already aware of Defendants' long-standing discovery misconduct, for which Defendants were ultimately sanctioned. *See* Dkt. #97. Further, this Court is already aware of Defendants' baseless charge of fraud against Mssrs. Newton and Woods and Defendants' failure to even serve Mssrs. Newton and Woods with the Complaint making those allegations. Thus, Defendants baselessly tarnished the names of Mssrs. Newton and Woods. Further, this Court is already aware of Ms. Draper's false representation of compliance with Judge Spero's discovery Order (never corrected). *See* Dkt. #135 at 2.[2] Further, this Court is already aware of Defendants' improper disclosure of more than 45% of the exhibits on Defendants' trial exhibit list months after the close of discovery and the day before/day of the exchange of the trial exhibit list, necessitating motion practice to exclude them. *Id*. at 2-3. In and of themselves, the above conduct would suffice to make this case "exceptional."

---

[2] In and of itself, Ms. Draper's failure to correct her false statement of material fact violated Rule 3.3(a)(1) of the Code of Ethics.

Nevertheless, there are at least three other incidents that bear on the "exceptional" nature of this case with which the Court either has only slight familiarity or which are unknown to the Court.

### 1. False Certificate of Service

Many of the issues in this case started with Plaintiff's simple service of Requests for Production. Defendants' counsel (Ms. Draper) asked for an extension of time to even respond with objections to the Requests, something Plaintiff's counsel had never encountered in more than 20 years of litigation practice. Nevertheless, Plaintiff agreed to a two-week extension in an effort to avoid burdening the Court. When no responses were received by the extended date, Plaintiff inquired and Ms. Draper represented that they were "mailed" on the agreed response date (August 13, 2018) without emailing copies. When no responses were still received by August 21, 2018, Plaintiff again asked where they were and Ms. Draper sent a PDF of responses scanned that very day. The purpose of Ms. Draper's claim of mailing appears to have been additional delay. *See* Dkt. #53 at 1-3.

Likewise, Defendants belatedly served "amended" responses on August 25, 2018 containing a Certificate of Service indicating that the responses had been mailed on August 24, 2018. No mailed copy of either document was ever received. *Id.*

As noted in other papers, this is not the first time that Ms. Draper has represented to opposing counsel that something was "in the mail" that was not received. *Id.* at 5.

Thus, this Court can either decide that: 1) like Ms. Draper's false statement before this Court, her Certificates of Service under oath were false; or 2) that in the most amazing of coincidences, the U.S. Mails just do not work when Ms. Draper has a deadline to respond to opposing counsel and that is precisely the time she chooses to use the mails rather than electronic communications.

### 2. Improper Threat to the Trustee

On April 5, 2019, counsel for Defendants (Ms. Roberts) wrote an astonishing message. There, Ms. Roberts wrote:

> I write to put Ms. Kaelin on notice that Defendants will ask the Court to impose sanctions on Ms. Kaelin in her personal capacity for authorizing and maintaining a frivolous service mark lawsuit against Defendants. *Maxwell v. KPMG LLP*, 520 F.3d 713, 718 (7th Cir. 2008); 28 U.S.C. §1927.  As Ms. Kaelin is aware, TechShop consented to Defendants' use of the name "TechShop 2.0." When TechShop belatedly objected to Defendants' use of "TechShop 2.0" and filed suit, Defendants changed their name to "TheShop.Build." As a result, this action was never "reasonably likely to benefit the debtor's estate." *Maxwell*, 520 F.3d at 718.  The sanctions sought against Ms. Kaelin personally will include Defendants' recovery of their attorneys' fees, costs and expenses, and damages, as well as punitive damages.

*See* Exhibit A. Every aspect of this message was improper, in bad faith, and the message was sent solely for the improper purpose of harassing and intimidating Ms. Kaelin.[3]

