1  Ann McFarland Draper (Bar No. 065669)
   courts@draperlaw.net
2  Draper Law Offices
   75 Broadway, Suite 202
3  San Francisco, California 94111
   Telephone:     (415) 989-5620
4
   QUINN EMANUEL URQUHART & SULLIVAN, LLP
5  Kevin P.B. Johnson (Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Andrea Pallios Roberts (Bar No. 228128)
   andreaproberts@quinnemanuel.com
7  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, California 94065-2139
8  Telephone:     (650) 801-5000
   Facsimile:     (650) 801-5100
9
   Ed DeFranco (Bar No. 165596)
10 eddefranco@quinnemanuel.com
   51 Madison Avenue, 22nd Floor
11 New York, NY 10010
   Telephone:     (212) 849-7000
12 Facsimile:     (212) 849-7100
13 John E. Nathan (Pro Hac Vice)
   jnathan155@yahoo.com
14 John E. Nathan LLC
   1175 Park Avenue
15 New York, NY 10128
   Telephone:     (917) 960-1667
16
   Attorneys for Defendants and Counterclaimants
17

18                    UNITED STATES DISTRICT COURT

19          NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

20  | TECHSHOP, INC., a California corporation, | CASE NO. 4:18-CV-01044-HSG (JCS) |
|---|---|
21  DORIS A. KAELIN, in her capacity as
    Chapter 7 Trustee for TECHSHOP, INC.,      **DEFENDANTS' PROPOSED FINDINGS
                                               OF FACT AND CONCLUSIONS OF LAW
                    Plaintiff,                 ON EQUITABLE DEFENSES OF
                                               (1) ACQUIESCENCE; (2) ESTOPPEL;
            vs.                                AND (3) LACHES**

    DAN RASURE, et al.,

                    Defendants.                Hearing Date:  November 7, 2019
                                               Time:  2:00 p.m.
                                               Judge:  Haywood S. Gilliam, Jr.

    AND RELATED COUNTERCLAIMS

## TABLE OF CONTENTS

Page

[PROPOSED] FINDINGS OF FACT .................................................................................1

I.   PLAINTIFF ACQUIESCED TO DEFENDANTS' USE OF THE NAME
     "TECHSHOP 2.0" FROM THE BEGINNING OF NEGOTIATIONS TO
     PURCHASE PLAINTIFF TO FEBRUARY 14, 2018. .....................................................1

     A.   Plaintiff Consented to Defendant Rasure's Use of the Name "TechShop
          2.0" When Negotiations to Purchase Plaintiff Began ...................................1

     B.   Representatives of Plaintiff Called Mr. Rasure's Company "TechShop 2.0"
          in Communications with Mr. Rasure, Plaintiff's Employees, Customers, and
          the Public.........................................................................................2

     C.   In Negotiations Following Execution of the MOU, Plaintiff's
          Representatives Continued to Use the Name "TechShop 2.0," and Did Not
          Object to Mr. Rasure's Use of That Name.....................................................4

     D.   Both Parties Continued to Refer to Mr. Rasure's Company as "TechShop
          2.0" After Termination of the MOU. ..........................................................6

II.  TECHSHOP WAS AWARE OF DEFENDANTS' NEW NAME
     "THESHOP.BUILD" ON FEBRUARY 17, 2018, THE DAY AFTER THE
     COMPLAINT WAS FILED, BUT DELAYED FOR NINE MONTHS BEFORE
     CLAIMING THAT THE NEW NAME ALLEGEDLY INFRINGED THE
     "TECHSHOP" MARKS ................................................................................9

     A.   The TECHSHOP Marks Were of Little or No Value and Plaintiff Was Not
          Harmed by Defendants' Use. ...................................................................11

     B.   Plaintiff Declined to Enforce its TECHSHOP Marks Against Odyssey
          Expo. ...........................................................................................11

     C.   Plaintiff Did Not Disclose Alleged Infringement By "TheShop.build" Until
          November 23, 2018. .............................................................................12

[PROPOSED] CONCLUSIONS OF LAW ..........................................................................14

I.   TECHSHOP'S CLAIMS FOR INFRINGEMENT BASED ON DEFENDANTS'
     USE OF "TECHSHOP 2.0" FROM NOVEMBER 2017 TO FEBRUARY 14, 2018
     ARE BARRED UNDER THE EQUITABLE DOCTRINE OF ACQUIESCENCE ..........14

II.  TECHSHOP IS ESTOPPED FROM ASSERTING CLAIMS FOR
     INFRINGEMENT BASED ON DEFENDANTS' USE OF "TECHSHOP 2.0"
     FROM NOVEMBER 2017 TO FEBRUARY 14, 2018 ...................................................16

     (1)   Plaintiff knew the Defendants were using the name TechShop 2.0.............17

     (2)   Due to Plaintiff's conduct, Defendants reasonably believed that
           Plaintiff did not intend to enforce the TECHSHOP marks. .......................18

     (3)   Defendants did not know that Plaintiff objected. ....................................18

(4)     Defendants have been and will be materially prejudiced if Plaintiff is not estopped. .......................................................................................19

III.     TECHSHOP IS ESTOPPED FROM ASSERTING CLAIMS FOR INFRINGEMENT BASED ON DEFENDANTS' USE OF "THESHOP.BUILD." ..........19

(1)     Plaintiff knew the Defendants were using the name TheShop.build. ..........20

(2)     Due to Plaintiff's conduct, Defendants reasonably believed that Plaintiff did not intend to enforce the TECHSHOP marks ..........................20

(3)     Defendants did not know that Plaintiff objected. ........................................20

(4)     Defendants have been and will be materially prejudiced if Plaintiff is not estopped. .......................................................................................21

IV.     TECHSHOP'S CLAIMS FOR INFRINGEMENT BASED ON ITS NEW THEORY OF DEFENDANTS' USE OF ITS NEW NAME "THESHOP.BUILD" STARTING FEBRUARY 17, 2019 ARE BARRED UNDER THE EQUITABLE DOCTRINE OF LACHES. ..........................................................................22

(1)     The strength and value of TECHSHOP rights asserted ..............................23

(2)     Plaintiff's diligence in enforcing its marks ..................................................24

(3)     The harm to Plaintiff if relief denied ..........................................................24

(4)     Defendants' good faith ignorance ...............................................................25

(5)     No competition between Plaintiff and Defendants ......................................25

(6)     The extent of harm suffered by Defendants because of Plaintiff's delay ...........................................................................................................25

V.     CONCLUSION .............................................................................................26

08876-00001/10988442.1

**[PROPOSED] FINDINGS OF FACT**

I.   **PLAINTIFF ACQUIESCED TO DEFENDANTS' USE OF THE NAME "TECHSHOP 2.0" FROM THE BEGINNING OF NEGOTIATIONS TO PURCHASE PLAINTIFF TO FEBRUARY 14, 2018.**

    A.   **Plaintiff Consented to Defendant Rasure's Use of the Name "TechShop 2.0" When Negotiations to Purchase Plaintiff Began**

    1.      On November 15, 2017, Plaintiff TechShop Inc. ("Plaintiff" or "TechShop") announced that it was closing its U.S. locations and intended to file for bankruptcy.  (Trial Tr., _____ [Newton; Woods; Rasure.])[1]

    2.      On November 17, 2017, Defendant Dan Rasure contacted Plaintiff expressing his interest acquiring Plaintiff's assets.  (*See* TX-0032 at DR003543; Trial Tr. _____ [Rasure].)

    3.      Mr. Rasure named the company that he founded to acquire Plaintiff "TechShop 2.0."  (Trial Tr., _____ [Rasure].)  Mr. Rasure is the founder of "TechShop 2.0," now known as "TheShop.build," and runs the business.  (Trial Tr., _____ [Rasure].)

    4.      Plaintiff was aware that Mr. Rasure named his company "TechShop 2.0" and did not object to his use of that name.  For example, on November 29, 2017, TechShop's CEO Daniel Woods sent an email introducing Mr. Rasure to Louise Larson, TechShop's former director of marketing.  (*See* TX-0596 at DR006502; Trial Tr., _____.)  Mr. Woods stated that Ms. Larson "would definitely be willing to bring her magic and support to the TechShop 2.0 announcement and transition."  (*Id*.)  Mr. Woods also referred to Mr. Rasure as "the lead instigator of TechShop 2.0."  (*Id*.)

