1   Ann McFarland Draper (Bar No. 065669)
    courts@draperlaw.net
2   Draper Law Offices
    75 Broadway, Suite 202
3   San Francisco, California 94111
    Telephone:     (415) 989-5620
4
    QUINN EMANUEL URQUHART & SULLIVAN, LLP
5   Kevin P.B. Johnson (Bar No. 177129)
    kevinjohnson@quinnemanuel.com
6   Andrea Pallios Roberts (Bar No. 228128)
    andreaproberts@quinnemanuel.com
7   555 Twin Dolphin Drive, 5th Floor
    Redwood Shores, California 94065-2139
8   Telephone:     (650) 801-5000
    Facsimile:     (650) 801-5100
9
    Ed DeFranco (Bar No. 165596)
10  eddefranco@quinnemanuel.com
    51 Madison Avenue, 22nd Floor
11  New York, NY 10010
    Telephone:     (212) 849-7000
12  Facsimile:     (212) 849-7100
13  John E. Nathan (Pro Hac Vice)
    jnathan155@yahoo.com
14  John E. Nathan LLC
    1175 Park Avenue
15  New York, NY 10128
    Telephone:     (917) 960-1667
16
    Attorneys for Defendants and Counterclaimants
17
                    UNITED STATES DISTRICT COURT
18
           NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION
19
20  TECHSHOP, INC., a California corporation,      CASE NO. 4:18-CV-01044-HSG (JCS)
    DORIS A. KAELIN, in her capacity as
21  Chapter 7 Trustee for TECHSHOP, INC.           DEFENDANTS' POST-TRIAL BRIEF ON
                                                   EQUITABLE DEFENSES OF
22                  Plaintiff,                     (1) ACQUIESCENCE; (2) ESTOPPEL;
                                                   AND (3) LACHES
23          vs.
24  DAN RASURE, et al.,                            Hearing Date: November 7, 2019
                                                   Time: 2:00 p.m.
25                  Defendants.                    Judge:  Haywood S. Gilliam, Jr.
26  AND RELATED COUNTERCLAIMS
27
28

08876-00001/10988223.2

                                                        Case No. 4:18-CV-01044-HSG (JCS)
                                       DEFENDANTS' POST-TRIAL BRIEF ON EQUITABLE DEFENSES
                                                OF ACQUIESCENCE, ESTOPPEL AND LACHES

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..........................................................................................................1

PROCEDURAL BACKGROUND .....................................................................................................1

I.     NATURE OF THE CASE ..................................................................................................1

II.    STATUS OF THE PROCEEDINGS ................................................................................2

STATEMENT OF FACTS ................................................................................................................2

I.     DEFENDANTS' USE OF "TECHSHOP 2.0" FROM NOVEMBER 2017 TO FEBRUARY 14, 2018...........................................................................................................2

     A.    Plaintiff Does Not Object to Defendants' Use of the Name "TechShop 2.0."...........2

     B.    Plaintiff Calls Mr. Rasure's Company "TechShop 2.0" in Communications with Mr. Rasure, Plaintiff's Employees, Customers, and the Public About the Potential Deal. ...............................................................................................3

     C.    In Negotiations Following Execution of the MOU, Plaintiff's Representatives Continued to Use the Name "TechShop 2.0," and Did Not Object to Mr. Rasure's Use of that Name. .................................................................4

     D.    Both Parties Continued to Refer to Mr. Rasure's Company as "TechShop 2.0" in Negotiations That Continued After Termination of the MOU...................5

     E.    Defendants Announce the Opening of a San Francisco Location for "TechShop 2.0" and Plaintiff Sends a Letter Regarding Its Assets. .........................7

     F.    Plaintiff Files Suit, Defendants Change Their Name to "TheShop.build," and Plaintiff Does Not Object to the New Name. ......................................................7

     G.    Mr. Rasure is Prejudiced by Plaintiff's Conduct...........................................................9

LEGAL STANDARD .......................................................................................................................9

ARGUMENT ..................................................................................................................................12

I.     PLAINTIFF ACQUIESCED IN DEFENDANTS' USE OF "TECHSHOP 2.0" FROM NOVEMBER 2017 TO AT LEAST FEBRUARY 14, 2018...................................12

     A.    Plaintiff Actively Represented that It Would Not Assert the TECHSHOP Marks Against Defendants' Use of "TechShop 2.0" ................................................12

     B.    Plaintiff's Delay in Asserting Its Trademark Rights Is Inexcusable ......................13

     C.    Defendants' Reasonable Reliance on Plaintiff's Representations Caused Undue Prejudice. .......................................................................................................14

II.    PLAINTIFF IS ESTOPPED FROM ASSERTING ITS MARKS AGAINST "TECHSHOP 2.0." ......................................................................................................15

A.   Plaintiff Knew of Defendants' Use of the "TechShop 2.0" Name...........................15

B.   Defendants Reasonably Relied on Plaintiff's Conduct Implying that It Would Not Enforce its Marks Against "TechShop 2.0." ........................................16

C.   Defendants Did Not Know of Plaintiff's Objections Until At Least February 14, 2018...................................................................................................................16

D.   Defendants Have Been and Will Be Unduly Prejudiced If Plaintiff's Claim Against "TechShop 2.0" Is Not Dismissed ........................................................17

III.   PLAINTIFF IS ESTOPPED FROM ASSERTING ITS TECHSHOP MARKS AGAINST "THESHOP.BUILD"................................................................................17

A.   Plaintiff Knew of Defendants' Use of the "TheShop.build" Name. .......................17

B.   Defendants Reasonably Relied on Plaintiff's Conduct Implying That It Would Not Enforce the TECHSHOP Marks Against "TheShop.build"....................18

C.   Defendants Did Not Know of Plaintiff's Objections Until November 23, 2018.........................................................................................................................18

D.   Defendants Have Been and Will Be Unduly Prejudiced If Plaintiff's Claim Against "TheShop.Build" Is Not Dismissed and Judgment Entered for Defendants................................................................................................................19

IV.   PLAINTIFF IS BARRED FROM ASSERTING ITS REGISTRATIONS AGAINST "THESHOP.BUILD" UNDER THE DOCTRINE OF LACHES. ...................19

A.   The TECHSHOP Marks Are Not Strong or Valuable. ...........................................20

B.   Plaintiff Was Not Diligent in Enforcing Its Marks. ..............................................21

C.   Plaintiff Will Not Suffer Harm If Relief is Denied. ..............................................22

D.   Defendants Had a Good Faith Belief that Plaintiff Did Not Object to "TheShop.Build." ....................................................................................................23

E.   Plaintiff and Defendants Do Not Compete. ...........................................................23

F.   Defendants Were Harmed by Plaintiff's Delay.......................................................23

CONCLUSION ...................................................................................................................24

08876-00001/10988223.2

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>Cases</u>

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) ................................................................................... 11, 18

*AirWair Int'l Ltd. v. Schultz*,
  84 F. Supp. 3d 943 (N.D. Cal. 2015) ............................................................................. passim

*3M Co. v. Rollit, LLC*,
  No. 06-cv-01225, 2008 WL 8820473 (N.D. Cal. May 14, 2008) ...................................... passim

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
  967 F.2d 1280 (9th Cir. 1992) ........................................................................................ 10

*Eat Right Foods v. Whole Foods Mkt., Inc.*,
  880 F.3d 1109 (9th Cir. 2018)............................................................................... 9, 10, 12

*E-Sys., Inc. v. Monitek, Inc.*,
  720 F.2d 604 (9th Cir. 1983)........................................................................................ 12, 20

*Friedman v. Friedman*,
  No. 04-cv-08812, 2006 WL 8431768 (C.D. Cal. Apr. 12, 2006) .................................. 11, 17

*Grey v. Campbell Soup Co.*,
  650 F. Supp. 1166 (C.D. Cal. 1986), *aff'd*, 830 F.2d 197 (9th Cir. 1987) ................................ 10

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
  87 F. Supp. 3d 928 (N.D. Cal. 2015) ................................................................................ 12

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
  762 F.3d 867. 878 (9th Cir. 2014).............................................................................. 11, 12

*Lehman v. United States*,
  154 F.3d 1010 (9th Cir. 1998) ........................................................................................ 11

*Masters v. UHS of Del., Inc.*,
  631 F.3d 464 (8th Cir. 2011).......................................................................................... 12

*Pinkette Clothing, Inc. v. Cosmetic Warriors, LLC*,
  894 F.3d 1015 (9th Cir. 2018)................................................................. 11, 12, 19, 20

*Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*,
  621 F.3d 981 (9th Cir. 2010)...................................................................................... 10, 14

*Synopsys, Inc. v. ATopTech, Inc*,
  No. 13-cv-02965, 2016 WL 6158216 (N.D. Cal. Oct. 24, 2016)...................................... 11

*Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*,
  465 F.3d 1102 (9th Cir. 2006).................................................................................... 11, 12

08876-00001/10988223.2

*Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.*,
   106 F.3d 894 (9th Cir. 1997) ............................................................... 10, 13

*Yoshida v. Liberty Mut. Ins. Co.*,
   240 F.2d 824 (9th Cir. 1957) ...................................................................... 11

## **<u>Other Authorities</u>**

GILSON ON TRADEMARKS § 11.08[3][i][iii][A] (2010) ......................................... 10

08876-00001/10988223.2

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## PRELIMINARY STATEMENT

3   Defendants Dan Rasure, TheShop.build, LLC, and TheShop.build San Francisco, LLC

4   (collectively "Defendants") respectfully request that the Court vacate or modify the Final

5   Judgment entered on June 26, 2019 (Dkt. 223), and enter a Revised Final Judgment in favor of

6   Defendants, and against Plaintiff, that Plaintiff take nothing by its Complaint and that addresses

7   the equitable issues raised by Defendants' affirmative defenses, specifically: (1) Plaintiff

8   TechShop Inc.'s ("Plaintiff" or "TechShop") claims that Defendants' use of the name "TechShop

9   2.0" from November 2017 through February 14, 2018 infringed Plaintiff's TECHSHOP marks are

10   barred under the equitable doctrines of acquiescence and estoppel; and (2) Plaintiff's claims that

11   Defendants' use of "TheShop.build" infringed Plaintiff's TECHSHOP marks are barred under the

12   equitable doctrines of estoppel and laches.

13   The evidence supporting each of these equitable defenses was adduced during the jury trial

14   in this matter and is laid out in the Proposed Findings of Fact and Conclusions of Law filed

15   concurrently herewith.  The evidence establishes that Plaintiff consented to Defendants' use of the

16   name "TechShop 2.0" from late November 2017 through at least February 14, 2018.  Defendants

17   reasonably relied on Plaintiff's conduct and, based on that conduct, Plaintiff's claims as to

18   "TechShop 2.0" are barred under the equitable doctrines of acquiescence and estoppel.  Similarly,

19   the evidence establishes that Plaintiff knew about, but did not object to, the new name

20   "TheShop.build" for at least nine months.  During that unreasonable and inexcusable delay,

21   Defendants promoted their business and opened a second location using the new name.

22   Defendants reasonably relied on Plaintiff's silence—which was particularly justifiable as the

23   parties were actively engaged in litigation.  Based on Plaintiff's conduct, its claims as to

24   "TheShop.build" are barred under the equitable doctrines of estoppel and laches.

25

## PROCEDURAL BACKGROUND

26   **I.    NATURE OF THE CASE**

27   Plaintiff filed this action on February 16, 2018 for infringement of its registered service

28   marks for the word "TECHSHOP."  (Dkt. 1.)  On February 26, 2018, TechShop filed for Chapter

1    7 bankruptcy.  (Dkt. 22, p. 16; Trial Tr., _____[Newton].)[1]  The action has been continued through

2    the Trustee in bankruptcy, Doris A Kaelin.  (Dkt. 45.)  Defendants answered and asserted various

3    affirmative defenses.  (Dkt. 50.)

4          Among those defenses are acquiescence, estoppel, and laches.  (Dkt. 50, ¶¶ 62, 65.)  These

5    are equitable defenses to be decided by the Court.  This Post-Trial Brief and the accompanying

6    Proposed Findings of Fact and Conclusions of Law address those equitable defenses, which are

7    based on the trial exhibits, the testimony adduced during trial, and the Court's docket entries.[2]

8    **II.**    **STATUS OF THE PROCEEDINGS**

9          Trial on the issues triable by jury commenced on June 3, 2019.  (Dkt. 197.)  On June 12,

10   2019, the jury returned its verdict.  (Dkt. 217.)  The jury found willful infringement, but also

11   found Plaintiff was not damaged and awarded Plaintiff no monetary relief.  (Dkt. 217, Answers to

12   Questions 6, 7(a), 10, 11(a)).  The jury did not consider equitable defenses, which were reserved

13   for decision by the Court and are presented here and in the [Proposed] Findings of Fact and

14   Conclusions of Law filed concurrently herewith.

15                      **STATEMENT OF FACTS**

16   **I.**    **DEFENDANTS' USE OF "TECHSHOP 2.0" FROM NOVEMBER 2017 TO**
              **FEBRUARY 14, 2018**

17

18        **A.**    **Plaintiff Does Not Object to Defendants' Use of the Name "TechShop 2.0."**

19        Shortly after Plaintiff announced that it was closing its U.S. locations and would declare

20   bankruptcy, Defendant Dan Rasure contacted Plaintiff, expressing his interest in acquiring

21   ───────────────────

22        [1] As the Court is aware, Defendants could not afford the cost of a daily transcript of the jury
     trial.  The trial transcript has been ordered.  Defendants received some portions of the trial
23   transcript on July 23, but not with sufficient time to update all of the cites in this brief and other
     documents filed concurrently herewith.  Defendants understand from the court reporter that the
24   remainder of the trial transcript should be available later in the week.  When the complete trial
     transcript is available, Defendants will seek leave to amend their post-trial filings to include
25   citations to the trial transcript.

26        [2] In light of the "no damages" verdict, Defendants are no longer pursuing their counterclaims
     for cancellation (Dkt. 42, ¶¶ 22-41), fraud (*id*., ¶ 42-72), wire fraud (*id*., ¶¶ 73-83), and the
27   equitable defenses of misuse (Dkt. 50, ¶ 64) and unclean hands (*id*., ¶ 68).  The equitable defense
     of unjust enrichment (*id*., ¶ 75) is moot since the jury awarded Plaintiff no monetary relief.

28

1   Plaintiff's assets. (*See* TX0032; Trial Tr. _____[Rasure].)  Soon thereafter, Mr. Rasure and

2   representatives of Plaintiff (the "Parties") entered into negotiations regarding an acquisition.

3   (Trial Tr., ___ [Rasure; Woods].)  Mr. Rasure founded "TechShop 2.0" to acquire Plaintiff.  (Trial

4   Tr., _____[Rasure].)  Plaintiff knew that Mr. Rasure named his company "TechShop 2.0" and did

5   not object.  Indeed, in a late November 2017 email from one of Plaintiff's directors, Doug Busch,

6   Mr. Busch asked Mr. Rasure whether he had settled on using the name "TechShop 2.0," and said

7   to Mr. Rasure: "totally your call."  (TX921 at TS000671.)  Plaintiff's then-CEO Daniel Woods

8   agreed that it was Mr. Rasure's call to use the name "TechShop 2.0."  (*Id.*)

9       **B.**    **Plaintiff Calls Mr. Rasure's Company "TechShop 2.0" in Communications**
    **with Mr. Rasure, Plaintiff's Employees, Customers, and the Public About the**

10          **Potential Deal.**

11        Both Mr. Rasure and Plaintiff used the name "TechShop 2.0" to refer to Mr. Rasure's

12  company from late November 2017 through mid-February 2018.  For instance, on November 30,

13  2017, Plaintiff circulated a draft Memorandum of Understanding ("MOU") to the Parties.  The

14  Summary of Principal Transaction Terms referred to Mr. Rasure's company as "TechShop 2.0."

15  (TX602.)  The final MOU was executed on December 1, 2017.  (TX610.)  Mr. Rasure's company

16  is called "TechShop 2.0" in the executed MOU.  (*Id.* at DR0007002.)  Mr. Woods signed the final

17  MOU on Plaintiff's behalf.  (*Id.* at DR007003; TX604 at DR006910.)

18        Plaintiff used the name "TechShop 2.0" when announcing the MOU to employees,

19  members, and the general public.  On December 1, 2017, Mr. Woods announced that an agreement

20  was reached in an email to all of Plaintiff's employees, which was sent to everyone@techshop.ws,

21  and referred to Mr. Rasure's company as "TechShop 2.0."  (TX611; TX897.)  Plaintiff also

22  referred to Mr. Rasure's business as "TechShop 2.0" in its Notice of Liquidation Event to

23  stockholders, which was signed by Mr. Woods.  (*See* TX-0603 at DR006890-91.)  Mr. Woods

24  announced the Parties' agreement to Plaintiff's members and creditors as well, referring to Mr.

25  Rasure's company therein as "TechShop 2.0."  (TX767 at DR056577; TX619 at DR007130;

26  TX753 at DR054780).  And, Plaintiff announced the MOU to the public via Facebook, Instagram,

27  and Twitter, referring to Mr. Rasure's company therein as "TechShop 2.0."  (TX501; TX505,

28  TX530, TX527.)

DEFENDANTS' POST-TRIAL BRIEF ON EQUITABLE DEFENSES
OF ACQUIESCENCE, ESTOPPEL AND LACHES

1   On December 3, 2017, Mr. Busch sent an email to Messrs. Rasure, Woods, Newton, and

2   Doherty, and Ms. Bobek[3], sharing a message he planned to post "on various relevant social media

3   sites" and which he expected "will be widely disseminated." (TX612 at DR007019.)  The

4   message stated that a sale of assets will occur "to the new company (named by Mr. Rasure as

5   'TechShop 2.0')." (*Id.* at DR007022.)

