1  Ann McFarland Draper (Bar No. 065669)
   courts@draperlaw.net
2  Draper Law Offices
   75 Broadway, Suite 202
3  San Francisco, California 94111
   Telephone:     (415) 989-5620
4
   QUINN EMANUEL URQUHART & SULLIVAN, LLP
5  Kevin P.B. Johnson (Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Andrea Pallios Roberts (Bar No. 228128)
   andreaproberts@quinnemanuel.com
7  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, California 94065-2139
8  Telephone:     (650) 801-5000
   Facsimile:     (650) 801-5100
9
   Ed DeFranco (Bar No. 165596)
10 eddefranco@quinnemanuel.com
   51 Madison Avenue, 22nd Floor
11 New York, NY 10010
   Telephone:     (212) 849-7000
12 Facsimile:     (212) 849-7100
13 John E. Nathan (*Pro Hac Vice*)
   jnathan155@yahoo.com
14 John E. Nathan LLC
   1175 Park Avenue
15 New York, NY 10128
   Telephone:     (917) 960-1667
16
   *Attorneys for Defendants and Counterclaimants*
17

18                    **UNITED STATES DISTRICT COURT**

19        **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

20 TECHSHOP, INC., a California corporation,        CASE NO. 4:18-CV-01044-HSG (JCS)
   DORIS A. KAELIN, in her capacity as
21 Chapter 7 trustee for TECHSHOP, INC.,            **DEFENDANTS' AMENDED RENEWED
                                                    MOTION FOR JUDGMENT AS A
22              Plaintiff,                          MATTER OF LAW PURSUANT TO FED
                                                    R. CIV. P. 50(b)**
23        vs.

24 DAN RASURE, et al.,                             Jury Trial held June 3-11, 2019.
                                                    Judge: Haywood S. Gilliam, Jr.
25              Defendants.

26 ───────────────────────────────
   AND RELATED COUNTERCLAIMS
27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 7, 2019, pursuant to Fed. R. Civ. P. 50(b) Defendants will and hereby do renew their motion for judgment as a matter of law first made orally at the close of Plaintiffs' case on June 6, 2019 and supported by written briefing on June 10, 2019.  (Dkt. 207).  The judgment sought is dismissal with prejudice of the First Amended Complaint.  (Dkt. 45).  This renewed motion for judgment as a matter of law is made on the grounds that there was <u>no evidence</u> to support the jury's verdict that: (1) Defendants' use of "TechShop 2.0" infringed Plaintiff's TECHSHOP marks for more than two days—February 15 and 16, 2018; or (2) Defendants' use of "TheShop.build" infringed Plaintiff's registered word mark TECHSHOP.

This motion is based on this memorandum of points and authorities, the papers submitted in support of Defendants' prior motion (Dkt. 207), and the records of this Court, including those regarding the trial proceedings from June 3, 2019 through June 12, 2019.

Defendants respectfully request that the Court enter judgment as a matter of law that:  (1) Defendants' use of the name "TechShop 2.0" did not infringe Plaintiff's marks for more than two days (February 15-16, 2018); and (2) Defendants' use of the "TheShop.build" did not infringe Plaintiff's registered marks.  A proposed Order accompanies this motion.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

NOTICE OF MOTION AND MOTION ................................................................................ i

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

I.      NATURE OF PLAINTIFF'S CLAIMS ................................................................. 2

II.     STATUS OF THE PROCEEDINGS .................................................................... 2

III.    OVERVIEW OF EVIDENCE PRESENTED AT TRIAL .................................... 3

LEGAL STANDARD ........................................................................................................ 9

ARGUMENT .................................................................................................................... 11

I.      DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW
        THAT "TECHSHOP 2.0" DID NOT INFRINGE BEFORE FEBRUARY 14 OR
        AFTER FEBRUARY 16, 2018. ........................................................................... 11

        A.      Plaintiff Consented to Defendants' Use of "TechShop 2.0" Until at Least
                February 14, 2018. .................................................................................. 12

        B.      Defendants Did Not Use "TechShop 2.0" After February 16, 2018. ...... 14

II.     DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW
        THAT "THESHOP.BUILD" DOES NOT INFRINGE PLAINTIFF'S MARKS. .............. 16

        A.      Plaintiff Consented to Defendants' Use of "TheShop.build" ................... 16

        B.      The *Logo* for "TheShop.build" Cannot Infringe as a Matter of Law Because
                TECHSHOP Is Only Registered as a Word Mark. .................................. 17

        C.      There is No Evidence That "TheShop.build" *Name* Infringes ............... 18

                1.      Strength of Mark ......................................................................... 18

                2.      Proximity of Goods, Convergence of Marketing Channels, and
                        Likelihood of Expansion ............................................................. 19

                3.      Similarity of Marks ..................................................................... 20

                4.      Actual Confusion ......................................................................... 22

                5.      Customer Care ............................................................................. 23

                6.      Defendants' Intent ....................................................................... 24

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*555-1212.com, Inc. v. Commc'n House Int'l, Inc.*,
   157 F. Supp. 2d 1084 (N.D. Cal. 2001) ........................................................................ 15, 18

*Ace v. Aetna Life Ins. Co.*,
   139 F.3d 1241 (9th Cir. 1998) ........................................................................................... 9

*Am. Auto. Ass'n of N. California, Nevada & Utah v. Gen. Motors LLC*,
   367 F. Supp. 3d 1072 (N.D. Cal. 2019) ........................................................................... 16

*Am. DJ Supply Inc. v. Am. Lighting Inc.*,
   2013 WL 12123770 (C.D. Cal. May 2, 2013) ................................................................... 23

*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979), *abrogated in part on other grounds* ............................. 18, 20, 24

*Brighton Collectibles, Inc. v. Dynasty Designs, LLC*,
   2008 WL 11339960 (S.D. Cal. Sept. 10, 2008) ............................................................... 21

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ......................................................................................... 23

*Cargill Inc. v. Progressive Dairy Sols., Inc.*,
   2008 WL 4532436 (E.D. Cal. Oct. 8, 2008), *aff'd*, 362 F. App'x 731 (9th Cir. 2010) ............... 2

*Cieslikowski v. Chrysler*,
   2019 WL 978095 (C.D. Cal. Feb. 4, 2019) ....................................................................... 10

*Computer Access Tech. Corp. v. Catalyst Enterprises, Inc.*,
   273 F. Supp. 2d 1063 (N.D. Cal. 2003) ............................................................................ 10

*Cutting Edge Sols., LLC v. Sustainable Low Maint. Grass, LLC*,
   2014 WL 5361548 (N.D. Cal. Oct. 20, 2014) .................................................................... 23

*Falcon Stainless, Inc. v. Rino Companies, Inc.*,
   572 Fed.Appx. 483 (9th Cir. 2014) .................................................................................. 18

*Karoun Dairies Inc. v. Los Altos Food Prod. Inc.*,
   107 F. App'x 785 (9th Cir. 2004) ..................................................................................... 22

*Karoun Dairies, Inc. v. Karlacti, Inc.*,
   2012 WL 12846088 (S.D. Cal. Sept. 28, 2012) ................................................................ 15

*Kennedy v. Applause, Inc.*,
   90 F.3d 1477 (9th Cir. 1996) ...................................................................................... 10, 14

*Ketab Corp. v. Mesriani Law Grp.*,
   2016 WL 2902333 (C.D. Cal. May 18, 2016) ................................................................... 15

*Lakeside-Scott v. Multnomah Cty.*,
   556 F.3d 797 (9th Cir. 2009) ........................................................................................... 10

*Locomotor USA, Inc. v. Korus Co., Inc.*,
   46 F.3d 1142 (9th Cir. 1995) ....................................................................................... 17, 20

*M2 Software, Inc. v. Madacy Entm't*,
   421 F.3d 1073 (9th Cir. 2005) ......................................................................................... 19

*Mattel, Inc. v. MCA Records, Inc.*,
   28 F. Supp. 2d 1120 (C.D. Cal. 1998), *aff'd*, 296 F.3d 894 (9th Cir. 2002) ............................. 24

*Mattel, Inc. v. Walking Mountain Prods.*,
   353 F.3d 792 (9th Cir. 2003)................................................................................ 18

*Monster Cable Prods., Inc. v. Discovery Commc'ns, Inc.*,
   2004 WL 2445348 (N.D. Cal. Nov. 1, 2004)....................................................... 16

*Navcom Techonology, Inc. v. Oki Elec. Indus. Co.*,
   2017 WL 2617977 (N.D. Cal. June 16, 2017),
   *aff'd* 756 F. App'x 682 (9th Cir. 2018)................................................................. 9

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
   638 F.3d 1137 (9th Cir. 2011)............................................................................. 19

