James C. Pistorino (SBN 226496)
    james@dparrishlaw.com
Parrish Law Offices
224 Lexington Dr.
Menlo Park, CA 94025
Telephone: (650) 400-0043

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORIS A. KAELIN, as trustee for the estate of TECHSHOP, INC., <br><br> Plaintiff, <br><br> vs. <br><br> DAN RASURE, et al. <br><br> Defendants. | Case Number: **4:18-cv-01044-HSG-JCS** <br><br> **TECHSHOP'S REPY RE: MOTION FOR ATTORNEY'S FEES AND COSTS** <br><br> Hearing Date: November 7, 2019, 2:00pm <br> Judge: Hon. Haywood S. Gilliam, Jr. |

Plaintiff Doris A. Kalein, as trustee for the estate of TechShop, Inc. (hereinafter, "TechShop"), after a jury trial with a verdict in its favor, files this reply in support of its motion for attorney's fees and costs.

### DISCUSSION

**I.    TechShop Was the "Prevailing Party"**

The issue of whether TechShop was the "prevailing party" has been addressed in several briefs. Suffice it to say, even if TechShop had brought no claims, TechShop would still be the "prevailing party" because TechShop defeated Defendants' invalidity claims. *See* Dkt. #42 at ¶¶22-41. That resulted in a judicially sanctioned material alteration of the relationship between the parties. Further, of course, TechShop brought its own claims, on which it was victorious, and judgment was entered in TechShop's favor.

Defendants' cases say nothing different. Indeed, they actually support TechShop's claim. For example, Defendants cite *Park v. Anaheim Union High School District*, 474 F.3d 1025 (9th Cir. 2006) but, as noted there: "… a prevailing party need not prevail on what may be considered the 'central' issue of the case." *Id.* at 1036. Here, at an absolute minimum, TechShop prevailed on Defendants' affirmative invalidity claims and, therefore, is the "prevailing party."

Defendants claim that they "voluntarily" stopped using "TechShop 2.0" and "the allegedly infringing logo for 'TheShop.build" (Opp. at 6) both does not go far enough and is untrue. First, of course, the finding of infringement was to the name "TheShop.build" and was not limited to a logo.[1] It appears to be undisputed that Defendants continued using that name after the verdict and through the entry of judgment. Second, of course, there was/is nothing voluntary about Defendants' actions. Defendants were sued for infringement and a judgment on the merits of that claim has been entered in TechShop's favor. By contrast, the cases Defendants cite are ones where there was no judgment on the merits (*Buckhannon Board & Care Home, Inc. v. West Virginia Depart. of Health and Human Resources*, 121 S.Ct. 1835 (2001) (case dismissed as moot); *Cadkin v. Loose*, 569 F.3d 1142 (9th Cir. 2009) (voluntary dismissal)).

Clearly, TechShop was the "prevailing party."

## II.     Exceptional Case

### a.     Legal Claims

Defendants' Opposition contains a series of legal claims relying on pre-2014/*Octane Fitness* and pre-2016/*SunEarth* cases. Opp. at 11. The holdings of those pre-2014/16 cases were abrogated by *Octane/SunEarth*. As set forth in *SunEarth* and cited in TechShop's opening brief, under the "totality of circumstances", the Court should determine whether "the case stands out from the others" by a preponderance of the evidence. Mot. at 1.

---

[1] Nonetheless, the effort to mimic the TechShop' logo was great evidence of intent to infringe and trade off TechShop's goodwill.

b.   **Substantive Claims**

As TechShop noted in its moving papers, a variety of issues made this case "exceptional."

### i.   Strength/Weakness of Litigation Position

Having lost on every single issue except damages – so far – Defendants' claim that their litigation position was strong. Opp. at 9. In doing so, Defendants illustrate the disdain with which they treat/treated TechShop's trademark rights. Thus, as posited by Defendants, they only infringed for two days, then switched to an infringing mark (mimicking TechShop's logo) for another two days. Again, as posited by Defendants, the misappropriation of TechShop's trademarks by Defendants caused "no harm" to TechShop. Opp. at 10. It is exactly this kind of thinking that resulted in this litigation.

