Ann McFarland Draper (Bar No. 065669)
courts@draperlaw.net
Draper Law Offices
75 Broadway, Suite 202
San Francisco, California 94111
Telephone: (415) 989-5620

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Andrea Pallios Roberts (Bar No. 228128)
andreaproberts@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Ed DeFranco (Bar No. 165596)
eddefranco@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

John E. Nathan (P*ro Hac Vice*)
jnathan155@yahoo.com
John E. Nathan LLC
1175 Park Avenue
New York, NY 10128
Telephone: (917) 960-1667

Attorneys for Defendants and Counterclaimants

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| TECHSHOP, INC., a California corporation, DORIS A. KAELIN, in her capacity as Chapter 7 trustee for TECHSHOP, INC., <br><br> Plaintiff, <br><br> vs. <br><br> DAN RASURE, et al., <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS | CASE NO. 4:18-CV-01044-HSG (JCS) <br><br> **DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' AMENDED MOTION FOR ATTORNEYS' FEES AND COSTS** <br><br> Hearing Date: November 7, 2019 <br> Time: 2:00 pm <br> Judge: Haywood S. Gilliam, Jr. |

08876-00001/11036339.7

Case No. 4:18-CV-01044-HSG (JCS)
DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' AMENDED MOTION FOR ATTORNEYS' FEES AND COSTS

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .................................................................................................................................2

I.   DEFENDANTS WERE THE PREVAILING PARTY, NOT PLAINTIFF. .........................2

II.  THIS CASE WAS EXCEPTIONAL BASED ON PLAINTIFF'S CONDUCT ...................3

    A.   Plaintiff's Case Lacked Substantive Strength. .............................................................3

    B.   The Lawsuit Was Filed for Anti-Competitive Reasons. ..............................................6

    C.   Plaintiff's Manner of Litigating the Case Was Unreasonable.....................................7

III. DEFENDANTS' FEES ARE REASONABLE......................................................................8

CONCLUSION ............................................................................................................................10

08876-00001/11036339.7

-i-   Case No. 4:18-CV-01044-HSG (JCS)
DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' AMENDED MOTION FOR ATTORNEYS' FEES AND COSTS

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Carmax Auto Superstores West Coast, Inc. v. Carmax LLC*,
   2008 WL 4197741 (D. Colo. Sept. 9, 2008) .................................................................. 2

*Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v. Ceiba Legal, LLP*,
   230 F. Supp. 3d 1146 (N.D. Cal. 2017) ...................................................................... 6

*Farrar v. Hobby*,
   506 U.S. 103 (1992) ...................................................................................................... 2

*In re TechShop, Inc.*,
   Case No. 18-50398, Dkt. 1, p. 13 (N.D. Cal. Bankr. Feb. 26, 2018) ................................. 9

*Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*,
   589 F.3d 1027 (9th Cir. 2009) ....................................................................................... 2

*Milton H. Greene Archives, Inc. v. Julien's Auction House, LLC*,
   No. CV 05-7686 AHM (FMOx), 2007 WL 4898365 (E.D. Cal. Dec. 20, 2007) ................. 3

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014) ...................................................................................................... 7

*Ruiz-Rodriguez v. Colberg-Comas*,
   882 F.2d 15 (1st Cir. 1989) ........................................................................................... 3

*Seal-Flex, Inc. v. W.R. Dougherty & Assocs.*,
   254 F. Supp. 2d 647 (E.D. Mich. 2003) ....................................................................... 6

**Statutes**

15 U.S.C. § 1117(a) .......................................................................................................... 1

08876-00001/11036339.7

-ii-  Case No. 4:18-CV-01044-HSG (JCS)
DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' AMENDED MOTION FOR ATTORNEYS' FEES AND COSTS

