UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TECHSHOP, INC.,<br><br>        Plaintiff,<br><br>   v.<br><br>DAN RASURE, et al.,<br><br>        Defendants. | Case No. 18-cv-01044-HSG<br><br>**ORDER DENYING MOTIONS FOR JUDGMENT AS A MATTER OF LAW, PERMANENET INJUNCTION, NEW TRIAL, ATTORNEYS' FEES, AND REVIEW OF TAXATION**<br><br>Re: Dkt. Nos. 227, 238, 240, 254, 256, 257, 258 |

Pending before the Court are several post-trial motions filed by Plaintiff TechShop, Inc. and Defendants Dan Rasure, TechShop 2.0 LLC, and TechShop 2.0 San Francisco LLC. The Court finds these matters appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **DENIES** the motions in their entirety.

**I.  BACKGROUND**

   **A.  Factual Background**

Plaintiff initially filed this trademark action on February 16, 2018, against Dan Rasure, TechShop 2.0 LLC, and TechShop 2.0 San Francisco LLC. Dkt. No. 1. Plaintiff is the owner of two federally registered service marks in the word "TECHSHOP," for use with services related to providing workshop facilities, or "makerspace," and opportunities for trainings and networking in the fields of manufacturing and fabrication. *See* Tr. Exs. 351, 352.[1] The registrations specifically

---

[1] Unless otherwise specified, the Court refers to the exhibits admitted during trial ("Tr. Ex.").

state that the marks "consist[] of standard characters without claim to any particular font, style, size, or color." *See id.* Plaintiff was founded in 2006 to provide "makerspace," where members of the public could join and use tools to build projects. *See* Tr. Ex. TX0028 at DR003067. Starting with a single location in Menlo Park, Plaintiff expanded and ultimately operated makerspaces in ten locations around the United States with 9,000 members. *See id.* at DR003063; *see also* Dkt. No. 242 ("Trial Tr. Vol. 2") at 209:4–6.

In mid-November 2017, Plaintiff experienced financial difficulties and closed its U.S. locations in anticipation of filing for bankruptcy. *See, e.g.*, Trial Tr. Vol. 2 at 123:17–125:14. Shortly thereafter, Mr. Rasure approached Plaintiff to purchase TechShop. *See id.* at 126:4–127:9, 128:25–131:9. The parties executed a Memorandum of Understanding ("MOU") on December 1, 2017. *See* Tr. Ex. 48; Trial Tr. Vol. 2 at 131:10–135:7; Dkt. No. 249 ("Tr. Vol. 4") at 680:23–24. The non-binding MOU explained that TechShop was willing to sell all of its assets to a third-party buyer, TechShop 2.0, LLC, in exchange for assuming TechShop's secured debt; assuming equipment land property leases; paying approved employee backpay; and paying a maximum of $200,000 for administrative expenses incurred during and for purposes of the negotiation. *See* Tr. Ex. 48. The MOU noted that the details would "be finalized in definitive documentation to be prepared by TechShop 2.0 and approved by the Board of Directors of TechShop, Inc." *Id.*

The parties then announced the deal publicly, explaining that "[t]he next iteration of TechShop is in the works." *See* Tr. Exs. 501, 505, 527–28, 530. The announcement explained that TechShop had reached an agreement in principle to sell the entire company to TechShop 2.0, LLC. *Id.* However, on December 12, 2017, TechShop advised Mr. Rasure that it was terminating the MOU, citing concerns that he had "consistently failed to provide the information or funding necessary to permit the transaction to proceed." *See* Tr. Ex. 919; *see also* Trial Tr. Vol. 3 at 388:1–390:18; 433:22–436:19; Exs. 59–60. TechShop did not cut off negotiations with Mr. Rasure entirely after terminating the MOU, but instead also started exploring other parties who had expressed some interest in a deal with TechShop. *See* Trial Tr. Vol. 3 at 436:2–19, 438:3–7. However, TechShop's Board of Directors found that Mr. Rasure's latest proposal—to rent facilities and equipment from TechShop rather than purchase its assets outright—was unworkable

given their current financial situation. *See id.* at 444:16–445:18; *see also* Tr. Ex. 646. On February 7, 2018, the Board sent an email to Mr. Rasure explaining that it decided not to accept the rental proposal, and that it was preparing its "imminent" bankruptcy filing. *See* Tr. Ex. 78.

Although the parties had not reached a deal, two days later, on February 9, 2018, Defendants announced that TechShop 2.0 would reopen the former TechShop facility in San Francisco. *See* Tr. Ex. 273; *see also* Trial Tr. Vol. 2 at 178:10–181:18. The announcement stated that TechShop 2.0 had "completed a transaction to purchase the equipment located at the facility and entered into a new lease for the facilities." Tr. Ex. 273. It also directed readers to www.techshop2.com for more information. *Id.* Again on February 12, 2018, Mr. Rasure announced publicly that TechShop 2.0 would open in San Francisco on February 19, and provided a link to its website for membership sign-ups. *See* Tr. Ex. 324; *see also* Trial Tr. Vol. 3 at 445:19–447:22. On February 14, 2018, Plaintiff sent Mr. Rasure a letter explaining that he did not have the right to use the TechShop service marks, or any of TechShop's other assets. *See* Tr. Exs. 334, 335. Mr. Rasure responded "[t]hank you" in acknowledgement. Tr. Ex. 335; Trial Tr. Vol. 2 at 188:14–189:9.