First, of course, the basic claim that this lawsuit was frivolous was itself frivolous.  The jury found ownership, validity, infringement, and willful infringement of TechShop's trademarks by both uses by Defendants and rejected Defendants' fraud claim.[4]  Second, fees under 28 U.S.C. § 1927 are only available against attorneys in a case, not their clients, as Ms. Kaelin was in this case. *See, e.g., Kaas Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015) ("[W]e have held that 28 U.S.C. § 1927 does not permit the awarding of sanctions against … a client[.]").  Thus, the threat of seeking sanctions under § 1927 against "Ms. Kaelin personally" was baseless.  Third, the *Maxwell* case concerned an "adversary proceeding" within a bankruptcy case itself.[5]  Proceedings in bankruptcy courts are governed by the Federal Rules of Bankruptcy Procedure, including FED.R.BANK.PROC. 9011, which is the bankruptcy analog to FED.R.CIV.P. 11.  Like Rule 11, FED.R.BANK.PROC. 9011 has procedural protections and requires service of such a motion at least 21 days before it can be filed.  In any event, of course, this case was not an "adversary proceeding" under bankruptcy rules and any Rule 11 motion in this case would have itself been frivolous and none was served.

---

[3] Ms. Kaelin is made of stronger stuff than Defendants supposed.

[4] Any person viewing Defendants' effort to mimic TechShop's logo when using the name "theShop.build" could hardly conclude otherwise.

[5] That is, one of any of the kinds of proceedings governed by FED.R.BANK.PROC. 7001.

Given its utterly baseless nature, the purpose of this message was simple harassment and intimidation.

### 3. James Newton – Failure to Meet and Confer Resulting in Recall of Witness

During the trial an incident occurred that this Court called "absurd" - Defendants recall of James Newton to ask him a single question. While Defendants sought to portray this as a result of unreasonable conduct by Plaintiff, the opposite is true. Moreover, Defendants failed and refused to correct the misimpression they created with the Court – apparently thinking they had gained tactical advantage. In and of itself, this single incident was "exceptional."

Pursuant to this Court's Civil Pretrial and Trial Standing Order, the parties were supposed to disclose witnesses and exhibits to be introduced by Noon the day before the witness was to be called. *Id.* at ¶ 30. Further, the parties were supposed to meet and confer about any disputes. "Meeting and conferring via email is not sufficient; the parties must meet in person or over the telephone." *Id.* at ¶ 31. Pursuant to the Order, briefs related to any disputes must be filed by midnight the day before. At the pre-trial conference, the Court modified the brief filing time to 10:00pm. Transcript at 37:12-13 ("I think the order may say by midnight, but it should be by 10:00 ..."). Because of the smaller trial teams in this case, the parties agreed to: 1) exchange witness/exhibit lists by 4:00pm the day before (rather than Noon while still in trial); 2) identify objections by 5:00pm; and 3) meet and confer at 7:00pm.

On June 5, 2019, after the third day of trial, the parties exchanged witness/exhibit lists for use the following day (Mr. Rasure being Defendants' first witness), exchanged objections, and then met and conferred at ~7:00pm. Plaintiff then began drafting a brief addressing all of the exhibits/slides proposed to be used with Defendants' "expert" as well as a 134-page composite exhibit offered by Defendants consisting of a large number of emails, online posts, etc.

Approximately an hour later, Defendants indicated that they intended to call Mr. Newton first, rather than Mr. Rasure, and did not disclose which topics they intended to call Mr. Newton on. Plaintiff objected that this violated the parties' agreement, was not discussed, that Plaintiff

did not have time to address it while briefing the other issues, etc.  Plaintiff stated that he was willing to discuss the issue after the 10:00pm briefs were on file.  Plaintiff filed its brief (see Dkt. #199) and did not address the issue related to Mr. Newton because it had not been the subject of a meet and confer and Defendants had not indicated that they intended to brief the issue. Defendants made no effort to conduct a meet and confer the remainder of the evening.  *See* Exhibit B.  Subsequently, Plaintiff retired without reviewing Defendants' filing believing that the Newton issue would be dealt with later/the Defendants did not care enough to meet and confer on the matter.[6]

Unbeknownst to Plaintiff, Defendants set forth their position with respect to Mr. Newton in their brief in violation of the Court's Order to meet and confer.  *See* Dkt. #198.[7]  The following morning, to Plaintiff's astonishment, the Court expressed its displeasure that Plaintiff had not agreed to change the order with respect to Mr. Newton.  Thereafter, Defendants called Mr. Newton and asked a single question, Plaintiff asked a single question and Mr. Newton was dismissed.[8]  The Court later called this "absurd" and expressed its displeasure at the entire situation.