    5.      Ms. Larson responded to Mr. Woods' November 29, 2017 email, stating that "TechShop 2.0 is an exciting revision of this community makerspace."  (TX-0598 at DR006538; Trial Tr., _____.)  Neither Mr. Woods nor Plaintiff's founder and chairman of the board Jim

---

    [1]   As the Court is aware, Defendants could not afford the cost of a daily transcript of the jury trial.  The trial transcript has been ordered.  Defendants received some portions of the trial transcript on July 23, but not with sufficient time to update all of the cites in this brief and other documents filed concurrently herewith.  Defendants understand from the court reporter that the remainder of the trial transcript should be available later in the week.  When the complete trial transcript is available, Defendants will seek leave to amend their post-trial filings to include citations to the trial transcript.

1   Newton, both of whom received the email, responded to correct Ms. Larson about the name

2   "TechShop 2.0." (*See id.*)

3         6.     The same day, on November 29, 2017, Mr. Woods again called Mr. Rasure's

4   company "TechShop 2.0." He wrote an email to Mr. Rasure and TechShop representatives Jim

5   Newton, Doug Busch, Sean Doherty, Louise Larson, and Elizabeth Bauer, asking for comments

6   on his draft announcement to TechShop members about Mr. Rasure's acquisition of TechShop.

7   (TX-0597; Trial Tr., _____.) The draft announcement stated that "TechShop has reached an

8   agreement with a third party to acquire all of the company's assets and secured debt with plans to

9   re-open as many stores as possible under the name TechShop 2.0 beginning as early as next

10   week." (TX-0597 at DR006505; Trial Tr., _____.) The announcement went on to state that the

11   "TechShop 2.0 store re-opening schedule and member re-engagement plan are being finalized and

12   will be released within the next few days," and that "[l]ocations where TechShop 2.0 has finalized

13   new lease agreements with landlords will be first to re-open." (*Id.*)

14         7.     In response to Mr. Woods' email, one of TechShop's directors, Doug Busch sent a

15   response email and asked Mr. Rasure if he "settled firmly on TechShop 2.0 as the name you will

16   reopen under." (TX-0921 at TS000671; Trial Tr., _____.) Mr. Busch went on to say "[t]otally

17   your call." (*Id.*)

18         8.     Mr. Woods responded to Mr. Busch's email and agreed that it was Mr. Rasure's

19   call whether or not to use "TechShop 2.0" as the company name. (TX-0921 at TS000671; Trial

20   Tr., _____.)

21         **B.**     **Representatives of Plaintiff Called Mr. Rasure's Company "TechShop 2.0" in**

22                  **Communications with Mr. Rasure, Plaintiff's Employees, Customers, and the Public.**

23         9.     On November 30, 2018, representatives of Plaintiff and Mr. Rasure (the "Parties")

24   reached a tentative agreement regarding Mr. Rasure's acquisition of Plaintiff, and a final draft of a

25   Memorandum of Understanding ("MOU") was circulated among Messrs. Rasure, Woods, Busch,

26   and Newton, Plaintiff's in-house counsel and investor relations manager Elizabeth Bobek, and

27   Plaintiff's director and special advisor to the board of directors Sean Doherty. (*See* TX-0602 at

28   DR006844; Trial Tr., _____.) The Summary of Principal Transaction Terms referred to Mr.

1   Rasure's company as "TechShop 2.0," stating that "TechShop, Inc. is willing to sell all of its

2   assets to a third-party buyer, TechShop 2.0, LLC (TechShop 2.0)." (*Id.* at DR006845.)  There are

3   numerous references to "TechShop 2.0" throughout the MOU. (*See id.* at DR006845-46.)

4          10.     The final MOU was signed on December 1, 2017. (TX-0610.)  Mr. Rasure's

5   company is called "TechShop 2.0" in the executed MOU. (*Id.* at DR0007002.)  Mr. Woods signed

6   the final MOU on Plaintiff's behalf. (*Id.* at DR007003; TX-0604 at DR006910.)

7          11.     Mr. Busch also approved the MOU. (TX-0604 at DR006910.)

8          12.     There was heavy publicity regarding the negotiations between Plaintiff and

9   Defendants. (Trial Tr., _____.)  For example, on December 1, 2017, Mr. Woods announced that

10  an agreement was reached in an email to all of Plaintiff's employees, which was sent to

11  everyone@techshop.ws. (TX-0611; Trial Tr., _____.)  Mr. Woods' email stated that "[t]he new

12  entity, TechShop 2.0, LLC plans to re-open as many stores as possible, as soon as possible." (TX-

13  0611 at DR007004; TX-0897 at TS000343.)

14         13.     Plaintiff also referred to Mr. Rasure's business as "TechShop 2.0" in its Notice of

15  Liquidation Event to stockholders, which was signed by Mr. Woods. (*See* TX-0603 at DR006890-

16  91; Trial Tr., _____.)  Specifically, Exhibit A to the Notice of Liquidation Event stated that

17  "TechShop, Inc. is willing to sell all of its assets to a third-party buyer, TechShop 2.0, LLC." (*Id.*

18  at DR006891.)

19         14.     Mr. Woods announced the agreement between the Parties to Plaintiff's members

20  and creditors as well, referring to Mr. Rasure's company therein as "TechShop 2.0." (TX-0767 at

21  DR056577; TX-0619 at DR007130; TX-0753 at DR054780; Trial Tr., _____.)

22         15.     Plaintiff announced that the company's assets would be sold to "a group called

23  TechShop 2.0, LLC" on its Facebook page on December 1, 2017. (TX-0501 at DR000367; Trial

24  Tr., _____.)

25         16.     TechShop Brooklyn announced that the company's assets would be sold to "a

26  group called TechShop 2.0, LLC" on its Facebook page on December 1, 2017. (TX-0505 at

27  DR000416; Trial Tr., _____.)

28

DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSION OF LAW
ON EQUITABLE DEFENSES OF ACQUIESCENCE, ESTOPPEL AND LACHES

17.     Plaintiff announced that the company's assets would be sold to "a group called TechShop 2.0, LLC" on its Instagram account on December 1, 2017.  (TX-0530 at DR000488; Trial Tr., _____.)

18.     TechShop Austin-RR announced that Plaintiff "reached an agreement to sell the company to TechShop 2.0, LLC" on its Twitter account.  (TX-0527 at DR000485; Trial Tr., _____.)

19.     On December 3, 2017, Mr. Busch sent an email to Messrs. Rasure, Woods, Newton, and Doherty, and Ms. Bobek, sharing a message which he said he planned on posting "on various relevant social media sites" and which he expected "will be widely disseminated."  (TX-0612 at DR007019; Trial Tr., _____.)  Mr. Busch added that the message "draws a clear distinction between the TechShop, Inc. team and your new team."  (*Id.*)  The message referenced the name "TechShop 2.0," stating that a sale of assets will occur "to the new company (named by Mr. Rasure as 'TechShop 2.0')."  (*Id.* at DR007022.)

20.     Mr. Rasure made his own announcement about TechShop 2.0, and on December 3, 2017, Mr. Busch emailed him stating that he "received the 'Welcome to TechShop 2.0' email. There were a lot of good ideas and intentions in it."  (TX-0616 at DR007088; Trial Tr., _____.) Mr. Busch did not state any objection to Mr. Rasure's use of the name "TechShop 2.0."  (*See id.*)

21.     On December 3, 2017, Mr. Rasure also sent out a press release announcing the acquisition of TechShop.  (*See* TX-0614 at DR007040; Trial Tr., _____.)  The press release quoted a statement that Mr. Woods gave to Mr. Rasure, in which Mr. Woods stated that "we did whatever humanly possible to work with Dan Rasure and make TechShop 2.0 a reality."  (*Id.*)

C.     **In Negotiations Following Execution of the MOU, Plaintiff's Representatives Continued to Use the Name "TechShop 2.0," and Did Not Object to Mr. Rasure's Use of That Name.**

22.     On December 3, 2017, Mr. Woods sent an email to Mr. Rasure, copying several other TechShop representatives.  (TX-0615 at DR007048; Trial Tr., _____.)  In the email, Mr. Woods made several references to "TechShop 2.0," stating that "[b]oth TechShop, Inc. and TechShop 2.0 obviously want to carefully manage their respective messaging and communications," and "[u]ntil we close a deal, TechShop, Inc. should not be sending out anything

-4-

1    to our member and employee channels regarding TechShop 2.0's intentions, aspirations or

2    commitments unless it is information we're [sic] specifically requested on behalf of employees."

3    (*Id.* at DR007049.)

4           23.    The statement in Mr. Woods' December 3 email regarding "sending out anything…

5    to our member and employee channels" was about a letter from Mr. Rasure to TechShop members

6    which was attached to the email, and which referenced the name "TechShop 2.0," stating that

7    "[o]ur new legal entity name is TechShop 2.0 LLC." (TX-0615 at DR007050.) The letter's

8    signature block also contained the name "TechShop 2.0." (*Id.* at DR007051.) Nowhere in the

9    December 3 email did Mr. Woods object to the use of the "TechShop 2.0" name in Mr. Rasure's

10   letter. (*See id.* at DR007048-49.)