6   Mr. Rasure made an announcement about TechShop 2.0, and on December 3, 2017, Mr.

7   Busch emailed him stating he "received the 'Welcome to TechShop 2.0' email.." (TX616 at

8   DR007088.)  Mr. Busch did not object to the name "TechShop 2.0." (*See id.*)  On December 3,

9   2017, Mr. Rasure sent out a press release announcing the acquisition of TechShop. (*See* TX614 at

10   DR007040.)  It included a quote from Mr. Woods referencing "TechShop 2.0." (*Id.*)

11
12   **C.    In Negotiations Following Execution of the MOU, Plaintiff's Representatives Continued to Use the Name "TechShop 2.0," and Did Not Object to Mr. Rasure's Use of that Name.**

13   Following execution of the MOU, both Plaintiff and Mr. Rasure continued to refer to Mr.

14   Rasure's company as "TechShop 2.0."  For example, on December 3, 2017, Mr. Woods sent an

15   email to Mr. Rasure. (TX615 at DR007048.)  Mr. Woods made several references to "TechShop

16   2.0," stating that "[b]oth TechShop, Inc. and TechShop 2.0 obviously want to carefully manage

17   their respective messaging and communications," and "[u]ntil we close a deal, TechShop, Inc.

18   should not be sending out anything to our member and employee channels regarding TechShop

19   2.0's intentions, aspirations or commitments unless it is information we're [sic] specifically

20   requested on behalf of employees." (*Id.* at DR007049.)  The statement in Mr. Woods' December

21   3 email regarding "sending out anything… to our member and employee channels" was about a

22   letter from Mr. Rasure to TechShop members which was attached to the email, and which

23   referenced the name "TechShop 2.0," stating that "[o]ur new legal entity name is TechShop 2.0

24   LLC." (TX-0615 at DR007050.)  Nowhere in his email did Mr. Woods object to the use of the

25   "TechShop 2.0" name in Mr. Rasure's letter. (*See id.* at DR007048-49.)

26

27

28   [3]   Mr. Newton was a co-founder of TechShop.  Mr. Doherty and Ms. Bobek were also affiliated with TechShop. (Trial Tr., _____.)

-4-   Case No. 4:18-CV-01044-HSG (JCS)

DEFENDANTS' POST-TRIAL BRIEF ON EQUITABLE DEFENSES
OF ACQUIESCENCE, ESTOPPEL AND LACHES

1      Mr. Woods' December 3, 2017 email had several attachments which used the name

2  "TechShop 2.0".  (TX615 at DR007053, DR007054-55.)  Also on December 3, 2017, Mr. Woods

3  emailed Mr. Rasure regarding several outstanding items, in which he referred to "TechShop 2.0."

4  (TX906 at TS000538.)  And, Plaintiff's representatives also introduced Mr. Rasure to others as

5  affiliated with "TechShop 2.0."  (TX613 at DR007029; TX617 at DR007115.)  On December 6,

6  2017, Mr. Woods sent an email to Mr. Rasure attaching a draft Asset Purchase Agreement.

7  (TX622 at DR007783.)  The draft Asset Purchase Agreement itself specifically referenced

8  "TechShop 2.0" as one of the parties to the draft agreement.  (*Id.* at DR007785.)

9      **D.      Both Parties Continued to Refer to Mr. Rasure's Company as "TechShop 2.0"
           in Negotiations That Continued After Termination of the MOU.**

10

11      On December 12, 2017, TechShop unilaterally terminated the MOU.  (TX919 at

12  TS000655.)  In the email advising Mr. Rasure of the termination, Plaintiff's outside counsel Kurt

13  W. Ruttum of Tonkon Torp LLP referred to Mr. Rasure's company as "TechShop 2.0, LLC."

    (*Id.*)  Plaintiff did not request that Mr. Rasure stop using the name "TechShop 2.0."  (*Id.*)

14

15      Even though Plaintiff terminated the MOU, the Parties continued to negotiate a potential

16  deal.  (Trial Tr., _____[Rasure, Woods, Busch]; TX-0634; TX-0635; TX-0636, TX-0639; TX-

    0644; TX-0645; TX-0646.)  On January 7, 2018, Mr. Rasure sent an email to Messrs. Woods and

17  Busch outlining the "basic layout" of a transaction between Plaintiff and "TechShop 2.0."

18  (TX634 at DR011357.)  The attachment to that email made numerous references to the name

19  "TechShop 2.0."  (*Id.* at DR011358.)  On January 8, 2018, Mr. Woods sent an email to Mr. Rasure

20  providing a response to Mr. Rasure's January 7, 2018 proposal, and referred to Mr. Rasure's

21  company as "TechShop 2.0."  (TX635.)  Mr. Woods did not object to the name "TechShop 2.0."

22  (*Id.*)  Mr. Woods sent another response on January 13.  (TX636.)  Mr. Woods' response again

23  references "TechShop 2.0" and does not object to Mr. Rasure's use of that name.  (*Id.* at

24  DR011994.)

25      On January 31, 2018, Mr. Rasure sent an email to Messrs. Woods, Busch, Doherty, and

26  Newton with a proposal to reopen a makerspace at the location of the former TechShop in Austin

27  (Round Rock), Texas.  (TX639 at DR013192.)  The email contained an attachment with the

28

                                              -5-                Case No. 4:18-CV-01044-HSG (JCS)
                                          DEFENDANTS' POST-TRIAL BRIEF ON EQUITABLE DEFENSES
                                              OF ACQUIESCENCE, ESTOPPEL AND LACHES

1    "TechShop 2.0" logo and a statement that "TechShop 2.0 LLC desires to reopen the former Tech

2    Shop Round Rock location." (*Id.* at DR013193.)  That same day, Mr. Woods sent an email to

3    Ryan Lloyd at the Williamson County Sheriff's Office in Texas, authorizing Mr. Rasure to pay

4    TechShop's subsidiary's past due property taxes in the amount of over $11,000 on TechShop's

5    behalf. (*See* TX642 at DR013252.)  Mr. Woods introduced Mr. Rasure in that email as

6    "representing TechShop, 2.0 LLC." (*Id.*)

7           On February 1, 2018, Mr. Rasure sent Messrs. Woods, Newton, Busch, and Doherty a

8    proposed equipment rental agreement for the lease of equipment to use at the Austin facility.

9    (TX644 at DR013501.)  The agreement referenced "TechShop 2.0," stating that it is made

10   "between TechShop Austin LLC… and TechShop2.0 Austin." (*Id.* at DR013502.)  That same

11   day, Mr. Woods responded to Mr. Rasure's email attaching the rental agreement. (TX-0645 at

12   DR013505.)  In his response, Mr. Woods did not object to Mr. Rasure's use of the name

13   "TechShop 2.0," but rather also referenced "TechShop 2.0." (*Id.*)

14          The next day, on February 2, 2018, Mr. Rasure sent another proposal regarding equipment

15   rental to Messrs. Woods, Busch, Doherty, and Newton, attaching another draft of the agreement,

16   which referenced the name "TechShop 2.0." (TX646 at DR013555.)  The email itself also

17   contained references to "TechShop 2.0," and requested that a "TechShop 2.0 Equipment Rental"

18   agreement exist for four additional locations. (*Id.* at DR013554.)

19          On February 7, 2018, Mr. Woods sent an email to Mr. Rasure stating that Plaintiff decided

20   not to pursue Mr. Rasure's proposed rental agreements and instead would be filing for a Chapter 7

21   bankruptcy. (TX647 at DR013676.)  Mr. Woods added "[t]hat is not to say that we would not be

22   supportive of a deal between you and the secured creditors or some other alternative arrangement

23   other than an asset rental." (*Id.*)  In his February 7, 2018 email, Mr. Woods did not instruct Mr.

24   Rasure to stop using the name "TechShop 2.0." (*Id.*)

25          Mr. Rasure continued to negotiate the terms of a potential deal to acquire Plaintiff, and

26   Plaintiff's representatives were aware of this.  On February 13, 2018, Mr. Rasure sent an email to

27   Messrs. Woods, Newton, Busch, and Doherty, informing them that he was preparing proof of

28   funds to send to Plaintiff's secured creditor, Autodesk, which was needed to enter into a deal to

1   acquire Plaintiff.  (TX913 at TS000614.)  On February 15, 2018, Mr. Rasure sent Plaintiff's

2   representatives an email saying that it had been a "good day" in his negotiations with Autodesk.