*Nutri/Sys., Inc. v. Con–Stan Indus., Inc.*,
   809 F.2d 601, 605 (9th Cir.1987)........................................................................ 18

*One Indus., LLC v. Jim O'Neal Distrib., Inc.*,
   578 F.3d 1154 (9th Cir. 2009)................................................................ 18, 20, 23

*Optimum Techs. Inc. v. Henkel Consumer Adhesives, Inc.*,
   496 F.3d 1231 (11th Cir. 2007)........................................................................... 15

*Pierce Cty. Hotel Employees & Rest. Emps. Health Trust v. Elks Lodge, B.P.O.E.*,
   No. 1450, 827 F.2d 1324 (9th Cir. 1987)............................................................. 2

*Pinterest, Inc. v. Pintrips, Inc.*,
   140 F. Supp.3d 997 (N.D. Cal. Oct. 21, 2015)................................................... 23

*Quality Semiconductor, Inc. v. QLogic Corp.*,
   1994 WL 409483 (N.D. Cal. May 13, 1994) ...................................................... 24

*Reserve Media, Inc. v. Efficient Frontiers, Inc.*,
   2017 WL 1377591 (C.D. Cal. April 14, 2017) ................................................... 22

*Tie Tech, Inc. v. Kinedyne Corp.*,
   296 F.3d 778 (9th Cir. 2002)............................................................................... 10

*Trovan Ltd. v. Pfizer Inc.*,
   107 F. App'x 788 (9th Cir. 2004)........................................................................ 23

*Venture Corp. v. Barrett*,
   2015 WL 8479475 (N.D. Cal. Dec. 9, 2015), *aff'd*, 694 F. App'x 597 (9th Cir. 2017) ........... 10

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002).................................................................... 10, 14

### Statutory Authorities

15 U.S.C. § 1114(1) .......................................................................... 12, 14, 16, 17

15 U.S.C. § 1114(1)(a) ................................................................................. 18, 24

### Rules and Regulations

Fed. R. Civ. P. 50(a)................................................................................... 3, 9, 10

Fed. R. Civ. P. 50(b)...................................................................................... 10, 11

Fed. R. Civ. P. 52(c) ................................................................................................... 10, 11

**PRELIMINARY STATEMENT**

Defendants Dan Rasure, TheShop.build, LLC, and TheShop.build San Francisco, LLC (collectively "Defendants") respectfully request that the Court grant judgment as a matter of law that they did not infringe Plaintiff's TECHSHOP word marks.  Specifically, Defendants seek judgment as a matter of law that any infringement by use of the name "TechShop 2.0" was for a de minimis period of time (no more than two days), and that "TheShop.build" did not infringe Plaintiff's registered marks.

First, Defendants are entitled to judgment as a matter of law that they did not infringe Plaintiff's word marks by using the name "TechShop 2.0" for more than two days—February 15 and 16, 2018.  The overwhelming contemporaneous documentary evidence introduced at trial, as well as the uniform trial testimony, established that Plaintiff consented to Defendants' use of the name "TechShop 2.0" until at least February 14, 2018.  In document after document, both parties used the name "TechShop 2.0" to refer to Defendants' business.  Plaintiff publicly announced its Memorandum of Understanding with Mr. Rasure and referred to his company as "TechShop 2.0." The earliest date on which Plaintiff voiced anything close to an objection to such use was February 14, 2018.  The evidence showed that Defendants changed their name to TheShop.build two days later—on February 16, 2018.  Thus, no reasonable jury could find that Defendants infringed Plaintiff's marks by using the name "TechShop 2.0" before February 14 (when Plaintiff consented to such use) or after February 16 (when Defendants were no longer using that name).

Second, Defendants are entitled to judgment as a matter of law that "TheShop.build" does not infringe Plaintiff's word marks.  Defendants did not infringe by using a gear logo for "TheShop.build" or by using the name "TheShop.build."  Plaintiff sued only for infringement of its federal trademark registration, but Plaintiff does not have a registered trademark in its logo that features a gear for the letter "o" in "shop."  Thus, Plaintiff's evidence regarding Defendants' use of a logo featuring a gear is irrelevant.  In any event, the unrebutted evidence at trial showed that Defendants used a gear logo for no more than three days—February 19, 20, and 21, 2018. Further, Plaintiff presented no evidence of likelihood of confusion based on Defendants' use of the

1  name "TheShop.build."  Thus, no reasonable jury could find that the "TheShop.build" infringed

2  Plaintiff's registered marks.

### STATEMENT OF FACTS

3

### I.   NATURE OF PLAINTIFF'S CLAIMS

4

5      This is a trademark infringement action.[1]  Plaintiff alleges federal trademark infringement.[2]

6  Plaintiff's claim is based on Defendants' alleged unauthorized use of Plaintiff's service marks for

7  the word TECHSHOP, which were registered with the U.S. Patent and Trademark Office.

8  (TX0351, TX0352).  Defendants answered and denied infringement.  (Dkt. 50).  Defendants

9  sought dismissal of the action, cancellation of Plaintiff's trademark registrations, and an award of

10  attorneys' fees and costs.  (*Id.*; Dkt. 42).  Defendant Dan Rasure counterclaimed alleging a fraud

11  cause of action. (Dkt. 42).  Only Plaintiff's federal trademark infringement claims are the subject

12  of this Rule 50(b) motion.

### II.   STATUS OF THE PROCEEDINGS

13

14      Trial before a jury commenced on June 3, 2019.  Over a period of four days, Plaintiff

15  presented the testimony of five witnesses:  James Newton (Plaintiff's founder and former

16  director), Daniel Woods (Plaintiff's former CEO), Douglas Busch (Plaintiff's former outside

17  director and investor), Dr. Eric Matolo (Plaintiffs' damages expert), and Ryan Spurlock (the

18

19      [1]   While the marks at issue in this case are technically service marks, the parties have
20  repeatedly referred to them as "trademarks."

21      [2]   Although Plaintiff's First Amended Complaint alleged three causes of action—(1) federal
   trademark infringement, (2) contributory trademark infringement, and (3) vicarious trademark
22  infringement (Dkt. 45)—the last two causes of action have been waived and should be dismissed.
   Plaintiff did not include allegations related to contributory trademark infringement or vicarious
23  trademark infringement in either the Joint Pretrial Statement (Dkt. 155), the Proposed Jury
   Instructions (Dkt. 152), or its Proposed Verdict Form. (Dkt. 154).  And, without objection from
24  Plaintiff, the latter two causes of action were not included in the final verdict form provided to the
   jury by the Court.  Consequently, these two causes of action are waived.  *See Pierce Cty. Hotel*
25  *Employees & Rest. Emps. Health Trust v. Elks Lodge, B.P.O.E. No. 1450,* 827 F.2d 1324, 1329
   (9th Cir. 1987) ("Issues not preserved in the pretrial order are eliminated from the action.");
26  *Cargill Inc. v. Progressive Dairy Sols., Inc.,* 2008 WL 4532436, at *4 (E.D. Cal. Oct. 8, 2008),
27  *aff'd,* 362 F. App'x 731 (9th Cir. 2010) (finding waiver where plaintiff "failed to raise th[e] issue
   in the Pretrial Statement, in motions in limine, at any time during the trial, or at any time during
28  the process of preparing jury instructions and the verdict form").

1   former General Manager of Plaintiff's San Francisco store).  On June 6, Plaintiff rested its case.

2   Defendants then orally moved for judgment as a matter of law under Rule 50(a) and stated the

3   grounds for the motion on the record.  With leave from the Court, Defendants filed their written

4   motion for judgment as a matter of law under Rule 50(a) on June 10.  Dkt. 207.  The Court

5   reserved decision on the motion.  (Trial Tr. Vol. 7 at 1040).

6       On June 6, 7 and 10, Defendants presented the testimony of four witnesses: James Newton

7   (recalled following the close of Plaintiff's case), Dan Rasure (named Defendant and founder of

8   Defendants TheShop.build and TheShop.build SF), Jeremiah Johnson (contract CFO of

9   TheShop.build), and Mark Bünger (an expert on brand value in makerspaces).  On June 12, the

10  jury returned a verdict finding that Defendants' use of both "TechShop 2.0" and "The Shop.build"

11  infringed Plaintiff's marks, and that such infringement was willful, but awarded no damages to

12  Plaintiff.  Dkt. 217.  The jury determined that Plaintiff suffered $0 in lost licensing revenue as a

13  result of the infringement, and that the Plaintiff should be awarded $0 in Defendants' profits.

14      Defendants respectfully maintain that the evidence presented at trial does not support the

15  jury's verdict as to infringement.  Plaintiff presented <u>no evidence</u> that Defendants used the name

16  "TechShop 2.0" without Plaintiff's consent before February 14, 2018 or after February 16, 2018.