Defendants are silent on their use of TechShop's logo when using the name TechShop 2.0, with full knowledge that they lacked the right to do so. Likewise, Defendants' apparent claim that they are free to use the trademarks of others until they get a letter telling them to stop is utterly baseless.[2] Likewise, Defendants are silent on their effort to mimic TechShop's logo (incorporating the trademarked terms). Defendants are silent on the fact that they literally offered nothing with respect to invalidity of the marks.

Defendants' case was exceptionally weak, while TechShop's was exceptionally strong.

### ii.   Defendants Litigated the Case Unreasonably

#### 1.   False Certificates of Service

As noted in subsequent papers, after the Complaint was served, Defendants' counsel (Ms. Draper) sought two extensions to respond which were granted. Nevertheless, Defendants still did not respond at it was only TechShop's indication of its intention to file a default motion that

---

[2] No doubt McDonald's would be surprised to know that people are free to open hamburger joints using the McDonald's name until they receive a letter from McDonald's telling them to stop. At which point, McDonald's would also be surprised that the infringers have several additional days to use the McDonald's name without liability before switching to McRonald's (using the golden arches), again, without liability. To state Defendants' position is to refute it.

prompted a response. *See* Dkt. #53 at 2, n. 1. On June 20, 2018, this Court issued a Scheduling Order setting November 2, 2018 as the close of fact discovery. *See* Dkt. #37. On June 26, 2018, TechShop served its First Set of Requests for Production by email. On July 26, 2018 (*i.e.*, 30 days later), Defendants then sought a two-week extension of time to respond, which was, again, granted. When that date for response passed and nothing was received, Ms. Draper represented that responses had been mailed on August 13, 2018. When nothing was received by August 21, 2018, Ms. Draper sent a PDF of responses scanned that very day. Subsequently, Ms. Draper was supposed to serve "amended" responses by August 24, 2018. Nothing was received on that date. Instead, on August 25, 2018, Ms. Draper sent an email with unsigned responses including an unsigned certificate of service alleging that the responses had been mailed in August 24, 2018. No mailed copy of either document has ever been received. *See* Dkt. #53, 54 (Exhibit F).

As TechShop noted in its moving papers, almost exactly the same thing occurred in *Fidelity National Title Ins. Co. v. Castle, et al.*, N.D. Cal., 11-cv-00896 (Gonzalez-Rogers, J.), where Ms. Draper and her client were sanctioned for discovery misconduct. There, the Court ordered Ms. Draper to produce documents no later than February 14, 2014. At a status conference held on March 24, 2014 (*i.e.*, 38 days after they were due), Ms. Draper represented that she had mailed the documents. Opposing counsel indicated that nothing had been received by that date. *See Fidelity National Title Ins. Co.*, Dkt. # 673 (motion to compel) at 4 ("… Mr. Seto, indicated that as of that day, he still had not received them.").

In Opposition, Ms. Draper offers the illogical claim that she serves unexecuted Certificates of Service, but then executes the Certificate after mailing. Beyond its illogical nature, it does not explain why no copy of either document was ever received. Indeed, taken on its own terms, Ms. Draper should not have had unsigned copies of "amended" responses and a Certificate of Service on August 25, when she contended she mailed them on August 24, 2018.

As TechShop noted in its moving papers, either the Certificates of Service were false or the U.S. Mails just do not work when Ms. Draper faces a deadline to respond to something and

that is precisely the time she chooses to use the U.S. Mails exclusively. Like her representations to this Court, the Certificates were false.

### 2. Misrepresentation to The Court Regarding Compliance With Judge Spero's Order

Ms. Draper continues to compound the false statements to this Court.

Without belaboring the point, after a series of meet and confers, Judge Spero ordered Defendants to produce the requested documents by September 21, 2018 (later extended to September 25, 2018). *See* Dkt. #58, 65. Defendants violated that Order and were ultimately sanctioned as a result. In the briefing related thereto, TechShop explicitly pointed to the failure to produce materials from John Hunt (the general manager of Defendants' San Jose location) and Jerry Gable (the person working for Defendants who prepared the various logos). *See* Dkt. #69 at 2; #72 at 5. Judge Spero then issued another Order requiring production by October 22, 2018 (*i.e.*, 11 days before the close of fact discovery) "without fail." *See* Dkt. #74. After the deadline, but before the hearing held on October 23, 2018, more than several thousand pages of production occurred. At the hearing held on October 23, 2018, the following exchange occurred:

> THE COURT: … So the first question is, as I read the last transcript, Ms. Draper, there's an Order that you complete production by October 22nd. That was Judge Spero's Order. Did you comply with the Order?
> MS. DRAPER: Pretty much. Some of it went through it for this morning. I feel asleep over my computer. But, yes –
> THE COURT: Is the production complete? Yes or No?
> MS. DRAPER: Yes, yes.