## PRELIMINARY STATEMENT

Defendants Dan Rasure, TheShop.build, LLC, and TheShop.build San Francisco, LLC[1] (collectively, "Defendants") met the standard required to be awarded attorneys' fees and costs: they are the prevailing party and the case is exceptional. *See* 15 U.S.C. § 1117(a). Defendants are the prevailing party since they were victorious on Plaintiff's Lanham Act claim under which Defendants are seeking attorneys' fees and costs because the jury awarded Plaintiff TechShop, Inc. ("Plaintiff" or "TechShop") ***zero damages*** and no other monetary relief. The other, non-Lanham Act claims in this case are irrelevant to Defendants' Motion. And, this case is exceptional for several reasons. First, Plaintiff's case lacked substantive strength because Plaintiff sued for infringement of registered marks that were infringed for, at most, two days, and then pursued the case focusing on a belatedly interjected unregistered logo that Defendants used for no more than three days. Plaintiff also failed to present any evidence that the name "TheShop.build" was likely to cause confusion, and the jury credited the testimony of Defendants' branding expert, Mark Bünger, that Plaintiff's marks had negative brand value. Second, the case was unreasonably litigated: Plaintiff pursued little discovery and consistently litigated in an uncooperative manner. Third, the evidence suggests that this otherwise weak case was brought for an ulterior, anti-competitive motive. Defendants are accordingly entitled to their attorney's fees and costs.

Furthermore, Defendants' fees are reasonable. Plaintiff deemed the case to be worth $5 million, and the defense of a claim of that magnitude required substantial time and effort. It is understandable that Defendants' counsel devoted more time to their vigorous defense, as compared to Plaintiff's counsel. That Plaintiff litigated the case "on the cheap," as the Court observed, does not mean that Defendants' counsel's time billed was unreasonable. (*See* Trial Tr., at 941:16-17.) Finally, Defendants' lead trial counsel's rates and fees have been deemed

---

[1] As explained in the Declaration of Dan Rasure in Support of Defendants' Opposition to Plaintiff's Motion for a Permanent Injunction (Dkt. 262-1), the names of these legal entities have been changed to Makerspace LLC and Makerspace SF LLC, respectively. (*Id.*, ¶ 3.) To avoid confusion, Defendants are using the prior names in this brief and other post-trial briefs to be consistent with the names referenced in the trial evidence.

reasonable by courts time and again in this and other Districts. For these reasons, this Court should grant Defendants' Motion and award the requested attorney's fees and costs.

## ARGUMENT

### I. DEFENDANTS WERE THE PREVAILING PARTY, NOT PLAINTIFF.

This Court should find that Defendants were the prevailing party. Plaintiff argues incorrectly that because it was victorious on Defendants' counterclaims of fraud and trademark invalidity, Plaintiff was the prevailing party. The authorities, however, hold otherwise. To be the prevailing party under the Lanham Act, Plaintiff must have achieved a material alteration in the legal relationship of the parties, which requires obtaining actual relief, such as in the form of damages. *See Farrar v. Hobby*, 506 U.S. 103, 113 (1992) ("No material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant."). Although Plaintiff cites *Carmax Auto Superstores West Coast, Inc. v. Carmax LLC*, 2008 WL 4197741, at *3-4 (D. Colo. Sept. 9, 2008) (Dkt. 260 at 2) for the proposition that it is the prevailing party even though it was awarded zero damages, that case is inapposite. As Plaintiff itself states (Dkt. 260 at 2), the plaintiff in *Carmax* sought "only an injunction," so that case does not concern damages, which Plaintiff did seek here. And, Plaintiff's reliance on *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027 (9th Cir. 2009) for the proposition that "prevailing party" means "a party in whose favor a judgment is rendered regardless of the amount of damages awarded" (Dkt. 260 at 2) is misplaced. *Klamath* actually supports Defendants' position, stating that a prevailing party must have "achieved a material alteration in the legal relationship of the parties," and that "[w]hatever form it takes, the material alteration must consist of actual *relief*, not merely a determination of legal merit." *Id.* at 1030 (emphasis in original). In addition, the plaintiff in *Klamath* also only sought an injunction, not damages (and in any case was not awarded attorneys' fees and costs). *Id.* at 1029, 1035.