The next day, the San Francisco Chronicle published an article about TechShop 2.0's opening in San Francisco. *See* Tr. Ex. 337. The article quoted Mr. Rasure and contained a picture of him in the San Francisco location below a TechShop sign. *See id.* Defendants shared this article on their Facebook group. *See* Tr. Ex. 322; *see also* Trial Tr. Vol. 2 at 193:11–21. On February 16, 2018, Plaintiff's counsel sent Mr. Rasure another letter, demanding that he stop using the TechShop 2.0 name. *See* Tr. Ex. 656. Attached to the letter was the complaint in this action. *Id.* In the complaint, Plaintiff alleges that, without authorization, Defendant Rasure formed two entities—Defendants TechShop 2.0 LLC and TechShop 2.0 San Francisco LLC—that infringed the TechShop service marks in connection with makerspace services. *See* Dkt. No. 1 at ¶¶ 3–4, 20–29.

Following the February 16 letter and the filing of this action, Defendants worked to change their name from TechShop 2.0 to TheShop.build. *See* Trial Tr. Vol. 5 at 741:21–745:17, 891:15–20; *see also* Tr. Ex. 531. However, Defendants still continued to use TechShop 2.0 in various

correspondence. *See, e.g.* Trial Tr. Vol. 5 at 837:4–852:15. For example, on March 2, 2018, Defendants created an event entitled "Pizza with Dan Rasure TechShop 2.0" and posted it online with Eventbrite. *See* Tr. Ex. 148; *see also* Trial Tr. Vol. 5 at 22–845:4. On March 5, Mr. Rasure continued to use the email address dan.rasure@techshop2.com. *See* Tr. Ex. 150. On March 6, Mr. Rasure received an email from a customer noting that the website still listed "TechShop 2.0" on the membership sign-up page. *See* Tr. Ex. 152. As late as May 3, the TechShop 2.0 email was still active and customers used it to correspond with Defendants. *See* Tr. Ex. 268. And on May 11, Defendants still signed vendor agreements as TechShop 2.0. *See* Tr. Ex. 89. Defendants did not formally change the name of the legal entities to TheShop.build until April 6, 2018. *See* Tr. Ex. 25 at DR002745.

### B.   Procedural History

On February 26, 2018, Plaintiff field a voluntary petition for relief under Chapter 7 in the United States Bankruptcy Court for the Northern District of California. *See* Dkt. No. 45 at ¶ 11. On August 13, 2018, Doris A. Kaelin in her capacity as Chapter 7 Trustee for TechShop, Inc. filed an amended complaint in this action against the same Defendants, alleging that Defendants infringed the TechShop service marks. *See* Dkt. No. 45. On July 26, 2018, Defendants filed a cross-complaint, alleging that Plaintiff made false and misleading representations, and promises that it did not intend to perform, to induce Mr. Rasure to sign the MOU and make payments related to the negotiations. *See id.* On the basis of these allegations, Defendants brought claims for fraud and wire fraud. *Id.* The Court subsequently granted Plaintiff's motion to dismiss the wire fraud claim without leave to amend, but allowed the fraud claim to proceed. *See* Dkt. No. 110.

Trial in this action commenced on June 3, 2019. On June 12, the jury returned a verdict finding that "TECHSHOP" is a valid service mark; Plaintiff owns the "TECHSHOP" marks; and the "TECHSHOP" service marks were not abandoned. *See* Dkt. No. 217 at 1. The jury further found that Defendants intentionally and willfully used the names TechShop 2.0 and TheShop.build without Plaintiff's consent, and in a manner likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the services. *See id.* at

4

2–4. However, the jury found that Plaintiff did not suffer actual damages in lost licensing revenue as a result of this infringement. *See id.* With respect to Defendants' counterclaim for fraud, the jury found that Plaintiff did not make a false promise to Mr. Rasure. *See id.* at 4.

On June 26, 2019, the Court entered judgment in favor of Plaintiff and against Defendants. *See* Dkt. No. 223. The parties have since filed several post-trial motions for: judgment as a matter of law, Dkt. No. 254; new trial as to Plaintiff's damages, Dkt. No. 238; a permanent injunction preventing Defendants' use of the TechShop 2.0 and TheShop.build names, Dkt. No. 240; attorneys' fees and costs filed by both parties, Dkt. Nos. 227, 257; and review of taxation as to Defendants, Dkt. No. 258. Defendants have also filed a trial brief raising equitable relief defenses. Dkt. No. 256. The Court addresses each in turn.

## II. RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

### A. Legal Standard

"[A] party must make a Rule 50(a) motion for judgment as a matter of law before a case is submitted to the jury. If the judge denies or defers ruling on the motion, and if the jury then returns a verdict against the moving party, the party may renew its motion under Rule 50(b)." *Equal Emp't Opportunity Comm'n v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). In considering a renewed motion for judgment as a matter of law, a court must uphold the jury's verdict if "substantial evidence" supports the jury's conclusion. *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001). "Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." *Id.* The Court must "view all the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in the favor of the nonmover, and disregard all evidence favorable to the moving party that the jury is not required to believe." *Castro v. Cnty. of Los Angeles*, 797 F.3d 654, 662–63 (9th Cir. 2015). A court should only grant a Rule 50(b) motion if, after construing all evidence in the light most favorable to the nonmoving party, the record "permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Id.* (quotations omitted).