Thereafter, Plaintiff's counsel came to understand that Defendants had briefed the Newton issue, appreciated that the Court was under the impression that Plaintiff's had caused the situation, and sought to address it with the Court, to which the Court was not receptive.  Plaintiff then sought to have Ms. Roberts correct the misimpression her violation of the Court's meet and confer Order had created.  Ms. Roberts refused.  *See* Exhibit C.

---

[6] As solo counsel, Plaintiff's counsel was forced to make many decisions about where to expend his limited time.  Reading briefs with arguments Plaintiff's counsel already knew was not high on the list.  Especially so when the cross-examination of Defendants' principal witness was scheduled for the following day.

[7] No doubt, the Court must have been curious as to why Plaintiff did not address this issue in its briefs.

[8] Defendants asked Mr. Newton whether the customer list was disclosed in the bankruptcy filings, he said "YES."  Plaintiff asked Mr. Newton whether the customer email list was disclosed in the bankruptcy filings, he said "NO."

Had a meet and confer occurred and Plaintiff's counsel known the reason that Mr. Newton was being recalled, as indicated in the contemporaneous emails, Plaintiff could have addressed it and avoided the "absurd" situation of Mr. Newton being forced for come back to answer two questions. *Id.* Clearly, filing a brief in violation of the Court's Order to gain tactical advantage that results in inconveniencing a third-party witness and further concealing that fact from the Court and refusing to correct it is "exceptional" conduct by any standard.

This case was "exceptional."

### C. TechShop's Attorneys Fees and Costs/Expenses

Civil Local Rule 54-5(b) addresses only fees. However, as set forth above, TechShop may also recover its non-taxable expenses. Both are set forth here.

#### i. Attorneys Fees - $316,757

TechShop's total attorneys fees since inception through the end of June 2019 were $365,419. In the interests of streamlining consideration, TechShop is deducting $3,466.41 billed by other time-keepers so that all the fees claimed are from a single time-keeper (Mr. Pistorino). Further, as a result of Judge Spero's sanctions Order, $10,000 of the fees were previously paid. To further facilitate consideration, TechShop is choosing to exercise billing discretion and reduce the fees by 10% across the board. That leaves a final fee figure of $316,757.

As set forth in the attached declaration, Mr. Pistorino has over 20 years experience litigating intellectual property matters for some of the largest technology companies in the United States. The fees billed by Mr. Pistorino were billed at his usual and customary rates of $495-525/hour during the pendency of this case. Mr. Pistorino billed a total of 704.7 hours. Invoices were generated based on daily time entries, billed monthly. With the deductions, etc., this results in an effective billing rate of ~$450/hour.[9]

#### ii. Costs/Expenses

---

[9] To the extent that any of the hourly rates mentioned herein are challenged by Defendants as unreasonable or higher than the prevailing market rates, Plaintiff suggests that discovery of the Quinn Emanuel firm is likely to result in relevant evidence.

As detailed above, under the statute and cases cited, non-taxable expenses that would normally be charged to a fee paying client are also recoverable. TechShop's claims for out of pocket expenses fall into several categories.

### 1. Expert Witness Fees – Dr. Eric Matolo/Nathan & Assoc. - $47,884

At trial, TechShop presented testimony from its damages expert, Dr. Eric Matolo of Nathan & Associates. As indicated in his resume (admitted at trial) and in his testimony, Dr. Matolo has over ten year's experience in damages analysis and his testimony has been accepted in numerous federal courts. Dr. Matolo conducted an investigation of TechShop's licensing program and reviewed numerous documents produced by both TechShop and Defendants. With regard to Defendants' documents, Defendants marked the vast majority of them under the Protective Order so that only Dr. Matolo and Plaintiff's counsel were able to review them. Thus, of Plaintiff's witnesses, only Dr. Matolo was in a position to testify regarding Defendants' licensing offers and other financial documents.

In addition to his opening report, Dr. Matolo was deposed, produced a supplemental report, and was present for two days of trial, including the time he spent testifying and preparing for the same. Dr. Matolo's hourly rate of $415/hour is well within the usual and customary range for damages experts with comparable experience and training (indeed, it is on the low end). In addition to Dr. Matolo, time was billed by two associates at $225-295/hour.[10]

Dr. Matolo's total charge for time associated with this matter was $46,387 with $1,496 in expenses (airfare, hotel, taxi, meals) for a total charge of $47,884. A copy of Dr. Matolo's resume and the Nathan & Assoc. bills are attached as Exhibit D.