11          24.    Mr. Woods' December 3, 2017 email attached a list of commonly asked questions

12   from Plaintiff's employees and customers, which Mr. Woods compiled and which made several

13   references to the name "TechShop 2.0." (TX-0615 at DR007053; Trial Tr., _____.)

14          25.    Mr. Woods' December 3, 2017 email also contained a spreadsheet of tasks relating

15   to the wind down and transition of TechShop, which he put together, and which also made specific

16   references to the name "TechShop 2.0." (TX-0615 at DR007054-55; Trial Tr., _____.)

17          26.    Also on December 3, 2017, Mr. Woods sent an email to Mr. Rasure regarding

18   several outstanding items between the Parties, in which he made reference to "TechShop 2.0" in

19   stating that "[w]e still need at statement about the parties involved in or supporting TechShop

20   2.0." (TX-0906 at TS000538; Trial Tr., _____.)

21          27.    On December 3, 2017, Mr. Woods sent an email introducing Mr. Rasure to Robert

22   Thomas, a co-founder of TechShop. (TX-0613 at DR007029; Trial Tr., _____.) Mr. Woods again

23   referred to Mr. Rasure's company as "TechShop 2.0," stating that "Robert might be indispensable

24   to the TechShop 2.0 team as you seek to accelerate the re-opening of shops across the country."

25   (*Id.*)

26          28.    On December 4, 2017, Mr. Newton sent an email introducing Mr. Rasure to Martin

27   Bogomolni. (TX-0617 at DR007115; Trial Tr., _____.) Mr. Newton referred to "TechShop 2.0"

28

DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSION OF LAW
ON EQUITABLE DEFENSES OF ACQUIESCENCE, ESTOPPEL AND LACHES

08876-00001/10988442.1

1   in the subject of the email, and in the body of the email as well, stating that Mr. Bogomolni "has

2   expressed interest to me in possibly participating in TechShop 2.0." (*Id.*)

3        29.    On December 6, 2017, Mr. Woods sent an email to Mr. Rasure attaching a draft

4   Asset Purchase Agreement. (TX-0622 at DR007783; Trial Tr., _____.) The draft Asset Purchase

5   Agreement itself also specifically referenced "TechShop 2.0." (*Id.* at DR007785.)

6        30.    On December 12, 2017, Plaintiff unilaterally terminated the MOU. *(*TX-0919 at

7   TS000655; Trial Tr., _____.) In the email advising Mr. Rasure of the termination, Plaintiff's

8   outside counsel Kurt W. Ruttum of Tonkon Torp LLP referred to Mr. Rasure's company as

9   "TechShop 2.0, LLC." (*Id.*) In that email, Plaintiff did not request that Mr. Rasure stop using the

10  name "TechShop 2.0." (*Id.*)

11       **D.    Both Parties Continued to Refer to Mr. Rasure's Company as "TechShop 2.0"
             After Termination of the MOU.**

12       31.    Even though Plaintiff terminated the MOU on December 12, 2017, the Parties

13  continued to negotiate the terms of a potential deal. (Trial Tr., _____; TX-0634; TX-0635; TX-

14  0636, TX-0639; TX-0644; TX-0645; TX-0646.)

15       32.    On January 7, 2018, Mr. Rasure sent an email to Messrs. Busch and Woods

16  outlining the "basic layout" of a transaction between Plaintiff and TechShop 2.0. (TX-0634 at

17  DR011357; Trial Tr., _____.) The attachment to that email was titled "TechShop2.0.docx" and

18  made numerous references to the name "TechShop 2.0." (*Id.* at DR011358.)

19       33.    On January 8, 2018, Mr. Woods sent an email to Mr. Rasure providing a response

20  to Mr. Rasure's January 7, 2018 proposal. (TX-0635; Trial Tr., _____.) In that email, Mr. Woods

21  referenced "TechShop 2.0," stating that "[o]ur understanding has been that this deal would either

22  be (a) a foreclosure by Autodesk or (b) a foreclosure by TechShop 2.0, and as such, paying

23  employee back wages was compulsory." (*Id.* at DR011473.) The email went on to state that "the

24  deal as described seems to be back to a deal between TechShop and TechShop 2.0." (*Id.*) In his

25  response, Mr. Woods did not object to Mr. Rasure's use of the name "TechShop 2.0." (*Id.*)

26       34.    On January 13, 2018, in another email to Mr. Rasure, Mr. Woods provided a

27  further response to Mr. Rasure's proposal. (TX-0636; Trial Tr., _____.) Mr. Woods' response

28

Case No. 4:18-CV-01044-HSG (JCS)
DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSION OF LAW
ON EQUITABLE DEFENSES OF ACQUIESCENCE, ESTOPPEL AND LACHES

08876-00001/10988442.1

1  again references the name "TechShop 2.0." (*Id.* at DR011994.)  In his response, Mr. Woods did

2  not object to Mr. Rasure's use of the name "TechShop 2.0." (*Id.*)

3       35.    On January 31, 2018, Rasure sent an email to Messrs. Woods, Busch, Doherty, and

4  Newton with a proposal to reopen a makerspace at the location of the former TechShop in Austin

5  (Round Rock), Texas.  (TX-0639 at DR013192; Trial Tr., _____.)  The email contained an

6  attachment with the TechShop 2.0 logo and a statement that "TechShop 2.0 LLC desires to reopen

7  the former Tech Shop Round Rock location." (*Id.* at DR013193.)

8       36.    On January 31, 2018, Mr. Woods sent an email to Ryan Lloyd at the Williamson

9  County Sheriff's Office in Texas, authorizing Mr. Rasure to pay TechShop's subsidiary's past due

10  taxes in the amount of over $11,000 on TechShop's behalf.  (*See* TX-0642 at DR013252; Trial

11  Tr., _____.)  In the subject line and body of the email, Mr. Woods referenced "TechShop 2.0,

12  LLC." (*Id.*)  Mr. Woods also clarified that "Mr. Dan Rasure, representing TechShop, 2.0 LLC"

13  had "no affiliation with TechShop, Inc." (*Id.*)

14       37.    On February 1, 2018, Mr. Rasure sent Messrs. Woods, Newton, Busch, and

15  Doherty a proposed equipment rental agreement for the lease of equipment to use at the Austin

16  facility.  (TX-0644 at DR013501; Trial Tr., _____.)  The agreement referenced TechShop 2.0,

17  stating that it is made "between TechShop Austin LLC… and TechShop2.0 Austin." (*Id.* at

18  DR013502.)

19       38.    That same day, Mr. Woods responded to Mr. Rasure's email attaching the rental

20  agreement.  (TX-0645 at DR013505; Trial Tr., _____.)  In his response, Mr. Woods did not object

21  to Mr. Rasure's use of the name "TechShop 2.0" in the agreement, but rather also referenced

22  "TechShop 2.0," stating that "[t]his is now a rental agreement as opposed to an agreement to

23  cooperate with an [sic] purchase and foreclosure between Lowe's and TechShop 2.0" and that

24  "TechShop and not TechShop 2.0 would be responsible for paying certain back pay and from

25  funds received." (*Id.*)

26       39.    The next day, on February 2, 2018, Mr. Rasure sent another proposal regarding

27  equipment rental to Messrs. Woods, Busch, Doherty, and Newton, attaching another draft of the

28  agreement, which referenced the name "TechShop 2.0."  (TX-0646 at DR013555; Trial Tr.,

-7-

1   _____.)  The email itself also contained references to "TechShop 2.0," and requested that a

2   "TechShop 2.0 Equipment Rental" agreement exist for four additional locations.  (*Id.* at

3   DR013554.)

4       40.   On February 7, 2018, Mr. Woods sent an email to Mr. Rasure stating that Plaintiff

5   decided not to pursue Mr. Rasure's proposed rental agreements and instead would be filing for a

6   Chapter 7 bankruptcy.  (TX-0647 at DR013676; Trial Tr., _____.)  Mr. Woods added that "[t]hat

7   is not to say that we would not be supportive of a deal between you and the secured creditors or

8   some other alternative arrangement other than an asset rental."  (*Id.*)  In his February 7, 2018

9   email, Mr. Woods did not instruct Mr. Rasure to stop using the name "TechShop 2.0."  (*Id.*)

10       41.   On February 12, 2018, Mr. Rasure announced that he was opening a makerspace

11   called TechShop 2.0 in San Francisco and that the space would open on February 19, 2018.  (Trial

12   Tr., _____ [Rasure].)  Mr. Rasure entered into a lease to open the business in the former space of

13   TechShop's San Francisco location, which had been abandoned when TechShop closed its U.S.

14   locations.  (Trial Tr., _____ [Rasure].)