3   (TX652 at DR015045.)  Mr. Rasure provided proof of funds to Autodesk on the morning of

4   February 16, 2018, before receiving notice that Plaintiff filed suit.  (TX653 at DR015129.)

5       **E.    Defendants Announce the Opening of a San Francisco Location for**
            **"TechShop 2.0" and Plaintiff Sends a Letter Regarding Its Assets.**

6

7           On February 12, 2018, Mr. Rasure announced that he was opening a makerspace called

8   "TechShop 2.0" in San Francisco and that the space would open on February 19, 2018.  (Trial Tr.,

9   _____[Rasure].)  The business would open in the former space of TechShop's San Francisco

10  location, which had been abandoned when TechShop closed its U.S. locations.

11          On February 14, 2018, Mr. Woods sent a letter to Mr. Rasure and Dave Byers of Hearst,

12  the landlord for the former TechShop San Francisco location.  (TX650.)  In his letter, Mr. Woods

13  stated that Mr. Rasure has no contract with TechShop and no permission from TechShop to

14  operate in that facility.  (*Id.* at DR014933-34.)  The letter stated that "Mr. Rasure has no rights to

15  the possession or use of the assets of TechShop, Inc. or TechShop SOMA, LLC," including their

16  trademarks.  (*Id.* at DR014933.)  The letter, however, did not specifically state that Mr. Rasure's

17  use of the name "TechShop 2.0" infringed TechShop's trademarks, or that Mr. Rasure should

18  cease and desist using the name "TechShop 2.0."  (*Id.* at DR014933-34.)[4]

19      **F.    Plaintiff Files Suit, Defendants Change Their Name to "TheShop.build," and**
            **Plaintiff Does Not Object to the New Name.**

20          On the evening of February 16, 2018, Plaintiff's counsel sent Mr. Rasure a cease and desist

21  letter and enclosed a Complaint for trademark infringement that had already been filed against

22  Defendants.  (TX656.)  The Complaint alleged that Defendants' use of the name "Techshop 2.0"

23  infringed TechShop's registered service marks for the word "TECHSHOP."  (*Id.*; Dkt. 1.)

24  Promptly after receiving notice of the lawsuit on February 16, 2018—and before opening the

25

26  _____

27      [4] Even though Defendants submit that the February 14 letter was not an adequate cease and
    desist notice, they will not contest that for purposes of the case.  Hence, prior to the filing of this
28  case on February 16, 2018, the only time Plaintiff did not consent to Defendants' use of
    "Techshop 2.0" was from February 15 -16, 2018.

announced location—Defendants ceased using the name "Techshop 2.0," and changed the name to "TheShop.build."  (Trial Tr., _____ [Rasure, Matolo].)  They never opened or operated a makerspace using the "TechShop 2.0" name.  (Trial Tr., _____ [Rasure].)

On the evening of February 16, 2018, Defendants took down the sign from the building and started changing the website to "TheShop.build."  (Trial. Tr., ____[Rasure]; TX1159; TX-001.]  Although not everything got switched to "TheShop.build" on the evening of February 16, Defendants took steps to change everything over as quickly as possible.  (Trial Tr., _____[Rasure].)  Plaintiff served Defendants with the Complaint on the Friday evening before a holiday weekend, which made it more difficult for Defendants to change the name immediately.  (Trial Tr., _____[Rasure].)  Defendants opened their makerspace on February 19, 2018 as "TheShop.build."  (Trial Tr., _____[Rasure].)

Defendants initially used the following logo with their new name (TX 290 at DR056086; TX-377):



Defendants only used this logo for a three-day period, from February 19-21, 2018.  (Trial Tr., _____[Rasure].)  Defendants quickly and voluntarily ceased use of this logo for the "TheShop.build" on February 21, 2018 and never used it again.  (Trial Tr., _____[Rasure].)  Since March 2018 and up to the date of the jury trial on June 3, 2019, Defendants have used the following logo for "TheShop.build" (TX 290 at DR 056070; Trial Tr., _____[Rasure]):



On February 17, 2018, the day after the Complaint was filed, Plaintiff's CEO Dan Woods became aware that Defendants changed their name to "TheShop.build."  (TX 321.)  Plaintiff further acknowledged the name change in the Parties' June 1, 2018 Joint Case Management Statement.  (Dkt. 31, p. 5.)  Plaintiff's portions of the Joint Case Management Statement contained

-8-

Case No. 4:18-CV-01044-HSG (JCS)
DEFENDANTS' POST-TRIAL BRIEF ON EQUITABLE DEFENSES
OF ACQUIESCENCE, ESTOPPEL AND LACHES

1  no allegation that "TheShop.build" infringed.  (*Id*.)  Plaintiff similarly did not give any indication

2  that it believed "TheShop.build" infringed in its August 13, 2018 First Amended Complaint

3  (Dkt.45, ¶¶ 35, 39, 43 and Prayer ¶ A), or its November 2, 2018 Responses to Defendants' First

4  Set of Interrogatories.  (Dkt. 95-2, p. 4).  On November 23, 2018, Plaintiff stated for the first time

5  that it considered "TheShop.build" to infringe.  (Trial Tr., _____[Rasure]; Dkt. 128-7, p. 5, line

6  6.)  Prior to that time, Plaintiff had not advised Mr. Rasure that it believed "TheShop.build"

7  infringed its marks.  (Trial Tr., _____[Rasure].)

8       During Plaintiff's nine-month delay in giving Defendants notice that it considered

9  "TheShop.Build" to infringe, Defendants continued to use their new name and promote their

10  business under that name.  (Trial Tr., _____[Rasure].)  Defendants also expanded use of their new

11  name by opening "TheShop.Build" in San Jose in August 2018. (Trial Tr., _____[Rasure].)

12       **G.**    **Mr. Rasure is Prejudiced by Plaintiff's Conduct.**

13       During the course of this case, Defendants operated a business continually under the "black

14  cloud" of litigation and threat of a $1MM + judgment.  The business was ultimately never able to

15  make a profit, and Defendants could not find a suitable new location in San Francisco when the

16  building housing the original location was demolished because landlords would not negotiate with

17  them for new space due to the pending litigation and threatened judgment.  Mr. Rasure lost his

18  regular job (which had been subsidizing the business), had his credit rating drop, had his health

19  suffer, was away from his family for approximately 300 days of the last year, missing most of the

20  entire first year of his newborn son's life, and had to bear the expense of a trial.  (Trial Tr.,

21  _____[Rasure; Johnson].)

22       **LEGAL STANDARD**

23       **Acquiescence:** In the Ninth Circuit, the equitable defense of acquiescence precludes a

24  claim for trademark infringement. *Eat Right Foods v. Whole Foods Mkt., Inc.*, 880 F.3d 1109,

25  1121 (9th Cir. 2018).  Three elements are required to establish acquiescence:

26         "(1) the senior user actively represented that it would not assert a right or a claim; (2) the
27         delay between the active representation and assertion of the right or claim was not
        excusable; and (3) the delay caused the defendant undue prejudice."

28

1    *Id.* (quoting *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981,

2    989 (9th Cir. 2010).

3            Although acquiescence "requires an affirmative representation by the plaintiff that it will

4    not assert a claim," *Eat Right Foods*, 880 F.3d at 1121, consent can be inferred from a course of

5    business dealings between the parties. *Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec.*

6    *Supply Inc.*, 106 F.3d 894, 900 (9th Cir. 1997) (finding for defendant on affirmative defenses

7    including acquiescence because plaintiff "knew or should have known" of trademark infringement

8    based on course of dealing with defendant).

9            For purposes of acquiescence, the undue prejudice "must involve reliance on the senior

10   user's affirmative act or deed, and such reliance must be reasonable." *Seller Agency*, 621 F.3d at

11   990.  This analysis includes an examination of "both the content of the affirmative act and the

12   context in which that act was performed." *Id.*  "Reliance is a separate but necessary component of

13   the prejudice analysis, and the district court must determine whether the defendant relied on the

14   plaintiff's active representations, to what extent it relied on those representations, and whether that

15   reliance was reasonable." *Eat Right Foods*, 880 F.3d at 1121.

16           "Findings with respect to reliance also may inform whether the delay between the active

17   representation and assertion of the right or claim was excusable." *Seller Agency*, 621 F.3d at 990.

18   The Ninth Circuit has favorably cited the proposition that "[w]hen the plaintiff has in some way

19   assured the defendant that it will not assert its rights in the mark and the defendant has relied to its

20   detriment, the plaintiff should be estopped from bringing an action by its acquiescence regardless

21   of the period of delay." *Id.* (quoting GILSON ON TRADEMARKS § 11.08[3][i][iii][A] (2010)).