17  Plaintiff presented <u>no evidence</u> that Defendants used a gear logo with the name "TheShop.build"

18  before February 19, 2018 or after February 21, 2018.  And, Plaintiff presented <u>no evidence</u> that

19  Defendants used the name "TheShop.build" in a manner likely to cause confusion.[3]

20  III.   <u>OVERVIEW OF EVIDENCE PRESENTED AT TRIAL</u>

21      Plaintiff was founded in 2006 to provide a "makerspace" where members of the public

22  could join and use tools to build projects.  (TX0028 at DR003067).  Starting with a single location

23  in Menlo Park, Plaintiff expanded and ultimately operated makerspaces in ten locations around the

24  United States.  (TX0028 at DR003063).  Plaintiff then ran into serious financial difficulty.  (*See,*

25  *e.g.* TX0306 [TechShop Board Resolution, dated 11/20/2016, stating, "The financial status of

26  TechShop, Inc., as of this date, and the stated position of TechShop, Inc. creditors regarding past

27  ———————————————

28      [3] Defendants raised equitable defenses to Plaintiff's infringement claim, which have not yet
    been decided.

DEFENDANTS' AMENDED RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

1   due obligations, will result in severe financial damage to TechShop in early January, and likely

2   result in it not being able to continue operation"].  On November 15, 2017, Plaintiff abruptly

3   closed the doors of all of its U.S. makerspaces, as well as its corporate offices.  (Trial Tr. Vol. 2 at

4   125, 211-212.)  Plaintiff filed for Chapter 7 bankruptcy on February 26, 2018.  (Dkt. 45, ¶ 9).

5   Plaintiff never reopened any of its U.S. makerspaces and presented no evidence that it intends to

6   do so.  (Trial Tr. Vol. 2 at 211-212.)

7           Shortly after Plaintiff closed its U.S. locations, Defendant Dan Rasure approached Plaintiff

8   to propose purchasing TechShop.  (TX0032 [Rasure 11/17/2017 email]; Trial Tr. Vol. 2 at 126,

9   Vol. 4 at 667-668.)  The parties executed a Memorandum of Understanding ("MOU") for the

10  purchase of TechShop's assets, which was executed by Mr. Rasure and Plaintiff's then-CEO, Dan

11  Woods.  (TX0610 [Memorandum of Understanding ("MOU"), executed 12/01/2017] TX48; Trial

12  Tr. Vol. 2 at 219, Vol. 4 at 680-681.)  In the MOU, Mr. Rasure's company was called "TechShop

13  2.0."  (TX610; TX48; Trial Tr. Vol. 2 at 220, Vol. 4 at 680-681.)  Both parties—Mr. Rasure and

14  TechShop—had been referring to Mr. Rasure's company as "TechShop 2.0" in the negotiations

15  that led up to the execution of the MOU.  (TX0596 [11/29/2017 email from Woods to Louise

16  Larson, TechShop's Director of Marketing, using the name TechShop 2.0]; TX0597 [11/29/2017

17  email from Woods welcoming comments on public announcement regarding the execution of the

18  MOU, using the name TechShop 2.0]; TX0921 [11/2017 email chain between Rasure and

19  TechShop using the name TechShop 2.0]; TX0603 [11/2017 email chain between Rasure and

20  TechShop using the name TechShop 2.0]; TX598; TX600; TX602; TX611; Trial Tr. Vol. 2 at

21  220-225, Vol. 3 at 331-337, 462-464, Vol. 4 at 676-680.)

22          After execution of the MOU, both parties announced the deal publicly.  In those

23  announcements, both parties identified Mr. Rasure's company as "TechShop 2.0."  Plaintiff

24  announced the deal on Facebook, Instagram, and Twitter.  (TX501 [12/01/2017 TechShop Inc.

25  Facebook post regarding the MOU, using the name TechShop 2.0]; TX0505 [12/01/2017

26  TechShop Brooklyn Facebook post regarding the MOU, using the name TechShop 2.0]; TX0527

27  [TechShop Austin Twitter tweet post regarding the MOU, using the name TechShop 2.0]; TX0528

28  [TechShop Instagram post regarding the MOU, using the name TechShop 2.0]; TX0530

[TechShop Instagram post regarding the MOU, using the name TechShop 2.0]; Trial Tr. Vol. 3 at 342-346, Vol. 4 at 682-684, .)  In each of those announcements, TechShop referred to Mr. Rasure's company as "TechShop 2.0."  (*Id.*)  TechShop's then-CEO also sent an email to everyone@techshop.ws announcing the deal, and referring to Mr. Rasure's company as "TechShop 2.0."  (TX0611 [12/01/2017 email forwarding announcement regarding the MOU, using the name TechShop 2.0]; Trial Tr. Vol. 3 at 337-338-339, Vol. 4 at 681.)  Defendants also issued a press release announcing that "TechShop 2.0" was a "new company," and referring to "TechShop" as the "previous company" (TX-614; Trial Tr. Vol. 3 at 345-346, Vol. 4 at 686-687).  Mr. Rasure gave an interview referring to the "new entity we formed to buy the assets of TechShop" (TX-67).

Following execution of the MOU, both parties continued to refer to Mr. Rasure's company as "TechShop 2.0," both in the course of the negotiations and in communications with third parties.  (TX0613 [12/03/2017 email from Woods to Rasure and Robert Thomas, using the name TechShop 2.0]; TX0615 [12/03/2017 email from Woods to Rasure and TechShop using the name TechShop 2.0]; TX0616 [12/03/2017 email from Busch to Rasure using the name TechShop 2.0]; TX0612 [12/03/2017 email from Busch to Rasure regarding the open letter to stakeholders using the name TechShop 2.0]; TX0753 [12/3/2017 announcement email from Woods regarding the MOU, using the name TechShop 2.0]; TX0619 [12/04/2017 email from Lara Croushore to Rasure forwarding the public announcement regarding the MOU, using the name TechShop 2.0]; TX0617 [12/04/2017 email from Newton to Rasure and third party using the name TechShop 2.0];TX0906 [12/2017 email chain between Rasure and TechShop using the name TechShop 2.0]; Trial Tr. Vol. 2 at 227-230, Vol. 3 at 340-342, 346-350, 464-467, Vo. 4 at 684-687.)  For example, Mr. Busch circulated to Mr. Rasure and TechShop's negotiating team an open letter to stakeholders.  (TX612; Trial Tr. Vol. 2 at 227-229, Vol. 3 at 465-467.)  In his email, Mr. Busch said he would be posting the letter "on various relevant social media sites" later that day, and that he "expect[ed] this will be widely disseminated."  (*Id.*)  In that open letter to stakeholders that would be "widely disseminated," Mr. Busch referred to Mr. Rasure's company as "TechShop 2.0."  (TX612 at DR00702; Trial Tr. Vol. 3 at 465-467.)  And, Mr. Woods and Mr. Newton called Mr. Rasure's

1  company "TechShop 2.0" in correspondence to third parties.  (TX619; TX617; Trial Tr. Vol. 2 at

2  229-230, Vol. 3 at 341-342.)  On December 6, 2017, TechShop sent Mr. Rasure a draft acquisition

3  agreement.  (TX0622 [12/06/2017 email from Woods to Rasure using the name TechShop 2.0];

4  Trial Tr. Vol. 3 at 350-351, Vol. 4 at 687-688.)  In the draft agreement, Mr. Rasure's company

5  was called "TechShop 2.0."

6       On December 12, 2017, TechShop advised Mr. Rasure that it was unilaterally and

7  prematurely terminating the MOU.  (TX0919 [12/12/2017 email correspondence between Rasure,

8  TechShop, and Tonkon Torp LLP, using the name TechShop 2.0]; TX627; Trial Tr. Vol. 3 at351-

9  352, Vol. 4 at 690-691.)  In that correspondence from TechShop's outside counsel, Mr. Rasure's

10  company is referred to as "TechShop 2.0."  (*Id.*)  TechShop's attorney did not tell Mr. Rasure to

11  stop using the name "TechShop 2.0."  (*Id.*)

12       The evidence at trial showed that TechShop continued to negotiate with Mr. Rasure and his

13  company after terminating the MOU, and did so for another two months.  (TX0652 [Rasure

14  02/15/2018 email to TechShop]).  In the course of those continued negotiations, both Mr. Rasure

15  and TechShop referred to Mr. Rasure's company as "TechShop 2.0."  (TX0634 [01/07/2018 email

16  from Rasure to Woods and Busch using the name TechShop 2.0]; TX0635 [01/08/2018 email

17  from Woods to Rasure using the name TechShop 2.0]; TX0636 [01/13/2018 email from Woods to

18  Rasure using the name TechShop 2.0]; TX0639 [01/31/2018 email from Rasure to TechShop

19  using the name TechShop 2.0]; TX0644 [02/01/2018 email from Rasure to TechShop containing

20  rental agreement using the name TechShop 2.0]; TX0645 [02/01/2018 email from Woods to

21  Rasure using the name TechShop 2.0]; TX0646 [02/02/2018 email from Rasure to TechShop

22  using the name TechShop 2.0]; TX66; Trial Tr. Vol. 2 at 235-243, Vol. 3 at 352-358, 469- Vol. 4

23  at 696-703.)  TechShop even continued to refer to Mr. Rasure's company as "TechShop 2.0" in

24  correspondence with third parties and government entities.  (TX0642 [01/31/2018 email from

25  Woods to Ryan Lloyd using the name TechShop 2.0]; TX0896 [02/13/2018 email from Woods to

26  various third parties using the name TechShop 2.0]; TX0566 [copy of Facebook post by Woods

27  using the name TechShop 2.0]; Trial Tr. Vol. 3 at 355-357, 360-361, 365-367, Vol. 4 at 698-699.)