Transcript at 2. After the hearing, Defendants produced more than 850 pages "in response to Plaintiff's Request for Production of Documents" over the course of the next two days. *See* Exhibit J. These included various logo documents as well as documents from Mr. Hunt and Mr. Gable. Indeed, the post-hearing logo documents became TX-290 and were admitted at trial.

In Opposition, Defendants are schizophrenic. First, Defendants concede "some of these documents were served after the Court-imposed deadline", contradicting Ms. Draper's "yes" at

the hearing with regard to compliance with the Judge Spero's Order. Opp. at 11. Ms. Draper then offers a declaration stating:

> At the time of [the October 23rd] hearing, I truthfully answered that Defendants had completed the required production, although some of the materials had gone through that morning (rather than on the 22nd). Defendants did produce additional documents after the hearing (on October 24 and very late on October 23), but these third-party documents outside the possession, custody or control of Defendants that Defendants had been seeking and then produced promptly when obtained.

Draper Decl. at ¶ 6. Thus, as offered by Ms. Draper, the documents produced after the hearing were "third-party" documents. That is simply untrue. For example, between July 2018 and April 2019, Mr. John Hunt was employed by Defendants as the General Manager of their San Jose location. *See* Hunt Decl. at ¶ 2. After the hearing, Hunt' documents in the range 56498-56907 "in response to Plaintiff's Request for Production of Documents" were produced. To the extent that Defendants are now contending that TechShop "agreed" that, *e.g.*, their Initial Disclosures did not have to be produced, that is, of course, false.

Defendants falsely represented that they complied with Judge Spero's Order and that the production of documents was complete at the time of the hearing.

### 3. Improper Threat to The Trustee

Defendants effort to justify their improper threat to the trustee, Ms. Kaelin, is baseless. In short, Defendants contend that because they expected to prevail, it was proper for them to baselessly threaten Ms. Kaelin personally. Opp. at 13-14. There is nothing to that. As noted in TechShop's moving papers (and Defendants now concede) relief under 28 U.S.C. § 1927 is only available against attorneys, not clients. Further, the relevant bankruptcy provisions are analogs to FED.R.CIV.P. 11 with similar procedural protections, none of which Defendants invoked. Thus, at bottom, Defendants offer that they baselessly threatened Ms. Kaelin but that is par for their course of conduct. There is nothing to that justification of Defendants effort to intimidate Ms. Kaelin.

### 4. Improper Production of 45% of Trial Exhibits Day Before/Day of Exchange of Trial Exhibits

Again, Defendants do not challenge the facts as set forth by TechShop. Instead, they simply repeat the tired claim that because some of the documents were publicly available, they did not feel bound by the Rules or the Court's Orders regarding discovery. Defendants claim that they "voluntarily removed" these documents so TechShop suffered no prejudice. Opp. at 12. That is false, because Defendants only partially withdrew the late-produced documents after TechShop suffered the prejudice of drafting a motion to exclude them. *See* Dkt. #135.

Indeed, in this regard, the veracity of Defendants' factual claims was, again, lacking. One of the late-produced documents was a video related to Maker Nexus. Defendants represented to the Court that TechShop refused to produce it during discovery and that Defendants did not have it. *See* Dkt. #149 at 5; April 30, 2019 Transcript at 19-21. The claim that TechShop refused to produce it was quickly shot down on simple review of TechShop's responses. Defendants' claim that they did not have the video during discovery fell apart shortly thereafter, when Defendants revealed that they had the video during discovery (though Defendants sought to bury that fact in Paragraph 15 of Ms. Draper's Declaration while, at the same time, falsely suggesting that TechShop had anything to do with its production). *See* Dkt. #177 at 4.

Perhaps the production of 45% of a party's trial exhibits the day before/day of the identification of the trial exhibits themselves after two orders to produce discovery (including a sanctions order) is common. TechShop doubts it and hopes that this case "stands out from the others" in at least this regard.