Thus, contrary to Plaintiff's argument that a party is the "prevailing party" regardless of the amount of damages awarded, *some* amount of damages, even nominal, must be awarded. *See Farrar*, 506 U.S. at 113 (there is still a "material alteration of the legal relationship between the

08876-00001/11036339.7

-2-   Case No. 4:18-CV-01044-HSG (JCS)
DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' AMENDED MOTION FOR ATTORNEYS' FEES AND COSTS

parties" where plaintiff is awarded nominal damages, because "a plaintiff may demand payment for nominal damages no less than he may demand payment for millions of dollars in compensatory damages"). Here, the jury did not even award Plaintiff nominal damages. Indeed, Plaintiff never sought an award of nominal damages. There is ample authority holding that in a case like this, Defendants are the prevailing party. *See Milton H. Greene Archives, Inc. v. Julien's Auction House, LLC*, No. CV 05-7686 AHM (FMOx), 2007 WL 4898365, at *3 (E.D. Cal. Dec. 20, 2007), *aff'd*, 345 Fed. App'x 244, 249 (9th Cir. 2009); *see also Ruiz-Rodriguez v. Colberg-Comas*, 882 F.2d 15, 17 (1st Cir. 1989) ("A jury's award of zero damages, where such has a rational basis in the record, is commonly viewed as, in effect, a judgment for the defendant."). This Court should accordingly find that Defendants are the prevailing party.

## II. THIS CASE WAS EXCEPTIONAL BASED ON PLAINTIFF'S CONDUCT.

### A. Plaintiff's Case Lacked Substantive Strength.

As set forth in Defendants' Motion, Plaintiff's case lacked substantive strength because Plaintiff consented to Defendants' use of "TechShop 2.0" until two days before filing suit; Plaintiff presented no evidence that Defendants' allegedly infringing logo that was used for more than three days and the new name "TheShop.build" infringed; and the TechShop brand had negative value. (Dkt. 257 at 9-13.) Plaintiff contests that its case lacked substantive strength, stating that Defendants "offer four pages of fantasy" and "simply ignore the evidence offered at trial." (Dkt. 260 at 3.) It is Plaintiff, however, who ignores Defendants' arguments in their Motion, and the evidentiary record in this case that supports those arguments.

First, Plaintiff ignores the majority of Defendants' argument that Plaintiff's case lacked substantive strength and the ample evidence that supports it. Plaintiff does not dispute that Plaintiff consented to Defendants' use of the name "TechShop 2.0" until no earlier than two days before filing suit. (Dkt. 257 at 9-10.) There is voluminous trial evidence—cited in Defendants' Motion and unrebutted by Plaintiff—that during the parties' two-and-a-half months of negotiations regarding a potential deal, both parties referred to Defendants' business as "TechShop 2.0." (*Id.*) Plaintiff even did so in public announcements and communications with third parties.

(*Id.*)  The *earliest* that Plaintiff possibly revoked its consent to Defendants' use of the name "TechShop 2.0" was on February 14, 2018—two days before filing suit.  (*Id.*)

Nor does Plaintiff dispute that, within a matter of hours of receiving Plaintiff's February 16, 2018 cease-and-desist letter and a copy of the already-filed Complaint, Defendants changed their name to "TheShop.build," and took immediate steps to transition to the new name.  (*Id.* at 10.)  Plaintiff does not dispute that Mr. Rasure took down the sign outside the building on the evening of February 16.  (*Id.*)  Nor does Plaintiff dispute Mr. Rasure's testimony that, even though it was a holiday weekend, Defendants worked to change everything to "TheShop.build" as quickly as they could.  (*Id.*)  And, Plaintiff does not dispute that Plaintiff's then-CEO, Dan Woods, was aware of the name change by February 17, 2018—just one day later.  (*Id.*)

Plaintiff also does not dispute that it presented <u>no evidence</u> that Defendants used an allegedly infringing logo for "TheShop.build" for more than three days.  (Dkt. 257 at 11.)  Nor does Plaintiff dispute that it failed to present any evidence whatsoever that the name "TheShop.build" was likely to cause confusion with Plaintiff's marks.  (*Id.*)

Finally, Plaintiff does not dispute the evidence that Plaintiff's "TechShop" brand lacked value.  (Dkt. 257 at 12-13.)  Not only was any claim of infringement by Defendants limited to a period of less than a week, but Defendants' branding expert testified that Plaintiff's brand was severely damaged by Plaintiff's abrupt closure and announcement that it would file for bankruptcy.  (*Id.* at 12.)  And Plaintiff does not dispute that a former Director of TechShop, Mr. Busch, recognized the damage Plaintiff's closure had to its brand.  (*Id.* at 13.)  Thus, Plaintiff fails to rebut the merits of Defendants' argument that Plaintiff's case lacked substantive strength.