//

**B.     Discussion**

On June 6, after Plaintiff rested its case, Defendants orally moved for judgment as a matter of law under Rule 50(a) and stated the grounds for the motion on the record. *See* Trial Tr. Vol. 4 at 658:1–8, 705:24–708:18. Defendants argued that Plaintiff had not established that Defendants used either TechShop 2.0 or TheShop.build without Plaintiff's consent or that there was any likelihood of confusion with the TECHSHOP service marks.[2] *Id.* Defendants filed their written motion for judgment as a matter of law under Rule 50(a) on June 10 on these two bases. *See* Dkt. 207. The Court reserved decision on the motion. *See* Trial Tr. Vol. 7 at 1039:17–1040:5. Defendants now move for judgment as a matter of law that their use of TechShop 2.0 and TheShop.build did not infringe Plaintiff's service marks. *See* Dkt. No. 254.

**i.     TechShop 2.0**

Defendants' argument that their use of TechShop 2.0 did not infringe Plaintiff's service marks is twofold: (1) Plaintiff consented to the use; and (2) the use was de minimis because Defendants did not use the TechShop 2.0 name after February 16, 2018. The Court finds that there is substantial evidence to support the jury's finding of infringement, including that Defendants used the name TechShop 2.0 without consent.

*First*, Plaintiff's witnesses testified that they did not consent to Defendants' use of the name TechShop 2.0 for the purpose of opening a makerspace. *See* Trial Tr. Vol. 2 at 177:21–24; Trial Tr. Vol. 3 at 400:21–401:23. James Newton, the founder of TechShop, testified that Plaintiff had never told Mr. Rasure that he had the right to use the service marks to open a makerspace. Trial Tr. Vol. 2 at 177:21–24. Similarly, Dan Woods, the CEO of TechShop, testified that at the time Mr. Rasure announced that a makerspace in San Francisco would be opened under the name TechShop 2.0, Mr. Rasure had not acquired the right from Plaintiff to use the TechShop service

---

[2] To prevail on a trademark infringement claim under § 43(a) of the Lanham Act, a plaintiff must establish that it (1) has a valid, protectable trademark that (2) defendant is using in a confusingly similar manner. *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). "The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007) (quotations omitted).

marks. *See* Trial Tr. Vol. 3 at 301:2–17, 399:13–401:23. Douglas Busch, a member of TechShop's Board of Directors, explained that the Board believed that TechShop's service marks were the company's most significant assets, and that if Plaintiff had finalized a deal with Mr. Rasure, he would have acquired these marks. *See id.* at 415:10–25, 423:17–23, 444:2–9, 445:25–447:6. The use of TechShop 2.0—and thus, Plaintiff's service marks—for makerspace was contingent on reaching a deal with Plaintiff pursuant to the MOU. *See id.* However, at the time he announced the opening of TechShop 2.0, there was no deal between the parties. *See* Tr. Ex. 78.

In the face of this testimony, Defendants did not point to evidence of any affirmative consent from Plaintiff to its use of TechShop 2.0. Mr. Rasure, for his part, simply testified that he thought he was permitted to use the name because "nobody had ever told [him] [he] couldn't use the name or logos." *See* Vol. 5 at 890:20–891:4. Defendants also rely heavily on the idea that Plaintiff knew about "TechShop 2.0" from late November 2017 through February 14, 2018, and did not object. *See* Dkt. No. 254 at 5, 13–14. Failing to object, however, is not tantamount to consent. And although Plaintiff at times referred to Mr. Rasure's company as TechShop 2.0 in some correspondence, there is evidence in the record that this was done as part of the negotiations and in reference to the proposed legal entity that would acquire the TechShop service marks. *See* Trial Tr. Vol. 3 at 301:2–17, 399:13–401:23, 445:25–447:6. Even the public announcement in December 2017 indicated that TechShop 2.0 was "[t]he next iteration of TechShop" based on an agreement in principle in which TechShop would "sell the entire company." *See e.g.*, Tr. Ex. 501; *see also* Tr. Ex. 614 (referring to TechShop 2.0 as "[t]he new TechShop"). Based on this evidence, a reasonable jury could find that Plaintiff did not consent—explicitly or tacitly—to any use of TechShop 2.0 outside this negotiation setting.