### 2. Trial Tech/Paralegal – Raul Estravit Encore Litigation & Trial Tech - $16,578

---

[10] Plaintiff notes that Defendants' damages "expert" (Mr. Binger), with much less experience and training, billed at $400/hour. See Dkt. #125, Exhibit C at 8.

In order to assist counsel and properly present its case, TechShop retained Mr. Raul Estravit. Mr. Estravit is an experienced trial technician/paralegal with over 25 years experience.

Mr. Estravit attended trial each day and was instrumental in presenting the exhibits/demonstratives to the jury/court. As a trial tech, Mr. Estravit highlighted and called out portions of the exhibits that facilitated questioning and assisted the jury/court in understanding the exhibits. As a paralegal, Mr. Estravit also handled numerous tasks including preparing binders for examination/cross-examination for use with the witnesses themselves.

Mr. Estravit's hourly rate of $175/hour is well within the usual and customary range for paralegals/trial technicians with similar training and experience.[11] Invoices were generated based on daily time entries, billed monthly. Mr. Estravit billed 65.5 hours to this matter. In addition, Mr. Estravit billed $5,290 in expenses (airfare, hotel, meals, etc.) for a total charge of $16,578. A copy of Mr. Estravit's resume and the Encore Litigation bill is attached as Exhibit E.

### 3.  Other Costs/Expenses

Dr. Matolo and Mr. Estravit traveled to the Bay Area for trial and their hotel/travel expenses are included in their charges and detailed in the billing attached.

Plaintiff also incurred the following expenses:

| | |
|---|---|
| Marriott Hotel during trial | $4,531.96 |
| Litigation Document Productions, Inc. | $1,917.21 |
| Hotel/travel expenses for Matolo deposition | $532.80 |
| Chambers copy of pretrial filings | $316.34 |
| All other expenses (copies of exhibits, preparation of witness binders, shipping/postage, parking charges, office supplies for trial, filing fees to maintain registrations) | $2,653.32 |
| **Total:** | $9,951.63 |

Plaintiff's counsel chose to stay at a hotel (the Marriot Convention Center) during trial near the courthouse for several reasons. Plaintiff's counsel's office is located more than 30 miles

---

[11] Plaintiff notes that Ms. Slobodyanyuk (a 2016 Harvard Law graduate) performed this same role for Defendants.

from the courthouse. Given traffic in the Bay Area, that drive can often take an hour or more –
each way – and is unpredictable as a result of accidents and construction. Thus, traveling would
have required hours each day and also would have increased the chances of Plaintiff's counsel
being tardy. Staying in a hotel reduced the travel time to 5-10 minutes. As solo counsel,
Plaintiff's counsel needed to concentrate on the trial and did not have hours to devote to travel
each day. Further, staying in a hotel facilitated working with Plaintiff's trail tech/paralegal to
prepare for each day of trial.[12] Copies of the Marriott bills are attached as Exhibit F.

Litigation Document Productions, Inc. handled the preparation/copying of the trial
exhibits and the preparation of some of the binders used with the witnesses during trial. Copies
of the LDP bills are attached as Exhibit G.

As indicated above, Dr. Matolo was deposed in this case and Plaintiff incurred
hotel/travel expenses attending the deposition. A spreadsheet detailing the charges in the "all
other expenses" category is attached as Exhibit H.

### III.   CONCLUSION

For the reasons set for above, TechShop should be awarded its reasonable attorneys fees
and expenses in the amount of $391,170.[13]

Respectfully submitted,

James C. Pistorino (SBN 226496)
james@dparrishlaw.com
Parrish Law Offices
224 Lexington Dr.
Menlo Park, CA  94025
Telephone: (650) 400-0043

Attorneys for Plaintiff

---

[12] Plaintiff notes that Defendants' counsel apparently made the same decision as they stayed at
the same hotel during trial, as did Mr. Rasure.

[13] Pursuant to Civil Local Rule 54-5(b)(1), a conference was held on Tuesday, July 9, 2019, in an
effort to narrow the issues. Other than Defendants agreement that TechShop was the "prevailing
party" as to Defendants' claims, no agreement was reached.