15       42.   On February 13, 2018, Mr. Rasure sent an email to Messrs. Woods, Newton,

16   Busch, and Doherty, informing them that he was preparing proof of funds to send to Plaintiff's

17   secured creditor, Autodesk, which was needed to enter into a deal to acquire Plaintiff.  (TX-0913

18   at TS000614; Trial Tr., _____.)

19       43.   That same day, Bill Coughlin at Ford sent an email to Mr. Rasure and Plaintiff's

20   representatives, asking about the status of the reopening of a local TechShop.  (TX-0930 at

21   DR014708; Trial Tr., _____.)  Mr. Woods responded that there was currently no agreement

22   between Mr. Rasure and either TechShop or TechShop's secured creditors to open any locations.

23   (*Id.* at DR014707.)  Mr. Woods also made reference to "TechShop 2.0," stating that "there is

24   absolutely no relationship between Mr. Rasure's TechShop 2.0 entity and TechShop, Inc. or it's

25   [sic] LLCs.  (*Id.*)  However, Mr. Woods did not state that he objected to Rasure's use of the name

26   "TechShop 2.0."  (*Id.*)

27       44.   On February 14, 2018, Mr. Woods sent a letter to Mr. Rasure and Dave Byers of

28   Hearst, the landlord for the former TechShop San Francisco location.  (TX-0650; Trial Tr.,

_____.)  In his letter, Mr. Woods stated that Mr. Rasure has no contract with TechShop and no permission from TechShop to operate in that facility.  (*Id.* at DR014933-34.)  The letter stated that "Mr. Rasure has no rights to the possession or use of the assets of TechShop, Inc. or TechShop SOMA, LLC," including their trademarks.  (*Id.* at DR014933.)  The letter, however, did not specifically state that Mr. Rasure's use of the name "TechShop 2.0" infringed TechShop's trademarks, or that Mr. Rasure should cease and desist using the name "TechShop 2.0."  (*Id.* at DR014933-34.)

45.     The next day, February 15, 2018, Mr. Rasure sent an email to Mr. Woods and others at Techshop with an update on negotiations with Autodesk.  (TX-652 at DR015045; Trial Tr., _____.)  Mr. Rasure stated that it had been "a great day, but we aren't quite done."  (Id.).  The following morning, Mr. Rasure sent a signed agreement to Autodesk, along with proof of funds.  (TX-0653 at DR015129.)

46.     On the evening of February 16, 2018, Plaintiff's counsel sent Mr. Rasure a cease and desist letter and enclosed a Complaint for trademark infringement that had already been filed against Defendants.  (TX-0656; Trial Tr., _____.)  The Complaint alleged that Defendants' use of the name "Techshop 2.0" infringed Techshop's registered service marks for the word "TECHSHOP."  (*Id.*; Dkt. 1.)

47.     Prior to February 14, 2018, Mr. Rasure and the other Defendants believed that they had the right to use the name "TechShop 2.0."  (Trial Tr., _____ [Rasure].)  That belief was based upon their interactions with Plaintiff up through that date.  (Trial Tr., _____ [Rasure].)

**II.     TECHSHOP WAS AWARE OF DEFENDANTS' NEW NAME "THESHOP.BUILD" ON FEBRUARY 17, 2018, THE DAY AFTER THE COMPLAINT WAS FILED, BUT DELAYED FOR NINE MONTHS BEFORE CLAIMING THAT THE NEW NAME ALLEGEDLY INFRINGED THE "TECHSHOP" MARKS**

48.     Promptly after receiving notice of the lawsuit on February 16, 2018, Defendants ceased using the name "Techshop 2.0," and changed the name to "TheShop.build."  (Trial Tr., _____ [Rasure, Matolo].)

49.     On the evening of February 16, 2018, Defendants took down the sign from the building and started changing the website to "TheShop.build."  (Trial. Tr., _____ [Rasure;

TX1159; TX001.]  Although not everything got switched to "TheShop.build" on the evening of February 16, Defendants took steps to change everything over as quickly as possible.  (Trial Tr., _____ [Rasure].)  Plaintiff served Defendants with the Complaint on the Friday evening before a holiday weekend, which made it more difficult for Defendants to change the name immediately.  (Trial Tr., _____ [Rasure].)  Defendants opened their makerspace on February 19, 2018 as "TheShop.build."  (Trial Tr., _____ [Rasure].)  Defendants never opened or operated a makerspace using the name "TechShop 2.0".  (Trial Tr., _____ [Rasure].)

50.     Defendants initially used the following logo with their new name (TX 290 at DR056086; TX-377):



51.     Defendants only used this logo for a three-day period, from February 19 through 21, 2018.  (Trial Tr., _____ [Rasure].)

52.     Unprompted by any objection by Plaintiff, Defendants voluntarily ceased use of this logo for the TheShop.build on February 21, 2018 and never used it again.  (Trial Tr., _____ [Rasure].)

53.     Since March 2018 and up to the date of the jury trial on June 3, 2019, Defendants have used the following logo for TheShop.build (TX 290 at DR 056070; Trial Tr., _____ [Rasure]):



54.     From February 2017 to November 2018, Defendants continued to use their new name and promote their business under that name.  (Trial Tr., _____ [Rasure].)  Defendants also expanded use of their new name by opening TheShop.build in San Jose in August 2018. (Trial Tr., _____ [Rasure].)

08876-00001/10988442.1

55.     On February 17, 2018, the day after the Complaint was filed, Plaintiff's CEO Dan Woods became aware that Defendants had changed their name to TheShop.build.  (TX 321.)

**A.     The TECHSHOP Marks Were of Little or No Value and Plaintiff Was Not Harmed by Defendants' Use.**

56.     Plaintiff's marks at issue in this case are for the word TECHSHOP.  (TX 351, 351.) These marks have never been licensed in the U.S.  (Trial Tr. _____ [Newton; Woods; Matolo].)

57.     On November 15, 2017, Plaintiff shuttered its doors with no notice to its members and locked them out from retrieving their possessions, which damaged the TechShop brand. (Trial Tr., _____ [Bünger]; *see also* TX 612 at DR007022 (Mr. Busch's statement:  "I fully understand the frustration members have experienced as a result of being locked out of stores, being unable to complete projects, and not having access to your materials and tools.").

58.     Plaintiff filed for Chapter 7 bankruptcy on February 26, 2018.  (Trial Tr., _____.)

59.     TechShop was bankrupt and in liquidation during the entire time Defendants used the name TheShop.build.  (Trial Tr., _____ [Newton; Woods; Matolo].)

60.     TechShop remains out of business in the U.S. and is continuing to pursue liquidation in Chapter 7 bankruptcy.  (Trial Tr., _____.)  After its abrupt closure in November 2017, TechShop never reopened its doors.  (Trial Tr., _____.)  Plaintiff presented no evidence that it intended to reopen.

61.     The jury determined that TechShop suffered no actual damages in the form of lost licensing revenue, and did not award Plaintiff Defendants' profits.  (Dkt. 217 [Verdict, Answers to Questions 6 and 10].)

**B.     Plaintiff Declined to Enforce its TECHSHOP Marks Against Odyssey Expo.**

62.     In May 2019, Odyssey Expo conducted a convention in Atlanta that used the name "Techshop" for its classrooms, demonstrations, live equipment running on the floor and experts. (TX1075 at DR060496-499).  The convention featured a 33,350 sq. ft. space designated "Techshop" where machinery was demonstrated.  (TX1075 at DR060503.)

63.     Odyssey Expo's use of the name Techshop falls within the scope of Plaintiff's Registration No. 4,247,529 at issue in this case.  (TX351).  The '529 Registration expressly

-11-

covers, *inter alia*, "providing professional networking opportunities and hosting professional networking events for individuals with a shared interest in manufacturing and fabrication," "conducting classes and workshops in the fields of techniques and tools used in the fabrication of products," and "presenting educational demonstrations at fairs, symposia, and other related forums in the field of manufacturing and fabrication". (*Id.*)  Techshop's '529 Registration for networking, hosting, classes, workshops, demonstrations at forums, etc. is not restricted to the type of equipment displayed.  (*Id.*)

64.    Plaintiff did not pursue a claim against Odyssey Expo for using the "Techshop" name.

**C.    Plaintiff Did Not Disclose Alleged Infringement By "TheShop.build" Until November 23, 2018.**

65.    On June 1, 2018, Plaintiff made the following statement in the Joint Case Management Statement (Dkt. 31, p. 5):

> After the suit was filed, Mr. Rasure and the TechShop 2.0 entities continued to use the TechShop 2.0 name before switching to other names. Currently, Mr. Rasure and the Techshop entities are operating the former TechShop facility at 926 Howard Street using the name "theShop.Build."