22           A party asserting acquiescence "has the burden of proving that defense by a preponderance

23   of satisfactory evidence." *Grey v. Campbell Soup Co.*, 650 F. Supp. 1166, 1168-69 (C.D. Cal.

24   1986), *aff'd*, 830 F.2d 197 (9th Cir. 1987).

25           **Estoppel:**  The Ninth Circuit also recognizes estoppel as an equitable defense against

26   trademark infringement. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1294 (9th Cir.

27   1992).  Estoppel can give rise to an implied license "when the intellectual property owner engages

28   in conduct from which a third party may properly infer that the owner consents to the use of the

-10-

1   intellectual property." *3M Co. v. Rollit, LLC*, No. 06-cv-01225, 2008 WL 8820473, at \*5 (N.D.

2   Cal. May 14, 2008).

3        Estoppel requires four elements:

4        (1) the plaintiff knew the defendant was selling a potentially infringing product; (2) the
         plaintiff's actions or failure to act led the defendant to reasonably believe that the plaintiff
5        did not intend to enforce its trademark right against the defendant; (3) the defendant did
         not know that the plaintiff actually objected to the sale of its potentially infringing product;
6        and (4) due to its reliance on the plaintiff's actions, defendant will be materially prejudiced
         if the plaintiff is allowed to proceed with its claim.

7   *3M*, 2008 WL 8820473, at \*5 (citing *Lehman v. United States*, 154 F.3d 1010, 1016 (9th

8   Cir. 1998)); *see also AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 958 (N.D. Cal. 2015).

9        "[E]stoppel is any conduct, express or implied, which reasonably misleads another to his

10  prejudice so that a repudiation of such conduct would be unjust in the eyes of the law." *Friedman*

11  *v. Friedman*, No. 04-cv-08812, 2006 WL 8431768, at \*20 (C.D. Cal. Apr. 12, 2006) (quoting

12  *Yoshida v. Liberty Mut. Ins. Co.*, 240 F.2d 824, 829-30 (9th Cir. 1957). Inaction or silence may be

13  conduct for purposes of estoppel. *See A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d

14  1020, 1028 (Fed. Cir. 1992) (en banc). "[E]stoppel focuses not on a party's intent, but rather on

15  the effects of his conduct on another." *AirWair*, 84 F. Supp. 3d at 958. For example, preparations

16  made by a defendant based on a course of business dealings between the parties may be evidence

17  of detrimental reliance. *3M*, 2008 WL 8820473, at \*5; *Friedman*, 2006 WL 8431768, at \*20.

18  Unlike laches, *infra*, estoppel does not require the passage of an unreasonable period of time

19  before filing suit. *Aukerman*, 960 F. 2d at 1041-42. "The party claiming estoppel has

20  the burden of proving each of the elements by a preponderance of the evidence." *Synopsys, Inc. v.*

21  *ATopTech, Inc*, No. 13-cv-02965, 2016 WL 6158216, at \*1 (N.D. Cal. Oct. 24, 2016) (citing

22  *Aukerman*, 960 F.2d at 1043, 1046).

23       **Laches:** The equitable defense of laches also bars a claim of trademark infringement in

24  the Ninth Circuit. *Pinkette Clothing, Inc. v. Cosmetic Warriors, LLC*, 894 F.3d 1015, 1026 (9th

25  Cir. 2018); *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867. 878 (9th Cir.

26  2014). As the Court stated in *La Quinta*, 762 F.3d at 878, "[t]he defense of laches 'can defeat an

27  otherwise valid claim under the Lanham Act,'" citing *Tillamook Country Smoker, Inc. v.*

28

1  *Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006).  To benefit from this

2  equitable defense, "[t]he party asserting laches must demonstrate that it has 'suffered prejudice as

3  a result of plaintiff's unreasonable delay in filing suit.'" *La Quinta*, 762 F.3d at 878.

4         Analysis of a laches defense is a two-step process:

5         First, we assess the plaintiff's delay by looking to whether the most analogous state statute
       of limitations has expired. [*La Quina*, 762 F.3d at 878].  If the most analogous state statute
6         of limitations expired before suit was filed, there is a strong presumption in favor of laches.
       *Id.* That presumption is reversed, however, if the most analogous state statute of limitations
7         expired after suit was filed. *Id.*

8         Second, we assess the equity of applying laches using the E-Systems factors: (1) "strength
       and value of trademark rights asserted;" (2) "plaintiff's diligence in enforcing mark;" (3)
9         "harm to senior user if relief denied;" (4) "good faith ignorance by junior user;" (5)
       "competition between senior and junior users;" and (6) "extent of harm suffered by junior
10        user because of senior user's delay." *E-Sys., Inc. v. Monitek, Inc.,* 720 F.2d 604, 607 (9th
       Cir. 1983).

11  *Pinkette Clothing,* 894 F.3d at 1025.

12        A party asserting laches bears the burden of proof by a preponderance of the evidence.  *See*

13  *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 958 (N.D. Cal.

14  2015); *Masters v. UHS of Del., Inc.*, 631 F.3d 464, 470 (8th Cir. 2011).

15                                    **ARGUMENT**

16  **I.    PLAINTIFF ACQUIESCED IN DEFENDANTS' USE OF "TECHSHOP 2.0" FROM**
17        **NOVEMBER 2017 TO AT LEAST FEBRUARY 14, 2018**

18        Plaintiff acquiesced in Defendants' use of "TechShop 2.0" because: (1) it actively

19  represented that it would not assert a right or a claim; (2) the delay between Plaintiff's active

20  representation and its assertion of its right was inexcusable; and (3) the delay caused the

21  Defendants undue prejudice.  *See Eat Right Foods*, 880 F.3d at 1121.

22        **A.    Plaintiff Actively Represented that It Would Not Assert the TECHSHOP**
            **Marks Against Defendants' Use of "TechShop 2.0"**
23

24        By its affirmative words and conduct, Plaintiff gave assurances that it approved of

25  Defendants' use of "TechShop 2.0."  From November 2017 through at least February 14, 2018,

26  Plaintiff had numerous opportunities to object to the name of Mr. Rasure's new company.

27  Instead, Plaintiff and its employees embraced that name and consistently used it to refer to Mr.

28  Rasure's company.

Since late-November 2017, Mr. Rasure's new company was called "TechShop 2.0." This use was not limited to legal documents, like the entity formation documents, but extended to all communications between the Parties. Plaintiff knew that Mr. Rasure intended to launch his company as TechShop 2.0. For example, Mr. Busch confirmed with Mr. Rasure that Mr. Rasure had "settled firmly on TechShop 2.0 as the name [he] will reopen under" on November 29, 2017. (TX921 at TS000671.) Multiple TechShop representatives consented by stating that the choice was Mr. Rasure's "call." (*Id.*)

Plaintiff's consent continued for several months as the parties worked on a deal. The final MOU refers to "TechShop 2.0." (TX610 at DR0007002.) Even after Plaintiff terminated the MOU, the parties continued discussions and negotiations using the name "TechShop 2.0" until February 2018. (TX634 at DR011357-58; TX635 at DR011473; TX636 at DR011994; TX644 at DR013501-02; TX645 at DR013505; TX646 at DR013555; TX615; TX906 at TS000538.) Communications introducing "TechShop 2.0" were sent to parties who were not involved in negotiations. (*E.g.,* TX617 at DR007115; TX642 at DR013252.)

Plaintiff also made active representations that it consented to the name "TechShop 2.0" in widespread and public-facing announcements. For example, Plaintiff sent announcements using the "TechShop 2.0" name to its customers (TX767 at DR056577; TX619 at DR007130; TX753 at DR054780), stockholders (TX603 at DR006890-91), and employees (TX611). Plaintiff also made announcements on social media. (TX501; TX505; TX527; TX530.) Plaintiff's representatives collaborated with Mr. Rasure on public announcements regarding "TechShop 2.0." (TX612 at DR007019; *id.* at DR007022; TX614 at DR007040.)

From these communications, it is clear that Plaintiff "knew or should have known" for several months that Mr. Rasure's new company would use the name "TechShop 2.0." *See Westinghouse Elec.*, 106 F.3d at 900. Nonetheless, Plaintiff did not object, and in fact actively encouraged use of that name until at least February 14, 2018.

### B.   Plaintiff's Delay in Asserting Its Trademark Rights Is Inexcusable

Plaintiff's delay in objecting to Defendants' use of the name "TechShop 2.0" and in expressing its belief that the name infringes Plaintiff's marks cannot be excused. Plaintiff knew of

1    the intended use for over two and a half months before finally sending the February 14, 2018

2    letter.  In these two and a half months, Plaintiff never gave any indication that it had any objection

3    to Mr. Rasure using the name "TechShop 2.0" for the new company and instead adopted and

4    encouraged this use.  As a result, the delay is particularly inexcusable because Plaintiff's

5    affirmative acts gave rise to Defendants' reliance that their use of "TechShop 2.0" was acceptable.