28  For example, on January 31, 2018, Mr. Woods called Mr. Rasure's company "TechShop 2.0" in

1   an email to Ryan Lloyd of Williamson County, Texas, when authorizing Mr. Rasure to pay

2   $11,423.19 of TechShop back taxes.  (TX0642 [01/31/2018 email from Woods to Ryan Lloyd

3   using the name TechShop 2.0]; Trial Tr. Vol. 3 355-357.)

4          Plaintiff presented <u>no evidence</u> at trial showing any objection from Plaintiff to Mr.

5   Rasure's company using the name "TechShop 2.0" from late November 2017 through February

6   14, 2018.  Rather, in that time period, TechShop did <u>not</u> object to Mr. Rasure's use of the name

7   "TechShop 2.0."  (Trial Tr. Vol. 4 at 738-740..)  Plaintiff's witnesses contended that TechShop did

8   not consent to Mr. Rasure's use of the name "TechShop 2.0" for the purpose of opening a

9   makerspace unless he finalized a deal with TechShop, and also claimed that TechShop only

10  consented to Mr. Rasure's use of the name "TechShop 2.0" for the purpose of the negotiations.

11  (Trial Tr. Vol. 3 at301, 443.)  Plaintiff, however, presented <u>no documentary evidence</u> to support

12  this testimony.

13         On February 12, 2018, Defendants announced that they would be opening a makerspace in

14  San Francisco on February 19 called "TechShop 2.0."  Plaintiff sent Mr. Rasure a letter dated

15  February 14, 2018 which Plaintiff contends is a cease and desist letter directed to Defendants' use

16  of "TechShop 2.0."  (TX0029, TX0334-35 [letter from TechShop, dated 02/14/2018 ]).  That letter

17  says that Mr. Rasure does not have the right to use TechShop's trademarks (among other things),

18  but does not say that TechShop contends use of the name "TechShop 2.0" infringes TechShop's

19  trademarks, or tell Mr. Rasure to cease and desist using that name.  (*Id.*; Trial Tr. Vol. 2 at 244-

20  246, Vol. 3 at 363-364.)

21         Subsequent documents confirm that the February 14 letter was not a cease and desist letter

22  for "Techshop 2.0."  On February 15, Mr. Rasure continued his work on the acquisition and wrote

23  Plaintiff's officers and directors that it was a "great day."  (TX0652; Trial Tr. Vol. 3 at 364-365.)

24  And on the morning of February 16, Mr. Rasure sent Plaintiff's largest creditor Autodesk a

25  proposal that would be part of the deal.    (TX0653; Trial Tr. Vol. 5 at 733-735.)

26         Although Defendants dispute that the February 14, 2018 letter was a cease and desist letter,

27  in the end this matters little.  The February 14 letter was quickly superseded by what transpired

28  during the evening of Friday, February 16.  At 7:21 that night, Plaintiff's counsel emailed Mr.

DEFENDANTS' AMENDED RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

1   Rasure.  (TX0083, TX0656 [Plaintiff's counsel's email to Rasure, dated 02/16/2018]; Trial Tr.

2   Vol. 5 at 737-738.)  The email attached a cease-and-desist letter demanding that Mr. Rasure and

3   his companies stop using the TechShop 2.0 name.  (*Id.*)  The email also attached a copy of a

4   Complaint for trademark infringement filed in this Court earlier that day against Mr. Rasure and

5   his companies TechShop 2.0 LLC and TechShop 2.0 San Francisco LLC.  (*Id.*)  That original

6   Complaint (Dkt. 1) alleged the same federal trademark infringement claim set forth in Plaintiff's

7   First Amended Complaint (Dkt. 45).

8        The original Complaint identified only one allegedly unauthorized use of the mark

9   TECHSHOP:  Defendants' use of the name TechShop 2.0.  (Dkt. 1, ¶¶ 21-27.)  Within a matter of

10   hours after receiving the February 16 email, Defendants changed their name to TheShop.build.

11   (Trial Tr. Vol. 5 at741-745, 891.)  Even though it was a holiday weekend, Defendants worked to

12   change the name on everything as quickly as they could.  (*Id.*)  Mr. Rasure testified that he took

13   down the sign outside of the building that night, and took steps to change the name on the website.

14   (Trial Tr. TX001 [2/16/18 text message between Rasure and Jerry Gable]; TX1159 [2/16/18

15   photo].)  There were some things that took a little more time to switch over, but he worked to

16   change everything as quickly as possible.  (*Id.*)  At least as of February 17, 2018, the day after the

17   original Complaint was filed, Plaintiff's CEO Woods was aware of Defendants' name change.

18   (TX 321 [02/17/2018 Woods email with subject line "comment for name change (techshop is now

19   TheShop.Build)"]).  He voiced no objection to the new name.  (*Id.*)  On February 19, Defendants

20   opened TheShop.build.  (Trial Tr. Vol. 5 at 741.)  Defendants never opened a business with the

21   name "TechShop 2.0."  (Trial Tr. Vol. 5 at 741-745.)

22        There was testimony at trial that Plaintiff used its word marks in a blue and red logo that

23   used a gear.  (Trial Tr. Vol. 1 at 81-82; TX377.)  Plaintiff's service mark registrations do not cover

24   this logo or any particular colors.  (TX351; TX352.)  Both registrations provide that "the mark

25   consists of standard characters without claim to any particular font, style, size or color."  (*Id.*)

26   There was further testimony that, for a brief period of time, Defendants used a logo for

27   TheShop.build that was blue and red and used a gear.  (Trial Tr. Vol. 2 at 200-201; TX330.)  But,

28   Mr. Rasure testified that the gear logo for TheShop.build was only used from February 19-21,

2018, and that he voluntarily stopped using it, unprompted by any objection by Techshop.  (Trial Tr. Vol. 5 at 748-750; TX290.)  His testimony that this logo was not ever used after February 21, 2018 was unrebutted.  (*Id.*)  The unrebutted testimony also established that since March 2018, TheShop.build has used a different logo with different colors and without a gear that looks nothing like Plaintiff's unregistered gear logo:



(Trial Tr. Vol. 5 at 749-750; TX290 at DR056070.)

Defendants have operated TheShop.build since opening on February 19, 2018.  Defendants opened a second location in San Jose in August 2018 under the name TheShop.build.  (Trial Tr. Vol. 5 at  750.)  TheShop.build is nowhere mentioned in Plaintiff's First Amended Complaint, which was filed on August 13, 2018, six months after Defendants changed their name.  (Dkt. 45).  Official records in this case show that Plaintiff never objected to that new name until November 23, 2018, nine months after the original Complaint was filed and Defendants changed their name.  (Dkt. 128-7 [Supplemental Response to Int. 2 at p. 5, line 6]).  Mr. Rasure confirmed in his trial testimony that TechShop did not advise him that it contended TheShop.build to be infringing until November 2018.  (Trial Tr. Vol. 5 at 750-752.)

## LEGAL STANDARD

Rule 50(a) provides:

> (1) *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> (A) resolve the issue against the party; and
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

As the language of the rule suggests, the Court may grant partial judgment as a matter of law on any issue.  *See, e.g., Ace v. Aetna Life Ins. Co.,* 139 F.3d 1241, 1248 (9th Cir. 1998); *Navcom Techonology, Inc. v. Oki Elec. Indus. Co.,* 2017 WL 2617977, at *6 (N.D. Cal. June 16, 2017), *aff'd* 756 F. App'x 682 (9th Cir. 2018).

DEFENDANTS' AMENDED RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

1    Rule 50(b) further provides that a party may renew a Rule 50(a) motion within 28 days

2  after the entry of a final judgment[4], and the Court may "(1) allow judgment on the verdict, if the

3  jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of

4  law."