### 5. Failure to Meet and Confer Resulting in Recall of James Newton

Other than the heading (where Defendants claim that they did not fail to meet and confer), Defendants' opposition appears to concede the facts as laid out by TechShop. Opp. at 14-15. As TechShop noted its opening papers, in knowing, intentional, and willful violation of this Court's Standing Order, Defendants did not meet and confer in person or by phone regarding

Mr. Newton. Nevertheless, Defendants briefed the matter of Mr. Newton to the Court. Further, because Defendants did not meet and confer, Mr. Newton was recalled solely so that Defendants' could ask him a single, substantive question on a matter than was not disputed.[3] Further, Defendants refused to correct the misimpression their violation of the Court's Order created.

In Opposition, Defendants do not challenge these facts. Instead, they offer excuses for why they chose to violate the Court's Order resulting in the inconvenience to Mr. Newton. In this regard, Defendants hypothesize that "it is possible that the parties could have come up with an alternative" had Defendants complied with this Court's Order and met and conferred. Opp. at 13. Of course, that is the whole idea of the meet and confer requirement. Moreover, Defendants' excuses do not even hold up to momentary scrutiny. There is no reason Defendants could not have picked up the phone to call TechShop's counsel or (given that they were staying at the same hotel as Plaintiff's counsel) simply knocked on the door.

Defendants are silent on their refusal to correct the false impression their violation of the Court's Order created. Defendants' claim that Plaintiff should have known of their contempt of the Court's Order (Opp. at 15) is not worthy of response.

On this motion, the only issue is whether this case "stands out from the others" not whether Defendants should be sanctioned for each of the above. Clearly, this case was "exceptional."

### c. Fees and Costs Are Not Time Dependent on Willfulness

On pages 2 and 16-17 of the Opposition brief, Defendants offer two wholly unsupported/unsupportable propositions. First, Defendants contend that there were "max" five days of willful infringement. There is literally no basis for such a claim. The jury found willful infringement without any time limit through the use of "TechShop 2.0" and "TheShop.build",

---

[3] In its opening papers, relying on memory, TechShop stated that Defendants asked a single question. On review of the transcript, Defendants asked several preliminary questions before the single, substantive question. TechShop asked a single question.

and the evidence supported that verdict. There is no basis for limiting the jury's finding in this regard.

Second, relying on *SRI Int'l, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295, (Fed. Cir. 2019), Defendants offer the novel proposition that there is a requirement "to apportion [] fees and costs between the alleged willful infringement (five days, total) and the rest of the case." Opp. at 16. There is zero basis for such an illogical claim and *SRI* says nothing of the sort. All that happened in *SRI* was that a portion of a willfulness finding was reversed. Because willfulness is a predicate/factor in granting enhanced damages and attorney's fees, the case was remanded for further consideration in light of the partial willfulness reversal. *Id.* at 1311.

Defendants' argument is utterly devoid of merit.

### d. Defendants' Claims Regarding The Defeated Fraud Allegations

Defendants close their Opposition with the assertion that, because TechShop did not segregate fees and costs associated with Defendant's fraud claim, then no fees and costs should be awarded citing *Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir. 2000).

However, as even *Gracie* recognized, that is not the case when the non-Lanham Act claims and the Lanham Act claims are "so inextricably intertwined that even an estimated adjustment would be meaningless." *Id.* at 1069-70. Here, as best TechShop can surmise, Defendants fraud claim was/is intertwined with Defendants claim that their use of the marks was authorized, consent, etc. Thus, by defeating Defendants' fraud claim, TechShop was also defeating their Lanham Act defenses. Accordingly, all of the effort was inextricably intertwined.

Nevertheless, to the extent that any one filing can be alleged to relate solely to fraud, that would be TechShop's motion to dismiss. *i.e.* Dkt. #46 and 56. TechShop is prepared to estimate the total time for those two filings at 10.0 hours billed at $515/hour for a total of $5,150.

### CONCLUSION

For the reasons set for above, TechShop should be awarded its reasonable attorneys fees and expenses in the amount of $391,170.

Respectfully submitted,

James C. Pistorino (SBN 226496)
james@dparrishlaw.com
Parrish Law Offices
224 Lexington Dr.
Menlo Park, CA 94025
Telephone: (650) 400-0043

Attorneys for Plaintiff