In response to Defendants' arguments, Plaintiff cites to Mr. Rasure's trial testimony to try to establish that Defendants continued to use the name "TechShop 2.0" after February 16.  (Dkt. 260 at 4.)  Plaintiff's argument, however, fails to show that its case was strong.  Mr. Rasure made clear that he was not able to change the name of the company to "TheShop.build" on everything immediately.  (Trial Tr., at 747:10-18.)  For example, he acknowledged that Defendants were unable to immediately change everything with the name "TechShop 2.0" because it was a "Friday evening, holiday weekend, and at the end of the day, we were a very small company at the time."

(Trial Tr., at 745:14-15 [Rasure].)  But, Defendants "work[ed] to change the name as quickly as [they] could." (*Id.*, at 745:16.)  That there was a brief transition period does not mean that Plaintiff's case had substantive strength.

Further, Plaintiff's assertion that "Mr. Rasure testified about Defendants [sic] continued use of the 'TechShop 2.0' name for months after this case was filed" (Dkt. 260 at 4) is incorrect, and Plaintiff's citations to the trial transcript in support of that statement do *not* support it.  On the contrary, the testimony established that Mr. Rasure did *not* use the "TechShop 2.0" name for months after the case was filed.  At most, *other parties not controlled by Defendants*, such as vendors, continued to use Defendants' original name—the name Plaintiff consented to for two and half months—because accounts had already been established in that name.  (Trial Tr., at 745:18-23.)[2]  That unrebutted proof is found in the transcript pages cited by Plaintiff itself (Dkt. 260 at 4) (Trial Tr., at 747:10-18, 839:25-840:9, 844:8-845:4, 847:2-9, 848:15-25, 850:8-12, 850:20-851:12, 851:20-24, 852:7-11, 852:16-20, 853:3-15.)[3]  Indeed, the trial testimony is abundant with evidence that Mr. Rasure promptly took steps to stop using the "TechShop 2.0" name after the case was filed.  (Trial Tr., at 738:6-16, 741:21-24, 742:17-19, 743:20-744:3, 745:18-23, 843:6-15, 891:15-22, 892:14-24.)

Had Plaintiff bothered to serve interrogatories (it served none) or take depositions (it took none), Plaintiff would have learned that Defendants' use of the name "TechShop 2.0" without Plaintiff's consent lasted, at most, two days, and that the purported evidence of continued use

---

[2]  In closing argument, Defendants' counsel provided as an example the change in name of the ballpark where the San Francisco Giants play.  As of this year, it is called Oracle Park.  But, fans may continue to refer to it as AT&T Park because that was its name for several years.  That fans may continue to use the old name while getting used to the new name is not indicative of any wrongdoing on the part of AT&T or Oracle.  The same is true here with regard to *others* continuing to use the name "TechShop 2.0."

[3] In fact, one of the examples cited by Plaintiff of Defendants' purported continued use of the name "TechShop 2.0" are historical emails submitted by Mr. Rasure to his former employer regarding expenses incurred during his negotiations with Plaintiff.  Mr. Rasure's use of the name "TechShop" in those emails refers to Plaintiff's own company—not Mr. Rasure's company.  (Trial Tr., at 889:10-890:6.)  Although Mr. Rasure made this clear at trial, Plaintiff still points to these documents as so-called evidence of continued use of the name "TechShop 2.0."  Use of the word "TechShop" to refer to Plaintiff TechShop itself is not infringing.

proved to be no such thing.  Plaintiff could have stopped wasting the Court's resources on this meritless case and avoided the crushing impact the case had on Defendants.[4]  Instead, it continued to pursue a case lacking in substantive strength.