In response, Defendants rely on two cases to suggest that testimony from Plaintiff's witnesses is somehow insufficient to establish lack of consent. *See* Dkt. No. 254 at 14 (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)). In *Kennedy v. Applause*, the Ninth Circuit affirmed a district court's order granting summary judgment in favor of an employer in a wrongful termination action where the employee had failed to establish that she was qualified to perform her

7

job. 90 F.3d at 1479–82. The employee's physician found that she was totally disabled and the employee had similarly made sworn statements that she was completely disabled on her Social Security Administration disability benefit claim forms. *See id.* at 1480–81. The Ninth Circuit noted that the employee's deposition testimony that she was not totally disabled was thus "uncorroborated and self-serving," and found that it did not on its own create a genuine dispute of fact in the face of the other evidence. *Id.* at 1481; *accord Villiarimo*, 281 F.3d at 1061 (quoting *Kennedy*, 90 F.3d at 1481). These cases do not stand for the sweeping notion that parties may only establish liability through documentary evidence. Rather, the Court must be mindful of the quantity and quality of evidence when determining whether there is a genuine dispute of material fact warranting jury deliberation. As noted above, the jury had ample evidence before it—both testimonial and documentary—about the parties' negotiations, the value of the service marks, and the consent (or lack thereof) to use those marks outside a final agreement.

*Second*, Defendants acknowledge that they used the name TechShop 2.0 from late November 2017 to at least February 16, 2018. *See* Dkt. No. 254 at 1, 4. Even after negotiations broke down, they used this name in public announcements about makerspace in the former TechShop facility in San Francisco and to solicit members for their makerspace. *See* Tr. Ex. 273; *see also* Trial Tr. Vol. 2 at 178:10–181:18; Trial Tr. Vol. 3 at 445:19–447:22; Tr. Exs. 273, 324. Defendants acknowledge that even once they changed the name to TheShop.build, "some things [] took a little more time to switch over and Defendant ran into some technical difficulties" changing their name. *See* Dkt. No. 254 at 15. Defendants suggest that, despite their admitted use, it was only for a few days in February and they worked in good faith to change the name after February 16, 2018. *See id.* at 14–15. Whether the use was limited may influence the award of damages, but it does not absolve Defendants of liability for infringing the service marks. Defendants have not proffered any authority for the argument that de minimis use is somehow nonactionable.

### ii. TheShop.build

Next, Defendants argue that their use of TheShop.build did not infringe Plaintiff's service marks because: (1) Plaintiff consented to the use; and (2) there is no evidence of a likelihood of confusion between TheShop.build and Plaintiff's service marks. As to the first argument,

Defendants again conflate lack of objection with consent. There is ample evidence in the record that as of February 16, 2018, Plaintiff had not finalized a deal with Mr. Rasure to acquire its service marks, and that Plaintiff understood the use of their marks to be contingent on such a deal. *See* Trial Tr. Vol. 3 at 301:2–17, 399:13–401:23, 415:10–25, 423:17–23, 444:2–9, 445:25–447:6. As to the second argument, the Court considers the evidence presented at trial in conjunction with the eight-factor test the Ninth Circuit has articulated—the "*Sleekcraft* factors"—to determine whether there is substantial evidence of a likelihood of confusion.

The *Sleekcraft* factors include: (1) the strength of the allegedly infringed mark; (2) the relatedness or proximity of the parties' services; (3) the similarity of the parties' marks; (4) evidence of actual confusion; (5) the marketing channels used by the parties; (6) the degree of care likely to be exercised by the purchasers of the parties' products; (7) the alleged infringer's intent in selecting the mark; and (8) the likelihood of expansion of the parties' product lines. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–54 (9th Cir. 1979). The *Sleekcraft* test is supposed to be "pliant," and the Ninth Circuit has warned against "excessive rigidity" in its application. *See Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008). Instead, "[t]he test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005). Here, the Court finds that Plaintiff proffered substantial evidence of likely confusion based on the similarity of the marks; the proximity of the parties' makerspace services; actual confusion; and Mr. Rasure's intent.

"The similarity of the marks is 'a critical question in the likelihood-of-confusion analysis.'" *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 875 (9th Cir. 2014). To assess similarity, courts must "compare the two marks in terms of sight, sound, and meaning, considering the marks as a whole, as [they] appear in the marketplace." *Id.* (quotations omitted). "[S]imilarities weigh more heavily than differences." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1127–28 (9th Cir. 2014).

In assessing the similarity of TheShop.build to the TechShop service marks, Defendants urge that only the words of the marks matter, and any similarity in color or design is immaterial,

9

1   because Plaintiff's service marks only cover the word "TECHSHOP" in standard characters.  *See*
2   Dkt. No. 254 at 17–18 (citing Tr. Exs. 351, 352).  The Court is not persuaded by Defendants'
3   attempt to narrow the scope of the inquiry.  Plaintiff's standard character marks "cover[] all design
4   variations of the word" "TECHSHOP," and as such are "extremely broad."  *See Pom Wonderful*,
5   775 F.3d at 1125 (citing *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1349 (Fed.
6   Cir. 2011)); *see also* 37 C.F.R. § 2.52.  Moreover, the Ninth Circuit has clarified that when
7   assessing the similarity of even standard character marks, trade dress is still relevant because
8   courts "do[] not consider the similarity of the marks in the abstract, but rather in light of the way
9   the marks are encountered in the marketplace and the circumstances surrounding the[m]."  *See id.*
10  at 1128, n.7.