66.    Plaintiff's portions of the Joint Case Management Statement contained no allegation that "TheShop.build" infringed the TECHSHOP marks. (*Id.*)

67.    On August 13, 2018, Plaintiff served its First Amended Complaint.  Plaintiff pleaded "confusingly similar variations" of Plaintiff's marks to be infringements, but provided no identification of "TheShop.build" as one of those alleged infringements. (Dkt.45, ¶¶ 35, 39, 43 and Prayer ¶ A.)

68.    On November 2, 2018, Plaintiff served a response to Defendants' Interrogatory No. 2, which identified some variations of "TechShop 2.0" as "confusingly, similar variations" of Plaintiff's marks, but did not identify the "TheShop.build" as an alleged infringement.  (Dkt. 95-2, p. 4).

69.    On November 23, 2018, after being ordered to do so by Judge Spero (Dkt. 97, p. 2), Plaintiff disclosed for the first time that it contended "the use of 'TheShop.build' (especially using

-12-

1   the TechShop gear logo and color scheme)" was confusingly similar." (Trial Tr., ___ [Rasure];

2   Dkt. 128-7, p. 5, line 6.)

3       70.     Before that time in late November 2018, Plaintiff had not advised Mr. Rasure that it

4   believed "TheShop.build" infringed its marks.  (Trial Tr., _____ [Rasure].)

5       71.     Prior to November 23, 2018, Mr. Rasure believed that he had the right to use the

6   name "TheShop.build."  (Trial Tr., _____ [Rasure].)  This belief was based on the fact that he had

7   been using that name since February 16, 2018, its differences in sight and sound to TECHSHOP,

8   and that Plaintiff had never objected.  (Trial Tr., _____ [Rasure].)

9       72.     Plaintiff never gave notice of its contention that any use of "TheShop.build"

10  infringed during the fact discovery period, which ended on November 2, 2018.  (Dkt. 37.)  As a

11  result, Defendants did not have the opportunity to conduct discovery on this late-disclosed theory

12  of infringement.  (*Id.*)

13      73.     A seven-day jury trial was held in this case, during which Plaintiff claimed it was

14  entitled to almost $1.5 million in damages.  (Trial Tr., _____ [Plaintiff's counsel's closing

15  argument].)

16      74.     In its bankruptcy filing, Plaintiff had reported that the value of this lawsuit was at

17  least "$5,000,000, as listed in the Debtor's valuation of the Trademarks, and all demands

18  contained in the case."  *In re TechShop, Inc.*, Case No. 18-50398, p. 13 Dkt. 1 (N.D. Cal. Bankr.

19  Feb. 26, 2018).

20      75.     During the course of this case, Mr. Rasure operated a business continually under

21  the "black cloud" of litigation which was ultimately at a loss; lost his regular job; had his credit

22  rating drop; could not find a suitable new location in San Francisco when his building was

23  demolished because landlords would not negotiate with him for new space due to the litigation;

24  had his health suffer; was away from his family for approximately 300 days of the last year,

25  missing most of the entire first year of his newborn son's life; and had to bear the expense of

26  discovery and a trial.  (Trial Tr., _____ [Rasure; Johnson].)

27

28

DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSION OF LAW
ON EQUITABLE DEFENSES OF ACQUIESCENCE, ESTOPPEL AND LACHES

08876-00001/10988442.

1

**[PROPOSED] CONCLUSIONS OF LAW**

2

**I.      TECHSHOP'S CLAIMS FOR INFRINGEMENT BASED ON DEFENDANTS'
USE OF "TECHSHOP 2.0" FROM NOVEMBER 2017 TO FEBRUARY 14, 2018
ARE BARRED UNDER THE EQUITABLE DOCTRINE OF ACQUIESCENCE**

3

4

1.      The equitable defense of acquiescence precludes a claim for trademark

5

infringement. *Eat Right Foods v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1121 (9th Cir. 2018).

6

2.      Three elements are required to establish acquiescence:

7

(1) the senior user actively represented that it would not assert a right or a claim;
(2) the delay between the active representation and assertion of the right or claim
was not excusable; and (3) the delay caused the defendant undue prejudice.

8

9

*Id.* (quoting *Seller Agency Council, Inc. v. Kennedy Ctr. For Real Estate Educ., Inc.*, 621 F.3d

10

981, 989 (9th Cir. 2010).

11

12

3.      Although acquiescence "requires an affirmative representation by the plaintiff that

13

it will not assert a claim," *Eat Right Foods*, 880 F.3d at 1121, consent can be inferred from a

14

course of business dealings between the parties. *Westinghouse Elec. Corp. v. Gen. Circuit

15

Breaker & Elec. Supply Inc.*, 106 F.3d 894, 900 (9th Cir. 1997) (finding for defendant on

16

affirmative defenses including acquiescence because plaintiff "knew or should have known" of

17

trademark infringement based on course of dealing with defendant).

18

4.      Undue prejudice "must involve reliance on the senior user's affirmative act or deed,

19

and such reliance must be reasonable." *Seller Agency*, 621 F.3d at 990.  This analysis includes an

20

examination of "both the content of the affirmative act and the context in which that act was

21

performed." *Id*.

22

5.      "Findings with respect to reliance also may inform whether the delay between the

23

active representation and assertion of the right or claim was excusable." *Seller Agency*, 621 F.3d

24

at 990.  "When the plaintiff has in some way assured the defendant that it will not assert its rights

25

in the mark and the defendant has relied to its detriment, the plaintiff should be estopped from

26

bringing an action by its acquiescence regardless of the period of delay." *Id*. (quoting GILSON

27

ON TRADEMARKS § 11.08[3][i][iii][A] (2010)).

28

-14-

08876-00001/10988442.1

6.      A party asserting acquiescence "has the burden of proving that defense by a preponderance of satisfactory evidence."  *Grey v. Campbell Soup Co.*, 650 F. Supp. 1166, 1168-69 (C.D. Cal. 1986), *aff'd*, 830 F.2d 197 (9th Cir. 1987).

7.      In this case, Plaintiff actively represented that it would not assert a claim for using the name "TechShop 2.0."  (Findings of Fact ("FF"), ¶¶ 4-43.)  These active representations included affirmative words and conduct showing Plaintiff's consent to Defendants' use of the name "TechShop 2.0."  (*Id.*)  Plaintiff did not object to Defendants' use of the name "TechShop 2.0", and in fact Plaintiff's representatives called Mr. Rasure's company "TechShop 2.0" in negotiations with Mr. Rasure, communications with employees, creditors, and members, communications with other third parties, and public announcements.  (FF, ¶¶ 9-21.)  Those representations from Plaintiff continued up to February 14, 2018.  (FF, ¶ 44.)

8.      Plaintiff inexcusably delayed giving Defendants notice that it considered the use of "Techshop 2.0" to infringe the TECHSHOP marks.  Plaintiff and its representatives knew of Defendants' use of the name "TechShop 2.0" as early as late-November 2017, but did not object until at least February 14, 2018.  (FF, ¶¶ 4, 44.)  Throughout this time, Defendants reasonably relied on Plaintiff's active representations that it would not assert a claim if they launched their new company using the name "TechShop 2.0."  (FF, ¶¶ 4-43, 47.)

9.      The delay from November 2017 to February 14, 2018 caused Defendants undue prejudice.  Defendants relied on Plaintiff's conduct and actively prepared to open a business using the name "Techshop 2.0."  Defendants entered into a lease for a makerspace in San Francisco, and publicly announced on February 12, 2018 that they planned to open a space on February 19, 2018.  (FF, ¶ 41.)

10.      Then, upon hearing of Plaintiff's delayed objection to Defendants' use of the name "TechShop 2.0," Defendants scrambled to change the name of the business just two days before it was supposed to open, and those two days were over a holiday weekend.  (FF, ¶¶ 48-49.)  From late-November 2017 until February 14, 2018, both Parties referred to the new company as "TechShop 2.0, " not only in internal discussions but also in public announcements, which denied

-15-

1  Defendants the chance to promote the name "TheShop.build" in these announcements.  (FF, ¶¶ 15-

2  21, 41.)

3      11.    Due to Plaintiff's inexcusable delay, Defendants were also prejudiced by having to

4  deal with the litigation, which directly and indirectly caused Defendants undue harm.  During the

5  course of this case, Mr. Rasure operated a business continually under the "black cloud" of

6  litigation which was ultimately at a loss; lost his regular job; had his credit rating drop; was unable

7  to negotiate with prospective landlords due to the litigation; had his health suffer; was away from

8  his family for approximately 300 days of the last year, missing most of the entire first year of his

9  son's life; and had to bear the expense of a trial.  (FF, ¶ 75.)