6    *Seller Agency*, 621 F.3d at 989 ("When the plaintiff has in some way assured the defendant that it

7    will not assert its rights in the mark and the defendant has relied to its detriment, the plaintiff

8    should be estopped from bringing an action by its acquiescence regardless of the period of delay.")

9        C.    **Defendants' Reasonable Reliance on Plaintiff's Representations Caused
               Undue Prejudice.**

10

11        Because of Plaintiff's active representations that it would not assert its marks against the

12   name "TechShop 2.0", Mr. Rasure and the other Defendants made a significant investment of time

13   and money in that name, such as by investing capital in the new business and negotiating for

14   months with Plaintiff, as well as with landlords and other third parties.  (Trial Tr.,

15   _____[Rasure].)

16        Furthermore, Plaintiff's representations denied Defendants the opportunity to launch their

17   new company under the name they had planned to use.  Instead, Defendants were forced to engage

18   in a fire drill to change all of their public-facing branding and communications from "TechShop

19   2.0" to "TheShop.build" after Plaintiff filed this case.  (Trial Tr., ___[Rasure]).  From late-

20   November 2017 through February 14, 2018, both Parties referred to the new company as

21   "TechShop 2.0."  By precipitously having to change names on the eve of opening, Defendants

22   were prejudicially denied the chance to promote the name they would ultimately open under.

23        This undue prejudice is due to Defendants' reasonable reliance on Plaintiff's active

24   representations of consent.  Based on the two and half months that Plaintiff affirmatively agreed to

25   use of the "TechShop 2.0" name, Defendants believed that they were free to launch their new

26   company with that name.  (Trial Tr., _____ [Rasure].)  When viewed in the context of the

27   negotiations between the parties, it was undoubtedly reasonable for Defendants to rely on a mutual

28   understanding that the new business would be called "TechShop 2.0."

1   Plaintiff could have averted this harm to Defendants, but instead acquiesced to the use of

2   the "TechShop 2.0" name by its affirmative words and conduct over the course of those two and

3   half months.  Based on the above, each of the elements of acquiescence is established, and the

4   Court should dismiss Plaintiff's claim as to "TechShop 2.0" as barred by the equitable doctrine of

5   acquiescence.

6   **II.   PLAINTIFF IS ESTOPPED FROM ASSERTING ITS MARKS AGAINST**
    **"TECHSHOP 2.0."**

7   Plaintiff is estopped from asserting its TECHSHOP marks against "TechShop 2.0" because

8   (1) Plaintiff knew the Defendants were using the name "TechShop 2.0"; (2) due to Plaintiff's

9   conduct, Defendants reasonably believed that Plaintiff did not intend to enforce its marks against

10  "TechShop 2.0"; (3) Defendants did not know that Plaintiff objected to their use of the name

11  "Techshop 2.0"; and (4) Defendants have been and will be materially prejudiced if Plaintiff is not

12  estopped from asserting its marks against "Techshop 2.0."  *See AirWair*, 84 F. Supp. 3d at 958.

13  **A.   Plaintiff Knew of Defendants' Use of the "TechShop 2.0" Name**

14  Mr. Rasure began using the name "TechShop 2.0" shortly after beginning negotiations

15  with Plaintiff in November 2017.  (Trial Tr., _____ [Rasure].)  From that time until at least

16  February 14, 2018, the Parties communicated with each other using the "TechShop 2.0" name.  As

17  a result of this mutual understanding between the Parties, everyone knew of Defendants' actions

18  and intentions with the "TechShop 2.0" name.

19  Throughout this time, Plaintiff also knew that "TechShop 2.0" would be the public,

20  customer-facing name of the new company.  The testimony of Plaintiff's officers confirmed this

21  was the case.  (Trial Tr., _____ [Newton, Woods, Busch]; TX921 at TS000671.)  And, Plaintiff

22  made public announcements using the name "TechShop 2.0" by email and on social media.

23  (TX767 at DR056577; TX619 at DR007130; TX753 at DR054780; TX501; TX505; TX527;

24  TX530; TX921.)  In short, the evidence is replete that Plaintiff knew that Defendants were using

25  the "TechShop 2.0" name and planned to launch their new company under that name.

26

27

28

-15-

08876-00001/10988223.2

**B.**   **Defendants Reasonably Relied on Plaintiff's Conduct Implying that It Would Not Enforce its Marks Against "TechShop 2.0."**

Over the two and a half months of negotiations, Mr. Rasure took steps to launch his company.  He collaborated with Plaintiff on public announcements promoting "TechShop 2.0." (TX612 at DR007019; *id.* at DR007022; Trial Tr. ____ [Woods, Rasure].)  He also sent out a press release and email announcements.  (TX614 at DR007040; TX616 at DR007088.)  These actions were taken in reliance on Plaintiff's conduct.  Plaintiff has adduced no evidence suggesting that Mr. Rasure or the other Defendants acted contrary to any discouraging actions or statements that it made in this time period.  In fact, during the Parties' negotiations, Plaintiff adopted and encouraged use of the "TechShop 2.0" name.

By failing to object to Defendants' use of the "TechShop 2.0" name and using it to refer to the new company, Plaintiff gave its consent to that use.  Plaintiff's actual intentions or secret objections are irrelevant.  *See AirWair*, 84 F. Supp. 3d at 958 ("[E]stoppel focuses not on a party's intent, but rather on the effects of his conduct on another.").  Defendants' reliance on that consent was reasonable and, as discussed below, detrimental.

**C.**   **Defendants Did Not Know of Plaintiff's Objections Until At Least February 14, 2018**

Defendants had no suspicion that Plaintiff objected to "TechShop 2.0" until at least February 14, 2018.  Plaintiff never told Mr. Rasure that it believed "TechShop 2.0" to infringe the TECHSHOP marks.  And, there is no evidence that Plaintiff ever otherwise discouraged Defendants' use of the "TechShop 2.0" name.  On February 14, 2018, Mr. Rasure received a letter from Mr. Woods saying that he had "no rights to the possession or use of the assets of TechShop, Inc. or TechShop SOMA, LLC;" the letter contained a list of assets, including equipment and the generic word "trademarks."  (TX650 at DR014933.)  Even then, Plaintiff did not assert that "TechShop 2.0" infringed the TECHSHOP marks or request that Mr. Rasure stop using the name. (*Id.* at DR014933-34; Trial Tr. ____ [Woods, Rasure].)  Prior to at least February 14, 2018, Defendants could have had no knowledge of Plaintiff's objections.

**D.**     **Defendants Have Been and Will Be Unduly Prejudiced If Plaintiff's Claim Against "TechShop 2.0" Is Not Dismissed**

Defendants' reliance was detrimental.  As described in connection with Defendants' acquiescence defense (Part I.C, *supra*), Defendants invested in the "TechShop 2.0" name over the course of negotiations and in preparation for launching their new company.  *See 3M*, 2008 WL 8820473, at *5 (purchases made in preparation for manufacturing were "evidence of detrimental reliance"); *see also Friedman*, 2006 WL 8431768, at *20.  Furthermore, Defendants are continuing to feel the consequences of the harm of their reliance on conduct in not objecting to Defendants's use of the "TechShop 2.0" name.  Mr. Rasure was forced to defend himself in this litigation, which has caused him to lose money, his regular job, his company's San Francisco location, his health, and nearly the entire first year of his son's life  (Trial Tr., _____ [Rasure]), and he still has sizeable legal bills to pay.  If Plaintiff's claim as to "TechShop 2.0" is not dismissed, Mr. Rasure will continue to endure this undue prejudice from the harm caused by this litigation.

Based on the above, each of the elements of estoppel is established, and the Court should dismiss Plaintiff's claim as to "TechShop 2.0" as barred by the doctrine of equitable estoppel.

**III.     PLAINTIFF IS ESTOPPED FROM ASSERTING ITS TECHSHOP MARKS AGAINST "THESHOP.BUILD".**

Plaintiff is estopped from asserting its marks against "TheShop.build" because (1) Plaintiff knew Defendants were using the name "TheShop.build"; (2) due to Plaintiff's conduct, Defendants reasonably believed that Plaintiff did not intend to enforce the TECHSHOP marks against "TheShop.build"; (3) Defendants did not know that Plaintiff objected to their use of "TheShop.build"; and (4) Defendants have been and will be materially prejudiced if Plaintiff is not estopped from asserting the TECHSHOP marks against its use of "TheShop.Build."  *See AirWair*, 84 F. Supp. 3d at 958.