5    "Overall, the plaintiff retains the ultimate burden of persuasion in a trademark

6  infringement action, namely proof of infringement."  *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d

7  778, 783 (9th Cir. 2002).  The standard for a renewed motion for judgment as a matter of law

8  under Rule 50(b) is the same as the standard for summary judgment: the Court "view[s] the

9  evidence in the light most favorable to the party in whose favor the jury returned a verdict and

10  draw[s] all reasonable inferences in her favor."  *Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797,

11  802 (9th Cir. 2009); *see also Computer Access Tech. Corp. v. Catalyst Enterprises, Inc.*, 273 F.

12  Supp. 2d 1063, 1066 (N.D. Cal. 2003) ("Motions for judgment as a matter of law in jury trials are

13  governed under the same standard as summary judgment motions, albeit at a later stage of the

14  proceeding.").  However, reasonable inferences "cannot be supported by only threadbare

15  conclusory statements instead of significant probative evidence," and thus "JMOL is appropriate

16  when the jury could have relied only on speculation to reach its verdict."  *Id.*; *see also*

17  *Cieslikowski v. Chrysler*, 2019 WL 978095, at *5 (C.D. Cal. Feb. 4, 2019) (granting JMOL where

18  the jury had "no reasonable basis" to support its findings); *Venture Corp. v. Barrett*, 2015 WL

19  8479475, at *4 (N.D. Cal. Dec. 9, 2015), *aff'd*, 694 F. App'x 597 (9th Cir. 2017) (same).

20  Similarly, "uncorroborated and self-serving testimony" is insufficient to avoid judgment as a

21  matter of law, especially when it is directly contradicted by other evidence in the record.  *See*

22  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("this court has refused

23  to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving'

24  testimony."); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) (affirming grant of

25  summary judgment for the defendant where only evidence submitted by plaintiff was

26

27    [4] Defendants respectfully submit that the Court should not have entered Final Judgment as it
did on June 26, 2019 (Dkt. 223) because Defendants also have equitable defenses that have not yet
28  been heard, and which are being presented in simultaneous briefing.

1   "uncorroborated and self-serving" deposition testimony that "flatly contradicts her prior sworn

2   statements and the medical evidence.").

3          As set forth below, there was <u>no evidence</u> presented at trial that (1) the use of "TechShop

4   2.0" infringed Plaintiffs' marks before February 14, 2018 or after February 16, 2018; (2) the use of

5   "TheShop.build" gear logo infringed Plaintiff's marks before February 19, 2018 or after February

6   21, 2018, or (3) the use of the name "TheShop.build" infringed on Plaintiffs' marks <u>at all</u>.  Thus,

7   the jury could not have found infringement without speculation, and the Court should enter

8   judgment as a matter of law under Rule 50(b) against Plaintiff on its First Cause of Action of the

9   First Amended Complaint.[5]  (Dkt. 45, pp. 6-7).

10                                        <u>**ARGUMENT**</u>

11  **I.**     <u>**DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW**</u>
            <u>**THAT "TECHSHOP 2.0" DID NOT INFRINGE BEFORE FEBRUARY 14 OR**</u>
12          <u>**AFTER FEBRUARY 16, 2018.**</u>

13          This Court should enter judgment as a matter of law that Defendants did not infringe

14  Plaintiff's marks by using the name "TechShop 2.0" before February 14, 2018 or after February

15  16, 2018.  The jury could not have found Defendants' use of "TechShop 2.0" infringed on

16  Plaintiff's marks for more than these two days—February 15 and 16, 2018—without speculation.

17  The documentary evidence conclusively established that Plaintiff consented to Defendants' use of

18  the name "TechShop 2.0" until at least February 14, 2018, and Plaintiff offered <u>no evidence</u> to the

19  contrary.  And there was <u>no evidence</u> that Defendants used "TechShop 2.0" after they changed

20  their name to "TheShop.build" on February 16, 2018.  These two facts, taken together, show that

21  Plaintiff failed to show infringement by "TechShop 2.0" other than for two days.  Without such

22  evidence, a reasonable jury does not have a legally sufficient evidentiary basis to find that Plaintiff

23  proved its trademark infringement claims against Defendants as to their use of "TechShop 2.0"

24  beyond that two-day period.

25

26

27  _____

28      [5]  As noted *supra* n. 2, Plaintiff's Second and Third Causes of Action have been eliminated
        from the case.

A.  **Plaintiff Consented to Defendants' Use of "TechShop 2.0" Until at Least February 14, 2018.**

The evidence affirmatively established that Plaintiff consented to Defendants' use of the name "TechShop 2.0" until at least February 14, 2018, which defeats its claims that Defendants' use of that name constituted infringement through that date.  Infringement of a registered trademark is governed by 15 U.S.C. § 1114(1), which only prohibits use of a trademark "without the consent of the registrant:"

> (1) Any person who shall, **without the consent of the registrant**—
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; …
> shall be liable in a civil action by the registrant for the remedies hereinafter provided. …

(emphasis added).

The trial evidence established that both Defendants and Plaintiff used the name "TechShop 2.0" to refer to Defendants in the period between November 17, 2017 through February 14, 2018. *See supra* at 4-6.  Plaintiff itself referred to Mr. Rasure's company as "TechShop 2.0" in the parties' negotiations, in public announcements, and in communications with third parties.  (*Id.*) Defendants introduced mountains of documentary evidence, and adduced unrebutted confirming testimony from Messrs. Newton, Woods and Rasure, showing Plaintiff's consent to Defendants' use of the name "TechShop 2.0."

Plaintiff introduced <u>no evidence</u>—no testimony and not a single document—showing that it ever objected to the "TechShop 2.0" name during that entire time period.  Nor could it do so; Plaintiff never objected to Defendants' use of the name "TechShop 2.0" prior to February 14, 2018.  (Trial Tr. Vol. 5 at 738-740.)  Viewed in the light most favorable to Plaintiff, the first time

1    Plaintiff objected to "TechShop 2.0" was on February 14, two days before it filed suit.[6]  (TX0650

2    [02/14/2018 email from Woods to Rasure attaching letter using the name TechShop 2.0]).

3        At trial, Plaintiff's witnesses claimed that TechShop consented to Mr. Rasure's use of the

4    name "TechShop 2.0" only for use in negotiations with TechShop, and that Plaintiff did not

5    consent to Mr. Rasure using that name to open a makerspace unless it was in connection with

6    entering into a deal with TechShop.  Plaintiff, however, presented <u>no documentary evidence</u>

7    supporting this testimony.  In fact, these claims are squarely refuted by the contemporaneous

8    documentary evidence showing Plaintiff used the name "TechShop 2.0" to refer to Mr. Rasure's

9    company outside the context of the negotiations, such as in public announcements and emails with

10   third parties.  (*See*, *e.g.*, TX0597 [11/29/2017 email from Woods welcoming comments on public

11   announcement regarding the execution of the MOU, using the name TechShop 2.0]; TX0611

12   [12/01/2017 email from Elizabeth Bobek to Rasure forwarding the public announcement regarding

13   the MOU, using the name TechShop 2.0]; TX0767 [12/01/2017 email from Woods to

14   johnhuntdesign@gmail.com forwarding the public announcement regarding the MOU, using the

15   name TechShop 2.0]; TX0753 [public announcement regarding the MOU, using the name

16   TechShop 2.0]; TX0619 [12/04/2017 email from Lara Croushore to Rasure forwarding the public

17   announcement regarding the MOU, using the name TechShop 2.0]; TX501 [12/01/2017 TechShop

18   Inc. Facebook post regarding the MOU, using the name TechShop 2.0]; TX0505 [12/01/2017

19   TechShop Brooklyn Facebook post regarding the MOU, using the name TechShop 2.0]; TX0527

20   [TechShop Austin Twitter tweet post regarding the MOU, using the name TechShop 2.0]; TX0528

21   [TechShop Instagram post regarding the MOU, using the name TechShop 2.0]; TX0530

22   [TechShop Instagram post regarding the MOU, using the name TechShop 2.0]; TX0614

23   [12/03/2017 email from Rasure to Forbes using the name TechShop 2.0]; TX0642 [01/31/2018

24   email from Woods to Ryan Lloyd using the name TechShop 2.0]; TX0647 [02/07/2018 email

25   from Woods to Rasure regarding the status of the parties' negotiations, does not object to the use

26

27   ───────────────

     [6]  The February 14 letter did not actually state that Mr. Rasure did not have the right to use the
28   name "TechShop 2.0" or that the name infringed on Plaintiffs' mark.  (TX0650; Trial Tr. Vol. 3 at
     363-364).