### B.   The Lawsuit Was Filed for Anti-Competitive Reasons.

As Defendants explained in their Motion, the timing of a suit can serve as a factor in determining whether a suit was initiated in bad faith.  *Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v. Ceiba Legal, LLP*, 230 F. Supp. 3d 1146, 1150-51 (N.D. Cal. 2017).  Here, the timing suggests that the case was initiated in bad faith because, until the day before the lawsuit was filed, Plaintiff's counsel served as Treasurer and Director for a competitor of Defendants, Maker Nexus.  (Dkt. 257 at 13-14.)  Plaintiff argues that "there is not an iota of evidence in support" of Defendants' contention that the lawsuit was brought for anti-competitive reasons.  But, again, Plaintiff ignores the proof marshalled in Defendants' Motion.  Significantly, Plaintiff does not dispute that Plaintiff's counsel was a founder and served as Treasurer and Director for a competitor of Defendants, Maker Nexus, until "as of" just one day before the filing of the lawsuit.  (*Id*.)[5]  Nor does Plaintiff refute the trial testimony of former TechShop Board member, Doug Busch: "At about that time, ***we were approached by you, Mr. Pistorino***, with respect to the possibility of legal action associated with the use of the trademark."  (Trial Tr., at 449:4-9) (emphasis added).  Plaintiff's attorney argument that "Ms. Kaelin independently made the decision to pursue this litigation and hire counsel" (Dkt. 260 at 4)—which is unsupported by a declaration from Ms. Kaelin herself—does not contradict the evidence presented by Defendants as to why the case was initially filed.

---

[4]  Plaintiff's decision not to take any depositions in this case, discussed in more detail in Section III, is also evidence of how this case is exceptional.  *See Seal-Flex, Inc. v. W.R. Dougherty & Assocs.*, 254 F. Supp. 2d 647, 660 (E.D. Mich. 2003) (holding case exceptional where defendant conducted no discovery).

[5]  In fact, a recent social media post following the announced closure of Defendants' business further reveals how this litigation benefited Maker Nexus.  This post shows, in the wake of TheShop.build's closure, Plaintiff's counsel promoting Maker Nexus and Humanmade, a company founded by former Plaintiff employee (and Plaintiff's trial witness) Ryan Spurlock.  (*See* Declaration of Dan Rasure in Support of Defendants' Reply to Plaintiff's Opposition to Defendants' Amended Motion for Attorneys' Fees and Costs, Ex. A.)

In short, Defendants presented unrebutted evidence of Plaintiff's counsel's role with one of Defendants' competitors until the day before the lawsuit was filed, and testimony that Plaintiff's counsel approached Plaintiff regarding "the possibility of legal action." Combined with the filing of a lawsuit after at most only two days of use of the marks without Plaintiff's consent, which Defendants took steps to cease as quickly as possible, this evidence supports finding that this case is exceptional. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) ("an 'exceptional' case is simply one that sounds out from others with respect to the substantive strength of a party's litigating position… or the unreasonable manner in which the case was litigated.").

### C.    Plaintiff's Manner of Litigating the Case Was Unreasonable.

Plaintiff ignores the vast majority of Defendants' arguments as to how this case was litigated by Plaintiff in an unreasonable manner. (Dkt. 257 at 14-21.)  Plaintiff does not dispute, nor can it dispute, that Plaintiff repeatedly attempted to re-litigate issues that were already decided by the Court. (*Id.* at 14-15.)  And, Plaintiff does not contest the case law cited by Defendants that such behavior is sanctionable under Section 1117. (*Id.* at 16.)

Nor does Plaintiff dispute that it failed to serve any interrogatories or take depositions in this case, or that this Court previously commented that "in a normal case," the parties would have taken depositions. (*Id.* at 16.)  And, Plaintiff does not provide any justification for this unusual litigation conduct.  Nor does Plaintiff contest that, had it taken even a single deposition of Mr. Rasure, a named defendant and the founder of the other named defendants, Plaintiff would have learned of the *de minimis* use of the allegedly infringing marks.  None of this is disputed.