11       As used in the marketplace, the marks at issue here are quite similar:



16  *See* Tr. Ex. 357.  When Defendants initially changed their name to TheShop.build, they used the
17  mark below from at least February 19 through February 21, 2018:



22  *See* Tr. Ex. 327; *see also* Trial Tr. Vol. 5 at 890:7–19.  The color scheme, size, and spacing above
23  highlight that "TECHSHOP" and "THESHOP" appear nearly identical, except for the addition of
24  a "c" in TECHSHOP.  Defendants urge that such comparisons ignore the suffix ".build" in
25  TheShop.build.  But Defendants have deemphasized this suffix in the marketplace by using
26  smaller, lower-case font in all black lettering.  The marks also have similar sound and cadence,
27  with a two-syllable phrase ending in "shop."  *Cf. Beer Nuts, Inc. v. Clover Club Foods Co.*, 805
28  F.2d 920, 926 (10th Cir. 1986) (holding that "Brew Nuts" and "Beer Nuts" were similar marks in

part because the words "Brew" and "Beer," although "not identical, . . . have a similar sound"). This factor weighs strongly in favor of Plaintiff.

Even if the Court were to ignore the similarity of the marks as seen in the marketplace, the similarity of the two logos above may be considered in evaluating Defendants' intent. "[I]ntent to deceive is strong evidence of a likelihood of confusion." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002) (quotations omitted). "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft*, 599 F.2d at 354. There can be no question here that Mr. Rasure was aware of Plaintiff's service marks as he spent months negotiating with Plaintiff to acquire them. Plaintiff also presented evidence at trial that Defendants' company was announced to the public as "[t]he next iteration of TechShop," *see* Tr. Exs. 501, 505, 527–28, 530, and that Mr. Rasure had emphasized the value of TechShop to him included its name, *see, e.g.*, Tr. Tr. Vol. 3 at 417:24–418:10. That Defendants quickly changed the style and color of the logo after Plaintiff filed this action does not vitiate this evidence of intent. The jury was free to disbelieve the earnestness of Defendants' attempt to disassociate themselves and their makerspace from Plaintiff.

Similarly, the proximity of the parties' makerspace services is striking here, as Defendants opened their makerspace in the same space in San Francisco in which Plaintiff used to operate; provided similar equipment and trainings; and sought to attract former TechShop members, including by offering special deals to former TechShop members. *See, e.g.*, Trial Tr. Vol. 2 at 178:10–181:18; Trial Tr. Vol. 4 at 661:21–662:13, 753:14–754:24, 759:11–14, 766:2–17, 768:21–22. These factors also weigh strongly in favor of Plaintiff.

Plaintiff also provided evidence of actual confusion in the marketplace. For example, on February 18, 2018, a customer emailed Defendants explaining that he "was currently a member when you closed in November," and complaining that he was having trouble "re-sign[ing] up for membership." *See* Tr. Ex. 94. On February 20, a customer emailed TheShop.build stating that he was "VERY VERY happy that the TechShop is finally opened for business again!" *See* Tr. Ex. 135. He also asked questions about what information he would need to provide Defendants about

11

his prior membership and certifications from TechShop. *Id.* And on February 21, 2018, another customer emailed TheShop.build stating that "I understand that Techshop is under new management," and asking if his prior membership could be "reinstated." *See* Tr. Ex. 98. Defendants suggest that such confusion does not matter as Plaintiff filed for bankruptcy and did not offer makerspace in San Francisco at the time TheShop.build opened. *See* Dkt. No. 254 at 19. However, Plaintiff offered testimony that it had received other offers from parties interested in purchasing the service marks and the company's other assets for use with makerspace services. *See, e.g.*, *See* Trial Tr. Vol. 3 at 436:2–19, 438:3–7. The Court finds that this factor weighs in favor of Plaintiff.

\*   \*   \*

The Court concludes that the jury's verdict was supported by substantial evidence, which was adequate to support its findings, and thus **DENIES** the renewed motion for judgment as a matter of law.

### III. EQUITABLE DEFENSES

Notwithstanding the jury verdict, Defendants request that the Court vacate the final judgment in favor of Defendants based on the equitable doctrines of acquiescence, estoppel, and laches. *See* Dkt. No. 256. Defendants' arguments mirror those raised in the renewed motion for judgment as a matter of law, including that Plaintiff consented to the use of the names TechShop 2.0 and TheShop.build, and Defendants thus reasonably relied on this acquiescence. The Court remains unpersuaded.

Although Plaintiff knew Mr. Rasure created a legal entity called TechShop 2.0, and in correspondence during their negotiations referred to the company as such, the most reasonable interpretation of these interactions is that Plaintiff used this name during negotiations with the understanding that Defendants would acquire the TechShop service marks as part of the parties' final deal before operating as a makerspace. A letter from Mr. Rasure made this distinction clear when he wrote "[o]ur new legal entity name is TechShop 2.0 LLC, but we will continue to operate the shops at TechShop." *See* Tr. Ex. 615 at DR007050; *see also* Tr. Ex. 501 (referring to TechShop 2.0 as "[t]he next iteration of TechShop"); Tr. Ex. 614 (referring to TechShop 2.0 as

12

1  "[t]he new TechShop"). It borders on nonsensical to imagine that Plaintiff would take such care in

2  the negotiation process if it did not care whether Defendants used Plaintiff's marks outside of a

3  deal between the parties.