10      12.    Because all three elements of Defendants' acquiescence defense are present,

11  Plaintiff is barred from asserting that Defendants' use of "TechShop 2.0" infringed the

12  TECHSHOP marks during the period from November 2017 to February 14, 2018.

13  **II.    TECHSHOP IS ESTOPPED FROM ASSERTING CLAIMS FOR INFRINGEMENT
           BASED ON DEFENDANTS' USE OF "TECHSHOP 2.0" FROM NOVEMBER 2017
14         TO FEBRUARY 14, 2018**

15      13.    The Ninth Circuit recognizes estoppel as an equitable defense against trademark

16  infringement.  *Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.*, 106 F.3d

17  894, 899 (9th Cir. 1997); *3M Co. v. Rollit, LLC*, No. 06-cv-01225, 2008 WL 8820473, at *5 (N.D.

18  Cal. May 14, 2008); *see also* 15 U.S.C. § 1115(b)(9).

19      14.    Estoppel can give rise to an implied license "when the intellectual property owner

20  engages in conduct from which a third party may properly infer that the owner consents to the use

21  of the intellectual property."  *3M*, 2008 WL 8820473, at *5.

22      15.    Estoppel requires four elements: "(1) the plaintiff knew the defendant was selling a

23  potentially infringing product; (2) the plaintiff's actions or failure to act led the defendant to

24  reasonably believe that the plaintiff did not intend to enforce its trademark right against the

25  defendant; (3) the defendant did not know that the plaintiff actually objected to the sale of its

26  potentially infringing product; and (4) due to its reliance on the plaintiff's actions, defendant will

27  be materially prejudiced if the plaintiff is allowed to proceed with its claim."  *3M*, 2008 WL

28

08876-00001/10988442.

1   8820473, at *5 (citing *Lehman v. United States*, 154 F.3d 1010, 1016 (9th Cir. 1998)); *see also*

2   *AirWair Int'l Ltd. V. Schultz*, 84 F. Supp. 3d 943, 958 (N.D. Cal. 2015).

3       16.     "[E]stoppel is any conduct, express or implied, which reasonably misleads another

4   to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law."

5   *Friedman v. Friedman*, No. 04-cv-08812, 2006 WL 8431768, at *20 (C.D. Cal. Apr. 12, 2006)

6   (quoting *Yoshida v. Liberty Mut. Ins. Co.*, 240 F.2d 824, 829-30 (9th Cir. 1957)). "[E]stoppel

7   focuses not on a party's intent, but rather on the effects of his conduct on another." *AirWair*, 84 F.

8   Supp. 3d at 958.

9       17.     Inaction or silence may be conduct for purposes of estoppel. *See A.C. Aukerman*

10  *Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc).

11      18.     Preparations made by a defendant based on a course of business dealings between

12  the parties may be evidence of detrimental reliance. *3M*, 2008 WL 8820473, at *5; *Friedman*,

13  2006 WL 8431768, at *20.

14      19.     Unlike laches, *infra*, estoppel does not require the passage of an unreasonable

15  period of time before filing suit. *Aukerman,* 960 F. 2d at 1041-42.

16      20.     "The party claiming estoppel has the burden of proving each of the elements by

17  a preponderance of the evidence." *Synopsys, Inc. v. AtopTech, Inc*, No. 13-cv-02965, 2016 WL

18  6158216, at *1 (N.D. Cal. Oct. 24, 2016) (citing *Aukerman*, 960 F.2d at 1043, 1046).

19      **(1)     Plaintiff knew the Defendants were using the name TechShop 2.0.**

20      21.     Mr. Rasure began using the name "TechShop 2.0" for the makerspace entity shortly

21  after beginning negotiations with Plaintiff in November 2017.  (FF, ¶¶ 2-4.)  From that time until

22  at least February 14, 2018, the Parties communicated with each other using the "TechShop 2.0"

23  name to identify Mr. Rasure's company.  (FF, ¶¶ 4-44.)  As a result of this mutual understanding

24  between the Parties, everyone knew of Mr. Rasure's and Defendants' actions and intentions with

25  the "TechShop 2.0" name.

26      22.     Throughout this time, Plaintiff also knew that "TechShop 2.0" would be the public,

27  customer-facing name of the new company.  One of Plaintiff's representatives emailed Mr. Rasure

28  to confirm that he had "settled firmly on TechShop 2.0 as the name [he] will reopen under."  (FF,

-17-

¶¶ 7-8.)  Plaintiff also made public announcements regarding "TechShop 2.0" by email and on social media.  (FF, ¶¶ 12-19.)

> **(2)** **Due to Plaintiff's conduct, Defendants reasonably believed that Plaintiff did not intend to enforce the TECHSHOP marks.**

23.     From November 2017 to February 2018, Mr. Rasure took steps to launch his company.  He collaborated with Plaintiff on public announcements promoting "TechShop 2.0." (FF, ¶¶ 19-21.)  He also sent out a press release and email announcements.  (FF, ¶¶ 20-21.)  These actions were taken in reliance on Plaintiff's conduct.

24.     Plaintiff has adduced no evidence suggesting that Mr. Rasure acted contrary to any discouraging actions or statements that it made in this time period.  In fact, during the negotiations between the Parties, Plaintiff adopted and encouraged use of the "TechShop 2.0" name, and based on that conduct, Mr. Rasure believed he had the right to use that name.  (FF, ¶¶ 4-43, 47.)

25.     By failing to object to Mr. Rasure's use of the "TechShop 2.0" name and using it to refer to the new company, Plaintiff gave its consent to that use.  Defendants' reliance on Plaintiff's conduct was reasonable.

26.     Plaintiff's actual intentions or secret objections are irrelevant.  *AirWair*, 84 F. Supp. 3d at 958 ("[E]stoppel focuses not on a party's intent, but rather on the effects of his conduct on another.").

> **(3)** **Defendants did not know that Plaintiff objected.**

27.     Defendants had no suspicion that Plaintiff objected to the "TechShop 2.0" name until at least February 14, 2018.  Plaintiff never told Mr. Rasure that it believed "TechShop 2.0" to infringe the TECHSHOP marks.  (FF, ¶¶ 4-44.)  There is no evidence that Plaintiff ever otherwise discouraged Defendants' use of the TechShop 2.0 name.

28.     Plaintiff argued that in the February 14, 2018 letter from Mr. Woods, Plaintiff objected to the "TechShop 2.0" name.  (FF, ¶ 44.)  However, the letter did not assert that "TechShop 2.0" infringed the TECHSHOP marks or request that Mr. Rasure stop using it.  (*Id.*) Prior to February 14, 2018, Defendants could have had no knowledge of Plaintiff's objections.

**(4)** **Defendants have been and will be materially prejudiced if Plaintiff is not estopped.**

29.     Defendants' reliance was detrimental.  They will be unduly prejudiced if Plaintiff is not estopped from asserting the TECHSHOP marks against their use of TechShop 2.0.

30.     The delay from November 2017 to February 14, 2018 caused Defendants undue prejudice.  Defendants relied on Plaintiff's conduct and actively prepared to open a business using the name "Techshop 2.0."  Defendants entered into a lease for a makerspace in San Francisco, and publicly announced that they planned to open a space on February 19, 2018.  (FF, ¶ 41.)

31.     Then, upon hearing of Plaintiff's delayed objection to Defendants' use of the name "TechShop 2.0," Defendants scrambled to change the name of the business just two days before it was supposed to open, and those two days were over a holiday weekend.  (FF, ¶¶ 48-49.)  From late-November 2017 until February 14, 2018, both Parties referred to the new company as "TechShop 2.0" in public announcements, which denied Defendants the chance to promote the name "TheShop.build" in these announcements.  (FF, ¶¶ 15-21, 41.)

32.     Due to Plaintiff's inexcusable delay, Defendants were also prejudiced by having to deal with the litigation, which directly and indirectly caused Defendants undue prejudice.  During the course of this case, Mr. Rasure and the other Defendants  operated a business continually under the "black cloud" of litigation, which was ultimately at a loss; lost his regular job; had his credit rating drop; could not  negotiate with prospective landlords; had his health suffer; was away from his family for approximately 300 days of the last year, missing most of the entire first year of his son's life; and had to bear the expense of a trial.  (FF, ¶ 75.)

33.     Because all four elements of Defendants' estoppel defense are present, Plaintiff is equitably estopped from asserting that Defendants' use of "TechShop 2.0" infringed the TECHSHOP marks during the period from November 2017 to February 14, 2018.