**A.**     **Plaintiff Knew of Defendants' Use of the "TheShop.build" Name.**

Plaintiff cannot dispute that it knew of the name "TheShop.build" almost from the moment that Defendants first adopted its use.  The change was prompted by Plaintiff's lawsuit filing and cease and desist letter of February 16, 2018, and by the very next day Mr. Woods knew of the

-17-

change.  (TX 321; Trial Tr. _____ [Woods].)  From that time, and until Plaintiff first identified a claim against "TheShop.build" in an interrogatory response served on November 23, 2018, Plaintiff was engaging in active litigation and discovery related to Defendants' business.  Plaintiff even referenced the new name in the June 1, 2018 Joint Case Management Statement (Dkt. 31, p. 5), but voiced no objection.  Plaintiff cannot dispute its knowledge of Defendants' use.

**B.**     **Defendants Reasonably Relied on Plaintiff's Conduct Implying That It Would Not Enforce the TECHSHOP Marks Against "TheShop.build".**

Plaintiff could have asserted its infringement claims against "TheShop.build" at any time during this litigation.  Plaintiff could also have objected to the Defendants' use outside of the context of the litigation.  Instead, for the first nine months of this case, Plaintiff never raised any objection to "TheShop.build" and focused all of its claims on "TechShop 2.0."  *See Aukerman*, 960 F.2d at 1028 (inaction or silence may create estoppel).

As a result, Defendants reasonably believed themselves free to operate and expand the company as "TheShop.build."  Defendants did not expect Plaintiff to assert a claim against "TheShop.build" so late in the game.  They switched everything to "TheShop.build" and expanded the business by opening a second location in San Jose.  (Trial Tr., _____[Rasure].)  Mr. Rasure believed that Plaintiff's only objection was to the previous name, "TechShop 2.0."  However, Plaintiff lulled Mr. Rasure into a false sense of security as he promoted his growing business.  Only after the close of discovery, and after Defendants made substantial investments in the new business, did Plaintiff even mention that it objected to Defendants' use of "TheShop.build."

It is irrelevant whether Plaintiff was secretly considering or investigating a claim against "TheShop.build" before adding those claims to this litigation.  "[E]stoppel focuses not on a party's intent, but rather on the effects of his conduct on another."  *AirWair*, 84 F. Supp. 3d at 958.  Plaintiff's conduct had the effect of assuring Defendants that their ongoing activities were safe from this litigation.

**C.**     **Defendants Did Not Know of Plaintiff's Objections Until November 23, 2018.**

Until Plaintiff identified a claim against "TheShop.build" on November 23, 2018, Defendants were unaware of any objection to that name.  Despite many opportunities to do so,

-18-

08876-00001/10988223.2

1   Plaintiff never objected to or discouraged the use of "TheShop.build," either over the course of the

2   litigation or privately between the Parties.  There is no reason why Defendants should have known

3   or suspected that Plaintiff's objections to "TechShop 2.0" extended to "TheShop.Build," given the

4   differences in the sight and sound between the two names, and especially given Plaintiff's delay in

5   objecting to "TheShop.Build."  Plaintiff adduced no contrary evidence at trial.

6          **D.      Defendants Have Been and Will Be Unduly Prejudiced If Plaintiff's Claim
                     Against "TheShop.Build" Is Not Dismissed and Judgment Entered for
7                    Defendants.**

8          While Plaintiff waited to bring claims against "TheShop.build," Defendants were

9   detrimentally relying on that inaction.  As a result, Defendants have been and will continue to be

10  unduly prejudiced.  Before Plaintiff asserted its claim, Defendants built their business under the

11  name "TheShop.build" and expanded into a second location.  (Trial Tr., _____[Rasure].)

12  Defendants continue to operate that business, but the money, time, and goodwill that they

13  expended to develop the brand is now in jeopardy.

14         At the same time, and as described in connection with Defendants' laches defense below,

15  Defendants lost the opportunity to take action that could have averted this claim.  Had Defendants

16  known of Plaintiff's objections, they could have avoided the expense of litigation and the resulting

17  hardships for Mr. Rasure.  But Plaintiff failed to act, and implied that it would not bring a claim

18  against "TheShop.build."  Defendants are suffering undue prejudice as a result of that conduct.

19  The Court should dismiss Plaintiff's claim as to "TheShop.build" as barred by the doctrine of

20  equitable estoppel.

21  **IV.    PLAINTIFF IS BARRED FROM ASSERTING ITS REGISTRATIONS AGAINST
            "THESHOP.BUILD" UNDER THE DOCTRINE OF LACHES.**
22

23         The first step in assessing laches is a determination of the most analogous state law statute

    of limitations.  *Pinkette Clothing, 894* F.3d at 1025.  Here, the most analogous state statute of
24
    limitations is California's four-year statute of limitations.  *Id*.  On the facts of this case, Plaintiff
25
    delayed asserting its TECHSHOP marks against "TheShop.build" for nine months.   Hence, there
26
    is a presumption that Plaintiff was not guilty of laches.  *Id*.
27

28

The presumption can be overcome by proof that the trademark owner knew of its potential cause of action and unreasonably delayed taking action, resulting in prejudice to the defendant. Defendants here have overcome this presumption.  Throughout the nine-month delay period, Plaintiff was in active litigation with Defendants over the use of the TECHSHOP marks.  From February 17, 2018, the day after the case was filed, Plaintiff's CEO Mr. Woods knew that Defendants had changed their name to "TheShop.build."  (TX 321.)  Yet Plaintiff never gave any indication—let alone actual notice—that "TheShop.build" was "in the case" until November 23, 2018, after the close of fact discovery.  Plaintiff had opportunity after opportunity to advise Defendants that there was a problem with "TheShop.build":  for example, in the June 1, 2018 Joint Case Management Statement (Dkt. 31), in the August 13, 2018 First Amended Complaint (Dkt. 45) and in its November 2, 2018 response to Interrogatory No. 2 (Dkt. 95-2).  Indeed, if "TheShop.build" was such an egregious infringement—as Plaintiff argued before the jury—one would have expected Plaintiff to move for a preliminary injunction.  It never even tried.  And while Plaintiff lay in the weeds and slept on its alleged rights against Defendants' use of "TheShop.build", Defendants continued their use of the new name, promoted the business under that name, and even opened a new location in San Jose using the new moniker.  (Trial Tr., _____ [Rasure].)

The second step in assessing laches is to review the *E-Systems* factors:  (1) the strength and value of trademark rights asserted; (2) plaintiff's diligence in enforcing mark; (3) the harm to senior user if relief denied; (4) the good faith ignorance by junior user; (5) the competition between senior and junior users; and (6) the extent of harm suffered by junior user because of senior user's delay.  *Pinkette Clothing*, 894 F.3d at 1025.  As set forth below, each *E-Systems* factor weighs heavily in Defendants' favor.

### A.      The TECHSHOP Marks Are Not Strong or Valuable.

The TECHSHOP marks have never been licensed in the U.S.  (Trial Tr., _____ [Newton; Woods; Matolo].)  Plaintiff was bankrupt and in liquidation during the entire time Defendants used "TheShop.build."  (Trial Tr., _____ [Newton; Woods; Matolo].)  As Defendants' expert Mr. Bünger testified, because Plaintiff shuttered its doors with no notice to its members and locked

-20-

Case No. 4:18-CV-01044-HSG (JCS)
DEFENDANTS' POST-TRIAL BRIEF ON EQUITABLE DEFENSES
OF ACQUIESCENCE, ESTOPPEL AND LACHES

08876-00001/10988223.2

them out from retrieving their possessions, the TECHSHOP brand actually had a negative value. (Trial Tr., _____ [Bünger].)[5]  Mr. Busch validated Mr. Bünger's opinion by acknowledging that "I fully understand the frustration members have experienced as a result of being locked out of stores, being unable to complete projects, and not having access to your materials and tools." (TX612 at DR007022.)  Thus, while the TECHSHOP marks in the U.S. may have had value at one time, that ended when Plaintiff abruptly closed in November 2017.  Tellingly, Plaintiff presented no evidence that after the potential deal with Defendants collapsed, anyone was willing to pay anything for the TECHSHOP marks, or that Plaintiff intended to reopen using the marks.

### B.   Plaintiff Was Not Diligent in Enforcing Its Marks.

Plaintiff's inaction during the nine-month period is indisputable.  As noted above, Plaintiff had repeated opportunities to give notice to Defendants that "TheShop.build" infringed its rights.  Throughout this period, it could have moved for a preliminary injunction.  But, rather than being diligent, Plaintiff did absolutely nothing.

It is no answer that the original and amended complaints alleged that Plaintiff was pursuing "confusingly, similar variations" of the TECHSHOP marks.  (Complaint, Dkt. 1, ¶¶ 31, 35, 39 and Prayer ¶ A; First Amended Complaint, Dkt. 45, ¶¶ 35, 39, 43 and Prayer ¶ A.)  As late as November 2, 2018, when asked what those "confusingly, similar variations" were, Plaintiff identified only various forms of Defendants' original name "Techshop 2.0." (Dkt. 95-2, p. 4).  Not a word was mentioned about the *new* name, "TheShop.build", which had then been in place with Plaintiff's knowledge for eight months.  (*Id.*)  It was not for another month before Plaintiff first alleged that "TheShop.build" infringed.  This is not enforcement diligence.