of the name TechShop 2.0]; TX0566 [copy of Facebook post by Woods using the name TechShop 2.0]; TX0921 [11/2017 email chain between Rasure and TechShop regarding public messaging using the name TechShop 2.0]; TX0612 [12/03/2017 email from Busch to Rasure regarding the open letter to stakeholders using the name TechShop 2.0]; TX0050 [12/03/2017 press release announcing TechShop acquisition, using the name TechShop 2.0]; TX0617 [12/04/2017 email from Newton to Rasure and third party using the name TechShop 2.0]; TX0616 [12/03/2017 email from Busch to Rasure using the name TechShop 2.0]; TX0081 [02/13/2018 email from Woods to third parties using the name TechShop 2.0]; Trial Tr. Vol. 2 at 220-230, 248-249, Vol. 3 at 332-346, 356-361, 464-467,  Vol. 4 at 676, 681-685.)  Plaintiff's witnesses' self-serving testimony that is directly contradicted by the contemporaneous record does not defeat judgment as a matter of law.  *See Villiarimo*, 281 F.3d at 1061 ("this court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."); *Kennedy*, 90 F.3d at 148 (affirming grant of summary judgment for the defendant where only evidence submitted by plaintiff was "uncorroborated and self-serving" deposition testimony that "flatly contradicts her prior sworn statements and the medical evidence.").

Given the undisputed documentary evidence and trial testimony of Plaintiff's consent until at least February 14, 2018, and the clear language of 15 U.S.C. § 1114(1) that it does not cover activities undertaken with consent of the trademark owner, Defendants are entitled to judgment as a matter of law that their use of the name "TechShop 2.0" through February 14, 2018 did not infringe Plaintiff's marks.

**B.      Defendants Did Not Use "TechShop 2.0" After February 16, 2018.**

The evidence established that, after receiving a cease and desist letter on February 16, 2018 and notice that Plaintiff filed the present lawsuit, Mr. Rasure promptly took steps to change the name of his company from "TechShop 2.0" to "TheShop.build."  Within hours of receiving Plaintiff's counsel's February 16 email, Defendants changed their name to "TheShop.build." (Trial Tr. Vol. 5 at 741-745.)  Defendants worked to change the name on everything as quickly as they could.  (Trial Tr. Vol. 5 at 745.)  Mr. Rasure took down the sign outside of the building that night, and took steps to change the website.  (Trial Tr. Vol. 5 at 743-747; TX001 [2/16/18 text

1    message between Rasure and Jerry Gable]; TX1159 [2/16/18 photo].)  Although Mr. Rasure

2    testified that there were some things that took a little more time to switch over and Defendants ran

3    into some technical difficulties, Defendants worked to change everything as quickly as possible.

4    (Trial Tr. Vol. 5 at 745.)  It is reasonable to expect Defendants would need some time to

5    implement a new business name, and Defendants did so as quickly as possible.  As of February

6    17, 2018, the day after the Complaint was filed, Plaintiff's CEO knew of the name change.  (TX

7    321 [02/17/2018 Woods email with subject line "comment for name change (techshop is now

8    TheShop.Build)"]).  On February 19, Defendants opened their business under the name

9    "TheShop.build."  (Trial Tr. Vol. 5 at 740-742.)  Defendants <u>never</u> offered any makerspace

10   services to customers under the name "TechShop 2.0."  (Trial Tr. Vol. 5 at 740-741, 799.)

11       Plaintiff did not present any evidence of Defendants' use of "TechShop 2.0" after February

12   16, 2018.  Without evidence of such use, no reasonable jury could find that Plaintiff proved

13   Defendants infringed its marks by using the name "TechShop 2.0" after February 16, 2018.[7]  *See*

14   *Optimum Techs. Inc. v. Henkel Consumer Adhesives, Inc*., 496 F.3d 1231, 1242-44 (11th Cir.

15   2007) (affirming summary judgment based on evidence that defendant "ceased its 'use in

16   commerce' and plaintiff offered "*no evidence* that [the defendant] ever sold its [allegedly

17   infringing] product with the [allegedly infringing mark] affixed to it." (emphasis original))");

18   *Ketab Corp. v. Mesriani Law Grp.*, 2016 WL 2902333, at *5 (C.D. Cal. May 18, 2016) (granting

19   Rule 52(c) motion for judgment as a matter of law where "Plaintiff failed to present any evidence

20   showing that [defendants] used [plaintiff's mark]"); *Karoun Dairies, Inc. v. Karlacti, Inc.*, 2012

21   WL 12846088, at *5 (S.D. Cal. Sept. 28, 2012) (granting summary judgment where plaintiff

22   "failed to demonstrate requisite use by Defendants of the . . . mark as necessary to establish the

23   prima facie elements of any of its [Lanham Act] claims"); *555-1212.com, Inc. v. Commc'n House*

24

---

25       [7] The evidence that Plaintiff presented to show purported use of "TechShop 2.0" after
     February 16, 2018 was almost entirely evidence of vendors or customers calling Defendants
26   "TechShop 2.0," not Defendants using that name (TX-90-91, TX-94, TX-100, TX-141, TX-187,
     TX-268), or carryovers in the first couple of weeks after the name change (TX-148, TX-150, TX-
27   152.)  Plaintiff also pointed Mr. Rasure to an email referencing a "TechShop 2.0 San Jose"
     Facebook page, which Mr. Rasure explained was a page that was not affiliated with him.  (TX-
28   193; Trial Tr. Vol. 5 at 888-889.)

1   *Int'l, Inc.*, 157 F. Supp. 2d 1084, 1092 (N.D. Cal. 2001) (granting summary judgment in part

2   because plaintiff failed to show the defendant used the alleged infringing mark in commerce);

3   *Monster Cable Prods., Inc. v. Discovery Commc'ns, Inc.*, 2004 WL 2445348, at *7 (N.D. Cal.

4   Nov. 1, 2004) (granting summary judgment where plaintiff did not prove that defendant used

5   plaintiff's mark in plaintiff's market); *Am. Auto. Ass'n of N. California, Nevada & Utah v. Gen.*

6   *Motors LLC*, 367 F. Supp. 3d 1072, 1092-94 (N.D. Cal. 2019) (finding use of the marks on some

7   pages of a website and on emails "does not constitute sufficient use 'in conjunction with' the

8   actual sale of the service" so as to constitute use in commerce).  Accordingly, Defendants are

9   entitled to judgment as a matter of law that "TechShop 2.0" did not infringe Plaintiff's marks after

10  February 16, 2018.

11  **II.      DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW
            THAT "THESHOP.BUILD" DOES NOT INFRINGE PLAINTIFF'S MARKS.**

12

13           Plaintiff failed to introduce a scintilla of evidence that "TheShop.build" infringed.  First,

14  the evidence showed that Plaintiff consented to Defendants' use of "TheShop.build."  Second,

15  Plaintiff's registration of "TECHSHOP" is a word mark only; the TechShop logo is not registered.

16  Therefore, Defendants' brief use of a "gear logo" for "TheShop.build" cannot infringe Plaintiff's

17  marks as a matter of law, and any evidence of similarity in style, size, color, or any other

18  unregistered aspect of the mark cannot support the jury's verdict.  Third, Plaintiff introduced <u>no</u>

19  <u>evidence</u> of a likelihood of confusion between TECHSHOP and the name "TheShop.build."  For

20  all of these reasons, the evidence does not support the jury's verdict that "TheShop.build"

21  infringed Plaintiff's marks, and the Court should grant judgment as a matter of law.

22           **A.      Plaintiff Consented to Defendants' Use of "TheShop.build".**

23           As noted above, to prove infringement, Plaintiff must show Defendants' use of a mark

24  without its consent.  15 U.S.C. § 1114(1).  Plaintiff, however, introduced <u>no evidence</u> that

25  Defendants used the name "TheShop.build" without Plaintiff's consent.  Defendants began using

26  the name "TheShop.build" on February 16, and Plaintiff had notice of the name change by the

27  following day.  (TX 321 [02/17/2018 Woods email].)  Despite such notice, Plaintiff did not object

28  to the use of the new name until November 23, 2018, nine months into this litigation.  (Trial Tr.

1   Vol. 4 at Vol. 5 at 750-752; Dkt. 128-7 [Supplemental Response to Int. 2 at p. 5, line 6].)  As a

2   result of that long lapse in time before any objection was raised formally or informally, the

3   evidence is undisputed that Defendants operated with consent until at least November 23, 2018.

4   Thus, any jury verdict finding infringement by "TheShop.build" before November 23, 2018 is

5   unsupportable.