Plaintiff only takes issue with Defendants' argument that Plaintiff did not cooperate with Defendants' counsel on even the most basic tasks and failed to follow the Court's Standing Order. (*Id.* at 17-21.)  But, Plaintiff fails to respond to all but one of the numerous incidents showing Plaintiff's lack of cooperation in the litigation.[6]  Plaintiff asserts that these incidents are not

---

[6]  The one item Plaintiff attempts to rebut relates to Plaintiff's promise to pay 50% of the Defendants' costs of preparing for the Court Chambers copies of the pretrial filings, in accordance with the Court's Standing Order.  In doing so, Plaintiff misses the point.  As Defendants showed,

exceptional, stating that they are not even "worthy of individual response." (Dkt. 260 at 5). In their Motion, Defendants noted that any one of the exemplary incidents identified, by itself, may seem insignificant. (Dtk. 257, at 20-21.) But, taken together, they show Plaintiff's pattern and practice of litigating in an uncooperative manner. (*Id.*) Plaintiff's dismissive response only highlights the extraordinary nature of this case. It shows that Plaintiff cannot be bothered to cooperate with the opposing party on even the most basic of issues such as discussing the logistics of a trial disclosure schedule, agreeing on a mutual time to conduct a pre-trial set-up in the court room or to exchange demonstratives, providing opposing counsel with binders of exhibits, and working with opposing counsel to prepare a list of admitted exhibits for the jury.[7] (Dkt. 257 at 17-21.) Instead, Plaintiff responds that Defendants' examples are just complaints "that they did not like the way Plaintiff did things and wanted things done the way Defendants preferred." (Dkt. 260 at 5.) Not so. It is common and necessary for trial counsel to work together on coordinating logistical issues for trial and, in particular, preparing materials as required by the Court. It is exceptional for one party to refuse to cooperate on such matters.

## III. DEFENDANTS' FEES ARE REASONABLE.

The time billed by Defendants' counsel was reasonable in light of what was at stake in this litigation. As explained in Defendants' Motion, Plaintiff represented in the bankruptcy proceedings that this litigation was worth $5 million. (Dkt. 257, at 21) (citing *In re TechShop,*

---

on June 6, Plaintiff's counsel informed Defendants' counsel that Plaintiff reneged the parties' prior agreement, demanded that Defendants pay Plaintiff in cash the following day for the copy costs for the trial witness binder Plaintiff prepared for Defendants (even though Defendants prepared witness binders for Plaintiff), and refused to provide any additional witness binders. (Dkt. 257 at 15.) Plaintiff does not deny that its counsel made these statements. Instead, Plaintiff says that it paid its 50% share (and apparently had done so before telling Defendants' counsel it was reneging on the agreement). Unfortunately, Plaintiff's counsel's check was recorded incorrectly by Defendants' counsel's Accounting Department, and so it did not show up as having been paid by Plaintiff's counsel when Defendants checked before filing their motion. (Declaration of Andrea Pallios Roberts, ¶¶ 4-5.) That, however, does not change the unreasonable positions that Plaintiff took in the June 6 meet and confer. (Dkt. 257-15.)

[7] Here, as elsewhere in its Opposition, Plaintiff fails to identify any evidence to support its arguments; see, e.g., where Plaintiff's claim that "Defendants also complain that, when they violated the parties' agreement and the Court's Order, Plaintiff cancelled the agreements" (Dkt. 260 at 5), does not identify any such agreement or Court Order.

*Inc.*, Case No. 18-50398, Dkt. 1, p. 13 (N.D. Cal. Bankr. Feb. 26, 2018). Plaintiff does not dispute this. This action was a significant risk for Defendants, and they had no choice but to defend against Plaintiff's claims. (Dkt. 257, at 21.) Thus, it was entirely reasonable that Defendants would mount a vigorous defense against Plaintiff's claims.