4  On February 7, Plaintiff rejected Defendants' last proposal and said it intended to pursue

5  bankruptcy instead. *See* Tr. Ex. 647. Thus, at the time Mr. Rasure announced the opening of

6  TechShop 2.0, there was no deal between the parties, and thus no consent to use Plaintiff's service

7  marks. *See* Tr. Ex. 78. Plaintiff moved swiftly after becoming aware that Defendants still

8  intended to open makerspaces using its marks. It sent two letters to Mr. Rasure explaining that he

9  did not have the right to use the TechShop service marks: the first on February 14, 2018, and the

10  next on February 16, 2018. *See* Tr. Exs. 334, 335, 656. The second letter included the complaint

11  in this action, which Plaintiff had filed that same day. *Id.* The Court does not find this period of

12  delay, if any, unreasonable.

13  To the extent Defendants also suggest that there was delay in raising claims about

14  TheShop.build, the complaint alleged that Defendants' "unauthorized use of the TECHSHOP®

15  trademarks, *and confusingly similar variations thereof*, in commerce to advertise, promote,

16  market, and sell makerspace services throughout the United States, constitutes trademark

17  infringement." Dkt. 1 at ¶ 31 (emphasis added); *see also* Dkt. No. 45 at ¶ 35. To the extent

18  Defendants did not believe TechShop 2.0 or TheShop.build infringed Plaintiff's service marks and

19  continued to use them, they did so at their own hazard. The Court finds that there is no basis to

20  find acquiescence, equitable estoppel, or laches under the circumstances of this case. The Court

21  accordingly **DENIES** Defendants' request to vacate or modify the final judgment.

22  **IV.    MOTION FOR PERMANENT INJUNCTION**

23  Plaintiff, in turn, seeks a permanent injunction to prevent Defendants from continuing to

24  use the infringing TechShop 2.0 and TheShop.build names, or other similarly confusing variants.

25  *See* Dkt. No. 240. Under the Lanham Act, the Court has the "power to grant injunctions according

26  to the rules of equity and upon such terms as the court may deem reasonable, to prevent violation"

27  of Plaintiff's rights. 15 U.S.C. § 1116(a).

28  //

### A. Legal Standard

For a permanent injunction to issue, Plaintiff must establish that (1) it has suffered an irreparable injury; (2) monetary damages are inadequate; (3) the balance of hardships merits an equitable remedy; and (4) the public interest will not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Court can grant an injunction in its equitable discretion, and examines the totality of the circumstances in deciding to do so. *Id.*

### B. Discussion

The Court finds in its discretion that a permanent injunction is not warranted. "[A]ctual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action." *Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013). Here, Plaintiff argued in conclusory fashion that "Defendants further infringement of the marks will result in a loss of control of the marks and ongoing damage to TechShop's goodwill." *See* Dkt. No. 240 at 3. Although "[l]oss of control over business reputation and damage to goodwill are cognizable irreparable harms in the trademark infringement context," *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 602 Fed. App'x 669, 672 (9th Cir. 2015), Plaintiff has not pointed the Court to any specific evidence that its goodwill was actually damaged.

Plaintiff alludes to allegations that Mr. Rasure engaged in "abusive and physically threatening conduct with those he disagreed with," *see* Dkt. No. 240 at 4, but provides no further explanation or citations to the record. During the trial, Ryan Spurlock, a former TechShop employee who managed the San Francisco location, testified that he had an altercation with Mr. Rasure about trying to get his equipment out of the San Francisco location. Trial Tr. Vol. 4 at 602:19–604:7, 638:16–641:14. When Mr. Spurlock suggested he would involve the police in the matter, Mr. Spurlock testified that Mr. Rasure "jumped out of his seat and started screaming at [him]." *Id.* However, Plaintiff has not offered any evidence that Mr. Rasure's conduct had any effect on Plaintiff's customers or the market more generally, or that they were even aware of this altercation. Plaintiff also suggests in its reply brief that Defendants provided "inferior offerings," *see* Dkt. No. 269 at 1, but again does not provide any evidence or further explanation. Plaintiff

14

also contends that because it filed for bankruptcy, Defendants' infringement "would damage the Trustee's ongoing efforts to liquidate the assets (including the marks)," and that the "duties as the Chapter 7 trustee are those imposed by law." *See id.* at 2–3. Plaintiff does not suggest that the trustee has attempted to sell the service marks, let alone that Defendants' infringement has somehow diminished their value in the market for this sale.

In contrast, Defendants have provided evidence that they no longer operate makerspaces at all, let alone under TechShop 2.0 or TheShop.build names. Defendants closed the San Francisco location entirely in March 2019; changed their name to "Bay Area Makerspace" in June 2019; and closed the only other location in San Jose on August 18, 2019. *See* Dkt. No. 262-1 at ¶ 5; *see also* Trial Tr. Vol. 4 at 663:16–664:3. In response, Plaintiff has not provided any evidence that Defendants continue to operate, or even that their prior conduct continues to harm its business or goodwill. Plaintiff bears the burden of establishing that a permanent injunction is warranted in this case, and its conclusory arguments are simply insufficient.

The Court accordingly **DENIES** the motion for a permanent injunction.