## III.  **TECHSHOP IS ESTOPPED FROM ASSERTING CLAIMS FOR INFRINGEMENT BASED ON DEFENDANTS' USE OF "THESHOP.BUILD."**

34.     Plaintiff is estopped from asserting claims for trademark infringement against "TechShop.build."  The same legal standards that apply to the estoppel defense relating to the "TechShop 2.0" claim apply to this defense.  (Conclusions of Law ("CL"), ¶¶ 13-20.)

**(1)     Plaintiff knew the Defendants were using the name TheShop.build.**

35.     Plaintiff cannot dispute its knowledge of Defendants' use of the name "TheShop.build."  The name change was prompted by Plaintiff's cease and desist letter of February 16, 2018 and by February 17, 2018, Mr. Woods knew of the change.  (FF, ¶¶ 48-49, 55.)  From that time, and until Plaintiff first identified a claim against "TheShop.build" on November 23, 2018, Plaintiff was engaging in active litigation and discovery related to Defendants' business.  (FF, ¶¶ 64-68, 71.)  Plaintiff cannot dispute its knowledge of the name "TheShop.build."

**(2)     Due to Plaintiff's conduct, Defendants reasonably believed that Plaintiff did not intend to enforce the TECHSHOP marks**

36.     Plaintiff could have asserted its infringement claims against "TheShop.build" at any time during this litigation.  Plaintiff could also have objected to the Defendants' use outside of the context of the litigation.  But, Plaintiff never objected to the name "TheShop.build" and focused all of its claims on "TechShop 2.0" for the first nine months of this case.  (FF, ¶¶ 46, 65-69, 72.)

37.     Defendants reasonably believed themselves free to operate and expand the company as "TheShop.build."  Mr. Rasure did not expect Plaintiff to assert a claim against "TheShop.build" so late in the game.  (FF, ¶¶ 70-71.)  He switched everything to "TheShop.build" and expanded his business to San Jose under that name.  (FF, ¶¶ 48-54.)  Only after the close of discovery, and after Defendants made substantial investments in the new business, did Plaintiff claim that "TheShop.build" infringed.  (FF, ¶¶ 69-70, 72.)

38.     It is irrelevant whether Plaintiff was secretly considering or investigating a claim against "TheShop.build" before adding those claims to this litigation.  "[E]stoppel focuses not on a party's intent, but rather on the effects of his conduct on another."  *AirWair*, 84 F. Supp. 3d at 958.  Plaintiff's conduct had the effect of assuring Defendants that their ongoing activities were safe from this litigation.

**(3)     Defendants did not know that Plaintiff objected.**

39.     Until Plaintiff first identified its new theory that "TheShop.build" was used in an infringing manner on November 23, 2018, the Defendants were unaware of its objections.  (FF, ¶¶

69-70.) In spite of many opportunities to do so, Plaintiff had never objected to or discouraged the use of the name TheShop.build over the course of the litigation or privately between the Parties.

40. There is no reason why Defendants should have known that Plaintiff's objections to "TechShop 2.0" extended to "TheShop.build," especially in view of Plaintiff's delay in expanding its theories of infringement to include "TheShop.build."

> **(4)** **Defendants have been and will be materially prejudiced if Plaintiff is not estopped.**

41. While Plaintiff waited to bring claims against "TheShop.build", Defendants were detrimentally relying on that inaction. As a result, Defendants have been and will continue to be unduly prejudiced. Before Plaintiff asserted its claim, Defendants built their business under the new name "TheShop.build" and expanded into a second location under the new name. (FF, ¶ 54.) Defendants continue to operate that business, but the money, time, and goodwill that they have expended in developing their brand is now in jeopardy.

42. Defendants lost the opportunity to take action that could have averted this claim. Had there been no theory that "TheShop.build" infringed, Plaintiff's only claim would have been against Defendants' use of "Techshop 2.0" for just two days. But with "TheShop.build" in the case, the Court's docket grew to over 200 filings. A seven-day jury trial was held. Plaintiff claimed it was entitled to almost $1.5 million in damages. (FF, ¶ 73.) Mr. Rasure was impacted on every front. He lost his job. His health, his credit, his business, his leasing opportunities and his reputation all suffered. (FF, ¶ 75.) And because fact discovery had closed before "TheShop.build" theory was first mentioned, Defendants never had the opportunity to conduct fact discovery or retain expert witnesses on this belated theory of infringement. (FF, ¶ 72.) Had Defendants known of Plaintiff's objection to "TheShop.build", they might have avoided the expense of litigation and the resulting hardships for Mr. Rasure and the other Defendants.

43. Plaintiff failed to act, and implied that it would not bring a claim against Defendants for use of "TheShop.build." Defendants are suffering undue prejudice as the direct result of that conduct.

08876-00001/10988442.1

44.     Because all four elements of Defendants' estoppel defense are present, Plaintiff is equitably estopped from asserting that Defendants' use of "TheShop.build" infringed the TECHSHOP marks.

**IV.     TECHSHOP'S CLAIMS FOR INFRINGEMENT BASED ON ITS NEW THEORY OF DEFENDANTS' USE OF ITS NEW NAME "THESHOP.BUILD" STARTING FEBRUARY 17, 2019 ARE BARRED UNDER THE EQUITABLE DOCTRINE OF LACHES.**

45.     The equitable defense of laches also bars a claim of trademark infringement in the Ninth Circuit.  *Pinkette Clothing, Inc. v. Cosmetic Warriors, LLC*, 894 F.3d 1015, 1026 (9th Cir. 2018); *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867. 878 (9th Cir. 2014). As the Court stated in *La Quinta*, 762 F.3d at 878, "[t]he defense of laches 'can defeat an otherwise valid claim under the Lanham Act.'", citing *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006).  To benefit from this equitable defense, "[t]he party asserting laches must demonstrate that it has 'suffered prejudice as a result of plaintiff's unreasonable delay in filing suit.'" *La Quinta*, 762 F.3d at 878.

46.     Analysis of a laches defense is a two-step process:

> First, we assess the plaintiff's delay by looking to whether the most analogous state statute of limitations has expired. [*La Quinta*, 762 F.3d at 878.]  If the most analogous state statute of limitations expired before suit was filed, there is a strong presumption in favor of laches.  *Id.*  That presumption is reversed, however, if the most analogous state statute of limitations expired after suit was filed.  *Id.*
>
> Second, we assess the equity of applying laches using the E-Systems factors:  (1) "strength and value of trademark rights asserted;" (2) "plaintiff's diligence in enforcing mark;" (3) "harm to senior user if relief denied;" (4) "good faith ignorance by junior user;" (5) "competition between senior and junior users;" and (6) "extent of harm suffered by junior user because of senior user's delay."  *E-Sys., Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983).

*Pinkette Clothing*, 894 F.3d at 1025.

47.     A party asserting laches bears the burden of proof by a preponderance of the evidence.  *See Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 958 (N.D. Cal. 2015); *Masters v. UHS of Del., Inc.*, 631 F.3d 464, 470 (8th Cir. 2011).

48.     The first step is to assess the plaintiff's delay in light of the most analogous state statute of limitations.  For purposes of this case, the most analogous state statute of limitations is California's four-year statute of limitations.  *Pinkette Clothing*, 894 F.3d at 1025.  Because

-22-

1  Plaintiff delayed asserting its TECHSHOP marks against "TheShop.build" for nine months, there

2  is a presumption that Plaintiff was not guilty of laches. *See id.*

3        49.    Defendants have overcome this presumption on the facts of this case. Throughout

4  the nine-month delay period, Plaintiff was in active litigation with Defendants over the use of the

5  TECHSHOP marks. From February 17, 2018, the day after the case was filed, Techshop's CEO

6  Mr. Woods knew that Defendants had changed their name to "TheShop.build." (FF, ¶ 55.) Yet,

7  Plaintiff never even suggested that Defendants' use of "TheShop.build" infringed until November

8  23, 2018. (FF, ¶¶ 69-70.) Plaintiff had repeated opportunities to do so, including: (1) in the June

9  1, 2018 Joint Case Management Statement (Dkt. 31); (2) in the August 13, 2018 First Amended

10  Complaint (Dkt. 45); and (3) in its November 2, 2018 response to Interrogatory No. 2 (Dkt. 95-2).

11  (FF, ¶¶ 65-68.) Additionally, throughout this nine-month period, Plaintiff never moved for a

12  preliminary injunction to stop Defendants' use of "TheShop.build." And while Plaintiff remained

13  silent about Defendants' use of "TheShop.build," Defendants continued their use of the new name,

14  promoting the business and even opening a new location in San Jose using the name

15  "TheShop.build." (FF, ¶ 54.) Collectively, these facts and circumstances overcome the

16  presumption that there was no laches. *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192-

17  93 (2d Cir. 1996) (although lawsuit was filed within analogous limitations period and therefore no

18  presumption of laches existed, delay was nevertheless prejudicial to defendants and therefore the

19  claim was barred by laches).