---

[5]  Defendants' expert Dr. Matolo testified that the TECHSHOP marks in the U.S. were valuable.  He based his opinion on foreign licenses for the marks entered into several years earlier while Plaintiff was still in business in the U.S. (Trial Tr., _____[Matolo].)  Incredibly, Dr. Matolo opined that even after the bankruptcy the U.S. marks were more valuable than the foreign marks. (Trial Tr., _____[Matolo].)

The jury clearly rejected Dr. Matolo's opinion about the value of marks in the U.S., since it found that Plaintiff suffered no actual damages in the form of lost licensing revenue. (Dkt. 217, Verdict, Answers to Questions 6, 10.)

Contemporaneous proof exists that Plaintiff has not been diligent in enforcing its TECHSHOP marks.  In May 2019, Odyssey Expo held a convention in Atlanta that used the name "Techshop" for its classrooms, demonstrations, live equipment running on the floor and experts. (TX1075 at DR060496- 499).  The convention featured a 33,350 sq. ft. space designated "Techshop" where machinery was demonstrated.  (TX1075 at DR060503.)  Odyssey Expo's use of the name Techshop falls within the scope of Plaintiff's Registration No. 4,247,529 at issue in this case.  (TX351).  The '529 Registration expressly covers, *inter alia*, "providing professional networking opportunities and hosting professional networking events for individuals with a shared interest in manufacturing and fabrication," "conducting classes and workshops in the fields of techniques and tools used in the fabrication  of products," and "presenting educational demonstrations at fairs, symposia, and other related forums in the field of manufacturing and fabrication."  Plaintiff's excuse for not pursing Odyssey Expo for use of "Techshop" was that the Atlanta convention focused on printing press technology.  (Trial Tr., _____ [Matolo].)  However, Plaintiff's '529 Registration for networking, hosting, classes, workshops, demonstrations at forums, etc. is not restricted to the type of equipment displayed.  (TX351.)  Plaintiff's failure to pursue Odyssey Expo confirms its lack of diligence in enforcing its marks.[6]

## C.   **Plaintiff Will Not Suffer Harm If Relief is Denied.**

Plaintiff will suffer no harm if its marks are not enforced against "TheShop.build." Plaintiff is out of business in the U.S. and is pursuing liquidation in Chapter 7 bankruptcy.  After its abrupt closure in November 2017, Plaintiff never reopened its doors.  (Trial Tr. ___[Newton; Busch; Matolo].)  Plaintiff offered no proof that it intends to resume operations in the U.S.

During the jury trial, Plaintiff's witnesses gave self-serving testimony that the U.S. marks were valuable after the bankruptcy.  (Trial Tr., _____ [Newton; Woods; Busch; Matolo].) Significantly, the proof the jury credited was Mark Bünger's expert opinion that after the

---

[6] Plaintiff's founder Newton testified about how the TECHSHOP marks had been enforced in the past.  (Trial Tr., _____ [Newton].)  But all of this occurred several years before the November 2017 bankruptcy.  Past enforcement efforts have no bearing on Plaintiff's diligence in enforcing its marks after it went bankrupt.

1    catastrophic closure, the TECHSHOP marks had negative brand value and thus Plaintiff suffered

2    no actual damages in the form of lost licensing revenue.  (Trial Tr., _____[Bünger]; Verdict,

3    Answers to Questions 6, 10.)  All of these circumstances support the conclusion that Plaintiff will

4    not be harmed if its marks are not enforced against Defendants' new name "TheShop.build."

**D.    Defendants Had a Good Faith Belief that Plaintiff Did Not Object to "TheShop.Build."**

There can be no doubt that for nine months Defendants never had a clue that Plaintiff had

an issue with "TheShop.build."  Throughout the fact discovery period—which ended on

November 2, 2018 (Dkt. 37)—Plaintiff never gave notice of its contention that "TheShop.build"

infringed.  Defendants proceeded with and expanded their business using the new name

"TheShop.build" totally ignorant of Plaintiff's plan to assert a claim.  (Trial Tr., _____ [Rasure].)

**E.    Plaintiff and Defendants Do Not Compete.**

Plaintiff is bankrupt and out of business in the U.S.  Defendants started a going business to

fill the makerspace vacuum Plaintiff left behind.  In short, Plaintiff and Defendants have never

been competitors.

**F.    Defendants Were Harmed by Plaintiff's Delay.**

As discussed above, Defendants were harmed by Plaintiff's delay in many ways.  On the

commercial front, Defendants built their business using the new name "TheShop.build."  (Trial

Tr., _____ [Rasure].)  Defendants expanded their use of the name in August 2018 by opening a new

location in San Jose.  (Trial Tr., _____ [Rasure].)  All that was placed at risk when Plaintiff sprung

the new claim over "TheShop.build" on November 23, 2018.

On the litigation front, the delay cost Defendants the early opportunity to adopt another

name and avoid the expense of this entire litigation.  Had there been no "TheShop.build" claim,

this case would have boiled down to Defendants' use of "Techshop 2.0" without consent for just

two days.  It is very likely that this minuscule use could have been resolved without the necessity

of litigation beyond the initial complaint, let alone a trial.  But with "TheShop.build" in the case,

everything changed.  The Court's docket grew to over 200 filings and counting.  A seven-day jury

trial was held.  Plaintiff claimed it was entitled to almost $1.5 million in damages.  (Trial Tr.,

1    _____.)  Mr. Rasure was impacted on every front.  He lost his outside job (which was supporting

2    Rasure's family and subsidizing the startup makerspace business).  His health, his credit, his

3    business, his leasing opportunities and his reputation all suffered.  (Trial Tr., _____ [Rasure].)

4    Making matters worse, because fact discovery closed on November 2, 2018 before

5    "TheShop.build" claim first surfaced on November 23, Defendants never had the opportunity to

6    take discovery on this belated infringement allegation.  All of this harm to Defendants could have

7    been avoided if Plaintiff had not delayed in giving notice that "TheShop.build" was a problem.

8         Based on the above, the Court should dismiss Plaintiff's claim as to "TheShop.build" as

9    barred by the equitable doctrine of laches.

10                                     **CONCLUSION**

11        For the foregoing reasons, Defendants respectfully request that the Court vacate or modify

12   the Final Judgment entered on June 26, 2019.  The Court should find that Plaintiff's claims of

13   infringement based on Defendants' use of "Techshop 2.0" from November 2017 to February 14,

14   2018 are barred under the equitable doctrines of acquiescence and estoppel.  Further, the Court

15   should find that Plaintiff's claims for infringement based on Defendants' use of "TheShop.build"

16   are barred under the equitable doctrines of estoppel and laches.  The Court should enter judgment

17   in favor of Defendants and against Plaintiff on the First Amended Complaint.

18

19

20

21

22

23

24

25

26

27

28

Case No. 4:18-CV-01044-HSG (JCS)
DEFENDANTS' POST-TRIAL BRIEF ON EQUITABLE DEFENSES
OF ACQUIESCENCE, ESTOPPEL AND LACHES

1    DATED:  July 23, 2019                    By        _/s/ Andrea Pallios Roberts_

2                                                 Ann McFarland Draper (Bar No. 065669)
                                                  courts@draperlaw.net
3                                                 Draper Law Offices
                                                  75 Broadway, Suite 202
4                                                 San Francisco, California 94111
                                                  Telephone:     (415) 989-5620

5
                                                  QUINN EMANUEL URQUHART &
6                                                 SULLIVAN, LLP
                                                  Kevin P.B. Johnson (Bar No. 177129)
7                                                 kevinjohnson@quinnemanuel.com
                                                  Andrea Pallios Roberts (Bar No. 228128)
8                                                 andreaproberts@quinnemanuel.com
                                                  555 Twin Dolphin Drive, 5th Floor
9                                                 Redwood Shores, California 94065-2139
                                                  Telephone:     (650) 801-5000
10                                                Facsimile:     (650) 801-5100

11                                                Ed DeFranco (Bar No. 165596)
                                                  eddefranco@quinnemanuel.com
12                                                51 Madison Avenue, 22nd Floor
                                                  New York, NY 10010
13                                                Telephone:     (212) 849-7000
                                                  Facsimile:     (212) 849-7100

14
                                                  John E. Nathan (P_ro Hac Vice_)
15                                                jnathan155@yahoo.com
                                                  John E. Nathan LLC
16                                                1175 Park Avenue
                                                  New York, NY 10128
17                                                Telephone:     (917) 960-1667

18                                                Attorneys for Defendants and Counterclaimants

19

20

21

22

23

24

25

26

27

28

08876-00001/10988223.2