6          B.      **The _Logo_ for "TheShop.build" Cannot Infringe as a Matter of Law Because TECHSHOP Is Only Registered as a Word Mark.**

7

8          Although the evidence showed that Defendants briefly used a "gear logo" for the

9   "TheShop.Build," that logo cannot infringe Plaintiff's marks because Plaintiff's marks are limited

10  to the word "TECHSHOP" in standard characters, "without claim to any particular font, size, or

11  color." (TX0351, TX0352.)  Since Plaintiff asserts only a claim for infringement of its registered

12  trademarks under 15 U.S.C. § 1114(1) (_see_ Dkt. 45, ¶¶ 19-20), unregistered aspects of its mark—

13  such as style, size, or color—are irrelevant.  _See Locomotor USA, Inc. v. Korus Co., Inc._, 46 F.3d

14  1142, at *3 (9th Cir. 1995) ("It is important to emphasize that only the LOCOMOTOR word mark

15  was registered in the U.S. Patent and Trademark Office… . Although when a mark is registered in

16  block letters every form of lettering is covered, including script letters, Locomotor's logo and bag

17  design are relevant only as unregistered trade dress elements…").  Here, Plaintiff's registrations

18  plainly state that they are limited to a word mark "without claim to any particular font, size, or

19  color," (_see_ TX0351, TX0352), and Mr. Newton admitted this.  (Trial Tr. Vol. .2 at 210-211.)

20  Because Plaintiff's marks do not cover its logo, the fact that the letter "o" is in the shape of a gear

21  with ten prongs is irrelevant as a matter of law.  The fact that it uses red and blue font is also

22  irrelevant.  Any likeness in the font, size, or color between Plaintiff's unregistered logo and

23  Defendants' very briefly used "gear logo" is irrelevant.  Plaintiff's federal registrations do not

24  cover any stylistic elements related to the word, and so any stylistic similarities are plainly

25  unprotected by the trademark registrations.  Again, Plaintiff asserted no claim based on trade dress

26  or an unregistered mark.  Not in its original Complaint.  (Dkt. 1.)  Not in its Amended Complaint.

27  (Dkt. 45.)

28

1    In any case, the unrebutted evidence is that Defendants only used the "gear logo" for three

2   days: February 19, 20, and 21, 2018.  (Trial Tr. Vol. 5890.)  Mr. Rasure testified that Defendants

3   stopped using the logo on February 21, 2018, and Plaintiff offered <u>no evidence</u> to the contrary.

4   (*Id.*)  Thus, even if the Court were to consider the stylistic aspects of the logo (which it should

5   not), the logo could not have infringed for more than three days, and Defendants would be entitled

6   to judgment as a matter of law that such infringement was limited to three days.

7        **C.**    **There is No Evidence That "TheShop.build" *Name* Infringes**

8        Finally, Plaintiff failed to show that *the name* "TheShop.build" infringes its marks because

9   it presented no evidence of a likelihood of confusion resulting from Defendants' use of that name.

10  Likelihood of confusion is an essential element of an infringement claim; without evidence

11  supporting a likelihood of confusion, Plaintiffs' claim fails as a matter of law.  *See* 15 U.S.C.

12  § 1114(1)(a); *see also One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1165 (9th Cir.

13  2009) (affirming summary judgment for defendant because "no reasonable factfinder could find a

14  likelihood of confusion..."); *555-1212.com, Inc. v. Commc'n House Int'l, Inc.*, 157 F. Supp. 2d

15  1084, 1092–93 (N.D. Cal. 2001) ("Without sufficient admissible evidence of likelihood of

16  confusion, plaintiff cannot survive defendant's motion for summary judgment.").  To determine

17  whether a likelihood of confusion exists, courts apply the eight-factor test set out in *AMF Inc. v.*

18  *Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), *abrogated in part on other grounds as*

19  *recognized in Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003).  Those

20  factors are "1. strength of the mark, 2. proximity of the goods, 3. similarity of the mark, 4.

21  evidence of actual confusion, 5. marketing channels used, 6. type of goods and the degree of care

22  likely to be exercised by the customer, 7. Defendants' intent in selecting the mark, and 8.

23  likelihood of expansion of the product lines."  *Id.*  The trial evidence shows that Defendants do not

24  use the name "TheShop.build" in a manner that is likely to cause confusion.

25        1.    Strength of Mark

26        The word "TECHSHOP"—which is all that is registered to Plaintiff—is not a strong mark.

27  "[D]escriptive terms [] are inherently 'weak' marks."  *Falcon Stainless, Inc. v. Rino Companies,*

28  *Inc.*, 572 Fed.Appx. 483, 485 (9th Cir. 2014) (citing *Nutri/Sys., Inc. v. Con–Stan Indus., Inc.*, 809

F.2d 601, 605 (9th Cir.1987)).  The name "TechShop" consists simply of two descriptive terms, "tech" and "shop," smashed together.  These words are hardly distinctive in the makerspace community.  As Mr. Bünger testified, "tech" and "shop" are among the most common words used in makerspace names.  (Trial Tr. Vol. 6 at 992-995.)

Indeed, there was evidence of a third party's use of  "Techshop" at a convention in Atlanta just a month before trial.  Specifically, Odyssey Expo used the name "Techshop" for its classrooms, demonstrations, live equipment running on the floor and experts.  (TX 1075 at DR060496- 499).  The convention featured a 33,350 sq. ft. space designated "Techshop" where machinery was demonstrated.  (TX 1075 at DR060503.)

Thus, TECHSHOP is an inherently weak mark.  Plaintiff offered <u>no evidence</u> to the contrary.  Plaintiff offered no expert testimony on infringement generally, or and <u>no evidence</u> at all on strength of mark specifically.

2.   <u>Proximity of Goods, Convergence of Marketing Channels, and Likelihood of Expansion</u>

These three factors measure the amount of competition or potential competition between the two parties, *see Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1150-51 (9th Cir. 2011), and are taken together here because there is no competitive overlap given that Plaintiff has not competed in the market since November 15, 2017.  Where two companies do not even compete for the same customers in the same marketing channels, there is unlikely to be confusion between them.  *See M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1084 (9th Cir. 2005) (holding that lack of evidence of customer overlap "weighs heavily in the ultimate assessment that there was no triable issue of the likelihood of confusion").  The evidence showed that the two companies never used the same marketing channels or competed for customers.  Plaintiff closed its doors on November 15, 2017.  (Trial Tr. Vol. 2 at, 125.)  Since then, Plaintiff has not operated any makerspace services in the U.S.  (Trial Tr. Vol. 2 at 211-212.)  There was no evidence that Plaintiff has any intention of reopening.  Mr. Rasure did not open a makerspace business until February 19, 2018, when TheShop.build opened its doors—over three months after Plaintiff closed.  (Trial Tr. Vol. 5 at741.)  Thus, the parties did not offer similar services to

1   customers or use similar marketing channels because they were not in business at the same time.

2   And, there is no likelihood of expansion given that Plaintiff filed for bankruptcy and presented no

3   evidence that it intends to reopen.  As to these factors, Plaintiff did not offer any contrary

4   evidence.  Thus, these factors weigh heavily against a finding of infringement.

5           3.    <u>Similarity of Marks</u>

6        The "TECHSHOP" word marks and "TheShop.build" are so dissimilar in sight, sound, and

7   meaning that no reasonable jury could find likelihood of confusion as a matter of law.  *See*

8   *Sleekcraft*, 599 F.2d at 351 ("Similarity of the marks is tested on three levels: sight, sound, and

9   meaning."); *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1165 (9th Cir. 2009)

10  ("Because the two marks are entirely different, we are satisfied that no reasonable jury could find

11  a likelihood of confusion").  The two names look different, as can be plainly seen:

| Plaintiff's Word Mark: | Defendants' Mark: |
|---|---|
|  | |

17  (TX351; TX352; TX290 at DR056070; Trial Tr. Vol. 5 at 748-750)  But, to provide a technical

18  catalog of just some of the differences: "TheShop.build" (thirteen characters) is almost twice as

19  long as "TechShop" (eight characters) and is formatted as a web address with its domain name

20  following a period, while "TechShop" is just an ordinary name.  Visually, Plaintiff's marks are

21  just the word TECHSHOP and so there is nothing visual to compare to "TheShop.build" logo.

22       Plaintiff improperly compared "TheShop.build" to the visual look of Plaintiff's

23  unregistered logo.  Initially, this is improper because Plaintiff's marks only protect the word

24  "TECHSHOP" in standard characters, "without claim to any particular font, size, or color."