Plaintiff takes issue with the amount of hours billed, comparing them to the hours billed by Plaintiff's counsel. However, that Plaintiff's counsel billed only 704.7 hours in this case, and that it is less than half of what Defendants' counsel billed, does not mean that the time Defendants' counsel worked on the matter is unreasonable. As this Court previously recognized, it appears that Plaintiff litigated this case "on the cheap." (Trial Tr., at 941:16-17.) Plaintiff, for example, did not take a single deposition, did not serve a single interrogatory, did not provide bases for objections to Defendants' trial exhibits so the parties could meet and confer, failed to prepare reasonable exhibit disclosure lists identifying the trial exhibits that would actually be used in trial, and failed to comply with the Court's Standing Order. (*See* Dkt. 257 at 17-20.) But, just because Plaintiff chose to litigate the case "on the cheap" does not mean that Defendants had to take the risk of doing so. Contrary to Plaintiff's argument, the number of hours billed by Plaintiff's counsel is not the appropriate standard by which to measure the reasonableness of Defendants' counsel's work. Notably, Plaintiff fails to cite any authority suggesting that this would be an appropriate measure, particularly in the circumstances of this case.

In addition, Plaintiff's statement that Defendants' counsel "averaged nearly 14 hours billed everyday" (Dkt. 260 at 7) is misleading because it creates the impression that this is the average of a single attorney. In reality, the highest biller from the Quinn/Nathan team, John Nathan, billed on average less than five hours a day on this case, and aside from Andrea Roberts, everyone else billed significantly less.[8]

As to Plaintiff's argument regarding Ms. Draper's hours, Plaintiff ignores the undisputed fact that Defendants produced over 56,000 pages of documents, including text messages,

---

[8] As to the number of attorneys billing on the case, it was reasonable given the length of the trial, number of witnesses, and number of documents produced by Defendants. The attorney hours billed were reasonable and necessary to defend Defendants against Plaintiff's claims.

1  compared to Plaintiff's mere 803 pages (and no text messages).  (*See* Dkt. 257-1.)  The time
2  expended by Ms. Draper's law firm to collect, review, and produce so many more documents than
3  Plaintiff accounts for the difference in hours between her firm and Plaintiff's, even without Ms.
4  Draper participating at the actual trial.  In addition, Ms. Draper served interrogatories, successfully
5  compelled further supplemental responses, and deposed Plaintiff's damages expert.

6       Finally, Plaintiff's "no comment" regarding Defendants' counsel's hourly rates themselves
7  is inconsequential given the plethora of cases that have held that the rates charged by law firms
8  comparable to Quinn Emanuel, and by Quinn Emanuel itself, are reasonable.

## CONCLUSION

10       For the foregoing reasons, the Court should grant Defendants' motion and award
11  $2,027,790.25 in attorneys' fees and $61,165.75 in non-taxable costs to Defendants.

08876-00001/11036339.7

-10-   Case No. 4:18-CV-01044-HSG (JCS)
DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' AMENDED MOTION FOR ATTORNEYS' FEES AND COSTS

DATED: September 3, 2019          By     */s/ Andrea Pallios Roberts*
                                          Ann McFarland Draper (Bar No. 065669)
                                          courts@draperlaw.net
                                          Draper Law Offices
                                          75 Broadway, Suite 202
                                          San Francisco, California 94111
                                          Telephone:     (415) 989-5620

                                          QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                          Kevin P.B. Johnson (Bar No. 177129)
                                          kevinjohnson@quinnemanuel.com
                                          Andrea Pallios Roberts (Bar No. 228128)
                                          andreaproberts@quinnemanuel.com
                                          555 Twin Dolphin Drive, 5th Floor
                                          Redwood Shores, California 94065-2139
                                          Telephone:     (650) 801-5000
                                          Facsimile:     (650) 801-5100

                                          Ed DeFranco (Bar No. 165596)
                                          eddefranco@quinnemanuel.com
                                          51 Madison Avenue, 22nd Floor
                                          New York, NY 10010
                                          Telephone:     (212) 849-7000
                                          Facsimile:     (212) 849-7100

                                          John E. Nathan (P*ro Hac Vice*)
                                          jnathan155@yahoo.com
                                          John E. Nathan LLC
                                          1175 Park Avenue
                                          New York, NY 10128
                                          Telephone:     (917) 960-1667

                                          Attorneys for Defendants and Counterclaimants