## V.  MOTION FOR NEW TRIAL

Plaintiff also contends that a new trial is required as to damages because the jury did not award any damages for Defendants' infringement. *See* Dkt. No. 238. Plaintiff argues that there were substantial errors in the admission of evidence and that the jury's verdict was against the weight of evidence. *Id.*

### A.   Legal Standard

A court "may, on motion, grant a new trial on all or some of the issues," Fed. R. Civ. P. 59(a), "if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice," *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quotations omitted). Courts should not grant a new trial unless they are "left with the definite and firm conviction that a mistake has been committed." *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1372 (9th Cir. 1987) (quotations omitted). In considering a Rule 59(a) motion, the court "is not required to view the trial evidence in the light most favorable to the verdict" but instead may "weigh the evidence and assess the credibility of

15

the witnesses." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014). Where a party seeks a new trial based on unfavorable evidentiary rulings, it must establish that the court's rulings were both erroneous and substantially prejudicial. *See Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995).

### B. Discussion

Plaintiff first argues that Defendants' damages expert, Mark Bünger, should not have been allowed to testify at trial because his expert report did not establish that he had any specialized training in trademark licensing or damages analysis, or the experience to testify competently as to these topics. *See* Dkt. No. 238 at 3–4. Plaintiff raised these same arguments in its pretrial motion to preclude Mr. Bünger's testimony. *See* Dkt. No. 126. The Court rejected them. *See* Dkt. No. 158 at 5. When Plaintiff again challenged Mr. Bünger's testimony at trial, *see* Dkt. Nos. 205, 206, the Court again rejected Plaintiff's arguments, *see* Trial Tr. Vol. 6 at 9328:15–944:22.

As an initial matter, "[a] district court is vested with broad discretion to make . . . evidentiary rulings conducive to the conduct of a fair and orderly trial." *S.M. v. J.K.*, 262 F.3d 914, 919 (9th Cir. 2001), *as amended*, 315 F.3d 1058 (9th Cir. 2003). And here, Plaintiff does not offer any new arguments why Mr. Bünger's testimony should have been precluded. Although Plaintiff may have disagreed with the admission of his testimony, that is not sufficient to warrant a new trial. The Court concludes that Mr. Bünger's testimony was properly admitted. Moreover, even if the testimony was admitted in error, Plaintiff fails to explain how allowing him to testify at trial was substantially prejudicial. Plaintiff had the opportunity to challenge his expertise and the weight of his conclusions through cross-examination and presentation of competing experts and evidence. The Court even offered Plaintiff the opportunity to question Mr. Bünger outside the presence of the jury to make a threshold determination of the admissibility of his testimony, and Plaintiff declined. *See* Trial Tr. Vol. 6 at 938:19–944:22.

Plaintiff next argues that the Court erroneously allowed Defendants to introduce financial evidence of their own expenses during trial. Plaintiff's argument appears twofold: this information was produced after the close of discovery; and the documents had been allegedly "altered by Defendants to remove . . . information that Defendants simply wanted to hide." *See*

16

Dkt. No. 238 at 4. As the Court detailed at trial, Plaintiff's own expert relied on these financial documents in its case-in-chief to calculate Defendants' alleged revenues. Trial Tr. Vol. 5 at 719:15–720:6. Plaintiff has yet again failed to persuade the Court that these same documents could not be admitted for purposes of establishing Defendants' expenses. Relatedly, the Court determined at trial that the documents were redacted to withhold customer names, which were irrelevant to the substance of the financial information or the reliability of the documents. *See id.* at 720:7–721:9. Plaintiff offers no basis for the Court to find to the contrary.

Lastly, Plaintiff argues that it was "non-sensical," a "mistake," and against the weight of the evidence not to award damages in this case after the jury found that Defendants infringed the service marks. *See* Dkt. No. 238 at 2, 4–5. To the extent that imbedded in Plaintiff's argument is a challenge to the consistency of the jury's verdict, it waived this argument. *See Williams v. Gaye*, 895 F.3d 1106, 1130 (9th Cir. 2018) ("A party waive[s] its objection to the jury's verdict . . . by not objecting to the alleged inconsistency prior to the dismissal of the jury." (quotation omitted) (alterations in original)). The Ninth Circuit has held that "motions for a new trial challenging a zero damages award as inconsistent with liability are waived when . . . a jury verdict finds liability but no damages and the moving party does not object before jury discharge." *Kode v. Carlson*, 596 F.3d 608, 611 (9th Cir. 2010). Plaintiff provides no justification for its delay.

In any event, the Court is not persuaded that the verdict is against the weight of the evidence. *First*, the "failure to award damages does not by itself render a verdict invalid." *Philippine Nat. Oil Co. v. Garrett Corp.*, 724 F.2d 803, 806 (9th Cir. 1984). *Second*, the jury easily could have found that Plaintiff simply suffered no damage from the infringement. Plaintiff appears to assume that just because it introduced evidence of its damages, the jury was required to credit that evidence. However, the jury was free to find that Plaintiff had not met its burden, and to credit Defendants' expert testimony that because of TechShop's closures and bankruptcy, the brand had "negative equity," and thus did not suffer any actual damages from Defendants' infringement. *See* Trial Tr. Vol. 6 at 966:19–967:4, 974:9–979:7; 991:24–992:20.