20        50.    The second step in assessing laches is to review the equity of applying laches by

21  considering the factors laid down in the *E-Systems* case, specifically: (1) the strength and value of

22  trademark rights asserted; (2) plaintiff's diligence in enforcing mark; (3) the harm to senior user if

23  relief denied; (4) the good faith ignorance by junior user; (5) the competition between senior and

24  junior users; and (6) the extent of harm suffered by junior user because of senior user's delay.

25  *Pinkette Clothing*, 894F.3d at 1025.

26        51.    Each of the *E-Systems* factors weighs heavily in Defendants' favor.

27        **(1)**    **The strength and value of TECHSHOP rights asserted**

28        52.    TechShop was bankrupt and in liquidation during the entire time Defendants used

1   "TheShop.build," and during this time, the TECHSHOP marks actually had a negative value.  (FF,

2   ¶¶ 57-59.)  TechShop presented no evidence at trial that anyone was willing to pay anything for

3   the TECHSHOP marks after the potential deal with Defendants collapsed, and the marks have

4   never been licensed in the U.S.  (FF, ¶ 56.)  Plaintiff presented no evidence that it intended to

5   reopen its business.  Taken together, the evidence demonstrated that the TECHSHOP marks had

6   little to no strength and value.

7              **(2)      Plaintiff's diligence in enforcing its marks**

8          53.      Plaintiff's inaction during the nine-month period is indisputable.  Plaintiff had

9   repeated opportunities to give notice that "TheShop.build" was infringing on its rights or move for

10  a preliminary injunction.  (FF, ¶¶ 65-68.)  Rather than being diligent, Plaintiff did nothing.

11         54.      At trial, Plaintiff argued that its original and amended complaints alleged that it

12  was pursuing "confusingly, similar variations" of the TECHSHOP marks.  (FF, ¶ 67.)  As late as

13  November 2, 2018, when asked what those "confusingly, similar variations" were, Plaintiff

14  identified only various forms of Defendants' original name "TechShop 2.0."  (FF, ¶ 68.)  No

15  mention was made about the new name "TheShop.build."  (*Id*.)  It was not for another month that

16  Plaintiff first alleged that "TheShop.build" infringed.  (FF, ¶ 69.)  This is not enforcement

17  diligence.

18         55.      Contemporaneous proof exists that Plaintiff has not been diligent in enforcing its

19  TECHSHOP marks.  In May 2019, Odyssey Expo conducted a convention that used the name

20  "Techshop" for its classrooms, demonstrations, live equipment running on the floor and experts.

21  (FF, ¶ 62.)  Even though Odyssey Expo's use of the name TechShop falls within the scope of

22  Plaintiff's Registration No. 4,247,529 at issue in this case, TechShop never asserted its

23  TECHSHOP marks.  (FF, ¶¶ 63-64.)  Plaintiff's failure to pursue Odyssey Expo confirms its lack

24  of diligence in enforcing its marks.

25             **(3)      The harm to Plaintiff if relief denied**

26         56.      Plaintiff will suffer no harm if its marks are not enforced against "TheShop,build."

27  It is out of business in the U.S. and is pursuing liquidation in Chapter 7 bankruptcy.  (FF, ¶ 60.)

28

DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSION OF LAW
ON EQUITABLE DEFENSES OF ACQUIESCENCE, ESTOPPEL AND LACHES

At trial, Plaintiff offered no proof that it had or intended to resume operations in the U.S. after its abrupt closure in November 2017.

57.     In spite of the testimony of Plaintiff's witnesses, the jury credited Mark Bünger's expert opinion that after the catastrophic closure, the TECHSHOP marks had negative brand value and thus Plaintiff suffered no actual damages in the form of lost licensing revenue.  (FF, ¶¶ 57, 61.)

58.     All of these circumstances support the conclusion that Plaintiff will not be harmed if its marks are not enforced against Defendants' new name "TheShop.build."

### (4)     Defendants' good faith ignorance

59.     For nine months, Defendants never knew that Plaintiff had an issue with "TheShop.build."  "TheShop.build" is different in sight and sound from TECHSHOP.  And, throughout the fact discovery period, Plaintiff never gave notice of its contention that "TheShop.build" infringed, and Defendants proceeded with and expanded their business while being totally ignorant of Plaintiff's plan to assert a claim.  (FF, ¶¶ 54, 65-68, 72.)

60.     Defendants' good faith is also demonstrated by its voluntarily cessation of the "gear" version of "TheShop.build" logo.  (FF, ¶ 52.)  After using this logo for just three days, and unprompted by any action by Plaintiff, Defendants stopped using the "gear" format.  (FF, ¶¶ 51-52.)

### (5)     No competition between Plaintiff and Defendants

61.     Plaintiff and Defendants have never been competitors.  Plaintiff is bankrupt and out of business in the U.S.  (FF, ¶¶ 59-60.)  Three months after Plaintiff shut down its U.S. stores, Defendants started a going business to fill the makerspace vacuum Plaintiff left behind.

### (6)     The extent of harm suffered by Defendants because of Plaintiff's delay

62.     Defendants were harmed by Plaintiff's delay in a number of ways.  Defendants built their business using the new name "TheShop.build."  (FF, ¶ 54.)  Defendants expanded their use of the name in August 2018 by opening a new location in San Jose.  (*Id*.)  All of that was placed at risk when Plaintiff first asserted the new claim regarding "TheShop.build" name on November 23, 2018.

63.    Additionally, because Plaintiff delayed, Defendants lost the early opportunity to adopt another name and avoid the expense of this entire litigation.  Had there been no "TheShop.build" claim, Plaintiff's only claim would have been Defendants' use of "Techshop 2.0" for just two days.  But with "TheShop.build" in the case, the Court's docket grew to over 200 filings.  A seven-day jury trial was held.  Plaintiff claimed it was entitled to almost $1.5 million in damages.  (FF, ¶ 73.)  Mr. Rasure was impacted on every front.  He lost his job.  His health, his credit, his business, his leasing opportunities and his reputation all suffered.  (FF, ¶ 75.)  And because fact discovery had closed before "TheShop.build" claim was first alleged, Defendants never had the opportunity to take discovery on this belated infringement allegation.  (FF, ¶ 72.)

64.    Because the presumption of laches is overcome and each of the six *E-Systems* factors weighs heavily in Defendants' favor, Plaintiff is barred under the equitable doctrine of laches from asserting that Defendants' use of "TheShop.build" infringed the TECHSHOP marks.

## V.    <u>CONCLUSION</u>

Pursuant to the Findings of Fact and Conclusions of Law set out hereinabove, the Court finds in favor of Defendants and against Plaintiff on Plaintiff's claims of federal trademark infringement in violation of 15 U.S.C. § 1114. The Court also finds in favor of Defendants and against Plaintiff on Defendants' affirmative defenses of acquiescence, laches and estoppel. Accordingly, the Court will enter an Order and Judgment consistent with the foregoing Findings of Fact and Conclusions of Law.

1  DATED:  July 23, 2019          By      _/s/ Andrea Pallios Roberts_

2                                          Ann McFarland Draper (Bar No. 065669)
                                           courts@draperlaw.net
3                                          Draper Law Offices
                                           75 Broadway, Suite 202
4                                          San Francisco, California 94111
                                           Telephone:    (415) 989-5620

5
                                           QUINN EMANUEL URQUHART &
6                                          SULLIVAN, LLP
                                           Kevin P.B. Johnson (Bar No. 177129)
7                                          kevinjohnson@quinnemanuel.com
                                           Andrea Pallios Roberts (Bar No. 228128)
8                                          andreaproberts@quinnemanuel.com
                                           555 Twin Dolphin Drive, 5th Floor
9                                          Redwood Shores, California 94065-2139
                                           Telephone:    (650) 801-5000
10                                         Facsimile:    (650) 801-5100

11                                         Ed DeFranco (Bar No. 165596)
                                           eddefranco@quinnemanuel.com
12                                         51 Madison Avenue, 22nd Floor
                                           New York, NY 10010
13                                         Telephone:    (212) 849-7000
                                           Facsimile:    (212) 849-7100

14
                                           John E. Nathan (P_ro Hac Vice_)
15                                         jnathan155@yahoo.com
                                           John E. Nathan LLC
16                                         1175 Park Avenue
                                           New York, NY 10128
17                                         Telephone:    (917) 960-1667

18                                         Attorneys for Defendants and Counterclaimants

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSION OF LAW
ON EQUITABLE DEFENSES OF ACQUIESCENCE, ESTOPPEL AND LACHES