25  (TX0351, TX0352).  Thus, only similarities between the sight, sound, and meaning of the two

26  words are relevant to the analysis.  Evidence of Plaintiff's marks' appearance on logos or among

27  other design elements is irrelevant as a matter of law, and cannot support a jury verdict of

28  infringement.  *See Locomotor*, 46 F.3d 1142, at *3 ("Where the marks arguably resemble one

another is in their graphic representation on a logo tag containing numerous unregistered design elements, such as banners, color combinations and coats of arms. However, these trade dress elements are protected under Section 43(a)'s false designation of origin provision, not under Section 32(1)'s trademark infringement provision."); *see also Brighton Collectibles, Inc. v. Dynasty Designs*, *LLC*, 2008 WL 11339960, at *5 (S.D. Cal. Sept. 10, 2008) ("Although the overall similarity of the products may form the basis for Plaintiff's claim of trade dress infringement, the relevant inquiry on Plaintiff's trademark infringement claim is the similarity of the marks, not the overall similarity of the parties' products.").  As noted above, Plaintiff asserted no trade dress or unregistered mark claim in this case.  *Supra* at 16-17.

Of course, even if "TheShop.build's" logo is compared to TechShop's unregistered logo—it should not be—the marks do not look similar:

| Plaintiff's Logo: | Defendants' Mark: |
|---|---|
|  |  |

(TX377; TX290 at DR056070; Trial Tr. Vol. 5 at 748-750.)  "TheShop.build" logo is visually very different than Plaintiff's unregistered logo, using different color writing, different color background, and a different design.  Plaintiff completely ignored the logo for "TheShop.build" that has been in use since March 2018 (depicted in the charts above) when presenting its case. The Court will recall that during the entire case, Plaintiff's counsel displayed the board below to the jury, which notably did not include "TheShop.build" logo Defendants have been using for over a year:

The two names also sound different (as can be plainly heard): "TheShop.Build" consists of four syllables beginning with a "the," and the emphasis is on the words "shop" and "build." TechShop consists of two syllables and the emphasis is on the word "tech." *See Reserve Media, Inc. v. Efficient Frontiers, Inc.*, 2017 WL 1377591 (C.D. Cal. April 14, 2017) (granting summary judgment for defendant because of differences in number of words and syllables).

The only similarity of the marks is the word "shop." But, Plaintiff does not own the word "shop." (TX351; TX352.) Both companies use the word "shop" in its ordinary meaning. Makerspaces are workshops, and it is common to refer to a workshop as a "shop." Plaintiff cannot preclude other makerspaces from using the word "shop" in their names. *See Karoun Dairies Inc. v. Los Altos Food Prod. Inc.*, 107 F. App'x 785, 788 (9th Cir. 2004) ('The only words of the marks that are similar are 'California Cheese,' which Karoun concedes is an unprotectable descriptive phrase that lacks secondary meaning. The trademark as a whole is in no way confusing."). This factor weighs in favor of finding no likelihood of confusion.

### 4.    Actual Confusion

The evidence universally showed a ***lack of actual confusion*** between "TheShop.build" and TECHSHOP. The evidence presented showed that customers sent emails to "TheShop.build" email address acknowledging that the "former TechShop" was closed (TX-146, TX-731, TX-738), asking about the "previous owners" (TX-112, TX-727), asking about the status of Defendants' negotiations to "buy them out" (TX-727), and explicitly acknowledging the "new management"

(TX-98).  Customers even suggested new names for "TheShop.build."  (TX-146.)  In contrast, Plaintiff did not establish that consumers experienced actual confusion between "TheShop.build" and Plaintiff.  Despite having months to investigate, access to hundreds of Defendants' customer emails, and access to its own customer list, Plaintiff did not present evidence showing actual confusion, or call a single customer willing to testify that they were confused.

The absence of evidence of actual confusion alone weighs strongly against a finding of infringement, especially given that "TheShop.build" has been in business for over 15 months.  *See One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1165 (9th Cir. 2009) (holding no infringement as a matter of law where the trademark owner "has not produced evidence of actual confusion."); *see also Cutting Edge Sols., LLC v. Sustainable Low Maint. Grass, LLC*, 2014 WL 5361548, at *13 (N.D. Cal. Oct. 20, 2014) ("[W]here competing marks have been in use for a significant period of time, lack of actual confusion is significant.").  Defendants' affirmative evidence of a lack of confusion shows all the more clearly that the jury's finding of infringement by "TheShop.build" was based on nothing but pure speculation.

### 5.    Customer Care

The evidence at trial showed a high degree of customer care in this industry, suggesting that customers are less likely to be confused.  *See Trovan Ltd. v. Pfizer Inc.*, 107 F. App'x 788, 790 (9th Cir. 2004).  First, the evidence showed that customers paid significant fees to access Plaintiff's services (*e.g.*, TX-354, TX-355), meaning that they are more likely to exercise care before making a purchasing decision.  *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999) (holding customer care is higher for expensive items); *Am. DJ Supply Inc. v. Am. Lighting Inc.*, 2013 WL 12123770, at *7 (C.D. Cal. May 2, 2013) (holding customers likely to exercise care – and therefore unlikely to be confused – when purchasing items worth "a couple hundred dollars"); *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp.3d 997, 1019 (N.D. Cal. Oct. 21, 2015) (Gilliam J.) ("the threshold activities required to gain access to the parties' services force consumers to exercise more care than they normally would be expected to take with regard to free products.").  Second, the evidence showed that customers are well-connected to one another and the larger "maker" community, including through social media, in-

DEFENDANTS' AMENDED RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

1    person town hall meetings, and workshops. (Trial Tr. Vo. 2 at 269-270, 274, 283-288, Vol. 5 at

2    756-758.)  Emails showed that customers were aware of Plaintiff's financial troubles and Mr.

3    Rasure's attempts to purchase TechShop.  (*See, e.g.*, TX-727, TX-729, TX-738.)  Customers'

4    involvement in the community shows that they are unlikely to be confused between Plaintiff and

5    "TheShop.build."  Again, Plaintiff submitted <u>no evidence</u> suggesting that customers did not

6    exercise care in this industry.

7            6.       Defendants' Intent

8            The evidence submitted shows that Defendants made every effort to ***avoid*** confusion.

9    Defendants made multiple public announcements clearly distinguishing "TheShop.build" from

10   "TechShop."  (*See, e.g.*, TX-150, TX-290, TX-614.)  At the first suggestion that Plaintiff believed

11   Defendants were infringing by using "TechShop 2.0," Defendants promptly changed their name to

12   "TheShop.build" and announced the name change.  (TX-321.)  On their own initiative and not

13   prompted by any objection by Plaintiff, Defendants voluntarily stopped using a gear in their logo

14   after just 3 days.  This conduct is inconsistent with a finding that Defendants intended to confuse

15   customers.  *See Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1142 (C.D. Cal. 1998),

16   *aff'd*, 296 F.3d 894 (9th Cir. 2002) (finding no evidence of intent where defendants "attempted to

17   disassociate themselves" from plaintiffs' mark by issuing a disclaimer); *Quality Semiconductor,*

18   *Inc. v. QLogic Corp.*, 1994 WL 409483, at *4 (N.D. Cal. May 13, 1994) (finding no evidence of

19   intent where defendant tried to "design a mark to avoid" potential trademark issues).

20                                               ***

21           Balancing the *Sleekcraft* factors, no reasonable jury could find that Defendants used the

22   name "TheShop.build" in a manner likely to cause confusion.  Plaintiff did not establish likelihood

23   of confusion, which is required to prove infringement.  15 U.S.C. § 1114(1)(a).  Without evidence

24   of use in a manner likely to cause confusion, a reasonable jury does not have a legally sufficient

25   evidentiary basis to find that Plaintiff proved its trademark infringement claims against

26   Defendants' use of the name "TheShop.build."  Indeed, there was ample evidence to support the

27   contrary conclusion—that there was ***no likelihood of confusion***.  Thus, Defendants are entitled to

28   judgment as a matter of law that the name "TheShop.build" does not infringe Plaintiff's marks.

DEFENDANTS' AMENDED RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

## **CONCLUSION**

Defendants request that the Court grant their motion for judgment as a matter of law and enter judgment dismissing the First Amended Complaint with prejudice as set forth above.

DATED:  July 23, 2019

By */s/ Andrea Pallios Roberts*
Ann McFarland Draper (Bar No. 065669)
courts@draperlaw.net
Draper Law Offices
75 Broadway, Suite 202
San Francisco, California 94111
Telephone:     (415) 989-5620

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Andrea Pallios Roberts (Bar No. 228128)
andreaproberts@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000
Facsimile:      (650) 801-5100

Ed DeFranco (Bar No. 165596)
eddefranco@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:     (212) 849-7000
Facsimile:      (212) 849-7100

John E. Nathan (P*ro Hac Vice*)
jnathan155@yahoo.com
John E. Nathan LLC
1175 Park Avenue
New York, NY 10128
Telephone:     (917) 960-1667

*Attorneys for Defendants and Counterclaimants*