*   *   *

The Court concludes that the verdict was not contrary to the clear weight of the evidence

17

1  and that the jury's reasonable verdict should not be disturbed, and thus **DENIES** the motion for a
2  new trial.

## VI. MOTION FOR ATTORNEYS' FEES

Lastly, both Plaintiff and Defendants claim to be the prevailing party in this action, and argue that this is an exceptional case warranting attorneys' fees. *See* Dkt. Nos. 227, 257.

### A. Legal Standard

"Under the Lanham Act, an award of attorney's fees is within the district court's discretion . . . [and] should be reviewed for an abuse of discretion." *Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 825 (9th Cir.1997). The Lanham Act permits an award of attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). The Supreme Court has explained that "exceptional" in these circumstances simply means "uncommon": "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

Following *Octane Fitness*, the Ninth Circuit has explained that "district courts analyzing a request for fees under the Lanham Act should examine the 'totality of the circumstances' to determine if the case was exceptional." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (en banc) (citing *Octane Fitness*, 572 U.S. at 554). Such nonexclusive factors include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance compensation and deterrence." *Id.* (quotation omitted); *see also Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 510 (9th Cir. 2011) ("Exceptional cases include cases in which the infringing party acted maliciously, fraudulently, deliberately or willfully."). In addition, the Ninth Circuit has noted that the "'exceptional circumstances' requirement [is construed] narrowly." *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990 (9th Cir. 2008).

//

//

### B. Discussion

As a preliminary matter, the Court finds that Plaintiff was the prevailing party in this action. "A party is a prevailing party for purposes of an attorneys' fee award if it achieved a material alteration in the legal relationship of the parties that is judicially sanctioned." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1078 (9th Cir. 2015) (quotation omitted).

In arguing otherwise, Defendants rely almost exclusively on a non-binding district court case, *Milton H. Greene Archives, Inc. v. Julien's Auction House, LLC*, No. CV057686AHMFMOX, 2007 WL 4898365, at *3 (E.D. Cal. Dec. 20, 2007), *aff'd*, 345 F. App'x 244 (9th Cir. 2009). In *Milton H. Greene*, the court granted in part the plaintiff's motion for partial summary judgment, finding that the defendant had infringed one of eight claims for copyright infringement at issue. *Id.* at *1. In determining that the defendant was the prevailing party in the case, however, the court's reasoning turned on the fact that the jury had found in the defendant's favor on all of the plaintiff's remaining seven claims for direct and vicarious copyright infringement. *See id.* at *3. The court also cited *Florentine Art Studio, Inc. v. Vedet K. Corp.*, 891 F. Supp. 532, 534 (C.D. Cal. 1995), in which the court awarded attorneys' fees to the defendants who were found not to have infringed seven of the nine claims of copyright infringement. *See id.* The courts in both cases thus found that the defendants had "clearly succeeded in a substantial part of this litigation." *Id.*

Not so here. The jury found that Plaintiff owns valid service marks, and that Defendants not only used the names TechShop 2.0 and TheShop.build in a manner likely to cause confusion among consumers, but that Defendants' use was intentional or willful. *See* Dkt. No. 217. Moreover, as to Defendants' only counterclaim, the jury found that Plaintiff did not make a false promise to Mr. Rasure. *See id.* at 2–4. Although Defendants did not have to pay any monetary damages to Plaintiff, the jury found for Plaintiff in every other aspect of this case. The Court is not persuaded that succeeding on the validity, ownership, and infringement of the marks is "purely technical or de minimis." *See Milton H. Greene*, 2007 WL 4898365, at *3; *accord Monster Energy Co. v. Integrated Supply Network, LLC*, No. EDCV17548CBMRAOX, 2019 WL 6721630, at *2 (C.D. Cal. Oct. 8, 2019) (finding plaintiff prevailing party where jury awarded

19

only $1.00 in nominal damages).

Nevertheless, in evaluating the totality of the circumstances, the Court does not find this to be an exceptional case warranting attorneys' fees. Plaintiff urges that Defendants' litigation positions were "exceptionally weak" and that they litigated this case unreasonably. *See* Dkt. No. 227 at 5–8. The Court is not persuaded. Although the jury found that Defendants infringed the service marks, it also decided not to award any damages. This relative success belies Plaintiff's suggestion that Defendants' position was "exceptionally weak." And the Court is well aware that the parties had several disputes related to discovery and trial, but the responsibility for the parties' difficult working relationship is borne by both sides, and does not render the case exceptional.

The Court further finds that an award of attorneys' fees is particularly unwarranted here where the jury awarded $0 in damages and Plaintiff made no substantive showing in its motion for a permanent injunction that it had even suffered irreparable harm warranting a permanent injunction. Indeed, Plaintiff's five-page motion did not contain a single citation to the record. The Court does not find anything exceptional in this perfunctory approach to post-trial relief. The Court **DENIES** both motions for attorneys' fees.[3]

## VII. CONCLUSION

Accordingly, the Court **DENIES** the motions in their entirety.

**IT IS SO ORDERED.**

Dated: 3/9/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[3] To the extent Defendants similarly argue that they are the prevailing party and the Court should decline to tax costs against them, *see* Dkt. No. 258, the Court continues to find that they are not the prevailing party and **DENIES** the motion for review of costs taxed against Defendants.